# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **ALARIC STONE**, **ERIC JACKSON**, and **MICHAEL MARCENELLE**, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 4:22-cv-825 |
| v. | ) ) | |
| **ALEJANDRO N. MAYORKAS**, in his official capacity as Secretary of Homeland Security, **LLOYD J. AUSTIN, III**, in his official capacity as Secretary of Defense, **LINDA L. FAGAN**, in her official capacity as Commandant of the Coast Guard, and **BRIAN K. PENOYER**, in his official capacity as Assistant Commandant for Human Resources of the Coast Guard, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTIONS TO CERTIFY CLASS, TO APPOINT CLASS COUNSEL, AND FOR CLASS-WIDE TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................... 1

II.   BACKGROUND ...................................................................................................... 3

III.  CLASS CERTIFICATION ...................................................................................... 5

  A.    LEGAL STANDARD .......................................................................................... 5

  B.    THE COURT SHOULD CERTIFY THE CLASS .......................................................... 6

    1.    The Class is adequately defined and clearly ascertainable...................................... 6

    2.    Plaintiff and the Class satisfy the requirements of Rule 23(a). ............................... 8

      a.    The Class is so numerous that joinder of all members is impracticable. .......... 8

      b.    There are questions of fact and law common to the Class. ............................. 9

      c.    Plaintiffs' claims are typical. ....................................................................... 11

      d.    Plaintiffs will fairly and adequately protect the interests of the Class............ 12

    3.    Plaintiffs and the Class satisfy the requirements of Rule 23(b)(2)........................ 15

IV.   APPOINTMENT OF CLASS COUNSEL ...................................................................... 15

V.    CLASS-WIDE TRO AND PRELIMINARY INJUNCTION........................................... 16

  A.    LEGAL STANDARD .......................................................................................... 16

  B.    THE COURT SHOULD ISSUE A CLASS-WIDE TRO AND INJUNCTION .......... 16

    1.    The Court can and should hear Plaintiffs' claims. .................................................. 17

    2.    The Class is likely to succeed on the merits of its RFRA and First Amendment Claims................................................................................................................... 17

    3.    Irreparable injury will result absent relief. ............................................................ 23

    4.    The balance of hardships weighs in the Class's favor, and a TRO or injunction will not disserve the public interest. ............................................................................ 24

VI.   CONCLUSION....................................................................................................... 25

## LOCAL RULE 23.2 REQUIREMENTS

L.R. 23.2(a): The suit is properly maintainable as a class action under Fed. R. Civ. P. 23(a) and 23(b)(2). *See* Sections III.A.-B.

L.R. 23.2(b)(1) (number of members): *See* Section III.B.2.a.

L.R. 23.2(b)(2) (definition of Class): *See* Sections II & III.B.1.

L.R. 23.2(b)(3) (distinguishing and common characteristics of members: *See* Sections III.B.1 & III.B.2.B.

L.R. 23.2(b)(4) (common questions of law and fact): *See* Section III.B.2.b.

L.R. 23.2(b)(5) (Rule 23(b)(3) findings): Not applicable because the class is maintainable under Fed. R. Civ. P. 23(b)(2).

L.R. 23.2(c) (adequacy): *See* Section III.B.2.d.

L.R. 23.2(d): Jurisdictional amount is not an issue because the Court's jurisdiction is based on a federal question. *See* 28 U.S.C. § 1331.

L.R. 23.2(e): Notice is not required under Fed. R. Civ. P. 23(b)(2).

L.R. 23.2(f): Plaintiffs do not believe any discovery is required for a class certification hearing.

L.R. 23.2(g) (payment of fees): *See* Section III.B.2.d.; Attorney Declarations.

## TABLE OF AUTHORITIES

**Cases**

*Air Force Officer v. Austin*,
No. 5:22-CV-00009-TES, 2022 WL 468799 (M.D. Ga. Feb. 15, 2022)........ 13, 17, 18, 19

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)........................................................................................ 15

*Austin v. Navy Seals 1-26*,
142 S.Ct. 1301 (2022)...................................................................................... 17

*Bazzrea v. Mayorkas*,
No. 3:22-cv-265 (S.D.Tex) ................................................................................ 3

*Bear Creek Bible Church v. EEOC*,
571 F. Supp. 3d 571 (N.D. Tex. 2021) ............................................................... 8

*Beck v. University of Wisconsin Bd. of Regents*,
75 F.3d 1130 (7th Cir. 1996) .......................................................................... 19

*Bostock v. Clayton County*,
140 S. Ct. 1731 (2020)..................................................................................... 17

*Brown v. Ent. Merchs. Ass'n*,
564 U.S. 786 (2011)......................................................................................... 22

*Castano v. Am. Tobacco Co.*,
84 F.3d 734 (5th Cir. 1996) .............................................................................. 6

*Col. Fin. Mgmt. Officer v. Austin*,
No. 8:22-CV-1275-SDM-TGW, 2022 WL 3643512 (M.D. Fla. Aug. 18, 2022)...... passim

*DeOtte v. Azar*,
332 F.R.D. 188 (N.D. Tex. 2019) ...................................................................... 6

*Doe v. San Diego Unified Sch. Dist.*,
142 S.Ct. 1099................................................................................................ 13

*Doster v. Kendall*,
No. 1:22-CV-00084-MWM, 2022 WL 2760455 (S.D. Ohio July 14, 2022) .............. 2, 10

*Doster v. Kendall*,
2022 WL 4115768 (6th Cir. Sept. 9, 2022) ......................................... passim

*Doster v. Kendall*,
No. 1:22-CV-00084-MWM, 2022 WL 2974733 (S.D. Ohio July 27, 2022) .............. 2, 19

*Fjellestad v. Pizza Hut of Am., Inc.*,
    188 F.3d 944 (8th Cir. 1999) .................................................................... 20

*Fulton v. Philadelphia*,
    141 S.Ct. 1868 (2021) ..................................................................... 20, 22

*Gen. Tele. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982)...................... 9, 11, 12

*James* [*v. City of Dallas*],
    254 F.3d [551] [(5th Cir. 2001)] ........................................... 1127 F.4t

*Masterpiece Cakeshop Ltd. v. Colorado Civil Rights Comm'n*,
    138 S. Ct. 1719 (2018)................................................................. 7, 23

*Mindes v. Seaman*,
    453 F.2d 197 (5th Cir. 1971) ........................................................ 17

*Mullen v. Treasure Chest Casino*,
    186 F.3d 620 (5th Cir. 1999) ................................................. 8, 9, 11

*Navy Seal 1 v. Austin*, No. 8:21-cv-02429-SDM-TGW (M.D. Fla.) ............................................. 22

*Navy SEALs 1-26 v. Austin*,
    No. 4:21-cv-01236-O, 2022 WL 1025144 (N.D. Tex. March 28, 2022)................... passim

*Navy Seals 1-26 v. Biden*,
    27 F.4th 336 (5th Cir. 2022) ................................................. 9, 17, 18

*Navy SEALs 1-26 v. Biden*,
    578 F. Supp. 3d 822 (N.D. Tex. 2022) .............................................. 4

*Nken v. Holder*,
    556 U.S. 418 (2009)................................................................. 24

*Opulent Life Church v. City of Holly Springs Miss.*,
    697 F.3d 279 (5th Cir. 2012) ..................................................... 17

*Ramirez v. Collier*,
    142 S. Ct. 1264, 1280 (2022)...................................................... 22

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
    141 S. Ct. 63 (2020).............................................................. 21

*Navy Seal 1 v. Austin*,
    No. 8:21-cv-02429 (M.D. Fla)...................................................... 3

*Slade v. Progressive Sec. Ins.*,
    856 F.3d 408 (5th Cir. 2017) ..................................................... 12

*South Bay United Pentecostal Church, et al. v. Gavin Newsom, et al.*,
    141 S. Ct. 716 (2021) ......................................................................... 13

*Vita Nuova, Inc. v. Azar*,
    No. 4:19-CV-00532-O, 2020 WL 8271942 (N.D. Tex. Dec. 2, 2020) ............................. 7

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ......................................................... 6, 8, 9, 12

*Woodruff v. Caris MPI, Inc.*,
    No. 3:21-CV-2993-B, 2021 WL 5760506 (N.D. Tex. Dec. 3, 2021) .............................. 16

*Zeidman v. J. Ray McDermott & Co.*,
    651 F.2d 1030 (5th Cir. 1981) ........................................................... 8

## Statutes

42 U.S.C. § 2000bb-1…………………………………………………………………………18

## Rules

DoD Instruction 1332.45, *Retention Determinations for Non-Deployable Service Members*, July 30, 2018 (updated April 27, 2021),
    https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/133245p.pdf?ver=2018-08-01-143025-053..........................................................................4

Fed. R. Civ. Proc. 23(a)………………………………………………………………………passim

Fed. R. Civ. Proc. 23(b)…………………………………………………………………6, 15

Fed. R. Civ. Proc. 23(c)……..  ………………………………………………..…………………15

Fed. R. Civ. Proc. 23(g)………………………………………………………………...…12, 15

## Other Authorities

CDC, COVID-19, *Types of Masks and Respirators – Summary of Recent Changes*, Jan 28, 2022, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/types-of-masks.html...... 22

CDC, *Science Brief: SARS-CoV-2 Infection-induced and Vaccine-induced Immunity*, Oct. 29, 2021, www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/vaccine-induced-immunity.html................................................................................ 19

CDC, *Summary of Guidance for Minimizing the Impact of COVID-19…*, August 2022, www.cdc.gov/mmwr/volumes/71/wr/mm7133e1.htm. .................................................... 18, 22

Elie Dolgin, "Omicron thwarts some of the world's most-used COVID vaccines," Nature, Jan. 13, 2022, https://www.nature.com/articles/d41586-022-00079-6; CDC, COVID-19, *Omicron Variant: What You Need to Know* ............................................................................................ 22

Hall, Victoria et al., *Protection against SARS-CoV-2 after COVID-19 Vaccine and Previous Infection*, The New England Journal of Medicine, March 31, 2022, https://www.nejm.org/doi/full/10.1056/NEJMoa2118691 ...................................................... 19

Ryan Morgan, "Coast Guard to scrutinize members requesting religious exemptions for mandatory COVID vaccine, leaked document reveals," American Military News, September 24, 2021, https://americanmilitarynews.com/2021/09/coast-guard-to-scrutinize-members-requesting-religious-exemptions-for-mandatory-covid-vaccine-leaked-document-reveals ..... 4

Defendant Adm. Fagan, U.S. Senate Committee Testimony, May 2022 https://www.youtube.com/watch?v=D6V2caVZ6S0 ............................................................... 3

## I.     <u>INTRODUCTION</u>

By policy, the Coast Guard—indeed, the military as a whole—has granted zero requests for religious accommodation regarding the military's COVID-19 vaccine mandates (other than for those already slated for separation or retirement), while granting exemption requests for secular reasons. The Coast Guard's policy of general religious discrimination has thereby violated the religious-liberty rights of all Coast Guard religious objectors in violation of the Religious Freedom Restoration Act (RFRA) and the First Amendment. Even the military's own Inspector General recently found the military's religious accommodation process is unlawful. **Plaintiffs' request for relief is urgent; the Coast Guard has begun to take steps to separate Plaintiffs and all similarly situated service members.**

Here the Coast Guard is refusing even to accommodate the Coast Guard Academy's 2020 Distinguished Honor Graduate (Officer Alaric Stone), who has since successfully completed four worldwide deployments, transferred to an intelligence analyst position under a "needs of the Service" waiver, and was recently deemed by an evaluator—*after* his religious accommodation request was finally denied—to be "performing well above paygrade," with the "[h]ighest recommendation for future afloat tours," and to have "limitless potential." Stone Decl. ¶ 15, Appx 18. It also denied Non-Commissioned Officer Eric Jackson's accommodation request despite his Commander's express endorsemen that it would pose "no hindrance to operations" or "mission readiness." Jackson Decl. ¶ 28, Appx 167. And on the same day it reprimanded Officer Michael Marcenelle for not being vaccinated, the Coast Guard awarded him the Coast Guard Achievement Medal for his superior performance the past three years. Marcenelle Decl. ¶ 35, Appx 239.

In a related case, this Court issued class-wide relief on behalf of all Navy religious objectors. *Navy SEALs 1-26 v. Austin*, No. 4:21-cv-01236-O, 2022 WL 1025144 (N.D. Tex.

1

March 28, 2022) ("Navy Class Order"). Other courts have issued similar class-wide relief on behalf of all religious objectors in the Air Force and Marines. *Doster v. Kendall*, No. 1:22-CV-00084-MWM, 2022 WL 2974733 (S.D. Ohio July 27, 2022) ("Air Force Class Order");[1] *Col. Fin. Mgmt. Officer v. Austin*, No. 8:22-CV-1275-SDM-TGW, 2022 WL 3643512 (M.D. Fla. Aug. 18, 2022) ("Marines Class Order"). The military branches all operate under the same general policy of discrimination against religious service members, in violation of RFRA and the First Amendment. This Court should now issue relief on behalf of the three named Coast Guard Plaintiffs and class-wide relief on behalf of all Coast Guard religious objectors.

Specifically, the Court should certify the proposed Coast Guard class (the "Class") because the requirements of numerosity, commonality, typicality, and adequacy under Rule 23(a) are satisfied, and Defendants have acted or refused to act on grounds that apply generally to the Class, so relief as to the Class as a whole is appropriate. The Court should appoint Plaintiffs' counsel as Class counsel ("Class counsel") because they are qualified to and will diligently prosecute this action and will fairly and adequately represent the interests of the Class.

The Court should enter a Class-wide temporary restraining order (TRO) and preliminary injunction because the Class is likely to succeed on the merits of its RFRA and First Amendment claims; the 1,200+ Class members face irreparable harm; the balance of hardships weighs in favor of the Class; and Class-wide relief would not be adverse to the public interest. The issues presented are urgent and straightforward. The military cannot even deny it discriminates on the basis of religion. It just believes it can do so legally. It cannot. The Court should issue expedited Class-wide relief.

---

[1] The *Doster* court first issued a TRO before it issued a preliminary injunction. See *Doster v. Kendall*, 2022 WL 2760455, at *10 (S.D. Ohio July 14, 2022).

## II.   <u>BACKGROUND</u>

On August 24, 2021, Defendant Austin issued a COVID-19 vaccine mandate. Ex. 20 to Stone Decl., Appx 139. Also in August 2021, the then-Commandant of the Coast Guard, Karl Schultz, issued a COVID-19 vaccine mandate. Ex. 21 to Stone Decl., Appx 141.

Plaintiffs Stone, Jackson, and Marcenelle timely sought, and the Defendants denied, religious accommodations to the COVID-19 vaccine mandates. Stone Decl., ¶¶ 24-26, Appx 21-24; Jackson Decl., ¶¶ 28-31, Appx 6-7; Marcenelle Decl,, ¶¶ 14-17, 22-28, Appx 233-237. Plaintiffs appealed, and the Coast Guard denied (or purported to deny[2]) those appeals.

Like other branches of the military, the Coast Guard has granted zero religious accommodations to the COVID-19 vaccine mandates (except for some service members already slated for separation or retirement) while it has granted medical exemptions including permanent medical exemptions. Specifically,[3] the Coast Guard has denied more than 1,200 religious accommodation requests. The Coast Guard claims to have "approved" 12 religious accommodation requests but those are for service members already slated for separation or retirement. Requena Decl., ¶7, Appx 286; Stone Decl., ¶ 40, Appx 29; Jackson Decl., ¶ 48, Appx 170; Marcenelle Decl, ¶¶ 48, Appx 242. The Coast Guard claims it has denied 16 and granted at

---

[2] *See* Complaint, Count IV.
[3] All of the service branches are less than transparent in their disclosure of relevant information about vaccination and their denial of religious accommodation requests, but the Coast Guard may be the least transparent. Unlike some of the other service branches, the Coast Guard has not voluntarily, publicly, or periodically updated its vaccination statistics. The Middle District of Florida ordered each branch to file three bi-weekly updates, on January 7, 2022, January 21, 2022, February 4, 2022. *See Navy Seal 1 v. Austin*, No. 8:21-cv-02429 (M.D. Fla), Doc. 40 and 90. Some service branches continued to provide public updates of their statistics beyond February 4, 2022, at least for a period of time, but the Coast Guard has not. The Coast Guard religious-accommodation-request and medical-exemption-request statistics cited here are based on statistics the Coast Guard filed on August 30, 2022 in *Bazzrea v. Mayorkas*, No. 3:22-cv-265 (S.D.Tex), Doc. 22-8, and, to the extent not identified in that document, Defendant Fagan's U.S. Senate Committee testimony in May 2022 (https://www.youtube.com/watch?v=D6V2caVZ6S0; https://www.commerce.senate.gov/services/files/1510A348-949C-42DF-875F-96563B200383).

least eight *permanent* medical exemption requests. The Coast Guard does not claim to have denied any *temporary* medical exemptions requests (or claims that the number is "unknown") and acknowledges that it has granted at least 45 temporary medical exemption requests.

The Coast Guard also offers a blanket exemption for all COVID-19 clinical-trial participants. Exs. 20 and 21 to Stone Decl., Appx 139-142. The clinical trials need not be *vaccine* trials. *Id.* They could be trials of "treatments" or "changes to participants' behavior, such as diet."[4] Even in *vaccine* trials, a participant may receive a placebo instead of the vaccine.[5]

Additionally, as of July 25, 2022, the Coast Guard declared that unvaccinated service members are not "worldwide deployable" and must be involuntarily separated for that reason. Ex. 16 to Stone Decl., Appx 132; and Stone Decl. ¶¶ 27-30, 32, Appx 24-27. But Defendants have an express policy for retaining non-worldwide deployable members on a case-by-case basis. DoD Instruction 1332.45.[6] And two superior officers who work with Plaintiff Stone are non-worldwide deployable for other reasons and yet are permitted to remain to remain in the Coast Guard. Stone Decl. ¶ 31, Appx 26.

A year ago, it was widely reported that the Coast Guard instructed chaplains assessing religious requests to challenge religious objectors to see if the religious objection was a "ruse" while apparently no such instruction was given to those assessing medical or other secular requests.[7] The process of requesting a religious accommodation was itself a ruse. The Inspector General of the Department of Defense itself recently found the military's religious

---

[4] https://clinicaltrials.gov/ct2/about-studies/learn#ClinicalTrials.

[5] *Id.*; *Navy SEALs 1-26 v. Biden*, 578 F. Supp. 3d 822, 837 (N.D. Tex. 2022). And even in a *COVID-19* vaccine trial, the vaccine could be one other than those Defendants are mandating here.

[6] https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/133245p.pdf?ver=2018-08-01-143025-053.

[7] *See*, *e.g.*, https://americanmilitarynews.com/2021/09/coast-guard-to-scrutinize-members-requesting-religious-exemptions-for-mandatory-covid-vaccine-leaked-document-reveals/.

accommodation process is unlawful. Stone Decl. ¶ 40, Appx 29-30. Plaintiff Stone's commanding officer, for example, said that he did not want to discuss religious beliefs because "they didn't matter" to him and prepared a blanket negative endorsement of all religious accommodation requests submitted to him; and Stone has been forbidden reconsideration despite transferring (under a "needs of the Service") waiver from a ship to an intelligence position. Stone Decl., ¶ 27, Appx 12. Plaintiff Marcenelle's commander issued Marcenelle a medal for his superior performance leading missions and using his unique law-enforcement background to de-escalate a dangerous conflict, and less than a week later issued Marcenelle a formal reprimand for being unvaccinated during that same period of superior performance. Marcenelle Decl., ¶ 35, Appx 239. And Plaintiff Jackson has experienced similar contradictory treatment. Jackson Decl. ¶¶ 5, 19, 37, Appx 163, 165, 169.[8]

Plaintiffs seek certification of the Class, appointment of Class counsel, and a Class-wide TRO and preliminary injunction. The proposed Class consists of all members of the United States Coast Guard who (a) are subject to a mandate of the Department of Defense or Coast Guard to receive a COVID-19 vaccine, (b) submitted a request for religious accommodation regarding such mandate based on a sincerely held religious belief, and (c) have received or will receive a final denial of such request from the Department of Defense or Coast Guard. Plaintiffs request a TRO and a preliminary injunction on behalf of the Plaintiffs and the Class as a whole.

## III.   CLASS CERTIFICATION

### A.   LEGAL STANDARD

"The decision to certify is within the broad discretion of the court, but that discretion must be exercised within the framework of rule 23." Navy Class Order, 2022 WL 1025144, at *2

---

[8] Additionally, none of their final denial letters were signed by the proper authority, the Assistant Commandant for Human Resources. Complaint, Count IV.

(quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996)). The Court can certify a class if a plaintiff representative establishes that the proposed class is adequately defined and clearly ascertainable, meets the requirements of Rule 23(a), and demonstrates that the class is one of the types of class actions listed in Rule 23(b). *Id.*

Rule 23(a) provides:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
(1) the class is so **numerous** that joinder of all members is impracticable;
(2) there are questions of law or fact **common** to the class;
(3) the claims or defenses of the representative parties are **typical** of the claims or defenses of the class; and
(4) the representative parties will fairly and **adequately** protect the interests of the class.

Fed. R. Civ. P. 23(a) (emphasis added).

Rule 23(b) provides in relevant part: "A class action may be maintained if Rule 23(a) is satisfied and if… (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Frequently, analysis under Rule 23 may "entail some overlap with the merits of the plaintiff's underlying claim." Navy Class Order, 2022 WL 1025144, at *5 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)).

**B.     THE COURT SHOULD CERTIFY THE CLASS**

**1.     The Class is adequately defined and clearly ascertainable.**

The Class is more than adequately defined and is clearly ascertainable. Navy Class Order, 2022 WL 1025144, at *2; *DeOtte v. Azar*, 332 F.R.D. 188, 196-97 (N.D. Tex. 2019). Defendants are well aware of who has submitted a request for religious accommodation and to whom they have issued a final denial. *Id.* Defendants also will know to whom they issue a final denial in the future. *DeOtte*, 332 F.R.D. at 196-97. The procedures Defendants established for applying for

6

and receiving both initial and final denials from the vaccine mandates are extensive and formal. *See* Exhibits to Plaintiffs' Declarations, Appx 244-254, 46-51, 55-64, 172-173, 178-181, 263-265, 277-278. Before issuing a final determination on a request for accommodation, Defendants require submission of a completed set of materials, twice. *Id.* Moreover, each final denial (the triggering event rendering someone a Class member) is documented in a communication from a superior officer. *Id.* Class membership is therefore instantly and permanently ascertainable by both the Defendants and potential Class members.

The Coast Guard has already certified that it can identify the number of individuals who are in each stage of the process of applying for religious accommodation, in sworn submissions required by the United States District Court for the Middle District of Florida. *See* fn. 3 above. There is no way to count such individuals unless their identities are ascertainable.

Moreover, the proposed class includes all service members who object to the mandated "based on a sincerely held religious belief," and the Coast Guard does not dispute that Plaintiffs have a sincerely held religious belief (or that it has burdened their free exercise). *See* Exhibits to Plaintiffs' Declarations, Appx 52-54, 126, 175-177, 180, 272-274, 279. To Plaintiffs' knowledge, the Coast Guard has not disputed the sincerity of any religious objectors' beliefs (or the burden on their free exercise). And "[i]t hardly requires restating that the government has no role in deciding or even suggesting whether the religious ground for [petitioner's] conscience-based objection is legitimate or illegitimate." *Masterpiece Cakeshop Ltd. v. Colorado Civil Rights Comm'n*, 138 S. Ct. 1719, 1731 (2018). Yet even if individualized Class membership assessments were necessary at a later time to determine who had sincerely held religious beliefs, the Class is more than adequately defined. *See*, *e.g.*, *Vita Nuova, Inc. v. Azar*, No. 4:19-CV-00532-O, 2020 WL 8271942, at *4 (N.D. Tex. Dec. 2, 2020) ("defining the class based on the

7

religious belief of the class members does not render the class unable to be ascertained."); *Bear Creek Bible Church v. EEOC*, 571 F. Supp. 3d 571, 601 (N.D. Tex. 2021) ("The Fifth Circuit upholds class certification even when a definition necessitates individualized membership assessments that might *follow* litigation, so long as the class definition is sufficiently clear.") (citing *Mullen v. Treasure Chest Casino*, 186 F.3d 620, 624-25 (5th Cir. 1999)).

### 2. Plaintiff and the Class satisfy the requirements of Rule 23(a).

"Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate," and it involves "four requirements—numerosity, commonality, typicality, and adequate representation." *Dukes*, 564 U.S. at 349. Plaintiffs and the Class satisfy these requirements.

### a. The Class is so numerous that joinder of all members is impracticable.

There is no fixed number of members that satisfies the numerosity rule, but courts regularly certify classes with far fewer than the number of potential class members here. *See*, *e.g.*, *Mullen*, 186 F.3d at 624 ("The size of the class in this case—100 to 150 members—is within the range that generally satisfies the numerosity requirement."). "However, the actual number of class members is not necessarily the determinative question, for the proper focus (under Rule 23(a)(1)) is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." Navy Class Order, 2022 WL 1025144, at *4 (quoting *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981)) (cleaned up).

The Coast Guard has received more than 1,200 religious accommodation requests and has granted none of them (except for those already slated for separation or retirement). Joinder of all class members is impractical. Plaintiffs satisfy the numerosity requirement.

**b.   There are questions of fact and law common to the Class.**

The test for commonality "is not demanding." *Mullen*, 186 F.3d at 625. Issues common to

all members of the Class include:

- Whether the Coast Guard has not conducted individualized assessment of Class members' religious accommodation requests, which demonstrates a pattern of disregard for RFRA and/or First Amendment rights. Navy Class Order, 2022 WL 1025144, at *4; *Navy Seals 1-26 v. Biden*, 27 F.4th 336 (5th Cir. 2022); *Doster v. Kendall*, 2022 WL 4115768, at *5 (6th Cir. Sept. 9, 2022).

- Whether all religious accommodation requests the Coast Guard claims to have approved are for service members already slated for separation or retirement.

- Whether the Coast Guard has a policy, practice, or procedure of not conducting "to the person" assessment to which service members are entitled under RFRA and/or the First Amendment.

- Whether the Coast Guard can demonstrate that it has a compelling interest in denying any, or all, religious exemptions from the mandates when the Coast Guard is almost universally vaccinated, COVID-19 vaccination does not prevent COVID-19 infection or transmission, the CDC acknowledges that the vaccinated and unvaccinated should be treated the same, and the Coast Guard grants exemptions for secular purposes.

- Whether the Coast Guard can demonstrate that vaccination of a religious service member is the least restrictive means of preventing the spread of COVID-19 when the Coast Guard is almost universally vaccinated, COVID-19 vaccination does not prevent COVID-19 infection or transmission, the CDC acknowledges that the vaccinated and unvaccinated should be treated the same, and the Coast Guard grants exemptions for secular purposes.

Resolution of any one these common issues, and especially all of them, would resolve "in

one stroke" a question that is "central to the validity of each class member's claim." *Dukes*, 564

U.S. at 350. Put another way, all Class members have suffered a common injury that is

susceptible to Class-wide resolution: wrongful denial of religious accommodation requests

pursuant to an illegal policy, practice, or procedure. *See id.*

Commonality may also be demonstrated by showing that the defendants "operated under

a general policy of discrimination." *Id.* at 353 (quoting *Gen. Tele. Co. of Sw. v. Falcon*, 457 U.S.

147, 159 n.15 (1982)). This is precisely what Plaintiffs have alleged: a general policy of discriminating against religious service members in violation of RFRA and the First Amendment. As this Court held in the Navy case:

> Here, the potential class members have suffered the "same injury," arising from violations of their constitutional rights. Each has submitted a religious accommodation request, and each has had his request denied, delayed, or dismissed on appeal. Exactly zero requests have been granted. And while Defendants encourage this Court to disregard the data, it is hard to imagine a more consistent display of discrimination.

Navy Class Order, 2022 WL 1025144, at *5. *See also Doster*, 2022 WL 2760455, at *5; Marines Class Order, 2022 WL 3643512, at *12; *Doster*, 2022 WL 4115768, at *3 (noting allegations of a "'systematic effort' by the Department [of Defense] to deny service members' requests for religious exemptions categorically," while granting secular exemptions).

This was confirmed in the recent publication of a Memo issued by the Department of Defense Inspector General ("Inspector General Memo") after his office investigated the military's process for assessing requests for religious accommodations to the COVID-19 vaccine mandate. Ex. 26 to Stone Decl. ¶ 40, Appx 152-156. As this Court in the Navy case found and other courts have found, the Inspector General "found a trend of generalized assessments rather than the individualized assessment that is required by Federal law and DoD and Military Service policies." *Id.*[9] He also concluded that, at most, "the average review period was about 12 minutes for each package," which is likely "insufficient to process each request in an individualized manner." *Id.*

---

[9] Indeed, none of the Plaintiffs' appeal denial memoranda mention the Plaintiffs' respective duties, individual health risks, natural immunity, compliance with mitigation protocols, availability of less restrictive means, additional facts and arguments submitted in plaintiffs' respective appeal memoranda, or a statement of the Coast Guard's alleged compelling interest in denying an accommodation to the respective Plaintiffs.

The military including the Coast Guard has manifestly operated under a general policy of discrimination in violation of RFRA and the First Amendment.

### c.    Plaintiffs' claims are typical.

"Like commonality, the test for typicality is not demanding. It 'focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent.'" Navy Class Order, 2022 WL 1025144, at *6 (quoting *Mullen*, 186 F.3d at 625). "The commonality and typicality requirements of Rule 23(a) tend to merge." Navy Class Order, 2022 WL 1025144, at *6 (quoting *Falcon*, 457 U.S. at 158 n.13).

Plaintiffs' claims are typical. They are members of the Coast Guard; they are purportedly subject to mandates to receive a COVID-19 vaccine; they submitted requests for religious accommodation regarding such mandates based on sincerely held religious beliefs; they received final denials; no compelling interest justifies the mandate; and Defendants cannot show that vaccination is the least restrictive means, *i.e.*, actually necessary by comparison to alternative measures, of pursuing any conceivable compelling interest.

Even if there may be circumstances unique to these Plaintiffs or unique to a certain subset of the Class, class members have the same essential characteristics. *See* Navy Class Order, 2022 WL 1025144, at *7 ("Factual differences do not defeat typicality. All members of the class have unsuccessfully requested religious accommodation. The Named Plaintiffs' claims 'have the same essential characteristics' of the Navy Class and subclasses. *See James* [*v. City of Dallas*], 254 F.3d [551,] 571 [(5th Cir. 2001)]. Thus, despite factual differences, the Named Plaintiffs' causes of action are typical of the class.").

### d. Plaintiffs will fairly and adequately protect the interests of the Class.

"Under the adequacy requirement, courts consider '(1) the zeal and competence of the representatives' counsel; (2) the [willingness] and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees; and (3) the risk of conflicts of interest between the named plaintiffs and the class they seek to represent." Navy Class Order, 2022 WL 1025144, at *7 (quoting *Slade v. Progressive Sec. Ins.*, 856 F.3d 408, 412 (5th Cir. 2017)). The commonality and typicality requirements "tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest." *Dukes*, 564 U.S. at 349 n.5 (quoting *Falcon*, 457 U.S. at 157-158, n. 13).

### 1) Counsel are zealous and competent.

Class counsel are zealous and competent. As experienced religious liberty advocates with the backing of a longstanding, national public interest law firm, Plaintiffs' counsel will diligently prosecute the case on behalf of Plaintiffs and the entire Class. In appointing Class counsel, the Court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

**i.** Plaintiffs' counsel have done substantial work identifying and investigating potential claims in this action and other related potential actions. *See* Hochschild Decl.; Jonna Decl.; Hodes Decl. ("Attorney Declarations"). Six of Plaintiffs' attorneys listed below are associated with the Thomas More Society, a national religious-liberty law firm that is able to provide pro

12

bono representation to its clients. As such, counsel have been contacted, both before and during the current action, by many members of the Coast Guard and other branches of the military with interests similar to Plaintiffs'. Hochschild Decl. ¶ 12.

**ii.** Counsel have substantial experience in handling class actions, other complex litigation, and the types of claims in this case, as detailed, for example, in the Attorney Declarations. These attorneys alone[10] have served as counsel in numerous different class actions and, as Thomas More Society attorneys, have engaged extensively in litigation involving religious liberty and First Amendment rights, among other complex subject matters. *See* Attorney Declarations. For example, these attorneys represent Air Force service members in *Air Force Officer v. Austin*, No. 5:22-CV-00009-TES, 2022 WL 468799 (M.D. Ga. Feb. 15, 2022).  In that case, these attorneys obtained a first-in-the-nation preliminary injunction on behalf of an Air Force service member and have pending motions seeking class-wide relief. (That case is currently stayed pending final resolution of *Doster* in which a court granted class-wide relief to religious airmen). Also, Mr. Jonna, for example, successfully represented numerous churches in litigation arising out of the COVID-19 restrictions on houses of worship. Jonna Decl., ¶ 6. One of those cases, which Mr. Jonna argued at the District Court level three times, resulted in an historic win when the Supreme Court struck down California's indoor worship ban. *See id.*; *South Bay United Pentecostal Church, et al. v. Gavin Newsom, et al.*, 141 S. Ct. 716 (2021). Mr. Jonna also helped successfully delay the vaccine mandate imposed by the San Diego Unified School District in *Doe v. San Diego Unified Sch. Dist.*, 142 S.Ct. 1099, 2022 WL 498812 (Feb. 18, 2022) (denying application without prejudice due to cessation of mandate); Jonna Decl. ¶ 11.

---

[10] While Plaintiffs believe the three attorney declarations submitted herewith are more than sufficient to show counsel's adequacy, the other four attorneys for Plaintiffs listed below also have substantial relevant experience and can submit declarations of their own upon the Court's request.

**iii.** Counsel are well-versed in the applicable law, as evidenced by their experience and success in the related *Air Force Officer* case, and by their experience in numerous other religious liberty cases as attorneys with the Thomas More Society. *See* Attorney Declarations.

**iv.** As attorneys associated with the Thomas More Society, counsel can commit any and all necessary resources to representing the Class. *See* Attorney Declarations.

### 2) Plaintiffs are willing and able to serve as class representatives.

Plaintiffs are willing and able to take an active role in and control the litigation and to protect the interests of all Class members. *See* attached declarations of Plaintiffs. They all have a strong personal interest in vindicating their legal rights, including their fundamental religious-liberty rights, and the same legal rights of all similarly situated fellow service members. *Id.*

### 3) No conflict exists.

Nothing in the record suggests any conflicts between Plaintiffs and the Class. *See* Navy Class Order, 2022 WL 1025144, at *7-8. Plaintiffs are aware of some other cases involving Coast Guard service members, but to Plaintiffs' knowledge there is no motion for class-wide relief pending in those cases, and they otherwise present no conflict. As this Court explained in the Navy case:

> Simultaneous litigation in other courts does not present a conflict here. To the contrary, the injunctive relief that Plaintiffs seek will benefit all religiously opposed Navy servicemembers who are presently involved in other vaccine mandate litigation. Potential class members will not be harmed by class-wide relief.

*Id.* The same reasoning applies here. There's no conflict.

14

      3.        **Plaintiffs and the Class satisfy the requirements of Rule 23(b)(2).**

The Court should certify the Class under Rule 23(b)(2) because Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). As this Court held in the Navy case, "By uniformly denying potential class members' religious accommodation requests, the Navy has 'acted . . . on grounds that apply generally to the class.' And because potential class members may receive relief from a single injunction, the claim is appropriate for class-wide resolution under Rule 23(b)(2)." Navy Class Order, 2022 WL 1025144, at *9. Further, this is a civil rights case, and "[c]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of lawsuits permitted under Rule 23(b)(2). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Accordingly, Plaintiffs have met the requirements of Rule 23(b)(2); *accord Doster*, 2022 WL 4115768, at *5.

## IV.   <u>APPOINTMENT OF CLASS COUNSEL</u>

The Court should appoint Plaintiffs' counsel as Class counsel under Rule 23(g). An order that certifies a class action must appoint class counsel under Rule 23(g). Fed. R. Civ. P. 23(c)(1)(B). As set forth in the attached attorney declarations and as discussed above in Section II.B.2.d(1), Plaintiffs' counsel is qualified to and will diligently prosecute this action. Fed. R. Civ. P. 23(g)(1)(A). Plaintiffs' counsel will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The Court should therefore appoint Plaintiffs' counsel as Class counsel.

## V.     CLASS-WIDE TRO AND PRELIMINARY INJUNCTION

### A.     LEGAL STANDARD

A TRO or preliminary injunction is appropriate where, as here, plaintiffs establish "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable harm, (3) the balance of hardships weighs in the movants' favor; and (4) the requested relief will not disserve the public interest." Navy Class Order, 2022 WL 1025144, at *3; *Woodruff v. Caris MPI, Inc.*, No. 3:21-CV-2993-B, 2021 WL 5760506, at *1 (N.D. Tex. Dec. 3, 2021). The same standard applies to both a request for a TRO and a request for a preliminary injunction. *Id.* at *1 n.2.. Plaintiffs and the Class satisfy the standard.

### B.     THE COURT SHOULD ISSUE A CLASS-WIDE TRO AND INJUNCTION

The Court should grant Class-wide relief for the same reason it granted Class-wide relief in the Navy case: it is indisputable that Defendants as a policy deny religious exemptions to the COVID-19 vaccination while they grant medical accommodation requests. Navy Class Order, 2022 WL 1025144, at *1, 11-12. The Coast Guard also, for example, grants secular exemptions to the "worldwide deployability" standard.

The Class here is likely to succeed on the merits of its RFRA and First Amendment claims, just as the Court found the Navy class is; the 1,200+ Coast Guard Class members face irreparable harm as the Navy class members did; the balance of hardships weighs in the Class's favor, as in the Navy case; and a Class-wide TRO and injunction would not be adverse to the public interest, like the Navy class-wide injunction. For all of these reasons, a Class-wide TRO and injunction are appropriate.

### 1.    The Court can and should hear Plaintiffs' claims.

As a preliminary matter, federal courts are "empowered to adjudicate RFRA's application to" service members such as Plaintiffs." *Navy Seals 1-26*, 27 F.4th at 346. As the Fifth Circuit suggested, RFRA displaces judicial abstention doctrine for the same reasons it trumps the operation of other federal laws. *Id.* (citing *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020)).[11]

### 2.    The Class is likely to succeed on the merits of its RFRA and First Amendment claims.

The Class is likely to succeed on the merits of both its RFRA and First Amendment claims. As to the first claim, RFRA provides:

> Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

---

[11] Even were this Court to consider abstaining from adjudicating this case, it would find that Plaintiffs' claims and those of the putative class easily meet the standard for justiciability of cases reviewing military decisions set forth in *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971). As a threshold matter, Plaintiffs allege that the military has deprived them of their constitutional right to free exercise of their religion in violation of RFRA and the First Amendment. *See Navy Seals 1-26*, 27 F.4th at 347. And, Plaintiffs are all in receipt of a final denial of their request for religious exemption, so they have exhausted their administrative remedies. *Id.* at 347 n.10; *Air Force Officer*, 2022 WL 468799, at *6.

Moreover, the Fifth Circuit and myriad other courts have recently decided that all four *Mindes* factors favor justiciability of claims such as Plaintiffs'. *See*, *e.g.*, *Navy Seals 1-26*, 27 F.4th at 348. The loss of religious freedoms is "irreparable injury." *Id.*; *Opulent Life Church v. City of Holly Springs Miss.*, 697 F.3d 279, 295 (5th Cir. 2012). Any claim that the Coast Guard would be "seriously impeded" in the "performance of vital duties" by accommodating the Plaintiff class is logically undermined by the Coast Guard's granting of secular exemptions without evident disruption in its operations. *See Air Force Officer*, 2022 WL 468799, at *7. Finally, no military expertise is implicated in the Coast Guard's decisions to deny all religious exemptions. Indeed, quite the opposite: "Generals don't make good judges—especially when it comes to nuanced constitutional issues." *Id.* at *8 (quoted in *Navy Seals 1-26*, 27 F.4th at 349.). "Accordingly, even under *Mindes*, Plaintiffs' claims are justiciable." *Navy Seals 1-26*, 27 F.4th at 349. And the Supreme Court's grant of a "partial stay" in *Navy Seals 1-26* was not to the contrary, but merely limited the scope of the relief that could be granted given the unique circumstances of certain Navy Special Warfare soldiers. *Austin v. Navy Seals 1-26*, 142 S.Ct. 1301 (2022).

42 U.S.C. § 2000bb-1. As this Court held in the Navy case, by making COVID-19 vaccination a condition of continued service in the military, Defendants have substantially burdened service members' religious beliefs. Navy Class Order, 2022 WL 1025144, at *11. The same conclusion follows for the Plaintiffs here, all of whom likewise have undisputed sincerely held religious objections to COVID-19 vaccination and received final denials of their requests for religious accommodations from the military's COVID-19 vaccine mandate. Stone Decl., ¶¶19-22, Appx 19-21; Jackson Decl., ¶¶ 25-27, Appx 167; Marcenelle Decl, ¶¶ 10-13, Appx 233.

The Coast Guard cannot point to a compelling governmental interest that justifies this substantial burden on the religious beliefs of service members. The Coast Guard claims a compelling governmental interest in vaccinating all service members and that it has individually assessed each religious accommodation request, but it has denied **all** religious requests (except for those already slated for separation or retirement), has granted many medical exemptions, and has a blanket exemption for clinical-trial participants. *See* Section I above. The Coast Guard's willingness to grant such secular exemptions "belies this insistence on complete uniformity and widespread vaccination." Navy Class Order, 2022 WL 1025144, at *12.  It is "illogical" that Plaintiffs' religious-based refusal to take a COVID-19 vaccine would seriously impede military function when the Coast Guard has numerous service members still on duty with secular exemptions "who are just as unvaccinated as the Plaintiffs." *Navy Seals*, 27 F.4th at 349; Navy Class Order, 2022 WL 1025144, at *12; *Air Force Officer*, 2022 WL 468799, at *7. This is especially true now that the "CDC's prevention recommendations no longer differentiate based on a person's vaccination status,"[12] and given that Plaintiffs have natural immunity.[13]

---

[12] CDC, *Summary of Guidance for Minimizing the Impact of COVID-19…, August 2022*, www.cdc.gov/mmwr/volumes/71/wr/mm7133e1.htm (stating also that the primary series of COVID-19 vaccination "provides minimal protection against infection and transmission").

Coast Guard authorities have otherwise exhibited a clear intent to unlawfully discriminate against religious service members. For example, Plaintiff's Stone's commanding officer stated that religious beliefs "didn't matter" to him,[14] prepared a blanket negative endorsement of all religious accommodation requests submitted to him, and refused to even discuss possible means of accommodation. Stone Decl., ¶ 23, Appx 21. Defendants then denied Stone's requested accommodation purportedly because of risks of being aboard a populated ship—but they refused to reconsider his request when he transferred to a shore-based intelligence position (which he was allowed under a "needs of the Service" exception to a policy otherwise prohibiting such transfers for unvaccinated service members). *Id.* ¶¶ 27, 32, Appx 12-13, 14-15 .The fundamental discriminatory illegality of the entire process is sufficient to make it probable that each and every denial of a religious accommodation to a Class member fails to satisfy strict scrutiny. Navy Class Order, 2022 WL 1025144, at *12; Marines Class Order, 2022 WL 3643512, at *16; Air Force Class Order, 2022 WL 2974733, at *10. Such bias alone is enough for the class to prevail. *Doster*, 2022 WL 4115768, at *4.[15]

---

[13] Hall, Victoria et al., *Protection against SARS-CoV-2 after COVID-19 Vaccine and Previous Infection*, The New England Journal of Medicine, March 31, 2022, https://www.nejm.org/doi/full/10.1056/NEJMoa2118691 (showing that natural immunity from COVID-19 endures longer than vaccine immunity); *see also* CDC, *Science Brief: SARS-CoV-2 Infection-induced and Vaccine-induced Immunity*, Oct. 29, 2021 ("The immunity provided by vaccine and prior infection are *both high* but not complete"; also noting meta-analysis finding "no significant difference in the overall level of protection provided by" each), www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/vaccine-induced-immunity.html.

[14] *Cf. Air Force Officer*, 2022 WL 468799, at *1, *1 n.1 ("'Your religious beliefs are sincere, it's just not compatible with military service.' This is how Plaintiff's chain of command paraphrased why he thought she was denied a religious exemption from a COVID-19 vaccine. True, he undoubtedly spoke for himself, but when considering the Air Force's abysmal record regarding religious accommodations requests, it turns out he was dead on target.").

[15] Additionally, Defendants' failure to provide Plaintiffs' with final denial letters issued by the proper authority is more evidence of discriminatory bias. Complaint, Count IV. *See Beck v. University of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996) (procedural

Also notable is that the Inspector General Memo is dated June 2, 2022, but Defendant Austin's letter forwarding it to his Under Secretary and military branch leaders for unspecified "appropriate action… as necessary and appropriate" is dated September 2, 2022—**three months** after the Inspector General Memo was issued, during which period Defendants continued to reprimand and/or take steps to imminently discharge Plaintiffs for their religious refusal to obtain COVID-19 vaccination. Ex. 26 to Stone Decl, Appx 152-156. Defendants have taken no action to remedy the unlawful policy the Inspector General identified.

Moreover, the fact Defendants have "chos[en] to grant" year-long "temporary exemptions to service members" like these Plaintiffs without incident (*Doster*, 2022 WL 4115768, at *6), is itself evidence against the government's "contention that its [COVID-19 vaccine] policies can brook no departures," *Fulton v. Philadelphia*, 141 S.Ct. 1868, 1882 (2021).

Even if Defendants could demonstrate lack of discrimination or an applicable compelling interest (which they cannot), they cannot demonstrate that the mandate is the least restrictive means of furthering a compelling interest. The military claims that it requires all service members to be "worldwide deployable," that declining the shot renders a service member not "worldwide deployable," and therefore that the shot is the least restrictive means. The military is mistaken. First, the military does not in fact require that all service members be "worldwide deployable." For example, two officers in Plaintiff Stone's own office are not "worldwide deployable": one cannot receive a mandated vaccine for another disease due to medical complications; the other periodically takes a certain refrigerated medication that is not guaranteed to be accessible worldwide. Stone Decl., ¶¶ 31, Appx 14. Second, being unvaccinated against COVID-19 does not render a service member not "worldwide deployable." As the

---

improprieties in disability accommodation process can be evidence of "bad faith"); *accord Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 952 (8th Cir. 1999).

20

Middle District of Florida held in the Marines case, the military "cannot evade RFRA by defining the conditions of service to exclude the possibility of an accommodation. This definitional sleight of hand evades the inquiry that RFRA demands: whether the Marine Corps's generalized interest in worldwide deployability is materially impaired by tolerating a few religious objectors and accommodating their continued service to the Marine Corps despite the generalized policy of worldwide deployability." Marines Class Order, 2022 WL 3643512, at *17.

In any event, Defendants have not otherwise shown and cannot show that the mandate is the least restrictive means of furthering a compelling governmental interest. This is exemplified by the Coast Guard's lack of compelling interest and of narrow tailoring in applying the mandates in the specific circumstances of the three Plaintiffs here. They are accomplished service members who have honorably served this country. Stone Decl., ¶¶ 4-20, Appx 12-20; Jackson Decl., ¶¶ 3-7, Appx 162-163; Marcenelle Decl, ¶¶ 3-7, 35, Appx 231-232, 239. Their service has been exemplary throughout the pandemic, both before and after the vaccine became available, they were recognized for their superior performance despite having contracted COVID-19 themselves in the previous two years, and the Coast Guard has successfully counted on them to continue their missions, often while their vaccinated coworkers (and the Commander in Chief and Defendant Austin) quarantined with COVID-19. Stone Decl., ¶¶ 4-20, Appx 12-20; Jackson Decl., ¶¶ 3-7, 20-21, Appx 162-163, 165-166; Marcenelle Decl, ¶¶ 3-7, Appx 231-232.

Meanwhile, the alternative precautions the Coast Guard makes available and deems sufficient for its service members with secular exemptions are plainly available to the three Plaintiffs as well. *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020). And, with the passage of time, the mandates have become increasingly less defensible as the CDC, to which the military claims to defer, updates its prevention guidelines to recognize that the

vaccinated and unvaccinated should be treated the same,[16] the effectiveness of certain alternative precautions and natural immunity become more clear,[17] and the effectiveness of COVID-19 vaccination becomes more doubtful.[18] These factors make it ever less likely that mandatory vaccination of the relatively small proportion of service members who cannot receive it for religious reasons is "actually necessary" (as it must be) to achieve the military's interests. *See Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 799 (2011).[19]

Further, Plaintiffs' religious accommodation requests were all denied because of the mere hypothetical possibility that they could become seriously ill and undermine military readiness. Ex. 10 to Stone Decl., Appx 52-54; Ex. 1 to Jackson Decl., Appx 172-173; Ex. 4 to Marcenelle Decl., Appx 272-274. But "[s]uch speculation is insufficient to satisfy strict scrutiny." *Fulton*, 141 S. Ct. at 1882; *Ramirez v. Collier*, 142 S. Ct. 1264, 1280 (2022) ("conjecture" about "hypothetical" occurrences "in some future case" insufficient to satisfy RFRA's "sister statute" in prison context). And indeed, there is no actual "indication in the record that [Plaintiffs] would cause the sorts of disruptions that respondents fear." *Ramirez*, 142 S. Ct. at 1280.

---

[16] CDC, *supra* n.13.

[17] *Id.*; CDC, *Types of Masks and Respirators – Summary of Recent Changes*, Jan 28, 2022 "Masks and respirators are effective at reducing transmission of SARS-CoV-2 . . . when worn consistently and correctly," and N95 masks "filter at least 95% of particles in the air"), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/types-of-masks.html.

[18] *See, e.g.*, Elie Dolgin, "Omicron thwarts some of the world's most-used COVID vaccines," Nature, Jan. 13, 2022, https://www.nature.com/articles/d41586-022-00079-6; CDC, COVID-19, *Omicron Variant: What You Need to Know* ("[A]nyone with Omicron infection can spread the virus to others, even if they are vaccinated."). Notably, the Commander in Chief and Defendant Austin, for example, have each at least **twice** contracted COVID-19 while being vaccinated. *See*, *e.g*, https://www.politico.com/news/2022/08/15/defense-secretary-austin-tests-positive-for-covid-00051887.

[19] *See also* Doc. 131-1 filed March 9, 2022, in *Navy Seal 1 v. Austin*, No. 8:21-cv-02429-SDM-TGW (M.D. Fla.) (quoting commander who acknowledged more than six months ago that "[w]ith high levels of population immunity from both vaccinations and infections, the risk of medically significant disease, hospitalization, and death from COVID-19 has been greatly reduced").

For these reasons, the Class is likely to prevail on the merits of its claim that application of the mandate to the entire Class violates RFRA.

The Class is also likely to succeed on its First Amendment claim. The Coast Guard has granted at least 45 secular exemptions—that is, 45 or more medical exemptions and an unknown number of clinical-trial-participation exemptions and —and has not approved any or essentially any of the 1,200+ religious accommodation requests (with at least 881 **final** denials). In other words, the Coast Guard is considering and granting secular requests while it is not properly considering and is then denying all or essentially all religiously based requests. *See also* DoD Instruction 1332.45 discussed above. By treating religious-based accommodation requests less favorably than secular requests, the Coast Guard is implementing the mandates in a manner that is not neutral toward, and indeed strongly disfavors, religion. Navy Class Order, 2022 WL 1025144, at *12; *See Doster*, 2022 WL 4115768, at *5 (citing *Masterpiece Cakeshop,* 138 S. Ct. at 1731). Plaintiffs have all sought and been finally denied religious accommodations from the military's COVID-19 vaccine mandate, while fellow Coast Guard service members have been allowed exemptions for secular reasons. Strict scrutiny thus applies, and the Mandates fail the strict scrutiny required by the First Amendment for the same reasons they cannot satisfy it under RFRA, as explained above.

### 3.   Irreparable injury will result absent relief.

Plaintiffs face irreparable harm. Defendants are applying monumental pressure on thousands of service members to violate their religious beliefs by threatening to end their careers in the Coast Guard if they do not forsake them, in violation of RFRA and the Constitution. Navy Class Order, 2022 WL 1025144, at *11. Indeed, in the form letter denying service members' religious accommodation requests, service members are informed that they are "subject to all

punitive and administrative consequences for failing to comply." *See* initial denial letters, exhibits to Plaintiffs' Declarations, Appx 54, 177, 274.  "Plaintiffs have suffered the serious injury of infringement of their religious liberty rights under RFRA and the First Amendment." Navy Class Order, 2022 WL 1025144, at *5. "The crisis of conscience imposed by the mandate is itself an irreparable harm . . . The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id.* at *5 (internal citations and quotation marks omitted). As such, irreparable injury to the Class will result absent relief. *Id.* at *13.

### 4.   The balance of hardships weighs in the Class's favor, and a TRO or injunction will not disserve the public interest.

"The final two elements of the preliminary injunction standard—the balance of the harms and whether an injunction will disserve the public interest—must be considered together. 'These factors merge when the Government is the opposing party.' *Id.* at *13 (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Like the Navy class-wide injunction, a TRO or injunction here would "not disserve the public interest because it prevents constitutional deprivations." *Id.* And "Plaintiffs' loss of religious liberties outweighs any [purported] forthcoming harm" to the Coast Guard. *Id.* As of May 2022, approximately 98% of active-duty Coast Guard service members are vaccinated.[20] Any harm the Coast Guard may claim to suffer in the future is speculative. The public interest lies squarely on the side of retaining these service members who are currently engaged in protecting and defending our country and contributing to military readiness, especially given the serious recruiting problems the military is facing. Stone Decl., ¶ 35, Appx 28-29.

---

[20] www.commerce.senate.gov/services/files/1510A348-949C-42DF-875F-96563B200383.

**VI.** **CONCLUSION**

Class-wide relief would allow 1,200+ service members to remain in service or be reinstated, maintaining the strength of the military while simultaneously protecting the fundamental religious rights of service members. The Court should therefore certify the Class, appoint Plaintiffs' counsel as Class counsel, and issue a TRO and preliminary injunction in favor of Plaintiffs and the Class.

Dated: September 16, 2022

Respectfully submitted,


                                                   /s/ Charles W. Fillmore
                                                   _____

Stephen Crampton*                                  Charles W. Fillmore
THOMAS MORE SOCIETY – Senior Counsel               State Bar # 00785861
PO Box 4506                                        H. Dustin Fillmore III
Tupelo, MS 38803                                   State Bar # 06996010
(662)255-9439                                      THE FILLMORE LAW FIRM, L.L.P.
scrampton@thomasmoresociety.org                    201 Main Street, Suite 700
                                                   Fort Worth, TX 76102
Michael McHale*                                    (817)332-2351
THOMAS MORE SOCIETY – Counsel                      chad@fillmorefirm.com
10506 Burt Circle, Ste. 110                        dusty@fillmorefirm.com
Omaha, NE 68114
(402)501-8586                                      Nathan Loyd*
mmchale@thomasmoresociety.org                      THOMAS MORE SOCIETY – Special Counsel
                                                   5101 Old Highway 5, Box 442
Adam S. Hochschild*                                Lebanon, GA 30146
Hochschild Law Firm                                (559)744-3664
THOMAS MORE SOCIETY – Special Counsel              nathaniel.loyd@thomasmoresociety.org
PO Box 401
Plainfield, VT 05667
(314)503-0326
adam@hochschildlaw.com

Mary Catherine Hodes*
THOMAS MORE SOCIETY – Special Counsel
112 S. Hanley Rd., Second Floor
Clayton, MO 63105
(314)825-5725
mchodes@thomasmoresociety.org

Paul M. Jonna*
LiMandri & Jonna LLP
THOMAS MORE SOCIETY – Special Counsel
P.O. Box 9120
Rancho Santa Fe, CA 92067
(858)759-994
pjonna@limandri.com

* *pro hac vice* applications forthcoming

*Counsel for Plaintiffs*

26