UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **ALARIC STONE**, **ERIC JACKSON**, and **MICHAEL MARCANELLE**, on behalf of themselves and all others similarly situated, | )<br>)<br>)<br>) |
| Plaintiffs, | ) Case No.<br>)<br>) |
| v. | )<br>) |
| **ALEJANDRO N. MAYORKAS**, in his official capacity as Secretary of Homeland Security, **LLOYD J. AUSTIN, III**, in his official capacity as Secretary of Defense, **LINDA L. FAGAN**, in her official capacity as Commandant of the Coast Guard, and **BRIAN K. PENOYER**, in his official capacity as Assistant Commandant for Human Resources of the Coast Guard, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

### DECLARATION OF BOATSWAIN'S MATE 1ST CLASS PETTY OFFICER ERIC JACKSON

Pursuant to 28 U.S.C. § 1746, I, Eric Jackson, under penalty of perjury declare as follows:

1. I am over the age of eighteen and am competent to make this declaration.

2. I am a non-commissioned officer, a Boatswain's Mate 1st Class Petty Officer, in the United States Coast Guard.

3. In my current position, I supervise real-time Coast Guard operations for Coast Guard Station South Padre Island. My duties include coordinating building security and directing live maritime operations (including interdictions, rescues, and other safety events). I am also completing my local qualifications to resume performing maritime operations, such as boardings, interdictions, inspections, live fire training, and piloting boats. My responsibilities will further

1

include law enforcement and boarding operations. Additionally, among other duties, I help train new Coast Guard service members in interdiction operations by piloting "Target of Interest" boats. In this role, I use my years of experience in often hostile interdictions to simulate evasive maneuvers I have seen throughout my career, and pass down that vital knowledge to the next generation of Coast Guard service members.

4. I have served in active service with the Coast Guard for more than 18 years.

5. The military has rewarded me with numerous medals for my service, including the Coast Guard Special Operations Service Ribbon just this year. I earned this award by serving with a rapid-response interdiction team uniquely trained to intercept human smugglers off the coast of California. My team and I halted many smuggling boats, often loaded with over twenty migrants. We apprehended the captains and transferred migrants to Customs and Border Patrol. Should I be allowed to complete my local qualifications, I would likely resume using my many years of experience in performing similar operations.

6. Before I joined the Coast Guard, my home was in the Northern District of District of Texas (Arlington, Texas).

7. I joined the Coast Guard in 2004. From approximately 2004 to 2006, the Coast Guard assigned me to a duty station in Hawaii. From approximately 2006 to 2010, the Coast Guard assigned me to a duty station in New Jersey. From approximately 2010 to 2018, the Coast Guard assigned me to a duty station in Louisiana. From approximately 2018 to June 2022, the Coast Guard assigned me to a duty station in California. In July 2022, the Coast Guard assigned me to a duty station on South Padre Island, Texas. I have never considered any of those duty stations to be my permanent home.

8. My last move, to South Padre Island in July 2022, occurred despite a Coast Guard policy that I understand prohibits such transfers for unvaccinated personnel. I did not expect a transfer due to this policy. However, I was told that the policy was waived for my case due to the needs of the Coast Guard. I was forced to move my family from California to Texas on short notice.

9. Since my transfer required a waiver and only occurred due to the Coast Guard's needs, and since a transfer typically incurs a service commitment, I was led to believe that I could continue serving with the Coast Guard until my current enlistment expired.

10. My Coast Guard "home of record" is, and always has been, in the Northern District of Texas.

11. When I have voted in the past, I have voted as a resident of the Northern District of Texas. I have never voted as a resident of anywhere else. I intend to vote as a resident of the Northern District of Texas in the future.

12. Throughout my career in the Coast Guard, I have always considered myself a Texas resident for purposes of any state income tax requirements, because Texas does not have an income tax I have not paid state income tax, and I have never filed a state income tax return for any other state or paid state income tax to any other state.

13. I plan to reside in the Northern District of Texas when I retire or am separated from the Coast Guard. I have close family in the Northern District of Texas (and close family has lived there all my life), my mother told me that I am her sole intended heir, she owns a house and acreage in the Northern District of Texas (Weatherford, Texas), and I plan to reside at that property with my family upon retirement or separation whenever that may occur.

14. When I have been on leave from Coast Guard service, I have often stayed with my family at that property in the Northern District of Texas. I have some personal property at that location.

15. I consider my residence to be in the Northern District of Texas.

16. I have lived in other places during my Coast Guard career as stated above but I did so as part of my duty assignment. I have never considered my residence to be anywhere but in the Northern District of Texas.

17. In approximately April of 2020, I experienced some COVID-19-type symptoms and believed and continue to believe I had COVID-19 at that time. Having fully recovered from what I believe was COVID-19 and thus having natural immunity, I believe I am at less risk of becoming infected again than my fellow vaccinated coworkers and pose less risk to mission accomplishment no matter where I am assigned.

18. I base this belief on my experiences remaining free from COVID-19 over the past two and a half years since acquiring natural immunity, despite many very close contacts with people who were actively sick with COVID-19.

19. For instance, during my time performing the mission for which I earned a Coast Guard Special Operations Ribbon, I was frequently in close contact with many ill and unvaccinated migrants, and never became ill myself.

20. As another example, while aboard the BENJAMIN BOTTOMS, I slept in close quarters with three fully vaccinated personnel. During one tour, all three became ill; however, I remained completely healthy with no COVID-19 symptoms and negative tests throughout the duration of their illness.

21. As yet another example, my unit held a morale event at a San Diego Padres game this past summer. After the game, and after a full day working closely alongside my fully vaccinated and boosted commander, I learned that my commander was sick with COVID-19, and believed he caught it while out in the public during our unit morale event. Due to his illness, our mission was delayed. Despite this very close contact, I did not become ill, and had three negative tests during the delay.

22. Based on publicly available information presented by the Coast Guard, I understand that the Coast Guard has granted at least eight permanent medical accommodation and 45 temporary medical accommodations.

23. Based on publicly available information presented by the Coast Guard, I understand that at least approximately 98% of active-duty Coast Guard service members have received COVID-19 vaccinations.

24. I do not understand how temporary continued mitigation efforts for approximately 2% of the Coast Guard would significantly impact mission readiness, especially because, for example: the Coast Guard readily accommodates those granted medical accommodations when 100% of the Coast Guard has been operating under the same parameters for many months; the CDC's COVID-19 prevention recommendations do not distinguish between vaccinated and unvaccinated persons; the physical fitness of military service members as a group is well above average; and I understand the court injunctions against enforcement of the COVID-19 mandate in other branches (including the Navy, Air Force, and Marines) have not negatively impacted mission readiness and in fact have positively impacted mission readiness because religious service members in those branches can serve.

25.     I am a member of the Christian faith. I understand that vaccinations are a condition of military service and am not opposed to vaccines in principle. However, in accordance with my faith, it is my sincerely held religious belief that abortion is a grave evil and that use of vaccines that cooperate in that evil by incorporating the cell lines of aborted children in their development or testing is not morally justified except in extraordinary circumstances not present here.

26.     I understand that all COVID-19 vaccines currently authorized for use in the United States utilized fetal cell lines in their production or testing. I understand that those fetal cell lines are descended from fetal tissue taken from elective abortions of unborn children.

27.     Because all COVID-19 vaccines authorized for use in the United States utilized fetal cell lines in their production or testing, and the fetal cell lines are descended from fetal tissue taken from elective abortions of unborn children, use of the vaccines would constitute cooperation in the evil of abortion. Such cooperation with evil would violate my sincere religious beliefs.

28.     On November 7, 2021, I submitted a request for religious accommodation to the requirement that I take the COVID-19 vaccination. (**Exhibit 1**, attached). My request for religious accommodation was accompanied by an endorsement, dated the same day, from my commander, Lieutenant Commander David Zwirblis, who stated that our ship "will be able to maintain mission readiness with no hindrance to operations if BM1 Jackson is granted a religious accommodation." (**Ex. 2**, attached.)

29.     I received a denial dated December 14, 2021 (**Ex. 3**, attached) of my November 7, 2021, request for religious accommodation.

30. On December 27, 2021, I timely appealed the denial of my request for religious accommodation. (**Ex. 4**, attached.)

31. In May 2022, I received a purported final denial dated May 3, 2022 (**Ex. 5**, attached) of the appeal of my religious accommodation request.

32. On May 11, 2022, my commander, Lieutenant Commander David Zwirblis, ordered me to receive the first dose of a fully FDA-approved COVID-19 vaccine by May 24, 2022. (**Ex. 6**, attached.)

33. Against my religious beliefs and under duress, I attempted to comply with the May 11 order, but upon arrival at the vaccination clinic, I discovered that the only available vaccines were labeled for Emergency Use. I declined vaccination with an Emergency Use drug.

34. On June 30, 2022, my commander reprimanded me for "Willfully Disobeying a Superior Commissioned Officer" and "Failure to Obey other Lawful Order" under the Uniform Code of Military Justice. (**Ex. 7**, attached.) My commander also stated that I "had the opportunity and means to follow the order [to receive the first dose of the COVID-19 vaccine] and failed to do so."

35. I acknowledged receipt of the reprimand, but informed my commander that the clinic did not have FDA-approved COVID-19 doses available for me to comply with his commander's order to receive "the first dose of a fully FDA-approved COVID-19 vaccine." (**Ex. 7**, attached.)

36. On or about August 24, 2022, another of my commanders, Lieutenant (LT) S. D. Gunderson, initiated action to discharge me from the Coast Guard. (**Ex. 8**, attached.)

37. LT Gunderson informed me of the initiated action to discharge me from the Coast Guard on August 24, 2022—just one month after my transfer to my new duty station due to the "needs of the Coast Guard."

38. LT Gunderson stated that he was initiating discharge proceedings because I was not available for worldwide assignment.

39. LT Gunderson informed me that I may expect to encounter prejudice in civilian life due to the discharge.

40. The Coast Guard has forced me to choose between being involuntarily discharged and requesting retirement, despite my desire to continue serving the United States in the Coast Guard using my nearly two decades of specialized training and experience.

41. On September 9, 2022, I timely responded to the August 24 notice of intent to discharge. (**Ex. 9**, attached.) In this response I stated in part: "I believe I am not required to receive the COVID-19 vaccine under U.S. Law and Code and should not be subject to discipline for not receiving it, as I've set forth in my request for a religious accommodation and in my appeal of the denial of that request. I want to remain in the Coast Guard and do not want to be discharged or to retire at this time, but, faced with very limited options given in the Coast Guard's denial of my religious accommodation request, its denial of my appeal, and the notice of its intent to discharge me, I would choose, under protest and duress, retirement."

42. In my September 9, 2022, response, I further stated in part: "The zip code of my intended home of selection is 76088." The zip code for Weatherford, Texas, is 76088.

43. By refusing to take the COVID-19 vaccine and losing my Coast Guard position, I stand to lose hundreds of thousands of dollars in pay, not counting the value of lost benefits including medical benefits. I planned to rely on this compensation in retirement in due course.

44. Especially given the operational tempo of my unit, I believe forcing competent and capable unvaccinated service members such as myself to separate would exacerbate the dire recruitment and retention shortfalls that I understand the Coast Guard is experiencing.

45. I have been willing and able and remain willing and able to work remotely, wear a mask, and test periodically, as appropriate and as required.

46. I am aware of the following military orders purportedly requiring me to take the vaccine:

- Department of Defense August 24, 2021, COVID-19 vaccine mandate.
- Coast Guard ALCOAST 305/21 COVID-19 vaccine mandate.
- Coast Guard ALCOAST 315/21 COVID-19 vaccine mandate

47. I am aware of Commandant Instruction (COMDTINST) M6230.4G, *Immunizations and Chemoprophylaxis for the Prevention of Infectious Disease* (**Ex. 10**, attached), a Coast Guard instruction.

48. I am not aware of any military branch (including the Air Force, Navy, Army, Marines, and Coast Guard) granting any religious accommodation requests to service members not already slated for separation or retirement.

49. I am aware that the Pentagon's Inspector General investigated whether the military's process for considering and denying religious accommodation requests to COVID-19 vaccination complies with its own protocols. (https://www.military.com/daily-news/2022/03/02/pentagon-watchdog-investigate-militarys-covid-19-exemption-process.html) I'm also aware of a copy of the Inspector General's concluding memo attached to a letter of supplemental authority filed in *U.S. Navy SEALs 1-26 v. Biden*, Case Nos. 22-10077/22-10534.

50. Some of the attached exhibits are redacted to remove some personal identifiers.

51. My request for a religious exemption would not seriously impact my ability to perform my duties. As shown above, I have recovered from COVID-19 and have natural immunity.

52. I have maintained and continue to maintain protocols for health and safety. I have no known comorbidities, I am physically fit, and to my knowledge I have not transmitted COVID-19 to others.

53. My Coast Guard career has been entirely in the interest of military readiness, unit cohesion, good order, discipline, health, and safety.

54. I cannot in good conscience take the vaccine; it is more important to me to remain faithful to my Christian faith than to violate my religiously formed conscience for the sake of work and compensation.

55. I have not voluntarily chosen to separate from the Coast Guard. I understand that the Coast Guard is in the process of separating me for not taking the vaccine.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 15, 2022.

Eric Jackson