**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **ALARIC STONE**, **ERIC JACKSON**, and **MICHAEL MARCENELLE**, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. |
| v. | ) ) | |
| **ALEJANDRO N. MAYORKAS**, in his official capacity as Secretary of Homeland Security, **LLOYD J. AUSTIN, III**, in his official capacity as Secretary of Defense, **LINDA L. FAGAN**, in her official capacity as Commandant of the Coast Guard, and **BRIAN K. PENOYER**, in his official capacity as Assistant Commandant for Human Resources of the Coast Guard, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## <u>DECLARATION OF LIEUTENANT JUNIOR GRADE MICHAEL MARCENELLE</u>

Pursuant to 28 U.S.C. § 1746, I, Michael Marcenelle, under penalty of perjury declare as follows:

1.      I am over the age of eighteen and am competent to make this declaration.

2.      I am an Officer in the United States Coast Guard.

3.      In my current position with Training Center Yorktown, Virginia, I serve as an Instructor at the International Maritime Officers School where I plan, coordinate, and execute the course curriculum for international officers aboard Training Center Yorktown.

4.      I have been in the Coast Guard since my direct commission in April 2019.  Prior to my assignment in Yorktown, I was assigned to Sector Charleston where I served as a Boarding Officer conducting law enforcement operations and served as a Command Center

1

Watchstander overseeing multi-mission operations including search and rescue, law enforcement, and pollution cases.

5.      I initially commissioned as a Second Lieutenant in the United States Marine Corps in 2011.  During my time as a Marine, I served as an Air Intelligence Officer, Weapons and Tactics Intelligence Instructor, and Recruiting Management Officer.  I deployed to Afghanistan in support of Operation Enduring Freedom, Kuwait in support of Operation Inherent Resolve, and throughout the Mediterranean in support of Special Purpose Marine Air Ground Task Force – Crisis Response – Africa.  Following these deployments, I served as the Operations Officer and Executive Officer of Marine Corps Recruiting Station Portland, Oregon.

6.      My transfer into the Coast Guard in 2019 allowed me to continue serving with no break in active duty service.  I therefore have more than a decade on active duty.

7.      Throughout my time as a commissioned officer in two separate military branches, I received numerous personal and unit awards as well as above average Fitness Reports and Officer Evaluation Reports, highlighting a career of dedicated and exemplary service to my country.  For instance, prior to departing the Marine Corps, I received a Marine Corps Commendation Medal for my work supervising day-to-day operations of recruiting efforts dispersed across over 650,000 square miles and three states.  I also received a Marine Corps Achievement Medal for my success deploying to Afghanistan supporting special operations missions, and redeploying on extremely short notice to Kuwait to halt terrorist advances in Iraq.

8.      I have never been the subject of any disciplinary action by the Coast Guard or Marine Corps, nor has there ever been cause to discipline me for any reason.

9.      I became aware of ALCOAST 305/21, indicating that Coast Guard service members would be required to receive the Pfizer-BioNTech COVID-19 vaccine if they had not

2

voluntarily received another FDA Emergency Use Authorization or World Health Organization Emergency Use Listing vaccine, shortly after issuance on August 26, 2021.

10. Prior to ALCOAST 305/21, I had researched the available COVID-19 vaccines, including the stated health benefits and risks, as well as how the vaccines had been produced and tested. Based on this research, I learned that all of the available COVID-19 vaccines had been tested or produced using cell lines developed from remains of aborted babies.

11. As a Roman Catholic, I further sought guidance from authoritative Catholic texts to clearly understand what my moral obligations were based on the knowledge I gained regarding the available COVID-19 vaccines. These texts included the Bible and the Catechism of the Catholic Church. I also consulted my priest and statements of Catholic bishops.

12. Based on my research, both on the science of the COVID-19 vaccines and on the moral philosophy of my Catholic faith, I concluded that compliance with the Coast Guard's vaccine mandate would mean acting contrary to my religious obligation to obey my formed conscience by abstaining from cooperation with evil.

13. I therefore decided to submit a request for religious accommodation waiving the COVID-19 vaccination requirement for me, in accordance with Commandant Instruction (COMDTINST) 1000.15 (**Ex. 1**, attached). COMDTINST 1000.15 was issued on August 30, 2021.

14. The next day, on August 31, 2021, I initiated the process of pursuing a religious accommodation to abstain from the COVID-19 vaccines. I met with the Sector Charleston Chaplain, LT Joseph A. Seifert (USN), as directed in COMDTINST 1000.15, who confirmed the sincerity of my faith and the substantial burden the vaccine mandate imposed on my faith. On September 9, 2021, I received a verbal medical counseling by Naval Health Clinic Charleston

Primary Care Manager, LT Nicholas Petril (USN).  On September 13, 2021, I compiled all required documents detailed in COMDTINST 1000.15 and submitted my official accommodation request directly to the Sector Charleston Deputy Sector Commander, Captain Heather R. Mattern.

15.     As is directed in COMDTINST 1000.15 and also due to the personal nature of its contents, I specifically requested to submit my request directly to the Sector Charleston Commander, Captain John D. Cole.  However, Captain Mattern refused and stated that all requests were to go through her first and then on to the Sector Commander.

16.     On October 5, 2021 (22 days after submitting my request), I was notified by Captain Mattern that she had taken my request with her while on personal leave and had left my personal documents at her sister's home.  Captain Mattern then asked if I wanted her sister to mail the documents to Sector Charleston, or to destroy the documents.  I asked that she destroy them.  I was distressed that my personal information was revealed without my prior consent and in violation of Coast Guard protocols.  I was also concerned that the delay may reflect negatively on my request, despite my diligence in completing the request as soon as I could.

17.     I recompiled my documents and resubmitted them to Captain Mattern.  My initial request documents are attached as **Exhibit 2**.

18.     While my request was pending, I continued to abide by my commander's COVID-19 mitigation protocols, as I had before filing my initial request.  These protocols variously included masking and social distancing, based on guidance received from higher headquarters.

19.     On December 1, 2021, I experienced symptoms consistent with COVID-19.  I had not experienced COVID-19 symptoms before.  When I noticed these symptoms, I called into a

military health hotline and was directed to remain home and monitor my symptoms, followed by reporting to my local military clinic where I was tested for COVID-19.  The test confirmed that I contracted COVID-19.  The test results were incorporated into my military medical record.  I recovered and returned to work immediately following the mandatory 10-day period of quarantine.  During that period of time, my colleagues were able to help take on my shifts with no mission loss, just as I had taken on additional shifts for others when they were out sick due to COVID or various other illnesses.  My illness in December 2021, occurred more than three months after the Commandant instructed Coast Guard members to receive a Pfizer-BioNTech COVID-19 vaccine on August 26, 2021.

20.     I am aware that the Coast Guard experienced record-high COVID-19 case rates in December 2021 and January 2022.  I am aware that cases among vaccinated personnel during this time surpassed cases among unvaccinated personnel, both in raw numbers and per capita rates.  I also understand that the Coast Guard's statistics did not differentiate between people like me who had never contracted COVID-19 until the unprecedented surge in cases among vaccinated personnel, and people who had acquired a natural immunity to COVID-19.

21.     Between the beginning of the COVID-19 pandemic until the present day, I have closely abided by my commanders' COVID-19 mitigation protocols, including masking, distancing, and increased attention to hygiene.  These protocols have varied over time, based on local community transmission rates and internal unit-specific guidance.

22.     On January 22, 2022, I submitted a leave request to travel from Charleston, South Carolina to Elizabeth City, North Carolina to compete in the inaugural Coast Guard Marathon taking place on March 5, 2022.  I had been training for the marathon since November 2021, interrupted only by my brief illness with COVID-19.  The leave request was routed through my

5

supervisor, who recommended disapproval on February 1, 2022, and then I received final
disapproval by Captain Mattern on February 3, 2022.  I met with each of them individually to
request an explanation for why my leave was denied, as no explanation was provided on the
Leave Request Form.  They both stated that they believed that unvaccinated personnel were not
permitted to take leave under Coast Guard policy, specifically, guidance they received from the
District 7 Admiral, RADM Brendan McPherson in his September 29, 2021, document titled,
"COVID-19 Leave, Liberty, and Official Travel Policy."  (**Ex. 3**, attached.)

23.     On February 8, 2022, my initial request for a religious accommodation was
denied by Captain Anthony W. Williams (CG-133) (**Ex. 4**, attached).  I received the denial letter
from Captain Mattern on February 10, 2022.  The denial letter was a mirror of the many others I
had already read from fellow Coast Guardsmen.

24.     I noted that Captain Williams stated that my request was denied at least in part
because I interact with Coast Guard Auxiliarists, "some of whom are within high-risk
categories."  Coast Guard Auxiliarists are civilians who volunteer to help active duty and reserve
Coast Guard service members with certain safety and inspection tasks, while gaining access to
certain Coast Guard facilities.  I now understand that Coast Guard Auxiliarists are not required to
be vaccinated.  Additionally, working with Auxiliarists was only a collateral duty that I had
effectively managed remotely throughout the duration of my assignment.

25.     After receiving the denial letter, I requested a copy of my commander's
endorsement letter accompanying my initial request so that I would be better able to respond to
the denial letter.  Captain Mattern refused to provide this information, stating in an email that
legal counsel advised her the denial letter "provides the complete reasoning and explanation of
the decision on [my] request."  (**Ex. 5**, attached.)

26.     On February 25, 2022, I submitted my appeal providing evidence contradicting the statements of Captain Williams in the initial denial.  (**Ex. 6**, attached.)  I also documented that I had contracted COVID-19 and understood that I now benefited from naturally-acquired immunity which I understand protects me at least as well as immunity from vaccination.

27.     On May 16, 2022, Rear Admiral Eric Jones purportedly denied my appeal.  (**Ex. 7**, attached.) Captain Mattern provided the letter to me on May 27, 2022.  The letter was once again a mirror image of the many others I had already seen.

28.     Also on May 27, 2022, Captain Mattern, on behalf of Captain Cole, issued me a CG-3307 Performance and Discipline (P&D-41C) form.  (**Ex. 8**, attached.)  Through the form, Captain Cole ordered me to receive the "first dose of a fully FDA-approved COVID-19 vaccine."

29.     In acknowledging the order by signature, I added the following written statement, "CAPT Heather Mattern, Deputy Sector Commander & I discussed my inability to carry out this order as there are currently no 'fully FDA-approved' vaccines available. Deputy referenced ALCOAST 352/21 as the USCG determination that the vaccines are 'interchangeable', although FDA states they are 'legally distinct.'"

30.     However, against my religious beliefs and under duress, I reported to Naval Health Clinic Charleston on May 31, 2022, and met with the Director of Immunizations, Tanikka R. Evans, RN to request if there were any FDA-approved vaccines available.  She advised me that they did not carry any FDA-approved vaccines.  She then signed a memorandum that I provided her affirming that I reported to the clinic as directed, but no FDA-approved vaccines were available.  (**Ex. 9**, attached.)

31.     I also have asked the Coast Guard Health Services liaison to the Naval Health Clinic how vaccinations provided at a civilian clinic were handled, should I locate an FDA-approved vaccine off installation.  I was told that the clinic technicians update a service member's vaccine record upon receipt of an emailed picture of a vaccine card.  I asked whether the technicians verify the information in the pictures, such as by confirming vaccine lot numbers in online databases.  I was told that no verification occurs.

32.     The next day, on June 1, 2022, I provided the memorandum signed by Tanikka Evans to Captain Mattern proving that I reported to the clinic as directed and there were no FDA-approved vaccines available.  Captain Mattern then stated that she still had to issue me a negative CG-3307 Performance and Discipline (P&D-41D) form on behalf of Captain Cole.  (**Ex. 10**, attached.)  The CG-3307 states that I "had the opportunity and the means to follow the order and failed to do so."  On the bottom of the same document, Captain Mattern wrote the following hand-written note, "01 June LTJG Marcenelle provided documentation that he attempted to receive a fully FDA approved COVID-19 vaccination from the Charleston Naval Health Clinic as per the CG-3307 dated 27 May 2022 but that there was no fully FDA approved [sic] as noted in memo dated 31 May 2022. CAPT Heather Mattern, Deputy Sector Commander."  The hand-written note by Captain Mattern directly contradicts the original verbiage typed in the CG-3307.

33.     This CG-3307 is now in my official record, and stands as the only reprimand I have received in my eleven years on active duty.  Although I am slated to promote to Lieutenant soon, this document effectively prevents me from promotion, and therefore long-term retention, in the Coast Guard.

34.     On the very same day when Captain Mattern privately presented the CG-3307 to me, her representative publicly presented me a Coast Guard Achievement Medal.  The medal citation praised my superior performance leading missions during the period from April 2019 through June 2022 and also made a special note of my actions using my unique law-enforcement background to de-escalate a dangerous conflict  (**Ex. 11**, attached.)  My commander, Captain Cole, signed the CG-3307 form less than a week after he signed the Coast Guard Achievement Medal.

35.     I departed from my unit on June 1, 2022, carrying, in one hand, an award recognizing my superior performance and unique contributions to the mission, all of which occurred while unvaccinated, and carrying, in the other hand, a formal reprimand gutting my Coast Guard career because the Coast Guard claims my continued service is too great a threat to mission accomplishment.

36.     Shortly after I received my award and reprimand, I moved my large family from Sector Charleston to my current duty station in Virginia.  I was surprised to receive orders to move, as I understand there is a Coast Guard policy prohibiting transfers for unvaccinated personnel.  I understand the policy was waived due to the needs of the Coast Guard that I serve at the Training Center.

37.     After I arrived in Yorktown, a vaccinated and boosted Coast Guardsman officemate contracted COVID-19.  He worked from home and quickly returned without mission impact.  I helped to cover for him with whatever tasks he could not complete from home.  No other officemates were required to quarantine, test, or resume masking.  I remained healthy throughout.

38.     A month later, after experiencing allergy-like symptoms following a weekend of outdoor labor, I tested positive for COVID-19.  This is the second positive test I have had since the beginning of the outbreak (December 2021 and September 2022).  I remained extremely healthy throughout the duration of time I tested positive for COVID-19, and my symptoms never progressed beyond those typically associated with allergies.  In fact, during the time I experienced the allergy-like symptoms, I went for a 6 mile run.  The impact to the mission was negligible, at most, as I was able to carry out my work assignments from home.  We rescheduled one field trip so that all of the students could self-monitor following my positive results and prior to testing.  Upon testing the entire class and staff of 32 people, we found that only myself and one fully vaccinated student in the class tested positive for COVID-19.  The student had taken a weekend trip to a popular vacation area in between my contact with him and his positive test.  The student also only had minor allergy-like symptoms and was able to remain engaged in class by attending remotely from his room.

39.     I understand that the Centers for Disease Control and Prevention (CDC) defines immunity as "protection against a disease."

https://www.cdc.gov/vaccines/terms/glossary.html#:~:text=Immunity%3A%20Protection%20against%20a%20disease.

40.     I further understand that according to the CDC, immunity, which is achieved by the production of antibodies against a disease, "can be acquired in two ways, either by contracting the disease or through vaccination."

https://www.cdc.gov/vaccines/terms/glossary.html#:~:text=Active%20immunity%3A%20The%20production%20of,or%20through%20vaccination.

41.     The CDC's definitions align with my experiences with COVID-19.  My immunity achieved by "contracting the disease" in December 2021, provided "protection against [the] disease" in September 2022.  In September 2022, my symptoms were barely noticeable, and I could work and even run six miles with no constraints.

42.     Additionally, I understand that while my natural immunity provided protection nine months post infection, a study published in the New England Journal of Medicine found that the effectiveness of the Pfizer-BioNtech COVID-19 vaccine (which I was ordered to receive) "was negligible" just six months after vaccination.

https://www.nejm.org/doi/full/10.1056/NEJMoa2203965

43.     I also understand that the Director of the CDC, Dr. Rochelle Walensky, has stated that "what [the COVID- 19 vaccines] can't do anymore is prevent transmission."  Further, after being asked if "you get COVID, you're fully vaccinated, but you are totally asymptomatic, you can still pass on the virus to someone else, is that right?", Dr. Walensky answered, "that is exactly right." https://twitter.com/CNNSitRoom/status/1423422301882748929.

44.     I have been willing and able and remain willing and able to work remotely, wear a mask, and test periodically, as appropriate and as required.

45.     I am aware of the following military orders purportedly requiring me to take the vaccine:

- Department of Defense August 24, 2021, COVID-19 vaccine mandate.
- Coast Guard ALCOAST 305/21 COVID-19 vaccine mandate.
- Coast Guard ALCOAST 315/21 COVID-19 vaccine mandate

46.     I am aware of Commandant Instruction (COMDTINST) M6230.4G, *Immunizations and Chemoprophylaxis for the Prevention of Infectious Disease*, a Coast Guard instruction.

11

47.     I am not aware of any military branch (including the Air Force, Navy, Army, Marine Corps, and Coast Guard) granting any religious accommodation requests to service members not already slated for separation or retirement.

48.     I am aware that the Pentagon's Inspector General investigated whether the military's process for considering and denying religious accommodation requests to COVID-19 vaccination complies with its own protocols. (https://www.military.com/daily-news/2022/03/02/pentagon-watchdog-investigate-militarys-covid-19-exemption-process.html) I am also aware of a copy of the Inspector General's concluding memo attached to a letter of supplemental authority filed in *U.S. Navy SEALs 1-26 v. Biden*, Case Nos. 22-10077/22-10534.

49.     I am aware that the Pentagon's Inspector General informed the Secretary of Defense on June 2, 2022, that the Inspector General "found a trend of generalized assessments rather than the individualized assessment that is required by Federal law and DoD and Military Service Policies."

50.     I believe that granting my request for a religious exemption would not seriously impact my ability to perform my duties. As shown above, I have recovered from COVID-19 and have natural immunity (i.e., protection) from COVID-19.

51.     I have maintained and continue to maintain protocols for health and safety, I have no known comorbidities, I am physically fit, and to my knowledge I have not transmitted COVID-19 to anyone in the conduct of my duties.

52.     My Coast Guard career has been entirely in the interest of military readiness, unit cohesion, good order, discipline, health, and safety.

53.     Some of the attached exhibits are redacted to remove some personal identifiers.

54.     I cannot in good conscience take the vaccine; it is more important to me to remain dedicated to my Christian faith than to violate my religiously formed conscience for the sake of work and compensation.

55.     I have not voluntarily chosen to separate from the Coast Guard. I understand that the Coast Guard is in the process of separating me for not taking the vaccine.

56.     I want to continue serving my country in the Coast Guard indefinitely.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 15, 2022.

_____
Michael Marcenelle