b. The memorandum should, at a minimum, describe the specific request the member is seeking and the relation to the sincerely-held belief on which it is based.

c. CO/OIC/Command Cadre. Commanders will respond to requests in accordance with this Instruction and its timelines and will route each request to the appropriate approval authority, or issue a decision on a request that is properly within their authority to act upon. A copy of the final decision (whether by endorsement or new memorandum) must be provided to the member and any other office as described in Enclosure (1).

   (1) If a religious accommodation request is approved, the command must issue a CG-3307 to the member describing the nature of the religious accommodation granted. A service member whose request is granted in part will be informed by CG-3307 of the specific elements of the approval.

   (2) In the case of immunization exemptions, the CG-3307 will be issued by the requestor's command based upon the decision memo issued by Commandant (CG-133).

d. Chaplains. Chaplains are required to interview members requesting a religious accommodation and are responsible for informing the unit commander about such requests. Chaplains are to use the Religious Accommodation Interview Checklist, found in Enclosure (3), in order to assist the command in assessing the member's sincerely-held beliefs. Because this interview is done at the commander's request, the Chaplain must advise the member that the interview is not confidential or privileged, as found in Enclosure (4). Chaplains may use any means of communication available to ensure the interview is conducted promptly and provide commanders with their findings. Chaplains are also required to provide a memorandum or endorsement to accompany the member's request as it is routed up the chain of command. Guidance for the memorandum or endorsement from the Chaplain to the command can be found in Enclosure (5). The Chaplain of the Coast Guard (CG-00A) will annually report to the Coast Guard Commandant (CCG) on religious accommodations requested, approved and/or denied in the Coast Guard.

e. Servicing Legal Office. The legal office serves to ensure commanders are knowledgeable about and adhere to relevant legal standards. Commands are required to consult with their servicing legal office prior to granting or denying a religious accommodation request.

f. Civil Rights Service Provider. The Civil Rights Service Provider will advise personnel on the religious accommodation process and the Equal Opportunity complaint process.

g. Headquarters Offices. Headquarters offices will either serve as final approval or appellate authority, and maintain records of each request and decision. All approval authorities must provide a copy of all approvals/denials to Commandant (CG-133) for submission to the Chaplain of the Coast Guard to be included in its annual report to Coast Guard Commandant (CCG).

9

h.  Medical Officers. A medical officer must counsel the applicant regarding accommodations for immunizations. The physician should ensure that the member is making an informed decision and should address, at a minimum, specific information about the diseases concerned, specific vaccine information (including product constituents, benefits and risks), and potential risks of infection incurred by unimmunized individuals. The medical officer consult (date of consult, name of consulting medical officer) must be noted in the member's request for the religious accommodation for immunization exemption.

i.  Training Centers. All members being accessed into the Coast Guard must be provided with information regarding religious accommodations within the Coast Guard during their initial training by a Coast Guard Chaplain. Training centers, as accession points, must also ensure all requests granted during the accession process are properly adhered to and work with the appropriate assignment officers who are also bound to adhere to such granted requests.

j.  Administrative Appeals. Any request for accommodation that is denied, in part or in full, may be appealed as follows:

(1) Unit commanders must inform the requesting member of the right to appeal the decision. Any notice of denial must inform members that they have the right to file an Equal Opportunity complaint by contacting a Civil Rights Service Provider within 45 calendar days of any denial. For complaint processing, see Chapter 5 of Reference (e).

(2) A member who has been denied a religious accommodation, in whole or in part, may submit a written appeal to the official in the chain of command or chain of supervision one level above the officer or official who took the final action on the request. The appeal must be routed through the officer or official who denied the request. The appeal must include the specific basis on which the member believes the initial denial was in error.

(3) The appellate authority will either overturn or uphold the contested decision, in part or in full, within 30 days of the date of appeal for cases arising within the continental United States, and within 60 days for all other cases, if practicable and as operations allow.

13. <u>ACTION</u>.

a.  Commandant (CG-1) is responsible for overall policy control and program execution.

b.  Commandant (CG-1) will review current regulations governing uniforms and grooming, food service, separate rations, immunizations, and DNA sampling, and revise them as necessary.

c.  Commandant (CG-133) will collect, maintain and make available to the Chaplain of the Coast Guard the data related to the approval and denial of requests for religious accommodation.

d. Commandant (CG-133) will ensure implementation of the policies and procedures in this Instruction.

e. Commandant (CG-PSC-RC) will provide Instruction of this policy to applicants for commissioning, enlistment, and reenlistment, and upon completion must require the member's signature acknowledging its contents.

f. FORCECOM will coordinate with the program office to develop appropriate performance support for commands, judge advocates, chaplains, and similar courses of Instruction and orientation.

g. Office of Military Uniforms (CG-PSC-PSD-MU) will ensure the changes reflected herein are properly facilitated and incorporated into the next Uniform Regulations update through the next uniform board. Commandant (PSC-PSD-MU) will also develop processes with Coast Guard Recruiting Command to coordinate the evaluation of requests by prospective accessions.

14. <u>FORMS/REPORTS</u>.  The Chaplain of the Coast Guard will annually report to the Coast Guard Commandant on religious accommodation requests within the Coast Guard. Commandant (CG-1) must collect, maintain and make available to the Chaplain of the Coast Guard (CG-00A) the data related to the approval and denial of requests for religious accommodation. No forms are prescribed nor required by this Instruction.

15. <u>REQUEST FOR CHANGES</u>.  Recommendations for changes or improvements are welcome and should be submitted via the chain of command to the Office of Military Personnel, Policy and Standards Division, Commandant (CG-1331), at HQS-PolicyandStandards@uscg.mil.


/ERIC C. JONES/
Rear Admiral, U.S. Coast Guard
Assistant Commandant for Human Resources


Encl:  (1) Approval Process and Authorities
       (2) Religious Accommodation Request Memorandum
       (3) Religious Accommodation Interview Checklist
       (4) Advisement About Statements Made During a Religious Accommodation Interview
       (5) Guidance for Chaplain Memorandum

Enclosure (1) to COMDTINST 1000.15

## Routing & Approval Process for Current Members

| Type of Religious Accommodation | Approval Authority (Route to) | When to Submit | Copy of Final Decision Sent to | Notes |
|---|---|---|---|---|
| Uniform/Apparel & Grooming | To: Commandant (PSC- PSD-mu) Thru: CO/OIC | At any time. | MBR via CO/OIC | |
| Immunizations | To: Commandant (CG-133) Thru: Commandant (CG-112), CO/OIC *CO may approve alternative vaccinations. ** Requires consultation with medical officer | At any time. | CG-00A MBR via CO/OIC | * COs may only approve alternative vaccinations if such vaccination is approved by Commandant (CG-112) as an effective alternate. If no alternative vaccinations are available then route to Commandant (CG-133). |
| Other (Dietary, Religious Observances/Holy Days, etc.) | CO/OIC/Commander | At any time. | MBR | |

## Routing & Approval Process for Prospective Accessions

| | | | | |
|---|---|---|---|---|
| DNA Sampling | To: Commandant (CGRC) Thru: Commandant (CG-PSC-med) Thru: Recruiter | Only during the accession process. | MBR | |
| All others, to include uniforms/grooming, dietary, etc. | To: Commandant (CGRC) Thru: Recruiter | Optional at accession process. | MBR | CGRC will consult with appropriate HQ office as would otherwise approve for current members |
| Immunizations | To: Commandant (CG-133) Thru: Commandant (CG-RC) *CO may approve alternative vaccinations. | Prior to accession. | MBR via Commandant (CG-RC) | *COs may only approve alternative vaccinations if such vaccination is approved by Commandant (CG-112) as an effective |

1

Enclosure (1) to COMDTINST 1000.15

| | | | | alternate. If no alternative vaccinations are available then route to Commandant (CG-133). |
|---|---|---|---|---|
| | | | | |

Timelines:

- Requests that are approved by the unit CO/OIC for approval must be executed within 30 days of receipt by the Command, if practicable and as operations permit.
- Requests that are approved by other than the unit CO/OIC must be executed within 30 days (CONUS) and 60 days (OCONUS) from the date received by the decision authority, if practicable and as operations permit.
- Requests for prospective accessions and non-active duty members will be acted on within 45 days of receipt by the decision authority, if practicable and as operations permit.

Enclosure (2) to COMDTINST 1000.15



**U.S. Department of Homeland Security**

**United States Coast Guard**

[Requesting Member's Command]
United States Coast Guard

[Address Line 1]
[Address Line 2]
[City/State/ZIP]
Staff Symbol:
Phone:
Fax:
Email: I

6230
DD MMM YYYY

From:  I. M. Coastie, SN
To:      [Approval Authority]
Thru:   [CO/OIC, if not approval authority]
            [Chaplain]

Subj:   REQUEST FOR RELIGIOUS ACCOMMODATION

Ref:     (a) Military Religious Accommodations, COMDTINST 1000.15

1. Respectfully request a waiver of policy to accommodate a religious practice based on a sincerely-held religious belief in accordance with Reference (a). I request a waiver to the [immunization/uniform/grooming/etc.] policy, specifically [which part is objectionable].

2. Nature of the request. [Explain service member's waiver request and whether or not the member has previously had this or any other policy waiver request approved or denied].

3. Basis. [Identify the religious beliefs on which the exemption request and how current policy prevents the member from practicing within their beliefs.]

4. [If a request for waiver from immunization, include date of consultation with medical officer and name/contact information of medical officer.]

5. My contact information is [telephone number and e-mail address].

#

PRIVACY ACT STATEMENT

Pursuant to 5 U.S.C. §552a(e)(3), this Privacy Act Statement serves to inform you of why DHS is requesting the information on this form.

AUTHORITY: 14 U.S.C. § 505

PURPOSE: To obtain information from a person seeking a military religious accommodation in order to identify the free exercise of religion asserted by the member and make a determination that balances the free exercise of religion with military readiness, unit cohesion, and good order and discipline. A Religious Accommodation Interview Checklist will be used by the Chaplain to record information provided by the member during an interview.

1

Enclosure (2) to COMDTINST 1000.15

ROUTINE USES: Authorized USCG officials will use this information to determine if a religious accommodation can be approved pursuant to Section 533(a)(1) of Public Law 112-239 (2013), as amended. Any external disclosures of information within this record will be made in accordance with DHS/USCG-014, Military Pay and Personnel, 76 Federal Register 66933 (October 28, 2011).

CONSEQUENCES OF FAILURE TO PROVIDE INFORMATION: Providing this information is voluntary. However, failure to provide this information may delay the administrative process.

Enclosure (3) to COMDTINST 1000.15

Religious Accommodation Interview Checklist

| Applicant: | Date of Interview(s): |
|---|---|
| Rate/Rank: | Chaplain Interviewer: |
| Phone: | Phone: |
| Email: | Email: |
| Command: | Chaplain's Command: |

| Interview Preliminaries: | | | |
|---|---|---|---|
| Yes | No | N/A | |
| | | | Review COMDTINST 1000.15 on religious accommodation. |
| | | | Notify Applicant that interview is not confidential/privileged and will be used to advise command on request. |
| | | | Obtain Applicant's signed waiver (see attached). |
| | | | Explain to Applicant that confidential support can be obtained through either 1) another chaplain or 2) a separate counseling session. |
| | | | Has the Applicant been granted a policy waiver for this practice previously? |
| | | | Does the Applicant's declared faith group reflect the belief cited in the application? |

| The application is for a waiver from the following: | | | |
|---|---|---|---|
| Yes | No | N/A | |
| | | | Uniform standards |
| | | | Grooming standards |
| | | | Immunization requirements |
| | | | DNA sampling |
| | | | Other |

| Interview Results: | | | |
|---|---|---|---|
| Yes | No | N/A | |
| | | | Applicant communicated his/her beliefs in an honest and sincere manner. |
| | | | Applicant was credible (consistently keeps tenets, practices, etc.). |
| | | | Applicant's demeanor and pattern of conduct are consistent with the request. |
| | | | Applicant participates in activities associated with the belief(s). |
| | | | Persons supporting the claim are credible. |
| | | | Applicant's request is supported by letter(s) of verification or endorsement from an organization espousing the beliefs which are the basis for the claim. |
| | | | Alternate means of accommodating the practice were explored in the interview. |

| Process Checklist: | | | |
|---|---|---|---|
| Yes | No | N/A | |
| | | | Chaplain has prepared a memorandum memorializing the interview, following the guidance, specifically identifying the religious importance of the accommodation to the Applicant. |
| | | | Chaplain reviewed memorandum with Applicant and provided a copy. |
| | | | Chaplain submitted the memorandum and this document to the command. |
| | | | Chaplain referred Applicant to command to process request. |

1

259

Enclosure (4) to COMDTINST 1000.15

## ADVISEMENT ABOUT STATEMENTS MADE DURING A
## RELIGIOUS ACCOMMODATION INTERVIEW

I, _____, have been advised that statements that are made during the course of my religious accommodation interview are not confidential and may be disclosed by Chaplain _____ to further my religious accommodation request.

_____        _____

Date             Member

_____        _____

Date             Chaplain

## PRIVACY ACT STATEMENT

Pursuant to 5 U.S.C. §552a(e)(3), this Privacy Act Statement serves to inform you of why DHS is requesting the information on this form.

AUTHORITY: 14 U.S.C. § 505

PURPOSE: To obtain information from a person seeking a military religious accommodation in order to identify the free exercise of religion asserted by the member in order make a determination that balances the free exercise of religion with military readiness, unit cohesion, and good order and discipline.

ROUTINE USES: Authorized USCG officials will use this information to determine if a religious accommodation can be approved pursuant to Section 533(a)(1) of Public Law 112-239 (2013), as amended. Any external disclosures of information within this record will be made in accordance with DHS/USCG-014, Military Pay and Personnel, 76 Federal Register 66933 (October 28, 2011).

CONSEQUENCES OF FAILURE TO PROVIDE INFORMATION: Providing this information is voluntary. However, failure to provide this information may delay the administrative process.

<u>GUIDANCE FOR CHAPLAIN MEMORANDUM</u>

**Overview**

When a chaplain learns that a service member perceives a conflict between policy and a practice associated with his or her religious beliefs or sincerely held moral or ethical principles, and would like to seek an accommodation of those beliefs or principles, the chaplain should apprise the member of the process for submitting the request and the information needed to support it. Should the service member wish to submit a waiver request, the chaplain should, as soon as possible, conduct a (non-confidential) interview of the member and submit the memorandum for the record to the chain of command in order to comply with the time requirements of DoD policy.

**Description and Discussion**

The following is a description and discussion of each Paragraph of the memorandum template.

- Paragraph 1 conveys the identity of the requester, the date of the interview, the explanation that confidentiality does not apply to the interview, and that confidential chaplain support is available by referral. It must be written as presented in the template with the correct name and date.

- Paragraph 2 describes the exception to policy which is being requested, to include the nature of the religious or other practice and how it conflicts with applicable policy. It should indicate whether or not policy completely prohibits the practice. Interview questions may include, but are not limited to: Can the practice be partially performed or performed at a later date? Is the prohibition the result of operational status? This Paragraph also indicates whether or not the member has previously had this or any other accommodation request approved or denied.

- Paragraph 3 communicates what the requester understands to be the underlying basis for the request. It includes a description of the religious beliefs or sincerely held moral or ethical principles on which the waiver request is based. It includes how the requester expresses those beliefs or principles in daily life. It also includes what the requester lists as a religious preference. Interview questions may include, but are not limited to: Please tell me about your faith, religion, belief system, or principles. How do you express them in your daily life? Are there regular activities associated with these beliefs or principles? What are they? Do these beliefs or principles inform how you make decisions? Do your beliefs or principles influence how you interact with other people or the environment? If so, how? Please give some examples of how your beliefs or principles impact the way you live. How do you think this practice would help you cope with the challenges of life? How does not being able to use this practice affect you? If you used this practice prior to military service, how did not being able to do so anymore affect you?

- Paragraph 4 indicates what, if any, alternate means of accommodation were discovered in the course of the interview. The chaplain will not unduly influence the requester to accept a

course of action which is not satisfactory to the requester.  Interview questions might include, but are not limited to: Are there similar practices which do not require a policy waiver? Have you tried other ways of meeting the need addressed by this practice? Is there one which could accomplish the same benefit?

- Paragraph 5 contains a statement as to the chaplain's professional opinion regarding the sincerity of the requester. It should include the chaplain's opinion regarding the importance of the request to the requester in terms of beliefs or principles, given the information provided. The chaplain must not base the opinion on the chaplain's personal religious beliefs or the chaplain's interpretation of what constitutes an appropriate religious or other practice. The chaplain's role is similar to the role played in evaluating the sincerity of members submitting conscientious objection packages. It focuses on the person making the request in order to make an informed report to the commander. Interview questions may include, but are not limited to: Are you a member of a religious or other organization which uses the practice for which you are requesting a waiver? How long have you been a member? What makes the practice for which you are requesting a waiver such an important part of your religion, beliefs, or principles? If this waiver is not granted, how will this decision affect you? How is this practice integral to your beliefs or principles? Did you have this practice when you entered the Service? How and when did you determine that this particular practice was an important part of your overall religious beliefs or principles?

- Paragraph 6 provides the Chaplain's contact information.

A copy of the memorandum is provided to the requester.

**U.S. Department of Homeland Security**

**United States Coast Guard**



Commander
United States Coast Guard
Sector Charleston

1050 Register Street
N. Charleston, SC 29405
Staff Symbol: sc

██████████████

6320
09 SEP 2021

From: Michael C. Marcenelle, LTJG

To:   Commandant (CG-133)
Thru: (1) Joseph A. Seifert, LT
      (2) John D. Cole, CAPT
      (3) Commandant (CG-112)

Subj: REQUEST FOR RELIGIOUS ACCOMMODATION

Ref:  (a) Military Religious Accommodations, COMDTINST 1000.15

1. I respectfully request a waiver of policy in accordance with Ref (a) to accommodate a religious practice based on sincerely held religious beliefs. I request a waiver to the immunization policy requiring receipt of the Coronavirus Disease 2019 (COVID-19) vaccine; this is the first request of this nature that I have made.

2. I am a practicing member of the Roman Catholic Church and utilize the Church's doctrine to inform my beliefs and guide my personal actions. The three primary tenets of faith that are guiding my request for religious accommodation are: 1) Opposition to the act of abortion; 2) The preservation of conscience; and 3) Avoidance of sin. The current vaccines available to the public, including the federally approved Pfizer-BioNTech vaccine, were developed through the use of morally-compromised cell lines harvested from aborted babies. Receiving this vaccine, and any other vaccine that has been developed through the use of aborted babies would force me to violate my conscience and become complicit in the act of abortion which is contrary to the teachings of my Catholic faith. I am, however, an advocate for receiving a COVID-19 vaccine developed in accordance with my faith once such a vaccine is available.

3. To address the authoritative teachings of the Catholic Church, I will provide excerpts annotated in the *Catechism of the Catholic Church*, a compendium of the teachings of the Catholic faith used by Bishops, Priests, and Catechists to instruct the laity on the faith. The Catechism is structured in paragraphs which will be listed below:

   a. Paragraph 2271: "Since the first century the Church has affirmed the moral evil of every procured abortion. This teaching has not changed and remains unchangeable."

   b. Paragraph 1777: "Moral conscience, present at the heart of the person, enjoins him at the appropriate moment to do good and to avoid evil. It also judges particular choices, approving those that are good and denouncing those that are evil. It bears witness to the authority of truth in reference to the supreme Good to which the human person is drawn, and it welcomes the commandments. When he listens to his conscience, the prudent man can hear God speaking."

    c. Paragraph 1857: "For a sin to be mortal, three conditions must together be met: Mortal sin is sin whose object is grave matter and which is also committed with full knowledge and deliberate consent."

4. With those three excerpts in mind, I would like to address two of the most common questions that arise when discussing my religious opposition to morally-compromised vaccines, "Have you received morally-compromised vaccines in the past, and why haven't you submitted a request for religious accommodation before?" I have only become aware over the past year that several of the vaccines I have received in the past have ties to abortion. It is because of the publicity surrounding the current COVID-19 vaccines that the Catholic Church has responded by publicizing the Church teachings on vaccines, of which I was previously unaware. I recognize that if I had prior knowledge of the use of aborted babies in development of these vaccines in the past, I would have pursued a religious accommodation. Referencing the Church teaching in paragraph 3.c. above, I am absolved of the mortal sin of receiving morally-compromised vaccines in the past. However, now that I have been educated and informed, I would be required to violate my conscience and make a deliberate choice to commit a grave sin, which I cannot do.

5. Unfortunately, there are certain authoritative Church leaders to include the Holy Father, Pope Francis, who are currently promoting the vaccine in light of the current pandemic causing serious turmoil within the Catholic community. It is imperative to note that his position on the vaccine was not issued "ex cathedra" (clarifying church doctrine), but rather as guidance to the Church during a time of fear and uncertainty. Catholicism is a beautiful and steadfast faith that has guided Christians since its establishment by Jesus Christ. Catholics who have contemplated the faith and have come to a sure judgement of conscience are not accepting the Pope's endorsement and do not believe the current pandemic should supersede the doctrinal teachings of the Catholic faith.

6. As mentioned at the end of the second paragraph above, I look forward to the time when a vaccine becomes available that is developed in line with my Catholic faith. According to a recent article published on the website of the United States Conference of Catholic Bishops (USCCB), "the USCCB in collaboration with other organizations working to protect human life have been engaged in a campaign advocating for the development of a vaccine for COVID-19 that has no link to abortion." I am grateful for the opportunity to make this appeal on behalf of my faith and respectfully request that I am granted this religious accommodation until a COVID-19 vaccine is developed in line with my faith.

7. I met with and have been counseled by the Sector Charleston Command Chaplain, LT Joseph Seifert on 31 August 2021. I met with and have been counseled by the Naval Health Clinic Charleston Primary Care Manager, LT Nicholas Petril on 9 September 2021. Both have provided memorandums which are included as Encl (1) and Encl (2) respectively.

8. My contact information is ▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮▮▮ for clarification/elaboration on any of the statements provided above.

#

Enclosures: (1) RELIGIOUS ACCOMMODATION, Chaplain J. A. Seifert
(2) MEDICAL COUNSELING FOR RELIGIOUS EXEMPTION REQUEST FOR
MANDATORY VACCINES, Dr. N. C. Petri

**U.S. Department of Homeland Security**

**United States Coast Guard**



Commander
United States Coast Guard
Sector Charleston

1050 Register St.
N. Charleston, SC 29401

6230
03 SEP 2021

# MEMORANDUM

From:   J. A. Seifert, LT
        Sector Charleston

To:     J. D. Cole, CAPT
        Sector Charleston

Subj:   RELIGIOUS ACCOMMODATION

Ref:    (a) Accommodation of Religious Practices, DODI 1300.17
        (b) Religious Ministries in the Coast Guard, COMDINST M1 1730.4 (series)
        (c) Immunizations and Chemoprophylaxis for the Prevention of Infectious Disease
            COMDTINST M6230.4 (series)
        (d) ALCOAST 305-21
        (e) CI 1000.15

1.  On August 31, 2021, Chaplain Seifert conducted a non-confidential interview of LTJG Michael Marcenelle regarding his religious accommodation request. The discussion was agreed upon as standing outside the bonds of full confidentiality and met the requirement of initiating a request for a religious exemption to immunization.

2.  LTJG Marcenelle is requesting an exemption from receiving the Covid Vaccine as mandated according to reference (d) based on his Roman Catholic faith.

3.  The underlying basis for this request is the service member's religious conviction that abortion is immoral as expressed in Catholic teaching. LTJG Marcenelle has a religious & moral objection to any vaccine that has been produced, developed, or tested using cell lines of aborted fetuses. He shared that a bio ethics group of the Catholic Church is focusing on seeking federal funding to develop vaccines that are not morally compromised. LTJG has been a practicing Roman Catholic his entire life. He is married with 4 children and one on the way. His family abides by the Catholic faith's teaching and moral guidance. He has an active prayer life, listens to Christian podcasts, and provides his children a homeschool education that includes catechesis and religious education. He also attended Duqesne University of the Holy Spirit College in Pittsburgh.

4.  We did discuss alternate means to this accommodation. If a vaccine were produced that was not morally compromised, he would be willing to receive it.

5.  In the professional opinion of the interviewing chaplain, LTJG Marcenelle is wholly sincere in his practice of the Roman Catholic faith. He incorporates his beliefs into his daily life and his faith informs his religious objection to receive the mandated vaccine by the Coast Guard.

6.  If you have further questions please use my contact information listed below:
    Chaplain Joseph A. Seifert

Cell: ███████████

#

Enclosures:  (1) Confidentiality Release
             (2) Chaplain Interview Checklist

Enclosure (4) to COMDTINST 1000.15

## ADVISEMENT ABOUT STATEMENTS MADE DURING A
## RELIGIOUS ACCOMMODATION INTERVIEW

I, _Michael Chaws Marcenelle_ , have been advised that statements that are made during the course of my religious accommodation interview are not confidential and may be disclosed by Chaplain _Seiffert, Joseph_ to further my religious accommodation request.

_31 AUG 2021_
Date

_____
Member

_31 AUG 2021_
Date

_____
Chaplain

## PRIVACY ACT STATEMENT

Pursuant to 5 U.S.C. §552a(e)(3), this Privacy Act Statement serves to inform you of why DHS is requesting the information on this form.

AUTHORITY: 14 U.S.C. § 505

PURPOSE: To obtain information from a person seeking a military religious accommodation in order to identify the free exercise of religion asserted by the member in order make a determination that balances the free exercise of religion with military readiness, unit cohesion, and good order and discipline.

ROUTINE USES: Authorized USCG officials will use this information to determine if a religious accommodation can be approved pursuant to Section 533(a)(1) of Public Law 112-239 (2013), as amended. Any external disclosures of information within this record will be made in accordance with DHS/USCG-014, Military Pay and Personnel, 76 Federal Register 66933 (October 28, 2011).

CONSEQUENCES OF FAILURE TO PROVIDE INFORMATION: Providing this information is voluntary. However, failure to provide this information may delay the administrative process.

1

Enclosure (3) to COMDTINST 1000.15

## Religious Accommodation Interview Checklist

| Applicant: Michael C. Marcenelle | | | Date of Interview(s): 31 AUG 2021 |
|---|---|---|---|
| Rate/Rank: O-2 / LTJG | | | Chaplain Interviewer: LT Joseph A. Seifert |
| Phone: | | | Phone: |
| Email: | | | Email: |
| Command: Sector Charleston | | | Chaplain's Command: SECTOR CHARLESTON |

**Interview Preliminaries:**

| Yes | No | N/A | |
|---|---|---|---|
| X | | | Review COMDTINST 1000.15 on religious accommodation. |
| X | | | Notify Applicant that interview is not confidential/privileged and will be used to advise command on request. |
| X | | | Obtain Applicant's signed waiver (see attached). |
| X | | | Explain to Applicant that confidential support can be obtained through either 1) another chaplain or 2) a separate counseling session. |
| | X | | Has the Applicant been granted a policy waiver for this practice previously? |
| | | | Does the Applicant's declared faith group reflect the belief cited in the application? |

**The application is for a waiver from the following:**

| Yes | No | N/A | |
|---|---|---|---|
| | | | Uniform standards |
| | | | Grooming standards |
| X | | | Immunization requirements |
| | | | DNA sampling |
| | | | Other |

**Interview Results:**

| Yes | No | N/A | |
|---|---|---|---|
| X | | | Applicant communicated his/her beliefs in an honest and sincere manner. |
| X | | | Applicant was credible (consistently keeps tenets, practices, etc.). |
| X | | | Applicant's demeanor and pattern of conduct are consistent with the request. |
| X | | | Applicant participates in activities associated with the belief(s). |
| X | | | Persons supporting the claim are credible. |
| X | | | Applicant's request is supported by letter(s) of verification or endorsement from an organization espousing the beliefs which are the basis for the claim. |
| X | | | Alternate means of accommodating the practice were explored in the interview. |

**Process Checklist:**

| Yes | No | N/A | |
|---|---|---|---|
| X | | | Chaplain has prepared a memorandum memorializing the interview, following the guidance, specifically identifying the religious importance of the accommodation to the Applicant. |
| X | | | Chaplain reviewed memorandum with Applicant and provided a copy. |
| X | | | Chaplain submitted the memorandum and this document to the command. |
| X | | | Chaplain referred Applicant to command to process request. |

1



**U.S. Department of Homeland Security**

**United States Coast Guard**

Commanding Officer
United States Coast Guard
CG Base Charleston

1050 Register St.
North Charleston, SC 29405
Staff Symbol: (h)

6010
09 Sep 2021

# MEMORANDUM

From:   N.C. Petri, LT, MC, USN
         Naval Medicine Readiness and Training
         Command Charleston

N.Nicholas C. Petri, DO
LT, MC, USN
NPI: 1144859729

To:     COMDT (CG-133)
Thru:   COMDT (CG-112)

Subj:   MEDICAL COUNSELING FOR RELIGIOUS EXEMPTION REQUEST FOR
         MANDATORY VACCINES

Ref:    (a) Immunizations and Chemoprophylaxis for the Prevention of Infection Diseases,
             COMDTINST M6230.4G
         (b) Ezeanolue E, Harriman K, Hunter P, Kroger A, Pellegrini C General Best Practice
             Guidelines for Immunization. https://www.cdc.gov/vaccines/hcp/acip-recs/general-
             recs/index.html

1. In accordance with reference (a), certain vaccines are mandatory for all Coast Guard Active
Duty (AD) and Selected Reserve (SELRES) personnel to ensure for medical readiness and to
avoid disruption of Coast Guard mission accomplishment.

2. I have counseled MARCENELLE, MICHAEL C regarding vaccines and discussed the
potential benefits and risks associated with exemption from vaccines as well as the potential risks
of infection incurred by unvaccinated individuals.

3. Based upon review of the available medical record and direct interview, and in accordance
with reference (b), it is my opinion that MARCENELLE, MICHAEL C does not have an
identifiable or disclosed medical condition that would absolutely contraindicate receipt of these
immunizations.

#




# Commander's Intent
## Seventh Coast Guard District

Operational excellence in our nation's most dynamic and complex maritime environment that rapidly adapts to emerging mission demands through a ready and resilient Coast Guard enterprise, and innovative use of advanced capabilities to inspire the highest levels of trust from our workforce, our international partners & the American public.

*Seventh District Vision Statement*

**SEP 2 9 2021**

## COVID-19 Leave, Liberty, and Official Travel Policy

Due to the prevalence and transmissibility of the Delta variant of COVID-19 and the availability of an approved vaccine, ALCOAST 352/21 provided updated guidance regarding those restrictions. This Commander's Intent outlines these restrictions for vaccinated and unvaccinated Active Duty members, Reservists, civilian employees, and Auxiliarists.

For <u>vaccinated</u> Active Duty members and Reservists on Active Duty orders:
 ➢ No travel restrictions apply for leave and liberty.
 ➢ No travel restrictions apply for foreign leisure travel or official domestic/international travel.

For <u>unvaccinated</u> Active Duty members and Reservists on Active Duty orders:
 ➢ Local travel for leave and liberty purposes is restricted to an area not to exceed 50 miles from a member's home or 50 miles of a member's worksite.
 ➢ If a member resides more than 50 miles from their worksite, commuting from home to work and back in excess of 50 miles, each way, will remain authorized.
 ➢ For leave and liberty travel beyond 50 miles, the first O6/GS-15 in the member's chain of command may grant a waiver but only on a case-by-case basis. Commands shall revisit all waivers issued prior to the release of ALCOAST 352/21. Commands are encouraged to scrutinize all waiver requests to mitigate infection risks to and from unvaccinated personnel.
 ➢ Foreign leisure travel to or through foreign countries is not authorized. If extenuating circumstances exist, requests for such travel must be routed to me for approval.
 ➢ Official domestic/international travel is only authorized for mission-critical purposes.

For <u>unvaccinated</u> civilians, Auxiliarists, dependents, and Reservists not on Active Duty orders:
 ➢ Foreign leisure travel is highly discouraged.

Given the high levels of COVID-19 transmission currently present throughout the D7 AOR, vaccinated and unvaccinated personnel are expected to exercise restraint and prudence in their off-duty activities to avoid contracting COVID-19. Avoid large gatherings and crowded events. Wear face masks at indoor venues and at events where physical distancing cannot be easily maintained and you are in contact with persons with unknown medical histories (e.g., restaurants, stores, gyms, etc.). Exercise personal responsibility and follow applicable COVID-19 guidelines and advisories. Your prudent off-duty actions ensures we can remain ready, relevant, and responsive to the operational demands of D7 and our Coast Guard. Thank you for your continued dedication and commitment during these challenging times.

Brendan C. McPherson
Rear Admiral, U.S. Coast Guard

*~ Custodes per Meridianum ~*

U.S. Department of
Homeland Security
**United States
Coast Guard**



Commandant
United States Coast Guard

2703 Martin Luther King Jr. Ave. S.E.
Washington, DC 20593-7907
Staff Symbol: CG-133

6230

**FEB - 8 2022**

**MEMORANDUM**

From:   A. W. Williams, CAPT
        COMDT (CG-133)

To:     M. C. Marcenelle, LTJG
        CG SECTOR Charleston

Subj:   REQUEST FOR RELIGIOUS ACCOMMODATION FROM THE COAST
        GUARD'S COVID-19 VACCINATION MANDATE

Ref:    (a) Your memo 6320 of 13 SEP 21
        (b) ALCOAST 305/21 R 262212Z AUG 21
        (c) ALCOAST 315/21 R 072247Z SEP 21
        (d) Military Religious Accommodations, COMDTINST M1000.15 (series)
        (e) Immunizations and Chemoprophylaxis for the Prevention of Infectious Diseases,
            COMDTINST M6230.4 (series)
        (f) 42 U.S.C. §§ 2000bb et seq., Religious Freedom Restoration Act of 1993 (RFRA)
        (g) U.S. Coast Guard Civil Rights Manual, COMDTINST M5350.4 (series)

1. Reference (a) is your request that the Coast Guard accommodate a religious practice so that
you will not be required to receive the COVID-19 vaccine, as required by references (b) and (c).
I am the adjudication authority for religious accommodation requests pursuant to reference (d). I
have carefully reviewed your request in accordance with references (d)-(f). **Your request is
denied.**

2. I made this decision after considering your right to free exercise of your religion or religious
beliefs and the government's compelling interest in mission accomplishment, to include military
readiness; unit cohesion; good order and discipline; and the health and safety of you, the
members assigned to your unit and within the Coast Guard, and the public with whom the Coast
Guard regularly interacts. I then considered whether requiring you to receive the COVID-19
vaccine is the least restrictive means available to achieve this compelling interest. It was your
burden to establish the religious nature and sincerity of your beliefs and that receiving the
vaccine would substantially burden your religious belief or practice. For the purpose of this
administrative decision, I do not question the sincerity of your religious belief or whether
vaccine requirements substantially burden your religious practice. The Coast Guard reserves the
opportunity to make these determinations, but I do not need to address them here to resolve your
request.

3. I have concluded that there are no lesser restrictive means available other than vaccination to
achieve the compelling government interest here. In assessing your request, I considered that the
Coast Guard is a military service that must be ready at all times to perform its military and other
missions. The military nature of the Coast Guard and the readiness obligations of military
service would likely suffice to require vaccination. In addition, the Coast Guard is unique
amongst the military services because of the nature of its missions that include support of the

Subj: REQUEST FOR RELIGIOUS ACCOMMODATION FROM THE    6230
COAST GUARD'S COVID-19 VACCINATION MANDATE

Department of Defense (DoD), homeland security, and non-homeland security missions, specified in law. The Coast Guard's unique nature is relevant when considering whether there are less restrictive means available to achieve the compelling government interest here. In addition to meeting the military readiness demands confronting the DoD military services, the Coast Guard also conducts its missions on a 24 hours/7 days a week basis and must also be prepared to respond to domestic emergencies. Given the small size of the Coast Guard's work force and geographic dispersion of its units, many of which are small, any impact on the readiness of one Coast Guard unit has cascading effects on the entire Coast Guard. The service is not structured to have multiple layers of coverage that would allow another unit to fill the void left by the impacted unit. Moreover, we need as many members as possible, regardless of rating or assignment, to be prepared to deploy without significant notice to meet emergent needs. Further, Coast Guard members have much greater and more frequent interactions with members of the public than our DoD counterparts. The Coast Guard's eleven statutory missions require Coast Guard personnel to work at times amongst and with the public, and the Coast Guard has an obligation to ensure the safety of both its own personnel as well as those in the communities we serve or with whom we otherwise interact.

4. I also considered that you are assigned to an operational billet. In your current assignment to Sector Charleston, your duties as a watchstander in the Sector Command Center are critical on the watch floor during the execution and coordination of various law enforcement, search and rescue, waterways management, and pollution cases. Your additional duties as a Boarding Officer and as the Sector's Auxiliary Liaison place you within close proximity to your shipmates, the boating public, and Coast Guard Auxiliarists, some of whom are within high-risk categories. These interactions limit your ability to consistently maintain compliance with the Center for Disease Control's recommended social distancing guidelines. Additionally, given the dynamic nature of your unit's operations, you are expected to be readily available to support operations during major marine events, contingencies, and other major incidents, should they occur.

   a. Social distancing measures such as isolation, quarantine, and telework are inadequate to mitigate the spread of COVID-19 throughout your unit and the public because of the operational nature of your billet. As a member assigned to an operational unit, you are unable to accomplish your daily missions while in isolation, in quarantine, or at home. Your assignment requires your daily physical presence, which renders teleworking without unacceptable loss of mission effectiveness, impossible. The close working quarters of your unit prevents the Coast Guard from isolating or quarantining you away from your shipmates. Moreover, the close working quarters renders social distancing impracticable as you are unable to remain six feet away from your shipmates throughout the day.

   b. Other safety and risk mitigation measures such as masking are also inadequate due to the nature of your billet. Wearing masks, washing hands, and practicing other hygienic techniques do not provide the same level of protection against COVID-19 as full vaccination. Relying solely upon these less effective means of protection poses a greater risk to the mission because you are significantly more vulnerable to contracting COVID-19 while interacting with the public. The inefficacy of preventative hygiene and masking means your failure to be vaccinated poses a substantial risk to your shipmates and the members of the public we are charged with protecting or with whom we interact.

   c. Testing is insufficient to mitigate the risk of COVID-19 due to inaccuracy of rapid antigen tests and the window of time necessary to receive the results of a positive COVID-19 test. By the time you receive your results, there is a high likelihood you would have already exposed other members of the Coast Guard and the public.

2

Subj: REQUEST FOR RELIGIOUS ACCOMMODATION FROM THE      6230
COAST GUARD'S COVID-19 VACCINATION MANDATE

5. Ultimately, unvaccinated Coast Guard members place not only themselves at risk, but also hold at risk every other member in the unit and the public. Your inability to practice social distancing at your unit and the ineffectiveness of other preventative safety measures pose a substantial risk of you contracting or spreading COVID-19. This in turn decreases the military readiness of the unit and the Coast Guard as a whole. You must be medically ready and able to perform your duties for your unit to function effectively.

6. I therefore find that there are no means less restrictive than full vaccination to achieve the Coast Guard's compelling governmental interest because of the conditions under which the Coast Guard executes its missions and your role within that execution. **Your request for a religious accommodation to the Coast Guard's COVID-19 vaccine mandate is denied**.

7. You have 10 business days after receipt of this decision to receive your first dose of a two-dose vaccine or the single dose of a single-dose vaccine.

8. If you wish to appeal this decision, you must do so within 10 business days after receipt of this decision. The appeal authority for this matter is the Assistant Commandant for Human Resources (CG-1) at HQSPolicyandStandards@uscg.mil. The appeal must include the specific basis on which you believe the initial denial was in error.

9. You have the right to file an Equal Opportunity complaint by contacting a Civil Rights Service Provider within 45 calendar days of any denial. For complaint processing, see Chapter 5 of Reference (g).

10. If you do not begin the COVID-19 regimen or submit an appeal within 10 business days after the receipt of this decision, you will be in violation of the lawful order in reference (c), as well as any other order that you received from competent authority to become vaccinated against COVID-19, and will be subject to all punitive and administrative consequences for failing to comply.

#

Copy:   CG SECTOR Charleston
        COMDT (CG-00A)
        COMDT (CG-00H)
        COMDT (CG-112)

3

274

EXHIBIT 5

**Marcenelle, Michael C (Mack) LTJG USCG SEC CHARLESTON (USA)**

| | |
|---|---|
| **From:** | Mattern, Heather R. CAPT USCG SEC CHARLESTON (USA) |
| **Sent:** | Friday, February 11, 2022 8:42 AM |
| **To:** | Marcenelle, Michael C (Mack) LTJG USCG SEC CHARLESTON (USA) |
| **Subject:** | RE: RA Denial Follow-Up |

Good Morning,

I forwarded your questions to D7 Legal Office and they provided the following information.

Members are only authorized to receive the response from CG-133. That document provides the complete reasoning and explanation of the decision on your request. We cannot authorize an extension; you must submit your request within the prescribed 10 day period.

Appeals should sent to CG-1 either through or with a copy to the MACOM. This ensures the command has visibility of the appeal and does not pre-emptively initiate additional actions required after the 10 day appeal window. MACOMs are not expected to endorse appeals. The email address provided for your appeal submission is a CG-133 address. They will then route your package for CG-1 consideration.

v/r
Deputy

---

**From:** Marcenelle, Michael C (Mack) LTJG USCG SEC CHARLESTON (USA) ████████████████
**Sent:** Thursday, February 10, 2022 3:57 PM
**To:** Mattern, Heather R. CAPT USCG SEC CHARLESTON (USA) ████████████████
**Subject:** RA Denial Follow-Up

Good Afternoon Deputy,

Thank you for meeting with me today to discuss and provide my Religious Accommodation (RA) denial and routing instructions (attached).  As mentioned earlier, I am respectfully requesting a copy of CAPT Cole's Endorsement that was included with my RA prior to its review and subsequent denial.

Also, do you know how I can get a copy of my entire RA package that was presented to CG-133?  I expect there may have been additional endorsements that were included on its way up the chain.  In order to make an effective appeal, I need to know what was included along with my RA that may have weighed on the final decision to deny the RA.  I cannot begin drafting my appeal until I have these documents and am therefore requesting that the '10 business day' appeal timeline not begin until I receive these documents.

Additionally, the denial letter states that my appeal must go to the Assistant Commandant for Human Resources (CG-1) at HQSPolicyandStandards@uscg.mil.  The denial letter does not require that I route through MACOM and CG-133 nor does it require that I forward a copy to D7.  You mentioned that internal guidance came out regarding the routing procedures you provided and I am respectfully requesting a copy of the policy/guidance from the source that is directing a change to what was provided by CG-133 in my denial letter.  In the absence of an alternate policy from CG-1, I plan to submit my appeal as directed in the denial letter.

Thank you for your support in this matter, CAPT.

V/R,

LTJG Mack Marcenelle
Search and Rescue Controller
Sector Charleston, D7
United States Coast Guard
Phone: █████████

EXHIBIT 6

**U.S. Department of Homeland Security**

**United States Coast Guard**

United States Coast Guard
Sector Charleston

1050 Register Street
N. Charleston, SC 29405

6320
25 FEB 2022

From:  Michael C. Marcenelle, LTJG
       CG SECTOR Charleston

To:    COMDT (CG-1)

Subj:  APPEAL OF DENIED RELIGIOUS ACCOMMODATION REQUEST

Ref:   (a) Request for Religious Accommodation from the Coast Guard's COVID-19
           Vaccination Mandate dtd 08 FEB 2022
       (b) Request for Religious Accommodation dtd 09 SEP 2021

1. I respectfully request to appeal the decision in Ref (a) to deny my Religious Accommodation
   (RA) Request made by CAPT A. W. Williams (CG-133) on 08 FEB 2022.

2. I would like to begin by extending my gratitude to CAPT Williams and CG-133 for
   recognizing the sincerity of my religious beliefs as stated in Ref (b) and that the vaccine
   requirements substantially burdens my religious practice. This determination by CAPT
   Williams resolutely and definitively affirms that I have succeeded in my burden to establish
   the religious nature and sincerity of my beliefs and that receiving the vaccine substantially
   burdens my religious belief or practice.

3. In order to deny my request for religious accommodation, the Coast Guard is required to
   prove that there are no lesser restrictive means available other than vaccination to achieve the
   compelling government interest. However, the denial letter provided by CAPT Williams
   does not effectively prove this point. The specific basis on which I believe the initial denial
   was in error are the following:

   a. **The denial letter does not prove that there is a compelling government interest to
      require vaccination against COVID-19.** In order to claim that there is a compelling
      government interest, the Coast Guard must first prove that the service is currently
      incapable of fulfilling its 11 statutory missions or at a minimum, is suffering from a
      severe degradation in its ability to perform these missions. On 24 FEB 2022 during the
      annual State of the Coast Guard Address, Admiral Karl Shultz applauded the Coast
      Guard's ability to remain operational throughout the pandemic, excelling in all aspects
      across the spectrum of Coast Guard missions and indicated no shortfalls in the Coast
      Guard's performance due to COVID-19.

   b. **The denial letter does not prove that I have been incapable of fulfilling my
      responsibilities in support of Coast Guard missions.** The denial letter makes
      erroneous assumptions that I would not be able to perform my duties if I remain
      unvaccinated and disregards my success while unvaccinated throughout the pandemic. I

1

have received five Officer Evaluation Reports since the beginning of the pandemic and there are no remarks that indicate I have been incapable of performing my duties. Taking into account my past performance and success, the Coast Guard cannot make a blind assumption that after 2 years into the pandemic, I will suddenly become incapable of performing my duties.

c. **The denial letter does not provide adequate or definitive facts proving that vaccination is the only means of achieving the compelling interest.** The denial letter goes into great detail listing how all of the measures currently in place aboard Coast Guard installations are ineffective at preventing infection from COVID-19. The letter does not provide any factual evidence that vaccination is the only other means available to achieve the compelling government interest. On 28 JAN 2022, the Centers for Disease Control and Prevention (CDC) issued a report titled, *COVID-19 Cases and Hospitalizations by COVID-19 Vaccination Status and Previous COVID-19 Diagnosis*, which recognized the effectiveness of COVID-19 infection-induced (natural) immunity. Having previously contracted and recovered from COVID-19 as is noted in my official military medical record, I now have scientifically recognized natural immunity and am no longer at risk of COVID-19 infection.

d. **The denial letter does not provide a detailed risk/benefit analysis showing how CAPT Williams determined my religious beliefs to be inferior to the compelling government interest.** The denial letter clearly affirmed the religious nature and sincerity of my beliefs and that receiving the vaccine substantially burdens my religious belief or practice. The denial letter makes no attempt to analyze the implications of disregarding my beliefs in favor of vaccination. One of the most concerning aspects of the denial letter is that the letter is merely a template used for all Coast Guard RA denials with only the addition of my name and duties. The use of a denial letter template and the lack of a risk/benefit analysis tailored specifically to me makes it clear that CAPT Williams had pre-determined my RA denied before even reviewing it.

4. I respectfully request you reverse the decision made by CAPT Williams and approve my RA to continue serving my country without receipt of a COVID-19 vaccine.

5. My contact information is      and      for clarification/elaboration on any of the statements provided above.

#

2



**U.S. Department of Homeland Security**

**United States Coast Guard**

Commandant
United States Coast Guard

2703 Martin Luther King Jr. Ave SE
Washington, DC 20020
Staff Symbol: CG-1
Phone: ███████████

6230
16 May 2022

# MEMORANDUM ████████████████

From:   E. C. Jones, RADM
        Appellate Authority

To:     M. C. Marcenelle, LTJG

Subj:   DECISION ON APPEAL OF RELIGIOUS ACCOMMODATION DENIAL

Ref:    (a) Your memo 6230 of 25 Feb 2022
        (b) CG-133 memo 6230 of 08 Feb 2022
        (c) Military Religious Accommodations, COMDTINST 1000.15 (series)

1. I have personally reviewed and fully considered your appeal (reference (a)) of the decision to deny your request for a religious accommodation (reference (b)). I find no error occurred in reaching the decision to deny your religious accommodation request. As such, and in accordance with reference (c), your appeal is denied.

2. My decision in your case came only after extensive consideration. I personally reviewed your appeals package and consulted with a Judge Advocate to ensure I accurately applied the law and policy to your specific circumstances. My actions in denying your request are intended to meet Coast Guard requirements as a ready military workforce and national first responder in which you play a valuable role.

3. I realize my denial of your appeal is not welcome news. It takes courage to submit an accommodation request that requires sharing your closely held beliefs, as well as to trust others to treat those beliefs thoughtfully. I also understand that you may have experienced additional stress during this process and, if so, strongly encourage you to take advantage of the many resources the Coast Guard provides to help you best manage that stress. Contact your command if you have questions about how to access these resources.

4. I have no doubt that you have made significant sacrifices along your journey, investing yourself in our Coast Guard and the Nation. I hope you will decide to comply with the Coast Guard's vaccine requirement and continue your service well into the future.

#

DEPARTMENT OF HOMELAND SECURITY
U.S. COAST GUARD

## ADMINISTRATIVE REMARKS

### PRIVACY ACT STATEMENT

Pursuant to 5 U.S.C. §552a(e)(3), this Privacy Act Statement serves to inform you of why DHS is requesting the information on this form.
**AUTHORITY:** 14 U.S.C. § 505
**PURPOSE:** To document a USCG service member's achievements, accomplishments, Uniform Code of Military Justice (UCMJ) infraction(s), or any other USCG military pay or personnel activity.
**ROUTINE USES:** Authorized USCG officials will use this information to validate a USCG service member's achievements, accomplishments, UCMJ infraction(s) or any other USCG military pay or personnel activity. Any external disclosures of information within this record will be made in accordance with DHS/USCG-014, Military Pay and Personnel, 76 Federal Register 66933 (October 28, 2011).
**CONSEQUENCES OF FAILURE TO PROVIDE INFORMATION:** Providing this information is voluntary. However, failure to provide this information may result in a delay in administrating this form.

Entry Type: Performance and Discipline (P&D-41C)
Reference:   (a)  COMDT COGARD WASHINGTON DC 262212Z AUG 21/ALCOAST 305/21
(b) DoD Instruction 6205.02, DoD Immunization Program (23 Jul 19)
(c) Immunizations and Chemoprophylaxis, COMDTINST M6230.4 (series)
(d) Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 801– 946 (as amended)

Responsible Level: Unit
Entry:

27 May 2022: As required by reference (a), and consistent with the processes outlined in references (b) and (c), you are required to receive a COVID-19 vaccine in accordance with Food and Drug Administration-approved labeling and guidance.

Your request for a religious accommodation was denied.

You are hereby ordered to receive your first dose of a fully FDA-approved COVID-19 vaccine no later than Tuesday, 03 June 2022. You will email proof of your vaccine to medical via D07-DG-BASECHARLESTON-HSWL@uscg.mil and to the Sector COVID Team via D07-DG-SECCHASN-COVID19-Support@uscg.mil. A violation of this order may subject you to administrative and disciplinary consequences and is punishable under the Uniform Code of Military Justice (ref (d)), including under Article 90 (willfully disobeying superior commissioned officer) and Article 92(2) (failure to obey a lawful order).


J. D. COLE, CAPT, USCG
Commander, Sector Charleston

_____ : I acknowledge the above order.

CAPT Heather Mattern, Deputy Sector Commander & I discussed my inability to
carry out this order as there are currently no "fully FDA-approved" vaccines available.
Deputy referenced ALCOAST 352/21 as the USCG determination that the
vaccines are "interchangeable", although FDA states they are "legally distinct".

Michael C. Marcenelle

| 1. NAME OF PERMANENT UNIT | 2. NAME OF UNIT PREPARING THIS FORM | |
|---|---|---|
| CG Sector Charleston | | |
| 3. NAME OF MEMBER (Last, First, MI) | 4. EMPLOYEE ID NUMBER | 5. GRADE/RATE |
| Marcenelle, Michael C | | O2 / LTJG |

File original in SPO PDR, Email copy to CG PSC-BOPS-C-MR

CG-3307 (05/20)
PREVIOUS EDITIONS ARE OBSOLETE

Page 1 of 1



U.S. Department of
Homeland Security

**United States
Coast Guard**

Commanding Officer
United States Coast Guard
Sector Charleston



LTJG Michael C Marcenelle

6230
31 May 2022

# MEMORANDUM

From:   M.C. Marcenelle, LTJG

To:     J.D. Cole, CAPT

Subj:   ATTEPMT TO RECEIVE FULLY FDA-APPROVED COVID-19 VACCINE

Ref:    (a) CG-3307 Dated 27 May 2022

1. In accordance with reference (a), I have been ordered to receive the first dose of a fully FDA-approved COVID-19 vaccine by 03 JUN 2022.

2. I, LTJG Michael C. Marcenelle, EMPLID ████████, arrived at Naval Health Clinic Charleston on 31 MAY 2022 and requested to receive a fully FDA-approved vaccine.

   a.  Witness Name / Rank:   _TANIKCA R EVANS, RU_

   b.  Witness Signature:   _____

   c.  Date and Time:   _5/3/22 @ 1120_

3. As of the date and time of this call, there were no fully FDA-approved COVID-19 vaccines available at my assigned military treatment facility.

4. In accordance with 21 U.S. Code § 360bbb-3 (e)(1)(A)(ii)(III) and 10 U.S. Code § 1107 (f)(1) I am exercising my right to reject the currently available COVID-19 vaccines due to their status under Emergency Use Authorization (EUA).

5. At this time, I have complied with all lawful orders given to me pertaining to COVID-19 vaccination.

\# *530165*

Case ID Number: 530165

5/31/2022 10:58 AM

Please take your ticket and wait for you number to be called

Your Ticket Number is: 1 Q14

Welcome to NHC Charleston

DEPARTMENT OF HOMELAND SECURITY
U.S. COAST GUARD

EXHIBIT 10

## ADMINISTRATIVE REMARKS

### PRIVACY ACT STATEMENT

Pursuant to 5 U.S.C. §552a(e)(3), this Privacy Act Statement serves to inform you of why DHS is requesting the information on this form.
**AUTHORITY**: 14 U.S.C. § 505
**PURPOSE**: To document a USCG service member's achievements, accomplishments, Uniform Code of Military Justice (UCMJ) infraction(s), or any other USCG military pay or personnel activity.
**ROUTINE USES**: Authorized USCG officials will use this information to validate a USCG service member's achievements, accomplishments, UCMJ infraction(s) or any other USCG military pay or personnel activity. Any external disclosures of information within this record will be made in accordance with DHS/USCG-014, Military Pay and Personnel, 76 Federal Register 66933 (October 28, 2011).
**CONSEQUENCES OF FAILURE TO PROVIDE INFORMATION**: Providing this information is voluntary. However, failure to provide this information may result in a delay in administrating this form.

Entry Type: Performance and Discipline (P&D-41D)

Responsible Level: Unit
Entry: Negative

31 May 2022: On 27 May 2022, you were ordered to receive the first dose of the COVID-19 vaccine. You acknowledged receiving the order on 27 May 2022. You failed to receive the first dose as ordered. You did not have an approved or pending religious or medical exemption on the date that you were ordered to receive the vaccine. You had the opportunity and means to follow the order and failed to do so.

You are in violation of Article 90 ("Willfully Disobeying a Superior Commissioned Officer") and Article 92(2) ("Failure to Obey other Lawful Order") of the Uniform Code of Military Justice.

J. D. Cole, CAPT, USCG

Commander, Sector Charleston

: I acknowledge receipt of this CG-3307.

Michael C. Marcenelle

| 1. NAME OF PERMANENT UNIT | 2. NAME OF UNIT PREPARING THIS FORM | |
|---|---|---|
| CG Sector Charleston | CG Sector Charleston | |
| 3. NAME OF MEMBER (Last, First, MI) | 4. EMPLOYEE ID NUMBER | 5. GRADE/RATE |
| Marcenelle, Michael C | | O2/LTJG |

File original in SPO PDR, Email copy to CG PSC-BOPS-C-MR

CG-3307 (05/20)
PREVIOUS EDITIONS ARE OBSOLETE

Page 1 of 1

OlJUNE LTJG Marcenelle provided documentation that he attempted to recieve a fully FDA approved COVID-19 Vaccination as per from The Charleston Noval Health Clinc asper the CG-3307 dated 27 May 2022 but that There was no fully vaccinated FDA approved, as Noted in memo

EXHIBIT 11



# UNITED STATES COAST GUARD

### THIS IS TO CERTIFY THAT
### THE COMMANDANT OF THE UNITED STATES COAST GUARD
### HAS AWARDED THE

## COAST GUARD ACHIEVEMENT MEDAL

### TO

LIEUTENANT JUNIOR GRADE MICHAEL C. MARCENELLE
UNITED STATES COAST GUARD

### FOR

SUPERIOR PERFORMANCE OF DUTY FROM APRIL 2019 TO JUNE 2022

GIVEN THIS    25th    DAY OF    May 2022



For the Commandant,
J. D. COLE
Captain, U. S. Coast Guard
Sector Charleston

283

CITATION TO ACCOMPANY THE AWARD OF

THE COAST GUARD ACHIEVEMENT MEDAL
(GOLD STAR IN LIEU OF A SECOND)

TO

LIEUTENANT JUNIOR GRADE MICHAEL C. MARCENELLE

UNITED STATES COAST GUARD

Lieutenant Junior Grade MARCENELLE is cited for superior performance of duty while assigned to Coast Guard Sector Charleston from April 2019 to June 2022. As a member of the Response Department, he supported the coordination and execution of five high interest vessel boardings, 18 multi-agency strike force operations, six military outload operations, and four recreational boating safety and living marine resources surge operations, enhancing the safety and security across Sector Charleston's area of responsibility. Demonstrating professional acumen, he qualified as a watchstander in the Command Center, supporting the successful prosecution of 60 multi-mission cases, saving or assisting 76 lives and preserving property valued at over $2 million. He also volunteered to attain an emergency medical technician qualification, and trained over 50 members in medical emergency response. On September 4, 2021, as the Operations Unit Controller, he leveraged his law enforcement expertise to issue verbal commands over the phone to an intoxicated boat operator who was holding his passengers captive. His actions resulted in a de-escalation of the incident and the operator relinquishing control of the vessel to a passenger until they moored, ensuring the safety of all those onboard. Lieutenant Junior Grade MARCENELLE's diligence, perseverance, and devotion to duty are most heartily commended and are in keeping with the highest traditions of the United States Coast Guard.

The Operational Distinguishing Device is authorized.



284

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **ALARIC STONE**, **ERIC JACKSON**, and | ) | |
| **MICHAEL MARCENELLE**, on behalf of | ) | |
| themselves and all others similarly situated, | ) | |
| | ) | Case No. |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| **ALEJANDRO N. MAYORKAS**, in his official | ) | |
| capacity as Secretary of Homeland Security, | ) | |
| **LLOYD J. AUSTIN**, **III**, in his | ) | |
| official capacity as Secretary of Defense, | ) | |
| **LINDA L. FAGAN**, in her official | ) | |
| capacity as Commandant of the Coast Guard, and | ) | |
| **BRIAN K. PENOYER**, in his official capacity | ) | |
| as Assistant Commandant for Human | ) | |
| Resources of the Coast Guard, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>DECLARATION OF STEPHANIE L. REQUENA</u>**

Pursuant to 28 U.S.C. § 1746, I, Stephanie Requena, under penalty of perjury declare as follows:

1.     I am over the age of eighteen and I am competent to make this declaration.

2.     I served in the United States Coast Guard as an enlisted service member for 14-and-a-half years. I was an Independent Duty Health Services Technician (IDHS) at Sector Field Office Southwest Harbor Maine, when I resigned under duress earlier this year.

3.     I am a lifelong Christian and am deeply committed to my relationship with Christ. I believe the use of aborted fetal cell lines in the development of vaccines is sinful. I understand that all of the available COVID-19 vaccines used aborted fetal cell lines in their production, development, and/or testing.

1

285

4. In October 2021, I sought a religious accommodation from the Coast Guard's COVID-19 vaccine mandate. *See* Exhibit 1, attached, Stephanie Requena Religious Accommodation (RAR).

5. My RAR was denied on February 11, 2022.

6. I appealed on approximately February 24, 2022, though my appeal document is dated March 3, 2022. *See* Exhibit 2. In my appeal I noted that I had separated from active duty to care for my then-newborn child, pursuant to the Coast Guard's Care of a Newborn Child policy authorizing such temporary separations. *Id.* at 6.

7. On May 13, 2022, the Coast Guard concluded that my "appeal is <u>granted</u>," *see* Exhibit 3 (emphasis in original), though it failed to notify me of this until June. However, the decision memo clarified that my religious objection could only be "temporarily accommodated" simply "because [I] separated from active duty," and my request was "approve[d]" only "until the conclusion of [my] Temporary Separation agreement." It stated that my request would be "reconsider[ed]" if I attempted to return to service." *Id.* at para. 3.

8. The attached exhibits are redacted to remove some personal identifiers.

9. I declare under penalty of perjury that the foregoing is true and correct. Executed on September 15, 2022

_____

Stephanie L. Requena

2



**U.S. Department of Homeland Security**

**United States Coast Guard**

Supervisor
United States Coast Guard
SFO Southwest Harbor



184 Clark Point Road
Southwest Harbor, ME 04679

6230
28 Oct 2021

# MEMORANDUM

From:   Stephanie L. Requena, HS1

To:     Commandant (CG-133)
Thru:   SFO Southwest Harbor
        Sector Northern New England
        Commandant (CG-112)

Subj:   REQUEST FOR RELIGIOUS ACCOMMODATION

Ref:    (a) Military Religious Accommodations, COMDTINST 1000.15
        (b) Project Veritas Pfizer Whistleblower (link)
        (c) FDA Summary Basis for Regulatory Action
            https://www.fda.gov/media/151733/download

1.   Respectfully request a waiver of policy to accommodate a religious practice based on a sincerely-held religious belief in accordance with Reference (a). I request a waiver to the immunizations policy, specifically Covid-19 Vaccination.

2.   Nature of the Request. Requesting waiver for accommodation for the Covid-19 Vaccination. I have not had any previous waivers approved or denied.

3.   Basis. I was born into the Christian Church, and as an infant, toddler, child, and teenager attended Hope Community Church in Andover, KS. I volunteered teaching 3-5 year old's Sunday school. I also volunteered during many summers with Vacation Bible School (VBS). In June of 2007, I confessed Jesus Christ as my Lord and Savior and was baptized.

   Upon joining the Coast Guard, I volunteered to be a religious leader during Boot Camp, and while stationed at the Air Station/ Sector Field Office Port Angeles, WA. Throughout my time in the military I have attended multiple churches that I have grown my relationship with Christ more, and was active in volunteering for.

   I consider my body to be a temple of the Holy Spirit. In Exodus 20:13, God said "you shall not murder." I believe that the use of embryonic cell tissue is a moral sin as I believe abortion is the murder of an unborn child. In Exodus 21: 22-25 it states "If men who are fighting hit a pregnant woman, and she gives birth prematurely but there is no serious injury, the offender must be fined whatever the woman's husband demands and the court allows. But if there is serious injury, you are to take life for life, eye for eye, tooth for tooth, hand for hand, foot for foot, burn for burn, wound for wound, bruise for bruise." In the Project Veritas Pfizer Whistleblower video dated October 6, 2021 (reference b) it was confirmed that the use of embryonic cell tissue derived from the line of aborted fetal tissue HEK293T was used during either the testing or

287

manufacturer of the vaccines. Therefore, in good conscious, and as Romans 15: 5, 22 says "… Each one should be fully convinced in his own mind... So whatever you believe about these things keep between yourself and God…"

Furthermore, I cannot in good conscious inject a substance that had the process of manufacturer redacted in the Summary Basis for Regulatory Action (reference C). Also, the intrusive nature of the vaccine up to the genetic level and how it could potentially affect any future children. Because of these reasons, I cannot in good faith, receive the Covid-19 Vaccine.

I will continue to wear a face mask and practice social distancing. I will also, as available, complete weekly testing for Covid-19.

4. Date of consultation with medical officer: September 14, 2021. Medical officer contact information: Lt. Angela Karcinski ███████████████████

5. My contact information is: ███████████████████

#

PRIVACY ACT STATE

Pursuant to 5 U.S.C. §552a(e)(3), this Privacy Act Statement serves to inform you of why DHS is requesting the information on this form.

AUTHORITY: 14 U.S.C. § 505

PURPOSE: To obtain information from a person seeking a military religious accommodation in order to identify the free exercise of religion asserted by the member and make a determination that balances the free exercise of religion with military readiness, unit cohesion, and good order and discipline. A Religious Accommodation Interview Checklist will be used by the Chaplain to record information provided by the member during an inter

ROUTINE USES: Authorized USCG officials will use this information to determine if a religious accommodation can be approved pursuant to Section 533(a)(1) of Public Law 112-239 (2013), as amended. Any external disclosures of information within this record will be made in accordance with DHS/USCG-014, Military Pay and Personnel, 76 Federal Register 66933 (October 28, 2011).

CONSEQUENCES OF FAILURE TO PROVIDE INFORMATION: Providing this information is voluntary. However, failure to provide this information may delay the administrative proc

**U.S. Department of Homeland Security**

**United States Coast Guard**

Supervisor
United States Coast Guard
Sector Field Office

184 Clark Point Road
Southwest Harbor, ME 04679

███████████

6230
03 Mar 2022

## MEMORANDUM

From:   S. E. Requena, HS1
        CG SFO Southwest Harbor

To:     COMDT (CG-13)

Subj:   APPEAL OF DENIAL FOR RELIGIOUS ACCOMMODATION

Ref:    (a) Constitution of the United States Amendment
        (b) Religious Freedom Restoration Act of 1993 (Title 42 U.S.C 2000bb)
        (c) Military Religious Accommodations, COMDTINST 1000.15 (series)
        (d) ACN 098/21 – COVID-19: Booster doses for PFIZER/BioNtech COVID-19 Vaccine
        (e) ACN 420/21 – COVID-19: Mandating Covid-19 Vaccination for Military members: Update 3

1.   I am respectfully appealing the denial of my religious accommodation request not dated in which I requested a waiver to the immunization policy, in keeping with my religious beliefs against use of cells derived from aborted children specifically in regards to their use in the development and /or production of the Civid-19 vaccine, as well as the use of M-RNA technology that has unknown effect on DNA.

2.   The basis of this appeal is that the response given to my religious accommodation request has not clearly articulated the governments compelling interest. Neither has it demonstrated that less restrictive means do not exist which could be implanted in order to accommodate my request. Finally, the government has contradicted its own policies in stating that risk mitigation measures such as mask wearing and testing are inadequate.

3.   The First Amendment of the Constitution ref (a) states "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." The mandate given down by the Federal Government and the subsequent denial of my religious accommodation request by the Coast Guard; a government agency, directly violates the free exercise clause of the First Amendment.

4.   The Religious Freedom Restoration Act (RFRA) of 1993, ref (b) states that "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability" except when the Government or in this case the United States Coast Guard as the acting Government entity can "demonstrate that the religious burden to the person is (1) in furtherance of a compelling governmental interest and (2) is the least restrictive means of furthering that compelling interest. These requirements for denial of Religious Accommodation requests is echoed in the Coast Guard Religious Accommodations instruction ref (c). Under both of the aforementioned references, I as the member am responsible for

APPEAL OF DENIAL FOR RELIGIOUS
ACCOMMODATION
6230

03 Mar 2022

demonstrating that a policy burdens my religious beliefs, as per the denial memo I received from the Coast Guard, as the compelling Government agency affirms that I have in fact demonstrated my sincere religious belief. The burden as per RFRA and the Coast Guard's own Commandant Instruction, thus falls on the Coast Guard to demonstrate that their policy will further a compelling governmental interest and that their policy is the least restrictive means of furthering said compelling governmental interest.

5.   My understanding of the compelling governmental interest held by the Coast Guard based upon reference (d) and the denial memo I received is to ensure the 24/7/365 mission readiness of its crews and limit impact of illness to the work force as well as the general public. As such the Coast Guard has determined that the use of the vaccine Comirnaty is the least restrictive way to achieve its goals.

6.   The mandate of the vaccine as a least restrictive means is undermined by the Coast Guard's inability to offer the FDA approved vaccine to all its members worldwide.  The argument put forth by the Coast Guard that the EUA labelled Pfizer-BioNTech vaccine is interchangeable with the brand name FDA approved Comirnaty vaccine is a misinterpretation of the FDA's phraseology in its approval as well as a failure to understand FDA procedures and the corresponding federal laws regarding them. The Coast Guard, following the lead of DoD Assistant Secretary's memorandum dated 14 September 2021 which states "Per FDA guidance, these two vaccines are "interchangeable" and DoD health care providers should "use doses distributed under the EUA to administer the vaccination series as if the doses were the licensed vaccine" has interpreted the word "interchangeable" in the FDA approval letter to mean that the vaccines are legally interchangeable, although the FDA clarified that the products were "legally distinct". In accordance with 41 USC 262(k), in order for the two vaccines to be legally interchangeable Pfizer-BioNTech would need to submit an application to license their EUA vaccine as a biosimilar product to Comirnaty, which they have not. The DoD, much like Admiral Schultz at the US Coast Guard oversite hearing, on 19 October 2021 initially responded that there was an adequate supply of Comirnaty for military members. However, in the federal case of Doe et al v Austin DoD clarified that they did not have Comirnaty and that it was "mandating vaccines from EUA-labeled vials" and when asked by members Coast Guard Medical staff confirmed that the Coast Guard also does not have vials labeled Comirnaty. The DoD, like the Coast Guard, argues that the EUA labeled products are chemically the same as the FDA approved Comirnaty and thus is acceptable to mandate without the Presidential waiver required by 10 USC 1107(a). In the case of Doe et al v Austin the FDA explained that "some vials of EUA-labeled vaccine are still considered BLA-compliant and are thus *essentially* Comirnaty because they have BLA composition AND were produced at BLA approved facilities." The judge in the same case asserts that "FDA licensure does not retroactively apply to vials shipped before BLA approval." This means that any Pfizer-BioNTech vaccine that is held by DoD or the Coast Guard prior to 23 August 2021 can never be considered compliant with any biological license application thus they remain EUA. Moreover, without proof that a vaccine was created in a facility approved to manufacture BLA compliant vaccines those too remain EUA authorized. There can be no assumption made on the part of any Coast Guard member that a vaccine labeled Pfizer-BioNTech was manufactured in a BLA compliant facility, and I know of no policy or procedure put into place by the Coast Guard which would ensure that all the EUA authorized

2

290

APPEAL OF DENIAL FOR RELIGIOUS
ACCOMMODATION

6230

03 Mar 2022

products made available to members meet compliance with BLA production standards. Additionally, in the press release on 23 August 2021 when Pfizer announced that Comirnaty was FDA approved it stated that "Pfizer does not intend to produce any new product with the new NDC codes while EUA authorized product is available" (encl (1)). Therefore, it is reasonable to believe that neither the Coast Guard nor DoD holds a single BLA approved lot number. As such, not only is the Coast Guard misrepresenting information to members, it's also putting itself at risk by potentially violating 10 USC 1107(a) by inadvertently illegally mandating and subsequently injecting members with non-BLA compliant EUA vaccines without a Presidential waiver.  Again, as the lot numbers, date of receipt and list of BLA lot numbers has not been provided to members they are unable to provide informed consent and may be at risk of being injected with EUA product against their consent, the law and several military policies.

7.   Based upon the data provided in the weekly Coast Guard Head Quarters (CGHQ) Covid-19 Policy Brief the Coast Guard has failed to demonstrate that the policy of attaining a fully vaccinated force would allow them to attain their compelling governmental interest of a fully mission capable workforce unaffected by quarantine or illness caused by members contracting Covid-19. The data as of 01 Dec 2021, because shortly after, the Coast Guard stopped releasing data, makes clear that the rate of infection for vaccinated personnel decreased from 0.23% in August 2021 to a low of 0.059% in October 2021. There is a direct correlation between the decrease in the infection rate and the increase in the number of vaccinated personnel after mandates, restrictions and other coercive policy measures increased vaccination rates across the Coast Guard from 67.7% at the beginning of August to 92.6% as of 01 December 2021. However, there has also been a downward trend in the infection rate of unvaccinated personnel from 0.53% to 0.084% during that same period. Of note, is the infection rate for vaccinated personnel which since October 2021 has begun an upward trend placing a mere 0.001% difference between the infection rate of vaccinated (0.083%) and unvaccinated personnel as of 01 December 2021. The average- difference in infection rate from August 2021 through December 2021 between vaccinated and unvaccinated personnel is a paltry 0.18%. Enclosure (2) shows that the unvaccinated have only been a burden to the Coast Guard's compelling governmental interest for a total of 4 of the 18 weeks documented. All four of those weeks were based on data prior to Secretary Austin's issued guidance on 25 August 2021 and the subsequent mandate in ALCOAST 305/21 dated 26 August 2021.  Based upon the data from the five month period in which CGHQ tracked overall positive Covid-19 cases and break through cases, the average burden has overwhelmingly been the vaccinated at an average of 64.36% of positive cases Coast Guard wide, thus, a quarantine imposed only upon unvaccinated personnel with the intent of protecting the vaccinated is contradictory.  Paragraph 4.c of your response states that testing using EUA products is insufficient to mitigate the risk of COVID-19 due to the inaccuracy of the rapid antigen test. It is in fact, highly discriminatory and contradictory to have a policy that states testing is acceptable and accurate for one group and that this accuracy will allow members to remain in their position and unquarantined yet wholly unreliable for another group and thus the that group must be quarantined. These actions directly contradict the Commandant's vision of diversity as outlined in his 2019-2023 diversity and inclusion plan in which he states "My vision is a fully inclusive Coast Guard where all people are respected, empowered, and valued". Instead, unvaccinated members are ostracized despite the fact that

3

291

03 Mar 2022

many have stood in place for vaccinated shipmates who have contracted COVID-19 and passed
it on to others. Furthermore, regardless of vaccination status Coast Guard policy for any positive
Covid-19 case is a five day quarantine, thus a reduction and impact to the force is felt regardless
of a members vaccination status should a member test positive.

8.  The facts above, of course remain in line with the new CDC definition of vaccination which
states that a vaccine is "the act of introducing a vaccine into the body to produce protection from
a specific disease" prior to the Covid-19 pandemic and failure of Covid-19 vaccines the CDC
defined vaccinations as the "introduction of a vaccine into the body to produce immunity." This
change was clearly made to cover for the now well-known fact that the only thing that Covid-19
vaccines can potentially do is mitigate severe outcomes. These outcomes however, are already
mitigated based on the relatively youthfulness and good health of all Coast Guard members.
Based on data from John Hopkins University even at the higher tier age bracket of active duty
Coast Guard members, 40-49 years of age there remains a 99.932% recovery rate. Data from the
Coast Guard itself shows that a 99% recovery rate.

9.  Founded upon the relevant data from the CGHQ Covid-19 Policy Briefs, vaccination does
not provide the best protection nor least restrictive method of preventing Covid-19 in members.
This is especially true for the latest strain of Covid-19, Omicron which has shown evidence of
being antigenically different to the original virus and is thus likely to lead to increased
breakthrough infections (encl (3)). It is clear to me that the data from CGHQ confirms studies
done showing the lack of effectiveness of all Covid-19 vaccines on all strains in the prevention
and spread of Sars-Covid-2 as vaccinated personnel have begun an upward infection trend while
unvaccinated have steadily trended downwards. Further, the overly restrictive quarantine policies
towards unvaccinated, who have consistently tested positive in fewer numbers than vaccinated
since the implementation of the mandate and at near equal levels prior to the mandate have
caused a greater impediment to the prevailing Coast Guard interest than the vaccination status of
members.  Based upon ref (d) which "strongly encourages boosters" which are not covered under
BLA standards and thus EUA; it is evident that the Coast Guard fully understands that
vaccination is inadequate for achieving its compelling interest. Additionally in an article specific
to the Coast Guard, written by various Coast Guard Medical Officers in August 2021, before the
mandate, describes the starting decreasing in efficacy of the COVID-19 vaccine in the Coast
Guard. (Encl (4)).

10. Current risk mitigation methods imposed upon me by the Coast Guard outside of the
discriminatory quarantine policy include a fifty mile restriction of movement radius, wearing
masks and practicing good hygiene. Of note, masks which are deemed effective by Dr. Fauci and
the CDC, have as per my denial memo been deemed of inadequate in the safe guarding of myself
and those around me. However, up until recently as an unvaccinated person implementing these
and other risk mitigation methods, I had not contracted Covid-19. Other personnel at my unit
who are fully vaccinated and thus should be better protected than I against not only contracting
Covid but showing symptoms have in fact contracted the virus. As a health service technician
(HS), I put myself at increased risk of contracting Covid-19 every day. Only recently, while on
maternity leave, having had no other contact with a Coast Guard member, or anyone that I'm
aware of having Covid-19, and rarely leaving my house except for medical procedures for my

292

APPEAL OF DENIAL FOR RELIGIOUS
ACCOMMODATION

03 Mar 2022

daughter and necessary grocery shopping, and being able to appropriately social distance did I contract Covid-19. Furthermore, before the mandate, I flew with my family to Orlando, FL for a family member that was dying of Covid-19. With all the contact of family members and friends, and flying on I did not contract Covid-19.

11. Having recently had Covid-19, diagnosed by PCR test, I have received the natural antibodies of the Covid-19 Virus. Per and a study out of Israel, natural antibodies is a better protector for future infections than vaccination (encl (5)).

12. Prior to the mandate, Commanding Officers had already implemented risk mitigation measures which were effective and much less restrictive than vaccination to slow the spread of COVID-19.  In addition, early treatment of viruses has always been a part of standard medical care. From the use of Tamaflu for the flu to fever reducers and medicines to fight congestion, the early care of a patient has been the cornerstone of medical protocols. One such set of protocols for prevention and mitigation of Covid-19 is the MATH+, I-MASK+ and I-Recover protocols (encl (6)) developed by the Front Line Covid Critical Care Alliance (FLCCC). The I-MASK+ protocol in particular uses procedures backed by scientific research to aid in the prevention of Covid-19 as well as the early treatment of the virus. The methods include using a combination of anti-virals such as ivermectin and antiseptic such as gargling mouthwash that has at least 1% povidone/iodine solution which is available in most over the counter mouth washes. The protocol also calls for boosting the immune system with vitamins D, C, zinc, quercetin and melatonin and even replacing ivermectin with black cumin seed and honey when ivermectin is not available. Nevertheless, even after proven Covid-19 mitigation protocols were discovered, developed and made available patients have overwhelmingly been sent home to quarantine until they either recover and develop natural immunity or become a liability to Coast Guard readiness due to lack of proper early care resulting in hospitalization and in the worst-case scenario death. Regardless, the availability of medicines, many of which are proven to be effective, cost efficient and less restrictive to my religious beliefs due to the availability of ethical choices, which do not force me support murder of an unborn child.

13. The denial of my religious accommodation request places a substantial burden on my sincerely held religious beliefs. The Coast Guard has acknowledged this; but as per references (a) and (k) has failed to show how placing me under this burden and duress will further compel their governmental interest. While the Coast Guard has been hard charging on the issue of health and welfare of its members in regards to Covid-19, it has allowed itself to become tunnel visioned and blind to the negative effects the vaccine mandate has had on its member mental health. I personally have spent several months, day after day crying for the health and well-being of my, at the time, unborn child in fear that I would be forced to get a vaccine that has no long term studies for an unborn child and the potential effects of their reproductive system, cardiovascular system, neurological system, and other systems that have been recorded in the VAERS system. Also, before the notice that discharges would be no less than a general under honorable discharge (ref e) I would have anxiety attacks believing I would be spending time in prison because of refusing a vaccine that went against my religious beliefs, furthermore, leaving my children mother-less for an unknown amount of time. After 14.5 years of honorable service, I regret re-enlisting 1 year ago and continuing to serve an organization that does not value me, or

5

APPEAL OF DENIAL FOR RELIGIOUS
ACCOMMODATION
                                                                6230

                                                        03 Mar 2022

my family. I have known countless others in my situation who have broken down to me or
admitted that they contacted CG Support for assistance. I have had members who decided to
vaccinate to save their careers and are extremely upset by their decision. They are also deeply
affected by the prospect of policies that restrict them still and may soon demand additional
vaccination.

14. I have demonstrated several Covid-19 mitigation measures to include previous local
command measures, mask wearing, social distancing, when possible, personal hygiene, and
supplements as far less restrictive means. Until recently, these have kept me covid free and an
asset to the Coast Guard's compelling government interest of a ready and healthy force since the
start of the pandemic. These measures in conjunction with readily available medical treatments,
which when provided at the early stages of Covid infection prevent severe illness all represent
less restrictive measures than this vaccination which violates my religious freedoms and forces
me to offend my God by being willfully complicit in ending of innocent human life. Thus, I
submit my appeal for reconsideration in the case of my denied Religious accommodation
request.

15. Additionally, per my denial memo paragraph 8 is inaccurate. Chaplain Downey's memo does
not mention anything about any other vaccine other than the current COVID-19 and the M-RNA
technology used in this vaccine. I personally believe that any additional vaccination should be
considered on a case-by-case basis, and each vaccine would get their own religious
accommodation as necessary, when and if that time arises. As such, I request this denial to be
stricken from record.

16. I am no longer on active duty orders due to temporary separation under care of a new child.
My Contact information is: Phone ████████████  E-mail: ████████████

Enclosures:    (1) CDC Covid-19 Vaccine Related Codes
               (2) Graphs
               (3) SARS-CoV-2 Omicron VOC Transmission in Danish Households
               (4) Effectiveness of Vaccination against Reported SARS-CoV-2 Infection in
               United States Coast Guard Personnel between May and August 2021: A time-
               Series Analysis
               (5) Fact Check: does natural immunity provide greater protection from COVID-
               19 than vaccination?
               (6) FLCCC Alliance I-Mask+


# COVID-19 Vaccine Related Codes

## COVID-19 Vaccine Codes

### Preview Posting of COVID-19 Vaccine Codes and Crosswalk for Currently Authorized Vaccines and Anticipation of Potential Vaccine Availability under Emergency Use Authorization (EUA)

*Note: Codes will become effective only upon EUA issuance or BLA licensure of COVID-19 vaccine(s) by the Food and Drug Administration (FDA)*

The codes and crosswalk for candidate COVID-19 vaccines will be posted for preview in phases as the late-stage clinical trials for candidate vaccines progress. Additional vaccines or codes will be added to this list as they enter late-stage clinical trials or prepare applications for FDA authorization.

The following downloadable table provides a summary of the currently authorized vaccine codes and a preview of the vaccine codes that will be activated if the FDA authorizes use and ACIP votes to recommend the candidate vaccines.

To support this effort, the CDC is working closely with data partners responsible for the creation and distribution of vaccine codes and drug compendia publishers to coordinate the release of codes in advance of potential EUAs to enable systems and users that require these codes to prepare in advance.

The codes for these vaccines are also included in the vaccine code set files unless otherwise noted in the table. Additional code details and fields values are included in the vaccine code sets.

American Medical Association (AMA) COVID-19 CPT® vaccine product and administration codes are now available on the AMA web site. The CPT vaccine product codes are included in the Preview COVID-19 table and the CDC vaccine code sets. You can access further information regarding the COVID-19 CPT codes, as well as the associated coding guidance, using the following link:

https://www.ama-assn.org/practice-management/cpt/covid-19-cpt-vaccine-and-immunization-codes ☐

Download the Preview Table *for US vaccine administration only*. Excel Version ☐

COVID-19 vaccine codes and crosswalks are provided in anticipation of potential vaccine availability under an approved Biologics License Application (BLA), Emergency Use Authorization (EUA), or as a potential vaccine submission for EUA (Pre-EUA) as of 02/14/2022. Codes will become effective for US vaccine administrations only upon EUA issuance and/or BLA approval of COVID-19 vaccine(s) by the FDA. All CVX codes are associated to the new Vaccine Group "COVID-19." CPT Codes shown are product codes. CPT administrative codes for doses are available on the AMA website. CPT product codes are added as the AMA approves and makes them available.

| \ horization A, EUA, -EUA) | Sale Proprietary Name | Product Description | Unit of Sale NDC10 (UOS) | UoS Package | Unit of Use NDC10 (UOU) | UoU Presentation | CVX Code | CVX Long Description | CVX Short Description | MVX Code | CPT Product Code | CP De |
|---|---|---|---|---|---|---|---|---|---|---|---|---|



| horization (A, EUA, -EUA) | Proprietary Name | Product Description | NDC10 (UOS) | UoS Package | NDC10 (UOU) | UoU Presentation | CVX Code | CVX Long Description | CVX Short Description | MVX Code | Product Code | CPT De |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| horized +) | Janssen COVID-19 Vaccine (BLUE CAP) | 5×10^10 viral particles/0.5 mL for adult 18+ | 59676-580-15 | CARTON, 10 MULTI-DOSE VIALS | 59676-580-05 | VIAL, MULTI-DOSE | 212 | SARS-COV-2 (COVID-19) vaccine, vector non-replicating, recombinant spike protein-Ad26, preservative free, 0.5 mL | COVID-19 vaccine, vector-nr, rS-Ad26, PF, 0.5 mL | JSN | 91303 | Sev res syr cor (SA (co dis [CC vac spi ad typ (Ac pre fre vir pa mL for int use |
| horized +) | Moderna COVID-19 Vaccine (RED CAP) | 100 mcg/0.5 mL for adult 18+ (existing product) | 80777-273-99 | CARTON, 10 MULTI-DOSE VIAL 5 mL EACH | 80777-273-10 | VIAL, 5 mL, MULTI-DOSE VIAL | 207 | SARS-COV-2 (COVID-19) vaccine, mRNA, spike protein, LNP, preservative free, 100 mcg/0.5mL dose or 50 mcg/0.25mL dose | COVID-19, mRNA, LNP-S, PF, 100 mcg/0.5mL dose or 50 mcg/0.25mL dose | MOD | 91301 | Sev res syr cor (SA (co dis [CC vac mF spi pre fre mc do int use |
| | | | 80777-273-98 | CARTON, 10 MULTI-DOSE VIAL 7 mL EACH | 80777-273-15 | VIAL, 7 mL, MULTI-DOSE VIAL | | | | | | |
| horized +) | Moderna COVID-19 Vaccine (RED CAP) | 50 mcg/0.25 mL for booster adult 18+ (existing product), drawn from same vial as primary series | 80777-273-99 | CARTON, 10 MULTI-DOSE VIAL 5 mL EACH | 80777-273-10 | VIAL, 5 mL, MULTI-DOSE VIAL | 207 | SARS-COV-2 (COVID-19) vaccine, mRNA, spike protein, LNP, preservative free, 100 mcg/0.5mL dose or 50 mcg/0.25mL dose | COVID-19, mRNA, LNP-S, PF, 100 mcg/0.5mL dose or 50 mcg/0.25mL dose | MOD | 91306 | Sev res syr cor (SA (co dis [CC vac mF spi pre fre mc do int use |
| | | | 80777-273-98 | CARTON, 10 MULTI-DOSE VIAL 7 mL EACH | 80777-273-15 | VIAL, 7 mL, MULTI-DOSE VIAL | | | | | | |
| -EUA horization | Moderna COVID-19 Vaccine Booster (DARK BLUE CAP) | 50 mcg/0.50 mL for booster adult 18+, new concentration | 80777-275-99 | CARTON, 10 MULTI-DOSE VIAL 2.5 mL EACH | 80777-275-05 | VIAL, 2.5 mL, MULTI-DOSE VIAL | 221 | SARS-COV-2 (COVID-19) vaccine, mRNA, spike protein, LNP, preservative free, 50 mcg/0.5 mL dose | COVID-19, mRNA, LNP-S, PF, 50 mcg/0.5 mL dose | MOD | NA | NA |

ENCLOSURE (1)

290

| Authorization, EUA, -EUA) | Proprietary Name | Product Description | NDC10 Unit of Sale (UOS) | UoS Package | NDC10 Unit of Use (UOU) | UoU Presentation | CVX Code | CVX Long Description | CVX Short Description | MVX Code | CPT Product Code | CPT De |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Authorized ages 12+ | Pfizer-BioNTech COVID-19 Vaccine (PURPLE CAP) (Original product formulation) | 30 mcg/0.3 mL for primary series, IC 3rd dose, booster | 59267-1000-2 | CARTON, 195 MULTI-DOSE VIALS | 59267-1000-1 | MULTI-DOSE VIAL | 208 | SARS-COV-2 (COVID-19) vaccine, mRNA, spike protein, LNP, preservative free, 30 mcg/0.3 mL dose | COVID-19, mRNA, LNP-S, PF, 30 mcg/0.3 mL dose | PFR | 91300 | Sev res syr cor (SA (Cc dis [CC vac mF spi pre fre mc do dilt rec for int us( |
| | | | 59267-1000-3 | CARTON, 25 MULTI-DOSE VIALS | | | | | | | | |
| Authorized ages 12+ :e: BLA-nsed for +) | Pfizer-BioNTech COVID-19 Vaccine (GRAY CAP) (Tris-sucrose formulation) | 30 mcg/0.3 mL for primary series, IC 3rd dose, booster | 59267-1025-3 | CARTON, 25 MULTI-DOSE VIALS | 59267-1025-1 | VIAL, 2.25 mL, MULTI-DOSE VIAL | 217 | SARS-COV-2 (COVID-19) vaccine, mRNA, spike protein, LNP, preservative free, 30 mcg/0.3 mL dose | COVID-19, mRNA, LNP-S, PF, 30 mcg/0.3 mL dose | PFR | 91305 | Sev res syr cor (SA (Cc dis [CC vac mF spi pre fre mc do dilt rec for int us( |
| | | | 59267-1025-4 | CARTON, 10 MULTI-DOSE VIALS | | | | | | | | |
| Authorized ages 5 yrs : 12 yrs | Pfizer-BioNTech COVID-19 Vaccine (ORANGE CAP) (Tris-sucrose formulation) | 10 mcg/0.2 mL for primary series, IC 3rd dose | 59267-1055-4 | CARTON, 10 MULTI-DOSE VIALS | 59267-1055-1 | VIAL, 2 mL, MULTI-DOSE VIAL | 218 | SARS-COV-2 (COVID-19) vaccine, mRNA, spike protein, LNP, preservative free, 10 mcg/0.2 mL dose, tris-sucrose formulation | COVID-19, mRNA, LNP-S, PF, 10 mcg/0.2 mL dose, tris-sucrose | PFR | 91307 | Sev res syr cor (SA (co dis [CC vac mF spi pre fre mc do sur for for int us( |

ENCLOSURE ( 1 )

297

| Authorization (A, EUA, -EUA) | Proprietary Name | Product Description | NDC10 (UOS) | UoS Package | NDC10 (UOU) | UoU Presentation | CVX Code | CVX Long Description | CVX Short Description | MVX Code | CPT Product Code | CPT De |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| -EUA for ...s 6 mo to ...yrs | Pfizer-BioNTech COVID-19 Vaccine (MAROON CAP) (Tris-sucrose formulation) | 3 mcg/0.2 mL for primary series | 59267-0078-4 | CARTON, 10 MULTI-DOSE VIALS | 59267-0078-1 | VIAL, 2 mL, MULTI-DOSE VIAL | 219 | SARS-COV-2 (COVID-19) vaccine, mRNA, spike protein, LNP, preservative free, 3 mcg/0.2 mL dose, tris-sucrose formulation | COVID-19, mRNA, LNP-S, PF, 3 mcg/0.2 mL dose, tris-sucrose | PFR | 91308 | Sev res syr con (SA (co dis [CC vac mF spi pre fre mc do dilt rec tris for for int us( |
| -EUA | AstraZeneca COVID-19 Vaccine | 5×10^10 viral particles/0.5 mL, adult | No active NDC codes for U.S. Market | | | | 210 | SARS-COV-2 (COVID-19) vaccine, vector non-replicating, recombinant spike protein-ChAdOx1, preservative free, 0.5 mL | COVID-19 vaccine, vector-nr, rS-ChAdOx1, PF, 0.5 mL | ASZ | 91302 | Sev res syr con (SA (co dis [CC vac spi chi ad( Ox (Ch ve( pre fre vir. pa mL for int us( |
| -EUA | Novavax COVID-19 Vaccine | 5 mcg/0.5 mL, adult | No active NDC codes for U.S. Market | | | | 211 | SARS-COV-2 (COVID-19) vaccine, Subunit, recombinant spike protein-nanoparticle+Matrix-M1 Adjuvant, preservative free, 0.5mL per dose | COVID-19 vaccine, Subunit, rS-nanoparticle+Matrix-M1 Adjuvant, PF, 0.5 mL | NVX | 91304 | Sev res syr con (SA (co dis [CC vac rec spi na sa| ba: adj pre fre mc do int us( |

ENCLOSURE (1)

208

EXHIBIT 3

**U.S. Department of Homeland Security**

**United States Coast Guard**

Commandant
United States Coast Guard

2703 Martin Luther King Jr. Ave SE
Washington, DC 20020
Staff Symbol: CG-1
Phone: ██████████

6230
13 May 2022

# MEMORANDUM

██████████████████████

From:   M. L. Lafferty, RDML
        Appellate Authority

To:     S. L. Requena, HS1

Subj:   DECISION ON APPEAL OF RELIGIOUS ACCOMMODATION DENIAL

Ref:    (a)  Your memo 6230 of 03 Mar 2022
        (b)  CG-133 memo 6230 of 11 Feb 2022
        (c)  Military Religious Accommodations, COMDTINST 1000.15 (series)

1. I have reviewed and fully considered your appeal (reference (a)) of the decision to deny your request for an accommodation from the requirement to receive the COVID-19 vaccination (reference (b)). After careful review of your request in accordance with reference (c), your appeal is <u>granted</u>.

2. I am not addressing the sincerity of your religious beliefs or whether the vaccine mandate substantially burdens that religious belief because the initial adjudicator did not address these issues in reference (b) and your request for accommodation can be granted given the specific circumstances of your Coast Guard service.

3. Specifically, I find your request can be temporarily accommodated because you separated from active duty on 24 February 2022 pursuant to the Temporary Separation policy and affiliated with the Inactive Ready Reserve (IRR) on 25 February 2022. You are not assigned to a Coast Guard unit, you do not interact with Coast Guard members as part of your IRR duties, and you are not required to periodically report to a Coast Guard unit. Further, the likelihood of you being activated in the IRR is low. Therefore, I approve your request until the conclusion of your Temporary Separation agreement. I will reconsider my decision in accordance with reference (c), if you apply to transfer to the SELRES or return to active duty. In addition, you must remain in compliance with all alternative mitigation measures imposed by Coast Guard policy.

4. You are reminded that having an approved religious accommodation does not exempt you from the requirement to protect yourself and others from COVID-19. You must comply with all safety protocols put in place by the Coast Guard on unvaccinated members.

#