UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| ERIC JACKSON, *et. al.*, <br><br>         *Plaintiffs,* <br><br>     v. <br><br> ALEJANDRO N. MAYORKAS, <br> Secretary of Homeland Security, *et al.*, <br><br>         *Defendants.* | Case No. 4:22-cv-0825-P |

# MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTIONS FOR CLASS CERTIFICATION AND A PRELIMINARY INJUNCTION

## CONTENTS

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................ 3

    A.    The COVID-19 Pandemic.................................................................................. 3

    B.    Military Vaccination Directives....................................................................... 3

    C.    The Coast Guard's Implementation of the COVID-19 Vaccination
           Directive.......................................................................................................... 5

    D.    Other Litigation Regarding the Military's Vaccination Requirement ................... 7

    E.    This Action....................................................................................................... 8

LEGAL STANDARDS ...................................................................................................... 9

ARGUMENT ................................................................................................................... 10

I.      THE COURT SHOULD NOT CERTIFY THE CLASS. ................................................ 10

    A.    Plaintiffs Fail to Identify Common Issues to Advance Their RFRA
           Claims. ......................................................................................................... 10

    B.    Plaintiffs Fail to Demonstrate that Their Claims Are Typical of the Class. ......... 16

    C.    Plaintiffs Fail to Satisfy the Requirements of Rule 23(b)(2). ............................. 17

II.    THE COURT SHOULD NOT ENTER AN INJUNCTIVE RELIEF FOR
      INDIVIDUALS OR ON A CLASS-WIDE BASIS........................................................ 20

    A.    Plaintiffs Are Unlikely to Succeed on the Merits of Their Claims...................... 20

           1.    *The Named Plaintiffs' claims are not ripe for review*.............................. 20

           2.    *Plaintiffs have failed to exhaust all available intraservice
                remedies.* ................................................................................................... 24

           3.    *Plaintiffs' RFRA claims fail on the merits.* ............................................. 27

           4.    *Plaintiffs' First Amendment claims are unlikely to succeed on the
                merits*........................................................................................................ 40

B.     Plaintiffs Are Unlikely to Suffer Irreparable Harm Absent Preliminary Relief...................................................................................................... 42

C.     The Equities and Public Interest Weigh Against a Preliminary Injunction. ......... 44

CONCLUSION........................................................................................................................ 45

# AUTHORITIES

## CASES

*Abbassi v. INS*,
    143 F.3d 513 (9th Cir. 1998) .................................................. 42

*Abbott v. Biden*,
    --- F. Supp. 3d ---, 2022 WL 2287547 (E.D. Tex. June 24, 2022), *appeal filed*,
    No. 22-40399 (5th Cir. June 29, 2022) ........................................ 7

*Ahmad v. Old Republic Nat'l Title Ins. Co.*,
    690 F.3d 698 (5th Cir. 2012) ................................................ 10

*Air Force Off. v. Austin*,
    --- F. Supp. 3d ---, 2022 WL 468799 (M.D. Ga. Feb. 15, 2022) ................... 7

*Ali v. Stephens*,
    822 F.3d 776 (5th Cir. 2016) ................................................ 16

*Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*,
    878 F.2d 806 (5th Cir. 1989) ................................................. 9

*Allison v. Citgo Petroleum Corp.*,
    151 F.3d 402 (5th Cir. 1998) ................................................ 18

*Am. Petroleum Inst. v. EPA*,
    683 F.3d 382 (D.C. Cir. 2012) ............................................... 23

*Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*,
    897 F.3d 314 (D.C. Cir. 2018), *cert. denied*, 140 S. Ct. 1198 (2020) ............ 43

*Ass'n of Irritated Residents v. U.S. EPA*,
    10 F.4th 937 (9th Cir. 2021) ............................................. 20, 22

*Austin v. Navy SEALs 1–26*,
    142 S. Ct. 1301 (2022) ................................................. *passim*

*Beck v. Maximus, Inc.*,
    457 F.3d 291 (3d Cir. 2006) ................................................. 17

*Bellinger v. Bowser*,
    288 F. Supp. 3d 71 (D.D.C 2017) ............................................. 43

*Biden v. Missouri*,
    142 S. Ct. 647 (2022) ...................................................... 38

*Brown v. Collier,*
   929 F.3d 218 (5th Cir. 2019) ............................................................ 11, 19

*Burwell v. Hobby Lobby Stores, Inc.,*
   573 U.S. 682 (2014)............................................................ 11, 12, 35, 36

*Cargill v. Marsh,*
   902 F.2d 1006 (D.C. Cir. 1990) ............................................................ 25

*Chappell v. Wallace,*
   462 U.S. 296 (1983)............................................................................. 45

*Chavez v. Plan Benefit Servs., Inc.,*
   957 F.3d 542 (5th Cir. 2020) .............................................................. 19

*Church v. Biden,*
   573 F. Supp. 3d 118 (D.D.C. 2021) ............................................*passim*

*Creaghan v. Austin,*
   --- F. Supp. 3d ---, 2022 WL 1500544 (D.D.C. May 12, 2022), *appeal filed,*
   No. 22-5135 (D.C. Cir. May 20, 2022).................................... 7, 28, 29, 40

*Daniels Health Scis., LLC v. Vascular Health Scis., LLC,*
   710 F.3d 579 (5th Cir. 2013) .............................................................. 42

*Davis v. Davis,*
   826 F.3d 258 (5th Cir. 2016) .............................................................. 11

*Diraffael v. Cal. Mil. Dep't,*
   No. 10- cv-7240, 2011 WL 13274364 (C.D. Cal. Mar. 21, 2011)............................ 21

*DM Arbor Ct., Ltd. v. City of Houston,*
   988 F.3d 215 (5th Cir. 2021) .......................................................... 20, 22

*Dodson v. U.S. Gov't, Dep't of the Army,*
   988 F.2d 1199 (Fed. Cir. 1993)............................................................ 38

*Doe #1-#14 v. Austin,*
   572 F. Supp. 3d 1224 (N.D. Fla. 2021)................................................. 7

*Doe v. San Diego Unified Sch. Dist.,*
   19 F.4th 1173 (9th Cir. 2021), *cert. and application for injunction denied,*
   142 S. Ct. 1099 (2022)................................................................ 33, 35, 42

*Doe 2 v. Shanahan*,
  917 F.3d 694 (D.C. Cir. 2019) ......................................................................... 38, 39

*Does 1–6 v. Mills*,
  16 F.4th 20 (1st Cir. 2021), *cert. denied sub nom.*
  *Does 1-3 v. Mills,* 142 S. Ct. 1112 (2022)) .................................................. 33, 35, 37

*Doster v. Kendall*,
  48 F.4th  (6th Cir. 2022) ..................................................................................... 16

*Doster v. Kendall*,
  ---F. Supp. 3d ---, 2022 WL 982299 (S.D. Ohio Mar. 31, 2022) ............................... 7

*Doster v. Kendall*,
  No. 1:22-cv-84, 2022 WL 2974733 (S.D. Ohio July 27, 2022) ................................. 8

*Dunn v. Austin*,
  142 S. Ct. 1707 (2022) ........................................................................................... 7

*Elrod v. Burns*,
  427 U.S. 347 (1976) .............................................................................................. 43

*Farmer v. Mabus*,
  940 F.2d 921 (5th Cir. 1991) ................................................................................... 9

*Flecha v. Medicredit, Inc.*,
  946 F.3d 762 (5th Cir. 2020) ................................................................................. 10

*Fourth Corner Credit Union v. Fed. Rsrv. Bank of Kan. City*,
  861 F.3d 1052 (10th Cir. 2017) ............................................................................. 22

*Fulton v. City of Phila.*,
  141 S. Ct. 1868 (2021) .......................................................................................... 13

*General Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982) .............................................................................................. 17

*Gilligan v. Morgan*,
  413 U.S. 1 (1973) ............................................................................................... 9, 24

*Goldman v. Weinberger*,
  475 U.S. 503 (1986) ..................................................................................... 9, 28, 40

*Gonzales v. O Centro Espírita Beneficente Uniao do Vegetal*,
  546 U.S. 418 (2006) ......................................................................................... 11, 13

v

*Google, Inc. v. Hood*,
　822 F.3d 212 (5th Cir. 2016) ............................................................ 43

*Guettlein v. U.S. Merch. Marine,*
　*Acad.*, 577 F. Supp. 3d 96 (E.D.N.Y. 2021) ...................................... 7

*Heidman v. United States*,
　414 F. Supp. 47 (N.D. Ohio 1976) .................................................... 24

*Hodges v. Callaway*,
　499 F.2d 417 (5th Cir. 1974) ............................................................ 24

*Holland Am. Ins. Co. v. Succession of Roy*,
　777 F.2d 992 (5th Cir. 1985) ............................................................ 42

*Holt v. Hobbs*,
　574 U.S. 352 (2015) .......................................................................... 13

*Huawei Techs. USA, Inc. v. FCC*,
　2 F.4th 421 (5th Cir. 2021) ......................................................... 20, 22

*In re Am. Med. Sys., Inc.*,
　75 F.3d 1069 (6th Cir. 1996) ............................................................ 16

*James v. City of Dallas*,
　254 F.3d 551 (5th Cir. 2001) ............................................................ 16

*Janvey v. Alguire*,
　647 F.3d 585 (5th Cir. 2011) ............................................................ 42

*Johnson v. Am. Credit Co. of Ga.*,
　581 F.2d 526 (5th Cir. 1978) ............................................................ 19

*Kaemmerling v. Lappin*,
　553 F.3d 669 (D.C. Cir. 2008) .................................................... 36, 41

*Knick v. Austin*,
　No. 22-1267, 2022 WL 2157066 (D.D.C. June 15, 2022) ............ 7, 21, 25

*Kreis v. Sec'y of Air Force*,
　866 F.2d 1508 (D.C. Cir. 1989) ....................................................... 24

*La. Power & Light Co. v. Fed. Power Comm'n*,
　526 F.2d 898 (5th Cir. 1976) ............................................................ 22

*Lacewell v. Off. of Comptroller of Currency*,
   999 F.3d 130 (2d Cir. 2021) .................................................................... 20

*Lemon v. Int'l Union of Operating Eng'rs*,
   216 F.3d 577 (7th Cir. 2000) ................................................................... 19

*Lindenau v. Alexander*,
   663 F.2d 68 (10th Cir. 1981) ..................................................................... 9

*Lopez v. City of Houston*,
   617 F.3d 336 (5th Cir. 2010) .............................................................. 20, 22

*M.D. ex rel. Stukenberg v. Perry*,
   675 F.3d 832 (5th Cir. 2012) .............................................................. 10, 18

*Machella v. Cardenas*,
   653 F.2d 923 (5th Cir. Unit A Aug. 1981)................................................ 17

*Maldonado v. Ochsner Clinic Found.*,
   493 F.3d 521 (5th Cir. 2007) .............................................................. 17, 18

*Mark Short v. Berger*,
   No. 22-cv-1151, 2022 WL 1051852 (C.D. Cal. Mar. 3, 2022), *appeal dismissed*,
   No. 22-55339, 2022 WL 2421096 (9th Cir. May 17, 2022)............................ *passim*

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997).................................................................................. 9

*McManus v. Fleetwood Enters., Inc.*,
   320 F.3d 545 (5th Cir. 2003) ................................................................... 19

*Miller v. Austin*,
   --- F. Supp. 3d ---, 2022 WL 3584666 (D. Wyo. Aug. 22, 2022).................... *passim*

*Mindes v. Seaman*,
   453 F.2d 197 (5th Cir. 1971) ................................................................... 25

*Miss. Power & Light Co. v. United Gas Pipe Line Co.*,
   760 F.2d 618 (5th Cir. 1985) ..................................................................... 9

*Moussazadeh v. Tex. Dep't of Crim. Just.*,
   703 F.3d 781 (5th Cir. 2012) ................................................................... 12

*Navy SEAL 1 v. Austin*,
   --- F. Supp. 3d ----, 2022 WL 1294486 (D.D.C. Apr. 29, 2022), *appeal filed*,
   No. 22-5114 (D.C. Cir. May 5, 2022)................................................... *passim*

*Navy SEAL 1 v. Biden*,
   No. 8:21-cv-2429, 2022 WL 483832 (M.D. Fla. Feb. 2, 2022)................................. 7

*Navy SEALs 1–26 v. Biden*,
   578 F. Supp. 3d 822 (N.D. Tex. 2022) .............................................................. 7, 14

*Navy SEALs 1–26 v. Austin*,
   --- F. Supp. 3d ---, 2022 WL 1025144 (N.D. Tex. Mar. 28, 2022), *appeal filed*,
   No. 22-10534 (5th Cir. May 31, 2022);.................................................. 8, 14, 17, 19

*New Doe Child #1 v. Congress of the United States*,
   891 F.3d 578 (6th Cir. 2018) ........................................................................... 28

*Nken v. Holder*,
   556 U.S. 418 (2009).................................................................................... 42, 44

*Norris v. Stanley*,
   No. 1:21-cv-756, 2022 WL 557306 (W.D. Mich. Feb. 22, 2022), *appeal filed*,
   No. 22-1200 (6th Cir. Mar. 14, 2022)................................................................ 38

*North Dakota v. United States*,
   495 U.S. 423 (1990)....................................................................................... 44

*Oklahoma v. Biden*,
   577 F. Supp. 3d 1245 (W.D. Okla. 2021) ........................................................ 7, 31

*Orloff v. Willoughby*,
   345 U.S. 83 (1953)........................................................................................ 45

*Parisi v. Davidson*,
   405 U.S. 34 (1972)........................................................................................ 24

*Parker v. Levy*,
   417 U.S. 733 (1974)...................................................................................... 24

*Poffenbarger v. Kendall*,
   --- F. Supp. 3d ----, 2022 WL 594810 (S.D. Ohio Feb. 28, 2022)............................. 7

*Prantil v. Arkema Inc.*,
   986 F.3d 570 (5th Cir. 2021) ......................................................................... 19

*Ramirez v. Collier*,
   142 S. Ct. 1264 (2022).............................................................................. 12, 13

*Randall v. Rolls-Royce Corp.*,
  637 F.3d 818 (7th Cir. 2011) ................................................................ 19

*Robert v. Austin*,
  No. 21-cv-2228, 2022 WL 103374 (D. Colo. Jan. 11, 2022),
  *appeal filed*, No. 22-1032 (10th Cir. Feb. 2, 2022) ................................. 7, 21, 22, 25

*Roberts v. Roth*,
  --- F. Supp. 3d ---, 2022 WL 834148 (D.D.C. Mar. 21, 2022) ...................... 6, 21, 22

*Rostker v. Goldberg*,
  453 U.S. 57 (1981).................................................................................. 9

*Roth v. Austin*,
  --- F. Supp. 3d ---, 2022 WL 1568830 (D. Neb. May 18, 2022), *appeal filed*,
  No. 22-2058 (8th Cir. May 20, 2022) .......................................... *passim*

*S. Bay United Pentecostal Church v. Newsom*,
  140 S. Ct. 1613 (2020)........................................................................... 29

*Sample v. Morrison*,
  406 F.3d 310 (5th Cir. 2005) ................................................................. 20

*Sampson v. Murray*,
  415 U.S. 61 (1974).................................................................................. 42

*Schlesinger v. Ballard*,
  419 U.S. 498 (1975)................................................................................. 9

*Schlesinger v. Councilman*,
  420 U.S. 738 (1975)................................................................................. 24

*Shaw v. Austin*,
  539 F. Supp. 3d 169 (D.D.C. 2021) ........................................................ 21

*Shrimpers & Fisherman of the RGV v. U.S. Army Corps of Eng'rs*,
  849 F. App'x 459 (5th Cir. 2021) ............................................................ 22

*Smith v. Harvey*,
  541 F. Supp. 2d 8 (D.D.C. 2008) ............................................................ 23

*Solorio v. United States*,
  483 U.S. 435 (1987)................................................................................. 9

*Standage v. Braithwaite*,
  526 F. Supp. 3d 56 (D. Md. 2021) .......................................................... 21

ix

*Stirman v. Exxon Corp.*,
   280 F.3d 554 (5th Cir. 2002) ................................................................ 16

*Tagore v. United States*,
   735 F.3d 324 (5th Cir. 2013) ................................................................ 11

*Tandon v. Newsom*,
   141 S. Ct. 1294 (2021) ......................................................................... 33

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007) ............................................................................... 3

*Thomas Short v. Berger*,
   --- F. Supp. 3d ---, 2022 WL 1203876 (D. Ariz. Apr. 22, 2022), *appeal filed*,
   No. 22-15755 (9th Cir. May 18, 2022); ....................................... *passim*

*Thomas v. Union Carbide Agric. Prods. Co.*,
   473 U.S. 568 (1985) ...................................................................... 20, 24

*Toilet Goods Ass'n v. Gardner*,
   387 U.S. 158 (1967) ............................................................................. 23

*TOTAL Gas & Power N. Am., Inc. v. Fed. Energy Regul. Comm'n*,
   859 F.3d 325 (5th Cir. 2017) ............................................................... 23

*Trump v. Hawaii*,
   138 S. Ct. 2392 (2018) .............................................................. 40, 41, 42

*Tucker v. Collier*,
   906 F.3d 295 (5th Cir. 2018) ......................................................... 11, 13

*U.S. Navy SEALs 1–26 v. Biden*,
   27 F.4th 336 (5th Cir. 2022) ............................................................... 25

*United States v. Elder*,
   ---F. Supp. 3d---, 2022 WL 836923 (E.D.N.Y. Mar. 21, 2022) ............. 36

*United States v. O'Brien*,
   391 U.S. 367 (1968) ............................................................................. 28

*United States v. U.S. Steel Corp.*,
   520 F.2d 1043 (5th Cir. 1975) ............................................................. 19

x

*Valdez v. Grisham*,
  559 F. Supp. 3d 1161 (D.N.M. 2021),
  *aff'd*, 2020 WL 2129071 (10th Cir. June 14, 2022) ................................. 38

*Vance v. Wormuth*,
  No. 3:21-cv-730, 2022 WL 1094665 (W.D. Ky. Apr. 12, 2022) ......................................... 7, 21

*Von Hoffburg v. Alexander*,
  615 F.2d 633 (5th Cir. 1980) ................................................. 25

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ................................................. 10, 15, 17, 18

*Wayte v. United States*,
  470 U.S. 598 (1985) ................................................. 28

*We The Patriots USA, Inc. v. Hochul*,
  17 F.4th 266 (2d Cir. 2021), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021),
  *and denying injunction pending appeal sub. nom.*,
  *Dr. A. v. Hochul*, 142 S. Ct. 552 (2021) ........................... 35, 41

*West v. Brown*,
  558 F.2d 757 (5th Cir. 1977) ................................................. 26

*White v. Carlucci*,
  862 F.2d 1209 (5th Cir. 1989) ................................................. 42

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ................................................. 9, 29, 42, 44

*Wyoming v. Zinke*,
  871 F.3d 1133 (10th Cir. 2017) ................................................. 23

*Yates v. Collier*,
  868 F.3d 354 (5th Cir. 2017) ................................................. 17

# STATUTES

42 U.S.C. § 2000bb-1(a) ........................................................................... 12

42 U.S.C. § 2000bb-1(b) ...................................................................... 27, 29

42 U.S.C. § 2000bb-1(b)(1) ...................................................................... 12

42 U.S.C. § 2000bb-1(b)(2) ...................................................................... 12

42 U.S.C. § 2000bb-1(c) ...................................................................... 11, 15

# RULES

Fed. R. Civ. P. 23(a) ............................................................................ 2, 10

Fed. R. Civ. P. 23(a)(2) ........................................................................ 10, 19

Fed. R. Civ. P. 23(a)(3) ........................................................................ 16, 17

Fed. R. Civ. P. 23(b)(2) ................................................................ 2, 17, 18, 19

# OTHER AUTHORITIES

1 William B. Rubenstein, *Newberg on Class Actions* § 3:29 (5th ed.) ......................................... 16

AR 40–562, Table D-1 (Feb. 16, 2018),
    https://perma.cc/82YE-EA3U .......................................................... 4

Bryce H. P. Mendez, Cong. Rsch. Serv., IF11816, *Defense Health Primer:*
    *Military Vaccinations (updated Aug. 6, 2021)*,
    https://crsreports.congress.gov/product/pdf/IF/IF11816/2 ........................................ 4

CDC, *Benefits of Getting a COVID-19 Vaccine – Protection from COVID-19* (Aug. 17, 2022),
    https://perma.cc/W66Y-3GU7 ..................................................... 35, 37

CDC, *COVID Data Tracker* (updated Oct. 4, 2022), https://perma.cc/E2KS-M9LB .................... 3

CDC, *COVID-19*,
    https://perma.cc/A9D5-AUHV ........................................................ 3

CDC, *Interim Clinical Considerations for Use of COVID-19 Vaccines Currently Approved or*
    *Authorized in the United States* (last updated Sept. 23, 2022),
    https://perma.cc/VM73-HDU8 ......................................................... 38

CDC, Morbidity and Mortality Weekly Report (Mar. 18, 2022),
https://perma.cc/HJH3-PEN4 ............................................................................. 31

CDC, *Summary of Guidance for Minimizing the Impact of COVID-19 on Individual Persons, Communities, and Health Care Systems—United States* (Aug. 2022),
https://perma.cc/Y7XV-4R3Q ............................................................................. 35

CG COMDTINST M1000.4 (Aug. 2018),
https://perma.cc/PQW4-K38G .............................................................................. 6

CG COMDTINST M6230.4G,
https://perma.cc/82YE-EA3U ................................................................................ 5

DoD Instruction 1332.45,
https://perma.cc/9FNU-ZR89 ......................................................................... 4, 34

DoD Instruction 6205.02 (July 23, 2019),
https://perma.cc/8HLA-AXQB ........................................................................ 4, 37

DoD Instruction 6025.19,
https://perma.cc/TR75-JRVD ................................................................................ 4

Joint Explanatory Statement to Accompany the [NDAA] for Fiscal Year 2022,
https://perma.cc/FL8K-PFUU ............................................................................. 33

S. Rep. No. 103-111 (1993), *as reprinted in* 1993 U.S.C.C.A.N. 1892 ....................................... 28

Sec'y of Def. Mem. (Aug. 9, 2021),
https://perma.cc/S4R3-2VZW ......................................................................... 4, 29

Sec'y of Def. Mem. (Aug. 24, 2021),
https://perma.cc/N759-S758 ...................................................................... 4, 29, 41

Stanley Lemon, et al., *Protecting Our Forces: Improving Vaccine Acquisition and Availability in the U.S. Military*, Nat'l Acad. Press, 2002,
https://perma.cc/E545-TQ9G ................................................................................ 3

## INTRODUCTION

In warfare, disease has historically accounted for more service member deaths than battlefield injuries, and a healthy fighting force has long been a key part of America's military readiness. Decades before the COVID-19 pandemic, the Department of Defense ("DoD") implemented an immunization program requiring that all service members obtain at least nine immunizations, and up to an additional eight depending on circumstances. Amid a deadly pandemic that has killed over one million Americans and seeking to protect the health and readiness of the Armed Forces by reducing the risk of hospitalizations and deaths among service members, DoD added vaccination against COVID-19 to this long list of immunizations required for service members.

Plaintiffs, three members of the Coast Guard, allege that the military's COVID-19 vaccination requirement is violates the Religious Freedom Restoration Act ("RFRA"), the Free Exercise Clause of the First Amendment, and the Administrative Procedure Act ("APA"). *See* Compl. ¶¶ 279–465, ECF No. 1. Plaintiffs seek to certify a class of other Coast Guard members who have unsuccessfully sought a religious exemption from the COVID-19 vaccination requirement and a class-wide preliminary injunction preventing Defendants from enforcing that requirement against the class members or taking adverse action against them for bringing this lawsuit or seeking a religious exemption. *See* ECF No. 5 ("Pls.' Br.").

Plaintiffs' request for class certification disregards the basic principle that RFRA claims require individualized determinations about whether the military's vaccination requirement substantially burdens each individual service member's exercise of religion; whether the military has a compelling interest in requiring specific service members to be vaccinated; and whether there are less restrictive but equally effective alternatives to vaccination for specific service members. These questions require assessing each service member's unique religious beliefs, job functions,

and other circumstances. Consequently, Plaintiffs cannot meet the commonality and typicality criteria of Rule 23(a), nor can they satisfy Rule 23(b)(2)'s requirement that injunctive relief be appropriate for the class as a whole.

Plaintiffs also fail to establish any of the grounds required for a preliminary injunction either as individuals of on behalf of a certified class. First, their claims are not likely to succeed on the merits. As an initial matter, the claims are not justiciable. Plaintiffs lack ripe claims because they have not received a final decision concerning any discipline or adverse action based on their failure to obey their vaccination orders. And Plaintiffs may still avail themselves of extensive administrative procedures for challenging disciplinary actions that have been or may yet be taken in connection with the COVID-19 vaccination requirement. Moreover, judicial review in this case would require this Court to improperly oversee and manage discretionary decisions about military personnel matters.

Even if the Court could reach the substance of Plaintiffs' claims, those claims fail on the merits. The vaccination requirement satisfies RFRA and the First Amendment because the Coast Guard has extraordinarily compelling interests in military readiness and the health and readiness of its forces—Plaintiffs included—and no less restrictive measure serves those interests equally well as vaccination. These interests are even more magnified when considered in the context of a class-wide injunction. Neither have Plaintiffs demonstrated irreparable injury nor shown that the balance of equities and public interest weigh in their favor.

**BACKGROUND**

### A.      The COVID-19 Pandemic

The virus SARS-CoV-2 causes a respiratory disease known as COVID-19 that can result in severe symptoms and death.[1] It has infected more than 96 million Americans and has killed over one million.[2] At least 96 service members have died from COVID-19, and over 400,000 have become ill. Ex. 1, Decl. of Maj. Scott Stanley ¶ 3, App. 2–3. Of those 96 members, only two were fully vaccinated. *Id.* Many otherwise healthy service members who were infected suffered severe illness, required hospitalization, or developed "long-haul" COVID-19, potentially affecting their long-term ability to perform their missions. Ex. 2, Decl. of Col. Tanya Rans ¶¶ 9–11, App. 19–27.

### B.      Military Vaccination Directives

Vaccines have played a longstanding and important role in America's military readiness. Military deaths due to infectious diseases outnumbered those due to direct combat injuries until World War II, when vaccines became widespread. Stanley Lemon, et al., *Protecting Our Forces: Improving Vaccine Acquisition and Availability in the U.S. Military* at 3, Nat'l Acad. Press, 2002, https://perma.cc/E545-TQ9G. Even more recently, disease accounted for nearly 70% of U.S. Army hospital admissions during the Persian Gulf War. *Id.* at 10, Fig. 1-1. Military-mandated vaccines mitigate this threat and reduce infectious disease morbidity and mortality among military personnel. *Id.* at 10–11 (highlighting historical use of vaccines in armed conflict). The U.S. military instituted its first immunization program in 1777 when General Washington directed the inoculation of the Continental Army for smallpox. *Id.* at 12, Table 1-1. And for the past several decades, it has implemented various enduring or situational inoculation measures to maintain the

---

[1]      Centers for Disease Control and Prevention ("CDC"), *COVID-19*, https://perma.cc/A9D5-AUHV. The Court may take judicial notice of factual information available on government websites. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322–23 (2007).

[2]      CDC, *COVID Data Tracker* (updated Oct. 4, 2022), https://perma.cc/E2KS-M9LB.

readiness of its force. Bryce H. P. Mendez, Cong. Rsch. Serv., IF11816, *Defense Health Primer: Military Vaccinations (updated Aug. 6, 2021)*, https://crsreports.congress.gov/product/pdf/IF/IF11816/2.

DoD's current immunization program is governed by DoD Instruction ("DoDI") 6205.02 (July 23, 2019), https://perma.cc/8HLA-AXQB. Even prior to COVID-19, nine vaccines were required for all service members, including the annual influenza vaccine, and eight other vaccinations are required when certain elevated risk factors are present, such as deployment to certain parts of the world. *See* AR 40–562, Table D-1 (Feb. 16, 2018), https://perma.cc/82YE-EA3U. It is part of DoD's overarching requirement that each service member be medically ready for service and mobilization. *See* DoDI 6025.19, https://perma.cc/TR75-JRVD. DoD has determined that "[t]o maximize the lethality and readiness of the joint force, all Service members are expected to be deployable." DoDI 1332.45 ¶ 1.2, https://perma.cc/9FNU-ZR89. DoD generally aligns its immunization requirements and eligibility determinations for service members with recommendations from the CDC and its Advisory Committee on Immunization Practices. DoDI 6205.02 ¶ 1.2, https://perma.cc/8HLA-AXQB.

On August 9, 2021, the Secretary of Defense, noting the impact of COVID-19 on military readiness and concluding that vaccination "will ensure we remain the most lethal and ready force in the world," announced that he would add the COVID-19 vaccine to the list of vaccines required for all service members by the earlier of mid-September 2021 or upon approval by the Food and Drug Administration ("FDA"). Sec'y of Def. Mem. (Aug. 9, 2021), https://perma.cc/S4R3-2VZW. On August 24, 2021, one day after FDA announced the approval of the Pfizer vaccine, the Secretary directed the Secretaries of the Military Departments to immediately ensure that all members of the Armed Forces were fully vaccinated against COVID-19. Sec'y of Def. Mem. (Aug.

24, 2021), https://perma.cc/N759-S758. Only vaccines that have received full licensure from the FDA are required, but service members can satisfy the requirement by voluntarily receiving a vaccine under FDA EUA or World Health Organization Emergency Use Listing. *Id.* Those with a previous SARS-CoV-2 infection who have not received a COVID-19 vaccine are not considered fully vaccinated. *Id.*

### C.    The Coast Guard's Implementation of the COVID-19 Vaccination Directive

Shortly after the Secretary of Defense issued his vaccine directive, the Coast Guard issued its initial implementing guidance, directing all active-duty and Ready Reserve members to become fully vaccinated against COVID-19 and including processes for seeking exemptions. *See* CG COMDTINST M6230.4G, ch. 2-6, https://perma.cc/82YE-EA3U; Ex. 3, Decl. of Rear Admiral Eric C. Jones ¶ 4.

Exemptions. As with other vaccination requirements, Coast Guard guidance establishes processes for granting medical, administrative, and religious exemptions from its COVID-19 vaccination requirement. Service members are not required to receive a COVID-19 vaccine if they have been granted an exemption or have an exemption request or appeal pending. Ex. 3 ¶ 44, App. 78–79. Service members may be granted a medical exemption if, for example, they currently have COVID-19, are pregnant, or are allergic to an ingredient in the vaccine. *Id.* ¶¶ 14, 17, App. 67–68. Service members who are retiring or separating from military service no later than October 1, 2022, may be granted an administrative exemption. *Id.* ¶ 20, App. 68–69. Service members also may seek a religious accommodation by submitting a written request to the appropriate high-level approval authority. *Id.* ¶ 21, App. 69. Religious accommodation requests ( "RARs") undergo a multistage review process before the approval authority makes a final decision whether to approve or deny the request. *Id.* ¶¶ 22–34, App 69–74. If a request is denied, the service member may

appeal to the Coast Guard's final appellate authority, who renders a final decision on the RAR. *Id.* ¶ 35, App. 74.[3]

    <u>Refusal to vaccinate</u>. If an exemption request is ultimately disapproved and the service member refuses to comply with his or her command's order to receive the COVID-19 vaccine, commanders may take a variety of actions. *Id.* ¶¶ 38–39, App. 75–76. Active-duty service members who refuse to comply with the COVID-19 vaccination requirement, absent an exemption, will be subject to initiation of administrative discharge proceedings. *Id.* ¶ 39, App. 75–76. For officers, the administrative discharge process takes at least six to nine months and may result in the service member being retained. *Id.* ¶ 42, App. 76–77. The decision to discharge a service member is not final until the final discharge order is issued—until that point, the separation authority is not required to follow any discharge recommendation. *See Roberts v. Roth*, --- F. Supp. 3d ---, 2022 WL 834148, at *4 (D.D.C. Mar. 21, 2022).

    Even if a service member is discharged at the conclusion of the administrative proceedings, further military remedies remain available. The member may, for instance, appeal the characterization of his discharge to a Discharge Review Board, which has the authority to review administrative discharges. CG COMDTINST M1000.4 § 1.B.36.h (Aug. 2018), https://perma.cc/PQW4-K38G. The member may also request correction of his military record through the Board for Correction of Military Records. *Id.*

---

[3]    The approval authority must make a decision on a religious accommodation request within 30 business days of the date the service member submitted the request, and the Deputy for Personnel Readiness must reach a final decision on any appeal within 30 business days from the date the service member provided notice of intent to appeal. Ex. 3 ¶ 36, App. 74–75. These timelines may not be met if there is a large influx of religious accommodation requests. *Id.* Even if the timelines are not met, a service member faces no harm, as he or she is temporarily exempted from the immunization requirement while the request or appeal is pending. *Id.* ¶ 37, App. 75.

### D.    Other Litigation Regarding the Military's Vaccination Requirement

In addition to this case, there have been numerous other challenges to the military's vaccination requirement brought in district courts across the country. At least fifteen other courts have either rejected arguments for preliminary injunctive relief against the military or dismissed the service members' claims entirely.[4] In *Dunn v. Austin*, a RFRA case where the district court denied the preliminary-injunction motion, the Supreme Court denied the member's application for an injunction pending appeal. *Dunn v. Austin*, 142 S. Ct. 1707 (2022) (mem.).

Six courts have preliminarily enjoined DoD and the respective service from applying COVID-19 vaccination requirements or taking adverse action against plaintiffs in those cases.[5] The government strongly disagrees with those decisions and has taken an appeal from four of

---

[4]    *See Miller v. Austin*, --- F. Supp. 3d ---, 2022 WL 3584666 (D. Wyo. Aug. 22, 2022); *Knick v. Austin*, No. 22-1267, 2022 WL 2157066 (D.D.C. June 15, 2022); *Robert v. Austin*, No. 21-cv-2228, 2022 WL 103374 (D. Colo. Jan. 11, 2022), *appeal filed*, No. 22-1032 (10th Cir. Feb. 2, 2022); *Church v. Biden*, 573 F. Supp. 3d 118 (D.D.C. 2021); *Navy SEAL 1 v. Austin*, --- F. Supp. 3d ----, 2022 WL 1294486 (D.D.C. Apr. 29, 2022), *appeal filed*, No. 22-5114 (D.C. Cir. May 5, 2022); *Creaghan v. Austin*, --- F. Supp. 3d ---, 2022 WL 1500544 (D.D.C. May 12, 2022), *appeal filed*, No. 22-5135 (D.C. Cir. May 20, 2022); *Thomas Short v. Berger*, --- F. Supp. 3d ---, 2022 WL 1203876 (D. Ariz. Apr. 22, 2022), *appeal filed*, No. 22-15755 (9th Cir. May 18, 2022); *Vance v. Wormuth*, No. 3:21-cv-730, 2022 WL 1094665 (W.D. Ky. Apr. 12, 2022); *Mark Short v. Berger*, No. 22-cv-1151, 2022 WL 1051852 (C.D. Cal. Mar. 3, 2022), *appeal dismissed*, No. 22-55339, 2022 WL 2421096 (9th Cir. May 17, 2022); *Roth v. Austin*, --- F. Supp. 3d ---, 2022 WL 1568830, at *31 (D. Neb. May 18, 2022), *appeal filed*, No. 22-2058 (8th Cir. May 20, 2022); Ex. 9, *Dunn v. Austin*, No. 22-cv-288 (E.D. Cal. Feb. 22, 2022) ("*Dunn* Op."), App. 80; *Doe #1–#14 v. Austin*, 572 F. Supp. 3d 1224 (N.D. Fla. 2021); *Abbott v. Biden*, --- F. Supp. 3d ---, 2022 WL 2287547, at *7 (E.D. Tex. June 24, 2022), *appeal filed*, No. 22-40399 (5th Cir. June 29, 2022); *Oklahoma v. Biden*, 577 F. Supp. 3d 1245 (W.D. Okla. 2021); *Guettlein v. U.S. Merch. Marine Acad.*, 577 F. Supp. 3d 96 (E.D.N.Y. 2021).

[5]    *See Navy SEALs 1–26 v. Biden*, 578 F. Supp. 3d 822 (N.D. Tex. 2022); *Navy SEAL 1 v. Biden*, No. 8:21-cv-2429, 2022 WL 483832 (M.D. Fla. Feb. 2, 2022) (Merryday, J.); *Air Force Off. v. Austin*, --- F. Supp. 3d ---, 2022 WL 468799 (M.D. Ga. Feb. 15, 2022); *Poffenbarger v. Kendall*, --- F. Supp. 3d ----, 2022 WL 594810 (S.D. Ohio Feb. 28, 2022); *Doster v. Kendall*, --- F. Supp. 3d ---, 2022 WL 982299 (S.D. Ohio Mar. 31, 2022); *Col. Fin. Mgmt. Off. v. Austin*, No. 8:22-cv-01275 (M.D. Fla. Aug. 18, 2022) (Merryday, J.) (enjoining the Marine Corps after separating the case from *Navy SEAL 1* and creating a new case number).

them.[6] In *Austin v. Navy SEALs 1–26*, the Supreme Court granted the government's application for a partial stay of the district court's injunction. 142 S. Ct. 1301, 1301 (2022). Similarly, in *Navy SEAL 1*, the Eleventh Circuit stayed the district court's injunction pending appeal "insofar as it precludes the Navy from considering the plaintiffs' vaccination status in making deployment, assignment, and other operational decisions." No. 22-10645 (11th Cir. Mar. 30, 2022).

### E.    This Action

On September 16, 2022, Plaintiffs, three Coast Guard members, sued, on behalf of themselves and a purported class, officials with the Department of Defense and Coast Guard. They allege that that the Coast Guard's COVID-19 vaccination requirement violates RFRA, the First Amendment, and the APA. *See* Compl. ¶¶ 279–465. Each Plaintiff refused to comply with his commander's orders to become vaccinated against COVID-19, alleging that vaccination conflicts with his or her religious beliefs. *Id.* ¶¶ 127–29.[7] Plaintiffs do not allege that the Coast Guard has concluded involuntary separation proceedings for any of them based on their refusal to vaccinate.

With their complaint, Plaintiffs filed a motion for class certification and for a class-wide preliminary injunction, seeking to enjoin Defendants (i) from enforcing the military's COVID-19 vaccinations requirements, and (ii) "from taking any adverse action against any Plaintiffs of any member of the Class" for filing this lawsuit or seeking a religious accommodation from the

---

[6]    The district courts in *Navy SEALs 1-26* and *Doster* subsequently entered class-wide preliminary injunctions against the Navy and the Air Force, respectively, which the government has also appealed. *Navy SEALs 1–26 v. Austin*, --- F. Supp. 3d ---, 2022 WL 1025144, at *9 (N.D. Tex. Mar. 28, 2022), *appeal filed*, No. 22-10534 (5th Cir. May 31, 2022); *Doster v. Kendall*, No. 1:22-cv-84, 2022 WL 2974733, at *1 (S.D. Ohio July 27, 2022).

[7]    Notwithstanding their religious beliefs, Plaintiffs Jackson and Marcenelle say that they went to a clinic to receive a COVID-19 vaccine as ordered but refused only because they did not believe the vaccines available were fully approved by the FDA. *See* Compl. ¶¶ 220, 231–32.

military's vaccination requirement. ECF No. 4 at 2. The motion for preliminary injunction argues only the RFRA and First Amendment claims, not the APA claims.

## LEGAL STANDARDS

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). To justify this "drastic remedy," a plaintiff must make a "clear showing" that (1) they have a substantial likelihood of success on the merits; (2) they will suffer irreparable harm without the requested injunction; (3) the balance of equities tips in their favor; and (4) preliminary relief serves the public interest. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Failure to demonstrate any one of these elements requires denial of preliminary relief. *Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989).

Additionally, courts extend great deference to the military in reviewing the "complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force," which are "essentially professional military judgments." *Winter*, 555 U.S. at 24 (citation omitted); *accord Farmer v. Mabus*, 940 F.2d 921, 923 (5th Cir. 1991) ("[J]udicial intrusion into military matters is to be most cautiously . . . approached."). As the Supreme Court has repeatedly emphasized, "it is difficult to conceive of an area of governmental activity in which the courts have less competence." *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973); *see also Schlesinger v. Ballard*, 419 U.S. 498, 510 (1975) ("[I]t is the primary business of armies and navies to fight or be ready to fight wars should the occasion arise," and the "responsibility for determining how best our Armed Forces shall attend to that business rests with Congress" and "the President."); *Rostker v. Goldberg*, 453 U.S. 57, 66 (1981); *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986). Such deference extends to constitutional claims and military decisions about the health and welfare of the troops. *See, e.g., Solorio v. United States*, 483 U.S. 435, 448 (1987); *Lindenau v. Alexander*,

663 F.2d 68, 70–74 (10th Cir. 1981); *Thomas Short*, 2022 WL 1203876, at \*13; *Mark Short*, 2022

WL 1051852, at \*7–8; Ex. 9, *Dunn* Op. at 36, 46–48, App. 115, 125–27.

ARGUMENT

## I.   THE COURT SHOULD NOT CERTIFY THE CLASS.

Plaintiffs move for certification of a class consisting of every member of the Coast Guard

who has requested and been denied a religious exemption. To obtain class certification, Plaintiffs

must show that their proposed class satisfies the four requirements of Rule 23(a)—"numerosity,

commonality of issues, typicality of the class representatives' claims," and adequacy of the named

plaintiffs as class representatives, *Ahmad v. Old Republic Nat'l Title Ins. Co.*, 690 F.3d 698, 702

(5th Cir. 2012)—and that it satisfies the requirements of one of the provisions of Rule 23(b).

Plaintiffs fail to make these showings.

### A.   Plaintiffs Fail to Identify Common Issues to Advance Their RFRA Claims.

To establish commonality, plaintiffs must identify "questions of law or fact common to the

class," Fed. R. Civ. P. 23(a)(2), including *common answers* apt to drive the resolution of the

litigation." *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 767 (5th Cir. 2020) (quoting *Wal-Mart Stores,*

*Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Plaintiffs' claims must include a central issue that can be

resolved "in one stroke," and plaintiffs must show more than simply that class members "have all

suffered a violation of the same provision of law." *Id.* (quotations omitted). "[M]ere allegations of

systemic violations of the law . . . will not automatically satisfy Rule 23(a)'s commonality

requirement." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 844 (5th Cir. 2012) (quotations

omitted).

Plaintiffs are unable to identify common issues "central to the validity" of the class

members' RFRA claims. *Flecha*, 946 F.3d at 767. RFRA claims, by their nature, are individualized.

The Fifth Circuit and the Supreme Court have emphasized that RFRA claims "contemplate an

10

inquiry more focused than [a] categorical approach." *Gonzales v. O Centro Espírita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430 (2006); *Tagore v. United States*, 735 F.3d 324, 331 (5th Cir. 2013) ("A 'categorical approach' is insufficient."). A court must "scrutiniz[e] the asserted harm of granting specific exemptions to particular religious claimants," looking to "the marginal interest" in enforcing a policy against a particular person. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 726-27 (2014) (quotations omitted). RFRA claims are thus fact-intensive and require "case-by-case" adjudication, turning on a plaintiff's precise beliefs and the particulars of the government's action. *Brown v. Collier*, 929 F.3d 218, 230 (5th Cir. 2019) (quotation omitted). Both the government's compelling interest with respect to a particular claimant, and the availability of less restrictive alternatives are "core component[s]" of a RFRA claim that must be considered claim-by-claim. *Tucker v. Collier*, 906 F.3d 295, 301-02 (5th Cir. 2018); *see also Davis v. Davis*, 826 F.3d 258, 272 (5th Cir. 2016) (each claim turns on "the specific characteristics of each [p]laintiff"). Given their highly individualized nature, RFRA claims do not present common issues and are not amenable to class-wide adjudication. The claims here are no exception. Adjudicating those claims requires an individualized assessment of each service member's religious beliefs, particular military duties, and other unique circumstances.

Plaintiffs assert that their claims present common questions about the Coast Guard's review of administrative requests for religious accommodation, which they claim was not sufficiently individualized. Pls.' Br. at 9–10. But RFRA does not entitle plaintiffs to any particular process from the Coast Guard. Judicial relief under RFRA can be obtained only by a "person whose religious exercise has been burdened in violation of [RFRA]," 42 U.S.C. § 2000bb-1(c). No such RFRA violation has occurred if the Coast Guard can "demonstrate[]" *in court* that applying its policy furthers a compelling governmental interest and is the least restrictive means of doing so.

11

*Id.* § 2000bb-1(b)(1)-(2). Thus, whether class members were all treated similarly in the Coast Guard's internal administrative process is not a common question relevant to resolving the disposition of their RFRA claims. Those claims instead turn on whether the Coast Guard can prove that it has a compelling interest in applying its vaccination requirement to "the particular claimant[s] whose sincere exercise of religion is being substantially burdened." *Hobby Lobby*, 573 U.S. at 726 (citation omitted); *see also, e.g., Ramirez v. Collier*, 142 S. Ct. 1264, 1275-76, 1278-81 (2022) (contrasting the government's assessment of a religious claimant's request in an administrative process versus the government's showing in litigation). The Coast Guard has established that interest and the lack of viable alternatives with respect to each individual plaintiff here, *see* pp. 30–38 *infra*; but certifying a class would prevent the Coast Guard from offering— and the Court from considering—the claimant-specific showing that RFRA requires for the other members of the purported class.

Plaintiffs ignore the core issues that their proposed class cannot address. For one, Plaintiffs cannot establish that the vaccination requirement substantially burdens sincerely held religious beliefs across the class. Although sincerity is generally established "easily," *Moussazadeh v. Tex. Dep't of Crim. Just.*, 703 F.3d 781, 791–92 (5th Cir. 2012), it nevertheless must be established to make out a RFRA violation, 42 U.S.C. § 2000bb-1(a). Courts reviewing a RFRA claim must carefully assess a claimant's religious beliefs, *see Ramirez*, 142 S. Ct. at 1277–78, and service members object to the vaccination requirement for a range of reasons. Although the Coast Guard has not contested the sincerity of service members' beliefs at this stage, each service member must establish that the vaccination requirement substantially burdens their sincere religious beliefs. Class certification would improperly group service members who have made that showing alongside those whose opposition to vaccination is grounded in something other than sincere

religious beliefs, as well as alongside those whose beliefs are not substantially burdened by particular vaccines.

RFRA also requires an individualized inquiry into each service member's circumstances to assess the Coast Guard's compelling interest in ensuring *that particular* service member be vaccinated, and the availability of any less restrictive alternatives to vaccination that would be equally effective for *that* service member. *O Centro*, 546 U.S. at 430-31. The relevant question in the compelling-interest analysis is not whether the government has an interest in "enforcing . . . policies generally," but whether it has "an interest in denying an exception" to a specific claimant. *Fulton v. City of Phila.*, 141 S. Ct. 1868, 1881 (2021); *see also Roth*, 2022 WL 1568830, at *18 (similar, in challenge to military vaccination requirement). And that interest must be weighed against the availability of less-burdensome alternatives for that claimant. *Tucker*, 906 F.3d at 305-06; *Holt v. Hobbs*, 574 U.S. 352, 365 (2015). It is a "difficult question" of "[h]ow much risk of disruption or interference" the government must accommodate for a specific religious-liberty claim. *Ramirez*, 142 S. Ct. at 1287-88 (Kavanaugh, J., concurring); *see also id.* at 1281 (majority op.) (considering numerous alternatives for a claimant's circumstances).

Plaintiffs insist that there are common questions related to compelling interest and less-restrictive means, namely questions about the ratio of vaccinated to unvaccinated service members in the Coast Guard, the effectiveness of the vaccines at reducing transmission, and CDC guidance about preventing transmission. Pls.' Br. at 9. Critically, however, these issues relate solely to the Coast Guard's interest in preventing the transmission of COVID-19 and do not touch upon the compelling interest in preventing individual service members from contracting COVID-19. The Court cannot award an individual service member relief under RFRA, let alone a class, without a "to the person" analysis of each of the Coast Guard's asserted compelling interests, which for many

13

if not all class members will involve preventing that service member from experiencing symptoms COVID-19. *See* pp. 30–32 *infra*. And the Coast Guard's interest in vaccinating a particular service member may depend upon individualized factors, such as how contracting COVID-19 would adversely affect that service member's mission accomplishment at the individual, unit, and organizational levels. *See* p. 30 *infra*. And whether a less-burdensome alternative to vaccination would be equally effective for a particular service member is likewise highly dependent on the particular facts applicable to the individual requester—including specific duty assignments and type of work. *See* pp. 36–38 *infra*. Class-wide disposition would ignore these questions and therefore not satisfy RFRA's demand for a "to the person" analysis of compelling interest.

Respectfully, cases like *Navy SEALs 1–26* and *Doster*, upon which Plaintiff rely, are erroneous. In *Navy SEALs 1–26*, a district court certified a class on the assumption that (purported) deficiencies in the Navy's process for considering requests for religious exemption supplied a common issue unifying the RFRA claims of all class members. In doing so, the court committed the same error for which it faulted the Navy. By treating service members' entitlement to relief under RFRA as an issue capable of resolution class-wide, that court failed to separately evaluate each service member's claim—contradicting its own reasoning in its prior injunction, where it explained that RFRA requires considering "the asserted harm of granting specific exemptions to particular religious claimants." *Navy SEALs 1-26*, 578 F. Supp. 3d at 836 (quotations omitted). Despite previously (and correctly) articulating the need for plaintiff-specific inquiries, *id.* at 836–87, the court inexplicably asserted that it need not perform that individualized analysis in certifying a class because "in the Navy's own analysis, such distinctions make no difference," *Navy SEALs 1-26*, 2022 WL 1025144, at *7. There was no basis for this change in course, which inappropriately relied on the Navy's alleged failure to perform a sufficiently individualized assessment of each

14

service member's exemption request as an excuse for the court to ignore RFRA's requirement that claims be assessed individually. Because RFRA calls for de novo judicial review, not review of prior administrative action, *see* 42 U.S.C. § 2000bb-1(c), the supposed inadequacies in the administrative process provided no basis for the court to conclude that class members' disparate RFRA claims can properly be adjudicated simultaneously.

Plaintiffs also rely on *Doster*, urging the Court to certify a class based on a purported "general policy of discrimination" practiced by the Coast Guard. Pls.' Br. at 9–10. But class certification on that theory would need to be supported by "[s]ignificant proof" that the Coast Guard "operated under a policy of discrimination." *Wal-Mart*, 564 U.S. at 353. Plaintiffs provide no such proof. They point to a recent report by the Inspector General of the Department of Defense, but the Inspector General's report says nothing about the Coast Guard, which is part of the Department of Homeland Security and therefore outside of the report's purview. That leaves only Plaintiffs' contention that the Coast Guard has granted only a small number of religious exception requests. *See* Pls.' Br. at 3. But that evidence—statistics and various anecdotes—is indistinguishable from the evidence the Supreme Court held "does not suffice" to establish commonality. *Wal-Mart*, 564 U.S. at 357–58. And here the Coast Guard has even presented contrary evidence in the form of a declaration stating in no uncertain terms that "there is no single policy or practice of approving or denying religious accommodation requests, including with respect to the COVID-19 vaccine." Ex. 3 ¶ 22, App. 69. In any event, even if Plaintiffs had shown significant proof of a general policy of discrimination, it would not entitle them to class certification in the RFRA context for the reasons described above: RFRA requires a de novo, to the person analysis to determine if there has been an unlawful burden on religious practice and does not create a right to any particular procedure for seeking an exemption. Indeed, in denying a

stay of the *Doster* injunction, the Sixth Circuit recognized that any claims other than those based on a purported systemic policy of discrimination (which, again, is neither proven nor relevant here) would plainly be inappropriate for class-wide treatment. *See Doster v. Kendall*, 48 F.4th 608 (6th Cir. 2022) ("We agree that most RFRA claims require that kind of individualized analysis; and we have no quarrel with the Department's contention that such an analysis could not be conducted class-wide here.").

### B.     Plaintiffs Fail to Demonstrate that Their Claims Are Typical of the Class.

To satisfy the typicality requirement, "the claims or defenses of the parties [must be] typical of the claims or defenses of the class." *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001) (quoting Fed. R. Civ. P. 23(a)(3)). The typicality requirement "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent," *id.* (quotations omitted), without which a court cannot "attribute a collective nature to the challenged conduct." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996) (quoting 1 William B. Rubenstein, *Newberg on Class Actions* § 3:29 (5th ed.)). Plaintiffs have not shown that their claims are typical of other service members' claims, especially given the unique exhaustion defenses applicable to the named Plaintiffs.

As noted, pp. 10–14 *supra*, a detailed examination of each service member's particular circumstances is essential for assessing a RFRA claim. While "factual differences" in other contexts would not necessarily render the named plaintiffs' claims atypical of the class, *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002) (quotations omitted), those differences are material to resolving plaintiffs' RFRA claims, which require "scrutiniz[ing] the asserted harm of granting specific exemptions to particular religious claimants," *Ali v. Stephens*, 822 F.3d 776, 785-86 (5th Cir. 2016) (quotation omitted). That makes Plaintiffs' claims atypical of the class. *Stirman*, 280

16

F.3d at 562 (factual variations in plaintiffs' claims precluded finding of typicality); *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 151, 158-59 (1982) (district court wrongly concluded that one person's claims were typical of "all hourly Mexican American employees"). Plaintiffs again rely heavily on *Navy SEALs 1–26*, but that court's commonality analysis hinged on a conclusion that that "in the Navy's own analysis [of service members' requested exemptions], such distinctions make no difference." 2022 WL 1025144, at *7. But again, the disposition of exemption requests has no bearing on the Court's de novo analysis of plaintiffs' RFRA claims, much less does it provide any ground for the court to ignore the typicality requirement in Rule 23(a)(3).

Plaintiffs' claims are also not typical of the class's because they are subject to "unique defense[s]." *Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir. 2006) (collecting authorities). As explained below, pp. 24–25 *infra*, none of the named plaintiffs had fully exhausted their intramilitary remedies, rendering their claims distinctly unripe and nonjusticiable—and thus not a fair representation of other service members who fully pursue administrative remedies. That Plaintiffs have not received a final decision from the Coast Guard renders them "a fortiori not typical of" the class. *Machella v. Cardenas*, 653 F.2d 923, 926 (5th Cir. Unit A Aug. 1981).

### C.    Plaintiffs Fail to Satisfy the Requirements of Rule 23(b)(2).

Plaintiffs seek to certify a class under Rule 23(b)(2), contending that the Coast Guard acted "on grounds that apply generally to the class." Certification under Rule 23(b)(2) is permissible "only when a single injunction . . . would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360. Plaintiffs' requested relief "must be specific," *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007), to be applicable to the entire class, *Yates v. Collier*, 868 F.3d 354, 366-67 (5th Cir. 2017). As explained, pp. 10–14 *supra*, RFRA requires individually analyzing a policy's alleged burden on a specific person's exercise of religion, the government's

compelling interest in implementing the challenged policy to that person, and the availability of less restrictive and equally effective alternatives. Just as the need to resolve such questions individually precludes any finding of commonality or typicality, it likewise precludes any finding that the claims of more than 1,000 Coast Guard service members could be adjudicated en masse under Rule 23(b)(2). As the Fifth Circuit has held, a class "alleg[ing] individual injuries that are not uniform across the class[] . . . lacks cohesiveness to proceed as a 23(b)(2) class." *Stukenberg*, 675 F.3d at 847; *see also Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 414 (5th Cir. 1998) (explaining that need for "specific . . . inquiry into the varying circumstances and merits of each class member's individual case" likely precludes class certification under Rule 23(b)(2)).

In *Wal-Mart v. Dukes*, for example, plaintiffs claimed that Wal-Mart harmed them in essentially the same way by repeatedly violating Title VII's prohibition on sex discrimination, but the Supreme Court held that those claims were not suitable for certification under Rule 23(b)(2) because the success of each plaintiff's Title VII claim depended on the specific circumstances surrounding each employment action. 564 U.S. at 366. *Wal-Mart*'s reasoning with respect to the individualized nature of Title VII claims applies with at least equal force to plaintiffs' wide-ranging RFRA claims, which depend on diverse factual circumstances peculiar to each service member. In similar circumstances, this Court has held that "individualized issues here overwhelm class cohesiveness." *Maldonado*, 493 F.3d at 524.

Even if the merits of every class member's RFRA claim could be adjudicated "in one stroke," *Wal-Mart*, 564 U.S. at 350, RFRA would entitle each person to individualized relief, depending on miliary assignment, deployment status, and responsibilities. But service members have sought to vindicate their own interests by separately litigating claims in other courts (also on behalf of purported, overlapping classes of Coast Guard service members). *See Bazzrea v.*

*Mayorkas*, No. 3:22-cv-265 (S.D. Tex. filed July 25, 2022); *Pilot v. Austin*, No. 8:22-cv-1278 (M.D. Fla. instituted Oct. 15, 2021). But a class certification here would render those other suits essentially meaningless given that a Rule 23(b)(2) class "provides for binding litigation on all class members," *Lemon v. Int'l Union of Operating Eng'rs*, 216 F.3d 577, 580 (7th Cir. 2000). Indeed, class members would equally be bound by an adverse ruling on a class-wide basis, barring certain service members' otherwise meritorious claims. *See Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 820-21 (7th Cir. 2011); *United States v. U.S. Steel Corp.*, 520 F.2d 1043, 1048 (5th Cir. 1975) (requiring "careful[]" consideration of 23(b)(2) class certification because "of the consequences of binding such a group to a final judgment").

Plaintiffs again rely heavily on *Navy SEALs 1–26*, which certified a similar class after concluding—without any meaningful analysis—that the class members "have all been harmed in essentially the same way." 2022 WL 1025144, at *9. But the court was required to identify more than simply "a common failure by the defendant" and the potential for benefit to all class members "if the defendant is compelled to . . . desist." *Prantil v. Arkema Inc.*, 986 F.3d 570, 581 (5th Cir. 2021). An issue is not amenable to class-wide resolution "just because the district court, without explanation, says it is." *Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 549 (5th Cir. 2020). The court nowhere explained how thousands of service members' RFRA claims could be resolved class-wide, given the individualized and person-specific analysis RFRA requires. *See Brown*, 929 F.3d at 230 (emphasizing need for "case-by-case" adjudication under RFRA).[8] The opinion is therefore not persuasive.

---

[8]    This requirement overlaps to some degree with Rule 23(a)(2)'s commonality requirement, but this Court has explained that Rule 23(b)(2) "has an independent requirement of commonality," *Johnson v. Am. Credit Co. of Ga.*, 581 F.2d 526, 532 (5th Cir. 1978), that is even "more exacting," *McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 548 n.2 (5th Cir. 2003).

## II.   THE COURT SHOULD NOT ENTER AN INJUNCTIVE RELIEF FOR INDIVIDUALS OR ON A CLASS-WIDE BASIS.

### A.   Plaintiffs Are Unlikely to Succeed on the Merits of Their Claims.

#### 1.   *The Named Plaintiffs' claims are not ripe for review.*

Plaintiffs' claims are neither constitutionally nor prudentially ripe. The ripeness doctrine "ensures that federal courts do not decide disputes that are 'premature or speculative,'" and reflects both "'Article III limitations on judicial power,' as well as 'prudential reasons for refusing to exercise jurisdiction.'" *DM Arbor Ct., Ltd. v. City of Houston*, 988 F.3d 215, 218 (5th Cir. 2021) (citation omitted). This doctrine is "designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005) (citation omitted); *accord Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 434 (5th Cir. 2021).

Constitutional ripeness. "[T]he doctrine of constitutional ripeness overlaps with the standing doctrine, most notably in the shared requirement that the plaintiff's injury be imminent rather than conjectural or hypothetical." *Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 149 (2d Cir. 2021) (citation omitted); *accord Ass'n of Irritated Residents v. U.S. EPA*, 10 F.4th 937, 944 (9th Cir. 2021). Thus, if a "purported injury is 'contingent [on] future events that may not occur as anticipated, or indeed may not occur at all,' the claim is not ripe for adjudication." *Lopez v. City of Houston*, 617 F.3d 336, 342 (5th Cir. 2010) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)); *accord, e.g., Sample*, 406 F.3d at 312.

For this reason, several courts have declined to review challenges brought by service members who—like the named Plaintiffs—challenged the military's vaccination requirement to avoid the possibility of separation for their refusal to comply, including on RFRA and Free Exercise grounds. *See Knick*, 2022 WL 2157066, at *3; *Vance*, 2022 WL 1094665, at *4–7; *Robert*, 2022 WL 103374, at *2–3; *Church*, 573 F. Supp. 3d at 136–37; *Miller*, 2022 WL 3584666, at *4; *Standage v. Braithwaite*, 526 F. Supp. 3d 56, 94 (D. Md. 2021); *Diraffael v. Cal. Mil. Dep't,* No. 10- cv-7240, 2011 WL 13274364, at *3 (C.D. Cal. Mar. 21, 2011) ("[T]he commencement of discharge proceedings" is not sufficient injury when those "proceedings are still underway and to date no final determination has been reached[.]"). Courts have also rejected contentions that plaintiffs' claims are ripe because the separation processes have a likely result. *See, e.g., Roberts*, 2022 WL 834148, at *6 (explaining that the court was "in no position to make predictions as to what other entities might conclude," and nothing could "change[] the fact that [the plaintiff] ha[d] yet to be discharged"); *see also Shaw v. Austin*, 539 F. Supp. 3d 169, 183 (D.D.C. 2021) ("[T]he Court cannot so easily dismiss the possibility that he will have a fair opportunity to make his case to a Board of Inquiry."). The plaintiff's alleged injuries therefore remained "theoretical, rather than certain and impending." *Roberts*, 2022 WL 834148, at *4.

So too here. Plaintiffs seek to avoid the possibility of involuntary separation or other disciplinary action for refusing to comply with the vaccination directive. Compl. ¶¶ 212–53. But no matter how confident they are that these events will someday come to pass, claims seeking relief from military-discharge decisions "are not ripe at the commencement of discharge proceedings; they are ripe only after a plaintiff has been discharged." *See Roberts*, 2022 WL 834148, at *5. Separation proceedings have not been completed for any of the Plaintiffs—and may never be. Indeed, these Plaintiffs still have the opportunity to be heard before any discharge

decision could be made. Even if the separation authority were to decide to discharge a Plaintiff, he or she would still be able to seek adequate administrative relief from that decision before coming to federal court. *See* p. 6 *supra*. Plaintiffs thus seek to invoke this Court's jurisdiction to remedy injuries that are merely theoretical and "based on nothing more than speculation" about events "that might never come to pass." *See Roberts*, 2022 WL 103374, at *3; *accord Church*, 573 F. Supp. 3d at 137; *Miller*, 2022 WL 3584666, at *4. As a constitutional matter, these claims are not ripe for review.

     <u>Prudential ripeness</u>. Plaintiffs' claims are also not ripe as a prudential matter. In evaluating prudential ripeness, a court considers "(1) the fitness of the issues for judicial resolution, and (2) the potential hardship to the parties caused by declining court consideration." *Lopez*, 617 F.3d at 341; *see also DM Arbor Ct.*, 988 F.3d at 219 (noting these are prudential considerations); *accord Ass'n of Irritated Residents*, 10 F.4th at 944. Plaintiffs must satisfy both these prongs, *Huawei Techs.*, 2 F.4th at 435 n.30, yet they satisfy neither.

     First, Plaintiffs' claims are not fit for judicial resolution, because "matters 'still pending before'" an agency are "not yet ripe for judicial review." *Shrimpers & Fisherman of the RGV v. U.S. Army Corps of Eng'rs*, 849 F. App'x 459, 462 (5th Cir. 2021) (quoting *La. Power & Light Co. v. Fed. Power Comm'n*, 526 F.2d 898, 910 (5th Cir. 1976)). As explained, proceeding now would require the Court "to adjudicate internal military affairs before the military chain of command has had full opportunity to consider" them. *Church*, 573 F. Supp. 3d at 137; *accord Roberts*, 2022 WL 834148, at *5–6; *Miller*, 2022 WL 3584666 at *3–5 ("Courts must not interfere . . . until the separation decision is final and can no longer be adjudicated within the military chain of command."). Ripeness poses the question not whether it is "possible" to resolve a claim, but "whether it is appropriate for the court to undertake the task." *Fourth Corner Credit Union v. Fed.*

*Rsrv. Bank of Kan. City*, 861 F.3d 1052, 1060–61 (10th Cir. 2017) (citation omitted). Here, "'judicial intervention' at this stage would 'inappropriately interfere with further administrative action' on the matter before the Court." *Miller*, 2022 WL 3584666 at *4 (quoting *Wyoming v. Zinke*, 871 F.3d 1133, 1141–42 (10th Cir. 2017)).

The fact that, at some point in the future, the Coast Guard "*may* separate or otherwise discipline a Plaintiff for refusing to comply with its COVID-19 vaccination requirement cannot ripen this case." *Id.* (citation omitted). "Whether to separate or discipline a service member is a discretionary decision that is left, in the first instance, to the" Coast Guard. *Id.*; *see also, e.g., Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 163–64 (1967). The "initiation of separation proceedings is [thus] a tentative action not fit for judicial review," because "one can only speculate as to the final outcome of any proceedings." *Smith v. Harvey*, 541 F. Supp. 2d 8, 13 (D.D.C. 2008). As explained, any Plaintiffs currently in separation proceedings "still have multiple opportunities" to be heard by decision-making bodies that have the authority to retain their service. *Miller*, 2022 WL 3584666, at *5. Therefore, at this point, it is entirely "possible that something" raised by a Plaintiff during his or her separation or postseparation proceedings "will compel [the Coast Guard] to drop the [separation]," obviating the need for any judicial involvement. *See TOTAL Gas & Power N. Am., Inc. v. Fed. Energy Regul. Comm'n*, 859 F.3d 325, 336 (5th Cir. 2017); *accord Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 387 (D.C. Cir. 2012).

Separately, it appears Plaintiffs are asking this Court also to enjoin the Coast Guard from taking any other "adverse," non-disciplinary actions. Those claims for relief are unfit for judicial resolution. Such relief could not be squared with the Supreme Court's order in *Navy SEALs 1–26*, which stayed a lower court injunction to the extent that it "preclude[d] the Navy from considering [service members'] vaccination status in making deployment, assignment, and other operational

decisions." 142 S. Ct. at 1301; *see also Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989) ("The Constitution vests '[such] complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force' exclusively in the legislative and executive branches.") (quoting *Gilligan*, 413 U.S. at 10). Moreover, Plaintiffs offer no evidence that they are facing or will soon face any adverse employment actions because they brought this lawsuit or requested a religious exemption, and thus these claims are based purely on speculation about what might happen in the future. *See Thomas*, 473 U.S. at 580–81.

Second, Plaintiff have not established that delaying resolution of their claims would cause them any hardship. As discussed below, pp. 42–44 *infra*, Plaintiffs have not shown that they will likely suffer irreparable harm as a result of Defendants' challenged actions, and all claims to the contrary rest on layers of speculation.

2.      *Plaintiffs have failed to exhaust all available intraservice remedies.*

The named Plaintiffs' claims are also not justiciable because have not properly exhausted available intra-service remedies. "The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 37 (1972). Requiring exhaustion in the military context is particularly appropriate, "given the judiciary's lack of expertise in areas of military judgment and its long-standing policy of non-intervention in internal military affairs." *Heidman v. United States*, 414 F. Supp. 47, 48 (N.D. Ohio 1976) (citing *Schlesinger v. Councilman*, 420 U.S. 738 (1975); *Parker v. Levy*, 417 U.S. 733 (1974); *Gilligan*, 413 U.S. at 10). The Fifth Circuit has thus long required that a plaintiff first exhaust all "available intraservice corrective measures" before bringing to federal court claims implicating "internal military affairs." *Hodges v. Callaway*, 499

F.2d 417, 419–20 (5th Cir. 1974) (quoting *Mindes v. Seaman*, 453 F.2d 197, 201 (5th Cir. 1971));

*accord Von Hoffburg v. Alexander*, 615 F.2d 633, 637 (5th Cir. 1980) (collecting cases); *see also Cargill v. Marsh*, 902 F.2d 1006, 1007–08 (D.C. Cir. 1990) (per curiam). And even when a plaintiff meets this threshold exhaustion requirement, a court still must weigh several factors to determine the propriety of reviewing a claim challenging internal military matters: (i) the nature and strength of the plaintiffs' challenge; (ii) the potential injury to the plaintiffs if review is refused; (iii) the type and degree of anticipated interference with the military function; and (iv) the extent to which the exercise of military expertise or discretion is involved. *Mindes*, 453 F.2d at 201.[9]

Exhaustion. Although Plaintiffs assert that they have sought various exemptions from the Coast Guard's vaccination requirement, they have not pursued their claims through all available administrative procedures, pp. 5–6 *supra*, during which the Coast Guard can build a factual record and determine in the first instance whether a Plaintiff should be granted relief. For that reason, courts have recently denied relief to service members who similarly failed to exhaust available separation remedies before pursuing RFRA and Free Exercise challenges relating to DoD's vaccination directive. *See, e.g., Church*, 573 F. Supp. 3d at 136–38; *Robert*, 2022 WL 103374, at *3; *Knick*, 2022 WL 2157066, at *3; *Mark Short*, 2022 WL 1051852, at *4; *Miller*, 2022 WL 3584666, at *5. Plaintiffs insist that they have exhausted administrative remedies because they

---

[9]     Plaintiffs are incorrect to rely on *U.S. Navy SEALs 1–26 v. Biden*, 27 F.4th 336 (5th Cir. 2022). *See* Pls.' Br. at 17 & n.11. In granting the very same partial stay of an injunction that the Fifth Circuit had denied, the Supreme Court necessarily rejected the Fifth Circuit's reasoning in that case. *Austin v. U.S. Navy SEALs 1–26*, 142 S. Ct. 1301 (2022) (mem.). Further, contrary to Plaintiffs' contention, the Fifth Circuit in *Navy SEALs 1–26* did not hold that *Mindes* is inapplicable to RFRA claims. The three-judge panel opined that it "would not be a stretch" to reach that conclusion but, "deferring to circuit precedent," went on to apply *Mindes.* 27 F.4th at 346. This Court likewise should defer to circuit precedent and apply *Mindes.* And it should do so considering the specific record in this case against the Coast Guard, not the record in some other case against a different branch. *See id.* 347 n.11 (recognizing that cases have reached different conclusions on this topic).

have received denials of their requests for religious accommodation. But Plaintiffs do not dispute that they have not concluded the Coast Guard's separation or post-separation processes, which they must exhaust before bringing their claims to federal court. *See, e.g., Church*, 573 F. Supp. 3d at 136–38. And Plaintiffs make no effort to show that all the members of their proposed class have exhausted remedies, nor do they define the proposed class in a way that would include only service members who have exhausted post-separation remedies. This is yet another reason to deny the class-wide preliminary injunction.

*Mindes* factors. Even if Plaintiffs had properly exhausted all available administrative remedies before bringing this action, their claims would still be unreviewable because each of the *Mindes* factors weighs against judicial review. First, Plaintiffs' claims are exceedingly weak and are unlikely to succeed on the merits (as discussed below). Second, as explained above, p. 24 *supra*, and below, pp. 42–44 *infra*, Plaintiffs offer no evidence on which to find that they will likely suffer harm absent this Court's review. Finally, the third and fourth *Mindes* factors weigh decidedly against reviewing Plaintiffs' claims. *See West v. Brown*, 558 F.2d 757, 760–61 (5th Cir. 1977) (explaining that these factors "present a single inquiry, focusing on disruption of military functions."). "[M]ilitary readiness and unit cohesion would be unacceptably harmed should the Court" issue the prayed-for declaratory or injunctive relief implicating the "DoD Vaccine Mandate." *Church*, 573 F. Supp. 3d at 146–47; *see also, e.g.*, Ex. 1 ¶ 22, App. 11. "[F]orcing the [Army] to adjust to the risks of including unvaccinated [soldiers] in its ranks is a substantial interference." *Thomas Short*, 2022 WL 1203876, at *15 (quoting *Mark Short*, 2022 WL 1051852, at *5). Even the risk of a single Plaintiff going unvaccinated is a serious concern because, inter alia, unvaccinated individuals have many times the risk of suffering severe illness from SARS-CoV-2 infection and requiring hospitalization as a result. Ex. 1 ¶¶ 16–18, App. 7–9. Contrary to

Plaintiffs' conclusory assertion that "no military expertise is implicated" here, Pls.' Br. at 17 n.11, to review Plaintiffs' claims, the Court would need to "involve itself in 'complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force.'" *Thomas Short*, 2022 WL 1203876, at *15 (citation omitted). And by requiring the Coast Guard to retain, deploy, or assign each Plaintiff without regard for his or her vaccination status, the Court would improperly insert itself into a Plaintiff's chain of command, overriding military commanders' judgments about operational needs, including Plaintiffs' fitness to serve and carry out their duties. "[T]he public's interest in military readiness and the military's interest in Plaintiff[s'] health outweigh" Plaintiffs' alleged interests in the resolution of their claims. *See Navy SEAL 1*, 2022 WL 1294486, at *16.

### 3.  *Plaintiffs' RFRA claims fail on the merits.*

None of the three named Plaintiffs can establish likely success on the merits of their respective RFRA claims, nor can they establish a likelihood of prevailing on a class-wide basis. Military orders to vaccinate violate RFRA only if the government cannot "demonstrate[] that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b).   But here, requiring Plaintiffs to be vaccinated furthers compelling government interests in military readiness and in the health and safety of service members, and it is the least restrictive means of advancing those interests.   "[A] majority of the Supreme Court has already held . . . that the Government is likely to succeed on the merits on the same claims brought by Navy SEALs," and although that decision may not be formally binding, "it is the most persuasive authority on which a District Court may rely." *Navy SEAL 1*, 2022 WL 1294486, at *4

(citing *Navy SEALs 1–26*, 142 S. Ct. at 1301).[10]

    <u>Compelling Interest</u>.  Requiring the named Plaintiffs to be vaccinated against COVID-19 furthers compelling military interests in force health and readiness, especially when evaluated under the substantial deference that courts afford military operational decision-making. "[N]o court has ever held that the military does not have a compelling interest in the health of its troops" or "that vaccination against harmful diseases does not serve a compelling government interest," *id.* at *9; *accord Creaghan*, 2022 WL 150054, at *9 ("[T]here can be no greater military interest than in keeping each servicemember fit and healthy enough to accomplish their duties."). Instead, the Supreme Court has repeatedly emphasized that the government's interest in the "maximum efficiency" of military operations is paramount, *cf. United States v. O'Brien*, 391 U.S. 367, 381 (1968), and that "[f]ew interests can be more compelling than a nation's need to ensure its own security," *Wayte v. United States*, 470 U.S. 598, 611 (1985). And "[w]hen evaluating whether military needs justify a particular restriction on religiously motivated conduct, courts must give great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest." *Mark Short*, 2022 WL 1051852, at *7 (quoting *Goldman*, 475 U.S. at 507). Congress recognized these long-standing principles of military deference in enacting RFRA. S. Rep. No. 103-111, at 12 (1993), *as reprinted in* 1993 U.S.C.C.A.N. 1892, 1901 ("The courts have always recognized the compelling nature of the military's interest in [good order, discipline, and security] in the regulations of our armed services," and "have always extended to military authorities significant deference in effectuating these interests. The committee

---

    [10] Plaintiffs contend that the COVID-19 vaccination requirement substantially burdens their sincerely held religious beliefs because, as alleged in the complaint, "[a]ll of the COVID-19 vaccines currently approved by the FDA and available in the United States were derived from or tested using (as part of their development) aborted fetal cell lines." Compl. ¶ 161.  But even if Plaintiffs were correct, they have indicated that they "do not oppose all vaccines." *Id.* ¶ 163. And according to the Chief Scientist at Novavax, "[a]nimal or fetal-derived cell lines/tissue are not used in the manufacturing, testing, or production of the Novavax COVID-19 vaccine." Ex. 10, at 4, App. 133. Given that, they are even more unlikely to succeed on their RFRA claims. *See, e.g.*, *New Doe Child #1 v. Congress of the United States*, 891 F.3d 578, 590–91 (6th Cir. 2018).

intends and expects that such deference will continue under this bill."); *Navy SEAL 1*, 2022 WL 1294486, at *8.

After consulting with "medical experts and military leadership," the Secretary of Defense "determined that mandatory vaccination against [COVID-19] is necessary to protect the Force and defend the American people." *See* Sec'y of Def. Mem. (Aug. 24, 2021), https://perma.cc/N759-S758; Sec'y of Def. Mem. (Aug. 9, 2021), https://perma.cc/S4R3-2VZW. The Commandant of the Coast Guard likewise found that COVID-19 vaccination of each service member is necessary to ensure the readiness of the force and the health and safety of its members. Ex. 3 ¶¶ 4, 28, App. 63, 71. And "logic alone" dictates that "the military's general compelling interest in ensuring the health of its servicemembers . . . distill[s] to a compelling interest in ensuring that [each individual service member] remains healthy enough to accomplish [his] duties." *Creaghan*, 2022 WL 1500544, at *9; *see also Roth*, 2022 WL 1568830, at *17. The Court must "give great deference" to the "professional military judgments" of these leaders when it comes to what is needed to ensure military readiness and the welfare of service members. *Winter*, 555 U.S. at 24–25 (collecting cases). And "when executive officials 'undertake to act in areas fraught with medical and scientific uncertainties,' their judgments 'should not be subject to second-guessing by an unelected federal judiciary, which lacks the background, competence, and expertise to assess public health.'" *Mark Short*, 2022 WL 1051852, at *5 (quoting *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613–14 (2020) (Roberts, C.J., concurring)); *accord Creaghan*, 2022 WL 1500544, at *8.

Here, the Coast Guard conducted the individualized, "to the person" analysis that RFRA requires, 42 U.S.C. § 2000bb-1(b), considering each of the Plaintiffs' particular job duties and concluding that allowing each of them to remain unvaccinated would undermine the military's compelling interest in ensuring they can carry out their military duties effectively, *see* Ex. 3 ¶¶ 22–25, App. 69–70; *see also, e.g.*, *Roth*, 2022 WL 1568830, at *15.

Plaintiff LTJG Alaric Stone is an active duty commissioned officer in the United States

Coast Guard, currently assigned to the Fifth District Intelligence Branch (DRI) in Portsmouth, Virginia,  Ex. 6 ¶ 3, App. 95.  Previously, Plaintiff Stone served on board the USCGC JAMES as a member of the Operations Department on four separate deployments.  *See id.* ¶¶ 3–4, App. 95–96.  On board the USCGC JAMES, Plaintiff Stone was responsible for shiphandling and safety of the crew and cutter, *see id.* ¶ 3, App. 95, putting him in close contact with over 126 Coast Guard service members, as well as foreign military and civilians during port calls and other international engagements, *see id.* ¶ 4, App. 96.

Plaintiff BM1 Jackson is currently assigned to U.S. Coast Guard Station South Padre Island, South Padre Island, TX, having previously served on board the USCGC BENJAMIN BOTTOMS (WPC 1132), a Sentinel-class fast response cutter (FRC) stationed in San Pedro, CA. Ex. 7 ¶¶ 3, 12, 15, App. 101. 103–04.  In his service aboard that cutter, Plaintiff Jackson was a small-boat coxswain, Boarding Officer and Deck Watch Officer, working in close proximity to and in enclosed spaces with other crewmembers to perform a variety of missions related to law enforcement, homeland security, and search and rescue.  *See id.* ¶¶ 12, 15, App. 101, 103–04.

Plaintiff LTJG Marcenelle recently departed from serving as a duty officer assigned to the Response Department for Sector Charleston.  *See* Ex. 8 ¶ 3, App. 108.  His duties in this role were varied, with the majority of his work involving the management of, and employment with, the Sector Boarding Team as they conducted security searches of arriving commercial vessels.  *See id.* That team is responsible for clearing vessels as they arrive at the Port of Charleston.  *See id.*  And the work Plaintiff Marcenelle did required operating in confined spaces with specially qualified Coast Guard personnel and civilian partners.  *See id.* ¶¶ 3–4. App. 108.

The Coast Guard's decisions to deny these named Plaintiffs' religious accommodation requests in this case are amply supported by evidence showing COVID-19's harmful impact on military readiness. COVID-19 has "impacted all elements of DoD simultaneously," including exercises, deployments, redeployments, and other global force management activities, Ex. 1 ¶¶ 4,

6–8. App. 3–5; caused the cancellation of numerous significant preparedness and readiness events, *id.* ¶ 9, App. 5; suspended operations and resulted in inoperability of aircraft carriers for months in strategically significant areas, *id.* ¶¶ 7–8, App. 3–5; and infected hundreds of thousands of service members, hospitalized thousands, and tragically caused the loss of 96 service members, *id.* ¶ 3, App. 2–3. In the Coast Guard alone, COVID-19 has taken multiple entire units out of operation for weeks at a time. Ex. 4 ¶¶ 7–10, App. 85–87. Over 8,247 Coast Guard service members (out of a total of 45,900 active duty and reserve members) have been infected, resulting in significant lost days of time and readiness. *Id.* ¶ 7, App. 85.

The Coast Guard's judgment is also supported by the positive effects that COVID-19 vaccination has had on force readiness and health. Vaccinations have reduced the risk of serious illness, hospitalizations, and deaths of service members. *See, e.g.*, Ex. 1 ¶¶ 16–18, App. 7–9; Ex. 2 ¶¶ 8, 11–12, App. 18, 24–27; *see also Church*, 573 F. Supp. 3d at 147 (requiring vaccination is "supported by a lengthy record replete with data demonstrating the necessity of a general vaccine mandate"); *Mark Short*, 2022 WL 1051852, at *7 (noting "the empirical evidence in the record of the vaccine's efficacy" and the military's "evidence-based approach in its reliance on vaccination"); *Oklahoma*, 577 F. Supp. 3d at 1265 (stressing that the vaccine "has been shown to be remarkably effective in mitigating the effects of the pandemic which has affected . . . thousands of service members"). The overwhelming percentage of the service members who have died from COVID-19 were unvaccinated. *See* Ex. 1 ¶ 3, App. 3–4; Ex. 2 ¶ 12, App. 27. Likewise, "[b]etween July and November of 2021, non-fully-vaccinated active-duty service members had a 14.6-fold increased risk of being hospitalized when compared to fully vaccinated active-duty service members," and "[i]n December 2021 unvaccinated adults were 16-times more likely to be hospitalized than vaccinated adults." Ex. 1 ¶ 18, App. 9. A recent study published by the CDC confirmed mRNA vaccine effectiveness against invasive mechanical ventilation or death during the Omicron-predominant period. *See* CDC, Morbidity and Mortality Weekly Report (Mar. 18,

2022), https://perma.cc/HJH3-PEN4. Vaccinations also reduced the number of service members required to quarantine, permitted the military to return to higher levels of occupancy in DoD facilities and hold in-person training, and allowed service members to participate in joint training exercises with countries that have vaccination requirements. *See* Ex.1 ¶ 14, App. 7. In short, "[g]iven the tangible protection the vaccines afford service members against serious illness, hospitalization, and death, it is clear that COVID-19 vaccines improve readiness and preserve the DoD's ability to accomplish its mission." *Id.* ¶ 22, App. 11.

Vaccination also furthers the Coast Guard's "mission-critical" interest in ensuring that service members can respond to domestic emergencies or deploy on only a few days' or even a few hours' notice. Ex. 4 ¶¶ 5–6, App. 83–85.[11] Because it takes individuals about one month following their first dose of the FDA-approved COVID-19 to become fully vaccinated, service members cannot put off vaccination until they are ordered to respond to an emergency. *Id.* ¶ 6. The vaccine is necessary for members to stay deployment-ready because short-fuse deployments and no-notice temporary duty assignments are often necessary to support critical Coast Guard operations, such as responding to domestic emergencies, and "[m]itigation measures short of full vaccination, like testing and social distancing, cannot be implemented during these deployments and temporary duty assignments because of the nature of the operational environment and the often austere and arduous situations in which the members operate." Ex. 4 ¶ 5, App. 83–84. "Further, while at-sea, there is limited access to advanced medical care" in the event a member becomes infected with COVID-19. Ex. 7 ¶ 13, App. 103. Thus, caring for an ill member would require medivac off the cutter or a return to port, which would be highly disruptive to operations. *Id.*

Plaintiffs attempt to dispel the Coast Guard's compelling interest in requiring their

---

[11] In 2021, the Coast Guard deployed 4,461 members in response to surge staffing operations, including Hurricane Ida, the California Pipeline oil spill, the M/V *Golden Ray* capsizing, the Haitian earthquake, and Southwest Border migrant operations. Ex. 4 ¶ 5, App. 83–84. The majority of personnel assigned to respond to domestic emergencies are from non-operational billets, because personnel assigned to operational assets are deemed critical to the execution of that asset's mission. *Id.*

vaccination, but none of their arguments have merit. In particular, Plaintiffs cannot rely on the availability of medical and administrative exemptions to undermine the government's compelling interest in requiring these Plaintiffs to become vaccinated. That is because medical and administrative exemptions are not comparable to religious accommodations and therefore have no bearing on whether vaccinating Plaintiffs furthers the Coast Guard's compelling interests in military readiness. *Cf. Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) ("Comparability is concerned with the risks various activities pose."). In contrast to the religious accommodations that these Plaintiffs seek, medical exemptions serve the interest in military readiness: vaccinating a service member who has medical contraindications to the vaccine would harm the member's health, thereby *undermining* from the military's interests in ensuring readiness and the health and safety of members. Ex. 3 ¶¶ 10–11, 14–15, 17, App. 65–68; *see also Navy SEAL 1*, 2022 WL 1294486, at *12; *Mark Short*, 2022 WL 1051852, at *8; *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1178 (9th Cir. 2021), *cert. and application for injunction denied*, 142 S. Ct. 1099 (2022); *Does 1–6 v. Mills*, 16 F.4th 20, 31 (1st Cir. 2021), *cert. denied sub nom. Does 1-3 v. Mills*, 142 S. Ct. 1112 (2022). Likewise, when medical exemptions are authorized for service members actively participating in COVID-19 vaccine clinical trials, those exemptions serve to further the efficacy of the vaccine and vaccine development, and so they too comport with the military's compelling interests in a manner that a religious accommodation would not. And administrative exemptions—which were only granted to service members with an approved separation or retirement date no later than October 1, 2022—were appropriate because requiring vaccination of individuals leaving the force would not further the military's interest in ensuring readiness. Ex. 3 ¶ 20, App. 68–69.[12] Moreover, medical and administrative exemptions are generally temporary—

---

[12] This effectuates the stated intent of Congress. *See* Joint Explanatory Statement to Accompany the [NDAA] for Fiscal Year 2022 at 151, https://perma.cc/FL8K-PFUU ("We also expect the Department to include . . . exemptions [from mandatory COVID-19 vaccination] for servicemembers nearing separation and retirement in the development of uniform procedures relating to administrative exemptions.").

in contrast to the presumptive permanence of a religious belief opposing COVID-19 vaccination.[13] *Id.* ¶ 6–8. In light of these distinctions it is not "illogical" for the Coast Guard to distinguish between these Plaintiffs' "religious-based refusal to take a COVID-19 vaccine," Pls.' Br. at 18, and the medical and administrative exemption claims of other service members.

Importantly, medical and administrative exemptions do not allow recipients to continue in their job duties as if they were vaccinated, as Plaintiffs here seek to do. *See* Proposed Prelim. Inj. Order, ECF No. 4-1 at 3 (seeking to enjoin, e.g., "change[s] in job title or duties" and "determination[s] of medical disqualification or non-deployability"). Rather, "contrary to Plaintiffs' contentions, service members with medical, administrative, or religious exemptions to the COVID-19 vaccination mandate do not operate within the [military] as if they were vaccinated." *Roth*, 2022 WL 1568830, at *20. All unvaccinated service members are subject to the travel, leave, deployment, assignment, and duty restrictions and limitations that Plaintiffs seek to avoid. Ex. 3 ¶ 37, App. 75. Medical exemptions render a service member non-deployable and subject to additional restrictions, *see id.*, and service members who remain non-deployable for more than 12 consecutive months are reevaluated for retention, s*ee* DoDI 1332.45 ¶ 1.2(b), https://perma.cc/9FNU-ZR89. Thus, medical and administrative exemptions are not comparable to religious accommodations because they serve opposite purposes and yield opposite results.[14] Accordingly, the Coast Guard's decision to grant certain medical and administrative exemptions has no relevance on whether the Services have a compelling interest in vaccinating Plaintiffs.

Plaintiffs' invocation of the CDC's recent updates to its guidance, *see* Pls.' Br. at 21–22, only confirms that vaccination remains essential to preventing against serious illness,

---

[13] Permanent medical exemptions are only granted to service members who are allergic to a previous dose of the COVID-19 vaccine or to a component or the COVID-19 vaccines. Ex. 3 ¶ 17, App. 78.  To date, the Coast Guard has granted just nine such permanent medical exemptions. *See id.* at 4, App. 92.

[14] In this respect, Plaintiffs' reliance on the alleged status of Plaintiff Stone's colleagues, *see* Pls.' Br. at 20, who would appear to have certain medical issues that prevent their worldwide deployment, is misplaced.

hospitalization, and death from COVID-19 infection. On August 11, 2022, the Centers for Disease Control and Prevention issued a Summary of Guidance for Minimizing the Impact of COVID-19 on Individual Persons, Communities, and Health Care Systems. *See* CDC, *Summary of Guidance for Minimizing the Impact of COVID-19 on Individual Persons, Communities, and Health Care Systems—United States* (Aug. 2022), https://perma.cc/Y7XV-4R3Q (hereinafter "CDC, Summary of Guidance"); *see also* CDC, *Benefits of Getting a COVID-19 Vaccine* (Aug. 17, 2022), https://perma.cc/W66Y-3GU7. As the CDC explains, "COVID-19 vaccines are highly protective against severe illness and death," although they "provide a lesser degree of protection against asymptomatic and mild infection." CDC, Summary of Guidance (Aug. 2022), https://perma.cc/Y7XV-4R3Q. Indeed, "[t]he rates of COVID-19–associated hospitalization and death are substantially higher among unvaccinated adults than among those who are up to date with recommended COVID-19 vaccination, particularly among adults aged ≥65 years." *Id.*[15]

Accordingly, the Coast Guard properly determined that vaccinating these three Plaintiffs furthers the Coast Guard's compelling interest in military readiness.

Least Restrictive Means.  As other courts have found in non-military settings, a uniform practice of vaccination is the least restrictive means for accomplishing the government's interest in preventing the spread of infectious diseases in the workforce.[16] This reasoning has even greater force in the military setting, where health of service members is paramount to military readiness, and where the acceptable level of risk to the mission must be a military, not judicial, judgment. *See Navy SEALs 1–26*, 142 S. Ct. at 1302 (Kavanaugh, J., concurring) (cautioning that a court may

---

[15] The CDC's discussion of the benefits of vaccination comprehensively rebuts Plaintiffs' suggestion that "the effectiveness of COVID-19 vaccination [is becoming] more doubtful."  Pls.' Br. at 22.

[16] *See, e.g.*, *Does 1–6*, 16 F.4th 20 (health-care workers); *Doe*, 19 F.4th 1173 (students); *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266 (2d Cir. 2021) (health-care workers), , *opinion clarified*, 17 F.4th 368 (2d Cir. 2021), *and denying injunction pending appeal sub. nom.*, *Dr. A. v. Hochul*, 142 S. Ct. 552 (2021); *see also Burwell*, 573 U.S. at 733 (recognizing that vaccines "may be supported by" the government's compelling interest in "the need to combat the spread of infectious diseases")

not "insert[] itself into the [military's] chain of command, overriding military commanders' professional military judgments"); *Mark Short*, 2022 WL 1051852, at *7 (emphasizing deference to military judgments and adding that "[t]his deference is layered on top of the deference that courts must give to expert policymakers on matters involving complex medical or scientific uncertainties"); Ex. 9, *Dunn* Op. at 37–42, App. 116–21 (finding vaccination of an Air Force officer to be the least restrictive means, including because of the necessary deference afforded to military assessments and because "judges aren't scientists").

After careful consideration of Plaintiffs' requests for a religious accommodation and their respective appeals, the final decision authority concluded that no lesser restrictive means sufficiently serve the Coast Guard's compelling interests in readiness and ensuring the health and safety of all service members equally well. Notably, the Coast Guard is not required to use an alternative that does not serve its compelling interests "equally well" relative to vaccination. *See Hobby Lobby*, 573 U.S. at 731 (examining whether alternative served stated interest "equally well"); *Kaemmerling v. Lappin*, 553 F.3d 669, 684–85 (D.C. Cir. 2008) (rejecting RFRA and constitutional challenges against DNA Act, where "[a]ny alternative method of identification would be *less effective*" in accomplishing the government's compelling interests (emphasis added)).

Among other things, the Coast Guard considered the feasibility of remote work options, but concluded that these were not available. *See* Ex. 8 ¶ 12, App. 110; Ex. 7 ¶ 15, App. 104; Ex. 6 ¶¶ 4, 10, App. 96, 98. the Coast Guard evaluated the feasibility and effectiveness of masking and distancing but concluded that those measures are not as effective as vaccination. *See, e.g.* Ex. 8 ¶ 5, App. 109; Ex 7 ¶ 15, App. 104; Ex. 6 ¶¶ 4, 10, App. 96, 98. And regardless, unlike vaccination, masking and distancing do not provide any protection to an infected individual from severe illness or death. *See Roth*, 2022 WL 1568830, at *23. Also, unlike vaccination, the effectiveness of masking and distancing fluctuates based on human behavior. *See* Ex. 2 ¶ 10, App. 23–24; *see also*

36

*United States v. Elder*, ---F. Supp. 3d---, 2022 WL 836923, at *9 (E.D.N.Y. Mar. 21, 2022) ("By themselves, face masks, social distancing, and similar measures may be effective for small groups over short periods of time, but fail to ensure the safety of large groups in close contact for sustained periods.").

Similarly, serial testing and temperature checks do not prevent a service member who tests positive from suffering serious health outcomes, such as long COVID, hospitalization, and death. Moreover, the "virus can be easily transmitted to others prior to symptom development and therefore may infect significant numbers before being identified." Ex. 2 ¶ 10, App. 23–24. Indeed, the military experienced multiple COVID-19 outbreaks when it merely required service members to undergo routine testing requirements, rather than requiring vaccination. Ex. 4 ¶¶ 7–8, App. 85–86; *see also Does 1-6*, 16 F.4th at 33 (noting same was true of Maine).

Plaintiffs' unverified contention that they have "natural immunity," Pls.' Br. at 18, is unpersuasive. While a prior infection can provide some protection against another infection for some amount of time, the available medical evidence leaves much unknown about the strength, consistency and duration of that protection. Ex. 2 ¶¶ 20–22, 24, 29, App. 34–41; Ex. 9, *Dunn* Op. at 39–40, App. 118–19 ("[I]t's not well established that a natural immunity is effective, more effective or as effective as the vaccine."); CDC, *Benefits of Getting a COVID-19 Vaccine – Protection from COVID-19* (Aug. 17, 2022), https://perma.cc/W66Y-3GU7 ("While people can get some protection from having COVID-19, the level and length of that protection varies, especially as COVID-19 variants continue to emerge."). Moreover, protection from a prior infection increases following vaccination. Ex. 2 ¶ 21, App. 36; CDC, *Benefits of Getting a COVID-19 Vaccine* (Aug. 17, 2022), https://perma.cc/W66Y-3GU7 ("[P]eople can get added protection by getting vaccinated after having been infected with . . . COVID-19."). The Coast Guard has therefore determined, consistent with CDC guidance, that vaccination is the best way to minimize the risk posed by COVID-19 to military readiness. *See also* DoDI 6205.02 ¶ 1.2,

https://perma.cc/8HLA-AXQB (mandating vaccination in accordance with the CDC's recommendations); CDC, *Interim Clinical Considerations for Use of COVID-19 Vaccines Currently Approved or Authorized in the United States* (last updated Sept. 23, 2022), https://perma.cc/VM73-HDU8 (recommending vaccination for those five and over "regardless of a history of symptomatic or asymptomatic [COVID-19] infection," and "serologic testing to assess for prior infection is not recommended for the purpose of vaccine decision-making").[17]

<u>Class-Wide RFRA Claims Are Improper</u>.   In seeking to obtain a class-wide preliminary injunction, Plaintiffs also argue that the Services have rejected less restrictive alternatives as part of a general policy of illegally denying religious accommodations. *See* Pls.' Br. at 18–19. Plaintiffs may disagree with the Coast Guard's assessment of least restrictive means to protect the military's mission, but such disagreement does not mean that military leaders are operating unlawfully.

In particular, Plaintiffs' emphasis on the overall number of accommodation requests granted by the Coast Guard is misguided.  As explained, p. 15 *supra*, reliance on mere data as to the raw numbers of religious exemption requests granted does not satisfy *Wal-Mart*'s requirements for class certification, let alone support class-wide relief.    This is especially so where so many claims are unripe and unexhausted.  *See* p. 17 *supra*.

Similarly, Plaintiffs' suggestion that Coast Guard authorities have "exhibited a clear intent to unlawfully discriminate against religious service members," Pls.' Br. at 19, is unjustified.  *Cf. Dodson v. U.S. Gov't, Dep't of the Army*, 988 F.2d 1199, 1204 (Fed. Cir. 1993) ("[M]ilitary administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs."); *Doe 2 v. Shanahan*, 917 F.3d 694, 731 (D.C. Cir. 2019) (Williams, J., concurring) (noting that "the plausibility of such

_____

[17] *Cf. Biden v. Missouri*, 142 S. Ct. 647, 653–54 (2022) (concluding that it was rational for an agency to rely on CDC guidance in requiring vaccination even for individuals with "natural immunity" from prior COVID-19 illness); *Norris v. Stanley*, No. 1:21-cv-756, 2022 WL 557306, at *4 (W.D. Mich. Feb. 22, 2022) (similar), *appeal filed*, No. 22-1200 (6th Cir. Mar. 14, 2022); *Valdez v. Grisham*, 559 F. Supp. 3d 1161, 1177 (D.N.M. 2021)(similar), *aff'd*, 2020 WL 2129071 (10th Cir. June 14, 2022).

a scheme tends to unravel as we try to imagine the dozens of participants," including "Cabinet members and other officials," "who would have been needed for its realization" (citation omitted)). Plaintiffs make much of an alleged statement from Plaintiff Stone's commanding officer that Stone's religious beliefs "didn't matter" to him.  Pls.' Br. at 19.  But as explained in the Declaration of Commander Thomas, Plaintiffs misinterpret the commanding officer's position.  *See* Thomas Ex. 6 ¶ 7, App. 97.  That officer simply believed that "vaccination was necessary to the ship meeting operational mission requirements and keeping the crew/families healthy and safe." *Id.*  In any event, that officer wasn't responsible for providing information about Stone's religious beliefs within the Coast Guard's accommodation process, and because Plaintiff Stone's accommodation request concerned a mandatory vaccination, that officer did not have authority to decide Stone's request.  *Id.*

More generally, Plaintiffs' process complaints are improper as it relates to the putative class.   The Coast Guard has established an extensive, multi-step process for providing individualized review of all religious accommodation requests, and Coast Guard officials spend significant time carefully considering those requests in light of the Guard's mission requirements. Ex. 3 ¶¶ 21–37, App. 69–75.  Plaintiffs might perceive flaws in that process, but RFRA does not entitle plaintiffs to any particular process from the Coast Guard, rendering claims for class-wide relief improper.  And though Plaintiffs present the recent memo published by the Department of Defense Inspector General to support their claims for broad relief, *see, e.g.* Pls.' Br. at 20, the Coast Guard is not part of the Department of Defense, so that report has no relevance here.

In sum, the Coast Guard's considered judgment is reasonable and supported by the record. RFRA does not compel the Coast Guard to adopt any measure that is inferior in the military context to the use of vaccines. Plaintiffs have thus failed to show likely success on their RFRA claims so as to warrant the extraordinary preliminary injunctive relief they seek, much less at a class-wide level.

4.      *Plaintiffs' First Amendment claims are unlikely to succeed on the merits.*

Briefly, Plaintiffs also press First Amendment claims, contending that the Coast Guard is "treating religious-based accommodation requests less favorably than secular requests." Pls.' Br. at 23. As a threshold matter, there should be no need for the Court to address the First Amendment claim separately. If the Government prevails on the RFRA claim, then the Government necessarily prevails under the First Amendment claim. Conversely, if Plaintiffs prevail under RFRA, the Court could grant relief without considering Plaintiffs' First Amendment claim and thus avoid unnecessarily confronting a constitutional question.

But in any event, Plaintiffs First Amendment claim should fail. The Supreme Court has explicitly held that "the First Amendment does not require the military to accommodate [religious] practices in the face of its view that they would detract from the [the military mission]." *Goldman*, 475 U.S. at 509-10. Indeed, "review of military regulations challenged on First Amendment grounds is far more deferential than constitutional review of similar laws or regulations designed for civilian society." *Id.* at 507; *id.* at 510 (rejecting a service member's Free Exercise Clause claim because the Air Force "reasonably and evenhandedly regulate[s] dress in the interest of the military's perceived need for uniformity"); *cf. Trump v. Hawaii*, 138 S. Ct. 2392, 2420 n.5 (2018) (noting, in rejecting, Establishment Clause claim, that the respondents there "cite no authority for [their] proposition that the more free-ranging inquiry [they] propose[] is appropriate in the national security . . . context"). This precedent "[a]t a minimum" suggests that "when a member of the military challenges a regulation or policy of the military on Free Exercise grounds, courts should normally apply a level of scrutiny below that of strict scrutiny and evidently comparable to rational basis review." *Navy SEAL 1*, 2022 WL 1294486, at *13; *see also Creaghan*, 2022 WL 1500544, at *7. Plaintiff's claim founders under *Goldman*'s highly deferential standard. "[T]he

overwhelming weight of scientific authority supports the proposition that COVID-19 vaccination reduces the severity and duration of disease," and in light of those benefits, requiring vaccination clearly advances the Coast Guard's interest in force readiness and the health and wellbeing of service members. *Navy SEAL I*, 2022 WL 1294486, at *10. And while various medical and administrative exemptions may also advance those interests in their own—including by avoiding harm to individuals with allergies that preclude vaccination as an option—the religious accommodations that Plaintiffs seek are different in kind. Thus, while Plaintiffs make much of the Coast Guard's rejection of numerous religious accommodation requests, *see* Pls.' Br. at 23, the Coast Guard's distinction between exemptions that promote force readiness and the health and wellbeing of service members and accommodations that would undermine those same interests is entirely rational and provides no occasion for the application of strict scrutiny.

Even assuming the military context was not relevant, strict scrutiny would still be inapplicable under a constitutional analysis because the vaccine requirement is neutral and generally applicable. *See Kaemmerling*, 553 F.3d at 677. It applies to *all* service members; its "terms . . . do not make any reference to religion," Ex. 9, *Dunn* Op. at 44, App. 123; and it was expressly implemented in order to ensure "a healthy and ready force"—not to suppress religious belief, Sec'y of Def. Mem. (Aug. 24, 2021), https://perma.cc/N759-S758; *see also* Ex. 9, *Dunn* Op. at 43–44, App. 122–23 (finding Air Force's vaccine requirement generally applicable and subject to rational basis review); *Trump*, 138 S. Ct. at 2420 ("On the few occasions where" the Supreme Court has struck down a law under rational basis scrutiny, "a common thread has been that the laws at issue lack any purpose other than a bare . . . desire to harm a politically unpopular group.") (citation omitted); *We The Patriots*, 17 F.4th at 281 (concluding that New York's vaccine requirement for healthcare workers was facially neutral "because it does not single out employees

who decline vaccination on religious grounds" and it "applies to all personnel"); *Doe*, 19 F.4th at 1177 (similar, regarding school district's student vaccination requirement). Plaintiffs cannot demonstrate that Services' respective vaccine requirements "lack any purpose other than a bare desire to harm" any set of religious beliefs so as to trigger a higher level of scrutiny. *Trump*, 138 S. Ct. at 2420 (cleaned up).

### B.     Plaintiffs Are Unlikely to Suffer Irreparable Harm Absent Preliminary Relief.

Plaintiffs must show that, in the absence of an injunction, they are "likely to suffer irreparable harm." *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 585 (5th Cir. 2013) (citation omitted). It is not enough simply to "show[ ] some 'possibility of irreparable injury.'" *Nken v. Holder*, 556 U.S. 418, 434–35 (2009) (quoting *Abbassi v. INS*, 143 F.3d 513, 514 (9th Cir. 1998)); *accord Winter*, 555 U.S. at 22. "Speculative injury is not sufficient" to "make a clear showing of irreparable harm." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985). Moreover, "the irreparable harm element must be satisfied by independent proof, or no injunction may issue." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989). "In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). Conversely, "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). And "[i]n the context of 'military personnel decisions, . . . courts have held that the showing of irreparable harm must be *especially strong* before an injunction is warranted, given the national security interests weighing against judicial intervention in military affairs." *Church*, 573 F. Supp. 3d at 145 (citation omitted). Plaintiffs make no such showing.

Plaintiffs claim that they face irreparable harm because they are being deprived of their constitutionally and statutorily protected religious rights. Pls.' Br. at 23–24. But as discussed, pp. 27–42 *supra*, Plaintiffs have not demonstrated that Defendants' challenged actions implicate their constitutional or statutory rights, let alone imminently threaten them, *Elrod v. Burns*, 427 U.S. 347, 374 (1976); *see also, e.g., Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 334 (D.C. Cir. 2018) (explaining that, to show irreparable harm based on loss of constitutional rights, a movant must show likely success on the merits)*, cert. denied*, 140 S. Ct. 1198 (2020); *Mark Short*, 2022 WL 1051852, at *9; *Bellinger v. Bowser*, 288 F. Supp. 3d 71, 88–89 (D.D.C 2017); *Thomas Short*, 2022 WL 1203876, at *7–8. A preliminary injunction is inappropriate "unless the party seeking it can demonstrate that '[constitutional] interests are either threatened or in fact being impaired at the time relief is sought.'" *Google, Inc. v. Hood*, 822 F.3d 212, 227–28 (5th Cir. 2016) (citation omitted). And even if Plaintiffs could show likely success on the merits of their claims, the irreparable-harm requirement is not excised any time a plaintiff asserts a colorable constitutional claim. The mere "invocation of the [Constitution] cannot substitute for" a plaintiff's obligation to show "the presence of an imminent, non-speculative irreparable injury" that will occur absent preliminary relief. *Id.* at 228. Beyond the mere circular invocation of their merits arguments, plaintiffs fail to show any actual irreparable injury would result if preliminary relief is denied.  The imposition of any discipline after the process for finally adjudicating their request is not irreparable in any court.

Likewise, Plaintiffs fail to show how an entire class of Coast Guard members with religious exemption requests face any irreparable harm. Indeed, as to the class, the denial of class-wide preliminary relief would not mean only that putative class members must bring their individual claims to court in the ordinary course, including for any preliminary relief like the named Plaintiffs

here, for an assessment of their individual circumstances. This is the process contemplated by RFRA, not a wide-ranging injunction that would restrict the Coast Guard's ability to protect the health, safety, and readiness of the force.

### C.    The Equities and Public Interest Weigh Against a Preliminary Injunction.

The third and fourth requirements for issuance of a preliminary injunction—the balance of harms and whether the requested injunction will disserve the public interest— "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. These factors tilt decidedly against the issuance of a preliminary injunction here.

The public has an exceptionally strong interest in national defense, *see Winter*, 555 U.S. at 24–26, and the military has a compelling interest in requiring its forces to be vaccinated, healthy, and ready to accomplish any and every military mission, *see North Dakota v. United States*, 495 U.S. 423, 443 (1990); *Navy SEALs 1–26*, 142 S. Ct. at 1302 (Kavanaugh, J., concurring). An injunction allowing Plaintiffs to continue serving without being vaccinated against COVID-19 would threaten harm not only to Plaintiffs and the other service members serving alongside them, but would also compromise their units' collective abilities to execute their military and intelligence duties, maintain their necessary readiness, and accomplish their missions. *See* Ex. 4 ¶ 7, App. 85 ("Coast Guard units are often small in size such that even a small number of cases can render a unit incapable of performing its mission."); Ex. 3 ¶ 28, App. 71; Ex. 1 ¶ 21, App. 11. These harms would be magnified exponentially by a class-wide injunction, which would have an even greater impact over many other units. And unlike service members with medical and administrative exemptions, Plaintiffs seek to remain in their posts without any changes to their duties. The Coast Guard's judgment that it cannot accept avoidable risk to the health and readiness of its fighting forces serves the public interest, outweighs any interests Plaintiffs may have in premature

preliminary relief, and deserves this Court's deference. *See, e.g., Navy SEAL 1*, 2022 WL 1294486, at *16–17; *Church*, 573 F. Supp. 3d at 146–48.

Moreover, the national defense depends on service members' compliance with lawful orders. *Chappell v. Wallace*, 462 U.S. 296, 300 (1983). No military can successfully function where members feel free to define the terms of their own service and which orders they will choose to follow. Plaintiffs' requested injunction would interfere with the military's discretion to handle matters of order and discipline, to the detriment of effectiveness and trust between commander and subordinate. *Orloff v. Willoughby*, 345 U.S. 83, 95 (1953).

## CONCLUSION

The motions to certify a class and for a preliminary injunction as to both the named Plaintiffs and the putative class should be denied.


Dated: October 7, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Branch Director

ANTHONY H. COPPOLINO
Deputy Branch Director

  /s/ Johnny Walker
CODY T. KNAPP (NY Bar #5715438)
JOHNNY H. WALKER (D.C. Bar #991325)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Rm. 12304
Washington, D.C. 20530
Tel.: (202) 514-3183 / Fax: (202) 616-8460
Email: johnny.h.walker@usdoj.gov

*Counsel for Defendants*

45