# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **ERIC JACKSON**, **ALARIC STONE**, and **MICHAEL MARCENELLE**, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 4:22-cv-825-P |
| v. | ) ) | |
| **ALEJANDRO N. MAYORKAS**, in his official capacity as Secretary of Homeland Security, **LLOYD J. AUSTIN, III**, in his official capacity as Secretary of Defense, **LINDA L. FAGAN**, in her official capacity as Commandant of the Coast Guard, and **BRIAN K. PENOYER**, in his official capacity as Assistant Commandant for Human Resources of the Coast Guard, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTIONS FOR CLASS-WIDE RELIEF

# TABLE OF CONTENTS

I.    INTRODUCTION. ................................................................................................. 1

II.    CLASS CERTIFICATION ................................................................................... 2

    A.   Plaintiffs and the Class satisfy the requirements of Rule 23(a). .................................... 2

        1.   Plaintiffs have established commonality. ................................................................ 2

        2.   Plaintiffs' claims are typical. .................................................................................. 7

III.  CLASS-WIDE PRELIMINARY INJUNCTION ................................................. 8

    A.   Plaintiffs' claims are ripe and Plaintiffs did not fail to exhaust remedies. .................... 8

        1.   Ripeness: ................................................................................................................ 8

        2.   Exhaustion: ........................................................................................................... 10

    B.   Plaintiffs are likely to succeed on the merits of their RFRA and First Amendment
        claims: the Coast Guard lacks a compelling interest and fails narrow tailoring. .......... 13

        1.   Compelling Interest ............................................................................................. 13

        2.   Least Restrictive Means ....................................................................................... 16

        3.   Class-wide RFRA Claims ..................................................................................... 17

    C.   Irreparable injury will result absent injunctive relief. .................................................. 18

    D.   The balance of hardships and public interest weigh in the Class's favor. .................... 19

IV.  CONCLUSION .................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Adair v. England*,
　　183 F. Supp. 3d 31 (D.D.C. 2002) ........................................................... 12

*Austin v. Navy SEALs 1-26*,
　　142 S. Ct. 1301 (2022) ............................................................................ 10

*Bear Creek Bible Church v. EEOC*,
　　571 F. Supp. 3d 571 (N.D. Tex. 2021) ............................................... 6-7, 10

*Brown v. Ent. Merchants Ass'n*,
　　564 U.S. 786 (2011) ................................................................................ 14

*Burwell v. Hobby Lobby Stores, Inc.*,
　　573 U.S. 682 (2014) ................................................................................ 16

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
　　113 U.S. 520 (1993) ................................................................................ 13

*Col. Fin. Mgmt. Officer v. Austin*,
　　No. 8:22-CV-1275-SDM-TGW, 2022 WL 3643512 (M.D. Fla. Aug. 18, 2022) ................ 1, 12

*Davis v. Davis*,
　　826 F.3d 258 (5th Cir. 2016) ..................................................................... 6

*Diraffael v. Cal. Mil. Dep't*,
　　No. 10-cv-7240, 2011 WL 13274364 (C.D. Cal. Mar. 21, 2011) .............................. 9

*Doe v. Rumsfeld*,
　　297 F. Supp.2d 119 (D.D.C. 2003) ............................................................. 20

*Doe v. Rumsfeld*,
　　341 F. Supp.2d 1 (D.D.C. 2004) ................................................................. 20

*Doster v. Kendall*,
　　No. 1:22-CV-00084-MWM, 2022 WL 2974733 (S.D. Ohio July 27, 2022) .................. 1, 12

*Doster v. Kendall*,
　48 F.4th 608 (6th Cir. 2022) ............................................................................ 14, 17

*Dr. A v. Hochul*,
　142 S. Ct. 552 (2021) ............................................................................................ 15

*Dunn v. Austin*,
　142 S. Ct. 1707 (2022) .......................................................................................... 10

*Flecha v. Medicredit, Inc.*,
　946 F.3d 762 (5th Cir. 2020) ............................................................................... 4-5

*Fraternal Ord. of Police Newark Lodge No. 12 v. City of Newark*,
　170 F.3d 359 (3d Cir. 1999) ................................................................................ 15

*Fuller v. Rich*,
　11 F.3d 61 (5th Cir. 1994) .................................................................................... 11

*Fulton v. City of Philadelphia*,
　141 S. Ct. 1868 (2021) .......................................................................................... 17

*Gomillion v. Lightfoot*,
　364 U.S. 339 (1960) ................................................................................................ 3

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
　546 U.S. 418 (2006) ................................................................................................ 5

*Holt v. Hobbs*,
　574 U.S. 352 (2015) ................................................................................................ 9

*In re Navy Chaplaincy*,
　306 F.R.D. 33 (D.D.C. 2014) .................................................................................. 3

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
　140 S. Ct. 2367 (2020) ............................................................................................ 6

*Masterpiece Cakeshop v. Colo. Civil Rights Comm'n*,
　138 S. Ct. 1719 (2018) .......................................................................................... 18

*Mindes v. Seaman*,
    453 F.2d 197 (5th Cir. 1971) ............................................................... 11, 12

*Mullen v. Treasure Chest Casino*,
    186 F.3d 620 (5th Cir. 1999) ..................................................................... 7

*Navy SEALs 1-26 v. Austin*, No. 4:21-cv-01236-O (N.D. Tex.) ........................................... *passim*

*Navy SEALs 1-26 v. Biden*, 27 F.4th 336 (5th Cir. 2022) ...................................................... 11, 13

*Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*,
    876 F.3d 829 (9th Cir. 2012) ..................................................................... 12

*Opulent Life Church v. City of Holly Springs, Miss.*,
    697 F.3d 279 (5th Cir. 2012) ..................................................................... 9

*Ramirez v. Collier*,
    142 S. Ct. 1264 (2022) .......................................................................... 6, 18

*Ramos v. Louisiana*,
    140 S. Ct. 1390 (2020) ........................................................................... 10

*Sherbert v.Verner*,
    374 U.S. 398 (1963) .......................................................................... 9, 18, 19

*Singh v. Carter*,
    168 F. Supp. 3d 216 (D.D.C. 2016) ............................................................ 12

*Singh v. McHugh*,
    185 F. Supp.3d 201 (D.D.C. 2016) ........................................................... 13, 20

*Susan B. Anthony List v. Driehaus*,
    573 U.S.149 (2014) ............................................................................. 9, 10

*Tagore v. United States*,
    735 F.3d 324 (5th Cir. 2013) ..................................................................... 5

*Tandon v. Newsom*,
    141 S. Ct. 1294 (2021) .......................................................................... 10, 15

*Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*,
450 U.S. 707 (1981) ............................................................................................................ 9

*Tucker v. Collier*,
906 F.3d 295 (5th Cir. 2018) ........................................................................................... 6

*Vita Nuova, Inc. v. Azar*,
No. 4:19-CV-00532-O, 2020 WL 8271942 (N.D. Tex. Dec. 2, 2020).............................. 3, 4, 6

*Wal-Mart Stores v. Dukes*,
564 U.S. 338 (2011)......................................................................................................... 2, 8

*Yick Wo v. Hopkins*,
118 U.S. 356 (1886)........................................................................................................ 4

**Other Authorities**

Kate Sullivan, et al., "Biden: 'The pandemic is over,'" CNN, Sept. 18, 2022,
https://www.cnn.com/2022/09/18/politics/biden-pandemic-60-minutes.................................... 1

University of Nebraska Medicine, "What COVID-19 variants are going around in September
2022?," Sept. 16, 2022,
https://www.nebraskamed.com/COVID/what-covid-19-variants-are-going-around ............... 14

Carolyn Crist, "CDC: Most Americans Have COVID-19 Antibodies," WebMD, March 30, 2022,
https://www.webmd.com/lung/news/20220330/cdc-most-americans-have-covid-
antibodies#:~:text=The%20seroprevalence%20%2D%2D%20or%20evidence,health%20offici
als%20have%20said%20BA.................................................................................................. 17

Charles Creitz, "Hurricane Ian Coast Guard hero about to be fired over vaccine refusal speaks
out," Fox News, Oct. 5, 2022,
https://www.foxnews.com/media/hurricane-ian-coast-guard-hero-about-fired-vaccine-refusal-
speaks-out ................................................................................................................................. 15

Bailee Hill, "Coast Guard rescuer faces termination over vaccine mandate after team was praised
by Biden for hurricane aid," Fox News, October 4, 2022,
https://www.foxnews.com/media/coast-guard-rescuer-faces-termination-vaccine-mandate-
team-praised-biden-hurricane-aid ............................................................................................. 15

## I.      INTRODUCTION.

"The pandemic is over," the Commander in Chief recently admitted.[1] But the purge of religious Coast Guard service members continues. This case is substantially identical to *Navy SEALs 1-26 v. Austin*, No. 4:21-cv-01236-O (N.D. Tex.), in which this Court issued a class-wide preliminary injunction against the Navy, and to *Doster v. Kendall*, No. 1:22-CV-00084-MWM, (S.D. Ohio) and *Col. Fin. Mgmt. Officer v. Austin*, No. 8:22-CV-1275-SDM-TGW (M.D. Fla.), in which courts issued class-wide preliminary injunctions against the Air Force and Marine Corps respectively. The Coast Guard makes no attempt to distinguish these cases and essentially concedes that if those cases are correctly decided then Plaintiffs and the Class prevail here too.

The Coast Guard—together with the other service branches—has a policy of discriminating against religious accommodation requests. The Coast Guard's discriminatory treatment of the Plaintiffs is typical of its treatment of the Class as a whole. The Coast Guard admits it has granted zero religious accommodation requests (other than those already slated for separation or retirement) and that it offers and has granted numerous secular accommodations (while failing now to say how many it has granted in all). Remarkably, the Coast Guard claims that any policy of religious discrimination is not "relevant." Def. Opp. 16. The Coast Guard is mistaken—the policy of religious discrimination is critically relevant; it compels judgment in favor of Plaintiffs and the Class, just as it did in the Navy, Air Force, and Marine Corps cases.

In its 45-page brief, all the Coast Guard claims is that it views Class members' unvaccinated status as generally threatening to military readiness, including to service members' "worldwide deployability." This type of generalized interest does not suffice under RFRA's "to the person" requirement. In any event, the Coast Guard ignores its own selective insistence on purported "worldwide deployability" as a condition to service: it always insists on religious

---

[1] https://www.cnn.com/2022/09/18/politics/biden-pandemic-60-minutes.

objectors, but not others, being "worldwide deployable." Again, this Court in the Navy case and the other courts in the Air Force and Marine Corps cases found the military systemically violated service members' religious liberty rights, as the Court should find here too.

Consistent with those cases, this Court in this case should certify the Class, appoint Plaintiffs' counsel as Class counsel,[2] and issue a Class-wide preliminary injunction.

Local Rule 7.2.c permits 10-page reply briefs. Plaintiffs file this 20-page reply brief subject to their pending unopposed motion for leave to file excess pages filed on October 11 (ECF No. 35).

## II.   CLASS CERTIFICATION[3]

### A.   Plaintiffs and the Class satisfy the requirements of Rule 23(a).

#### 1.   Plaintiffs have established commonality.

Commonality is established, as it was in the Navy, Air Force, and Marine Corps cases. As Plaintiffs have shown, they and the Class have suffered uniform harm as a result of a common nucleus of operative facts, including: the Coast Guard's processes, policies, or practices of across-the-board denial of all religious accommodation requests; the Coast Guard's failure to conduct individualized assessments of religious accommodation requests; and the lack of factual basis for the Coast Guard's claim that the Mandates satisfy strict scrutiny. *See* Pl. Memo 9.

Resolution of any one these common issues, and especially resolution of all of them, would resolve "in one stroke" a question that is "central to the validity of each class member's claim." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 350 (2011). Put another way, a "finding in favor of the Named Plaintiffs on their RFRA and First Amendment claims also resolves the RFRA and First Amendment claims of the class." *Navy SEALs 1-26*, 2022 WL 1025144, at *5

---

[2] The Coast Guard does not oppose appointment of Class counsel. *See*, *generally*, Def. Opp.
[3] The Coast Guard does not dispute ascertainability, numerosity, or adequacy. *See*, *generally*, Def. Opp.

(quoting *Vita Nuova, Inc. v. Azar*, 2020 WL 8271942, at *8 (N.D. Tex. Dec. 2, 2020)).

The Coast Guard does not address whether each of these or other identified common issues would dispose of a centrally important question in the claim of every Class member. Instead, the Coast Guard argues generally that the Court cannot certify a class action in *any* RFRA cases, because RFRA requires the Court to engage in an "individualized assessment of each service member's religious beliefs, particular military duties, and other unique circumstances." Def. Opp. 11. This argument fails as a matter of logic and of law.

Fundamentally, it is a straw man argument because it attacks RFRA class actions by mischaracterizing them *all* as cases seeking review of denials of particular religious accommodation requests. RFRA requires that *the Coast Guard* engage in a "to the person" assessment of each religious accommodation request, but the Coast Guard can violate RFRA's "to the person" requirement in (at least) two ways: it can misjudge the factors of *one* particular service member's case, or it can *categorically* ignore all personalized inquiry and deny *all* or substantially all religious exemptions accordingly. This case involves the latter, systemic type of RFRA violation. Such a violation is both susceptible of class resolution and dispositive of a central issue in the RFRA claim of every Class member.

The Coast Guard claims that Plaintiffs do not show a systemic policy of discriminating against religious service members, but Plaintiffs have more than sufficiently shown this. The Coast Guard does not dispute, for example, that it has granted numerous secular exemptions while granting zero religious accommodations (other than for those already slated for separation or retirement) out of 1,200+ requests.[4] On the basis of this evidence, the named Plaintiffs' own

---

[4] Courts **credit statistical evidence** when it is so "stark" that it is suggestive of a "general policy of discrimination." *In re Navy Chaplaincy*, 306 F.R.D. 33, 52 (D.D.C. 2014) (citing *Gomillion v. Lightfoot,* 364 U.S. 339 (1960) (rejecting a redistricting proposal that excluded 396 out of 400

representative situations, and the conclusions of the Department of Defense Inspector General in examining the military's policies and procedures,[5] Plaintiffs have shown that the Coast Guard's undisputed, consistent practice of denying religious accommodations reflects an illegal policy of failing to conduct the "to the person" analysis required by RFRA. The Coast Guard's insistence that it has conducted 1,200+ individualized reviews and properly identified *zero* service members entitled to a lawful religious accommodation (other than those already slated for separation or retirement) is not credible.

Courts, including this one, have indeed expressly held that plaintiffs can raise class action claims for systemic discrimination under RFRA. The Coast Guard admits that, in order to find in its favor on commonality, the Court would have to ignore this Court's recent precedent in *Navy SEALs 1-26* as well as the related Air Force and Marine Corps cases. The Coast Guard does not even attempt to distinguish these cases from the current one; instead, it argues they were wrongly decided on the basis of the same false premise it applies to oppose class certification here: that RFRA class actions are not possible. Def. Opp. 14-15. That premise is contradicted by other precedent certifying RFRA class actions as well. *See*, *e.g.*, *Vita Nuova, Inc.*, 2020 WL 8271942 (certifying RFRA class of health-care providers that oppose abortion).

The Coast Guard's own cases do not support its position. In *Flecha v. Medicredit, Inc.*,

---

black voters while excluding zero white voters) and *Yick Wo v. Hopkins,* 118 U.S. 356 (1886) (rejecting selective enforcement of an ordinance against 200 Chinese business owners but zero non-Chinese business owners)). *See also* Navy, Air Force, and Marine Corps orders.

[5] The Coast Guard does not deny the substance of the Inspector General's condemnatory findings but attempts to distance itself from them, noting that the Coast Guard is technically not part of the Department of Defense. Def. Opp. 15, 39. But the Coast Guard admits it adopted its Mandate as a "consequen[ce]" of the DoD Mandate and of the Coast Guard's "joint policy" with the Army regarding immunization. Coast Guard's Ex. 1, ¶3, CG Appx 63. Further, the Coast Guard here relies heavily on regulations, studies, statistics, and other purported evidence from DoD witnesses, regarding DoD service members, for use by the DoD. *See*, *e.g.*, Coast Guard's Exs. 1-2, CG Appx 1-60; Def. Opp. 4-5. The Coast Guard can't have it both ways.

the Fifth Circuit held that class certification was inappropriate because the record showed no evidence of a "uniform intention" to engage in illegal debt collection practices against class members. 946 F.3d 762, 767 (5th Cir. 2020). This holding actually supports *Plaintiffs* in this case, because the Coast Guard's perfect record of denying religious accommodations (except for those already slated for separation or retirement) while granting secular ones is precisely what was lacking in the *Flecha* case: powerful, direct evidence of a "uniform intention" on the part of the Coast Guard to discriminate against religious objectors. As this Court stated in the Navy case: "Exactly **zero requests have been granted.** . . . [I]t is hard to imagine a more **consistent display of discrimination**." *Navy SEALS 1-26*, 2022 WL 1025144 at *5 (emphasis added). Like in *Navy SEALS 1-26*, there is no shortage of uniformity in the instant case: the Coast Guard is currently actively and unapologetically separating all service members who have been denied religious accommodations.[6]

The Coast Guard misquotes the Fifth Circuit in *Tagore v. United States*, 735 F.3d 324, 330-31 (5th Cir. 2013), along with the Supreme Court in *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430 (2006), to argue that only "*in court*" must it make a fact-intensive, "to the person" inquiry into each application for a religious accommodation. Def. Opp. 11. Those cases make clear that RFRA requires such a "to the person" inquiry by the *government*, including the Coast Guard, in all of its applications of RFRA, which is an essential element of the Plaintiffs' claims. *See O Centro*, 546 U.S. at 430

---

[6] Through this action, Plaintiffs have secured the Coast Guard's agreement to afford *temporary* relief to certain service members facing imminent discharge dates and imminent dates of transfer to the Inactive Status List (ISL)—more than 125 service members in all—pending resolution of the present motions for class-wide relief or until December 1, 2022. *See* ECF No. 25. Plaintiffs understand that other service members whom Plaintiffs have not specifically brought to the Coast Guard's attention (including service members whose identities are unknown to Plaintiffs) have been and are continuously being separated or transferred to the ISL.

("RFRA requires **the government** to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'") (emphasis added); *see also Tagore*, 735 F.3d at 330-31("A 'categorical approach' is insufficient."); *Tucker v. Collier*, 906 F.3d 295, 301-02 (5th Cir. 2018); *Davis v. Davis*, 826 F.3d 258, 272 (5th Cir. 2016). Indeed, the Supreme Court has recognized that RFRA's "to-the-person" analysis applies even *outside* of court. *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2377, 2384 (2020) (holding the federal government properly applied RFRA to create religious organization exemption from the HHS contraceptive mandate; "If the Departments did not look at RFRA's requirements . . . when formulating their solution, they would certainly be susceptible to claims that the rules were arbitrary and capricious."). Again, these cases each support Plaintiffs' claim that it was illegal for the Coast Guard to uniformly deprive Class members of an individualized assessment of their religious accommodation requests. They in no way indicate RFRA class relief is inappropriate.[7]

The Coast Guard also mistakenly suggests that Plaintiffs must and cannot now establish the "sincerity" of all Class members' beliefs, Def. Opp. 12. This is wrong for several reasons. First, the Coast Guard admits that it "has not contested the sincerity of service members' beliefs at this stage." *Id.* In other words, the Coast Guard has conceded sincerity. Second, the Coast Guard ignores the fact that even if individualized Class membership assessments were necessary at a later time to determine who had sincerely held religious beliefs, the Class is properly defined. *See*, *e.g.*, *Vita Nuova, Inc.*, 2020 WL 8271942, at *4 ("defining the class based on the religious belief of the class members does not render the class unable to be ascertained"); *Bear*

---

[7] The Coast Guard misleadingly points to the Supreme Court's decision in *Ramirez v. Collier*, 142 S. Ct. 1264, 1275-76, 1278-81 (2022), for support. But it merely cites to that case's analysis of *administrative exhaustion* under the Prison Litigation Reform Act of 1995, which plainly has no application in this RFRA case.

*Creek Bible Church v. EEOC*, 571 F. Supp. 3d 571, 601 (N.D. Tex. 2021) ("The Fifth Circuit upholds class certification even when a definition necessitates individualized membership assessments that might *follow* litigation, so long as the class definition is sufficiently clear.") (citing *Mullen v. Treasure Chest Casino*, 186 F.3d 620, 624-25 (5th Cir. 1999)). *See also* Pl. Memo 7-8.

### 2.    Plaintiffs' claims are typical.

Plaintiffs' claims satisfy typicality, as they satisfy commonality. *See* Section II.A.1 above. The Coast Guard contends, mistakenly, that the claims are not typical because Plaintiffs failed to exhaust. As discussed in Section III.A, Plaintiffs did not fail to exhaust any remedies.

The Coast Guard again points to RFRA's "to the person" requirement, but again that requirement only supports Plaintiffs' claim that the Coast Guard systemically failed Class members. *See* Section II.A.1. A very strong similarity of legal theories exists amongst Plaintiffs and Class members: they are all victims of the same discriminatory process by which the Coast Guard systemically fails to provide the requisite "to the person" assessment. *Navy SEALs 1-26*, 2022 WL 1025144, at *6-7. Accordingly, Plaintiffs' claims are typical. *Id.*

### A.    Plaintiffs and the Class satisfy the requirements of Rule 23(b)(2).

Judge O'Connor could not have been clearer: "By uniformly denying potential class members' religious accommodation requests, the Navy has 'acted . . . on grounds that apply generally to the class.' And because potential class members may receive relief from a single injunction, the claim is appropriate for class-wide resolution under Rule 23(b)(2)." *Navy SEALs 1-26*, 2022 WL 1025144, at *9. The Coast Guard wants this Court to hold that Judge O'Connor's decision in the Navy case on essentially the same facts presented here was erroneous and lacked any "meaningful analysis" even though, *in the words of the Coast Guard*, Judge O'Connor

identified "a common failure by the defendant" and "the potential benefit to all class members" from an injunction. Def. Opp. 19. This argument is nonsensical.

As Judge O'Connor explained, a class satisfies Rule 23(b)(2) "when a single injunction or declaratory judgment would provide relief to each member of the class." *Navy SEALs 1-26*, 2022 WL 1025144, at *3 (quoting *Dukes*, *564 U.S. at 360*). An injunction against the Coast Guard likewise would provide identical relief to everyone in the Class. The Coast Guard's protests against this conclusion rely on its continued equivocation between the *Court*'s responsibilities in this RFRA case and RFRA's requirement that *the government* conduct—in the first instance—individualized, fact-specific assessments of the facts and circumstances of each Class member's request for religious accommodation. *See* Def. Opp. 17-18; *see also supra* Section II.A.1 (commonality). To grant the Class relief in this case, the Court need not evaluate the circumstances of each religious accommodation request from 1,200+ Class members; it need only find that the Coast Guard failed to do so. By seeking an injunction that will provide identical relief to every Class member, Plaintiffs have satisfied Rule 23(b)(2).

## III.    CLASS-WIDE PRELIMINARY INJUNCTION

### A.    Plaintiffs' claims are ripe and Plaintiffs did not fail to exhaust remedies.

**1.   Ripeness:** The Coast Guard argues that Plaintiffs' claims lack "constitutional" and "prudential" ripeness because their "injuries . . . are merely theoretical and based on nothing more than speculation." Def. Opp. 20-23. This is incorrect. By denying Plaintiffs' requests for religious accommodation, the Coast Guard is *already* putting them to the choice of violating their sincerely held religious beliefs by succumbing to COVID-19 vaccination, or else suffering permanent discharge, loss of pay, and loss of opportunity to serve their country, to name just some consequences. There is nothing abstract or unfit for review here.

The Coast Guard's "constitutional ripeness" argument depends on the Coast Guard's assertion that Plaintiffs' "purported injury" is ultimate discharge from the military. Def. Opp. 20. But the Supreme Court has held that a "policy" that "puts a [plaintiff] to th[e] choice" of "engag[ing] in conduct that seriously violates his religious beliefs" or otherwise "fac[ing] serious disciplinary action" "easily satisfies" a plaintiff's obligation to show a "substantial burden" on religious exercise. *Holt v. Hobbs*, 574 U.S. 352, 361 (2015) (interpreting RLUIPA, the sister statute to RFRA). That's because such a burden exists the moment government imposes "substantial pressure" on one "to modify [her] behavior and to violate [her] religious beliefs." *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 718 (1981).

The Coast Guard argues that even the "*commencement* of discharge proceedings" "is not sufficient injury" to make Plaintiffs' claims ripe, but they rely on a case unrelated to religious exercise. Def. Opp. 21 (quoting *Diraffael v. Cal. Mil. Dep't*, No. 10-cv-7240, 2011 WL 13274364, at *3 (C.D. Cal. Mar. 21, 2011)). Such a holding here would do violence to Article III's case-or-controversy requirement, in which "an actual . . . enforcement action is *not* a prerequisite to challenging the law," so long as there is even a credible "threat" of "an Article III injury." *Susan B. Anthony List v. Driehaus*, 573 U.S.149, 158 (2014) (emphasis added).

The Coast Guard's "prudential ripeness" arguments fare no better for similar reasons. Prudential ripeness turns on the "fitness" of the case for judicial review and the "hardship to the parties of withholding consideration." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 286 (5th Cir. 2012). The Coast Guard here re-insists that Plaintiffs' harms simply "*may*" occur "at some point in the future," Def. Br. at 23 (emphasis in original), utterly ignoring the *ongoing* "pressure" that the Coast Guard is *already* imposing "upon [Plaintiffs] to forego [their religious] practice." *Sherbert v.Verner*, 374 U.S. 398, 404 (1963).

Accordingly, this controversy presents issues that are "purely legal" and "will not be clarified by further factual development." *See Bear Creek Bible Church*, 571 F. Supp. 3d at 598. As the Coast Guard admits, Plaintiffs' requests for religious accommodation have already been denied by "the final decision authority." Def. Opp. 36. The Coast Guard also admits it has *already* concluded that Plaintiffs allegedly present an "unavoidable risk" to "health and readiness" that the military "cannot accept." *Id.* at 44. Indeed, Plaintiff Marcenelle has already received a notice of intent to discharge. Marcenelle 2nd Suppl. Decl., Suppl. Appx 306; ECF No. 25. And "[l]itigants are entitled to relief where they 'remain under a constant threat that government officials will use their power' to enforce the law against them." *Bear Creek Bible Church*, 571 F. Supp. 3d at 598 (quoting *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021)); *see also* ALCOAST 270/22(2)(a) (noting that "all non-compliant service members *will be processed for separation*") (emphasis added). Appx 131.

Moreover, "denying prompt judicial review would impose a substantial hardship on Plaintiffs, forcing them to choose between violating [Defendants' mandate] on the one hand, and violating their religious convictions on the other." *Bear Creek Bible Church*, 571 F. Supp. 3d at 598 (citing *Susan B. Anthony List*, 573 U.S. at 167-68). Thus, Plaintiffs' claims are ripe.[8]

   **2.  Exhaustion:** The Coast Guard's exhaustion arguments likewise fail, because exhaustion would be futile; it is not required by RFRA and the First Amendment anyway; and, as

---

[8] The Coast Guard also wrongly argues that Plaintiffs seek an injunction from any adverse actions in alleged conflict with the Supreme Court's grant of a partial stay in *Austin v. Navy SEALs 1-26*, 142 S. Ct. 1301 (2022). Defs.' Br. 23. To the contrary, Plaintiffs expressly "consent to a partial stay" of any injunction in accordance with the Supreme Court's order in *Navy SEALs 1-26*. ECF Nos. 4 at 3; ECF No. 4-1 at ¶5. And the Supreme Court's denial without comment of a request for emergency relief in *Dunn v. Austin*, 142 S. Ct. 1707 (2022) has no legal significance, despite the Coast Guard's reliance on it. *Cf. Ramos v. Louisiana*, 140 S. Ct. 1390, 1404 n.56 (2020) (denial of certiorari has no legal significance bearing on the merits of a claim).

Plaintiffs have already explained, the factors under *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971) are easily satisfied here.

"[E]xhaustion is unnecessary if, *inter alia*, the administrative remedy is futile and plaintiffs raise substantial constitutional claims." *Navy SEALs 1-26 v. Biden*, 27 F.4th 336, 347 (5th Cir. 2022); *see also Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994). The Coast Guard asserts that Plaintiffs have not pursued "all available administrative procedures," including review by "the Board for Correction of Military Records" ("BCMR"), but the facts show otherwise. Def. Opp. 6, 25. Plaintiff Stone *did* pursue review by the BCMR, but was *specifically informed by his Captain via email that it would be futile*: "I don't foresee your BCMR being successful . . . . Because your potential separation will be based on you not being worldwide deployable, a BCMR will not address that issue." Appx 129; *see also* Stone Decl. at ¶27, Appx 25, and Ex. 14, Appx 128 (Stone informed that "there is no further mechanism for administrative appeal").

Indeed, the Coast Guard does not dispute that it has denied virtually all requests for religious accommodations, and that only several have been "granted" for those already slated for separation. *See, e.g.*, Requena Decl. and Exhibits, Appx 285-289. This "suggests that the [Coast Guard] has effectively stacked the deck against even those exemptions supported by Plaintiffs' immediate commanding officers and military chaplains," which "is sufficiently probative of futility." *Navy SEALs 1-26*, 27 F.4th at 347; *see also* Stone Decl. at ¶15, Appx 18, Ex. 4 at Appx 40 (noting Stone's July 2022 evaluation recommending him for promotion); *see also* Jackson Decl. at ¶28, Appx 167, Ex. 2 at Appx 174; Marcenelle Decl. at ¶34, Appx at 239, Ex. 11 at Appx 283. "These class members need not wait for the [Coast Guard] to engage in even more empty formalities." *Navy SEALs 1-26*, 2022 WL 1025144, at *9.

Moreover, RFRA and the First Amendment do not require administrative exhaustion in

11

the first place. Courts have "decline[d] . . . to read an exhaustion requirement into RFRA . . . ."

*Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 876 F.3d 829, 838 (9th Cir. 2012)

(internal citations omitted); *see also Singh v. Carter*, 168 F. Supp. 3d 216, 225-226 (D.D.C.

2016) (same in the case of a service member's RFRA and Free Exercise challenges to a military

order); *Adair v. England*, 183 F. Supp. 3d 31, 55 (D.D.C. 2002) (same; Free Exercise).

As to the *Mindes* factors, the Fifth Circuit has held that "it is likely that" the *Mindes* test

does not apply in a RFRA case, and Plaintiffs have explained that the *Mindes* factors cut in their

favor anyway. Pl. Memo 17, n.11. The Coast Guard says "the Supreme Court necessarily

rejected the Fifth Circuit's reasoning" by issuing a partial stay of that ruling, but this Court has

already correctly rejected that argument. *See Navy SEALs 1-26*, 2022 WL 1025144, at *10-11

(finding justiciability under *Mindes* even after Supreme Court's partial stay); *accord Doster*,

2022 WL 2974733; *Col. Fin. Mgmt. Officer*, 2022 WL 3643512, at *8 n.7.

The Coast Guard further argues that "[f]orcing [it] *to adjust to* the risks of including

unvaccinated [service members] in its ranks is a substantial interference," Def. Opp. 26

(emphasis added), but all three Plaintiffs and many Class members *are currently still serving*

under "needs of the service" waivers, more than a year after the Mandates were issued. The

Coast Guard also argues that forcing it to "deploy" or "assign" service members without regard

to their vaccination status would improperly interfere with a "Plaintiff's chain of command."

Def. Opp. 27. But this argument again overlooks that Plaintiffs "consent to a partial stay"

consistent with the Supreme Court's order in *Austin*. ECF No. 4 at 3. Thus, Plaintiffs' claims

satisfy the *Mindes* factors, and this case is justiciable.

12

**B.      Plaintiffs are likely to succeed on the merits of their RFRA and First Amendment claims: the Coast Guard lacks a compelling interest and fails narrow tailoring.**

    **1.   <u>Compelling Interest</u>:** The Coast Guard asserts that "'logic alone' dictates" that its alleged generalized compelling interest "distill[s]" to an application of the Mandates to each individual. Def. Opp. 29. But that is just another way of relying on the kind of "general interest" that is "insufficient under RFRA." *Navy SEALs 1-26*, 27 F.4th at 351.

    A government "restriction is not compelling . . . when it leaves appreciable damage to [its] supposedly vital interest unprohibited." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 113 U.S. 520, 547 (1993) (internal quotations omitted). The Coast Guard's compelling interest narrative ignores the exceptions it has actually granted for secular reasons, including (temporarily) to these Plaintiffs themselves for the "needs of the service," which undermine its claims that it must prevent anyone from "serving without being vaccinated against COVID-19." Def. Opp. 44. "Underinclusiveness … is often regarded as a telltale sign that the government's interest . . . is not in fact 'compelling.'" *Navy SEALs 1-26*, 27 F.4th at 351-52 (cleaned up).

    The Coast Guard says this Court must defer to the military's scientific judgment, Def. Opp. 29, but "RFRA 'demands much more' than deferring to 'officials' mere say-so that they could not accommodate a plaintiff's religious accommodation request.'" *Navy SEALs 1-26*, 27 F.4th at 351 (quoting *Holt*, 574 U.S. at 369). It also claims Congress intended military deference would still apply under RFRA, Def. Opp. 28, but Congress made clear that military policies would still be subject to full-fledged strict scrutiny under RFRA. *See Singh v. McHugh*, 185 F. Supp.3d 201, 218-19 (D.D.C. 2016).

    The Coast Guard also insists that it *did* conduct individualized RFRA analyses of Plaintiffs' requests, Def. Opp. 29, even though it earlier said it was not "relevant" if "class

13

members were all treated similarly in the Coast Guard's internal administrative process," so long as it can *post hoc* justify these denials "*in court*." Def. Opp. 11, 12 (emphasis in original). But the Coast Guard's *post hoc* justifications simply describe Plaintiffs' *former* job duties and then asserts that their accommodation denials further "*military readiness*," Def. Opp. 30 (emphasis added)—exactly the kind of general interest that fails strict scrutiny. *See supra.*

The Coast Guard further cites to alleged vaccine effectiveness "between July and November 2021," and "December 2021," Def. 31, but it does not rebut Plaintiffs' evidence showing the vaccine's documented reduced effectiveness against the more recently dominant Omicron variant. Pl. Memo 22, n.17.[9] And the Coast Guard never grapples with the fact that the CDC's most recent guidance states that the primary series of COVID-19 vaccination alone, which is all the Mandates require, "provides *minimal* protection against infection and transmission." Pl. Memo 18, n.12 (emphasis added).

Moreover, the government "does not have a compelling interest in each marginal percentage point by which its goals are advanced." *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 803 n.9 (2011). Instead, "the curtailment of free [exercise] must be actually necessary to the solution." *Id.* at 799. Here the Coast Guard has not come close to making that showing, Pl. Memo 18, 22, especially given that Plaintiffs have been allowed to continue their critical service temporarily for more than a year. *See Doster v. Kendall*, 48 F.4th 608, 616 (6th Cir. 2022) (temporary exemptions for class members "suggests that [Defendants'] concerns about these harms are not as urgent as [their] briefing now says"); *see also* CG Appx at 101 (noting Plaintiff Jackson's "current command has requested a delay in any discharge proceedings of twenty-four months for operational reasons").

---

[9] "[S]ubvariants of omicron" remain the "dominant variant[s] nationwide." https://www.nebraskamed.com/COVID/what-covid-19-variants-are-going-around.

The Coast Guard also misleads in saying that vaccination ensures service members can "respond to domestic emergencies." Def. Opp. 32. It is a matter of public record that putative Class members have been hailed as heroes for their saving work in the aftermath of Hurricane Ian, despite being unvaccinated.[10] And earlier this month, Plaintiff Stone was notified by his command that he has been put on a list of personnel who will likely deploy this December to Miami, Florida, to support an ongoing surge in support of Alien Migrant Interdiction Operations—notwithstanding his vaccination status. Stone 2nd Suppl. Decl., Suppl. Appx 301.

Additionally, the Coast Guard insists that medical, clinical-trial, and administrative exemptions are not comparable to religious exemptions, because they serve generalized interests in "ensuring readiness" and "health." Def. Opp. 33. But the Coast Guard has been clear that the "asserted government interest that justifies the [Mandates]," *Tandon*, 141 S. Ct. at 1296, is preventing the effects of COVID-19, Def. Opp. 31. Hence its bar on service members "serving without being vaccinated against COVID-19." *Id.* at 44. But "allowing a [service member] to remain unvaccinated undermines" those goals "equally whether that [service member] happens to remain unvaccinated for religious reasons or medical ones."[11] *Dr. A v. Hochul*, 142 S. Ct. 552, 556 (2021) (Gorsuch, J., dissenting from denial of emergency injunction pending appeal); *see also Fraternal Ord. of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359, 366 (3d Cir. 1999) (Alito, J.) ("medical exception" to no-beard requirement "raises concern because it indicates . . . a value judgment that secular (i.e., medical) motivations for wearing a beard are important enough to overcome its general interest in uniformity but that religious motivations are

---

[10] https://tinyurl.com/y9nrwpc9; https://tinyurl.com/yc5sxf7p.

[11] The same is true for clinical-trial exemptions. The Coast Guard claims, without any evidentiary support, they "further the efficacy of the vaccine and vaccine development," Def. Opp. 33, even though the policy itself includes trial for non-vaccine COVID-19 drugs, Pl. Memo 4. Regardless, these exemptions further show the Coast Guard's prioritization of a secular goal (researching COVID-19) over the right to free exercise of religion.

not"). *See also* Navy, Air Force, and Marine Corps orders.

The Coast Guard says medical exemptions render a service member non-worldwide deployable yet admits to *granting* such exemptions anyway, while at the same time it dismisses Plaintiffs and Class members for allegedly not being "worldwide deployable." *See, e.g.*, Stone Decl. at ¶27, Appx 24. All told, the Coast Guard has not shown a compelling interest in categorically denying religious accommodations to Plaintiffs and the Class.[12]

     **2.** <u>**Least Restrictive Means:**</u> While the Coast Guard is not required to adopt less-than-"equally"-effective means, Def. Opp. 36, there is still no cognizable compelling interest in achieving *marginal* gains at the expense of free religious exercise (*see supra*), which is all it seeks here (at most). Moreover, the Coast Guard "itself has demonstrated that it has at its disposal an approach that is less restrictive," since it "has already established an accommodation for" medical needs, clinical trials, administrative needs—and for *these Plaintiffs themselves* for operational needs. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 730-31 (2014).

The Coast Guard further asserts that Plaintiff Stone cannot conduct remote work in his intelligence position because he "work[s] with classified systems." CG Appx at 98. But the majority of Stone's work is with unclassified information, and thus members of his unit *regularly telework* via a specially equipped Virtual Desktop Infrastructure—including both his direct supervisor and branch chief *just this month*. Stone 2nd Suppl. Decl., Suppl. Appx 301. *See also* Jackson and Marcenelle 2nd Suppl. Decl., Suppl. Appx 303-306 (further demonstrating their unvaccinated status is and has been easily accommodated).

---

[12] The Coast Guard notes that Novavax claims the Novavax vaccine was not developed or produced using aborted fetal cells. Def. Opp. 28, n.10. But based on the evidence, Plaintiffs reasonably believe that Novavax was indeed tested on aborted fetal cell lines as part of its development. *See, e.g.*, Stone Decl. at ¶21, Appx at 20. It is the Plaintiffs and Class members, not the Coast Guard or the courts reviewing a RFRA claim, who determine the basis of their own religious objections. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 724 (2014).

As to the Coast Guard's assertion that Plaintiffs' natural immunity is "unverified," it ignores each Plaintiff's undisputed evidence of his own natural immunity, as attested to in Plaintiffs' declarations and exhibits thereto.[13] And the Coast Guard completely overlooks Plaintiffs' evidence from The New England Journal of Medicine finding that natural immunity is stronger than vaccine immunity. Pl. Memo 19, n.13. Regardless, the Coast Guard's admission that natural immunity *may* be "more effective or as effective as the vaccine" entitles these claimants to relief. *See Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1882 (2021) ("speculation" about possible harms "is insufficient to satisfy strict scrutiny").[14] In short, the Coast Guard cannot satisfy the least restrictive means test, either.

**3.   Class-wide RFRA Claims:** The Coast Guard also wrongly invokes the presumption of public officers' good faith in arguing there is no evidence of "a clear intent to unlawfully discriminate against religious service members." Def. Opp. 38. The Coast Guard's refusal to grant *any* religious exemptions except for those already slated for separation or retirement "is itself at this stage significant proof of discrimination." *Doster*, 48 F.4th at 614; *see also* Requena Decl. Ex. 3, Appx 299 (memo purporting to grant Ms. Requena a religious exemption "***because [she] separated from activity duty***" (emphasis added)).

The Coast Guard also asserts that Plaintiff Stone "misinterpret[ed]" a statement from his commanding officer on the USCGC JAMES, based on the declaration of Commander Thomas who wasn't the one who made the statement. Def. Opp. 39; CG Appx at 97. But it does not and

---

[13] *See*, *e.g.*, Stone Decl., Appx 19, Ex. 5 at Appx 41; Jackson Decl., Appx 165-66; Marcenelle Decl., Appx 234-35, 240. Almost all of the Coast Guard's own evidence is in the form of declarations. All of the Coast Guard's exhibits are at least in part **not** based on personal knowledge according to its declarants' own attestations. *See*, *e.g.*, Def. Exhibits 1-8 and 10.

[14] The CDC acknowledges that "[a]bout 95% of Americans ages 16 and older have coronavirus antibodies." https://www.webmd.com/lung/news/20220330/cdc-most-americans-have-covid-antibodies#:~:text=The%20seroprevalence%20%2D%2D%20or%20evidence,health%20officials%20have%20said%20BA.

cannot dispute what Stone's commander said: "I don't want to discuss your religious beliefs because frankly, they don't matter to me." Stone Decl. ¶23, Appx 21.[15] In today's world, to say one's "religious beliefs . . . don't matter" is plainly to "disparage [] religion" and "cast doubt on the fairness and impartiality of" the Coast Guard's process—as only further confirmed by "the difference in treatment between [Stone's] case and the cases of other [service members] who objected to" the vaccine for different reasons and obtained an exemption. *Masterpiece Cakeshop v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1730 (2018).

Finally, it is true enough that "[h]ow much risk" the government must accommodate for a religious liberty claim is a "difficult question." Def. Opp. 13 (citing *Ramirez*, 142 S. Ct. at 1287-88 (Kavanaugh, J., concurring)). That's why courts turn to *objective* factors, including whether defendants or others have allowed accommodations "without apparent problems." *Ramirez*, 142 S. Ct. at 1288 (Kavanaugh, J., concurring). Here, there have been no apparent problems with the religious exemptions now being allowed in other branches (see Section III.D below), or with the numerous non-religious accommodations the Coast Guard has been allowing for more than a year. Accordingly, Plaintiffs and the Class are likely to prevail on the merits.[16]

### C.     Irreparable injury will result absent injunctive relief.

The Coast Guard cannot seriously deny that if Plaintiffs are likely to succeed on the merits, they have established irreparable harm. Def. Opp. 36-37. When government "forces [one] to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand," there is an irreparable substantial burden on one's religious exercise. *Sherbert*, 374 U.S. at 404.

---

[15] *See also* Stone 2nd Suppl. Decl., Suppl. Appx 301 (noting that his commander *also* said he *would be willing to consider medical exemptions*).

[16] "[F]or the same reasons," Plaintiffs are likely to prevail on their Free Exercise claim since the Coast Guard's policy is not neutral or generally applicable. *Navy SEALs 1-26*, 2022 WL 1025144, at *12.

"The crisis of conscience imposed by the mandate is itself an irreparable harm." *Navy SEALs 1-26*, 2022 WL 1025144, at *5 (quoting original preliminary injunction entered in favor of named plaintiffs). The irreparable harm is not a "speculative" "possibility" or a "circular invocation" of Plaintiffs' merits arguments, as the Coast Guard claims. Def. Opp. 42-43. The harm is real, concrete, non-speculative, irreparable, and necessarily tied to the merits of the case. *Sherbert*, 374 U.S. at 404; *Navy SEALs 1-26*, 2022 WL 1025144, at *5. The Coast Guard's failure to acknowledge this irreparable harm is yet another example of the Coast Guard's callous disregard (lack of "fair empathy," *Navy Seal 1 v. Biden*, 574 F.Supp.3d 1124, 1142 (M.D. Fla. 2021)) for the immense pressure imposed on Plaintiffs and the Class to violate their religious beliefs for the sake of their livelihoods and often those of their families, who rely on them.

> ### D.     The balance of hardships and public interest weigh in the Class's favor.

The Coast Guard asserts that allowing Plaintiffs and the Class to continue serving would endanger readiness and public safety. Def. Opp. 44. To the contrary, their service is essential to readiness and public safety, particularly given the military's present recruitment and retention crisis (which the Coast Guard ignores here). One recent prominent example: putative Class members served key roles in saving lives in the aftermath of Hurricane Ian—and the Commander in Chief called one of those putative Class members personally and thanked him. *See* ECF No. 37 at 2 n.2. Further, as noted, Plaintiff Jackson's current command requested a 24-month delay of his discharge for "operational reasons" (though the Coast Guard has to date not approved that request). CG Appx 101. And the Coast Guard offers no evidence the Navy-wide injunction, in place for more than six months and applicable to approximately 4,000 service members, has compromised readiness or safety whatsoever—that it has led to increased deaths,

hospitalizations, or even "cases."[17] The at-most-minimal risk of letting the 1,200 or so Class members continue serving in the Coast Guard supports, rather than impedes, its missions.

The Coast Guard also mistakenly claims allowing service members to defy "lawful orders" disserves the public interest. Def. Opp. 45. First, because the Mandates do not accommodate free exercise of religion, they are not "lawful" orders,[18] as discussed at length. But "even if, in some cases, a soldier's failure to follow… standards might signal a rebellious streak or reflect a lack of impulse control or discipline," the Coast Guard "fails to grapple with the fact that any deviation from the rules on plaintiff[s'] part flows from a very different source"—*i.e.*, "faithful[] adhere[nce] to the strict dictates of [their] religion." *Singh*, 185 F. Supp.3d at 227. Legitimate consideration of religious accommodation requests is thus within the deepest traditions of our country and the fundamental freedom the parties have sworn to protect.

## IV.    CONCLUSION

As the Coast Guard's purge of religious service members continues, the need for Class-wide relief grows more compelling and urgent. For all of the reasons set forth above and in Plaintiffs' Memorandum in Support, the Court should certify the Class, appoint Plaintiffs' counsel as Class counsel, and enter a preliminary injunction that enjoins Defendants from enforcing the Mandates against Plaintiffs or any member of the Class and from taking any adverse action against any member of the Class on the basis of this lawsuit or of any member's request for religious accommodation related to the Mandates.

---

[17] Likewise, the Coast Guard provides no evidence that the Air Force-wide injunction (in place for over two and a half months, applicable to approximately 8,000 service members) or the Marine Corps-wide injunction (in place for nearly two months, applicable to approximately 3,700 service members) has compromised readiness or safety.

[18] The COVID-19 vaccine Mandate is not the first vaccine mandate Defendants have unlawfully imposed. *See*, *e.g.*, *Doe v. Rumsfeld*, 297 F. Supp.2d 119 (D.D.C. 2003) (granting military-wide preliminary injunction against unlawful anthrax-vaccine mandate); *Doe v. Rumsfeld*, 341 F. Supp.2d 1 (D.D.C. 2004) (granting permanent injunction against same). May it be the last.

Dated: October 14, 2022

Respectfully submitted,

*/s/ Michael G. McHale*

Stephen Crampton, *pro hac vice*
THOMAS MORE SOCIETY – Senior Counsel
PO Box 4506
Tupelo, MS 38803
(662)255-9439
scrampton@thomasmoresociety.org

Michael G. McHale, *pro hac vice*
THOMAS MORE SOCIETY – Counsel
10506 Burt Circle, Ste. 110
Omaha, NE 68114
(402)501-8586
mmchale@thomasmoresociety.org

Adam S. Hochschild, *pro hac vice*
Hochschild Law Firm
THOMAS MORE SOCIETY – Special Counsel
PO Box 401
Plainfield, VT 05667
(314)503-0326
adam@hochschildlaw.com

Mary Catherine Hodes, *pro hac vice*
THOMAS MORE SOCIETY – Special Counsel
112 S. Hanley Rd., Second Floor
Clayton, MO 63105
(314)825-5725
mchodes@thomasmoresociety.org

Paul M. Jonna*
LiMandri & Jonna LLP
THOMAS MORE SOCIETY – Special Counsel
P.O. Box 9120
Rancho Santa Fe, CA 92067
(858)759-994
pjonna@limandri.com

* *pro hac vice* application forthcoming

Charles W. Fillmore
State Bar # 00785861
H. Dustin Fillmore III
State Bar # 06996010
THE FILLMORE LAW FIRM, L.L.P.
201 Main Street, Suite 700
Fort Worth, TX 76102
(817)332-2351
chad@fillmorefirm.com
dusty@fillmorefirm.com

Nathan Loyd, *pro hac vice*
THOMAS MORE SOCIETY – Special Counsel
5101 Old Highway 5, Box 442
Lebanon, GA 30146
(559)744-3664
nathaniel.loyd@thomasmoresociety.org

*Counsel for Plaintiffs*

21