# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ISRAEL ALVARADO, *et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| v. ) | |
| ) | Case No.: 1:22-cv-876 (AJT/JFA) |
| LLOYD AUSTIN, III, *et al.*, ) | |
| ) | |
| *Defendants*. ) | |

## ORDER

Plaintiffs have moved for a Preliminary Injunction (the "Motion")[1] [Doc. No. 59] to enjoin Defendants, executive branch officials, from enforcing the military's vaccine directive or taking any adverse action against Plaintiffs, a proposed class of military chaplains, on the basis of any Plaintiff's refusal to vaccinate against COVID-19. After full briefing, on September 28, 2022 the Court held a hearing on the Motion. After the hearing, Plaintiffs Moved for Leave to File Supplemental Evidence [Doc. No. 74], which the Court granted [Doc. No. 77]. That supplemental evidence was further briefed [Doc. Nos. 80, 81]. After full consideration of the briefings and arguments, for the following reasons, the Motion is **DENIED** and the Complaint **DISMISSED** *sua sponte* for lack of subject-matter jurisdiction based on non-justiciability.

---

[1] Plaintiffs' Memorandum in Support of the Motion [Doc. No. 60] shall be referred to as "Mem.," Defendants' Opposition in Response to the Motion [Doc. No. 64] shall be referred to as "Opp.," and Plaintiffs' Reply to the Opposition [Doc. No. 66] shall be referred to as "Reply."

1

# I. BACKGROUND

## A. Parties

Plaintiffs are forty-two[2] active duty and reserve military chaplains seeking to represent a purported class of more than 100 chaplains in opposition to the COVID-19 vaccine directive (the "Directive") issued by Department of Defense ("DoD") Secretary Lloyd Austin, III. In addition to Secretary Austin, Plaintiffs name the Secretary of the Navy, Secretary of the Army, Secretary of the U.S. Department of Health and Human Services ("HHS"), Acting Commissioner of the U.S. Food and Drug Administration ("FDA"), and Director of the Centers for Disease Control and Prevention ("CDC"), all in their official capacities. Plaintiffs allege the Directive and its subsequent implementation and enforcement, along with a CDC definitional change, have triggered statutory and constitutional violations. Consequently, Plaintiffs seek to preliminarily enjoin the Directive and secure other injunctive remedies for the alleged violations.

## B. Impact of COVID-19 on the Armed Forces

Amid a global pandemic that has killed more than a million Americans, the Department of Defense ("DoD") implemented policies that it claims were based on senior military leaders' judgment related to force readiness and aimed at "reducing the risk of infections, hospitalizations, and deaths among service members." Opp. 1-2. More than 400,000 servicemembers have contracted COVID-19 and ninety-six have died. *Id.* at 2. Of those who died, only two were fully vaccinated. *Id.* And while no active duty servicemembers have died from COVID-19 since late last year,[3] Mem. 6, serious illness, outbreaks, and/or long-haul COVID adversely affect military operations, Opp. 2.

---

[2] The Complaint originally named thirty-one Plaintiffs. Compl. ¶¶ 28 - 58. Eleven additional chaplains were later joined as Plaintiffs under Fed. R. Civ. P. 20(a). [Doc. No. 68].

[3] It is worth noting that the last death occurred not long after the Directive was issued.

2

### C. The Directive, Implementation, and Objections

After previewing an upcoming COVID-19 vaccine requirement two weeks prior, on August 24, 2021, the day after the FDA granted final approval of the Pfizer vaccine, Secretary Austin issued the Directive to require full vaccination against COVID-19 for all members of the armed forces.[4] Opp. 3. Following the Directive, the Army, Navy, and Air Force issued implementation guidance and set vaccination deadlines. *Id.* The guidance established exemptions for medical,[5] administrative,[6] and religious purposes. *Id.* at 4. A servicemember's application for a religious exemption is called a Religious Accommodation Request ("RAR").

While exact procedures vary, each service branch has a process for RARs that includes (a) an appeals process; (b) input from another chaplain, medical professional, the requesting service member, and the commanding officer; and (c) review by a senior military leader. *Id.* Some RARs have been approved,[7] *id.* at 4, but Plaintiffs assert that the few approved RARs are limited to servicemembers "already programed for retirement or separation," Mem. 10.

When active duty servicemembers refuse vaccination and have not been granted an exemption, administrative discharge proceedings are initiated.[8] Opp. 5. While procedures vary by department, in the Navy, Marine Corp, and Air Force, such proceedings take a minimum of several

---

[4] DoD presently requires all service members to receive nine vaccines as part of its immunization program, with an additional eight vaccinations possible depending on a servicemember's elevated risk factors. Opp. 3. The immunization program is part of DoD's "Individual Medical Readiness" requirement for service and mobilization efforts. *Id.*

[5] Medical exemptions include, *inter alia*, pregnancy, if a service member has COVID-19, or a medical contraindication for the vaccine. *Id.* at 4. Plaintiffs argue the medical exemption should recognize immunity from a documented prior COVID-19 infection. Mem. 5-6.

[6] Examples of administrative exemptions include those "for members who are missing or who are on terminal leave in anticipation of separation." Opp. 4.

[7] As reflected in the citations in Defendants' brief, as of July 7, 2022, there have been 7,701 RARs for the Active Army, Army National Guard, and Army Reserve, and 19 have been granted. *Id.* For the Navy, as of August 24, 2022, there have been 4,251 RARs for the Active Duty and Reserve members, and 47 have been granted. *Id.* Air Force numbers are not discernible because RARs are considered a subset of administrative exemptions, and only total administrative exemptions are reported. *Id.*

[8] As represented by the parties, such proceedings are presently "largely enjoined" for the Navy, Air Force, and Marine Corps. *Id.* at 5.

months to complete and do not necessarily conclude with termination. *Id.* However, where they do end with termination, an Honorable or General (under honorable conditions) Discharge is issued. *Id.* And even after discharge, additional remedies are available. *Id.* In the Air Force, prior to a possible discharge, servicemembers out of compliance and without an exemption are placed in a no pay/no points status and involuntarily reassigned to the Individual Ready Reserve.[9] *Id.* at 6. In the Army, no guidance regarding a discharge process has yet been issued, though DoD does not provide funding for pay for unvaccinated Army National Guard or Reserve members who do not have an approved or pending exemption request. *Id.* at 5. Additionally, Army National Guard and Reserve troops in this category are not permitted to participate in drills, training, or other duties. *Id.* at 5-6.

With respect to the Directive, Plaintiffs lodge personal objections to the vaccine on a variety of religious and secular grounds, none of which require, given the basis for the Court's ruling discussed below, that the Court assess the military, religious, ethical or scientific basis for those objections.

**D. Religious Accommodation Requests and Alleged "No Accommodation Policy"**

Plaintiffs allege that DoD established a "No Accommodation Policy," or "Categorial RA Ban." Mem. 9. They largely base their allegations on information and belief and their own declarations, along with a two-page memorandum purportedly from DoD's Acting Inspector General and the declaration of a Navy servicemember who is not a plaintiff in this case. *Id.*; Compl. ¶¶ 97-101; Mem. 9-11 & n.19; Mem. Ex. 9; *see generally* Mot. for Leave to File Supp. Evid. [Doc. No. 74]; Reply to Def. Resp. to Mot. for Leave to File Supp. Evid. [Doc. No. 81]. Plaintiffs further argue that because the language in denial letters is similar and because only senior military officials

---

[9] The Individual Ready Reserve ("IRR") allows servicemembers to transfer and complete their remaining service obligation rather than be discharged. *Id.* at 6.

4

serve as the final adjudicatory authority, RAR results are predetermined. Mem. 9-10. Defendants deny the existence of a wholesale RAR rejection policy and assert that RARs are individually considered. Opp. 18.

### E. Alleged Harm to Unvaccinated Chaplains for Refusing to Vaccinate

Plaintiffs allege that because they refuse to comply with the Directive, they have been denied promotion, schooling, training, and assignments. Mem. 10. Further, they allege First Amendment violations and other harms on account of their exclusion from the RAR process,[10] compelled speech, hostile work environment, ostracization/isolation/stigmatization, futility of the RAR process, retaliation, and censorship/self-censorship. *Id.* at 10-11, Ex. 11. Plaintiffs also allege they were "coerce[d] and coopt[ed] [] to be complicit in these constitutional violations" by allegedly receiving scripts to recite "government-endorsed positions" when counseling other servicemembers on religious objections to the vaccine. *Id.* at 11. Plaintiffs also assert a variety of adverse employment or disciplinary consequences that either have or could result from their refusal to comply with the Directive. *Id.* at 12. In total, Plaintiffs assert nine causes of action based on alleged violations of statutory and constitutional provisions.[11]

### F. Treatment by Other Courts

As compared to similar cases where servicemembers (though not chaplains) have sought preliminary injunctive relief related to the Directive, the vast majority of courts as of the Parties'

---

[10] Presumably, Plaintiffs refer to their exclusion from the RAR process to mean their exclusion from being permitted to be the consulting chaplain on *other* servicemembers RARs, not from their exclusion in the process for their own RARs.
[11] Plaintiffs assert the following causes of action:
    Counts I and II: National Defense Authorization Act § 533
    Count III: Religious Freedom Restoration Act
    Count IV: Article VI and Establishment Clause
    Count V: Free Exercise Clause
    Count VI: Free Speech and Right to Petition Clauses
    Count VII: Fifth Amendment Due Process
    Count VIII: Administrative Procedure Act
    Count IX: Separation of Powers

briefing have denied preliminary relief (or dismissed the claims),[12] while significantly fewer have preliminarily enjoined either the vaccine requirement or the military from taking any adverse actions against those plaintiffs. Opp. 8-9. There have been no such cases within the Fourth Circuit. *Id.* And while no case has reached the Supreme Court for full consideration, the Supreme Court, as discussed below, has stayed one district court's issuance of a preliminary injunction that would have precluded the Navy from considering "vaccination status in making deployment, assignment, and other operational decisions." *Austin v. U.S. Navy Seals 1-26*, 142 S. Ct. 1301, 1301 (2022).

## II. LEGAL PRINCIPLES

Plaintiffs seek a preliminary injunction, which the Supreme Court has described as "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Preliminary injunctions are "very far-reaching power[s] to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola*, 245 F.3d 335, 339 (4th Cir. 2001) (quoting *Direx Israel, Ltd. V. Breakthrough Med. Corp.*, 952 F.2d 802, 816 (4th Cir. 1991)). To obtain relief, a plaintiff must show all four of the following factors: "[1] he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."

---

[12] *See, e.g., Miller v. Austin*, No. 22-cv-118, 2022 WL 3584666, at *1-2 (D. Wyo. Aug. 22, 2022) (denying preliminary injunction for lack of standing); *Abbott v. Biden*, No. 6:22-3, 2022 WL 2287547, at *6 (E.D. Tex. June 24, 2022) (denying preliminary injunction because of, *inter alia*, deference afforded to the military); *Knick v. Austin*, No. 22-1267, 2022 WL 2157066, at *1 (D.D.C. June 15, 2022) (denying preliminary injunction and declining "to meddle prematurely in the military's decision-making regarding personnel readiness"); *Creaghan v. Austin*, No. 22-981, 2022 WL 1500544, at *1, 6 (D.D.C. May 12, 2022) (denying preliminary injunction and noting "military and scientific justiciability concerns"); *Navy Seal 1 v. Austin*, No. 22-688, 2022 WL 1294486, at *1, 6 (D.D.C. Apr. 29, 2022) (denying preliminary injunction and expressing concerns that the claims "may be nonjusticiable"); *Short v. Berger*, No. cv-22-444, 2022 WL 1203876, at *16 (D. Ariz. Apr. 22, 2022) (denying preliminary injunction and noting "serious questions as to justiciability"); *Vance v. Wormuth*, No. 3:21-cv-730, 2022 WL 1094665, at *7 (W.D. Ky. Apr. 12, 2022) (granting a motion to dismiss for want of subject-matter jurisdiction); *Roberts v. Roth*, No. 21-1797, 2022 WL 834148, at *1 (D.D.C. Mar. 21, 2022) (dismissing the case for want of subject-matter jurisdiction); *Short v. Berger*, No. cv-22-1151, 2022 WL 1051852, at *6 (C.D. Cal. Mar. 3, 2022) (applying the *Mindes* test and denying preliminary injunction on justiciability grounds); *Robert v. Austin*, No. 21-cv-2228, 2022 WL 103374, at *3 (D. Colo. Jan. 11, 2022) (denying preliminary injunction and dismissing the case for want of subject-matter jurisdiction); *Church v. Biden*, 573 F. Supp. 3d 118, 137-38 (D.D.C. 2021) (finding servicemembers' claims to be non-justiciable).

*Winter*, 555 U.S. at 20. The first two factors are most important. *Maryland Undercoating Co. v. Payne*, 603 F.2d 477, 482 n.12 (4th Cir. 1979); *see also Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co.*, 550 F.2d 189, 195 (4th Cir. 1977) (finding that if irreparable injury is only "possible," then the probability of success can be the decisive inquiry). The party moving for the preliminary injunction carries the burden of establishing each factor by a "clear showing." *Hardnett v. M&T Bank*, 204 F. Supp. 3d 851, 862 (E.D. Va. 2016) (quoting in part *Winter*, 555 U.S. at 22).

Traditionally, the Supreme Court has afforded deference to the military over military decisions, free from judicial interference. *See Gilligan v. Morgan*, 413 U.S. 1, 10 (1973) ("The complex[,] subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional judgments") and *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986) ("[W]hen evaluating whether military needs justify a particular restriction on religiously motivated conduct, courts must give great deference to the professional judgment of military authorities"); *see also Solorio v. United States*, 483 U.S. 435, 448 (1987) ("[W]e have adhered to [the] principle of deference in a variety of contexts where . . . the constitutional rights of servicemen were implicated); *Schlesinger v. Ballard*, 419 U.S. 498, 510 (1975) ("It is the primary business of armies and navies to fight or be ready to fight wars should the occasion arise . . . [and] [t]he responsibility for determining how best our Armed Forces shall attend to that business rests" outside the judiciary) (quoting in part *U.S. ex rel. Toth v. Quarles*, 350 U.S. 11, 17 (1955)).

## III. ANALYSIS

Plaintiffs' likelihood of success on the merits necessarily requires an evaluation into whether the Court can exercise its jurisdiction. Accordingly, the Court must first evaluate the likelihood that Plaintiffs' claims are justiciable. Defendants argue Plaintiffs' claims are non-justiciable because they (1) amount to a review of military assignment and operational decisions, (2) fail to exhaust administrative remedies,[13] and (3) do not satisfy the four-factor test articulated in *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971) (the "*Mindes* test").

### A. Review of Military Assignment and Operational Decisions

Plaintiffs seek injunctive relief to enjoin (1) the Directive's implementation, (2) Defendants' purported retaliation, (3) any punitive or administrative action from being taken against Plaintiffs, and (4) compliance with various statutory and constitutional provisions. Mot. 1. But such injunctive relief clearly raises the specter of a non-justiciable, improper intrusion into military affairs. *See Winter*, 555 U.S. at 24 (reversing the district court's grant of a preliminary injunction because, *inter alia*, the "complex[,] subtle, and professional decisions as to the composition, training, equipping, and control of a military force [] are essentially professional military judgments") (citation and quotations omitted); *see also Gilligan*, 413 U.S. at 10 ("[I]t is difficult to conceive of an area of governmental activity in which the courts have less competence [than] . . . professional military judgments."); *Orloff v. Willoughby*, 345 U.S. 83, 93 (1953) ("[J]udges are not given the task of running the Army."); *Harkness v. Sec'y of the Navy*, 858 F.3d 437, 443 (6th Cir. 2017) ("[C]ourts are generally reluctant to review claims involving military duty assignments

---

[13] Exhaustion is considered the second threshold requirement that must be satisfied as an initial matter before reaching the four-factor *Mindes* test, the first being that there exists an allegation of a constitutional, statutory, or military regulation violation. *Mindes v. Seaman*, 453 F.2d 197, 201 (5th Cir. 1971); *see also Williams v. Wilson*, 762 F.2d 357, 360 (4th Cir. 1985) (noting a plaintiff's failure "to satisfy the second *Mindes* threshold requirement of exhaustion of available intraservice remedies"). Here, the first threshold requirement is satisfied.

8

. . . [due to] lack of expertise, deference to the unique role of the military in our constitutional structure, and the practical difficulties that would arise if every military duty assignment was open to judicial review.") (internal quotations and citations omitted).

Critically, in a recent military vaccine case the Supreme Court has stayed a district court's order "preclud[ing] the Navy from considering respondents' vaccination status in making deployment, assignment, and other operational decisions." *U.S. Navy Seals 1-26*, 142 S. Ct. at 1302. In that case, Justice Kavanaugh's concurrence pointedly noted that "the President of the United States, not any federal judge, is the Commander in Chief of the Armed Forces" and that there was no basis to "employ[] the judicial power in a manner that military commanders believe would impair the military." *Id.* at 1302 (Kavanaugh, J. concurring).

Plaintiffs argue their claims are justiciable by first citing *Winters v. United States*, 89 S. Ct. 57 (1968) (Douglas, J., in chambers), a decision on an application for a stay that noted it was within the province of the judiciary to ensure men and women in the military are treated equally under the law and in ways that "do not turn on the charity of a military commander." *Winters*, 89 S. Ct. at 59-60 (Douglas, J., in chambers). But the ultimate holding in *Winters* is based on facts that are distinguishable from this case. In *Winters*, the Court's rationale was to prevent men and women from being treated differently by different superiors within the military. *Id.* By contrast, Plaintiffs here challenge what they purport to be the practice of the *entire* military (*i.e.*, the alleged No Accommodation Policy). Additionally, *Winters* is distinguishable in that it involves a reservist attempting to *evade* active-duty call-up to Vietnam, *id.* at 57, whereas this case involves servicemembers' attempt to *remain and advance* in the military.

Specifically with respect to the RFRA claim, Plaintiffs also argue those claims are justiciable because the statute permits the assertion of a violation "as a claim or defense in a judicial

9

proceeding and [to] obtain appropriate relief against the government," thereby making such claims justiciable. Mem. 18 (citing 42 U.S.C. § 2000bb-1(c)). But while RFRA claims may be justiciable in certain military contexts, *see Singh v. McHugh*, 185 F. Supp. 3d 201, 218 (D.D.C. 2016) (finding RFRA applies to the military), the *Mindes* test raises the justiciability bar considerably and for the foregoing reasons, weighs heavily against the likelihood of success of Plaintiffs' claims in this specific case.[14]

Ultimately, given the threat that COVID-19 poses to, *inter alia*, military readiness and operations, the Court finds persuasive and analogous the line of cases affording significant leeway to military leaders for these types of military judgments. Accordingly, *Winter v. NRDC* and its progenitors, along with Justice Kavanaugh's recent concurrence in a similar case, counsel that Plaintiffs' claims, with the possible exception of Count III, are non-justiciable military judgments, even before confronting the *Mindes* test. However, notwithstanding the Court's finding that apart from potentially Count III, Plaintiffs have, at a minimum, failed at the outset to clearly show that all their claims are justiciable, the Court will further consider justiciability issues by next applying the second *Mindes* threshold requirement of exhaustion.

**B. Exhaustion of Administrative Remedies**

Separately, to succeed on their claims, Plaintiffs must exhaust their available remedies within the armed forces. *See Parisi v. Davidson*, 405 U.S. 34, 37 (1972) (describing the exhaustion doctrine as allowing "an administrative agency to perform functions within its special competence

---

[14] In specifically addressing 42 U.S.C. § 2000bb-1(b) in a similar case related to the military's COVID-19 vaccine Directive, Justice Kavanaugh specifically foreclosed the possibility that a RFRA claim would survive:
> [E]ven accepting that RFRA applies in this particular military context, RFRA does not justify judicial intrusion into military affairs in this case. That is because the Navy has an extraordinarily compelling interest in maintaining strategic and operational control over the assignment and deployment of all Special Warfare personnel—including control over decisions about military readiness. And no less restrictive means would satisfy that interest in this context.

*U.S. Navy Seals 1-26*, 142 S. Ct. at 1302 (Kavanaugh, J., concurring). Plaintiffs do point to the *minority* of related military vaccine cases that found similar claims justiciable, which the Court finds unpersuasive.

... to moot judicial controversies"); *Williams v. Wilson*, 762 F.2d 357, 359-60 (4th Cir. 1985) (holding that under *Mindes*, courts "should not review internal military affairs" absent "exhaustion of available intraservice corrective measures"). That Plaintiffs allege constitutional and statutory claims against the military do not obviate Plaintiffs' obligation to exhaust the military's intraservice corrective measures prior to filing suit. *See Mindes*, 453 F.2d at 201.

Defendants argue that (1) no Plaintiff has yet faced separation proceedings, and (2) even if they do and receive a final separation order, they can pursue corrections to their military record and/or reinstatement through existing processes. Opp. 16. Plaintiffs argue that such relief is futile because it could be overridden by the Service Secretaries and would not declare Defendants' actions as unlawful and therefore available avenues of relief are imperfect remedies that need not be exhausted. Mem. 21. However, Plaintiffs only assume, but have not demonstrated, futility. Moreover, that Plaintiffs seek relief that may extend outside of the scope of the administrative review process does not vitiate the exhaustion requirement. *See Guerra v. Scruggs*, 942 F. 2d 270, 277 (4th Cir. 1991) ("[T]he inability of the [correction] board to give the plaintiff all the relief he seeks does not automatically excuse the failure to exhaust."). Defendants represent, including through declarations of non-Defendant military leaders, that Plaintiffs' unexhausted administrative remedies are not futile formalities and would be determined on an individualized basis. Opp. 18.

Plaintiffs contend they have exhausted military remedies because they have each submitted an RAR. Reply 9. But it is undisputed that some Plaintiffs are still awaiting an initial decision on their RARs while others await their appeals. The Court rejects the notion that a mere pre-decision submission of an RAR, or even an RAR appeal submission can constitute exhaustion, even if the RAR approval rate is low. And Plaintiffs' position runs contrary to the definition of "exhaustion," which means the "pursuit of options until none remain." Exhaustion, Black's Law Dictionary (11th

ed. 2019). Further, not only are there outstanding intraservice remedies available to all Plaintiffs, but no Plaintiff has actually gone through separation proceedings, a fact which further forecloses a finding of exhaustion. And it is those final separation proceedings that are of particular consequence. Absent a separation proceeding and final decision, the Court cannot find that Plaintiffs have exhausted their intraservice remedies. And while district courts have admittedly reached different conclusions with respect to the exhaustion requirement as applied in similar cases, the Court finds persuasive the reasonings of those courts that have found servicemembers to have failed the exhaustion requirement. *See, e.g., Short*, 2022 WL 1051852, at *4 (finding plaintiff's claims to be non-justiciable, in part because the plaintiff, whose appeal was denied but had not yet undergone separation proceedings, had "not yet exhausted administrative remedies" and that such remedies could not be categorized as futile).

The Court also finds unavailing Plaintiffs' argument that the futility exception to the exhaustion doctrine applies because (1) some RARs have been granted, and (2) no Plaintiff has fully exhausted available remedies, including by pleading their case in an administrative discharge proceeding; thus, it is premature to say that such remedies are futile.[15] *See id.* (rejecting a servicemember's futility argument because the approval rate was "not zero" and the plaintiff's evidence focused on the results of the RAR and RAR appeal process, *not* the results of separation proceedings, which would be the decisive inquiry to determine futility).[16]

---

[15] The Court has reviewed and considered all of the evidence, including the supplemental evidence that Plaintiffs submitted and the related briefing by the Parties. The Court affords little to no weight to the purported Info Memo from the Acting Inspector General. Not only does the short, two-page document fail to identify with sufficient specificity its evaluation methods, criteria, and sample size, but it is both preliminary in nature (*i.e.*, it only discusses "potential noncompliance") and contradicts the more concrete evidence that Defendants have presented. *See, e.g.*, declarations identified *infra* n. 17-21. Nevertheless, the Court is permitted to evaluate the justiciability of a claim based on the evidence before it, even in the early stages of litigation; *see Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) ("[T]he absence of jurisdiction may be raised at any time during the case, and may be based on the court's review of the evidence."); and the Court has considered it. *See also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[I]n some instances, if subject-matter jurisdiction turns on contested facts, the trial judge may be authorized to review the evidence and resolve the dispute on her own.").

[16] Other courts to address the futility argument are split.

12

Plaintiffs also argue that RFRA has no exhaustion requirement. Reply 9. But the cases to which Plaintiffs cite are either (a) those minority of federal courts that have granted preliminary injunctions in the military vaccine context; or (b) distinguishable as Plaintiffs' cited case, *Stuart Circle Parish v. Bd. of Zoning Appeals*, 946 F. Supp. 1225, 1234 (E.D. Va. 1996), was a civilian case about whether a church was required under RFRA to seek an accommodation prior to challenging a binding local law. Overall, Plaintiffs fail to address those military vaccine cases that find servicemembers' claims (including under RFRA) to be non-justiciable, in part on exhaustion grounds. *See, e.g., Church*, 573 F. Supp. 3d at 137-38; *Short*, 2022 WL 1051852, at *3-4. In any event, even assuming *arguendo* that no *statutory* exhaustion requirement is *per se* imposed on the RFRA claim, the *jurisprudential* exhaustion requirement imposed under *Mindes*, as adopted by the Fourth Circuit, still controls. *Cf. Williams*, 762 F.2d at 360 (noting "the second *Mindes* threshold requirement of exhaustion of available intraservice remedies").

Based on the First Amendment, Plaintiffs also argue that under *Cooksey v. Futrell*, 721 F.3d 226 (4th Cir. 2013), exhaustion is not required when the government has "manifested its views" that a policy has been violated. Reply 9. But that is simply not the case here. Indeed, the policy at play in this case is that failure to vaccinate violates the Directive *unless* a servicemember has an approved exemption. Defendants have demonstrated through working files and declarations from

[intentionally left blank]

non-Defendant leaders in the Army,[17] Navy,[18] Marines,[19] Coast Guard,[20] and Air Force[21] that no wholesale denial policy exists and that individualized considerations are given to each RAR and appeal. On the evidence before the Court, it cannot be said that a top-down, universal policy exists that holds all servicemembers who seek RARs are in violation of the Directive on the sole basis that they seek a religious exemption. Indeed, Plaintiffs are specifically *not* in violation while pursuing an exemption. [Doc. No. 82] at 35:10-11. In other words, Plaintiffs are not in violation of the policy during the pendency of their RAR and/or RAR appeal, and if an RAR is granted (either in the first instance or after pursuing the intraservice appeal/remedy process) then there would be no violation for failing to vaccinate. This makes *Cooksey* inapposite.[22]

Ultimately, Plaintiffs' failure to clearly show that they exhausted their intraservice remedies alone precludes the Court from granting a preliminary injunction. However, for the sake of completeness and given the split among those courts that have evaluated the validity of Plaintiffs' futility argument, the Court will apply the *Mindes* test.

---

[17] Declarations from U.S. Army Colonel Kevin J. Mahoney, Chief, G3 Operations Division, Office of the Army Surgeon General and U.S. Army Medical Command, Opp. Ex. 3; [Doc. No. 80] Ex. E; and U.S. Army Assistant Deputy for Military and Personnel Policy Frances Rivera, [Doc. No. 80] Ex. F.

[18] Declarations from U.S. Navy Vice Admiral William Merz, Deputy Chief of Naval Operations, Operations, Plans and Strategy, Opp. Ex. 4; U.S. Navy Admiral Michael M. Gilday, the highest-ranking uniformed officer in the Navy who serves as Chief of Naval Operations, [Doc. No. 80] at 2; *id.* at Ex. A; and U.S. Navy Captain Mery-Angela Sanabria Katson, Branch Head, Enlisted Plans and Policy, *id.* at Ex. D.

[19] Declarations from U.S. Marine Corps Lieutenant General David J. Furness, Deputy Commandant for Plans, Policies, and Operations, Opp. Ex. 6; U.S. Marine Corps General Eric M. Smith, the second-highest ranking uniformed officer in the Marine Corps who serves as the Assistant Commandant, [Doc. No. 80] at 2; *id.* at Ex. B; U.S. Marine Corps Colonel Adam L. Jeppe, Branch Head, Manpower Military Policy Branch of Manpower and Reserve Affairs, *id.* at Ex. G.

[20] Declaration from U.S. Coast Guard Rear Admiral Eric Jones, Deputy for Personnel Readiness, Opp. Ex. 8.

[21] Declarations from U.S. Air Force Major Matthew J. Streett, Staff Chaplain at the Office of the Chief of Chaplains, Opp. Ex. 12; and U.S. Air Force Major General John J. DeGoes, Deputy Surgeon General, [Doc. No. 80] Ex. C.

[22] Moreover, the cases that Plaintiffs cite in footnote 11 of their Reply are distinguishable as they fail to address the exhaustion doctrine as applied in *Mindes* and relate, respectively in the order they are cited, to a facial challenge to land use regulations, exhaustion under North Carolina law as it applies to civilian challenges on constitutional grounds to state statutes, and exhaustion of state administrative remedies in § 1983 actions.

### C. *Mindes* Test

In *Williams v. Wilson*, the Fourth Circuit adopted the test set forth in *Mindes v. Seaman* for determining the reviewability by federal courts of actions by military authorities. *See Williams*, 762 F.2d at 360; *see also Roe v. Dep't of Def.*, 947 F.3d 207, 217-18 (4th Cir. 2010) (noting the *Mindes* test continues to be binding in the Fourth Circuit). The *Mindes* test requires district courts to weigh four considerations "in light of the general policy of nonreview of military matters." *Williams*, 762 F.2d at 359. The four factors are:

> (1) the nature and strength of the plaintiff's challenge to the military determination; (2) the potential injury to the plaintiff if review is refused; (3) the type and degree of anticipated interference with the military function; (4) the extent to which the exercise of military expertise or discretion is involved.

*Id.*

The parties agree that the *Mindes* test applies, but differ in their views concerning its application. First, as to the nature and strength of their challenge, Plaintiffs cite six cases where preliminary injunctions were granted in military vaccine cases to argue the strength of their case.[23] Mem. 7 & n.8. Second, as to injury, Plaintiffs claim a presumption that they will be irreparably harmed, and further state that loss of careers and career-related responsibilities, benefits, outside employment opportunities, and family disruptions constitute a serious injury. Mem. 22. Defendants counter that because Plaintiffs have not yet been formally disciplined or separated, any injuries are "wholly speculative." Opp. 20. Third, Plaintiffs claim neither (a) requiring DoD to follow existing policies nor (b) Plaintiffs' refusal to vaccinate, particularly given that other servicemembers remain unvaccinated due to medical exemptions, interferes with military functions. Mem. 23. Fourth, Plaintiffs contend adjudication of constitutional issues do not require military expertise, and that review of the military's alleged failure to follow its own policies is not

---

[23] Notably, Plaintiffs fail to address the majority of cases that have held otherwise. *See* Opp. 8-9 (collecting cases).

15

discretionary. Mem. 23. Defendants lump the third and fourth *Mindes* factors together, arguing that judicial resolution would improperly "scrutinize military determinations regarding the health and safety of service members and overall force readiness." Opp. 20.

On balance, each of the four *Mindes* factors weigh against judicial intervention. First, upon careful review of each of Plaintiffs' causes of action, the briefing in support thereof and in opposition thereto, and a review similar cases, the Court finds Plaintiffs' claims are not strong and are unlikely to succeed. Second, Plaintiffs' injuries are either not yet realized or redressable. Third, and most importantly, Defendants assert, and the Court places great weight in their expert military judgment, that injunctive relief would significantly interfere with military operations as it pertains to troop health and combat readiness. *See U.S. Navy Seals 1-26*, 142 S. Ct. at 1302 (Kavanaugh, J., concurring) (finding no basis in a military vaccine case "for employing the judicial power in a manner that military commanders believe would impair the military"). Fourth, significant military expertise and discretion was necessary in crafting DoD's response to the pandemic given the unique training, mobilization, and health needs and dynamics associated with America's Armed Forces. *Id.* (citing a Navy Admiral's declaration). Therefore, the *Mindes* factors counsel against justiciability.

For the aforementioned reasons, Plaintiffs' Motion for a Preliminary Injunctions is **DENIED** because Plaintiffs have failed to make a "clear showing" that their claims are likely justiciable; therefore, the claims cannot be likely to succeed. In light of this finding, the Court need not consider the likelihood of success on the merits of each particular cause of action, except to the extent it already has in evaluating the RFRA claim, *supra* n.15, and the strength of Plaintiffs' claims overall under the first *Mindes* factor. *Cf. Flast v. Cohen*, 392 U.S. 83, 96 (1942) ("federal courts will not give advisory opinions") (quoting C. Wright, Federal Courts 34 (1963)).

## IV. *Sua Sponte* Dismissal

More than 200 years ago, Chief Justice John Marshall laid the groundwork for the justiciability doctrine, proclaiming that "[q]uestions . . . which are, by the constitution and laws, submitted to the executive, can never be made in this court." *Marbury v. Madison*, 5 U.S. 137, 170 (1803). One hundred and fifty years later, the Supreme Court applied this principle to hold that "judges are not given the task of running the Army," and that military decision-making "rests upon the Congress and upon the President of the United States and his subordinates." *Orloff*, 345 U.S. at 93-94. Congress has not enacted legislation related to a COVID-19 vaccination requirement in the military.[24] However, the President, through his subordinates, has acted and implemented the Directive.

Accordingly, and for the reasons articulated in Section III, *supra*, not only are Plaintiffs' claims unlikely to succeed for want of justiciability, they are, in fact, non-justiciable. The Court therefore lacks subject-matter jurisdiction and this action must be dismissed. *Cf. Hamilton v. Pallozzi*, 848 F.3d 614, 619 (4th Cir. 2017) ("Justiciability is an issue of subject-matter jurisdiction, and we have an independent obligation to evaluate our ability to hear a case before reaching the merits."). The Court makes this finding after Plaintiffs had ample opportunity to (and did) address justiciability, including (1) having fully briefed this issue in their memorandum accompanying their Motion, *see* Mem. 18-24; (2) having responded to Defendants' arguments in writing, *see* Reply 5-11; and (3) having had the opportunity to argue justiciability at the September 28 hearing, *see* [Doc. No. 82] at 4:7-9 (Plaintiffs' counsel noting "[m]y cocounsel will be handling justiciability, the *Mindes* application"). *See Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 291 (4th Cir. 2021) (stating district courts may "exercise their authority to *sua sponte* dismiss

---

[24] Indeed, despite such legislation being introduced more than a year ago and *before* the Directive was announced, Congress has taken no action to advance the bill. *See* H.R. 3860, 117th Cong. (2021).

inadequate complaints if the procedure employed is fair to the parties" and plaintiffs are "afforded notice and an opportunity to amend the complaint or otherwise respond") (citations and quotations omitted).[25]

In light of the Court's finding of non-justiciability, Federal Rule of Civil Procedure 12(h)(3) demands that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." In this Circuit, "a federal court is obligated to dismiss a case whenever it appears the court lacks subject matter jurisdiction." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[C]ourts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party . . . . [W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety."); *Brickwood Contractors, Inc. v. Datanet Eng'g*, 369 F.3d 385, 390 (4th Cir. 2004) ("[Q]uestions of subject matter jurisdiction may be raised at any point during the proceedings and may (or, more precisely, must) be raised *sua sponte* by the court."); *Thompson v. Gillen*, 491 F. Supp. 24, 26 (E.D. Va. 1980) (remanding a case and noting that though no motion was filed, "courts of limited jurisdiction, such as this Court, have the duty, sua sponte, to determine in each case their jurisdiction to proceed").

The Court having found that Plaintiffs' claims are non-justiciable, and Plaintiffs having received notice of the justiciability issue through a fair procedure and then addressing it on three separate occasions, the Complaint is **DISMISSED** *sua sponte.*

---

[25] The Court recognizes that in some circumstances an evidentiary hearing must be held prior to dismissing a case for want of jurisdiction. *See Lovern*, 190 F.3d at 654. However, here, the Court lacks subject-matter jurisdiction because Plaintiffs' claims are non-justiciable based on the undisputed fact that, *inter alia*, Plaintiffs are servicemembers suing executive branch officials over a military policy based on the military's professional judgment. In other words, unlike in *Lovern*, jurisdictional facts are *not* "intertwined with the merits of the dispute[,]" *Id.* at 654, and dismissal at this stage promotes the efficiency the Fourth Circuit endorsed in *Lovern* when it disposed of the case early in the litigation. *Id.*

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** Plaintiffs' Motion for Preliminary Injunction [Doc. No. 59] be, and the same hereby is, **DENIED**; and it is further

**ORDERED** that the above-captioned matter be, and the same hereby is, **DISMISSED** for lack of subject-matter jurisdiction; and it is further

**ORDERED** that Plaintiffs' Motion for Class Certification [Doc. No. 71] be, and the same hereby is, **DENIED** as moot.

The Clerk is directed to enter judgment in favor of Defendants pursuant to Federal Rule of Civil Procedure 58 and forward copies of this Order to all counsel of record.

Alexandria, Virginia
November 23, 2022

/s/
Anthony J. Trenga
Senior U.S. District Judge