UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **ERIC JACKSON**, **ALARIC STONE**, and **MICHAEL MARCENELLE**, on behalf of themselves and all others similarly situated, | )<br>)<br>)<br>) |
| Plaintiffs, | ) Case No. 4:22-cv-00825-P<br>) |
| v. | )<br>) |
| **ALEJANDRO N. MAYORKAS**, in his official capacity as Secretary of Homeland Security, et al., | )<br>)<br>) |
| Defendants. | )<br>) |

### PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICE OF LEGISLATIVE DEVELOPMENTS

In its Notice of Legislative Developments (ECF No 53), the Coast Guard mischaracterizes the 2023 National Defense Authorization Act (NDAA) as something that will necessarily significantly impact Plaintiffs' claims. ECF No. 53 at 1-2. As Plaintiffs previously discussed (ECF No. 50 at 2 n.1; ECF No. 52 at 2) and as the Coast Guard does not dispute (ECF No. 53 at 2), the NDAA directs rescission of only the *Department of Defense's* COVID-19 vaccine mandate; the NDAA makes no mention of and therefore does not directly affect the *Coast Guard's* separate, independent, later-issued mandate. Contrary to the Coast Guard's assertion (ECF No. 53 at 2), it is not "misleading" to point out that the NDAA vaccine-mandate-rescission provision does not apply to the Coast Guard. It is a plain, undisputable fact.

The Department of Justice vaguely suggests that the Coast Guard "intends" to remain "aligned with the Department of Defense regarding COVID-19 vaccination policy" (ECF No. 53 at 2), but it offers no citation to any such legal requirement, no statement from Coast Guard leadership promising any change to vaccination policy let alone the scope of such a change, and no indication of when such a change may occur. Even assuming the Coast Guard is signaling an

1

intention to voluntarily cease the vaccine mandate at some point and in some manner, class-wide injunctive relief remains necessary. The requested injunction would provide urgently-needed protections beyond what the NDAA provides—even if the NDAA did somehow apply here. For example, as Plaintiffs discussed previously (ECF No. 50 at 2 n.1), nothing in the NDAA restricts the Coast Guard's complete discretion to punish **prior noncompliance** with the vaccine mandate, including by denying reenlistment and promotion which lead to discharge, and which multiple service members have faced and currently face. **The Coast Guard conspicuously offers no response to this key fact.** See also this Court's recent decision in *Schelske v. Austin* (ECF No. 52-1 at 3-4).

The Coast Guard's suggestion that it has "paused separations due to vaccination until January 15, 2023" is disingenuous at best; in a December 8, 2022 email to Plaintiffs' counsel, the Coast Guard made clear (again) that it will **not** agree to provide relief as to **all** putative class members: "As before, it will not act with respect to everyone in the class. If you know of any individual in the class who has a discharge date before January 15, 2023, and who has authorized you to request an extension of that discharge date on their behalf, you may bring that person to our attention." Because of the Coast Guard's refusal to provide relief with respect to everyone in the class, Plaintiffs' counsel have had to bring specific service members to the Coast Guard's attention if Plaintiffs' counsel happen to be aware of their specific situations. On December 15, 2022, Plaintiffs' counsel brought to the Coast Guard's attention yet another putative class member who the Coast Guard was attempting to discharge. On December 16, the Coast Guard agreed to postpone his discharge to January 15. But this putative class member obtained relief only because he connected with Plaintiffs' counsel. Though Plaintiffs' counsel have been able to

obtain temporary relief for a number of service members,[1] it is highly unlikely all 1,200 class members know that they need to contact Plaintiffs' counsel if in need. While the Coast Guard itself has essentially designated Plaintiffs' counsel to represent putative class members in negotiating temporary relief for them ("you may bring that person to our attention"), the Coast Guard insists on addressing requests for relief in piecemeal fashion and only if Plaintiffs' counsel can provide specific names. This is prejudicial to the putative class as a whole. Plaintiffs' counsel do not have the same power and authority to help the class as class counsel appointed by the Court under Rule 23. Plaintiffs again urge the Court to grant their motions for class-wide relief (ECF No. 4) including class certification, appointment of Plaintiffs' counsel as class counsel, and a class-wide injunction.

---

[1] Under the terms of the NDAA, the rescission of the Secretary of Defense's mandate is not required until "30 days after the date of the enactment of this Act." In other words, even assuming the Coast Guard intended to cease separations by the Department of Defense's deadline, Coast Guard leadership still has up to a month to discharge as many members of the putative class as possible under the existing vaccine mandate, consistent with the Coast Guard's repeated and unwavering refusal to suspend separation actions for the entire putative class absent a court order. *See* ECF No. 44 at 2; ECF No. 47 at 2, ECF No. 51 at 2. The Coast Guard has agreed to temporarily suspend separation actions for a relatively few service members, including a group of reservists having an original Inactive Status List date of October 1, 2022, and a handful of service members who have contacted Plaintiffs' counsel on their own. But the group for whom extensions have been secured represent a relatively small faction (approximately 10%) of the entire putative class, with over 1,000 service members facing immediate termination and continued, repeated instances of irreparable harm. *See* ECF Nos. 25, 44, 47, 51. And even those for whom extensions have been secured remain at risk of separation without class-wide relief from this Court, given that the extensions secured by Plaintiffs' counsel run only to January 15, 2023.

Dated: December 27, 2022

Respectfully submitted,

/s/ Adam S. Hochschild

Stephen Crampton, *pro hac vice*
THOMAS MORE SOCIETY – Senior Counsel
PO Box 4506
Tupelo, MS 38803
(662)255-9439
scrampton@thomasmoresociety.org

Michael McHale, *pro hac vice*
THOMAS MORE SOCIETY – Counsel
10506 Burt Circle, Ste. 110
Omaha, NE 68114
(402)501-8586
mmchale@thomasmoresociety.org

Adam S. Hochschild, *pro hac vice*
Hochschild Law Firm
THOMAS MORE SOCIETY – Special Counsel
PO Box 401
Plainfield, VT 05667
(314)503-0326
adam@hochschildlaw.com

Mary Catherine Hodes, *pro hac vice*
THOMAS MORE SOCIETY – Special Counsel
112 S. Hanley Rd., Second Floor
Clayton, MO 63105
(314)825-5725
mchodes@thomasmoresociety.org

Paul M. Jonna, *pro hac vice*
LiMandri & Jonna LLP
THOMAS MORE SOCIETY – Special Counsel
P.O. Box 9120
Rancho Santa Fe, CA 92067
(858)759-994
pjonna@limandri.com

Charles W. Fillmore
State Bar # 00785861
H. Dustin Fillmore III
State Bar # 06996010
THE FILLMORE LAW FIRM, L.L.P.
201 Main Street, Suite 700
Fort Worth, TX 76102
(817)332-2351
chad@fillmorefirm.com
dusty@fillmorefirm.com

Nathan Loyd, *pro hac vice*
THOMAS MORE SOCIETY – Special Counsel
5101 Old Highway 5, Box 442
Lebanon, GA 30146
(559)744-3664
nathaniel.loyd@thomasmoresociety.org

*Counsel for Plaintiffs*