# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| **ERIC JACKSON**, **ALARIC STONE**, and **MICHAEL MARCENELLE**, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 4:22-CV-00825-P |
| **ALEJANDRO N. MAYORKAS**, in his official capacity as Secretary of Homeland Security, **LLOYD J. AUSTIN**, **III**, in his official capacity as Secretary of Defense, **LINDA L. FAGAN**, in her official capacity as Commandant of the Coast Guard, and **BRIAN K. PENOYER**, in his official capacity as Assistant Commandant for Human Resources of the Coast Guard, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

# PLAINTIFFS' MEMORANDUM IN OPPOSITION
# TO DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  BACKGROUND ................................................................................................. 2

III. LEGAL STANDARD........................................................................................ 8

IV.  ARGUMENT ...................................................................................................... 8

    A.   Plaintiffs seek concrete relief that the Coast Guard has not provided. ........................... 8

    B.   Plaintiffs seek relief in accordance with their Complaint, the law, and the rules. ........ 12

    C.   The claims for injunctive relief are justiciable and not subject to *Mindes* exhaustion.  13

    D.   The voluntary-cessation doctrine saves the case from mootness................................. 16

        *i.   The Coast Guard falsely claims its cessation was not voluntary*..…………………17

        *ii.  It is not "absolutely clear" the wrongful conduct could not reasonably be expected to recur*…………………………………………………………..…………………17

        *iii. Even with "some solicitude," the Coast Guard cannot meet its burden*..………….19

        *iv.  The Coast Guard's cases are irrelevant*..………………………………………21

    E.   The dispute is capable of repetition while evading review. .......................................... 23

V.   CONCLUSION.................................................................................................. 24

i

# TABLE OF AUTHORITIES

**Cases**

*Air Force Major v. Austin*,
  No. 22-cv-756 (N.D. Tex.) ..................................................................... 23

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013) ............................................................................... 16

*Alvarado v. Austin*,
  No. 22-cv-876 (E.D. Va.) ....................................................................... 23

*Am. Bar Ass'n v. FTC*,
  636 F.3d 641 (D.C. Cir. 2011) .............................................................. 21

*Amawi v. Paxton*,
  956 F.3d 816 (5th Cir. 2020) ............................................................... 21

*Amerisure Ins. Co. v. Thermacor Process, Inc.*,
  No. 4:20-CV-01089-P, 2021 WL 2695143 (N.D. Tex. Apr. 6, 2021) ..................... 8, 11, 16, 17

*Austin v. Navy SEALs 1-26*,
  142 S. Ct. 1301 (2022) .......................................................................... 14

*Cath. Leadership Coal. of Texas v. Reisman*,
  764 F.3d 409 (5th Cir. 2014) ............................................................... 23

*Chafin v. Chafin*,
  568 U.S. 165 (2013) ............................................................................. 10

*Chancy v. Biden*,
  No. 22-cv-110 (N.D. Fla.) ..................................................................... 23

*Church v. Biden*,
  No. 21-cv-2815 (D.D.C.) ....................................................................... 23

*City of Mesquite v. Aladdin's Castle, Inc.*,
  455 U.S. 283 (1982) ......................................................................... 16, 19

*Clements v. Austin*,
No. 22-cv-2069 (D.S.C.) .................................................................................... 23

*Connell v. Shoemaker*,
555 F.2d 483 (5th Cir. 1977) ................................................................... 8, 10, 11

*Dailey v. Vought Aircraft Co.*,
141 F.3d 224 (5th Cir. 1998) ......................................................................... 8, 10

*DeOtte v. Nevada*,
20 F.4th 1055 (5th Cir. 2021) ............................................................................ 21

*Doster v. Kendall*,
No. 1:22-CV-84, 2022 WL 2974733 (S.D. Ohio July 27, 2022), *aff'd*, 54 F.4th 398 (6th Cir. 2022) .................................................................................................................. 23

*El Paso Elec. Co. v. FERC*,
667 F.2d 462 (5th Cir. 1982) ............................................................................. 14

*Fantasy Ranch Inc. v. City of Arlington*,
459 F.3d 546 (5th Cir. 2006) ............................................................................. 21

*Franciscan All., Inc. v. Becerra*,
47 F.4th 368 (5th Cir. 2022) ........................................................................ 13, 19

*Freedom From Religion Found., Inc. v. Abbott*,
58 F.4th 824 (5th Cir. 2023) ........................................................................ 11, 22

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
528 U.S. 167 (2000) ........................................................................................... 17

*Gilligan v. Morgan*,
413 U.S. 1 (1973) ............................................................................................... 14

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
546 U.S. 418 (2006) ........................................................................................... 18

*Guedes v. ATF*,
920 F.3d 1 (D.C. Cir. 2019) ............................................................................... 21

*Hodges v. Callaway*,
   499 F.2d 417 (5th Cir. 1974) ................................................................................ 14

*J.T. v. District of Columbia*,
   983 F.3d 516 (D.C. Cir. 2020) .............................................................................. 22

*Johnson v. Mississippi*,
   586 F.2d 387 (5th Cir. 1978) ................................................................................ 21

*Klayman v. Obama*,
   759 F. App'x 1 (D.C. Cir. 2019) ........................................................................... 21

*Log Cabin Republicans v. U.S.*,
   685 F.3d 1162 (9th Cir. 2011) .............................................................................. 21

*Mindes v. Seaman*,
   453 F.2d 197 (5th Cir. 1971) ................................................................................ 13

*Navy SEALs 1-26 v. Biden*,
   27 F.4th 336 (5th Cir. 2022) ................................................................................ 15

*Navy SEALs 1-26 v. Biden*,
   Nos. 22-10077, 22-10534 .................................................................................. 2, 24

*Oklahoma v. Biden*,
   No. 21-cv-1136 (W.D. Okla.) ............................................................................... 23

*Orloff v. Willoughby*,
   345 U.S. 83 (1953) ............................................................................................... 14

*Pederson v. Louisiana State Univ.*,
   213 F.3d 858 (5th Cir. 2000) ................................................................................ 18

*Pierce v. City of New York*,
   No. 16 CIV. 5703 (BMC), 2017 WL 10188217 (E.D.N.Y. June 9, 2017) ................ 9

*Portillo v. Cunningham*,
   872 F.3d 728 (5th Cir. 2017) ................................................................................ 13

*Pulphus v. Ayers,*
  909 F.3d 1148 (D.C. Cir. 2018) .............................................................................. 14

*Ramming v. United States,*
  281 F.3d 158 (5th Cir. 2001) .................................................................................... 8

*Schelske v. Austin,*
  No. 6:22-CV-049-H, 2022 WL 17835506 (N.D. Tex. Dec. 21, 2022)..................................... 15

*Singh v. Berger,*
  56 F.4th 88 (D.C. Cir. 2022)..................................................................................... 15

*Smith v. Young Men's Christian Ass'n of Montgomery, Inc.,*
  462 F.2d 634 (5th Cir. 1972) .................................................................................... 12

*Snider v. Cain,*
  No. 4:20-CV-00670-P, 2020 WL 6262192 (N.D. Tex. Oct. 23, 2020) ..................................... 22

*Sossamon v. Lone Star State of Texas,*
  560 F.3d 316 (5th Cir. 2009), *aff'd on other grounds sub nom. Sossamon v. Texas,* 563 U.S.
  277 (2011) ............................................................................................................ 22

*Speech First, Inc. v. Fenves,*
  979 F.3d 319 (5th Cir. 2020) ................................................................................. 8, 19

*Spell v. Edwards,*
  962 F.3d 175 (5th Cir. 2020) .................................................................................... 22

*Stauffer v. Gearheart,*
  741 F.3d 574 (5th Cir. 2014) .................................................................................... 22

*Swann v. Charlotte-Mecklenburg Bd. of Ed.,*
  402 U.S. 1 (1971)................................................................................................... 12

*Texas v. Biden,*
  20 F.4th 928 (5th Cir. 2021), *rev'd on other grounds,* 142 S. Ct. 2528 (2022)........................ 19

*Trinity Lutheran Church of Columbia, Inc. v. Comer,*
  137 S. Ct. 2012 (2017)............................................................................................. 19

*Tucker v. Gaddis*,
    40 F.4th 289 (5th Cir. 2022) ...................................................................... 14, 17, 19

*Yarls v. Bunton*,
    905 F.3d 905 (5th Cir. 2018) ................................................................................ 22


**Statutes**

42 U.S.C. § 2000bb–1(c) ................................................................................................ 12

James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 (NDAA),
    Pub. L. No. 117-263, 136 Stat. 2395 (2022) ............................................................... 3


**Other Authorities**

"Cumulative Analysis of Post-Authorization Adverse Event Reports of PF-07302048
    (BNT162B2) Received Through 28-Feb-2021,"
      https://www.datascienceassn.org/content/pfizer-adverse-events-report ................................. 21

Jon Brown, "Thousands of unvaccinated service members could still be booted over rescinded
    COVID-19 policy," Yahoo/life, March 9, 2023, https://www.yahoo.com/lifestyle/thousands-
    unvaccinated-members-could-still-100002872.html ............................................................ 21

S.V. Subramanian, A. Kumar, "Increases in COVID-19 are unrelated to levels of vaccination
    across 68 countries and 2947 counties in the United States," Eur. J. Epidemiol., Dec. 2021,
    https://pubmed.ncbi.nlm.nih.gov/34591202/ ..................................................................... 21

The Lancet's "Past SARS-CoV-2 infection protection against re-infection: a systematic review
    and meta-analysis," Feb. 16, 2023,
    https://www.thelancet.com/journals/lancet/article/PIIS0140-6736(22)02465-5/fulltext ......... 21


**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................................................... 7

Fed. R. Civ. P. 23(b)(2) ................................................................................................. 12

## I.    INTRODUCTION

This case is not moot, and Plaintiffs still urgently need relief. Unlike the other military branches' rescission, the Coast Guard's rescission of the vaccine mandate was voluntary, not statutorily required. In addition, the Coast Guard continues to maintain and threaten adverse actions against Plaintiffs for objecting to the vaccine when the mandate was in place, causing ongoing irreparable harm. For example, the Coast Guard:

- Still refuses to grant Plaintiff Marcenelle a promotion or even a special promotion board for the promotion he is entitled to that would be effective April 29, 2023 but for his vaccination status.

- Placed injurious negative remarks (CG-3307s) in Plaintiffs' records and, to the extent it has now removed them, replaced them with other injurious remarks referencing noncompliance with the mandate.

- Permits ongoing harm to Plaintiffs' service reputation based on religious beliefs and vaccination status, as evidenced, for example, by downgraded evaluations, including Plaintiff Stone's.

Plaintiffs seek and have an urgent need for prospective relief from such adverse actions.

Even if the adverse actions had ceased, the voluntary-cessation doctrine saves this case from mootness. The Coast Guard falsely claims that Congress "required" it to rescind the mandate. To the contrary, the Coast Guard's rescission was entirely voluntary. As such, the Coast Guard does not and cannot meet its formidable burden of showing that subsequent events make it absolutely clear that its wrongful behavior could not reasonably be expected to recur. The Coast Guard continues to maintain the mandate was "lawful" and expressly reserves the right to reinstitute it. In fact it can still consider vaccination status as a factor, even a significant factor, in personnel decisions, and it still requires vaccination under certain circumstances applicable to at least one of the Plaintiffs. Further, the dispute is capable of repetition while evading review.

The Court should therefore deny the Coast Guard's motion to dismiss.[1]

## II.   BACKGROUND

In August 2021, the Coast Guard instituted its COVID-19 vaccine mandate. ECF No. 6-1 at 58-59. The Coast Guard claimed to permit religious accommodation requests (RARs) but denied all of them, except for a few requested by service members already slated for separation. *See* ECF No. 5 at 3-4. Meanwhile the Coast Guard granted many secular accommodation requests. *Id.* The Coast Guard's process discriminated against religious service members in violation of the Religious Freedom Restoration Act (RFRA) and the First Amendment. ECF Nos. 1, 4, 5, & 38. The Coast Guard's actions also violated the Administrative Procedure Act. ECF No. 1 at 63-65.

In May 2022, the Coast Guard issued the inevitable final denials of Plaintiffs' RARs. *See* ECF No. 6-1 at 43; ECF 6-2 at 15; ECF 6-3 at 28. The Coast Guard reprimanded Plaintiffs for supposed failure to comply with lawful orders and declared them subject to punishment under the Uniform Code of Military Justice (UCMJ), as reflected in negative remarks, CG-3307s, that the Coast Guard placed in their service records. *See* ECF No. 6-1 at 50 (CG-3307 issued to Plaintiff Stone), ECF No. 6-2 at 17 (CG-3307 issued to Plaintiff Jackson), and ECF No. 6-3 at 29 (CG-3307 issued to Plaintiff Marcenelle). In September 2022, Plaintiffs filed this case and, at the same time, motions for class certification, appointment of class counsel, and a class-wide

---

[1] The Fifth Circuit is currently considering the Navy's request to vacate preliminary injunctions and dismiss appeals as moot in a related case, *Navy SEALs 1-26 v. Biden*, Nos. 22-10077, 22-10534. While that appeal involves the Navy, which unlike the Coast Guard was required to rescind the applicable mandate under the NDAA, and involves only preliminary injunctive relief, the Fifth Circuit's forthcoming ruling may be relevant to the present motion to dismiss. To be clear, though, Plaintiffs urgently need preliminary injunctive relief against the ongoing adverse consequences of the now-rescinded mandate, including Plaintiff Marcenelle who has a particularly time-sensitive (before April 29, 2023) need, and respectfully ask the Court to issue such relief soon, regardless of the status of the appeal in the Navy case.

preliminary injunction. ECF Nos. 1 & 4. The motions were fully briefed as of October 2022. *See* ECF No. 38.

On December 15, 2022, Congress passed the 2023 National Defense Authorization Act (NDAA). *See* ECF No. 53. The NDAA provides that the Secretary of Defense shall rescind the Department of Defense (DoD) vaccine mandate. *Id.* The NDAA does not apply to the Coast Guard, which is not under the DoD. *Id.*; ECF No. 50 at 2 n.1; ECF No. 52 at 2; ECF No. 55. Rather, the Coast Guard is under the authority of Defendant Mayorkas's Department of Homeland Security. *Id.* On December 23, 2022, the President signed the NDAA into law, giving the DoD 30 days, until January 22, 2023, to rescind the DoD vaccine mandate. See ECF No. 53; ECF No. 55 at 3 n.1.

On January 9, 2023, the Coast Guard voluntarily rescinded its mandate, asserting that the vaccine mandates were nonetheless "lawful general orders." Appendix filed herewith ("Appx.") 254. Later the same day, the Coast Guard withdrew its rescission. Appx. 255.

On January 10, the DoD rescinded its mandate. ECF No. 64-2, Appx. 256. The DoD's rescission order stated that its "Military Departments will update the records… to remove any adverse actions solely associated with denials of such requests, including letters of reprimand." *Id.*

On January 11, the Coast Guard (again) rescinded its mandate, asserting (again) that the vaccine mandates were "lawful" orders. ECF No. 64-1, Appx at 258. Neither Coast Guard rescission order (dated January 9 and January 11) included language similar to the DoD's January 10 rescission order, which directed removal of adverse actions. Appx. 256.

On January 18, Magistrate Judge Ray conducted court-ordered mediation in this case. Plaintiffs participated in good faith, but mediation did not lead to settlement.[2]

On January 25, 2023, Plaintiffs filed a notice of rescissions of the DoD and Coast Guard mandates. ECF No. 64.[3] In this notice, Plaintiffs identified and detailed various forms of relief that the Coast Guard had thus far failed to provide and explained how the DoD's rescission order was not applicable to the Coast Guard and provided more relief to DoD service members than the Coast Guard's rescission order did to Coast Guard service members. *Id.*[4]

Over the course of several weeks after they issued their separate rescission orders, the DoD and Coast Guard separately issued various guidance memoranda; the Coast Guard's guidance addressed some service members' concerns (*e.g.*, halting of separation proceedings) but far from all of the still-needed relief Plaintiffs had identified and detailed:

- January 25, 2023: The Coast Guard rescinded restrictions on assignments, training, certain promotions, and command, and halted separation proceedings of enlisted members. ECF Nos. 67-1, 67-3, 67-4, Appx. 259, 261-267.[5] But the Coast Guard implicitly asserted the continuing right to consider vaccination status

---

[2] The Coast Guard falsely suggests that Plaintiffs went back on an agreement regarding a joint motion to stay the proceedings. Def. Memo at 5. To the contrary, the parties never reached such an agreement; the Coast Guard refused to and continues to refuse to offer comprehensive, appropriate relief even to the three named Plaintiffs.

[3] On February 7, 2023, Plaintiffs filed a notice of additional guidance the Coast Guard had issued. ECF No. 67. This notice again identified specific harms that remained unaddressed. *See id.* at 2-4.

[4] On January 30, 2023, the Coast Guard filed a response Plaintiffs' January 25 notice together with a request to stay the case. ECF No. 65. On February 3, 2023, the Court struck and unfiled the Coast Guard's filing for failure to comply with local rules. ECF No. 66. The Coast Guard has not since filed a motion to stay (and if it did, Plaintiffs would oppose it).

[5] Plaintiffs had already requested this specific relief in conversations with Defendants' counsel on January 12, 2023.

as a factor, even a significant factor, in making personnel decisions. *See* ECF No. 67 at 3. The Coast Guard does not dispute this. Def. Memo at 9-10.

- January 26, 2023: The Coast Guard halted separation boards for officers. ECF No. 67-2, Appx. 260.

- February 4, 2023: The Coast Guard directed removal of vaccine-related CG-3307s for all members sometime before the end of the year ("not later than 31 Dec 2023"). ECF No. 68-4, Appx. 268.[6]

- February 24, 2023: The DoD removed deployment restrictions aside from foreign nation vaccination entry requirements, "absent establishment of a new immunization requirement." Appx. 269. The Coast Guard has not issued comparable guidance.

- February 27, 2023: Apparently realizing that waiting until December 31 to remove CG-3307s (ECF No. 68-4) was manifestly indefensible, the Coast Guard stated that it now planned to remove certain CG-3307s by the end of March 2023.[7] ECF No. 71 at 12, Appx. 271 ("SUBJ: CORRECTING MILIITARY [sic] RECORDS (COVID-19)").

None of these measures has addressed the fact that Plaintiffs remain subject to various adverse collateral consequences. For example, Plaintiff Jackson's Coast Guard records still contain a CG-3307 documenting his intent to seek a religious accommodation. Jackson 3rd Suppl. Decl. at ¶5, Appx. 2. The CG-3307s have apparently been removed from the records for

---

[6] Plaintiffs had already notified the Court on January 25, 2023, of the Coast Guard's failure to "expunge any and all records or findings…regarding COVID-19 vaccination." ECF No. 64 at 2.
[7] Plaintiffs had reminded the Court on February 7, 2023, that the Coast Guard still had not aligned itself with the DoD, which had been ordered by the Secretary of Defense on January 10, 2023 to remove records of adverse actions. ECF No. 67 at 3.

Plaintiffs Stone and Marcenelle, but in place of the CG-3307s their records now include a memorandum from the Coast Guard's Acting CG-1, Assistant Commandant for Human Resources, Donna Navarro, documenting without explanation that vaccine-related CG-3307s have been removed from their respective records. Stone 3rd Suppl. Decl. at ¶7, Appx. 6; Marcenelle 3rd Suppl. Decl. at ¶¶24-26, Appx. 14-14; Appx. 268. Additionally, the Coast Guard still tracks service members' vaccination status, listing unvaccinated service members as "non-compliant (unvaccinated and no valid deferral listed)," in a system readily accessible to commanders and support staff. Stone 3rd Suppl. Decl. at ¶8, Appx. 6. Because the Coast Guard still insists that the vaccine mandate was a "lawful" order, and because vaccination status is a sensitive and divisive issue, both the CG-3307s and Navarro memorandum tarnish the service reputation of Plaintiffs as people who violated the UCMJ in the mind of anyone with access to career records—including commanders, boards, and even personnel specialists. *See* Declaration of Vice Admiral William Lee (Ret.) (explaining the role and lasting impact "service reputation" has on a Coast Guard career), Appx. 249-253.

Relatedly, Plaintiff Stone has received a downgraded performance report due to the training restrictions the Coast Guard imposed to pressure unvaccinated service members, with lasting effects on his career. Stone 3rd Suppl. Decl. at ¶¶3-7, Appx. 5-6.

Further, the Coast Guard has not aligned itself with the DoD's February 24 guidance. Therefore commanders in the Coast Guard, unlike the other service branches, can still prohibit deployment to certain countries based solely on vaccination status.

Additionally, Plaintiff Marcenelle was not selected for a nearly automatic promotion to Lieutenant solely due to his vaccination status. Marcenelle 3rd Suppl. Decl. at ¶¶3-7, Appx. 10-11. The lost pay from the missed promotion will total nearly $2,000 per month, beginning less

than a month from now. Appx. 12. The missed promotion also greatly reduces his chances of promoting in the future. Appx. 14. Because the promotion would not be effective until April 29, 2023, he could still be promoted on time, but the window for effective relief is rapidly closing. Appx. 12. Plaintiff Marcenelle requested a Special Selection Board (SSB) for the April 29 promotion, but he reasonably believes that request is futile. Appx. at 13. Just this week, the Coast Guard informed him that the earliest he would receive a decision from an SSB (even assuming one is granted) would be several months *after* April 29. Appx. 13.

Similarly, Plaintiff Jackson was forced to miss a second promotion testing cycle because the Coast Guard provided just one week's notice for him and similarly situated enlisted members to navigate a complex approval process normally requiring a month. Jackson 3rd Suppl. Decl. at ¶¶7-11, Appx. 2-3. This places him two years behind his vaccinated peers in career opportunity.

And Plaintiffs and other unvaccinated service members are still subject to the requirement that they must quarantine if they contract COVID-19 such that they are not available to serve during the period of quarantine, while vaccinated service members are not subject to this requirement. Appx. 7-8. The Coast Guard has not rescinded this discriminatory policy and has given no indication that it will ever rescind it. Appx. 7-8. In fact, by requiring vaccination checks as part of a mandatory, annual safety assessment checklist, the Coast Guard still retains an enforcement mechanism for the mandate. Stone 3rd Suppl. Decl. at ¶11, Appx. 8.

On March 10, 2023, the Coast Guard filed the present motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) (subject-matter jurisdiction), asserting that the case is moot. It is not, as discussed herein.

### III.    LEGAL STANDARD

"In assessing jurisdiction, the district court is to accept as true the allegations and facts set forth in the complaint, and a district court 'is empowered to consider matters of fact which may be in dispute.'" *Amerisure Ins. Co. v. Thermacor Process, Inc.*, No. 4:20-CV-01089-P, 2021 WL 2695143, at *2 (N.D. Tex. Apr. 6, 2021) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). "[A] motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id*. As discussed below, the Coast Guard does not and cannot show that Plaintiffs cannot prove a set of facts in support of their claims that would entitle them to relief.

### IV.    ARGUMENT

### A.    Plaintiffs seek concrete relief that the Coast Guard has not provided.

The Coast Guard's voluntary rescission and guidance do not come close to providing all the relief Plaintiffs seek. The distinction between the now-rescinded mandate, on the one hand, and ongoing adverse collateral circumstances, on the other, is in no sense "hazy," as the Coast Guard characterizes it. Def. Memo at 8. The Coast Guard tries and fails to blur the line between the two.

Plaintiffs remain subject to various adverse collateral consequences. *See, e.g.*, *Connell v. Shoemaker*, 555 F.2d 483, 486-88 (5th Cir. 1977) (even after Army rescinded challenged policy, claim for relief from adverse collateral consequences is not mooted); *Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 227 (5th Cir. 1998) ("Even if the plaintiff's primary injury has been resolved, the collateral consequences doctrine serves to prevent mootness when the violation in question may cause continuing harm and the court is capable of preventing such harm."); *see also Speech First, Inc. v. Fenves*, 979 F.3d 319, 327-29 (5th Cir. 2020) (reversing district court's dismissal of

injunctive and declaratory relief claims as moot; defendant public university rescinded or revised

many, but not all, challenged policies). For example, while continuing to maintain the vaccine

mandate was a "lawful" order, the Coast Guard:

- Claims an ongoing right to consider vaccination status as a significant factor in making personnel decisions.

- Still refuses to grant Plaintiff Marcenelle a promotion or even a special promotion board for a promotion he is entitled to, but for his vaccination status, that would be effective April 29, 2023.

- Placed injurious negative remarks (CG-3307s) in Plaintiffs' records and, to the extent it has now removed them, replaced them with other injurious remarks referencing the CG-3307s themselves and noncompliance with the mandate ("Ref:… ALCOAST 012/23 [which voluntarily rescinded "the lawful general orders to become vaccinated"]… CG PSC [Personnel Service Center] shall remove all CG-3307… administrative remarks referencing the Coast Guard's COVID-19 vaccine requirement….").[8]

- Downgrades evaluations, including Plaintiff Stone's, based on vaccination status. Specifically, his inability to attend the Intelligence Officer Course due to his RAR and vaccination status was a negative factor in his recent evaluation.

- Otherwise permits harm to Plaintiffs' service reputation.

- Still subjects Plaintiffs and other unvaccinated service members to the discriminatory quarantine policy.

Plaintiffs accordingly continue to face pressure to violate their religious beliefs and continue to

face ongoing harm, absent Court-ordered relief.

The Coast Guard mistakenly claims any harms are hypothetical and unripe. Def. Memo at

10. To the contrary, Plaintiffs' harms are very real, and this Court can and should remedy them.

---

[8] By replacing CG-3307s—which (unlawfully and falsely) stated that Plaintiffs violated the UCMJ by failing to comply with the mandate—with the Navarro memorandum—which refers to the mandate, the CG-3307s, and the fact of removal of the CG-3307s without further explanation—the Coast Guard merely substitutes an express negative remark with an implicit one. Defendants' alleged relief is thus entirely illusory. *Cf. Pierce v. City of New York*, No. 16 CIV. 5703 (BMC), 2017 WL 10188217, at *2 (E.D.N.Y. June 9, 2017) ("Defendants were exonerated in the investigation, but the mere mention of an investigation has the propensity to cause prejudice").

Despite the rescission and guidance, this Court can and should grant effectual relief to Plaintiffs regarding the adverse collateral consequences. *Connell*, 555 F.2d at 486-88; *Dailey*, 141 F.3d at 227; *see also Chafin v. Chafin*, 568 U.S. 165, 172 (2013). Specifically, Plaintiffs seek a court order now that would at a minimum:

- Enjoin the Coast Guard from considering vaccination status in making personnel and availability decisions.

- Require the Coast Guard to remove immediately all CG-3307s, any substitute Navarro memoranda, and any other administrative remark or document referencing the vaccine mandate.

- Require the Coast Guard to grant Plaintiff Marcenelle his promotion to Lieutenant by April 29, 2023 or, alternatively, to grant him a special selection board with sufficient time for him to be granted the promotion by April 29, 2023.

- Declare that the Coast Guard's enforcement of the vaccine mandate violated Plaintiffs' and Class members' rights under the United States Constitution and RFRA.

Such a court order is critical to minimizing ongoing and prospective harm to Plaintiffs and other service members based on their past objection to the vaccine mandate.[9]

Retired Vice Admiral Lee—a highly respected[10] former senior Coast Guard officer—attests to this prospective harm. Adm. Lee Decl., Appx. 251-52. Courts have entered orders specifically recognizing the unlawful treatment of religious objectors to the vaccine mandate in all of the other service branches—Navy, Air Force, Marines, and Army (*see* ECF Nos. 5, 38, 52, & 52-1)—but no court has specifically recognized the unlawful treatment of religious objectors in the Coast Guard. As Admiral Lee attests, the existence or nonexistence of such a court order

---

[9] Plaintiffs offer to submit a renewed proposed order granting their pending motions for relief (ECF No. 4). See also ECF No. 64 at 4 n.5. If the Court is inclined to grant the Coast Guard's motion to dismiss, Plaintiffs would request leave to file a first amended complaint.

[10] See https://www.history.uscg.mil/Browse-by-Topic/Notable-People/All/Article/2195858/vice-admiral-william-dean-lee/.

impacts personnel decisions, and the lack of a court order specifically recognizing the unlawful treatment of religious objections in the Coast Guard perpetuates the harm to Plaintiffs and other Coast Guard religious objectors. Appx. 252.

Even if the claims for injunctive relief were somehow moot (which they are not), the claims for declaratory relief are not moot because of the adverse collateral consequences, the "continuing practical consequences," of the Coast Guard's wrongful conduct. *Connell*, 555 F.2d at 486. As the Fifth Circuit held in *Connell*, even where a request for injunctive relief was conceded moot following the military's rescission of a challenged determination, the remaining request for declaratory judgment was not moot, because of adverse collateral consequences. *Connell*, 555 F.2d at 486-87. "[T]he continuing practical consequences" of the military's wrongful determination of discrimination was "sufficient to negate mootness." *Id.* at 486. For example, plaintiffs had "various businesses… in the area…. Since a favorable public image is vital to the success of such enterprises, the imputation of bigotry implicit in the Army's widely publicized sanctions against appellants could not but harm their reputations and, concomitantly, their livelihoods…." *Id.* at 486-87. Likewise here, the continuing practical consequences of the Coast Guard's conduct as detailed above negate mootness. *See also Amerisure Ins. Co.*, 2021 WL 2695143, at *3 (declaratory judgment claims not rendered moot where defendant "made no indication that its decision was final, unconditional, and irrevocable"); *Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 837 (5th Cir. 2023) (cited by Coast Guard; vacating injunction that was deemed moot but not vacating declaratory judgment because it "might provide important guidance to future disputes").[11]

---

[11] Class certification is not at issue in the present motion, as the Coast Guard acknowledges (Def. Memo at 11). The Coast Guard is nevertheless mistaken that any circumstances unique to a Plaintiff or certain subset of putative class members defeat class relief. *See* ECF No. 5 at 11. In

**B.    Plaintiffs seek relief in accordance with their Complaint, the law, and the rules.**

In their Complaint and in accordance with applicable law and rules, Plaintiffs seek prospective relief including: injunctions against any ongoing "adverse action" related to the now-rescinded vaccine mandate; a declaration that the Coast Guard violated and is violating Plaintiffs' rights under RFRA and the First Amendment; relief incidental to any such injunctive or declaratory relief; and any other relief to which they are entitled. Complaint (ECF No. 1) at 66-67. See also Section IV.A. above. RFRA broadly allows for any "appropriate relief." 42 U.S.C. § 2000bb–1(c). This Court has broad authority to grant relief. *See Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies."); *Smith v. Young Men's Christian Ass'n of Montgomery, Inc.*, 462 F.2d 634, 649 (5th Cir. 1972) ("A court of equity has unquestioned wide powers to provide effective means for enforcement" of civil rights laws "and to eradicate the effects of past discrimination."). This broad authority is especially important here, in light of the change in circumstances due to the Coast Guard's voluntary rescission of the vaccine mandate and the concrete harms Plaintiffs have suffered (and are still suffering) subsequent to the filing of the Complaint.

---

any event, there are circumstances that are common to Plaintiffs and putative class members. For example, the Coast Guard claims the right to consider vaccination status as a significant factor in making personnel decisions. Further, the Coast Guard placed injurious negative remarks (CG-3307s) in all members' records and, to the extent it removed them, replaced them with other injurious remarks. And all class members would benefit from a declaration that the Coast Guard violated Plaintiffs' and Class members' religious-liberty rights. *See* Fed. R. Civ. P. 23(b)(2) ("A class action may be maintained if … the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole"); Adm. Lee Declaration, Appx. 252.

The Coast Guard mistakenly asserts that Plaintiffs now seek new, retrospective relief, beyond what they demanded in their Complaint.[12] The Coast Guard is mistaken; Plaintiffs seek prospective relief in accordance with their Complaint. But even if the Coast Guard were right (which it is not), under Federal Rule of Procedure 54(c) this Court can and should nevertheless grant the relief to which Plaintiffs' are entitled. *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 378 (5th Cir. 2022) ("[E]ven if Appellants are right that Franciscan Alliance's complaint did not seek relief against Section 1557 enforcement, Rule 54(c) allows district courts to grant 'relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.'"). The Coast Guard suffers no prejudice because the Coast Guard has a chance to argue—and already has argued, unsuccessfully —whether the proposed relief is improper. *See id.* ("[W]hen a party has a chance to argue whether the proposed relief is improper, 'there is no prejudice.'") (quoting *Portillo v. Cunningham*, 872 F.3d 728, 735 (5th Cir. 2017)).

### C.      The claims for injunctive relief are justiciable and not subject to *Mindes* exhaustion.

The Coast Guard mistakenly claims that the limited injunctive relief Plaintiffs seek— prohibiting consideration of vaccination status in making personnel and availability decisions, reconsideration of promotion for Plaintiff Marcenelle, and removal of all CG-3307s and any other injurious documents that replaced them—is non-justiciable and subject to exhaustion under *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971). Def. Memo at 10, 12. As discussed at length previously, Plaintiffs' claims, including their RFRA claims, are justiciable; exhaustion would be futile; exhaustion is not required by RFRA and the First Amendment anyway; *Mindes* does not

---

[12] The Coast Guard's issuance of guidance and new procedures in bits and pieces over the course of weeks and months (see Section II above) made it virtually impossible to try amend the Complaint at the same pace while accounting precisely for each new issuance. This is another facet of the Coast Guard's litigation posturing. *See* Section IV.D. below.

apply; and even if it did its factors are easily satisfied here.[13] ECF No. 5 at 17 n.11; ECF No. 38 at 11-12 (both briefs incorporated herein). Further, as the Fifth Circuit held in *Hodges v. Callaway*, a case cited by the Coast Guard and decided nearly 20 years before RFRA was enacted,[14] "[O]nly those remedies which provide a real opportunity for adequate relief need be exhausted." 499 F.2d 417, 420 (5th Cir. 1974). The Coast Guard offers no such opportunity.

The Coast Guard's vague and empty offer to "work with service members to resolve concerns" (Def. Memo at 12) certainly does not moot Plaintiffs' claims. *See Tucker v. Gaddis*, 40 F.4th 289, 292-93 (5th Cir. 2022) (government allowing plaintiff to "apply" for requested religious-liberty relief does not moot his claim for relief); *id.* at 292 ("A case is not rendered moot simply because there is a possibility, or even a probability, that the outcome of a separate administrative proceeding may provide the litigant with similar relief") (quoting *El Paso Elec. Co. v. FERC*, 667 F.2d 462, 467 (5th Cir. 1982)). To date, the Coast Guard has not resolved Plaintiffs' concerns, and its vague and nebulous promises are nothing more than empty words.

Though Plaintiff Marcenelle submitted a request for a special promotion board for the promotion to which he is entitled effective April 29, 2023, he reasonably believes the request is futile. Appx. 13. The Coast Guard has not granted the request to date. Appx. 13-14. This week, the Coast Guard informed Plaintiff Marcenelle that the earliest he would receive a decision from an SSB (even assuming one is granted) would be several months *after* April 29. Appx. 13. If the Coast Guard does in fact grant the board, convene the board, and select him for promotion, and if

---

[13] The Supreme Court's one-paragraph ruling in *Austin v. Navy SEALS 1-26*, 142 S. Ct. 1301 (2022), narrowly stayed the scope of a preliminary injunction applicable to individual elite Naval officers. Justice Kavanaugh's concurrence, joined by no other Justices, is not controlling. Three Justices (Thomas, Alito, and Gorsuch) expressly disagreed with him.

[14] The Coast Guard cites and relies on other pre-RFRA or non-RFRA cases that are inapposite including *Orloff v. Willoughby*, 345 U.S. 83 (1953), *Gilligan v. Morgan*, 413 U.S. 1 (1973), and *Pulphus v. Ayers*, 909 F.3d 1148 (D.C. Cir. 2018). See also footnote 15 *infra*.

Defendant Mayorkas promptly approves the promotion, Plaintiff Marcenelle will withdraw the request in this case for that particular relief, though such a grant could be another example of the Coast Guard's litigation posturing. *See* Section IV.D. below.

His request for a special promotion board aside, because Plaintiff Marcenelle was denied promotion solely because of his religious objection and vaccination status (see Appx. 11-12; ECF No. 62-1 at 71; Complaint, ¶¶ 55, 292), the "limited military expertise" involved with respect to these issues weighs in favor of judicial review. *Schelske v. Austin*, No. 6:22-CV-049-H, 2022 WL 17835506, at *16 (N.D. Tex. Dec. 21, 2022). The promotion is not a competitive promotion—that is, no one else is competing for the same position. Appx. 11. In other words, no other Lieutenants Junior Grade competed against him for his position. Appx. 11. His specific promotion denial therefore did not involve a "complex, subtle, and professional decision" deserving of deference—it was a simple, unsubtle, unlawful decision to deny him promotion solely on the basis of his religious objection and vaccination status. *See Schelske,* 2022 WL 17835506, at *16 (quoting *Navy SEALs 1-26 v. Biden*, 27 F.4th 336, 349 (5th Cir. 2022)). Where the military "intends to ignore the religious rights guaranteed by RFRA, courts must intervene because generals don't make good judges—especially when it comes to nuanced constitutional issues." *Id.* (cleaned up). This Court can and should intervene and order the Coast Guard to grant Plaintiff Marcenelle his promotion to Lieutenant by April 29, 2023, or, alternatively, to grant him a special selection board with sufficient time for him to be granted the promotion by April 29, 2023.[15] *See Singh v. Berger*, 56 F.4th 88, 110 (D.C. Cir. 2022) (ordering district court to

---

[15] Any laws governing special selection boards, including 14 U.S.C. §§ 263, 2120, are subject to RFRA. 42 U.S. Code § 2000bb–3; *see also Navy Seals 1-26 v. Biden*, 27 F.4th 336, 346 (5th Cir. 2022) ("RFRA 'operates as a kind of super statute, displacing the normal operation of other federal laws[.]'" (quoting *Bostock v. Clayton County*, 140 S. Ct. 1731, 1754 (2020)); *see also Roth v. U.S.*, 378 F.3d 1371, 1386 (Fed. Cir. 2004) ("What we think the government fails to

"prompt[ly]" enter preliminary injunction under RFRA "requiring the Marine Corps to allow" plaintiff members of the Sikh religion "to enlist without shaving their heads or beards and while bearing those articles of faith that the Government failed to argue against on appeal").

The Court likewise can and should grant injunctive relief regarding the CG-3307s and any memoranda that replaced them, and the ongoing discriminatory quarantine policy. The Coast Guard does not and cannot point to any non-futile means of pursuing administrative remedies for this or any other relief.

### D. The voluntary-cessation doctrine saves the case from mootness.

Even if there were no remaining adverse collateral consequences, under the voluntary-cessation doctrine this case is not moot because the Coast Guard *voluntarily* rescinded the mandate and *voluntarily* issued its guidance. Under this doctrine, "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). As this Court explained, "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Amerisure Ins. Co.*, 2021 WL 2695143, at *3 (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" *Amerisure Ins. Co.*,

---

recognize, however, is that a normally nonjusticiable decision [regarding military decisions to not correct service member records] is not insulated from judicial review if it flows directly from the breach of a statute or regulation. Once a breach has been established, the obligation falls to the Board, or if necessary to the court, to take steps to grant thorough and fitting relief.") (internal citations omitted).

2021 WL 2695143, at *3 (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 190 (2000)). The Coast Guard cannot meet this formidable burden.

>  i.  *The Coast Guard falsely claims its cessation was not voluntary.*

The Coast Guard brazenly contends that the rescission was *not* voluntary, that the Coast Guard "ha[s] been required through action of Congress to rescind" and that "Congress 'has done the work that Plaintiffs wanted [this Court] to do.'" ECF No. 70 at 1, 7. These contentions are false. The Coast Guard voluntarily rescinded the mandate and voluntarily issued its guidance. ECF Nos. 50, 52, 53, 55. The NDAA does not apply to the Coast Guard. *Id.* To the extent the Coast Guard has chosen to "align" itself with the other service branches—*i.e.*, the branches under the Department of Defense—that was the Coast Guard's *voluntary* decision. This is especially clear from the fact that, to date, the Coast Guard has *not* aligned itself with, for example, the DoD's February 24 guidance removing certain deployment restrictions. Appx. 269. In fact, much of the Department of Defense's policy changes were *themselves* voluntary, such as expungement of adverse records, which was not required by the NDAA.

>  ii.  *It is not "absolutely clear" the wrongful conduct could not reasonably be expected to recur.*

The Coast Guard also does not and cannot show that it is "absolutely clear the wrongful behavior could not reasonably be expected to recur." *Amerisure Ins. Co.*, 2021 WL 2695143, at *3. The Coast Guard itself admits its behavior **can** reasonably be expected to recur: "[T]he Coast Guard retains the ability to, at some future date, establish a new COVID-19 vaccination requirement that might apply to at least one of these Plaintiffs in some circumstance." Def. Memo 1. *See Tucker*, 40 F.4th at 293 ("T]he government has not even bothered to give Tucker any assurance that it will permanently cease engaging in the very conduct that he challenges. To the contrary, as noted, counsel for TDCJ stated precisely the opposite during oral argument—

17

TDCJ would not guarantee congregation in the future, but instead would reserve the question in light of potential 'time, space, and security concerns.'") (denying mootness claim); *see also Pederson v. Louisiana State Univ.*, 213 F.3d 858, 874-75 (5th Cir. 2000) (holding Title IX case not moot where defendant university officials "made no representation to this court that they are dedicated to ensuring equal opportunities and fair accommodation for both their female and male athletes in the long run," but " simply state[d] that they have instituted varsity women's fast-pitch softball and soccer [as plaintiffs requested] and that they have, as required, submitted a Compliance Plan to the district court. [They] have given no assurance that they will not disband these programs, as they have with varsity fast-pitch softball in the past").

This admission by the Coast Guard is consistent with its voluntary rescission order, in which the Coast Guard insists the mandate was "lawful;" the subsequent guidance, in which the Coast Guard insists it can still consider vaccination status as a factor in personnel and availability decisions; and the ongoing discriminatory quarantine policy. These facts are more than sufficient to show Plaintiffs' reasonable expectation of recurrence (and to show current, ongoing wrongful conduct). The Coast Guard can also still require vaccination for service in certain foreign countries, which further demonstrates that a reasonable expectation of recurrence, including for at least Plaintiff Stone, who has been deployed and is subject to deployment to any foreign shore.[16]

---

[16] The military unlawfully does not permit religious accommodations regarding any current or future COVID-19 vaccine requirement including for deployment to a foreign country. *See* footnote 23 *infra*. *See also Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 438 (2006) ("[T]he Government did not even submit evidence addressing the international consequences of granting an exemption for the UDV. The Government simply submitted two affidavits by State Department officials attesting to the **general importance of honoring international obligations and of maintaining the leadership position of the United States** in the international war on drugs…. We do not doubt the validity of these interests, any more than we doubt the general interest in **promoting public health and safety** by enforcing the

> iii.     Even with "some solicitude," the Coast Guard cannot meet its burden.

The Coast Guard claims that, as a government actor, it bears a "lighter burden" to prove

non-recurrence. Many Supreme Court and Fifth Circuit cases do **not** apply a lighter burden to

government actors. *See*, *e.g.*, *City of Mesquite*, 455 U.S. at 289; *Trinity Lutheran Church of*

*Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 n.1 (2017); *Speech First, Inc.*, 979 F.3d at 327-

29; *Franciscan All., Inc.*, 47 F.4th at 376; *Tucker*, 40 F.4th at 292-93. *See also Tucker*, 40 F.4th

at 295 (Ho, J., concurring) (The mootness "standard is strict because courts are naturally

suspicious—or at least they *should* be—of officials who try to avoid judicial review by

voluntarily mooting a case.") (emphasis in original).

Even granting "some solicitude" to government actors, as the Fifth Circuit sometimes

does, the result is the same. *Speech First, Inc.*, 979 F.3d at 328; *Texas v. Biden*, 20 F.4th 928, 964

(5th Cir. 2021), *rev'd on other grounds*, 142 S. Ct. 2528 (2022). In such cases, the defendant's

burden remains "formidable," and the court considers evidence of whether the government acted

in "good faith" or engaged in "litigation posturing," including "(1) the absence of a controlling

statement of future intention not to repeat the challenged policy; (2) the suspicious timing of the

change; and (3) the government entity's continued defense of the challenged policies." *Texas*, 20

F.4th at 962, 964 (brackets omitted)[17] (quoting *Speech First, Inc.*, 979 F.3d at 328-29). All three

factors weigh heavily against the government here.

---

Controlled Substances Act, but **under RFRA invocation of such general interests, standing alone, is not enough**") (emphasis added).

[17] *Texas v. Biden*, like this case, involved Defendant Mayorkas's Department of Homeland Security engaging in litigation posturing to try to moot a case. *See Texas*, 20 F.4th at 962 ("DHS has repeatedly exhibited gamesmanship in its decisionmaking").

First, there is a total absence of any commitment to not repeat the challenged policy. Indeed, the Coast Guard admits its behavior can reasonably be expected to recur, and indeed some discriminatory policies continue to this day, as discussed above.

Second, the timing of the Coast Guard's changes is suspicious. It voluntarily rescinded the mandate after this case was filed and issued guidance loosely tracking—though not in full satisfaction of—Plaintiffs' demands, enough to claim that it is providing all the relief Plaintiffs seek without actually doing so, as discussed above. The Coast Guard claims it rescinded to "align" with the DoD. But why did it choose to align with the DoD? The Coast Guard was not required to align itself with the DoD (ECF Nos. 50, 52, 53, 55), the Coast Guard expressly distanced itself from the DoD, for example, in connection with the Inspector General's findings of unlawful RAR processes (ECF No. 38 at 4 n.5; ECF No. 30 at 15, 39), and the Coast Guard continues to maintain the mandate was lawful, appropriate, and served the interests of health and readiness (Def. Memo at 2). The reality is: the Coast Guard did not want to be the only service branch left defending an increasingly unpopular and legally indefensible mandate, and timed its rescission and guidance accordingly.[18]

Third, the Coast Guard continues to defend, unqualifiedly, the challenged vaccine mandate and related guidance. Again, the rescission order insists the mandate was "lawful," the guidance permits the Coast Guard to consider vaccination status as a factor in personnel and availability decisions, and even now the Coast Guard continues to defend the mandate (Def. Memo at 2).

---

[18] To the extent the Coast Guard now takes any further steps to try to moot some or all of Plaintiffs' requested relief, that would be further evidence of litigation posturing.

There is other, abundant evidence of the Coast Guard's bad faith. For example, as discussed above, the Coast Guard misrepresents the very nature of its cessation, claiming the NDAA "required" the CG to rescind the mandate when in fact it was provably voluntary. And, fundamentally, the entire sham RAR process evidences the Coast Guard's bad faith. See ECF Nos. 5 & 38.[19]

       *iv.*     *The Coast Guard's cases are irrelevant.*

In asserting that the voluntary-cessation doctrine does not apply, the Coast Guard relies on numerous irrelevant cases that variously involve:

- ***Involuntary* cessation, by statute or otherwise.** *See Fantasy Ranch Inc. v. City of Arlington*, 459 F.3d 546, 564 (5th Cir. 2006) (statutory change); *Johnson v. Mississippi*, 586 F.2d 387, 388 (5th Cir. 1978); (same); *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 643 (D.C. Cir. 2011) (same); *Log Cabin Republicans v. U.S.*, 685 F.3d 1162, 1166-68 (9th Cir. 2011) (same); *DeOtte v. Nevada*, 20 F.4th 1055, 1064 (5th

---

[19] The Coast Guard also continues to assert that the vaccines are "safe and effective" and necessary to "protect service members' health," Def. Memo. at 2, despite mounting evidence that they are in fact neither safe nor effective, and that rather than protecting service members' health they are in fact detrimental to it. *See, e.g.,* "Cumulative Analysis of Post-Authorization Adverse Event Reports of PF-07302048 (BNT162B2) Received Through 28-Feb-2021," https://www.datascienceassn.org/content/pfizer-adverse-events-report (released only as a result of a court order and showing Pfizer's COVID vaccines were associated with 42,086 adverse events, including 1,223 deaths, in just a three-month timespan); S.V. Subramanian, A. Kumar, "Increases in COVID-19 are unrelated to levels of vaccination across 68 countries and 2947 counties in the United States," Eur. J. Epidemiol., Dec. 2021, https://pubmed.ncbi.nlm.nih.gov/34591202/ (finding "no significant signaling of COVID-19 cases decreasing with higher percentages of population fully vaccinated"). And the DoD's Under Secretary of Defense for Personnel and Readiness, Gilbert Cisneros, recently testified to Congress that "natural immunity is not something we believe in for this" (https://www.yahoo.com/lifestyle/thousands-unvaccinated-members-could-still-100002872.html) despite evidence that natural immunity is superior to vaccine immunity. *See, e.g.,* The Lancet's "Past SARS-CoV-2 infection protection against re-infection: a systematic review and meta-analysis," Feb. 16, 2023, https://www.thelancet.com/journals/lancet/article/PIIS0140-6736(22)02465-5/fulltext.

Cir. 2021) (same); *Klayman v. Obama*, 759 F. App'x 1, 3 (D.C. Cir. 2019) (same);

*Amawi v. Paxton*, 956 F.3d 816, 821 (5th Cir. 2020) (same); *Guedes v. ATF*, 920 F.3d

1, 15 (D.C. Cir. 2019) (cessation not voluntary because it was the "result of the

combined actions of a presidential nomination and an independent Senate

confirmation").

- **A challenged policy that expired by its own terms.** *See Spell v. Edwards*, 962 F.3d

  175, 179 (5th Cir. 2020) ("[A] statute that expires by its own terms does not implicate

  [whether the change in policy was litigation posturing]. Why? Because its lapse was

  predetermined and thus not a response to litigation. So unlike a postsuit repeal that

  might not moot a case, a law's automatic expiration does…. Governor Edwards's

  stay-at-home orders expired by their own terms. The plaintiffs' request that we enjoin

  them is therefore moot."); *J.T. v. District of Columbia*, 983 F.3d 516, 523 (D.C. Cir.

  2020) (challenged policy expired by its own terms).[20]

- **A challenged policy that defendant admitted was illegal and did not defend.** *See*

  *Yarls v. Bunton*, 905 F.3d 905, 911 (5th Cir. 2018) ("Indeed, Appellees joined

  Appellants in urging us to declare the waitlists unconstitutional…. We doubt

  Appellees will re-implement waitlists on their own initiative.").

- **A defendant that made no indication whatsoever that it would enact the**

  **challenged policy again.** *See Freedom From Religion Found., Inc.*, 58 F.4th at 834;[21]

  *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 324 (5th Cir. 2009), *aff'd on*

---

[20] *Snider v. Cain*, No. 4:20-CV-00670-P, 2020 WL 6262192 (N.D. Tex. Oct. 23, 2020) is another
example of a case that is irrelevant here because the challenged regulation expired by its own
terms.
[21] Even in *Freedom From Religion Found.*, the Court did not vacate the declaratory judgment
because it "might provide important guidance to future disputes." *Id.* at 837.

*other grounds sub nom. Sossamon v. Texas*, 563 U.S. 277 (2011); *Stauffer v. Gearheart*, 741 F.3d 574, 582 (5th Cir. 2014).[22]

Here, by contrast, the Coast Guard voluntarily rescinded the mandate and voluntarily issued its guidance; the Coast Guard mandate did not expire by its own terms; and the Coast Guard refuses to admit its RAR process was unlawful, continues to insist it acted lawfully, concedes that it may enact the challenged policy again, reserves the right to consider vaccination status as a factor, even a significant factor, in personnel decisions, continues is discriminatory quarantine policy, and can require vaccination for certain foreign engagements. The case is not moot.

  **E.**   **The dispute is capable of repetition while evading review.**

  Even if there were no remaining adverse collateral consequences, and even if the voluntary-cessation doctrine did not apply, this case is not moot because the dispute is capable of repetition while evading review. *See Cath. Leadership Coal. of Texas v. Reisman*, 764 F.3d 409, 422 (5th Cir. 2014) (no mootness where "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.").

---

[22] The Coast Guard also cites several military vaccine cases in other Circuits where appeals or claims were dismissed, with some dismissed as moot. Def. Memo at 8 n.1. These cases are all irrelevant. For example: none discussed the voluntary-cessation doctrine; most involved other service branches that, unlike the Coast Guard, were required to rescind their mandates under the NDAA and are also currently subject to another court's class-wide injunction order; at least one did not involve a RFRA claim (*Clements v. Austin*, No. 22-cv-2069 (D.S.C.)); one expressly rejected the RFRA/justiciability/exhaustion analysis of the Fifth and other Circuits (*Alvarado v. Austin*, No. 22-cv-876 (E.D. Va.)); and in some, plaintiffs voluntarily dismissed the case themselves or consented to dismissal (*Chancy v. Biden*, No. 22-cv-110 (N.D. Fla.); *Oklahoma v. Biden*, No. 21-cv-1136 (W.D. Okla.); *Church v. Biden*, No. 21-cv-2815 (D.D.C.); and *Air Force Major v. Austin*, No. 22-cv-756 (N.D. Tex.)). The only case originating in this Circuit (*Air Force Major*) was brought by an Air Force service member who voluntarily dismissed his case and is protected under the Air Force class-wide injunction order in *Doster v. Kendall*, No. 1:22-CV-84, 2022 WL 2974733, at *1 (S.D. Ohio July 27, 2022), *aff'd*, 54 F.4th 398 (6th Cir. 2022).

First, the dispute is capable of repetition because, as discussed above, the Coast Guard admits that it may implement the mandate again. Def. Memo at 1. There's a reasonable expectation that Plaintiffs would be subjected to the same unlawful action again. Second, the dispute evades review, because of the short time period. The Coast Guard enacted the mandate in August 2021 but did not issue Plaintiffs' RAR final denials until May 2022. Plaintiffs filed this case in September 2022. Just three months later, in December 2022, the Coast Guard suggested it may voluntarily rescind the mandate, and then in January 2023 the CG voluntarily rescinded it. By prolonging a sham RAR process as long as possible to delay the inevitable denials, then quickly rescinding any challenged mandate not long after a service member is able to file suit, the Coast Guard can illegally pressure religious believers to submit to any new mandate in the future. Moreover, if and when the Coast Guard were to reinstitute the mandate, there is no guarantee Plaintiffs or any putative class members would even be afforded an opportunity to seek religious accommodations.[23] For these additional reasons, the case is not moot.

## V.      CONCLUSION

The Court should deny the Coast Guard's Motion to Dismiss. This case is not moot. The Coast Guard continues to maintain adverse actions against Plaintiffs for objecting to the vaccine when the mandate was in place.

Even if the adverse actions had ceased, the voluntary-cessation doctrine saves this case from mootness. The Coast Guard falsely claims that Congress "required" it to rescind the mandate, but its rescission was entirely voluntary. The Coast Guard does not and cannot meet its formidable burden of showing that subsequent events make it absolutely clear that the allegedly

---

[23] *See* Oral Argument Recording, *Navy Seals 1-26 v. Austin*, No. 22-10077, at 27:55-29:35 (5th Cir. Feb. 6, 2023) (Judge Kyle Duncan asking plaintiffs' counsel whether the mandate's rescission makes the exemption process worse, and observing that "it went from a 50-step process to a zero-step process").

wrongful behavior could not reasonably be expected to recur. The case is also not moot because the dispute is capable of repetition while evading review.

Dated: March 31, 2023


Respectfully submitted,

/s/ *Adam S. Hochschild*

Stephen Crampton, *pro hac vice*
THOMAS MORE SOCIETY – Senior Counsel
PO Box 4506
Tupelo, MS 38803
(662)255-9439
scrampton@thomasmoresociety.org

Michael G. McHale, *pro hac vice*
THOMAS MORE SOCIETY – Counsel
10506 Burt Circle, Ste. 110
Omaha, NE 68114
(402)501-8586
mmchale@thomasmoresociety.org


Adam S. Hochschild, *pro hac vice*
Hochschild Law Firm
THOMAS MORE SOCIETY – Special Counsel
PO Box 401
Plainfield, VT 05667
(314)503-0326
adam@hochschildlaw.com

Mary Catherine Hodes, *pro hac vice*
THOMAS MORE SOCIETY – Special Counsel
112 S. Hanley Rd., Second Floor
Clayton, MO 63105
(314)825-5725
mchodes@thomasmoresociety.org

Paul M. Jonna, *pro hac vice*
LiMandri & Jonna LLP
THOMAS MORE SOCIETY – Special Counsel
P.O. Box 9120
Rancho Santa Fe, CA 92067
(858)759-994
pjonna@limandri.com

Charles W. Fillmore
State Bar # 00785861
H. Dustin Fillmore III
State Bar # 06996010
THE FILLMORE LAW FIRM, L.L.P.
201 Main Street, Suite 700
Fort Worth, TX 76102
(817)332-2351
chad@fillmorefirm.com
dusty@fillmorefirm.com

Nathan Loyd, *pro hac vice*
THOMAS MORE SOCIETY – Special Counsel
5101 Old Highway 5, Box 442
Lebanon, GA 30146
(559)744-3664
nathaniel.loyd@thomasmoresociety.org


*Counsel for Plaintiffs*

26