# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| **ERIC JACKSON**, **ALARIC STONE**, and **MICHAEL MARCENELLE**, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) | Case No. 4:22-cv-00825-P |
| v. | ) ) | |
| **ALEJANDRO N. MAYORKAS**, in his official capacity as Secretary of Homeland Security, et al. | ) ) ) | |
| Defendants. | ) ) | |

## APPENDIX OF MATERIALS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

### Index of Contents of Appendix

**Document(s)**                                                                 **Begins at Appendix page**

1. Jackson Third Suppl. Declaration and Exhibit ....................................................1

2. Stone Third Suppl. Declaration and Exhibit...........................................................5

3. Marcenelle Third Suppl. Declaration......................................................................10

4. Marcenelle Third Suppl. Declaration Exhibit 1 ....................................................16

5. Marcenelle Third Suppl. Declaration Exhibit 2.....................................................238

6. Vice Admiral Lee Declaration ...............................................................................249

7. Coast Guard First Attempted Voluntary Rescission.............................................254

8. CG Cancellation of First Attempted Voluntary Rescission ..................................255

9. Department of Defense Rescission of COVID-19 Vaccine Mandate (ECF 64-2) ..............256

10. CG Second Attempted Voluntary Rescission (ECF 64-1)....................................258

11. CG Cancellation of Certain Admin. Measures for Enlisted Members (ECF 67-1) ..........259

12. CG Cancellation of Separation Boards for Officers (ECF 67-2)......................................260

13. CG Guidance for Active Duty Enlisted Members (ECF 67-3)..........................................261

14. CG Now-Canceled 2022 PCS Transfer Restrictions (ECF 67-4) ....................................263

15. CG Directive Re: CG-3307 Removals by Dec. 31, 2023 (ECF 68-4)................................268

16. DOD Removal of Deployment Restrictions ......................................................................269

17. CG Revised Directive Re: CG-3307 Removals by March 31, 2023 (ECF 71) .................271

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| **ERIC JACKSON**, **ALARIC STONE**, and ) <br> **MICHAEL MARCENELLE**, on behalf of ) <br> themselves and all others similarly situated, ) <br> ) <br> Plaintiffs, ) <br> v. ) <br> ) <br> **ALEJANDRO N. MAYORKAS**, in his official ) <br> capacity as Secretary of Homeland Security, et al., ) <br> ) <br> Defendants. ) | Case No. 4:22-cv-00825-P |

## <u>THIRD SUPPLEMENTAL DECLARATION OF BOATSWAIN'S MATE 1ST CLASS ERIC JACKSON</u>

Pursuant to 28 U.S.C. § 1746, I, Eric Jackson, under penalty of perjury declare as follows:

1.      I am over the age of eighteen and am competent to make this declaration.

2.      I am still enduring adverse action due to my decision to not receive the COVID-19 vaccinations, despite the Coast Guard having removed many restrictions on unvaccinated personnel.

3.      The Coast Guard stores career records for review in the Coast Guard's Personal Data Records system (PDR).  The Coast Guard uses PDR to make personnel records readily available to anyone with viewing privileges.  It is my experience that commanders routinely access these records as well in the normal course of supervising and rating their subordinates.  I understand that personnel specialists, selection boards, and promotion boards also have viewing privileges.

1

4.     I have confirmed that the Coast Guard has removed the CG-3307s documenting that I was ordered to receive the COVID-19 vaccination on May 11, 2022 (ECF No. 5-40), and claiming that I had violated the Uniform Code of Military Justice (UCMJ) on June 30, 2022 (ECF No. 5-41).

5.     However, PDR still reveals that I did not immediately comply with the COVID-19 vaccine mandate.  Specifically, PDR currently records a CG-3307 dated September 9, 2021, (**Ex. 1**) on which my commander recorded that I was not vaccinated and that I would be seeking a religious accommodation.

6.     When my current or future commander reviews my records in preparation for an annual performance review, this CG-3307 from September 9, 2021, will clearly reveal my status as someone who objected to the now-rescinded vaccine mandate.  Given the high publicity of the COVID-19 mandate and standardized procedures for issuing CG-3307s to document a claimed violation of a "lawful order," any reviewing commander will know that I likely received an adverse CG-3307, even though my adverse CG-3307s themselves are no longer in PDA.

7.     Additionally, I also was unable to test for promotion this year due to my vaccination status.  This is the second consecutive year the Coast Guard denied me an opportunity to test.

8.     The Coast Guard issued rescission guidance late on January 25, 2023, which stated that unvaccinated servicemembers could participate in the Service Wide Exams for promotion. ECF No. 67-3 at 2.  The due date to submit for testing was February 1, 2023.  *Id.*

9.     I had no notice that the restriction on testing would be lifted.  Applying to participate in the Service Wide Exams is a complex process involving records review, qualifications review, making any necessary corrections or updates, studying, and meeting with

my supervisor. This process typically takes more than a month of coordination to complete, and is practically impossible to complete with just one week's notice.

10.     In fact, prior to the restriction being lifted, I attempted to complete as many steps as possible in case the Coast Guard decided to let unvaccinated servicemembers test. However, my chief told me not to waste my time because the restriction was still in effect.

11.     As a result, I could not apply for the Service Wide Exams for this year. I will not have an opportunity to test until next year, and if selected for promotion, I will be two years behind my peer group.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 30, 2023.

Eric Jackson

3

DEPARTMENT OF HOMELAND SECURITY
U.S. COAST GUARD

## ADMINISTRATIVE REMARKS

### PRIVACY ACT STATEMENT

Pursuant to 5 U.S.C. §552a(e)(3), this Privacy Act Statement serves to inform you of why DHS is requesting the information on this form.
**AUTHORITY**: 14 U.S.C. § 505
**PURPOSE**: To document a USCG service member's achievements, accomplishments, Uniform Code of Military Justice (UCMJ) infraction(s), or any other USCG military pay or personnel activity.
**ROUTINE USES**: Authorized USCG officials will use this information to validate a USCG service member's achievements, accomplishments, UCMJ infraction(s) or any other USCG military pay or personnel activity. Any external disclosures of information within this record will be made in accordance with DHS/USCG-014, Military Pay and Personnel, 76 Federal Register 66933 (October 28, 2011).
**CONSEQUENCES OF FAILURE TO PROVIDE INFORMATION**: Providing this information is voluntary. However, failure to provide this information may result in a delay in administrating this form.

Entry Type: Performance and Discipline (P&D-41A) COVID-19 Mandatory Vaccination Counseling
Reference:   (a) COMDT COGARD WASHINGTON DC 072247Z SEP 21/ALCOAST 315/21
             (b) DoD Instruction 6205.02, DoD Immunization Program (23 Jul 19)
             (c) Immunizations and Chemoprophylaxis, COMDTINST M6230.4 (series)
             (d) Military Religious Accommodations, COMDTINST M1000.15 (series)

Responsible Level: Unit
Entry:

You are hereby counseled that, per references (a) – (c), you are required to receive a COVID-19 vaccine that has received full licensure from the Food and Drug Administration (FDA), in accordance with FDA-approved labeling and guidance. The COVID-19 vaccines are safe and effective at preventing COVID-19 and reducing the risk of severe illness and death, as well as the risk of people spreading the virus that causes COVID-19.

If you have medical questions about the vaccine or believe you should be granted a medical exemption per ref (c), consult your health care provider. If you wish to seek a religious accommodation per ref (d), you should schedule an interview with a Chaplain and then submit the request through your chain of command.

Refusal to receive the vaccine when directed to by medical or military authority may result in both administrative and punitive consequences, to include punishment or prosecution under the Uniform Code of Military Justice. You may also be processed for involuntary separation from the Coast Guard.

ZWIRBLIS.DAVID.J. Digitally signed by ZWIRBLIS.DAVID.J.ESSE.1291413940
ESSE.1291413940 Date: 2021.09.09 10:51:19 -0700'

09SEP2021:                        David J. Zwirblis

                                  Commanding Officer

09SEP2021:  I acknowledge the above entry.


_____: I do intend/do not intend (circle one) to seek an exemption or accommodation. If I so intend, my request will be submitted within 7 days of this date.

JACKSON.ERIC.B. Digitally signed by JACKSON.ERIC.BRODIE.1275859733
RODIE.1275859 Date: 2021.09.14 09:44:20 -0700'
733
                                  Eric B. Jackson

| 1. NAME OF PERMANENT UNIT | 2. NAME OF UNIT PREPARING THIS FORM | |
|---|---|---|
| CGC BENJAMIN BOTTOMS | CGC BENJAMIN BOTTOMS | |
| 3. NAME OF MEMBER (Last, First, MI) | 4. EMPLOYEE ID NUMBER | 5. GRADE/RATE |
| Jackson, Eric, B. | 1368467 | E-6/BM |

File original in SPO PDR, Email copy to CG PSC-BOPS-C-MR

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **ERIC JACKSON**, **ALARIC STONE**, and **MICHAEL MARCENELLE**, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) | Case No. 4:22-cv-00825-P |
| v. | ) ) | |
| **ALEJANDRO N. MAYORKAS**, in his official capacity as Secretary of Homeland Security, et al., | ) ) ) | |
| Defendants. | ) ) | |

**THIRD SUPPLEMENTAL DECLARATION OF LIEUTENANT JUNIOR GRADE ALARIC STONE**

Pursuant to 28 U.S.C. § 1746, I, Alaric Stone, under penalty of perjury declare as follows:

1.      I am over the age of eighteen and am competent to make this declaration.

2.      I am still enduring adverse action due to my decision to not receive the COVID-19 vaccinations, despite the Coast Guard having removed many restrictions on unvaccinated personnel.

3.      For example, on my previous Officer Evaluation Report for last year, my supervisor rated me an average of 6.72 out of 7 possible points across eighteen performance areas.  ECF No. 5-8. I was also ranked as "one of few distinguished officers" in my grade.  *Id.*  This evaluation was completed on June 20, 2022 (*id.*), one month before I was ordered to receive the COVID-19 vaccine. ECF No 5-19.

4.      My Coast Guard supervisor has completed my current evaluation report documenting my performance during a period including when I was reprimanded for allegedly violating a lawful order and the pendency of this lawsuit.  In contrast to my last report, I was rated an average of 5.72 out

1

**5**

of 7.  Additionally, I am no longer considered "one of few distinguished officers," but rather, a "center of mass" officer.  **Ex. 1**.

5.      During my performance counseling, my supervisor informed me that my scores were lowered in part because I had not attended a training course for my current position, even though my orders to attend that course were canceled solely due to my unvaccinated status. At the time my orders were cancelled, updated Coast Guard policy had been promulgated allowing unvaccinated personnel to attend training "specifically required for their assignment." Despite reminding my supervisor that I needed the training at the time my orders were cancelled and providing my command the appropriate policy references, my orders were cancelled two weeks prior to the course convening date. My supervisor is aware of my vaccination status and this case and is aware of the circumstances under which my orders were cancelled.

6.      The next offering of the training course will not occur until after my next evaluation. As a result, I will have another evaluation wherein my performance may be downgraded due to not attending the course.

7.      Although the Coast Guard has removed adverse CG-3307s explicitly documenting my decision to remain unvaccinated from my career records, this evaluation report will be included.  As a result, future promotion, command, and other special selection boards, as well as commanders, will be presented with a record illustrating inconsistent performance.  Additionally, my career records now contain a memorandum from CG-1 (a copy of which is filed in this case as ECF No. 68-4). This memorandum was added to my records concurrent with a decline in my performance ratings.

8.      Although the Coast Guard has removed adverse CG-3307s explicitly documenting my decision to remain unvaccinated from my career records, the Coast Guard continues to track my COVID-19 vaccination status as "non-compliant (unvaccinated and no valid deferral listed)" in its

personnel readiness tracking application, Coast Guard Business Intelligence (CGBI). Other non-mandatory vaccines tracked in CGBI (Smallpox, Anthrax, etc.) are clearly marked as not-applicable in CGBI for me.  As a result of my vaccination status still being tracked in CGBI, commanders and administrative representatives for every unit are capable of viewing COVID-19 vaccination statuses for personnel Coast Guard wide.

9.     Moreover, future boards and commanders will have sufficient information from a routine review of my records and readiness metrics to reasonably and correctly conclude that I did not comply with the now-rescinded vaccination mandate, even though my records do not include documentation explicitly recording these events.  Because the Coast Guard still states that the vaccination mandate was a "lawful order," those boards and commanders will have a basis to conclude that I violated the Uniform Code of Military Justice (UCMJ).

10.    Finally, the Coast Guard continues to enforce COVID-19 health protection protocols that have not been updated in over 8 months. Just this month (March, 2023), I attended the Coast Guard's 1-week Assistant Safety Officer (ASO) course as part of my duties. Assistant Safety Officers have largely been responsible for enforcing Coast Guard health protocols since the pandemic began. During the ASO course, trainees were provided comprehensive instruction on current Coast Guard pandemic response policies which have received no updates since August 4, 2022. The course instructed trainees that the COVID-19 vaccine was mandated for all Coast Guard servicemembers and detailed now-rescinded punitive administrative measures for non-compliant personnel. The course also instructed trainees to follow outdated COVID-19 prevention and response guidance that fails to align with current guidance issued by the CDC and remains official Coast Guard policy.  For example, the Coast Guard still instructs ASOs to quarantine unvaccinated personnel, and take

3

**7**

no action for vaccinated personnel, if a unit member is exposed to another COVID-19 positive member.

11.     Additionally, in my capacity as ASO, I learned that the current Shore-unit Safety Assessment Checklist, which all Coast Guard shore-units are required to complete annually, includes an inspection item verifying that military members and others comply with ACLOAST 078/22 mandating COVID-19 vaccination. Failure to comply with these requirements will result in an unsatisfactory mark on the unit's inspection summary. Unsatisfactory inspection items are entered into the Coast Guards Hazardous Conditions Management System (HCMS) for tracking and oversight until the discrepancy is cleared.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 31, 2023.

Alaric Stone

4

**8**

**Exhibit 1**

DEPARTMENT OF HOMELAND SECURITY
U.S. Coast Guard

# OFFICER EVALUATION REPORT (W4/O1/O2)

**OER GUIDANCE**

The Officer Evaluation Report is the single most significant document in the management of an officer's career. It is the official record of performance used to determine an officer's potential for promotion, retention, advanced education, command screening and for selection to positions of increased responsibility. Accordingly, our Officer Evaluation System demands integrity, fairness, accuracy, and timeliness. The responsibility for preserving these tenets rests upon all parties. In addition to regular feedback and mid-period counseling, providing timely, accurate, evaluations is a basic leadership function. While every member is responsible for providing carefully crafted supporting material, it is incumbent upon the OER rating chain to draft the appropriate sections and ensure each officer receives the feedback he or she deserves.

## 1. ADMINISTRATIVE INFORMATION:

| a. REPORTED-ON OFFICER NAME (Last) | (Initials) | b. UNIT |
|---|---|---|
| Stone | A .  B . | D5 INTELLIGENCE BR (DRI) |

| c. PERIOD OF REPORT | d. OCCASION FOR REPORT | e. GRADE | f. EMPLID | g. DATE OF RANK | h. DATE REPORTED |
|---|---|---|---|---|---|
| 01Jul2022 to 31Jan2023 | Semi-annual | O2 | | 20Nov2021 | 01Jul2022 |

| i. MID-TERM COUNSELING DOCUMENTATION | j. DATE COUNSELED | k. COUNSELOR NAME | l. ROO SIGNATURE |
|---|---|---|---|
| Mandated. See PSCINST M1611.1(series) for guidance. | 06Oct2022 | T .  A .  Nash | |

## 2. DESCRIPTION OF DUTIES:  List primary duty and summarize all duties and responsibilities.

Click here - email form to Supervisor

| a. PRIMARY DUTY: INTELLIGENCE OFFICER | b. PAL TITLE: INTEL-DUTY |
|---|---|

All-Source Intel Analyst: analyzes, produces, and disseminates intel services for D5 operational planning, decision making and mission execution. Provides indication & warnings briefs to D5CC and cmd cadre. Asst Collections & ISR Manager: coordinates collection activities for 2 Air Stations, 4 FRCs & 4 Sectors. Collaborates with CG-2, ICC, MIFCLANT, LANT-2, LANT Area Districts, & fed/state/local partners to submit/answer Requests for Information (RFIs). Sups 2 E-4. D5 Safety Officer. D5 SITL.

## 3a. PERFORMANCE OF DUTIES: [Open]

| | | | | | |
|---|---|---|---|---|---|
| ● a. Planning and Preparedness: | 6 | ● f: Speaking and Listening: | 7 | ● d. Teamwork: | 6 | ○ c. Responsibility: | 5 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ● a. Planning and Preparedness: | 6 | ● f: Speaking and Listening: | 7 | ● d. Teamwork: | 6 | ○ c. Responsibility: | 5 |
| ○ b. Using Resources: | 6 | ○ g. Writing: | 5 | ○ e. Workplace Climate: | 6 | ○ d. Professional Presence: | 6 |
| ● c. Results/Effectiveness: | 6 | **3b. LEADERSHIP SKILLS:** [Open] | | ○ f. Evaluations: | 5 | ○ e. Health and Well-Being: | 6 |
| ○ d. Adaptability: | 6 | ● a. Looking Out for Others: | 7 | **3c. PROFESSIONAL QUALITIES:** [Open] | | Supervisor selects the 5 performance dimensions for O2 & 3 persons for W4/O1 that best characterize this officer. Comments are required for the selected dimensions and any marks of 1, 2, and 3. |
| ○ e. Professional Competence: | 5 | ○ b. Developing Others: | 5 | ○ a. Initiative: | 6 | |
| | | ○ c. Directing Others: | 5 | ● b. Judgment: | 6 | |

Excellent preparedness/resource use: executed joint ops w/ NOAA OLE; coordinated intel driven C-130 ISR flights and FRC patrols targeting closed fisheries; increased annual LMR violations by 600%. Superb results: conducted analysis of AOR specific anomalous containerized cargo traffic; identified global trends & TTPs; drafted /released analytical product detailing findings to D5CC, (4) COTPs, US Embassy Netherlands,OGA, and foreign LE; efforts led to refinement of Sector HIV screening processes. Strong teamwork skills: consulted cross functional CG/DHS/IC/DoD teams; led field testing of Artificial Intelligence systems aboard D5 assets; established real-time data-pipeline & troubling shooting protocols for baseline collections; bolstered USCG maritime domain awareness initiative. Implemented Portsmouth Federal Building's (PFB) first AED and CPR training programs: managed $26K in equipment procurement; increased the safety posture for +450 personnel. Led annual PFB safety assessment: documented 607 inspection items; executed corrective actions for all deficiencies; achieved a 99% compliance rate. Earned Type 3 Situation Unit Leader Qual; pursued training and real-world experience; delivered complex ICS briefs to Senior leaders w/ease.

## 4. SUPERVISOR AUTHENTICATION:

Click here - email form to RO

| a. FIRST, MIDDLE INITIAL, LAST NAME | b. GRADE | c. EMPLID | d. POSITION TITLE | e. DATE |
|---|---|---|---|---|
| T .  A .  Nash | O4 | | Chief, Intelligence Branch | 31Jan2023 |

## 5. REPORTING OFFICER AUTHENTICATION:

| a. EVALUATION | |
|---|---|
| ● Concur | ○ Do not concur |

b. COMPARISON SCALE: Compare this officer with others of the same grade whom you have known in your career.

| Unsatisfactory | Marginally performing officer | One of the many high performing officers who form the majority of this grade | One of few distinguished officers | Best officer of this grade |
|---|---|---|---|---|
| ○ | ○ | ○      ○      ● | ○ | ○ |

c. REPORTING OFFICER COMMENTS: Supplement or amplify Supervisor's evaluation. Describe ability to assume greater leadership roles and responsibilities (e.g. command, special assignment, and skills.)

Recommended for promotion w/best of peers. ROO exhibits very high acumen for Intel Ops and has fully leveraged prior NSC tour experience. ROO's dedication and interpersonal skills has contributed to several D5 operational successes in mid-Atlantic LMR enforcement and ISR program success. Recommended for CGCYBER/CG Crypto/Sector Intel; Cmd cadre afloat: FRC XO,WMSM/WMEC OPS,WMSL CSO. Highly recommended for Law, Public Admin, and Information Operations & Cyber Intelligence Post Grad programs. Recommended for high vis assignments including: Congressional Affairs and Flag aide.

| d. FIRST, MIDDLE INITIAL, LAST NAME | e. GRADE | f. EMPLID | g. POSITION TITLE | h. DATE |
|---|---|---|---|---|
| R .  J .  Wester | O6 | | Chief, Response Division | 13Mar2023 |

| i. ATTACHMENTS: | Click here - email form to ROO |
|---|---|

## 6. REPORTED-ON OFFICER: I understand my signature does not constitute agreement or disagreement.  I acknowledge I have reviewed the report.

| a. SIGNATURE: | b. DATE | Active duty click here - email form to PSC-OPM-3 | Reserve click here - email form to PSC-RPM-1 |
|---|---|---|---|

**PRIVACY ACT STATEMENT**

Authority: 14 USC 633 and COMDTINST M1000.3 (series). Purpose: To determine an officer's suitability for promotion, selection and assignment. Routine Uses: Same. Disclosure: Mandatory. Failure to disclose required information may adversely affect promotion, selection and assignment decisions.

CG-5310B (02/19)

**9**

Reset

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **ERIC JACKSON**, **ALARIC STONE**, and | ) | |
| **MICHAEL MARCENELLE**, on behalf of | ) | |
| themselves and all others similarly situated, | ) | |
| | ) | Case No. 4:22-cv-00825-P |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| **ALEJANDRO N. MAYORKAS**, in his official | ) | |
| capacity as Secretary of Homeland Security, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**THIRD SUPPLEMENTAL DECLARATION OF LIEUTENANT JUNIOR GRADE**
**MICHAEL MARCENELLE**

Pursuant to 28 U.S.C. § 1746, I, Michael Marcenelle, under penalty of perjury declare as follows:

1.    I am over the age of eighteen and am competent to make this declaration.

2.    I am still enduring adverse action due to my decision to not receive the COVID-19 vaccinations, despite the Coast Guard having removed many restrictions on unvaccinated personnel.

3.    Specifically, I was eligible to be selected for promotion from Lieutenant Junior Grade (LTJG) to Lieutenant (LT) while the Coast Guard's vaccination mandate was in effect, including its restrictive policies prohibiting unvaccinated servicemembers from traveling, accepting new assignments, training, and promoting, among other restrictions.

4.    In the Coast Guard, when an officer is eligible for promotion, his or her records are considered by a promotion board of senior officers. The promotion board selects officers for promotion based on the provided records, the Commandant's Guidance to Boards and Panels, as

1

well as internal and confidential criteria set by the individual board/panel that is not releasable to anyone outside of the board/panel.

5.   Promotion from LTJG to LT is not highly competitive. In my experience, LTJGs are typically only passed over for promotion due to serious crimes, such as sexual assault or driving under the influence, or due to a pending request to separate from the Coast Guard. Additionally, promotions from LTJG to LT occur "in place," such that the promotee's assignment and duties do not change upon promotion. In other words, no other LTJGs competed against me for my position.

6.   I was not selected for this promotion when I was up for consideration in 2022.

7.   The CG-3307 forms documenting my choice to remain unvaccinated are the sole derogatory information in my records. I had no other derogatory material in my record and I had not requested to separate from the Coast Guard.

8.   A member of my promotion board informed me that the board was instructed to automatically deny promotion for anyone having a recorded CG-3307 documenting noncompliance with the Coast Guard's vaccine mandate.

9.   I know two other unvaccinated LTJGs who were nonetheless selected for promotion. Although their commanders issued CG-3307s for noncompliance with the vaccine mandate, their commanders chose not to file the CG-3307s in their respective records. As a result, the promotion board was unaware that these LTJGs were unvaccinated, and selected them for promotion.

10.   Unlike these two other unvaccinated LTJGs, my commander did file my CG-3307 in my record; the board was informed of my noncompliance with the vaccine mandate; and, as a result, I was not selected for promotion.

11.     Had I been selected for promotion, I would promote to LT effective April 29, 2023. I understand the Coast Guard could still choose to grant me the promotion effective April 29, 2023—it is not too late, at least as of today.

12.     Promotion to LT brings a substantial pay raise. I currently earn $97,595.76 annually ($8,132.98 per month) as a LTJG. Had I been selected for promotion to LT, my pay would increase on April 29 to $121,323.36 annually ($10,110.28 per month).

13.     Because I followed my faith and conscience and remained unvaccinated, I was passed over for promotion, and will earn $1,977.30 less per month than I would have earned had I contravened my faith and conscience by complying with the vaccine mandate.

14.     I believe the only reason I was passed over for promotion was because I followed my faith and conscience and remained unvaccinated.

15.     I understand that on January 25, 2023, the Coast Guard rescinded a policy preventing unvaccinated enlisted servicemembers from testing for promotion, and gave them a one week window to register for testing. ECF No. 67-3 at 2.

16.     However, the Coast Guard has issued no guidance addressing the needs of officers like me who had been denied a promotion due to their vaccination status. I am unaware of any rescission guidance regarding unvaccinated officers other than policies ending involuntary separations, assignment restrictions, and training restrictions (ECF No. 67-2), and removing adverse CG-3307s from personnel data records (ECF No. 68-4).

17.     Separate from any vaccine-related guidance, Coast Guard regulation COMDTINST M1000.3A allows officers to request a Special Selection Board (SSB) to Commander (CG PSC-OPM) when "an officer [was] considered but not selected for promotion to the next higher grade because of a material error in their record." **Ex. 1** at 6.B.13.a.

18.     COMDTINST M1000.3A does not impose a time requirement on when the Commander (PSC-OPM) must decide whether or not to convene a SSB. However, COMDTINST M1000.3A states that "SSBs may be convened . . . when one or more of the following occur: . . . a federal court directs a SSB be convened." *Id*. at 6.B.13.e.

19.     Although an officer who has been recommended for promotion by an SSB "shall have, upon such promotion, the same date of rank, the same effective date for pay and allowances of that grade, and the same position on the active duty promotion list had they been selected by the prior selection board," (*id.* at 6.B.13.n (2)), I am unaware of any provision for recouping pay lost while waiting for the SSB.

20.     I requested an SSB through my commander on March 22, 2023. An officer in Officer Personnel Management (PSC-OPM) indicated to me that that the request may be futile but I nevertheless submitted it in accordance with the process set forth in the regulations to remedy the previous errors in passing over my promotion.

21.     On March 29, 2023, I was told by an officer in OPM that there is no published or standard processing timeline for an SSB request. If OPM approves the request, the SSB has 120 days to convene. If the SSB selects me for promotion, the Secretary of the Department of Homeland Security still reviews the selection for final approval, meaning that the Coast Guard would not have control of when I would promote, or when my deflated pay increases.

22.     If I am not selected for promotion through an SSB, my next opportunity to be considered for promotion will be the general promotion board held in approximately September 2023. Given the notional SSB timeline provided to me by OPM, the standard September promotion board will likely occur before any OPM-directed SSB would, even assuming that OPM does grant

an SSB. Additionally, if I am selected, I would not promote until approximately April 2024, at the earliest.

23.     I will be an "above zone" promotion candidate (i.e., candidates who would promote more than four years after commissioning) for the next general promotion board. My missed promotion this year will weigh against my selection in the next promotion cycle. In fact, "above zone" candidates for promotion have a significantly lower promotion rate than "in zone" candidates (i.e., candidates who would promote four years after commissioning). For example, in 2022, 91% of in zone candidates were selected for promotion from O-2 to O-3, while only 54% of above zone candidates were selected. **Ex. 2** at 10. Moreover, a board will know that I am an "above zone" candidate simply by virtue of my record containing an additional annual evaluations than "in zone" candidates.

24.     Additionally, although my personnel file no longer includes any CG-3307s recording adverse actions or my vaccination status, my records do include a memorandum from CG-1 stating that CG-3307s referencing the vaccine requirement shall be removed. The memorandum in my record is the same as the memorandum filed in this case at ECF No. 68-4.

25.     To my knowledge, no vaccinated Coast Guard personnel have this memorandum in their record.

26.     As I stated above, when an officer is eligible for promotion, his or her records are considered by a promotion board of senior officers. The CG-1 memorandum is stored in the same system as my annual performance reports, awards, and other documents reviewed by a promotion or selection board. I am unaware of who has direct access to view the CG-1 memorandum, therefore I believe it could still be used to identify me as an unvaccinated servicemember to boards/panels, or to those who may provide guidance to the boards/panels. I assume that, at the

5

**14**

assume that, at the very least, the person who placed the memorandum in my record has access to it and could provide it to others.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 30th, 2023.

Michael Marcenelle

**Exhibit 1**

Note: November 2022.

This Directive may no longer be current. Please check with the program office responsible for this Directive to determine if there are any updates or if the Directive is no longer in use.



**U.S. Department of Homeland Security**

**United States Coast Guard**

# Officer Accessions, Evaluations, and Promotions



**COMDTINST M1000.3**
**July 2020**

17

THIS PAGE INTENTIONALLY BLANK

**U.S. Department of Homeland Security**

**United States Coast Guard**

Commandant
United States Coast Guard

US Coast Guard Stop 7907
2703 Martin Luther King Jr Ave SE
Washington, DC 20593-7907
Staff Symbol: CG-1331
Phone: (202) 475-5372
Fax: (202) 372-8473

COMDTCHANGENOTE 1000
6 JUL 2020

COMMANDANT CHANGE NOTICE 1000

Subj:   CH-11 TO OFFICER ACCESSIONS, EVALUATIONS, AND PROMOTIONS, COMDTINST M1000.3A

1. <u>PURPOSE</u>. This Commandant Change Notice publishes a change to the Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3A.

2. <u>ACTION</u>. All Coast Guard unit commanders, commanding officers, officer-in-charge, deputy/assistant commandants, and chiefs of headquarters staff elements must comply with the provisions of this Commandant Change Notice.  Internet release is authorized.

3. <u>DIRECTIVES AFFECTED</u>. With the addition of this Commandant Change Notice, Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3A, is updated.

4. <u>DISCLAIMER</u>. This document is intended to provide operational requirements for Coast Guard personnel and is not intended to nor does it impose legally-binding requirements on any party outside the Coast Guard.

5. <u>MAJOR CHANGES</u>.

   a. Chapter 1, Article 1.B.8.b. Composition of Interview Boards.

   b. Chapter 1, Article 1.E.4.h. Involuntary Termination of Cadet Appointment and Appeal Authority.

   c. Chapter 3, Article 3.B.10.i. Waivers.

   d. Chapter 5, Article 5.I.1. Prohibited Comments.

   e. Chapter 6, Article 6.B.15. Aviator Evaluation Board.

DISTRIBUTION – SDL No. 170

|   | a | b | c | d | e | f | g | h | I | j | k | l | m | n | o | p | q | r | s | t | u | v | w | x | y | z |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A | X | X | X | X | X | X | X | X | X | X |   | X | X | X | X | X | X |   | X |   | X | X |   |   |   |   |
| B |   | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
|   | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| D | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| E | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |   |
| F |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   | X | X | X |   |   |   |   |   |   |   |
| G |   | X | X | X | X |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |
| H |   | X | X | X | X | X | X |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |

NON-STANDARD DISTRIBUTION:

**19**

    f.   Chapter 7, Article 7.D. Reserve Program Administrator (RPA).

6.   ENVIRONMENTAL ASPECT AND IMPACT CONSIDERATIONS.

    a.   The development of this Manual and the general policies contained within it have been thoroughly reviewed by the originating office in conjunction with the Office of Environmental Management, Commandant (CG-47).  This Manual is categorically excluded under current Department of Homeland Security (DHS) categorical exclusion DHS (CATEX) A3 from further environmental analysis in accordance with the U.S. Coast Guard Environmental Planning Policy, COMDTINST 5090.1 and the Environmental Planning (EP) Implementing Procedures (IP).

    b.   This Manual will not have any of the following: significant cumulative impacts on the human environment; substantial controversy or substantial change to existing environmental conditions; or inconsistencies with any Federal, State, or local laws or administrative determinations relating to the environment.  All future specific actions resulting from the general policy in this Manual must be individually evaluated for compliance with the National Environmental Policy Act (NEPA) and Environmental Effects Abroad of Major Federal Actions, Executive Order 12114, Department of Homeland Security (DHS) NEPA policy, Coast Guard Environmental Planning policy, and compliance with all other applicable environmental mandates.

7.   <u>DISTRIBUTION</u>. No paper distribution will be made of this Commandant Change Notice. An electronic version will be located on the following Commandant (CG-612) web sites. Internet: <u>http://www.dcms.uscg.mil/Directives/</u>, and CGPortal: <u>https://cg.portal.uscg.mil/library/directives/SitePages/Home.aspx</u>.

8.   <u>PROCEDURE</u>.  If maintaining a paper library, remove and replace the following Sections of the Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3A:

| Remove | Replace |
|---|---|
| Table of Contents | Table of Contents |
| 1-31 – 1-32 | 1-31 – 1-32 |
| 1-91 – 1-92 | 1-91 – 1-92 |
| 3-39 – 3-40 | 3-39 – 3-40 |
| 5-13 – 5-16 | 5-13 – 5-16 |
| 6-37 – 6-38 | 6-37 – 6-42 |
| 7-1 – 7-4 | 7-1 – 7-4 |

9.   <u>RECORDS MANAGEMENT CONSIDERATIONS</u>.  This Commandant Change Notice has been evaluated for potential records management impacts.  The development of this Commandant Change Notice has been thoroughly reviewed during the Directives clearance process, and it has been determined there are no further records scheduling requirements, in accordance with Federal Records Act, 44 U.S.C. 3101 et seq., National Archives and Records Administration (NARA) requirements, and the Information and Life Cycle Management Manual, COMDTINST M5212.12 (series).  This policy does not have any significant or substantial change to existing records management requirements.

10. <u>FORMS/REPORTS</u>.  The forms referenced in this Commandant Change Notice are available in USCG Electronic Forms on the Standard Workstation or on the Internet: https://dcms.uscg.afpims.mil/Our-Organization/Assistant-Commandant-for-C4IT-CG-6/The-Office-of-Information-Management-CG-61/Forms-Management/; and CG Portal at https://cgportal2.uscg.mil/library/forms/SitePages/Home.aspx.  Department of Defense (DoD) Forms may be found here: https://www.esd.whs.mil/directives/forms/.

11. <u>REQUEST FOR CHANGES</u>.  Recommendations for changes or improvements to Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3 (series), are welcome and should be submitted via the chain of command to the Office of Military Personnel, Policy and Standards Division, Commandant (CG-1331), at HQS-PolicyandStandards@uscg.mil.


                        A. W. WILLIAMS /s/
                        Captain, U.S. Coast Guard
                        Acting Director of Military Personnel

COMDTCHANGENOTE 1000

THIS PAGE INTENTIONALLY BLANK

**U.S. Department of Homeland Security**

**United States Coast Guard**

Commandant
United States Coast Guard

US Coast Guard Stop 7907
2703 Martin Luther King Jr Ave SE
Washington, DC 20593-7907
Staff Symbol: CG-1331
Phone: (202) 475-5372
Fax: (202) 372-8473

COMDTCHANGENOTE 1000
04 JAN 2018

COMMANDANT CHANGE NOTICE 1000

Subj:  CH-10 TO OFFICER ACCESSIONS, EVALUATIONS, AND PROMOTIONS, COMDTINST M1000.3A

1. <u>PURPOSE</u>. This Commandant Change Notice publishes a change to the Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3A.

2. <u>ACTION</u>. All Coast Guard unit commanders, commanding officers, officer-in-charge, deputy/assistant commandants, and chiefs of headquarters staff elements must comply with the provisions of this Commandant Change Notice.  Internet release is authorized.

3. <u>DIRECTIVES AFFECTED</u>. With the addition of this Commandant Change Notice, Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3A, is updated.

4. <u>DISCLAIMER</u>. This document is intended to provide operational requirements for Coast Guard personnel and is not intended to nor does it impose legally-binding requirements on any party outside the Coast Guard.

5. <u>MAJOR CHANGES</u>.

   a. Chapter 1, Article 1.G.4.a. Approved Appointment to the Same Grade has been updated.

   b. Sections in Chapter 5 updated to clarify Officer Evaluation System.

6. <u>ENVIRONMENTAL ASPECT AND IMPACT CONSIDERATIONS</u>.

   a. The development of this Commandant Change Notice and the general policies contained within it have been thoroughly reviewed by the originating office in conjunction with the Office of Environmental Management, and are categorically excluded (CE) under current USCG CE # 33 from further environmental analysis, in accordance with Section 2.B.2.

DISTRIBUTION – SDL No. 168

|   | a | b | c | d | e | f | g | h | i | j | k | l | m | n | o | p | q | r | s | t | u | v | w | x | y | z |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A | X | X | X | X | X | X | X |   |   | X | X |   | X | X | X | X | X |   |   | X |   | X |   |   |   |   |
| B |   | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| C | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| D | X | X | X | X | X |   |   | X | X | X | X | X | X | X | X | X | X | X | X | X |   |   |   |   |   |   |
| E | X | X | X | X | X | X | X | X | X | X | X | X | X | X |   | X |   | X |   |   | X | X |   |   |   |   |
| F |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   | X | X | X |   |   |   |   |   |   |   |
| G |   | X | X | X | X |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |
| H |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |

NON-STANDARD DISTRIBUTION:

**23**

and Figure 2-1 of the National Environmental Policy Act Implementing Procedures and Policy for Considering Environmental Impacts, COMDTINST M16475.1 (series).

b.  This Directive will not have any of the following: significant cumulative impacts on the human environment; substantial controversy or substantial change to existing environmental conditions; or inconsistencies with any Federal, State, or local laws or administrative determinations relating to the environment.  All future specific actions resulting from the general policies in this Commandant Change Notice must be individually evaluated for compliance with the National Environmental Policy Act (NEPA), Council on Environmental Policy NEPA regulations at 40 CFR Parts 1500-1508, DHS and Coast Guard NEPA policy, and compliance with all other environmental mandates.

7.  <u>DISTRIBUTION</u>. No paper distribution will be made of this Commandant Change Notice. An electronic version will be located on the following Commandant (CG-612) web sites. Internet: http://www.dcms.uscg.mil/Directives/, and CGPortal: https://cgportal2.uscg.mil/library/Directives/SitePages/Home.aspx.

8.  <u>PROCEDURE</u>.  If maintaining a paper library, remove and replace the following Sections of the Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3A:

| Remove | Replace |
|---|---|
| Table of Contents (i – iv) | Table of Contents (i – iv) |
| 1-97 to 1-98 | 1-97 to 1-98 |
| 5-1 – 5-20 | 5-1 – 5-20 |

9.  <u>RECORDS MANAGEMENT CONSIDERATIONS</u>.  This Commandant Change Notice has been evaluated for potential records management impacts.  The development of this Commandant Change Notice has been thoroughly reviewed during the Directives clearance process, and it has been determined there are no further records scheduling requirements, in accordance with Federal Records Act, 44 U.S.C. 3101 et seq., National Archives and Records Administration (NARA) requirements, and the Information and Life Cycle Management Manual, COMDTINST M5212.12 (series).  This policy does not have any significant or substantial change to existing records management requirements.

10. <u>FORMS/REPORTS</u>.  The forms referenced in this Commandant Change Notice are available in USCG Electronic Forms on the Standard Workstation or on the Internet: https://dcms.uscg.afpims.mil/Our-Organization/Assistant-Commandant-for-C4IT-CG-6/The-Office-of-Information-Management-CG-61/Forms-Management/; and CG Portal at https://cgportal2.uscg.mil/library/forms/SitePages/Home.aspx

COMDTCHANGENOTE 1000

11. <u>REQUEST FOR CHANGES</u>.  Recommendations for changes or improvements to Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3 (series), are welcome and should be submitted via the chain of command to the Office of Military Personnel, Policy and Standards Division, Commandant (CG-1331), at HQS-PolicyandStandards@uscg.mil.




/A. S. MCKINLEY/
Rear Admiral, U.S. Coast Guard Reserve
Director of Reserve and Military Personnel

COMDTCHANGENOTE 1000

THIS PAGE INTENTIONALLY BLANK

Commandant
United States Coast Guard

US Coast Guard Stop 7907
2703 Martin Luther King Jr Ave SE
Washington, DC 20593-7907
Staff Symbol: CG-1331
Phone: (202) 475-5372
Fax: (202) 372-8473

**U.S. Department of Homeland Security**

**United States Coast Guard**

COMDTCHANGENOTE 1000
22 August 2017

COMMANDANT CHANGE NOTICE 1000

Subj:   CH-9 TO OFFICER ACCESSIONS, EVALUATIONS, AND PROMOTIONS, COMDTINST M1000.3A

1. PURPOSE. This Commandant Change Notice publishes a change to the Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3A.

2. ACTION. All Coast Guard unit commanders, commanding officers, officer-in-charge, deputy/assistant commandants, and chiefs of headquarters staff elements must comply with the provisions of this Commandant Change Notice.  Internet release is authorized.

3. DIRECTIVES AFFECTED. With the addition of this Commandant Change Notice, Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3A is updated.

4. DISCLAIMER. This document is intended to provide operational requirements for Coast Guard personnel and is not intended to nor does it impose legally-binding requirements on any party outside the Coast Guard.

5. MAJOR CHANGES.  A new chief warrant officer to Reserve Program Administrator (CWO to RPA) program has been created in Chapter 7.  Prohibited comments in for relief from primary duties (RPD) officer evaluations reports (OERs) have been clarified in Article 5.I.1. of this Manual.

6. ENVIRONMENTAL ASPECT AND IMPACT CONSIDERATIONS.

   a. The development of this Commandant Change Notice and the general policies contained within it have been thoroughly reviewed by the originating office in conjunction with the Office of Environmental Management, and are categorically excluded (CE) under current USCG CE # 33 from further environmental analysis, in accordance with Section 2.B.2.

DISTRIBUTION – SDL No. 168

| | a | b | c | d | e | f | g | h | i | j | k | l | m | n | o | p | q | r | s | t | u | v | w | x | y | z |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A | X | X | X | X | X | X | X | | | X | X | | X | X | X | X | X | | X | | X | | | | | |
| B | | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
|   | | X | X | X | X | X | X | | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| D | X | X | X | X | | | | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | | | | |
| E | X | X | X | X | X | X | X | | | | | | | X | | | X | | X | X | | | X | X | | |
| F | | | | | | | | | | | | | | | | | X | X | X | | | | | | | |
| G | | X | X | X | X | | | | | | | | | | | | | | | | | | | | | |
| H | | | | | | | | | | | | | | | | | | | | | | | | | | |

NON-STANDARD DISTRIBUTION:

and Figure 2-1 of the National Environmental Policy Act Implementing Procedures and Policy for Considering Environmental Impacts, COMDTINST M16475.1 (series).

b. This Directive will not have any of the following: significant cumulative impacts on the human environment; substantial controversy or substantial change to existing environmental conditions; or inconsistencies with any Federal, State, or local laws or administrative determinations relating to the environment.  All future specific actions resulting from the general policies in this Commandant Change Notice must be individually evaluated for compliance with the National Environmental Policy Act (NEPA), Council on Environmental Policy NEPA regulations at 40 CFR Parts 1500-1508, DHS and Coast Guard NEPA policy, and compliance with all other environmental mandates.

7. <u>DISTRIBUTION</u>. No paper distribution will be made of this Commandant Change Notice. An electronic version will be located on the following Commandant (CG-612) web sites. Internet: <u>https://www.uscg.mil/Directives/</u>, and CGPortal: <u>https://cgportal2.uscg.mil/library/Directives/SitePages/Home.aspx</u>.

8. <u>PROCEDURE</u>.  If maintaining a paper library, remove and replace the following sections of the Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3A:

| Remove | Replace |
|---|---|
| Table of Contents, CH-8 | Table of Contents, CH-9 |
| 5-13 to 5-14 | 5-13 to 5-14 |
| Chapter 7 | Chapter 7 |

9. <u>RECORDS MANAGEMENT CONSIDERATIONS</u>.  This Commandant Change Notice has been evaluated for potential records management impacts.  The development of this Commandant Change Notice has been thoroughly reviewed during the Directives clearance process, and it has been determined there are no further records scheduling requirements, in accordance with Federal Records Act, 44 U.S.C. 3101 et seq., National Archives and Records Administration (NARA) requirements, and the Information and Life Cycle Management Manual, COMDTINST M5212.12 (series).  This policy does not have any significant or substantial change to existing records management requirements.

10. <u>FORMS/REPORTS</u>.  The forms referenced in this Commandant Change Notice are available in USCG Electronic Forms on the Standard Workstation or on the Internet: <u>http://www.uscg.mil/forms/</u>; and CG Portal at <u>https://cgportal2.uscg.mil/library/forms/SitePages/Home.aspx</u>

COMDTCHANGENOTE 1000

11. <u>REQUEST FOR CHANGES</u>.  Recommendations for changes or improvements to Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3 (series), are welcome and should be submitted via the chain of command to the Office of Military Personnel, Policy and Standards Division, Commandant (CG-1331), at HQS-PolicyandStandards@uscg.mil.

A. S. MCKINLEY /s/
Rear Admiral, U.S. Coast Guard Reserve
Acting Director of Reserve and Military Personnel

29

COMDTCHANGENOTE 1000

THIS PAGE INTENTIONALLY BLANK

**U.S. Department of Homeland Security**

**United States Coast Guard**

Commandant
United States Coast Guard

US Coast Guard Stop 7907
2703 Martin Luther King Jr Ave SE
Washington, DC 20593-7907
Staff Symbol: CG-1331
Phone: (202) 475-5372
Fax: (202) 372-8473

COMDTCHANGENOTE 1000
19 June 2017

COMMANDANT CHANGE NOTICE 1000

Subj:   CH-8 TO OFFICER ACCESSIONS, EVALUATIONS, AND PROMOTIONS,
COMDTINST M1000.3A

1. <u>PURPOSE</u>. This Commandant Change Notice publishes a change to the Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3A.

2. <u>ACTION</u>. All Coast Guard unit commanders, commanding officers, officer-in-charge, deputy/assistant commandants, and chiefs of headquarters staff elements must comply with the provisions of this Commandant Change Notice.  Internet release is authorized.

3. <u>DIRECTIVES AFFECTED</u>. With the addition of this Commandant Change Notice, Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3A is updated.

   a. Policy and standards for appointment of warrant officers, formerly Articles 1.D.1. to 1.D.15. of this Manual, have moved to a new Directive, Appointing Warrant Officers, COMDTINST M1420.1 (series).

   b. Policy and standards for assignment Specialty Force Managers (SFM), formerly Article 1.D.16. of this Manual, will be moved to Military Assignments and Authorized Absences, COMDTINST M1000.8 (series).

   c. Policy and standards for conducting the Selective Early Retirement Board (SERB) for warrant officers will be moved to Military Separations, COMDTINST M1000.4 (series).

4. <u>DISCUSSION</u>. This Change incorporates two separate initiatives: removing overlap with Coast Guard Recruiting Manual, COMDTINST M1100.2 (series) and updating policies and standards for appointing warrant officers.

DISTRIBUTION – SDL No. 168

|   | a | b | c | d | e | f | g | h | i | j | k | l | m | n | o | p | q | r | s | t | u | v | w | x | y | z |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A | X | X | X | X | X | X | X |   |   | X | X |   | X | X | X | X | X |   |   | X |   | X |   |   |   |   |
| B |   | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
|   | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| D | X | X | X | X | X |   |   | X | X | X | X | X | X | X | X | X | X | X |   |   |   |   |   |   |   |   |
| E | X | X | X | X | X | X |   | X | X | X | X | X |   | X |   | X |   |   |   |   |   |   |   |   |   |   |
| F |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   | X | X | X |   |   |   |   |   |   |   |
| G |   | X | X | X | X |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |
| H |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |

NON-STANDARD DISTRIBUTION:

**31**

a. Commandant (CG-13) continues to review, update, and centralize Service accession policies and standards into a single directive, currently Coast Guard Recruiting Manual, COMDTINST M1100.2 (series). This Change removes content from this Manual that was redundant with Coast Guard Recruiting Manual, COMDTINST M1100.2 (series), which was re-promulgated last year. This change does not impact any policy or standard

b. Appointing warrant officers is not a Service wide accession policy, because the vast majority of warrant officer appointees are enlisted members of the Coast Guard and Coast Guard Reserve. In addition, this policy is complex and unique enough to justify its own Directive. Changes to policies and standards for appointing warrant officers are stated in Appointing Warrant Officers, COMDTINST M1420.1 (series).

5. <u>DISCLAIMER</u>. This document is intended to provide operational requirements for Coast Guard personnel and is not intended to nor does it impose legally-binding requirements on any party outside the Coast Guard.

6. <u>MAJOR CHANGES</u>.

a. Policies in Chapter 1 that were redundant with Reference (a) have been removed, specifically Articles 1.A.5 for Licensed U.S. Merchant Marine Officers, 1.A.7. for Physicaian Assistants, Article 1.B.1. for Reserve Officers on Active Duty, Article 1.B.9. for Officer Programs inverviewing Guidelines, and Article 1.C. Selected Reserve Commission Officer Program.

b. Article 1.D., Appointment of as Warrant Officer, has been moved to other Directives, per paragraphs 3 and 4 of this Commandant Change Notice. Assignment policy for specialty force managers has been removed and will be added in a later revision to Military Assignments and Authorized Absences, COMDTINST M1000.8 (series).

c. Article 2.A.2. – Two specialities, Diver (DIV) and Marine Safety Specialist Response (MSSR) have been added to the warrantofficer specialties and to the warrant to temporary lieutenant lists.

d. Sections in Chapter 3 that were redundant with Article 1.D. of this Manual have also been removed.

e. Article 3.AB.3.b. has been updated. Warrant officers promotion zones will be based on 15 December of each promotion year, instead of when the selection board convenes.

f. The Selective Early Retirement Board (SERB) in Article 3.B.8. of this Manual has been deleted and will be moved to a new Chapter in Reference (c) in a future update to that Manual.

7. <u>ENVIRONMENTAL ASPECT AND IMPACT CONSIDERATIONS</u>.

a. The development of this Commandant Change Notice and the general policies contained within it have been thoroughly reviewed by the originating office in conjunction with the

COMDTCHANGENOTE 1000

Office of Environmental Management, and are categorically excluded (CE) under current USCG CE # 33 from further environmental analysis, in accordance with Section 2.B.2. and Figure 2-1 of the National Environmental Policy Act Implementing Procedures and Policy for Considering Environmental Impacts, COMDTINST M16475.1 (series).

b.  This directive will not have any of the following: significant cumulative impacts on the human environment; substantial controversy or substantial change to existing environmental conditions; or inconsistencies with any Federal, State, or local laws or administrative determinations relating to the environment.  All future specific actions resulting from the general policies in this Commandant Change Notice must be individually evaluated for compliance with the National Environmental Policy Act (NEPA), Council on Environmental Policy NEPA regulations at 40 CFR Parts 1500-1508, DHS and Coast Guard NEPA policy, and compliance with all other environmental mandates.

8.  <u>DISTRUBUTION</u>. No paper distribution will be made of this Commandant Change Notice. An electronic version will be located on the following Commandant (CG-612) web sites. Internet: https://www.uscg.mil/directives/, and CGPortal: https://cgportal2.uscg.mil/library/directives/SitePages/Home.aspx.

9.  <u>PROCEDURE</u>.  If maintaining a paper library, remove and replace the following sections of the Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3A:

| <u>Remove</u> | <u>Replace</u> |
|---|---|
| Table of Contents, CH-7 | Table of Contents, CH-8 |
| 1-3 to 1-6 | 1-3 to 1-6 |
| 1-13 to 1-16 | 1-13 to 1-16 |
| 1-29 to 1-82 | 1-29 to 1-82 |
| 2-1 to 2-4 | 2-1 to 2-4 |
| 3-25 to 3-28 | 3-25 to 3-28 |
| 3-33 to 3-36 | 3-33 to 3-36 |
| 3-39 to 3-40 | 3-39 to 3-40 |

10. <u>RECORDS MANAGEMENT CONSIDERATIONS</u>.  This Commandant Change Notice has been evaluated for potential records management impacts.  The development of this Commandant Change Notice has been thoroughly reviewed during the directives clearance process, and it has been determined there are no further records scheduling requirements, in accordance with Federal Records Act, 44 U.S.C. 3101 et seq., National Archives and Records Administration (NARA) requirements, and the Information and Life Cycle Management Manual, COMDTINST M5212.12 (series).  This policy does not have any significant or substantial change to existing records management requirements.

11. <u>FORMS/REPORTS</u>.  The forms referenced in this Commandant Change Notice are available in USCG Electronic Forms on the Standard Workstation or on the Internet: http://www.uscg.mil/forms/; and CG Portal at https://cgportal2.uscg.mil/library/forms/SitePages/Home.aspx

11. <u>REQUEST FOR CHANGES</u>.  Recommendations for changes or improvements to Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3 (series), are welcome and should be submitted via the chain of command to the Office of Military Personnel, Policy and Standards Division, Commandant (CG-1331), at HQS-PolicyandStandards@uscg.mil.

A. S. MCKINLEY /s/
Rear Admiral, U.S. Coast Guard Reserve
Acting Director of Reserve and Military Personnel

**34**

**U.S. Department of Homeland Security**

**United States Coast Guard**

Commandant
United States Coast Guard

US Coast Guard Stop 7907
2703 Martin Luther King Jr Ave SE
Washington, DC 20593-7907
Staff Symbol: CG-1331
Phone: (202) 475-5178
Fax: (202) 372-8473

COMDTCHANGENOTE 1000
21 APR 2017

COMMANDANT CHANGE NOTICE 1000

Subj: CH-7 TO OFFICER ACCESSIONS, EVALUATIONS, AND PROMOTIONS,
COMDTINST M1000.3A

1. PURPOSE. This Commandant Change Notice publishes a change to the Officer Accessions,
Evaluations, and Promotions, COMDTINST M1000.3A.

2. ACTION. All Coast Guard unit commanders, commanding officers, officer-in-charge,
deputy/assistant commandants, and chiefs of headquarters staff elements must comply with
the provisions of this Commandant Change Notice.  Internet release is authorized.

3. DIRECTIVES AFFECTED. With the addition of this Commandant Change Notice, the
Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3A is updated.

4. DISCLAIMER. This document is intended to provide operational requirements for Coast
Guard personnel and is not intended to nor does it impose legally-binding requirements on
any party outside the Coast Guard.

5. MAJOR CHANGES. This Change updates policies and standards applicable to Reserve
Program Administrators (RPA).

   a. Policies and standards for the designation for provisional and permanent RPA in Articles
   1.B.3., 1.B.4., and 3.A.6.a. have been revised and placed in a new Chapter 7. To increase
   the number of applicants and improve the overall health of the RPA corps, the eligibility
   standards and protection from non-selection for promotion have been updated.

   b. The Opportunity for Selection calculation in Article 3.A.6.e.(3) is cancelled and Article
   3.A.6.e.(2) is amended to apply whenever Article 3.A.6.e.(1) does not apply. ADM Allen
   approved this change in the 2006 and Commandant (CG-12A) has ensured correct

DISTRIBUTION – SDL No. 168

|   | a | b | c | d | e | f | g | h | i | j | k | l | m | n | o | p | q | r | s | t | u | v | w | x | y | z |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A | X | X | X | X | X | X | X |   |   | X | X |   | X | X | X | X | X |   | X |   | X |   |   |   |   |   |
| B | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
|   | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| D | X | X | X | X |   |   | X | X | X | X | X |   | X | X | X | X | X | X | X | X | X |   |   |   |   |   |
| E | X | X | X | X | X | X | X |   |   | X | X |   | X |   |   |   | X |   | X |   |   | X | X | X |   |   |
| F |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   | X | X | X |   |   |   |   |   |   |   |
| G |   | X | X | X | X |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |
| H |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |

NON-STANDARD DISTRIBUTION:

numbers of RPAs to select for promotion, but the change was not incorporated into COMDTINST until now.

6. ENVIRONMENTAL ASPECT AND IMPACT CONSIDERATIONS.

   a. The development of this Commandant Change Notice and the general policies contained within it have been thoroughly reviewed by the originating office in conjunction with the Office of Environmental Management, and are categorically excluded (CE) under current USCG CE # 33 from further environmental analysis, in accordance with Section 2.B.2. and Figure 2-1 of the National Environmental Policy Act Implementing Procedures and Policy for Considering Environmental Impacts, COMDTINST M16475.1 (series).

   b. This directive will not have any of the following: significant cumulative impacts on the human environment; substantial controversy or substantial change to existing environmental conditions; or inconsistencies with any Federal, State, or local laws or administrative determinations relating to the environment.  All future specific actions resulting from the general policies in this Commandant Change Notice must be individually evaluated for compliance with the National Environmental Policy Act (NEPA), Council on Environmental Policy NEPA regulations at 40 CFR Parts 1500-1508, DHS and Coast Guard NEPA policy, and compliance with all other environmental mandates.

7. DISTRUBUTION. No paper distribution will be made of this Commandant Change Notice. An electronic version will be located on the following Commandant (CG-612) web sites. Internet: http://www.uscg.mil/directives/, and CGPortal: https://cgportal2.uscg.mil/library/directives/SitePages/Home.aspx.

8. PROCEDURE.  If maintaining a paper library, remove and replace the following sections of the Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3A:

| Remove | Replace |
|---|---|
| Table of Contents | Table of Contents |
| 1-17 to 1-20 | 1-17 to 1-20 |
| 3-9 to 3-14 | 3-9 to 3-14 |
| | Chapter 7 |

9. RECORDS MANAGEMENT CONSIDERATIONS.  This Commandant Change Notice has been evaluated for potential records management impacts.  The development of this Commandant Change Notice has been thoroughly reviewed during the directives clearance process, and it has been determined there are no further records scheduling requirements, in accordance with Federal Records Act, 44 U.S.C. 3101 et seq., National Archives and Records Administration (NARA) requirements, and the Information and Life Cycle Management Manual, COMDTINST M5212.12 (series).  This policy does not have any significant or substantial change to existing records management requirements.

COMDTCHANGENOTE 1000

10. <u>FORMS/REPORTS</u>.  The forms referenced in this Commandant Change Notice are available in USCG Electronic Forms on the Standard Workstation or on the Internet: http://www.uscg.mil/forms/; and CG Portal at https://cgportal2.uscg.mil/library/forms/SitePages/Home.aspx

11. <u>REQUEST FOR CHANGES</u>.  Recommendations for changes or improvements to Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3 (series), are welcome and should be submitted via the chain of command to the Office of Military Personnel, Policy and Standards Division, Commandant (CG-1331), at HQS-PolicyandStandards@uscg.mil.

K. B. HINRICHS /s/
Rear Admiral, U.S. Coast Guard Reserve
Director of Reserve and Military Personnel

COMDTCHANGENOTE 1000

PAGE INTENTIONALLY LEFT BANK

**U.S. Department of Homeland Security**

**United States Coast Guard**

Commandant
United States Coast Guard

US Coast Guard Stop 7801
2703 Martin Luther King Jr Ave SE
Washington, DC 20593-7801
Staff Symbol: CG-1331
Phone: (202) 475-5382
Fax: (202) 475-5927

COMDTCHANGENOTE 1000
28 Nov 2016

COMMANDANT CHANGE NOTICE 1000

Subj: CH-6 TO OFFICER ACCESSIONS, EVALUATIONS, AND PROMOTIONS, COMDTINST M1000.3A

1. <u>PURPOSE</u>. This Commandant Change Notice publishes a change to the Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3A.

2. <u>ACTION</u>. All Coast Guard unit commanders, commanding officers, officers-in-charge, deputy/assistant commandants, and chiefs of Headquarters staff elements shall comply with the provisions of this Commandant Change Notice.  Internet release is authorized.

3. <u>DIRECTIVES AFFECTED</u>. Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3A, is updated.

4. <u>DISCLAIMER</u>. This guidance is not a substitute for applicable legal requirements, nor is it itself a rule.  It is intended to provide operational guidance for Coast Guard personnel and is not intended to nor does it impose legally-binding requirements on any party outside the Coast Guard.

5. <u>MAJOR CHANGES</u>. This Change updates the Officer Evaluation System (OES) policies and standards in Chapter 5 of this Manual.

    a. Delegated additional authorities to Commander (CG PSC):

        (1) Submission dates for biennial, annual, and semiannual OERs,

        (2) Determination of which officers follow the DUINS schedule,

        (3) Designation and responsibilities of the rating chain, and

        (4) Ability to grant exceptions to policy and standards for this Chapter.

DISTRIBUTION – SDL No. 168

|   | a | b | c | d | e | f | g | h | i | j | k | l | m | n | o | p | q | r | s | t | u | v | w | x | y | z |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A | X | X | X | X | X | X | X |   | X | X |   | X | X | X | X | X | X |   | X |   | X |   |   |   |   |   |
| B |   | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |   | X | X | X | X | X | X | X | X |
| C | X | X | X | X | X |   | X |   |   | X | X | X | X | X | X | X | X |   | X | X | X | X | X | X | X | X |
| D | X | X | X | X | X |   |   | X | X | X | X | X | X | X | X | X |   |   | X | X | X |   |   |   |   |   |
| E | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |   | X |   | X | X |   |   | X | X |   |   |
| F |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   | X | X | X |   |   |   |   |   |   |   |
| G |   | X | X | X | X |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |
| H |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |

NON-STANDARD DISTRIBUTION:

b. Removed "Special" OER terminology. The word "Special" was used due to limited space on the OER form. Each occasion of report is now listed and OER's are categorized as "Regular" and "Non-regular" on all OER forms in accordance with this policy.

c. Comments with 4, 5, or 6 no longer require written support. This change will allow rating chains the flexibility to comment on significant performance factors during the marking period.

d. All reported on officers must receive mid-period counseling, which will be documented on the OER form.

e. All Inactive Duty Promotion List (IDPL) officers who are subject to a retention board must submit an OER.

6. <u>ENVIRONMENTAL ASPECT AND IMPACT CONSIDERATIONS</u>.

a. The development of this Commandant Change Notice and the general policies contained within it have been thoroughly reviewed by the originating office in conjunction with the Office of Environmental Management, and are categorically excluded (CE) under current USCG CE # 33 from further environmental analysis, in accordance with Section 2.B.2. and Figure 2-1 of the National Environmental Policy Act Implementing Procedures and Policy for Considering Environmental Impacts, COMDTINST M16475.1 (series). Because this Commandant Change Notice contains guidance on, and provisions for, compliance with applicable environmental mandates, Coast Guard categorical exclusion #33 is appropriate.

b. This Commandant Change Notice will not have any of the following: significant cumulative impacts on the human environment; substantial controversy or substantial change to existing environmental conditions; or inconsistencies with any Federal, State, or local laws or administrative determinations relating to the environment. All future specific actions resulting from the general policies in this Commandant Change Notice must be individually evaluated for compliance with the National Environmental Policy Act (NEPA), Council on Environmental Policy NEPA regulations at 40 CFR Parts 1500-1508, DHS and Coast Guard NEPA policy, and compliance with all other environmental mandates.

7. <u>DISTRUBUTION</u>. No paper distribution will be made of this Commandant Change Notice. An electronic version will be located on the following Commandant (CG-612) web sites. Internet: http://www.uscg.mil/directives/, and CGPortal: https://cgportal2.uscg.mil/library/directives/SitePages/Home.aspx.

8. <u>PROCEDURE</u>. Remove and replace the following sections of Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3A

| <u>Remove</u> | <u>Replace</u> |
|---|---|
| Table of Contents, CH-5 | Table of Contents, CH-6 |
| Chapter 5 | Chapter 5 |

9.  <u>RECORDS MANAGEMENT CONSIDERATIONS</u>. This Commandant Change Notice has been thoroughly reviewed during the directives clearance process, and it has been determined there are records scheduling requirements, in accordance with Federal Records Act, 44 U.S.C. 3101 et seq., NARA requirements, and Information and Life Cycle Management Manual, COMDTINST M5212.12 (series).

10. <u>FORMS/REPORTS</u>. The forms referenced in this Commandant Change Notice are available in USCG Electronic Forms on the Standard Workstation or on the Internet: http://www.uscg.mil/forms/ and CG Portal https://cgportal2.uscg.mil/library/forms/SitePages/Home.aspx;

11. <u>REQUEST FOR CHANGES</u>. Units and individuals may recommend changes via the chain of command to HQS-PolicyandStandards@uscg.mil.


K. B. HINRICHS /s/
Rear Admiral, U.S. Coast Guard Reserve
Director of Reserve and Military Personnel

COMDTCHANGENOTE 1000

THIS PAGE INTENTIONALLY BLANK

**U.S. Department of Homeland Security**

**United States Coast Guard**

Commandant
United States Coast Guard

US Coast Guard Stop 7907
2703 Martin Luther King Jr Ave SE
Washington, DC 20593-7907
Staff Symbol: CG-1331
Phone: (202) 475-5372
Fax: (202) 372-8473

COMDTCHANGENOTE 1000
21 Nov 2016

COMMANDANT CHANGE NOTICE 1000

Subj:   CH-5 TO OFFICER ACCESSIONS, EVALUATIONS, AND PROMOTIONS, COMDTINST M1000.3A

Ref:   (a)  Coast Guard Recruiting Manual, COMDTINST M1100.2 (series)
      (b)  Coast Guard Medical Manual, COMDTINST M6000.1 (series)
      (c)  Military Separations, COMDTINST M1000.4 (series)
      (d)  Manual for Courts-Martial (MCM) (series)
      (e)  Coast Guard Investigations Manual, COMDTINST M5527.1 (series)
      (f)  Coast Guard Weight and Body Fat Standards Program Manual, COMDTINST M1020.8 (series)
      (g)  Coast Guard Pay Manual, COMDTINST M7220.29 (series)
      (h)  Schedule of Active Duty Promotion List (ADPL) and Inactive Duty Promotion List (IDPL) Officer Personnel Boards and Panels, PSCNOTE 1401.5 (series)
      (i)  Enlisted Accessions, Evaluations, and Advancements, COMDTINST M1000.2 (series)
      (j)  Performance, Training and Education Manual, COMDTINST M1500.10 (series)
      (k)  Personnel Security and Suitability Program, COMDTINST M5520.12 (series)
      (l)  Coast Guard Air Operations Manual, COMDTINST M3710.1 (series)
      (m)  Uniform Regulations, COMDTINST M1020.6 (series)
      (n)  Coast Guard Diving Policies and Procedures Manual, Volume 1, COMDTINST M3150.1 (series)
      (o)  Marine Safety Manual, Volume I, Administration and Management, COMDTINST M16000.6 (series)
      (p)  Information and Life Cycle Management Manual, COMDTINST M5212.12 (series)
      (q)  Military Assignments and Authorized Absences, COMDTINST M1000.8 (series)
      (r)  Discipline and Conduct, COMDTINST M1600.2 (series)

1.  <u>PURPOSE</u>. This Commandant Change Notice publishes a change to the Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3A.

DISTRIBUTION – SDL No. 168

|   | a | b | c | d | e | f | g | h | i | j | k | l | m | n | o | p | q | r | s | t | u | v | w | x | y | z |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A | X | X | X | X | X | X | X |   |   | X | X |   | X | X | X | X | X |   | X |   | X |   |   |   |   |   |
| B |   | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |   | X |   |   |   |   |   |   |   |
| C |   | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| D | X | X | X | X |   |   | X | X | X | X | X | X | X | X | X | X | X |   |   |   |   |   |   |   |   |   |
| E | X | X | X | X | X | X |   |   | X | X |   | X |   | X | X |   | X | X |   | X | X | X |   |   |   |   |
| F |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   | X | X | X | X |   |   |   |   |   |   |   |
| G |   | X | X | X | X |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |
| H |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |

NON-STANDARD DISTRIBUTION:

2.  <u>ACTION</u>. All Coast Guard unit commanders, commanding officers, officer-in-charge, deputy/assistant commandants, and chiefs of headquarters staff elements must comply with the provisions of this Commandant Change Notice.  Internet release is authorized.

3.  <u>DIRECTIVES AFFECTED</u>. With the addition of this Commandant Change Notice, the Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3A is updated.

4.  <u>DISCLAIMER</u>. This document is intended to provide operational requirements for Coast Guard personnel and is not intended to nor does it impose legally-binding requirements on any party outside the Coast Guard.

5.  <u>MAJOR CHANGES</u>. This Commandant Change Notice establishes the following major change: Article 6.B.14. Specialty Considered Selections (SCS) has been added.

6.  <u>ENVIRONMENTAL ASPECT AND IMPACT CONSIDERATIONS</u>.

    a.  The development of this Commandant Change Notice and the general policies contained within it have been thoroughly reviewed by the originating office in conjunction with the Office of Environmental Management, and are categorically excluded (CE) under current USCG CE # 33 from further environmental analysis, in accordance with Section 2.B.2. and Figure 2-1 of the National Environmental Policy Act Implementing Procedures and Policy for Considering Environmental Impacts, COMDTINST M16475.1 (series).

    b.  This directive will not have any of the following: significant cumulative impacts on the human environment; substantial controversy or substantial change to existing environmental conditions; or inconsistencies with any Federal, State, or local laws or administrative determinations relating to the environment.  All future specific actions resulting from the general policies in this Commandant Change Notice must be individually evaluated for compliance with the National Environmental Policy Act (NEPA), Council on Environmental Policy NEPA regulations at 40 CFR Parts 1500-1508, DHS and Coast Guard NEPA policy, and compliance with all other environmental mandates.

7.  <u>DISTRUBUTION</u>. No paper distribution will be made of this Commandant Change Notice. An electronic version will be located on the following Commandant (CG-612) web sites. Internet: http://www.uscg.mil/directives/, and CGPortal: https://cgportal2.uscg.mil/library/directives/SitePages/Home.aspx.

8.  <u>PROCEDURE</u>.  If maintaining a paper library, remove and replace the following sections of the Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3A:

| Remove | Replace |
|---|---|
| Table of Contents, CH-4 | Table of Contents, CH-5 |
| Pages 6-35 – 6-36 | Page 6-35 – 6-38 |

COMDTCHANGENOTE 1000

9. <u>RECORDS MANAGEMENT CONSIDERATIONS</u>.  This Commandant Change Notice has been evaluated for potential records management impacts.  The development of this Commandant Change Notice has been thoroughly reviewed during the directives clearance process, and it has been determined there are no further records scheduling requirements, in accordance with Federal Records Act, 44 U.S.C. 3101 et seq., National Archives and Records Administration (NARA) requirements, and the Information and Life Cycle Management Manual, COMDTINST M5212.12 (series).  This policy does not have any significant or substantial change to existing records management requirements.

10. <u>FORMS/REPORTS</u>.  The forms referenced in this Commandant Change Notice are available in USCG Electronic Forms on the Standard Workstation or on the Internet: http://www.uscg.mil/forms/; CG Portal at https://cgportal2.uscg.mil/library/forms/SitePages/Home.aspx; and Intranet at http://cgweb.comdt.uscg.mil/CGForms.

11. <u>REQUEST FOR CHANGES</u>.  Recommendations for changes or improvements to Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3 (series), are welcome and should be submitted via the chain of command to the Office of Military Personnel, Policy and Standards Division, Commandant (CG-1331), at HQS-PolicyandStandards@uscg.mil.

K. B. HINRICHS /s/
Rear Admiral, U.S. Coast Guard Reserve
Director of Reserve and Military Personnel

45

COMDTCHANGENOTE 1000

PAGE INTENTIONALLY LEFT BANK

**U.S. Department of Homeland Security**

**United States Coast Guard**

Commandant
United States Coast Guard

US Coast Guard Stop 7907
2703 Martin Luther King Jr Ave SE
Washington, DC 20593-7907
Staff Symbol: CG-1331
Phone: (202) 475-5372
Fax: (202) 372-8473

COMDTCHANGENOTE 1000
13 Jun 2016

COMMANDANT CHANGE NOTICE 1000

Subj:   CH-4 TO OFFICER ACCESSIONS, EVALUATIONS, AND PROMOTIONS, COMDTINST M1000.3A

Ref:   (a)  Coast Guard Recruiting Manual, COMDTINST M1100.2 (series)
       (b)  Coast Guard Medical Manual, COMDTINST M6000.1 (series)
       (c)  Military Separations, COMDTINST M1000.4 (series)
       (d)  Manual for Courts-Martial (MCM) (series)
       (e)  Coast Guard Investigations Manual, COMDTINST M5527.1 (series)
       (f)  Coast Guard Weight and Body Fat Standards Program Manual, COMDTINST M1020.8 (series)
       (g)  Coast Guard Pay Manual, COMDTINST M7220.29 (series)
       (h)  Schedule of Active Duty Promotion List (ADPL) and Inactive Duty Promotion List (IDPL) Officer Personnel Boards and Panels, PSCNOTE 1401.5 (series)
       (i)  Enlisted Accessions, Evaluations, and Advancements, COMDTINST M1000.2 (series)
       (j)  Performance, Training and Education Manual, COMDTINST M1500.10 (series)
       (k)  Personnel Security and Suitability Program, COMDTINST M5520.12 (series)
       (l)  Coast Guard Air Operations Manual, COMDTINST M3710.1 (series)
       (m)  Uniform Regulations, COMDTINST M1020.6 (series)
       (n)  Coast Guard Diving Policies and Procedures Manual, Volume 1, COMDTINST M3150.1 (series)
       (o)  Marine Safety Manual, Volume I, Administration and Management, COMDTINST M16000.6 (series)
       (p)  Information and Life Cycle Management Manual, COMDTINST M5212.12 (series)
       (q)  Military Assignments and Authorized Absences, COMDTINST M1000.8 (series)
       (r)  Discipline and Conduct, COMDTINST M1600.2 (series)

1.  <u>PURPOSE</u>. This Commandant Change Notice publishes a change to the Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3A.

DISTRIBUTION – SDL No. 167

|   | a | b | c | d | e | f | g | h | i | j | k | l | m | n | o | p | q | r | s | t | u | v | w | x | y | z |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A | X | X | X | X | X | X | X |   | X | X |   | X | X | X | X | X | X |   | X |   | X |   |   |   |   |   |
| B |   | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
|   |   | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| D | X | X | X | X |   |   | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |   |   |   |   |   |
| E | X | X | X | X | X | X | X | X | X | X | X | X |   | X |   | X | X |   | X |   |   | X | X | X |   |   |
| F |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   | X | X | X | X |   |   |   |   |   |   |
| G |   | X | X | X | X |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |
| H |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |

NON-STANDARD DISTRIBUTION:

2. <u>ACTION</u>. All Coast Guard unit commanders, commanding officers, officer-in-charge, deputy/assistant commandants, and chiefs of headquarters staff elements must comply with the provisions of this Commandant Change Notice.  Internet release is authorized.

3. <u>DIRECTIVES AFFECTED</u>. With the addition of this Commandant Change Notice, the Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3A.

4. <u>DISCLAIMER</u>. This document is intended to provide operational requirements for Coast Guard personnel and is not intended to nor does it impose legally-binding requirements on any party outside the Coast Guard.

5. <u>MAJOR CHANGES</u>. This Commandant Change Notice establishes the following major changes:

   a. Removes Article 1.F. regarding information for appointments to U.S. Department of Defense Service Academies.

   b. Clarifies Article 1.G. regarding appointing current and former regular commissioned officers of the Coast Guard and Navy as Coast Guard Reserve Officers.

6. <u>ENVIRONMENTAL ASPECT AND IMPACT CONSIDERATIONS</u>.

   a. The development of this Commandant Change Notice and the general policies contained within it have been thoroughly reviewed by the originating office in conjunction with the Office of Environmental Management, and are categorically excluded (CE) under current USCG CE # 33 from further environmental analysis, in accordance with Section 2.B.2. and Figure 2-1 of the National Environmental Policy Act Implementing Procedures and Policy for Considering Environmental Impacts, COMDTINST M16475.1 (series).

   b. This directive will not have any of the following: significant cumulative impacts on the human environment; substantial controversy or substantial change to existing environmental conditions; or inconsistencies with any Federal, State, or local laws or administrative determinations relating to the environment.  All future specific actions resulting from the general policies in this Commandant Change Notice must be individually evaluated for compliance with the National Environmental Policy Act (NEPA), Council on Environmental Policy NEPA regulations at 40 CFR Parts 1500-1508, DHS and Coast Guard NEPA policy, and compliance with all other environmental mandates.

7. <u>DISTRUBUTION</u>. No paper distribution will be made of this Commandant Change Notice. An electronic version will be located on the following Commandant (CG-612) web sites. Internet: http://www.uscg.mil/directives/, and CGPortal: https://cgportal2.uscg.mil/library/directives/SitePages/Home.aspx.

8. <u>PROCEDURE</u>.  If maintaining a paper library, remove and replace the following sections of the Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3A:

| <u>Remove</u> | <u>Replace</u> |
|---|---|
| Table of Contents, CH-3 | Table of Contents, CH-4 |
| Page 1-95 – 1-99 | Pages 1-95 – 1-100 |

9. <u>RECORDS MANAGEMENT CONSIDERATIONS</u>.  This Commandant Change Notice has been evaluated for potential records management impacts.  The development of this Commandant Change Notice has been thoroughly reviewed during the directives clearance process, and it has been determined there are no further records scheduling requirements, in accordance with Federal Records Act, 44 U.S.C. 3101 et seq., National Archives and Records Administration (NARA) requirements, and the Information and Life Cycle Management Manual, COMDTINST M5212.12 (series).  This policy does not have any significant or substantial change to existing records management requirements.

10. <u>FORMS/REPORTS</u>.  The forms referenced in this Commandant Change Notice are available in USCG Electronic Forms on the Standard Workstation or on the Internet: http://www.uscg.mil/forms/; CG Portal at https://cgportal2.uscg.mil/library/forms/SitePages/Home.aspx; and Intranet at http://cgweb.comdt.uscg.mil/CGForms.

11. <u>REQUEST FOR CHANGES</u>.  Recommendations for changes or improvements to Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3 (series), are welcome and should be submitted via the chain of command to the Office of Military Personnel, Policy and Standards Division, Commandant (CG-1331), at HQS-PolicyandStandards@uscg.mil.

K. B. HINRICHS /s/
Rear Admiral, U.S. Coast Guard Reserve
Director of Reserve and Military Personnel

PAGE INTENTIONALLY LEFT BANK

**U.S. Department of Homeland Security**

**United States Coast Guard**

Commandant
United States Coast Guard

US Coast Guard Stop 7907
2703 Martin Luther King Jr Ave SE
Washington, DC 20593-7907
Staff Symbol: CG-1331
Phone: (202) 475-5372
Fax: (202) 372-8473

COMDTCHANGENOTE 1000
29 FEB 2016

COMMANDANT CHANGE NOTICE 1000

Subj: CH-3 TO OFFICER ACCESSIONS, EVALUATIONS, AND PROMOTIONS,
COMDTINST M1000.3A

Ref: (a) Coast Guard Recruiting Manual, COMDTINST M1100.2 (series)
(b) Coast Guard Medical Manual, COMDTINST M6000.1 (series)
(c) Military Separations, COMDTINST M1000.4 (series)
(d) Manual for Courts-Martial (MCM) (series)
(e) Coast Guard Investigations Manual, COMDTINST M5527.1 (series)
(f) Coast Guard Weight and Body Fat Standards Program Manual, COMDTINST
M1020.8 (series)
(g) Coast Guard Pay Manual, COMDTINST M7220.29 (series)
(h) Schedule of Active Duty Promotion List (ADPL) and Inactive Duty Promotion List
(IDPL) Officer Personnel Boards and Panels, PSCNOTE 1401.5 (series)
(i) Enlisted Accessions, Evaluations, and Advancements, COMDTINST M1000.2 (series)
(j) Performance, Training and Education Manual, COMDTINST M1500.10 (series)
(k) Personnel Security and Suitability Program, COMDTINST M5520.12 (series)
(l) Coast Guard Air Operations Manual, COMDTINST M3710.1 (series)
(m) Uniform Regulations, COMDTINST M1020.6 (series)
(n) Coast Guard Diving Policies and Procedures Manual, Volume 1, COMDTINST
M3150.1 (series)
(o) Marine Safety Manual, Volume I, Administration and Management, COMDTINST
M16000.6 (series)
(p) Information and Life Cycle Management Manual, COMDTINST M5212.12 (series)
(q) Military Assignments and Authorized Absences, COMDTINST M1000.8 (series)
(r) Discipline and Conduct, COMDTINST M1600.2 (series)

1. <u>PURPOSE</u>. This Commandant Change Notice publishes a change to the Officer Accessions,
Evaluations, and Promotions, COMDTINST M1000.3A.

DISTRIBUTION – SDL No. 167

|   | a | b | c | d | e | f | g | h | i | j | k | l | m | n | o | p | q | r | s | t | u | v | w | x | y | z |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A | X | X | X | X | X | X | X |   | X | X |   | X | X | X | X | X | X |   | X |   | X |   |   |   |   |   |
| B |   | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
|   | X | X | X | X | X | X |   | X | X | X | X | X | X | X | X | X | X |   | X | X | X | X | X | X | X | X |
| D | X | X | X | X |   | X | X |   | X | X | X | X | X | X | X | X | X | X | X | X |   |   |   |   |   |   |
| E | X | X | X | X | X | X |   | X | X | X |   |   | X |   | X | X | X |   | X | X |   |   | X | X |   |   |
| F |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   | X | X | X | X |   |   |   |   |   |   |   |
| G |   | X | X | X | X |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |
| H |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |

NON-STANDARD DISTRIBUTION:

2. <u>ACTION</u>. All Coast Guard unit commanders, commanding officers, officer-in-charge, deputy/assistant commandants, and chiefs of headquarters staff elements must comply with the provisions of this Commandant Change Notice.  Internet release is authorized.

3. <u>DIRECTIVES AFFECTED</u>. With the addition of this Commandant Change Notice, the Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3A.

4. <u>DISCLAIMER</u>. This document is intended to provide operational requirements for Coast Guard personnel and is not intended to nor does it impose legally-binding requirements on any party outside the Coast Guard.

5. <u>MAJOR CHANGES</u>. This Commandant Change Notice adds Article 6.B.13. to authorize the use of special selection boards to address potential errors in selection certain ADPL officers for promotion as a result of possible material or adminstriative error.

6. <u>ENVIRONMENTAL ASPECT AND IMPACT CONSIDERATIONS</u>.

   a. The development of this Commandant Change Notice and the general policies contained within it have been thoroughly reviewed by the originating office in conjunction with the Office of Environmental Management, and are categorically excluded (CE) under current USCG CE # 33 from further environmental analysis, in accordance with Section 2.B.2. and Figure 2-1 of the National Environmental Policy Act Implementing Procedures and Policy for Considering Environmental Impacts, COMDTINST M16475.1 (series).

   b. This directive will not have any of the following: significant cumulative impacts on the human environment; substantial controversy or substantial change to existing environmental conditions; or inconsistencies with any Federal, State, or local laws or administrative determinations relating to the environment.  All future specific actions resulting from the general policies in this Commandant Change Notice must be individually evaluated for compliance with the National Environmental Policy Act (NEPA), Council on Environmental Policy NEPA regulations at 40 CFR Parts 1500-1508, DHS and Coast Guard NEPA policy, and compliance with all other environmental mandates.

7. <u>DISTRUBUTION</u>. No paper distribution will be made of this Commandant Change Notice. An electronic version will be located on the following Commandant (CG-612) web sites. Internet: http://www.uscg.mil/directives/, and CGPortal: https://cgportal2.uscg.mil/library/directives/SitePages/Home.aspx.

8. <u>PROCEDURE</u>.  If maintaining a paper library, remove and replace the following sections of the Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3A:

| Remove | Replace |
|---|---|
| Table of Contents, CH-2 | Table of Contents, CH-3 |
| Page 6-31 | Pages 6-31 – 6-36 |

COMDTCHANGENOTE 1000

9. <u>RECORDS MANAGEMENT CONSIDERATIONS</u>.  This Commandant Change Notice has been evaluated for potential records management impacts.  The development of this Commandant Change Notice has been thoroughly reviewed during the directives clearance process, and it has been determined there are no further records scheduling requirements, in accordance with Federal Records Act, 44 U.S.C. 3101 et seq., National Archives and Records Administration (NARA) requirements, and the Information and Life Cycle Management Manual, COMDTINST M5212.12 (series).  This policy does not have any significant or substantial change to existing records management requirements.

10. <u>FORMS/REPORTS</u>.  The forms referenced in this Commandant Change Notice are available in USCG Electronic Forms on the Standard Workstation or on the Internet: http://www.uscg.mil/forms/; CG Portal at https://cgportal2.uscg.mil/library/forms/SitePages/Home.aspx; and Intranet at http://cgweb.comdt.uscg.mil/CGForms.

11. <u>REQUEST FOR CHANGES</u>.  Recommendations for changes or improvements to Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3 (series), are welcome and should be submitted via the chain of command to the Office of Military Personnel, Policy and Standards Division, Commandant (CG-1331), at HQS-PolicyandStandards@uscg.mil.


K. B. HINRICHS /s/
Rear Admiral, U.S. Coast Guard Reserve
Director of Reserve and Military Personnel

PAGE INTENTIONALLY LEFT BANK

**U.S. Department of Homeland Security**

**United States Coast Guard**

| | |
|---|---|
| Commandant<br>United States Coast Guard | US Coast Guard Stop 7907<br>2703 Martin Luther King Jr Ave SE<br>Washington, DC 20593-7907<br>Staff Symbol: CG-1331<br>Phone: (202) 475-5372<br>Fax: (202) 475-5927<br>Email: HQS-PolicyandStandards@uscg.mil |

COMDTCHANGENOTE 1000
17 DEC 15

COMMANDANT CHANGE NOTICE 1000

Subj:   CH-2 TO OFFICER ACCESSIONS, EVALUATIONS, AND PROMOTIONS, COMDTINST M1000.3A

1. <u>PURPOSE</u>.  This Commandant Change Notice publishes a change to Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3A.

2. <u>ACTION</u>.  All Coast Guard unit commanders, commanding officers, officers-in-charge, deputy/assistant commandants, and chiefs of headquarters staff elements shall comply with the provisions of this Commandant Change Notice.  Internet release is authorized.

3. <u>DIRECTIVES AFFECTED</u>.  With the addition of this Commandant Change Notice, Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3A, is updated.

4. <u>DISCLAIMER</u>.  This guidance is not a substitute for applicable legal requirements, nor is it itself a rule.  It is intended to provide guidance for Coast Guard personnel and is not intended to nor does it impose legally-binding requirements on any party outside the Coast Guard.

5. <u>MAJOR CHANGES</u>.  The entire content in Chapter 4 (Officer Qualifications) of Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3A, has been removed, integrated with the content regarding enlisted qualifications previously included in Enlisted Accessions, Evaluations, and Advancements, COMDTINST M1000.2 (series), and promulgated separately in a new directive, Military Qualifications and Insignia, COMDTINST M1200.1 (series).  As a result of the removal of Chapter 4 (Officer Qualifications), references (m) through (o) in the list of references in Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3A, are no longer applicable.

6. <u>IMPACT ASSESSMENT</u>.  None.

DISTRIBUTION – SDL No. 167

| | a | b | c | d | e | f | g | h | i | j | k | l | m | n | o | p | q | r | s | t | u | v | w | x | y | z |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A | X | X | X | X | X | X | X | | | X | X | | X | X | X | X | X | X | | X | | X | | | | |
| B | | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| | | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| D | X | X | X | X | X | | | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | | | |
| E | X | X | X | X | X | X | X | X | X | X | X | X | X | | | X | | X | X | | | | X | X | | |
| F | | | | | | | | | | | | | | | | | X | X | X | | | | | | | |
| G | | X | X | X | X | | | | | | | | | | | | | | | | | | | | | |
| H | | | | | | | | | | | | | | | | | | | | | | | | | | |

NON-STANDARD DISTRIBUTION:

**55**

7. <u>ENVIRONMENTAL ASPECT AND IMPACT CONSIDERATIONS</u>.

    a. The development of this Commandant Change Notice and the general policies contained within it have been thoroughly reviewed by the originating office and are categorically excluded under current Coast Guard categorical exclusion #1 from further environmental analysis, in accordance with Section 2.B.2. and Figure 2-1 of the National Environmental Policy Act Implementing Procedures and Policy for Considering Environmental Impacts, COMDTINST M16475.1 (series).

    b. This Commandant Change Notice will not have any of the following: significant cumulative impacts on the human environment; substantial controversy or substantial change to existing environmental conditions; or inconsistencies with any Federal, State, or local laws or administrative determinations relating to the environment.  All future specific actions resulting from the general policies in this Commandant Change Notice must be individually evaluated for compliance with the National Environmental Policy Act (NEPA), Council on Environmental Policy NEPA regulations at 40 Code of Federal Regulations Parts 1500-1508, Department of Homeland Security and Coast Guard NEPA policy, and compliance with all other environmental mandates.

8. <u>DISTRIBUTION</u>.  No paper distribution will be made of this Commandant Change Notice. An electronic version will be located on the following Commandant (CG-612) web sites. Internet: http://www.uscg.mil/directives/, and CGPortal: https://cgportal2.uscg.mil/library/directives/SitePages/Home.aspx.

9. <u>PROCEDURE</u>.  If maintaining a paper library, remove and replace the following sections of Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3A:

| <u>Remove</u> | <u>Replace</u> |
|---|---|
| Table of Contents, CH-1 | Table of Contents, CH-2 |
| Chapter 4, pages 4-1 – 4-25 | Chapter 4, pages 4-1 – 4-2, CH-2 |

10. <u>RECORDS MANAGEMENT CONSIDERATIONS</u>.  This Commandant Change Notice has been thoroughly reviewed during the directives clearance process, and it has been determined there are no further records scheduling requirements, in accordance with Federal Records Act, 44 U.S.C. 3101 et seq., National Archives and Records Administration (NARA) requirements, and Information and Life Cycle Management Manual, COMDTINST M5212.12 (series).  This policy does not have any significant or substantial change to existing records management requirements.

11. <u>FORMS/REPORTS</u>.  With the removal of Chapter 4 by this Commandant Change Notice, all of the forms referenced in Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3A, are available in USCG Electronic Forms on the Standard Workstation or on the Internet at http://www.uscg.mil/forms/; CG Portal at https://cgportal2.uscg.mil/library/forms/SitePages/Home.aspx; and Intranet at http://cgweb.comdt.uscg.mil/CGForms.

**56**

COMDTCHANGENOTE 1000

12. <u>REQUEST FOR CHANGES</u>.  Recommendations for changes or improvements to Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3 (series), are welcome and should be submitted via the chain of command to the Office of Military Personnel, Policy and Standards Division, Commandant (CG-1331), at HQS-PolicyandStandards@uscg.mil.


Kurt B. Hinrichs /s/
Rear Admiral, U.S. Coast Guard
Director of Reserve and Military Personnel

**U.S. Department of Homeland Security**

**United States Coast Guard**

Commandant
United States Coast Guard

US Coast Guard Stop 7907
2703 Martin Luther King Jr Ave SE
Washington, DC 20593-7907
Staff Symbol: CG-1331
Phone: (202) 475-5372
Fax: (202) 372-8473

COMDTCHANGENOTE 1000
30 SEP 2015

COMMANDANT CHANGE NOTICE 1000

Subj:   CH-1 TO OFFICER ACCESSIONS, EVALUATIONS, AND PROMOTIONS, COMDTINST M1000.3A

Ref:    (a) Coast Guard Recruiting Manual, COMDTINST M1100.2 (series)
        (b) Coast Guard Medical Manual, COMDTINST M6000.1 (series)
        (c) Military Separations, COMDTINST M1000.4 (series)
        (d) Manual for Courts-Martial (MCM) (series)
        (e) Coast Guard Investigations Manual, COMDTINST M5527.1 (series)
        (f) Coast Guard Weight and Body Fat Standards Program Manual, COMDTINST M1020.8 (series)
        (g) Coast Guard Pay Manual, COMDTINST M7220.29 (series)
        (h) Schedule of Active Duty Promotion List (ADPL) and Inactive Duty Promotion List (IDPL) Officer Personnel Boards and Panels, PSCNOTE 1401.5 (series)
        (i) Enlisted Accessions, Evaluations, and Advancements, COMDTINST M1000.2 (series)
        (j) Performance, Training and Education Manual, COMDTINST M1500.10 (series)
        (k) Personnel Security and Suitability Program, COMDTINST M5520.12 (series)
        (l) Coast Guard Air Operations Manual, COMDTINST M3710.1 (series)
        (m) Uniform Regulations, COMDTINST M1020.6 (series)
        (n) Coast Guard Diving Policies and Procedures Manual, Volume 1, COMDTINST M3150.1 (series)
        (o) Marine Safety Manual, Volume I, Administration and Management, COMDTINST M16000.6 (series)
        (p) Information and Life Cycle Management Manual, COMDTINST M5212.12 (series)
        (q) Military Assignments and Authorized Absences, COMDTINST M1000.8 (series)
        (r) Discipline and Conduct, COMDTINST M1600.2 (series)

DISTRIBUTION – SDL No. 166

|   | a | b | c | d | e | f | g | h | i | j | k | l | m | n | o | p | q | r | s | t | u | v | w | x | y | z |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A | X | X |   | X | X | X |   | X |   | X | X | X | X | X | X | X | X |   |   | X |   | X | X |   |   |   |
| B | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
|   | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| D | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |   |   | X | X | X |
| E | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |   |   |   |   |
| F |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   | X | X | X |   |   |   |   |   |   |   |
| G |   | X | X | X | X |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |
| H | X | X | X | X | X | X | X | X | X |   |   | X | X |   |   |   |   |   |   |   |   |   |   |   |   |   |

NON-STANDARD DISTRIBUTION:

1. <u>PURPOSE</u>. This Commandant Change Notice publishes a change to the Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3A.

2. <u>ACTION</u>. All Coast Guard unit commanders, commanding officers, officer-in-charge, deputy/assistant commandants, and chiefs of headquarters staff elements must comply with the provisions of this Commandant Change Notice.  Internet release is authorized.

3. <u>DIRECTIVES AFFECTED</u>. With the addition of this Commandant Change Notice, the Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3A.

4. <u>DISCLAIMER</u>. This document is intended to provide operational requirements for Coast Guard personnel and is not intended to nor does it impose legally-binding requirements on any party outside the Coast Guard.

5. <u>MAJOR CHANGES</u>. This Commandant Change Notice establishes the following major changes:

    a. Provides clarification and adds detail to policy regarding the Service Obligation of cadets in Chapter 1.E.4.f.

    b.  Changes 1.E.4.i. to detail paths to recouping government costs in accordance with newly promulgated instruction, Recoupment of Advanced Education Costs in the Event of Separation Before Completion of Obligated Service, COMDTISNT 1560.3(series).

    c. Changes 1.E.4.j. to capture all transitions from cadet to enlisted service. Changes accession points of entry for disenrolled cadets entering enlisted service.

6. <u>ENVIRONMENTAL ASPECT AND IMPACT CONSIDERATIONS</u>.

    a. The development of this Commandant Change Notice and the general policies contained within it have been thoroughly reviewed by the originating office in conjunction with the Office of Environmental Management, and are categorically excluded (CE) under current USCG CE # 33 from further environmental analysis, in accordance with Section 2.B.2. and Figure 2-1 of the National Environmental Policy Act Implementing Procedures and Policy for Considering Environmental Impacts, COMDTINST M16475.1 (series).

    b. This directive will not have any of the following: significant cumulative impacts on the human environment; substantial controversy or substantial change to existing environmental conditions; or inconsistencies with any Federal, State, or local laws or administrative determinations relating to the environment.  All future specific actions resulting from the general policies in this Commandant Change Notice must be individually evaluated for compliance with the National Environmental Policy Act (NEPA), Council on Environmental Policy NEPA regulations at 40 CFR Parts 1500-1508, DHS and Coast Guard NEPA policy, and compliance with all other environmental mandates.

7. <u>DISTRUBUTION</u>. No paper distribution will be made of this Manual. An electronic version will be located on the following Commandant (CG-612) web sites. Internet: http://www.uscg.mil/directives/, and CGPortal: https://cgportal2.uscg.mil/library/directives/SitePages/Home.aspx.

8. <u>PROCEDURE</u>.  If maintain a paper library, remove and replace the following sections of the Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3A:

| <u>Remove</u> | <u>Replace</u> |
|---|---|
| Pages v-vi | Pages v-vi |
| Pages 1-90 – 1-97 | Pages 1-90 – 1-99 |

9. <u>RECORDS MANAGEMENT CONSIDERATIONS</u>. This Commandant Change Notice has been evaluated for potential records management impacts.  The development of this Commandant Change Notice has been thoroughly reviewed during the directives clearance process, and it has been determined there are no further records scheduling requirements, in accordance with Federal Records Act, 44 U.S.C. 3101 et seq., National Archives and Records Administration (NARA) requirements, and the Information and Life Cycle Management Manual, COMDTINST M5212.12 (series).  This policy does not have any significant or substantial change to existing records management requirements.

10. <u>FORMS/REPORTS</u>. The forms referenced in this Commandant Change Notice are available in USCG Electronic Forms on the Standard Workstation or on the Internet: http://www.uscg.mil/forms/; CG Portal at https://cgportal2.uscg.mil/library/forms/SitePages/Home.aspx; and Intranet at http://cgweb.comdt.uscg.mil/CGForms.

11. <u>REQUEST FOR CHANGES</u>. Submit changes to Commandant (CG-1331).


K. B. HINRICHS /s/
Rear Admiral, U.S. Coast Guard Reserve
Acting Director of Reserve and Military Personnel



U.S. Department of
Homeland Security

United States
Coast Guard

Commandant
United States Coast Guard

2703 Martin Luther King Jr Avenue SE
Washington, DC 20593-7907
Staff Symbol: CG-1331
Phone: (202) 475-5372
Fax: (202) 475-5927
Email: HQS-PolicyandStandards@uscg.mil

COMDTINST M1000.3A
13 SEP 2013

COMMANDANT INSTRUCTION M1000.3A

Subj:   OFFICER ACCESSIONS, EVALUATIONS, AND PROMOTIONS

Ref:   (a)  Coast Guard Recruiting Manual, COMDTINST M1100.2 (series)
       (b)  Coast Guard Medical Manual, COMDTINST M6000.1 (series)
       (c)  Military Separations, COMDTINST M1000.4 (series)
       (d)  Manual for Courts-Martial (MCM) (series)
       (e)  Coast Guard Investigations Manual, COMDTINST M5527.1 (series)
       (f)  Coast Guard Weight and Body Fat Standards Program Manual, COMDTINST M1020.8 (series)
       (g)  Coast Guard Pay Manual, COMDTINST M7220.29 (series)
       (h)  Schedule of Active Duty Promotion List (ADPL) and Inactive Duty Promotion List (IDPL) Officer Personnel Boards and Panels, PSCNOTE 1401.5 (series)
       (i)  Enlisted Accessions, Evaluations, and Advancements, COMDTINST M1000.2 (series)
       (j)  Performance, Training and Education Manual, COMDTINST M1500.10 (series)
       (k)  Personnel Security and Suitability Program, COMDTINST M5520.12 (series)
       (l)  Coast Guard Air Operations Manual, COMDTINST M3710.1 (series)
       (m) Uniform Regulations, COMDTINST M1020.6 (series)
       (n)  Coast Guard Diving Policies and Procedures Manual, Volume 1, COMDTINST M3150.1 (series)
       (o)  Marine Safety Manual, Volume I, Administration and Management, COMDTINST M16000.6 (series)
       (p)  Information and Life Cycle Management Manual, COMDTINST M5212.12 (series)
       (q)  Military Assignments and Authorized Absences, COMDTINST M1000.8 (series)
       (r)  Discipline and Conduct, COMDTINST M1600.2 (series)

1.  <u>PURPOSE</u>.  This Manual establishes Coast Guard policy and procedures concerning the accessions, evaluations, personnel boards, and promotions for the Coast Guard officer corps.

DISTRIBUTION – SDL No. 162

|   | a | b | c | d | e | f | g | h | i | j | k | l | m | n | o | p | q | r | s | t | u | v | w | x | y | z |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A | X | X |   |   |   |   |   |   | X | X |   | X | X | X | X | X | X |   |   | X |   | X |   |   |   |   |
| B |   | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
|   |   | X | X | X | X | X | X | X | X | X | X | X | X | X | X |   | X | X | X | X | X | X | X | X | X | X |
| D | X | X | X |   |   |   | X | X | X | X | X | X | X | X | X |   | X | X | X | X | X |   |   |   |   |   |
| E | X | X | X | X | X | X | X | X | X | X | X | X | X | X |   |   | X |   | X | X |   |   | X | X |   |   |
| F |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   | X | X | X |   |   |   |   |   |   |   |
| G |   | X | X | X | X |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |
| H |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |

NON-STANDARD DISTRIBUTION:

2. <u>ACTION</u>.  All Coast Guard unit commanders, commanding officers, officers-in-charge, deputy/assistant commandants, and chiefs of headquarters staff elements shall comply with the provisions of this Manual.  Internet release is authorized.

3. <u>DIRECTIVES AFFECTED</u>.  Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3, is hereby cancelled.

4. <u>DISCLAIMER</u>.  This document is intended to provide operational requirements for Coast Guard personnel and is not intended to nor does it impose legally-binding requirements on any party outside the Coast Guard.

5. <u>DISTRIBUTION</u>.  No paper distribution will be made of this Manual.  Official distribution will be via the Coast Guard Directives (CGDS) DVD.  An electronic version will be located on the following Commandant (CG-612) web sites.  Intranet: http://cgweb.comdt.uscg.mil/CGDirectives/Welcome.htm, Internet: http://www.uscg.mil/directives/, and CGPortal:  https://cgportal2.uscg.mil/library/directives/SitePages/home/aspx.

6. <u>MAJOR CHANGES</u>.  Changes to this Manual exist primarily in Chapter 5 and include the removal of all execution processes related to officer evaluation reports.  This information has been relocated to a Personnel Service Center procedures directive.

7. <u>DISCUSSION</u>.  Citation of the word 'article' as used in this Manual is in general terms of reference, (e.g., to denote paragraph or section), and is not citing CFR, USC, UCMJ, etc. except where so noted.

8. <u>RECORDS MANAGEMENT CONSIDERATIONS</u>.  This Manual has been evaluated for potential records management impacts. The development of this Manual has been thoroughly reviewed during the directives clearance process, and it has been determined there are no further records scheduling requirements, in accordance with Federal Records Act, 44 U.S.C. 3101 et seq., National Archives and Records Administration (NARA) requirements, and the Information and Life Cycle Management Manual, COMDTINST M5212.12 (series). This policy does not have any significant or substantial change to existing records management requirements.

9. <u>ENVIRONMENTAL ASPECT AND IMPACT CONSIDERATIONS</u>.

   a.  The development of this Manual and the general policies contained within it have been thoroughly reviewed by the originating office in conjunction with the Office of Environmental Management, and are categorically excluded (CE) under current USCG CE # 33 from further environmental analysis, in accordance with Section 2.B.2. and Figure 2-1 of the National Environmental Policy Act Implementing Procedures and Policy for Considering Environmental Impacts, COMDTINST M16475.1 (series). Because this Manual contains guidance on, and provisions for, compliance with applicable environmental mandates, Coast Guard categorical exclusion #33 is appropriate.

   b.  This directive will not have any of the following: significant cumulative impacts on the human environment; substantial controversy or substantial change to existing environmental conditions;

2

COMDTINST M1000.3A

or inconsistencies with any Federal, State, or local laws or administrative determinations relating to the environment. All future specific actions resulting from the general policies in this Manual must be individually evaluated for compliance with the National Environmental Policy Act (NEPA), Council on Environmental Policy NEPA regulations at 40 CFR Parts 1500-1508, DHS and Coast Guard NEPA policy, and compliance with all other environmental mandates.

10. <u>FORMS/REPORTS</u>.  The forms referenced in this Manual with the exception of the Command Ashore Certificate, Form CG-5257, are available in USCG Electronic Forms on the Standard Workstation or on the Internet: http://www.uscg.mil/forms/; CG Portal at https://cgportal2.uscg.mil/library/forms/SitePages/Home.aspx; and Intranet at http://cgweb.comdt.uscg.mil/CGForms.


D. A. NEPTUN /s/
Rear Admiral, U.S. Coast Guard
Assistant Commandant for Human Resources

THIS PAGE INTENTIONALLY BLANK

| RECORD OF CHANGES | | | |
|---|---|---|---|
| CHANGE NUMBER | DATE OF CHANGE | DATE ENTERED | BY WHOM ENTERED |
| CH-1 | 30SEP2015 | 30SEP2015 | LTJG Ethan Prol |
| CH-2 | 17DEC2015 | 17DEC2015 | LTJG Ethan Prol |
| CH-3 | 29FEB2016 | 29FEB2016 | LTJG Ethan Prol |
| CH-4 | 13JUN2016 | 13JUN2016 | LCDR Russ Mayer |
| CH-5 | 21NOV2016 | 21NOV2016 | LCDR Russ Mayer |
| CH-6 | 28NOV2016 | 28NOV2016 | LCDR Russ Mayer |
| CH-7 | 21APR2017 | 21APR2017 | LCDR Russ Mayer |
| CH-8 | 19JUN2017 | 19JUN2017 | LCDR Russ Mayer |
| CH-9 | 22AUG2017 | 22AUG2017 | LCDR Yanira Soto |
| CH-10 | 04JAN2018 | 04JAN2018 | LCDR Yanira Soto |
| CH-11 | 06JUL2020 | 06JUL2020 | PERS3 Windi Sims |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

67

THIS PAGE INTENTIONALLY BLANK

# Table of Contents

**CHAPTER 1     PROCUREMENTS AND APPOINTMENTS**..................................................**1-1**
**1.A.     Appointing Regular Commissioned Officers**.................................................**1-1**
1.A.1.  General ...........................................................................................................1-1
1.A.2.  Statutory Authority to Appoint U.S. Coast Guard Academy Graduates ...............1-1
1.A.3.  Statutory Authority to Appoint Temporary Officers ............................................1-1
1.A.4.  Appointing Officer Candidate School Graduates .................................................1-2
1.A.5.  Reserved ........................................................................................................1-3
1.A.6.  Appointing the Coast Guard Band Director..........................................................1-3
1.A.7.  Reserved ........................................................................................................1-5
1.A.8.  Integrating Reserve and Temporary Regular Officers ..........................................1-6
1.A.9.  Processing Officers Who Do Not Integrate ..........................................................1-9
1.A.10. Recalling Retired Regular Officers....................................................................1-10
1.A.11. Appointing or Re-appointing Regular Officers from the Temporary Disability Retired
        List .............................................................................................................1-12
1.A.12. Security Investigations for Officers' Original Appointment ...............................1-13
**1.B.     Reserve Officers on Active Duty**.................................................................**1-14**
1.B.1.  Initial Active Duty and Recall to Active Duty....................................................1-14
1.B.2.  Retention on Extended Active Duty ..................................................................1-14
1.B.3.  Reserved ......................................................................................................1-17
1.B.4.  Reserved ......................................................................................................1-20
1.B.5.  Officer Candidate School ................................................................................1-20
1.B.6.  Recalling Retired Reserve Officers ..................................................................1-30
1.B.7.  Security Investigations for Original Appointment of Reserve Officers .............1-30
1.B.8.  Interviewing Procedures for Officer Recruiting Programs ................................1-30
1.B.9.  Reserved ......................................................................................................1-32
**1.C.     Reserved**..................................................................................................**1-32**
**1.D.     Reserved**..................................................................................................**1-32**
**1.E.     Appointment as U.S. Coast Guard Cadet**....................................................**1-82**
1.E.1.  General .........................................................................................................1-82
1.E.2.  Eligibility Requirements .................................................................................1-82
1.E.3.  Application ....................................................................................................1-85
1.E.4.  Selection ......................................................................................................1-86
1.E.5.  Responsibilities .............................................................................................1-94
**1.F.Reserved**......................................................................................................**1-96**
**1.G.     Appointing Regular Coast Guard or Navy Officers to the Coast Guard Reserve**.......**1-97**
1.G.1.  General .........................................................................................................1-97
1.G.2.  Board Applicants ...........................................................................................1-97
1.G.3.  Board Recommendations to the Secretary .......................................................1-98
1.G.4.  Date of Rank and Precedence Determination ...................................................1-98
1.G.5.  Appeals ........................................................................................................1-99

**CHAPTER 2     GRADES AND SPECIALTIES**.................................................................**2-1**
**2.A.     Grades of Officers**.....................................................................................**2-1**
2.A.1.  Commissioned and Chief Warrant Officers........................................................2-1

2.A.2.    Chief Warrant Officer Specialties and Temporary Lieutenants ............................ 2-1
2.A.3.    Manner of Addressing Officers ..................................................................... 2-3
2.A.4.    Active Duty Promotion List and Lineal List .................................................. 2-3
2.A.5.    Date of Rank ................................................................................................ 2-3
2.A.6.    Commencement of Pay and Allowances ........................................................ 2-4
**2.B.     Order of Precedence** .................................................................................. **2-5**
2.B.1.    Precedence of Coast Guard Commissioned Officers in the Grade of Ensign or Above ........ 2-5
2.B.2.    Precedence of Chief Warrant Officers of the Coast Guard ............................... 2-6
2.B.3.    Precedence with Relation to Officers of Other Services .................................... 2-7


**CHAPTER 3        PROMOTING COMMISSIONED OFFICERS** .................................. **3-1**
   **3.A.      Promoting Commissioned Officers** ........................................................ **3-1**
   3.A.1.    General ...................................................................................................... 3-1
   3.A.2.    Active Duty Promotion List (ADPL) ............................................................ 3-2
   3.A.3.    Number and Distribution of Commissioned Officers ....................................... 3-3
   3.A.4.    Selecting and Promoting Officers on the Active Duty Promotion List from Lieutenant
             (Junior Grade) Through Rear Admiral (Lower Half) ........................................ 3-4
   3.A.5.    Selecting and Promoting Ensigns to Lieutenant (Junior Grade) .......................... 3-9
   3.A.6.    Selecting and Promoting U.S. Coast Guard Reserve Officers on Active Duty as Reserve
             Program Administrators (RPAs) .................................................................. 3-10
   3.A.7.    Promotion of Officers on the Permanent Commissioned Teaching Staff (PCTS) of the
             Coast Guard Academy ................................................................................. 3-13
   3.A.8.    Selecting and Promoting Retired Officers Recalled to Active Duty ................... 3-16
   3.A.9.    Selecting and Promoting the Coast Guard Band Director .................................. 3-19
   3.A.10.   Wartime Temporary Service Promotions ....................................................... 3-19
   3.A.11.   Procedures to Permanently Appoint Reserve and Temporary Officers ................ 3-21
   3.A.12.   Procedures to Promote Officers .................................................................... 3-22
   3.A.13.   Frocking Officers Selected for the Next Higher Grade ..................................... 3-23
   **3.B.      Promoting Chief Warrant Officers** ......................................................... **3-26**
   3.B.1     Reserved ................................................................................................... 3-26
   3.B.2     Reserved ................................................................................................... 3-26
   3.B.3     Selection Process ....................................................................................... 3-27
   3.B.4.    Consideration by the Next Annual Selection Board ......................................... 3-30
   3.B.5.    Removal from a Promotion List .................................................................... 3-32
   3.B.6.    Procedures for Effecting Promotion of Warrant Officers .................................. 3-32
   3.B.7.    Selection and Promoting Retired Warrant Officers Recalled to Active Duty ......... 3-33
   3.B.8.    Reserved ................................................................................................... 3-34
   3.B.9.    Lateral Change in Warrant Specialty ............................................................ 3-36
   3.B.10.   Appointing Chief Warrant Officers as Temporary Officers (107B14 U.S.C. § 214) ......... 3-36


**CHAPTER 4      (RESERVED)** ................................................................................ **4-1**

**CHAPTER 5      OFFICER EVALUATION SYSTEM (OES)** ........................................................ **5-1**
  A.  Overview ....................................................................................................................... 5-1
  B.  Roles and Responsibilities .............................................................................................. 5-1
  C.  OES Standards and Policies ............................................................................................ 5-3
  D.  OER Rating Chain ........................................................................................................... 5-5
  E.  Occasions for Regular OERs ........................................................................................... 5-6
  F.  Occasions for Non-Regular OERs ................................................................................... 5-10
  G.  Exceptions from submitting an OER ............................................................................... 5-12
  H.  Derogatory OERs ............................................................................................................ 5-13
  I.  Prohibited Comments ...................................................................................................... 5-14
  J.  Required Comments ........................................................................................................ 5-15
  K.  Replies to OERs .............................................................................................................. 5-16
  L.  IDPL schedule specific OERs ......................................................................................... 5-16
  M.  Retired Officers Recalled to Active Duty ...................................................................... 5-17
  N.  Correction of OERs and Military Records ...................................................................... 5-17
  O.  Definitions ....................................................................................................................... 5-18

**CHAPTER 6      PERSONNEL BOARDS** ...................................................................................... **6-1**
  **6.A.  Commissioned and Chief Warrant Officer Personnel Boards** ............................ **6-1**
    6.A.1.  General ................................................................................................................... 6-1
    6.A.2.  Board Purposes ...................................................................................................... 6-1
    6.A.3.  Selection Criteria ................................................................................................... 6-2
    6.A.4.  General Procedures for All Boards ........................................................................ 6-4
    6.A.5.  Procedure for Boards Considering Officers on a Fully-Qualified Basis ............... 6-5
    6.A.6.  Procedure for Boards Considering Officers on a Best-Qualified Basis ................. 6-6
    6.A.7.  Procedure for Boards Considering Officers on Both a Fully-Qualified and Best-Qualified Basis ................................................................................................................. 6-8
  **6.B.  Selection for Promotion** ......................................................................................... **6-10**
    6.B.1.  Selection Boards for Promotion from Lieutenant (Junior Grade) Through Rear Admiral (Lower Half) ...................................................................................................... 6-10
    6.B.2.  Selection Boards for Promotion from Ensign to Lieutenant (Junior Grade) ......... 6-12
    6.B.3.  Selection Boards for Promoting RPAs ................................................................... 6-13
    6.B.4.  Selection Boards for Promotion of Officers on the Permanent Commissioned Teaching Staff (PCTS) of the Coast Guard Academy ...................................................... 6-15
    6.B.5.  Selection Boards for Promoting Retired Officers Recalled to Active Duty ........... 6-19
    6.B.6.  Selection Boards for Officers Recalled from the Temporary Disability Retired List ........ 6-20
    6.B.7.  Selection Boards for Promoting the Coast Guard Band Director ........................... 6-21
    6.B.8.  Boards to Designate Reserve Officers as Reserve Program Administrators ........... 6-22
    6.B.9.  Selection Boards for Promoting Chief Warrant Officers ....................................... 6-23
    6.B.10. Selection Boards to Continue Active Duty Promotion List Captains on Active Duty ........ 6-24
    6.B.11. Selection Board to Continue Reserve Program Administrator (RPA) Captains on Active Duty ........................................................................................................................ 6-26
    6.B.12. Screening, Selection, and Appointment of Officers to the Permanent Commissioned Teaching Staff (PCTS) of the Coast Guard Academy ........................................ 6-28
    6.B.13. Special Selection Boards (SSB) ............................................................................. 6-31
    6.B.14. Specialty Considered Selections (SCS) ................................................................. 6-36

6.B.15.  Aviator Evaluation Board ................................................................................................ 6-37

**CHAPTER 7      RESERVE PROGRAM ADMINISTRATORS (RPA)** ........................................ 7-1
A.  Overview ................................................................................................................................ 7-1
B.  Roles and Responsibilities ..................................................................................................... 7-1
C.  Number and Distribution in Grade ........................................................................................ 7-1
D.  Designation as Provisional RPAs .......................................................................................... 7-2
E.  Designation as Permanent RPAs ........................................................................................... 7-4
F.  Transfer to the ADPL and receiving a Regular commission ................................................. 7-4
G.  Reversion to CWO grade ....................................................................................................... 7-4

# CHAPTER 1      PROCUREMENTS AND APPOINTMENTS

## 1.A.      Appointing Regular Commissioned Officers

## 1.A.1.      General

     a. <u>Presidential Appointment</u>. The President may appoint permanent commissioned regular Coast Guard officers in the grades of ensign and above according to their qualifications, experience, and length of service as service needs require from these categories:

     (1) Coast Guard Academy graduates.

     (2) Regular Coast Guard chief warrant officers and enlisted members.

     (3) Coast Guard reserve members who have served at least two years on continuous active duty.

     (4) Licensed United States Merchant Marine officers who have served two or more years aboard a United States vessel as a licensed officer.

     b. Fitness to Perform. No member can serve as a commissioned officer until their mental, moral, physical, and professional fitness to perform the duties of a commissioned officer has been established under regulations the Secretary prescribes (14 U.S.C. § 211).

## 1.A.2      Statutory Authority to Appoint U.S. Coast Guard Academy Graduates

The President may appoint as Coast Guard ensigns all cadets who have graduated from the Academy (14 U.S.C. § 185).

## 1.A.3.      Statutory Authority to Appoint Temporary Officers

### 1.A.3.a.      Presidential Appointment

The President may appoint Coast Guard chief warrant officers, enlisted members, and United States Merchant Marine licensed officers as temporary commissioned regular Coast Guard officers in a grade up to lieutenant according to their qualifications, experience, and length of service as service needs require.

### 1.A.3.b.      Effect on Permanent Status

Appointment under this Article does not change these temporary officers' permanent, probationary, or acting status; prejudice their promotion or appointment opportunities; or abridge their rights or benefits. A temporary officer may not lose any rightful pay and

allowances due to their permanent status when appointed.

**1.A.3.c.**      **Vacating an Appointment**

A temporary commissioned officer may request to vacate their temporary appointment at any time, as needs of the service permit.  Requests for reversion, along with command endorsement, should be submitted in memo format to Commander (CG PSC-OPM-1).  If an officer's appointment is so vacated, they revert to their permanent status (14 U.S.C. § 214).

# 1.A.4.      Appointing Officer Candidate School Graduates

**1.A.4.a.**      **Qualifications for Appointment as Temporary Officers**

Chief warrant officers and enlisted members who meet the requirements of Article 1.B.5. of this Manual who are selected as candidates for a temporary regular commission and then successfully complete Officer Candidate School (OCS) may be appointed temporary regular commissioned officers.  Chief warrant officers may be appointed to the grade of lieutenant (junior grade), and enlisted members may be appointed to the grade of ensign.  Upon OCS graduation and original appointment as temporary regular commissioned officers, such officers incur a three-year active duty commissioned service obligation.

**1.A.4.b.**      **Permanent Appointment**

(1) General.  Enlisted members and chief warrant officers commissioned as temporary officers after OCS graduation perform duties and enjoy the privileges of regular commissioned officers.  They serve in a probationary period of about four years to ensure a fair, accurate appraisal of their capabilities over two or more types of duty.  Probation expires about the time they are considered for promotion to lieutenant, and selection under the "best qualified" system amply indicates their qualification for permanent status.  Therefore, their dual status as enlisted or chief warrant officer OCS graduates and temporary officers terminates when they are integrated as permanent officers.

(2) Procedure.

(a) PSC Notification.  Temporary regular lieutenants (junior grade) selected for promotion to the next higher grade will be contacted by Commander (CG PSC-OPM-1) as outlined in  Article 1.A.8.c. of this Manual.

(b) Discharge of Temporary Officers.  Temporary officers accepting permanent appointment shall be discharged from their permanent (chief warrant officer or enlisted) status as outlined in Article 3.A.11. of this Manual.

(c) Declining Permanent Appointment.  Any temporary officer who declines a permanent appointment shall send a memo to Commander (CG PSC-OPM)

declining the appointment.  The Commandant then makes one of the determinations listed below.  To enable the Commandant to do so, it is extremely important to send a full, complete report containing a detailed explanation of the member's reason(s) for declining permanent status.

[1] The officer's temporary appointment shall be vacated.  The officer will revert to their permanent (chief warrant officer or enlisted) status and be separated.

[2] The officer's temporary appointment shall be vacated.  The officer will revert to their permanent (chief warrant officer or enlisted) status and remain on active duty.

[3] The officer remains on active duty in their temporary commissioned status.

## 1.A.5.        Reserved

**Policies and Standards for Appointing Licensed U.S. Merchant Marine Officers can be found in the Coast Guard Recruiting Manual, COMDTINST M1100.2 (series).**

## 1.A.6.        Appointing the Coast Guard Band Director

### 1.A.6.a.        Secretary of Homeland Security Designation

Under the authority of 14 U.S.C. § 336, the Secretary designates the U.S. Coast Guard Band Director from among a pool of candidates who possess the necessary qualifications.  Then, by and with the Senate's advice and consent, the President appoints that member to a regular Coast Guard commissioned grade.

### 1.A.6.b.        Initial Appointment

The band director's initial appointment is to a commissioned grade not to exceed captain.

### 1.A.6.c.        Promotion to the Next Higher Grade

A member designated and commissioned under this Article is not included on the active duty promotion list.  The Commandant prescribes the regulations governing the band director's promotion; however, the grade of the director may not be higher than captain.  (See Article 3.A.9. of this Manual.)

### 1.A.6.d.        General Requirements

Each applicant must
:
(1) Be a United States citizen.

(2) Be of good moral character.

(3) Meet the physical standards for commissioning listed in reference (b), Coast Guard Medical Manual, COMDTINST M6000.1 (series), Section 3-C.

(4) Be a versatile musician.

(5) Have six years of professional musical experience.  Military or civilian musical experience may be combined with college-level musical education to meet this requirement.

(6) Possess the leadership and professional qualities expected of a Coast Guard officer.

(7) Be able to fulfill time in grade and commission requirements for retirement before mandatory retirement age.

**1.A.6.e.**       **Application Procedures**

As service needs require, a board will be convened to consider applicants for appointment to the position of band director.  Commander (CG PSC-OPM) will solicit applications through an ALCGPSC message and other publications deemed necessary to broaden the pool of qualified candidates.  All applications received will be processed by Commander (CG PSC-OPM) to ensure each applicant has submitted all required information.  The following completed forms and documents constitute the application file.

(1) A letter of application using standard memo format that includes a comprehensive resume of personal, professional, and military history and experience, giving specific attention to musical education and experience.

(2) Optional recommendation letters.

(3) For enlisted members: commanding officer's endorsement, including the average proficiency, leadership, and conduct marks for the 12-month period ending 30 June 1983, the average factor marks after 30 June 1983, the latest set of factor marks awarded, and other Personnel Data Record (PDR) information of interest to the board.

(4) Record of satisfactory service or discharge from other military service (if any).

(5) Transcript of scholastic record.

**1.A.6.f.**       **Selection Method**

(1) On receiving the applications, Commander (CG PSC-OPM) convenes a selection panel to evaluate all qualified applicants.  The panel shall consist of a captain as senior member, the incumbent band director, if available, and three additional officers (commanders or higher).  To provide supplementary expertise, another service's band

**76**

director may replace one of the additional members.  Except for the latter, all board members must be regular Coast Guard officers, with at least one recently or currently assigned to Commandant (CG-092).  Commander (CG PSC-OPM) may name other appropriate panel members.

(2) Convening at the Coast Guard Band location, the selection panel acts as follows:

(a) Evaluates each applicant's professional qualifications, personal characteristics, and other pertinent data within the applicant's CG PSC Electronically Imaged-Personnel Data Record, EI-PDR, and application package to determine whether the applicant is fully qualified.

(b) Interviews each applicant to assess personal attributes that must necessarily complement technical qualifications for service as a commissioned Coast Guard officer.  For this unique position, the selection panel should focus on the applicant's potential for leadership and management.

(c) Rates each applicant's performance in a 15-minute audition, during which they will conduct the Coast Guard Band in a program they prepare.  Each applicant will have 30 minutes to rehearse.

(d) Evaluates each applicant's performance in rehearsing the band with unfamiliar music as designated by panel members with musical expertise.

(e) Nominates in order of preference those applicants considered qualified in all respects for appointment and fully capable of discharging the duties of the Coast Guard Band Director, noting in the record whether qualified and recommended for a commissioned grade, not to exceed captain, based on individual qualifications and experience.

1.A.7.   Reserved

**Policies and Standards for Appointing Physician Assistants can be found in the Coast Guard Recruiting Manual, COMDTINST M1100.2 (series).**

## 1.A.8.        Integrating Reserve and Temporary Regular Officers

### 1.A.8.a.        General

(1) General.  When reserve officers, except Reserve Program Administrators, remain on active duty for an extended period to meet routine service needs, they lose identification as trained officers held in reserve for an emergency.  Similarly, temporary regular officers, except chief warrant officers appointed as temporary lieutenants, hold a probationary commission for three years while retaining permanent status as enlisted members or warrant officers.  Once an active duty promotion list (ADPL) best-qualified promotion board selects reserve and temporary regular officers, the service expects them to possess the potential and skills for long-term active service and they become eligible to integrate as permanent regular officers.

   (a) Maximum Active Duty Service Upon Integration.  Integrating to permanent regular officer status allows a member to remain on active duty for up to 30 years commissioned service (as opposed to 30 years active service) unless:

      [1]   They are twice non-selected by a future promotion board,

      [2]   They reach age 62 prior to completing 30 years commissioned service, or

      [3]   They are separated under some other provision of law.

   (b) Eligibility to Revert.  Once a temporary officer is integrated, they no longer hold a temporary commission and therefore lose the option to revert back to a previously held CWO or enlisted status.

(2) Integration Policy.  The integration policy for reserve officers and temporary regular

officers is as follows:

(a) <u>Integration Mandatory</u>.  Reserve and temporary regular officers appointed from OCS and direct commission reserve officers, who have been selected by a best-qualified ADPL promotion board, must integrate as permanent regular officers.

(b) <u>Integration Not Mandatory</u>.  Temporary regular officers who receive their commission either through the  CWO to LT program, a Direct Commission Officer (DCO) program, or the  Physician's Assistant (PA) program, have the option to integrate upon selection by a best-qualified ADPL promotion board in their temporary status.  For temporary LTs who are permanent CWOs, this does not include selection by an ADPL CWO promotion board.  If they do not accept integration, that option will not be available again until they are selected by their next best-qualified ADPL promotion board.

(3) <u>Notifying PSC of Disqualifying Actions</u>.  Notwithstanding any procedure outlined below, between the time the officer is selected by a best-qualified ADPL promotion board and the administration of the oath of office for permanent regular appointment, Commander (CG PSC-OPM) must be advised of any action that would disqualify an applicant for integration.

**1.A.8.b.**      **Integration Requirements**

To qualify for integration, a reserve or temporary regular officer must meet these integration requirements.  Normally, no waivers will be granted.  The officer must:

(1) Comply with the service's maximum allowable weight standards at the time of the administration of the oath of office for integration.

(2) At the time of the administration of the oath of office for integration, not be subject of or party to a pending investigation which could result in adverse action against the officer, nor accused pending proceedings under the Uniform Code of Military Justice, nor the subject of a pending administrative board for possible separation.

(3) Have completed two years' continuous active Coast Guard duty (as of 1 March following selection by the best-qualified promotion board) during the current active duty period.

(4) Have been selected for promotion by any ADPL board under the best-qualified selection system.

**1.A.8.c.**      **Integration Process**

(1) <u>Commander (CG PSC) Responsibility</u>.  Once a reserve or temporary regular officer has been selected by their first best-qualified ADPL selection board as discussed above:

(a) Request for Appointment Authority.  Correspondence requesting appointment authority and Senate confirmation of all officers eligible for permanent status as permanent regular officers will be initiated by Commander (CG PSC); and,

(b) Notification of Eligibility to Integrate.  A general message will be released advising the officers of their eligibility to integrate.  The message will stipulate that officers who are required to integrate but elect not to must notify Commander (CG PSC-OPM) of their intention and these officers should expect release from active commissioned service in accordance with Article 1.A.9. of this Manual.

(c) Records Review.  After receiving appointment authority and Senate confirmation, Commander (CG PSC-OPM) will conduct an internal records review of materials received about the officers to confirm they have not disqualified themselves since selection for promotion.  If record material casting doubt on an officer's qualifications for permanent status is received, Commander (CG PSC-OPM) will convene a special panel to evaluate the officer for continued service.

(d) Appointment Letter.  Once the review is complete, an appointment letter will be mailed to eligible officers via their immediate chain of command.  It will direct the command to administer the oath of office.

(2) Commanding Officer Responsibility.

(a) Confirm Eligibility.  Before administering the oath of office, commanding officers shall confirm that the officer still meets the requirements of Articles 1.A.8.b.(1) and 1.A.8.b.(2) of this Manual.

(b) Actions upon Non-Integration of Officer.  If an officer fails to meet the requirements above, or the command determines that the officer does not possess the qualities of a permanent regular officer, or the officer has elected not to integrate, the command will notify Commander (CG PSC-OPM) with an explanation.  Further action will be guided by the provisions of Articles 1.A.9. or 1.A.14. of reference (c), Military Separations, COMDTINST M1000.4 (series), as applicable.

**1.A.8.d.    Appointment Process**

Article 3.A.11. of this Manual outlines the procedures to appoint reserve and temporary regular officers selected for integration as permanent regular commissioned officers.

**1.A.8.e.    Security Investigation**

If the officer has satisfactorily completed a National Agency Check during their current tour of active duty, one is not required for integration.

## 1.A.9.    Processing Officers Who Do Not Integrate

| | **Reserve Officers** | **Temporary Regular Officers** |
|---|---|---|
| Officers required to integrate who decline appointment as permanent regular officers | The service releases reserve officers from active duty effective the date their extended active duty agreement or other obligated service expires, as needs of the service allow.  This includes officers who receive their appointment from OCS and direct commission reserve officers. | With the exception of officers who received their appointment from OCS, they remain on active duty in their temporary officer status unless separated or integrated at a later date.  Officers who received an appointment from OCS are released from active duty six months after they receive notification to integrate. |
| Failure of selection for promotion on a best-qualified basis the first time | They may apply for an extension in accordance with Article 1.B.2.d. of this Manual which will make them eligible to be seen a second time by the best-qualified promotion board. | They are eligible to be seen a second time by a best-qualified promotion board. |
| Subject of, or a party to, a pending investigation, accused pending UCMJ proceedings, or the subject of a pending administrative board for possible separation | If they request, the service may grant these officers an administrative extension for up to one year while awaiting the outcome of the pending proceeding, unless previous contractual or obligated service so provides.  After the pending action is final, unless otherwise separated, these officers may (EAD officers)/will (all others) (see Article 1.A.8.a. of this Manual) request to integrate if selected by their next best-qualified promotion board.  In determining whether proceedings of pending actions are final, the service uses the controlling directives governing the proceeding (for example, reference (d), Manual for Courts-Martial (MCM), for UCMJ proceedings, reference (e), Coast Guard Investigations Manual, COMDTINST M5527.1 (series), for administrative investigations). | They retain their temporary commissioned status while awaiting the outcome of the pending proceeding.  After the pending action is final, unless otherwise separated, they may integrate if selected by their next best-qualified promotion board.  In determining whether proceedings of pending actions are final, the service uses the controlling directives governing the proceeding (for example, reference (d),  Manual for Courts-Martial (MCM), for UCMJ proceedings, reference (e), Coast Guard Investigations Manual, COMDTINST M5527.1 (series) for administrative investigations). |

|  | **Reserve Officers** | **Temporary Regular Officers** |
|---|---|---|
| Failure to meet weight standards | They may request an administrative extension until the end of the weight loss probationary period unless previous contractual or other obligated service so provides. Administrative procedures for failure to maintain weight standards are addressed in reference (f), Coast Guard Weight and Body Fat Standards Program Manual, COMDTINST M1020.8 (series). | They retain their temporary commissioned status until the end of their weight loss probationary period.  Administrative procedures for failure to maintain weight standards are addressed in reference (f), Coast Guard Weight and Body Fat Standards Program Manual, COMDTINST M1020.8 (series). |

## 1.A.10.        Recalling Retired Regular Officers

### 1.A.10.a.        General

If service needs require, the Commandant may recall a retired regular officer to active duty for a specified time in accordance with Articles 1.A.10.b. and 1.A.10.c. below.

### 1.A.10.b.        In War or National Emergency

In time of war or national emergency, the Commandant may order any regular officer on the retired list to active duty  pursuant to 14 U.S.C. § 331.

### 1.A.10.c.        Recall with Officer's Consent

(1) Assignment of Retired Regular Officers.  The service may assign any retired regular officer, with their consent, to duties they are able to perform pursuant to 14 U.S.C. § 332(a).

(2) Maximum Allowance of Retired Regular Officers.  The number of retired lieutenant commanders, commanders, or captains on active duty shall not exceed two percent of the authorized number of officers on active duty in each grade.  This limit does not apply to retired officers in these grades recalled to serve as members of courts, boards, panels, surveys, or special projects for periods as long as one year pursuant to 14 U.S.C. § 332(b).

(3) Retired Recall Application.  The following application procedures will be followed:

(a) Letter Request.  Officers desiring recall to active duty from retirement should apply by submitting a letter to Commander (CG PSC-OPM-1) via their current

**82**

commanding officer or directorate if on active duty, or directly to Commander (CG PSC-OPM-1) if already retired.  The request will constitute consent to recall.

(b) <u>Letter Contents</u>.  The letter request should specify:

[1]   The duration of the recall agreement desired,

[2]   The desired date recall should commence,

[3]   Whether they are available for worldwide assignment.  If not, indicate the specific assignment criteria desired (whether a specific unit, geographic area or job position number),

[4]   Other useful information or a resume describing such things as qualifications and experience which may meet a service need, and

[5]   Contact information including mailing address, e-mail address and daytime telephone number.

(c) <u>Commanding Officer Recommendation</u>.  If an officer is on active duty when they apply, the commanding officer's endorsement should provide a specific recommendation concerning how this officer's recall will meet a service need and why the recall is in the best interest of the service.

(d) <u>Promotion of Retired Officers</u>.  Retired officers recalled to active duty are not normally authorized for promotion to the next higher grade except as outlined in Article 3.A.8.a. of this Manual.

(e) <u>Physical Examination</u>.  An approved physical examination is required per reference (b), Coast Guard Medical Manual, COMDTINST M6000.1 (series), Article 3.A.7.g. prior to executing orders for recall to active duty.

(f) <u>Requests for Early Release from Retired Recall Status</u>.  The decision to be recalled to active duty is a serious one as it affects assignment actions which, if reversed, could cause hardship to other officers.  Officers accepting recall to active duty incur obligated service for the period of the agreement and should expect to fulfill that service.  A hardship arising after a recall agreement has begun which causes an officer to request early release from their agreement will be evaluated on their individual merit.

(g) <u>Performing Temporary Duty (TDY) in a Retired Recall Status</u>.  Personnel in a retired recall status shall not be sent to other commands TDY for longer than five business days without permission from Commander (CG PSC-OPM).  The following exceptions apply:

[1]   TDY for training required for the current billet,

[2]  TDY that is a normal aspect of the current billet (training teams, inspectors, etc.), and

[3]  TDY related to the attendance of professional seminars.

## 1.A.11.   Appointing or Re-appointing Regular Officers from the Temporary Disability Retired List

**1.A.11.a.   General**

Permanent regular commissioned officers and chief warrant officers on the Temporary Disability Retired List (TDRL) subsequently found fit for duty shall be ordered to active duty as retired officers.  As soon as possible, they shall be reappointed as commissioned officers or chief warrant officers, as appropriate, with an adjusted date of rank under Article 1.A.11.b. of this Manual pursuant to 10 U.S.C. § 1211.

**1.A.11.b.   Appointment**

Placement on the ADPL and Constructed Date of Rank are as follows:

(1)  Lieutenant (Junior Grade) or Above.  Commissioned officers placed on the TDRL in the grade of lieutenant (junior grade) or above not previously selected to the next higher grade and later found fit for duty shall be re-appointed to the same grade they last held on active duty.  These officers are assigned a new date of rank on the active duty promotion list (ADPL) which reflects a loss of one month's seniority in their original date of rank for each month served on the TDRL.

(2)  Ensigns.  Commissioned officers placed on the TDRL in the grade of ensign not previously selected for lieutenant (junior grade) and subsequently found fit for duty shall be reappointed as ensigns.  They will be assigned a new ADPL date of rank reflecting one month's loss of seniority in their original date of rank for each month served on the TDRL.  A panel of officers shall consider promoting to lieutenant (junior grade) ensigns whose contemporaries have been considered on a fully-qualified basis for promotion.  If that panel selects those ensigns for lieutenant (junior grade), their date of rank is the date they transfer from the TDRL; however, that date cannot be earlier than the date of rank which would have occurred had they remained on continuous active duty.

(3)  Chief Warrant Officers.  Chief warrant officers placed on the TDRL not previously selected to the next higher grade and subsequently found fit for duty shall be reappointed to that same grade.  They shall be assigned a new date of rank which reflects one month's loss of seniority in their original date of rank for each month they served on the TDRL.

(4)  Officers Selected for Promotion.  Commissioned officers and chief warrant officers on a list of selectees for promotion to the next higher grade when placed on the TDRL

and whose promotion date has passed when they return to active duty shall be assigned a date of rank as of the date they return.  If they return to active duty before their promotion date, they shall be re-appointed to that grade with the date of rank they last held on active duty and promoted on schedule.

(5) <u>Officers on the TDRL in a Higher Grade</u>.  Regular commissioned officers and chief warrant officers placed on the TDRL in a grade higher than the grade last held on active duty shall be re-appointed to the permanent grade they last held on active duty or, in the discretion of the Commandant, to the next higher permanent grade pursuant to 10 U.S.C. § 1211.

(6) <u>Temporary Officers</u>.  Regular temporary commissioned officers placed on the TDRL in a higher temporary grade shall be re-appointed to the permanent grade they last held on active duty or, in the discretion of the Commandant, to the next higher permanent grade.  Re-appointment to the higher temporary grade last held on active duty will be based on needs of the service, as authorized by the President pursuant to 14 U.S.C. § 214.

## 1.A.12.    Security Investigations for Officers' Original Appointment

### 1.A.12.a.    Academy Cadets

U.S. Coast Guard Academy cadets shall have a National Agency Check (NAC) completed by April 30 during the second class year.

### 1.A.12.b.    Merchant Marine Officers

Licensed U.S. Merchant Marine officers shall initiate an NAC before commissioning.

### 1.A.12.c.    Officer Candidate School Graduates

OCS graduates may be commissioned before a satisfactory NAC is complete.  If the NAC is incomplete when the candidate graduates from OCS, they must sign the following Statement of Understanding before commissioning:

> "I understand a National Agency Check will be conducted to determine my qualification for commissioning as a United States Coast Guard officer. I understand my commission may be revoked and I may be separated in accordance with 10 U.S.C. § 12681 or 14 U.S.C. § 281 if it is determined I am not eligible for a secret security clearance."

## 1.B.   Reserve Officers on Active Duty

### 1.B.1.   Initial Active Duty and Recall to Active Duty

**1.B.1.a.**   **Reserved**

**1.B.1.b.**   **Reserved**

**1.B.1.c.**   **Recalling Reserve Officers to Extended Active Duty**

(1) Qualifications for Recall.  With their consent and as its needs require, the service occasionally recalls to extended active duty inactive duty reserve officers who meet these qualifications:

(a) They possess unique skills and abilities or professional qualifications in areas where there is a definite service need,

(b) They are in grades up to lieutenant, and

(c) They have fewer than 11 years total active service or if they have no previous active service, fewer than 11 years commissioned service as a reserve officer.  Waivers for commissioned service length can be approved by Commander (CG PSC-OPM) on a case-by-case basis for officers needed to fill critical skill set vacancies (e.g., CG Aviators).  EAD contract durations will be determined by Commander (CG PSC-OPM).

(2) Actions upon Approval of Recall.  If the service approves a recall request, Commander (CG PSC-OPM-1) issues orders recalling the reserve officer to extended active duty for at least one to a maximum of five years.  Commander (CG PSC-OPM) determines the length of the recall based on the service's and the officer's needs.  When practical, the active duty will last long enough to involve the officer in at least one active duty promotion list (ADPL) selection board.

### 1.B.2.   Retention on Extended Active Duty

**1.B.2.a.**   **General**

Reserve officers presently serving on initial active duty periods (i.e., OCS graduates serving as regular officers) or inactive duty reserve officers fulfilling an active duty agreement may request new active duty agreements or extensions of their contracts.  See Article 1.B.2.e. of this Manual.

**1.B.2.b.**       **Authority**

To provide terms of active duty (other than for training) for reserves with their consent, 10 U.S.C. § 12311 authorizes the Secretary to enter into a written, renewable agreement with any reserve member to serve on active duty (other than for training) for at least one and at most five years.  The Secretary has delegated this authority to the Commandant under 14 U.S.C. § 631 and Department of Homeland Security Delegation number 0170.  In addition, the officer and Coast Guard jointly may agree to extend an active duty agreement written for less than five years for periods of up to 12 months.

**1.B.2.c.**       **Orders Issuing Authority**

The authority to approve agreements for active duty periods under the conditions of this Article is delegated to Commander (CG PSC-OPM).  This authority may not be further delegated.  Commander (CG PSC-OPM-1) will furnish the agreement forms for each reserve officer selected for recall to or retention on active duty.

**1.B.2.d.**       **Reserve Officer Retention Standards**

(1) <u>Extending Active Duty Agreements</u>.  Commander (CG PSC) may extend current active duty agreements or grant new ones so an officer has sufficient time to complete the requirements to integrate into the regular Coast Guard or satisfy service needs.

(2) <u>Successive Active Duty Agreements</u>.  In special cases if service needs require, the Commandant may allow reserve officers to continue under successive active duty agreements until they complete up to 11 years' total active service.

(3) <u>Duration of Extension of Active Duty Agreement</u>.  Commander (CG PSC) will not extend a contract for fewer than 12 months except in unusual circumstances or if the service urgently needs the officer's services.  If reassigned to another unit, the officer normally must enter a new active duty agreement to cover a full-length tour at the new unit.  Commander (CG PSC-OPM-1) may grant interim extensions while official action is pending on either integration into the regular Coast Guard or requests for new active duty agreements.

(4) <u>Extension of Active Duty Contract after Failed Selection for Promotion</u>.  Reserve officers who have once failed selection for promotion may request an extension on active duty.  If granted, this extension terminates by the end of the promotion year when a second board will consider the officer for promotion.

(5) <u>Ineligible for Promotion or Retention on Active Duty</u>.  Reserve officers with fewer than 18 years active duty service who twice fail selection for promotion to a given grade are ineligible for further promotion or retention on active duty.  The service discharges or releases them from active  duty at the end of the promotion year in which the second failure occurs or when they complete their current active duty agreement, whichever is earlier.  The service considers these separations involuntary.

Reserve officers with 18 or more years active duty service may remain on active duty until they complete 20 years of service. Extensions beyond 20 years active duty service may be considered based on needs of the service.

(6) <u>Terminations of Active Duty Contract</u>. All extensions and agreements are subject to termination for changes in service requirements and other factors affecting the retention of reserve officers on active duty (10 U.S.C. § 12313).

### 1.B.2.e.   Submitting Applications to Remain on Active Duty

Reserve officers serving initial active duty periods or fulfilling active duty agreements may apply to remain on active duty. Amplifying guidance will be released by Commander (CG PSC-OPM) via an ALCGPSC message.

### 1.B.2.f.   Selection

(1) <u>Board Actions</u>. Boards normally meet in January and July to recommend reserve officers for new active duty agreements or extensions of their current agreements. Special boards may be convened occasionally to meet service needs. The boards normally recommend officers they consider best-qualified for retention on active duty. As service needs dictate, boards may be convened on a fully-qualified basis or not at all. If no board is convened, Commander (CG PSC-OPM) will consider all extensions and requests for new agreements. When a board is convened to consider officers on a fully-qualified basis, the board shall apply the procedures delineated in Article 6.A.5. of this Manual, with the following exception: In developing the fully qualified standards, the records of officers who hold the same grade as the applicant shall be used. The board's focus should be on reviewing the records for retention of the officers in the current grade, not for promotion purposes.

(2) <u>Board Considerations</u>. The board considers each officer for retention based on the officer's performance record, special qualifications, educational accomplishments, potential for future development as a regular officer, command endorsement, and service needs.

(3) <u>Release of Officers Not Selected for Retention</u>. The service releases to inactive duty on their scheduled release date those officers whose agreements expire or whose requests for retention have not been approved.

### 1.B.2.g.   Active Duty Agreements

(1) <u>Deadline for Submission of Active Duty Agreement</u>. Officers selected for retention must return active duty agreements to Commander (CG PSC-OPM-1) within five

(2) working days after receipt, unless Commander (CG PSC-OPM-1) specifically approved a delay of return.

(3) <u>Actions for Officers Not Desiring to Execute the Active Duty Agreement</u>.  Officers who do not desire to execute the agreement shall endorse the memo declining appointment per Article 1.A.4.b.2.(c) of this Manual to that effect and return it to Commander (CG PSC-OPM-1) within five working days of receipt.  The officer will be RELAD no later than when their agreement expires.

**1.B.2.h.**       **Pay Entitlements on Involuntary Release from Active Duty**

Reserve officers involuntarily released from active duty may be entitled to separation pay under 10 U.S.C. § 1174 and/or a termination payment for the remaining part of an active duty contract under 10 U.S.C. § 12312.  Reference (g), Coast Guard Pay Manual, COMDTINST M7220.29 (series), explains conditions and procedures on separation pay or pay on release without the member's consent before an active duty agreement expires.

**1.B.3.**       **Reserved**

**Policies and Standards for appointing Reserve Program Administrators (RPAs) has been moved to Chapter 7 of this Manual. Pages 1-18 to 19 are reserved.**

**1.B.4.      Reserved**

**Policies and Standards for Reserve Program Administrator's Voluntary Transfer to ADPL has been moved to Chapter 7 of this Manual.**

**1.B.5.      Officer Candidate School**

**1.B.5.a.    General**

(1) <u>General Information</u>.  Officer Candidate School (OCS) is a major source of newly commissioned Coast Guard officers.  The service selects candidates based on a competitive system.  Upon satisfactorily completing 17 weeks of training, graduates are appointed as commissioned Coast Guard ensigns or lieutenants (junior grade) under the provisions of Article 1.A.3. of this Manual or commissioned Coast Guard Reserve ensigns under this Article's provisions.  Classes convene according to a schedule published by a general message.

(2) <u>Board Convening</u>.  At least twice annually Commanding Officer (CGRC) convenes boards to select reserve and temporary commission applicants to OCS.  A general message announces application deadlines, cutoff dates for eligibility requirements, and any other information of concern to applicants.

**1.B.5.b.**         **Eligibility Requirements**

(1) <u>Age</u>.  Applicants must be between 21 and 26 years of age before the actual class convening date published for each selection period except:

   (a) <u>OCS Temporary Commission</u>:  Applicants applying for a temporary commission must have reached their 21st birthday but not their 35th birthday as of 30 September of the fiscal year in which the panel convenes.

   (b) <u>OCS Reserve Commission</u>:  Applicants applying for a reserve commission must have reached their 21st birthday but not their 31st birthday as of 30 September of the fiscal year in which the panel convenes.

   (c) <u>Chief Warrant Officers</u>.  Regular Coast Guard chief warrant officers are eligible until they reach their 40th birthday.

(2) <u>Military Status</u>.

   (a) <u>College Seniors</u>.  Commanding Officer (CGRC) accepts applications from college seniors currently enrolled in any ROTC program.  However, the student must present a statement signed by an authorized official of the losing service that it releases the student from any contractual obligation for military duty incurred through membership in that service.

   (b) <u>Reserve Members</u>.  Any Armed Forces reserve member (other than Coast Guard) must include in the application file the following documents:

      [1]   A conditional release from the reserve component which states that service will discharge them upon enlistment in the Coast Guard Reserve preparatory to assignment to OCS.

      [2]   A signed statement they understand these conditions and will inform Commanding Officer (CGRC) immediately of any change in their military status, including receiving orders to report for active duty.

   (c) <u>Active Duty Members</u>.  Any member currently on active duty in an Armed Force, other than the Coast Guard, must include in the application file a statement from their service that it will discharge them if selected to attend OCS.  This statement is not necessary if their enlistment expires before the convening date of the first class for which selections are made.

   (d) <u>Requirement for Temporary Regular Commissions</u>.  Applicants for temporary regular commissions must be on active duty in the Coast Guard.

   (e) <u>Ineligible Members</u>.  An applicant who has six or more years of previous active duty creditable service for retirement, other than in the Coast Guard or Coast

Guard Reserve, is not eligible.

(3) <u>Physical</u>.  Applicants must meet the requirements listed in reference (b), Coast Guard Medical Manual, COMDTINST M6000.1 (series), Section 3.E.3.

(4) <u>Citizenship</u>.  The applicant must be a United States citizen with no questionable foreign connections.

(5) <u>Officer Screening Tests</u>.  OCS screening tools and their minimum required scores are listed below.  Applicants to all selection boards must include in their application package a qualifying score on the SAT, ACT, or ASVAB.  No waivers will be considered.  The most recent score is valid for this program with no limitation on what year the test was taken.

| Test | Minimum Qualifying Score | Required Proof |
|------|--------------------------|----------------|
| Scholastic Aptitude Test (SAT) | Combined 1000 on verbal and math or 1100 on the SAT 1 | Copy of the score report |
| American College Test (ACT) | 21 | Copy of the score report |
| Armed Services Vocational Aptitude Battery (ASVAB) General Technical (GT) Aptitude Area, which combines Arithmetic Reasoning (AR) Test and Verbal Ability (VE) standard score, obtained by adding the Word Knowledge (WK) and Paragraph Comprehension (PC) Test scores. | 110 | ASVAB test scores printed from Direct Access. |

(6) <u>Interview</u>.  A board of commissioned officers interviews each applicant in accordance with Article 1.B.8. of this Manual.  Applicants not selected for OCS may reapply and be interviewed again.

(7) <u>Educational Qualifications</u>.

(a) <u>Reserve Commission Applicants</u>.  Reserve commission applicants must be in their senior year at or hold a baccalaureate or higher degree from an accredited college or university

.

(b) <u>Temporary Regular Commission</u>.  Temporary regular commission applicants must:

[1]   Hold a baccalaureate or higher degree from an accredited college or university prior to beginning the application process, or

[2]   Attain 25th-percentile scores (a general message will publish actual scores required) on all parts of the DANTES General Examinations of the College Level Examination Program, or

[3]   Complete one year of study (30 semester hours or 45 quarter hours) at an accredited, degree-granting college or university, and

[4]   Satisfactorily complete one college-level mathematics course, or

[5]   Pass the DANTES General Mathematics Examination of the College Level Examination Program (CLEP).

(c)   Accredited College.  An accredited college is one accredited by an accrediting body recognized by the Council on Post-Secondary Accreditation.  Commanding Officer (CGRC) will consider waiving the accreditation requirement if the applicant presents written certification from the appropriate officials of three accredited colleges or universities stating their schools will accept their credits for transfer purposes as if the applicant had earned them at an accredited school or recognize their baccalaureate degree for purposes of graduate study.

(d)   Service Schools and Correspondence Courses.  Service schools and correspondence courses are a possible source of college credits.  Credits earned this way are acceptable for purposes of program qualification when awarded by accredited colleges or universities, or when reflected on the Coast Guard Institute certified transcript.

(8)   Coast Guard Personnel on Active Duty.

(a)   E-4 and Below.  Members E-4 and below are ineligible for temporary regular commissions with the following exception:  members reverted to E-4 due to a change in rate in accordance with Article 3.A.24.a.(2) of  reference (i), Enlisted Accessions, Evaluations, and Advancements, COMDTINST M1000.2 (series), and who previously served satisfactorily as an E-5 in the Coast Guard, are eligible for temporary regular commissions.  Aside from this exception, if otherwise eligible, they may apply for reserve commissions.

(b)   E-5 and Above.  Enlisted members E-5 and above who meet the time in service requirement specified in Article 1.B.5.b.(9) below may be appointed temporary officers only in the grade of ensign.  However, if they do not meet the time in service requirements, they may be appointed as reserve officers if they meet the criteria for a reserve commission.

(c)   Regular Chief Warrant Officers.  Regular chief warrant officers with 21 or more months as a chief warrant officer on the published class convening date are eligible to apply for temporary commissions as lieutenants (junior grade).  All chief warrant officers with fewer than 21 months on that date will be

COMDTINST M1000.3A

commissioned as ensigns.  Officer candidates who apply as enlisted members, and are appointed to warrant grade before OCS graduation, receive temporary commissions as ensigns.

(9) <u>Time in Service</u>.  Temporary commission applicants must have at least four years of active duty in any Armed Forces branch by the published class convening date.  They must have served at least two years of their active duty in the Coast Guard.  They may not use active duty for training to fulfill this requirement.

(10) <u>Dependents</u>.  Applicants not on active duty in the Coast Guard may have a maximum of three dependents.

(11) <u>Flight Training</u>.  Applicants are not pre-selected for flight training, but may apply at OCS.  They take the Aviation Selection Test and a flight physical examination during the OCS application process to determine their qualifications for flight training, but the board does not consider such information in the OCS selection process.  Applicants considering flight training should be aware they must meet the requirements published in reference (j), Performance, Training and Education Manual, COMDTINST M1500.10 (series), including the age requirements.  Applicants are not assigned to an earlier OCS class solely to enable them to meet flight training age requirements.

**1.B.5.c.**      **Applications**

All applicants should contact their local recruiting office, or if already in the Coast Guard, their unit's Educational Services Officer (ESO).  All enlisted and chief warrant officer applicants apply through their unit to Commanding Officer (CGRC).

**1.B.5.d.**      **Educational Services Officer Action**

The unit ESO assists the applicant with:

(1) Arranging medical examinations and the Board of Interview.

(2) Sending applications and required documents to Commanding Officer (CGRC).  If travel for a physical examination is excessive, the government may bear the cost under provisions of the Joint Federal Travel Regulations, Vol. 1, paragraph U7025.  In many cases, the ESO may schedule the interview during the same trip as the medical examination.

**1.B.5.e.**      **Coast Guard Recruiting Command (CGRC) Action**

Commanding Officer (CGRC) takes these actions:

(1) Provides the requesting unit ESO with the Record of Military Processing—Armed Forces of the United States, DD Form 1966, instructions for submitting documents

required.

(2) Assists the unit in completing the requirements to submit OCS applications.

**1.B.5.f.**      **Required Documents**

(1) <u>All Applicants</u>.  These documents must be submitted for all applicants:

(a) Report of Medical Examination, Form SF-88, and Report of Medical History, SF-93, prepared in triplicate, with all copies signed.

(b) The complete set of the Aviation Selection Test Battery Answer Sheets.  Return the entire packet (AQT, MCT, SAT, BI) with answer sheets to Commanding Officer (CGRC), including unused portions.

(c) Officer Programs Applicant Interview Form, Form CG-5527 (one combined form from all board members).

(d) Report of Board of Interview.  See Article 1.B.8. of this Manual.

(e) A brief narrative explaining the applicant's reasons for applying for OCS and goals as a Coast Guard officer, if selected.  As part of this narrative, the applicant may specify which class they prefer to attend.  The Coast Guard attempts to honor that preference if the applicant is selected, but cannot give guarantees.

(f) Finger Print Card, FD-258 (two originals).  This may be submitted after selection as primary or alternate candidate.

(g) Questionnaire for National Security Positions, SF-86.  Leave "Date Requested" blank.

(h) Personnel Security Action Request, Form CG-5588, (one original).  This may be submitted after selection as primary or alternate candidate.

(i) Official transcripts of all college courses completed or other scholastic record, one copy, submitted to Commanding Officer (CGRC) or recruiter directly from the college.

(2) <u>Temporary Commission Application</u>.  In addition to the documents listed above, temporary commission applicants must submit these documents:

(a) Evidence of completing the educational qualifications listed in Article 1.B.5.b. of this Manual.

(b) Officer Candidate School Agreement, Form CG-3211C, one copy.

(c) A letter evaluation from the applicant's commanding officer.  Without the commanding officer's endorsement, no applicant package will be forwarded for further review.  The letter evaluation shall include:

[1] The commanding officer's evaluation of the applicant's potential value to the Coast Guard as a commissioned officer.

[2] Their evaluation of the applicant compared with other OCS graduates whom they personally have known.

[3] Any outstanding professional or other qualifications the applicant may possess.

[4] The commanding officer's statement of knowledge about the applicant's ability and willingness to meet their financial obligations.

[5] The applicant's average marks during the current enlistment according to Article 1.B.31. of reference (c), Military Separations, COMDTINST M1000.4 (series), and their most recent marks for Performance, Leadership, Military, and Professional Qualities Factor.

(d) Questionnaire for National Security Positions, SF-86 (five copies with original signature).  Submit one copy with the application and the remaining copies after selection as a primary or alternate candidate.

(e) One copy of the current enlistment contract plus any extensions to it.

(f) One copy of the member's Enlisted Employee Review (EER).

(g) Statement of Financial Obligation/Spouse's Consent, Form CG-4891.

(3) Reserve Commission Applicants.  Reserve commission applicants who are Coast Guard or Coast Guard Reserve members must submit these documents:

(a) Proof of baccalaureate or higher degree from an accredited college or university, before the date published in the general message.

(b) Items listed in Article 1.B.5.f.(2) of this Manual.

(4) Civilians and Other Armed Forces or Their Reserves' Members.  In addition to the documents listed in subparagraph (3) above, civilian applicants and members of an Armed Force or its reserve component other than the Coast Guard must submit these documents, which will not be returned:

(a) Record of Military Processing-Armed Forces of the United States, DD 1966, original and one copy, completed in accordance with reference (a), Coast Guard

**96**

Recruiting Manual, COMDTINST M1100.2 (series).

(b) Photocopies of Armed Forces of the United States Report of Transfer or Discharge, DD-214, or other separation papers, if applicable (one copy).  If the applicant indicates they previously applied for officer candidate training in another service, they should state the current status of that application.  If previous dismissal from such training is indicated, the applicant must give the reasons for dismissal.

(c) Birth certificate (one certified or photocopy).

(d) Evidence of change of name, when necessary (one copy).

(e) Evidence of citizenship, when necessary (one copy).

(f) A list of anticipated dates and places of residence until class convening date.

(g) Questionnaire for National Security Positions, SF-86, (five copies with original signature).  Submit one copy with the application package and the remaining copies on selection as a primary or alternate candidate.

(h) The Statement of Financial Obligations/Spouse's Consent, Form CG-4891.

(i) Conditional release from another Armed Forces component, when necessary (one copy).  See Article 1.B.5.b. of this Manual.

(j) Officer Candidate School Agreement, Form CG-3211C, (one copy).

(k) Former officers or reserve officers must submit copies of all fitness reports.

(l) A list of five references to whom the recruiter will send a USCG Enlistee Reference Investigation Letter, Form CG-4445.

(m) Proof of baccalaureate or higher degree earned from an accredited college or university, before the date published in the general message.

(n) Police Record Checks, DD-369.  Notify Commanding Officer (CGRC) of any derogatory information omitted from Record of Military Processing-Armed Forces of the United States, DD-1966 or Questionnaire for National Security Positions, SF-86.

(5) <u>Local Recruiting Office Action</u>.  Local recruiting offices may forward OCS applications to Commanding Officer (CGRC) before receiving these documents:

(a) Evidence of a baccalaureate degree.

(b) Discharge or separation papers.

(6) <u>Incomplete Application</u>.  Incomplete applications must contain a list of the supporting documents not included, and a statement that they will be forwarded as soon as obtained.  Commanding Officer (CGRC) will not authorize enlistments until applications are complete.

(7) <u>Disposing of Application Files</u>.  Commanding Officer (CGRC) retains non-selected applicants' application files.  Applicants who want to reapply must request their file be returned to them for updating and resubmission.

**1.B.5.g.**      **Notifying Civilian Candidates**

(1) <u>Notification of Selection</u>.  All applicants will be notified as soon as possible after selections have been completed.

(2) <u>Effecting Enlistment</u>.

(a) Local recruiting offices shall effect the enlistment of selectees in their area only when Commanding Officer (CGRC) specifically directs.  Notification of selection does not constitute authority to enlist.

(b) Selectees will be processed for enlistment in the Coast Guard Reserve as outlined in reference (a), Coast Guard Recruiting Manual, COMDTINST M1100.2 (series).

(c) All selectees should reacquaint themselves with the Chapter, "General Information-Before You Come," in the booklet Coast Guard OCS: A Preview for Officer Candidates.

(d) Local recruiters will question all selectees before enlistment to determine if any change in medical status has occurred since the date of their physical examination.  Immediately notify Commanding Officer (CGRC) of any change.

**1.B.5.h.**      **Notifying Coast Guard and Coast Guard Reserve Selectees**

Commanding Officer, (CGRC) notifies selectees via general message traffic of their selection to Officer Candidate School.   Commander (CG PSC-EPM) issues orders to OCS to enlisted personnel on active duty and Commander (CG PSC-OPM) to chief warrant officers and reservists not on extended active duty.

**1.B.5.i.**      **Reconsidering an Applicant**

Anyone who has applied for this program but was not selected may be reconsidered during the succeeding selections if they remain qualified and resubmits an application (See Article 1.B.5.b. and 1.B.5.c. of this Manual.)

**1.B.5.j.**     **Rates for OCS Selectees**

(1) Those entering OCS who are not currently Coast Guard or reserve members receive one of these designations:

| Former Status | OCS Enlisted Rate |
|---|---|
| No prior military service, active or inactive | Seaman apprentice (officer candidate) |
| A former enlisted member of any other service | Seaman apprentice (officer candidate) |
| Former Coast Guard or Coast Guard Reserve personnel | Rate held at time of last discharge |

(2) Coast Guard and Coast Guard Reserve enlisted personnel E-5 and above have the designator officer candidate under instruction (OCUI) added to their pay grade for the duration of the training course as follows:

| Former Enlisted Rate | OCS Designator |
|---|---|
| E-9 | OCUCM |
| E-8 | OCUCS |
| E-7 | OCUIC |
| E-6 | OCUI1 |
| E-5 | OCUI2 |

(3) All officer candidates who report to OCS serving in a pay grade up to E-4 temporarily advance to OCUI2 (pay grade E-5) and hold this rate while they are officer candidates undergoing instruction.  If they do not successfully complete the course, they revert to their former pay grade when they reported to OCS.

(4) Former officers selected for OCS are enlisted as seaman apprentice (officer candidate) and receive original O-1 commissions in the Coast Guard Reserve after graduating from OCS, with previous service time creditable for pay and retirement purposes but not for promotion.

(5) Coast Guard chief warrant officers on active duty remain chief warrant officers while attending OCS.  Upon graduation, they receive temporary regular commissions as either ensigns or lieutenants (junior grade); see Article 1.A.4. of this Manual.

**1.B.5.k.**     **Unsuccessful Candidates**

(1) Unsuccessful Completion of OCS.  The service assigns candidates who do not successfully complete OCS as follows:

(a) Active duty Coast Guard members to general duty to complete their enlistment or other obligated service.

(b) Members of an inactive reserve component to inactive duty; they incur no additional active duty obligation because they attended OCS.

(c) The service normally discharges applicants with no service affiliation before enlisting for OCS from the service.

(2) <u>Failure to Meet Commissioning Physical Requirements</u>.  The service normally discharges a candidate who fails to meet the physical requirements for commissioning.

## 1.B.6.        Recalling Retired Reserve Officers

The information in Article 1.A.10. of this Manual on recalling retired regular officers also applies to retired reserve officers except retired reserve officers are not eligible for promotion (10 U.S.C. § 12307).

## 1.B.7.        Security Investigations for Original Appointment of Reserve Officers

Selectees must initiate a National Agency Check and sign the following Statement of Understanding before commissioning:

"I understand a National Agency Check will be conducted to determine my qualification for commissioning as a United States Coast Guard officer.  I understand my commission may be revoked and I may be separated in accordance with 10 U.S.C. § 12681 or 14 U.S.C. § 281 if it is determined I am not eligible for a secret security clearance."

## 1.B.8.        Interviewing Procedures for Officer Recruiting Programs

### 1.B.8.a.    General

OCS and the various direct commission programs are important sources of Coast Guard officers.  Various selection boards evaluate applicants' qualifications to determine those best qualified for a particular program.  To do so properly, they must have adequate information.  An important source is the interview, often the only significant personal contact with the applicant reported by a Coast Guard official.  As such, the interview provides important subjective input on the applicant's poise, leadership potential, ability to communicate, motivation for service in the Coast Guard, etc.  On the basis of this subjective report and other, more objective measures, the Coast Guard selects candidates.  The accuracy of the selection process directly reflects the quality and uniformity of interviews.  Consequently, effective interviewing procedures and careful attention to completing the Officer Programs Applicant Assessment, Form CG-5527, are extremely important to both the Coast Guard and the applicant.

**1.B.8.b.**      **Requirements**

(1) <u>Composition of Interview Boards.</u>

(a) Commanding officers shall convene interview boards at places within their jurisdiction.  Boards shall consist of three officers, except when necessary to interview an applicant at a location geographically remote from a larger Coast Guard facility.  **In such cases, a two-member board may be authorized by CG RC.**

(b) The board's senior member shall be a lieutenant commander or above.  Other members **must** have the rank of ensign or higher with more than one year of Coast Guard service.  Interview board members for chief warrant officer applicants shall be lieutenant commanders or higher.  All members must be equal or senior to the grade for which they are considering the applicant.

(c) Interview boards should be composed with applicant and program in mind.  Thus, when interviewing for OCS, the board should contain, if practical, an OCS graduate; **for an IDPL commission, will contain at least one reserve officer; for a direct commission program, will contain a specialist in the same field. A board considering an applicant for the Direct Commission Lawyer program must contain at least one Coast Guard attorney.** A board interviewing female or minority applicants should contain, if practical, a female or respective minority member.  A board considering licensed officers in the Merchant Marine or Maritime Academy graduates should include, if practical, **one officer who is a Maritime Academy Graduate or** one with merchant marine safety experience.

(d) **At least one board member must be an active duty Coast Guard officer.**

(e) Since an unbiased, independent contribution is essential, officers in direct personal or professional contact with the applicant may not be members of that individual's interview board.  Coast Guard members' immediate supervisors and commanding officers may not be board members because they provide input through the commanding officer's endorsement.

(2) <u>Interview Board Report</u>.  The interview board completes an Officer Programs Applicant Assessment, for each applicant.  Board members should prepare this form jointly, with all board members reaching a consensus.  Do not show applicants the completed forms from the interview.  Submit these sheets with the cover sheet, signed by the senior board member, to the recruiter or educational services officer and provide this information:

(a) The name of the program,

(b) The applicant's name,

COMDTINST M1000.3A

(c) The names and duty stations of the interview board members, and

(d) Date or dates when members interviewed the applicant.

(3) <u>Applicant Recommendation</u>.  The interview board must state the applicant's suitability for commissioning in the program(s) in question in the first sentence of the "Overall Impression of Candidate" box of the Applicant Assessment form in this wording: "(applicant name) is recommended for (program name)," or "(applicant name) is NOT recommended for (program name)," for example:  "Mary Jones is recommended for Officer Candidate School;" or "Ralph Jones is NOT recommended for the Direct Commission Aviation program."  In addition, include applicable comments in the "Overall Impression of the Candidate" box.

---

**1.B.9.** **Reserved**

**Policies and Standards for Officer Programs Interviewing Guidelines can be found in the Coast Guard Recruiting Manual, COMDTINST M1100.2 (series).**

---

**1.C.** **Reserved**

**Policies and Standards for U.S. Coast Guard Selected Reserve Direct Commission Officer Program can be found in the Coast Guard Recruiting Manual, COMDTINST M1100.2 (series).**

---

**1.D.** **Reserved**

**Policies and Standards for appointing Coast Guard warrant officers has been updated and moved to a new Directive, Appointing Warrant Officers, COMDTINST M1420.1 (series).**

COMDTINST M1000.3A

**Pages 1-34 through 1-81 are reserved.**

## 1.E.   Appointment as U.S. Coast Guard Cadet

### 1.E.1.      General

**1.E.1.a.      Statutory Authority**

By regulations appearing under 14 U.S.C. § 631 and Department of Homeland Security Delegation number 0170, the Secretary of the Department of Homeland Security has delegated statutory authority to the Commandant of the U.S. Coast Guard to prescribe regulations on cadet appointments (14 U.S.C. § 182). This section exercises that authority. To facilitate administering the appointment process, the following delegations of authority are made:

(1) The Superintendent, U.S. Coast Guard Academy, is authorized to tender appointments as Cadet, U.S. Coast Guard; and

(2) The Superintendent, U.S. Coast Guard Academy, is authorized to appoint a board of Coast Guard officers to be known as the Cadet Candidate Evaluation Board, whose duties are set forth in Article 1.E.4.b. of this Manual.

**1.E.1.b.      Coast Guard Academy**

Cadets are appointed in the Coast Guard for education and training to prepare them to become commissioned officers in the service. The Coast Guard Academy, located at New London, Connecticut, is maintained by the government for the practical training and theoretical education of young men and women to enable them to enter upon the duties of a junior officer in the U.S. Coast Guard.

**1.E.1.c.      Appointment as a Cadet**

The Academy tenders appointments solely on the basis of an annual nationwide competition. There are no congressional appointments or quotas for any state, district, or special category. The competition for appointment as a cadet is based on the candidate's high school rank, performance on either the College Board Scholastic Aptitude Test (SAT I) or the American College Testing Assessment (ACT), and leadership potential as demonstrated by participating in high school extracurricular activities, community affairs, or part-time employment. Any man or woman, civilian or military, who meets the requirements set forth in Article 1.E.2. of this Manual is eligible to apply for appointment as cadet, U.S. Coast Guard. No eligibility requirements may be waived, except as noted.

### 1.E.2.      Eligibility Requirements

**1.E.2.a.      Age**

Must have reached the age of 17 but must not have reached the age of 23 by 1 July of the year admitted as a cadet.

**1.E.2.b.**     **Citizenship**

Must be a United States citizen at the time of entry to the Academy.  (Citizens of foreign countries authorized by law and nominated by mutual agreement between the United States and their native country are exempt from this requirement.)

**1.E.2.c.**     **Marital Status**

Must be unmarried and have no legal obligations resulting from any previous marriage.

**1.E.2.d.**     **Character**

Personal background must demonstrate positive evidence of good moral character, responsibility, trustworthiness, and emotional stability.

**1.E.2.e.**     **Height and Weight Requirement**

Must be between five feet and six feet six inches with weight suitable to physique. Maximum height is waiverable to six feet eight inches by the Commandant.

**1.E.2.f.**     **Physical Aptitude**

(1) <u>Fitness Standards</u>.  Life as a Coast Guard cadet and later as an officer is physically demanding.  It requires physical fitness and stamina that lead to a healthy lifestyle. To ensure that cadets meet fitness standards, they take the physical fitness examination (PFE) each semester.  Cadets should prepare for this challenging aspect of Academy life.

(2) <u>Physical Fitness Examination (PFE)</u>.  The PFE is a 500 point test with a minimum passing score of 250.  It consists of five elements worth 100 points each:

(a) Pull-ups for men and women or incline pull-ups for women,

(b) Two minute curl-ups or sit-ups,

(c) Standing long jump,

(d) 300 yard shuttle run, and

(e) 1.5 mile run.

Note:   Pull-ups, curl-ups, long jump, and 300 yard shuttle run must be administered in order with a maximum of five minutes rest period between events.  The 1.5 mile run must be performed no sooner than one day and no longer than seven days after the first four events.

**105**

(3) <u>Actions upon Failing the PFE</u>.  Cadets reporting to the Coast Guard Academy will take the PFE during their first week and during the academic semester.  At the first administration, any cadet who receives a score of less than 200 points will be recommended for immediate disenrollment.  Cadets who initially score between 200 and 249 points will be assigned to a physical fitness advisor and be issued a specific developmental exercise prescription.  If they do not pass the PFE by the beginning of their second academic term, they will be recommended for disenrollment.  Later, cadets who fail two consecutive PFEs; i.e., score below 250 points, will also be recommended for disenrollment.

1.E.2.g.       **Scholastic Requirements**

Must be a high school graduate or senior assured of graduation from an accredited high school, preparatory school, or college.  Except for courses completed by correspondence for which an accredited school has granted a certificate, correspondence schools do not meet this paragraph's requirements and their certificates will not be accepted.  Fifteen units of study are required.

(1) <u>Mandatory Courses</u>.  The courses listed below, comprised of six units, are mandatory:

   (a)  Three mathematics courses, including algebra and plane or coordinate geometry, or their equivalent, and

   (b)  Three courses in English (I, II, and III).

(2) <u>Course Credit</u>.  Both high school and college credits may be submitted.  Because of the great variation in academic standards and credit requirements among the schools, the Superintendent reserves the right to evaluate each academic record submitted on its individual merits.  In general, college credits and high school credits from accredited institutions will be given the same weights for the same amount of work, and in no case will one semester of college work be considered equivalent to more than one unit of high school work.  The Superintendent reserves the right to reject any applicant whose assigned grades create doubt as to ability to successfully pursue the Academy course.

1.E.2.h.       **Medical Requirements**

(1) <u>Service Academy Medical Examination</u>.  Candidates must pass a Service Academy Medical Examination before receiving an appointment.  Medical examinations will be authorized by the Academy to candidates as their records become more complete.  The Coast Guard Academy Medical Examination satisfies the requirement for all Service Academies and four-year ROTC Scholarships.  Medical examinations are scheduled and coordinated by the Department of Defense Medical Examination Review Board (DODMERB).  The medical requirements or appointment as a cadet are published in reference (b), Coast Guard Medical Manual, COMDTINST M6000.1 (series).

(2) <u>Waivers</u>.  No waivers of medical requirements are granted to applicants.  Should there be any questions regarding cause for disqualification, this information may be obtained by writing to DODMERB, 8034 Edgerton Dr. Ste 132, USAF Academy, CO 80840-2200, Attn: USCG Representative.  A cadet must pass a second medical examination upon reporting to the Academy.

## 1.E.3.      Application

### 1.E.3.a.      Application for Testing

All candidates for admission to the Coast Guard Academy must take either the College Board Scholastic Aptitude Test (SAT I) or the American College Testing Assessment (ACT) and bear all expenses.

(1) <u>Use of the SAT</u>.  To register for the SAT, obtain a current copy of the College Board Admissions Testing Program either at PO Box 592, Princeton, NJ 08542-0592, or PO Box 1025, Berkeley, CA 94701-1025.  The SAT must be taken prior to or including the December test date of the year in which application is made for the Academy.  Registration for the December SAT closes in late October of each year.  The Coast Guard Academy must be named as one of the colleges to receive the test scores.  The Academy's code number for College Board is 5807.

(2) <u>Use of the ACT</u>.  If an applicant desires to use the ACT, a registration packet should be obtained from the Registration Department, American College Testing Program, PO Box 168, Iowa City, IA 52243-0168.  The ACT must be taken prior to or including the December test date of the year in which application is made to the Coast Guard Academy.  Registration for the last acceptable ACT test closes in late October of each year.  The Coast Guard Academy must be named as one of the colleges to receive the test scores.  The Academy's ACT code is 0600.

(3) <u>Registration Timeline</u>.  Applicants must register prior to the deadline established by either the College Board or American College Testing Assessment for the last acceptable test administration.  The scores from tests subsequent to the December administration will not be accepted.

### 1.E.3.b.      Application for Appointment

(1) <u>Formal Application</u>.  Formal application must be made to the Coast Guard Academy.  Obtain the initial application for appointment by writing directly to Director of Admissions, U.S. Coast Guard Academy, 31 Mohegan Avenue, New London, CT 06320- 8103, Commander (CG PSC), or Commanding Officer (CGRC).  The complete application must be postmarked by 15 December to receive consideration for the class entering the following summer.

(2) <u>Supplemental Forms</u>.  The Academy will mail these seven supplemental forms to

applicants in September; applicants must complete and return the forms to the Director of Admissions, U.S. Coast Guard Academy, by 15 January:

(a) High school transcript,

(b) Candidate activities,

(c) English instructor evaluation,

(d) Mathematics instructor evaluation,

(e) Physical education instructor or coach evaluation,

(f) Background information, and

(g) Essay questions.

## 1.E.4.      Selection

### 1.E.4.a.      Purpose, Scope, and Form

(1) <u>Admissions Division's Guiding Principals</u>.  In meeting the Academy's goal of producing a graduating class which, taken as a whole, meets the program, diversity, and quality objectives of the Coast Guard, the Admissions Division follows procedural and philosophical directives in recruiting and admitting candidates to the Academy.

(2) <u>Characteristics Desired in Selection of Candidates</u>.  The Academy ultimately is responsible for selecting and developing commissioned officers to serve in the U.S. Coast Guard.  In pursuing this mission, the Academy seeks applicants with a wide variety of desired characteristics, including the motivation and potential to complete the challenging four-year program.  From the applicant pool, the Academy appoints well-rounded candidates who demonstrate the many qualities of successful cadets and officers.  These appointees are also individuals who will enrich campus life with a variety of differing perspectives and backgrounds reflecting the diverse aspects of American society.

(3) <u>Academy Environment</u>.  Once enrolled, the cadet's intellectual and professional development is supported and enhanced in an environment that stimulates a high level of integrity, commitment, respect, discipline, and camaraderie.  They will experience a sound undergraduate education along with professional development that enables a graduate to assume duties immediately as a junior officer afloat.

(4) <u>Scope of Selection</u>.  The Academy's broad program of intellectual, professional, physical, and character development prepares the Coast Guard's and America's future leaders.  Thus, the Academy seeks to enroll students of high moral character with a

**108**

well-rounded background of academic, leadership, extra-curricular, and athletic preparation.

(5) <u>Admissions Process</u>.  The admissions process uses both objective and subjective criteria.  Objective criteria include an applicant's high school rank (HSR) and standardized test scores (SAT I or ACT).  The subjective component is a score determined by the Cadet Candidate Evaluation Board (CCEB).  Unlike the other military academies, Congressional nominations or appointments are not required.

(6) <u>Composition and Considerations of the CCEB</u>.  The CCEB is comprised of panels that include three Academy faculty and staff members.  These panels individually evaluate a candidate's total record, paying particular attention to strength of transcript, essays, demonstrated leadership, extracurricular activities, employment, community service, special talents, awards, recommendations, etc.

(7) <u>Candidate's Principal Score</u>.  The combination of HSR, standardized test scores, and CCEB scores results in the candidate's principal score (CPS).

(8) <u>Principle Appointment Score</u>.  Candidates who are medically qualified and meet or exceed the principal appointment score (PAS) receive an appointment.  The PAS is a cut-off established each November by counting many variables, including historical data, societal trends, number of applications expected, size of entering class based on graduation projections, etc.  If openings exist after the principal appointment list is exhausted, the CCEB considers candidates from the list of highly qualified alternates (those with scores within 250 points of the PAS).

(9) <u>Recompeting upon Failure to Receive an Appointment</u>.  U.S. Coast Guard Cadet appointments are offered to candidates who meet or exceed the PAS established for that year's entering class.  A candidate who fails to receive an appointment may compete in subsequent years without prejudice, provided they meet age and physical qualifications.  The Commandant annually re-evaluates the number of appointments tendered and adjusts it in accordance with service needs.

(10) <u>The Candidate's Principal Score (CPS) and Its Function</u>.

(a) <u>Purpose of the CPS</u>.  It is difficult to compare individuals effectively, particularly in a highly selective environment, without some measurement capability.  Designed to represent a wide variety of a candidate's aspects, including standardized test scores, the CPS is carefully calculated to provide the best numerical representation of an applicant.

(b) <u>Composition of the CPS</u>.  The CPS is comprised of the CCEB score, representing 40%; the HSR, 30%; the SAT I or ACT mathematics portion, 20%; and the verbal portion, the final 10%.  To establish an accurate numerical composite of scores, the CCEB evaluation converts HSR (adjusted if needed depending on class size, school competitiveness, and strength of the student's

curriculum) and the ACT score to a numerical score corresponding to the SAT I scale (200 to 800 points). Only the highest SAT I or ACT score is used for candidate evaluation. The CCEB evaluation allows subjectivity to balance the objectivity of the HSR and test scores; the latter cannot accurately measure a candidate's motivation, maturity, determination, and other objective qualities.

(c) <u>Minimum Academic Qualifications</u>. To be evaluated by the CCEB, a candidate must meet minimum academic qualifications, i.e., they must have a combined HSR and standardized test score minimum of 3350 points. A candidate who meets or exceeds this standard is deemed a finalist.

(d) <u>Sample Candidate</u>: HSR = 5th out of 100 = 675 points; SAT scores: 670 Mathematics and 600 Verbal

| | | | |
|---|---|---|---|
| 30% HSR | = 3 x 675 | = | 2025 |
| 20% Mathematics | = 2 x 670 | = | 1340 |
| 10% Verbal | = 1 x 600 | = | 600 |
| Total | = | | 3965 |

This score qualifies the candidate as a finalist.

CCEB scores: 700, 650, 600
40% CCEB = 4 x (700 + 650 + 600)/3 = 2600

Finalist Score + CCEB Score = 6565, the candidate's Principal Score.

If the Principal Appointment Score is set at 6550, for example, the Academy would offer this candidate a full appointment.

A candidate scoring between 6300 and 6550, would place on the alternate list.

(e) <u>Determining Potential Beyond the CCEB</u>. It is important to note CCEB scores are relatively subjective and the admissions process, though heavily numerical, is not an exact science. Determining an individual's potential capacity to perform and become a leader is a most difficult responsibility. Therefore, highly dedicated, experienced members using carefully chosen criteria determine which candidates likely will best serve and meet the Coast Guard's needs. The admissions criteria are re-examined annually and compared with available cadet performance and retention data as well as post-graduation performance.

## 1.E.4.b.    Selection Process

The selection process consists of these three parts:

(1) <u>Academic Evaluation</u>. The academic evaluation portion of the competition,

**110**

representing 60 percent of a candidate's total score, is determined by combining high school rank converted to a standard score with either the SAT or ACT scores using the following weighting factors:

| If SAT Scores Are Higher: | If ACT Scores Are Higher: |
|---|---|
| SAT Verbal x 1 | ACT English x 1 |
| SAT Mathematics x 2 | ACT Natural Science x 2 |
| High School Class Rank Converted Score x 3 | ACT Mathematics x 3 |
| | High School Class Rank Converted Score x 4 |

The Academy accepts the best of either the SAT or ACT scores of any test taken before or including the December test date of the year in which applying for the Academy.  Applicants with the highest scores in the academic evaluation are considered "finalists" in the competition and notified of their status in February.  Each finalist's complete file is submitted to the CCEB.

(2) Cadet Candidate Evaluation Board.

   (a) Board Considerations.  The Academy Superintendent designates a board of Coast Guard officers who assign an evaluation mark to each candidate satisfying the minimum score requirements in the competitive examination.  The evaluation includes all the factors known to influence success as a cadet and officer.  The marks are based on the candidates' relative merit as shown by tests, questionnaires, and documents in Article 1.E.3. of this Manual.  The board's decision is based on this factual objective information:

      [1] The candidates' attitude toward assigned tasks and willingness to work as shown by the consistency and pattern of previous school work,

      [2] The candidates' previous extracurricular and athletic interests and experience with particular attention to evidence of leadership and teamwork,

      [3] The candidates' personal qualities as shown by their reference questionnaire, evaluations, and comments by their high school counselor, principal, teachers, and similar officials, and

      [4] The candidates' score on one or more tests of emotional stability, social adjustment, vocational interest, study habits, background, and personality characteristics as may be administered for the purpose.

   (b) Board Duties and Considerations.  The board has the duty to obtain the best

**111**

possible cadets and officers for the Coast Guard. It is therefore in a candidate's interest to cooperate fully in supplying the board with all relevant information on the factors listed in this paragraph. The board's judgment is final and subject to review only by the Commandant's order. To establish a list of eligible candidates and eliminate those markedly deficient in one or more phases of the examination, the board will not consider candidates who fail to meet the minimum test requirements. Candidates whose standard scores on required tests and measures fall below the prescribed individual and/or combined test level are eliminated from further consideration.

(c) <u>Computing the Final Mark</u>. Each candidate's final mark is computed by averaging the standard weighted scores provided through the test marks and the CCEB rating.

(d) <u>Waivers</u>. NO WAIVERS OF EDUCATIONAL OR PHYSICAL REQUIREMENTS ARE GRANTED TO APPLICANTS.

(3) <u>Medical Examination</u>. A Service Academy Medical Examination is required before receiving an appointment. (See Article 1.E.2.h. of this Manual.)

## 1.E.4.c      Required Deposit

On appointment, each candidate may be required to pay an entrance fee to offset the cost of initial clothing, books and school supplies, computers, and equipment. Payment of some, or all, this amount may be deferred in cases of extreme need.

## 1.E.4.d.      Subsequent Appointments

All former cadets who request readmission, except those who voluntarily resigned due to hardship, must compete for admission in the same manner as those candidates who have not attended the Coast Guard Academy.

## 1.E.4.e.      Hardship Readmission

Former cadets who resigned due to unavoidable hardship which subsequently is resolved may be granted readmission. The Superintendent, Coast Guard Academy shall prescribe readmission requirements and procedures.

## 1.E.4.f.      Service Obligation (14 U.S.C. 182)

**(1) <u>Service Agreement</u>.**

**(a) All cadets are required to sign a Service Obligation Agreement in accordance with 14 U.S.C. 182. Minors will sign only with the consent of their parent or guardian.**

**112**

(b) Upon signing a Service Obligation Agreement, a cadet commits to accepting an appointment, if tendered, as a commissioned officer in the Coast Guard and serving at least five years of Active Duty immediately after their appointment.

(c) Cadets who do not complete this obligation are subject to repayment of advanced education benefits in accordance with Recoupment of Advanced Education Costs in the Event of Separation Before Completion of Obligated Service, COMDTINST 1560.3 (series).

(2) **Cadets Who Turn Down a Regular Commission When Tendered**.  If a cadet with no prior armed forces obligation completes their course of instruction at the Academy but declines to accept an appointment as a Regular commissioned officer that has been tendered by the Coast Guard, they are subject to repayment of advanced education benefits in accordance with Recoupment of Advanced Education Costs in the Event of Separation Before Completion of Obligated Service, COMDTINST 1560.3 (series). Repayment may include enlistment in the Coast Guard Reserve and receiving orders to active duty for four years.

(3) **Exception to Obligation Based on Needs of the Service (14 U.S.C. 182 (b) (3))**.

(a) If a Regular commission is not tendered to a cadet who completes their course of instruction at the Academy, the cadet will accept a Reserve commission, if tendered.

(b) If a cadet accepts a Regular commission but is permitted to resign before completion of the commissioned service obligation; the cadet will accept an appointment as a commissioned officer in the Coast Guard Reserve, if tendered.

1.E.4.g.     **Voluntary Resignation of Appointment**

The Superintendent, Coast Guard Academy may accept the voluntary resignation of a cadet's appointment.

1.E.4.h.     **Involuntary Termination of Cadet Appointment and Appeal Authority**

The Superintendent, Coast Guard Academy has the authority to terminate a cadet's appointment on the recommendation of an Executive Board, the Dean of Academics, or the Commandant of Cadets.  **The decision by the Superintendent, Coast Guard Academy to dismiss a cadet may be appealed to DCMS-DPR.  The decision on whether a disenrolled cadet who has incurred a service obligation fulfills that obligation through enlisted service or monetary recoupment shall be made by Commandant (CG-1).**  The Superintendent, Coast Guard Academy shall prescribe the appeal procedures.

**1.E.4.i.**        **After Terminating a Cadet Appointment**

When a cadet is disenrolled from the Academy, either by voluntary resignation or by involuntary termination of appointment, one of the following actions normally will be completed depending on the cadet's status before accepting an appointment and the length of time they held an appointment.

**(1)** **Fourth and Third Class Cadets with no Prior Armed Forces Obligation**. A fourth or third class cadet with no prior armed forces obligation who is disenrolled will have no active duty obligation and is exempt from recoupment of advanced education expenses in accordance with Recoupment of Advanced Education Costs in the Event of Separation Before Completion of Obligated Service, COMDTINST 1560.3 (series).

**(2)** **Second or First Class Cadets with no Prior Armed Forces Obligation**.

   **(a)** Second or first class cadets disenrolling after commencement of the second class year, but before completing the course of instruction, are subject to repayment of advanced education benefits in accordance with Recoupment of Advanced Education Costs in the Event of Separation Before Completion of Obligated Service, COMDTINST 1560.3 (series) which may include transfer to the Coast Guard Reserve in an enlisted status. (See Article 1.E.4.j of this Manual.)

   **(b)** Any second or first class cadet with no prior armed forces obligation who is disenrolled because they are determined to have breached the service obligation agreement and who is not recommended or is disqualified for enlisted Military Service, is subject to repayment of advanced education benefits in accordance with Recoupment of Advanced Education Costs in the Event of Separation Before Completion of Obligated Service, COMDTINST 1560.3 (series).

**(3)** **Second Class Cadets Awaiting Disenrollment**. A second class cadet, regardless of prior obligation, who is disenrolled for cause resulting from actions that occurred before the start of the second class year – which is considered to commence on the first day following graduation day – will be discharged as if they were a fourth or third class cadet.

**(4)** **Cadets with Prior Service Obligation (10 U.S.C. §516)**.

   **(a)** Except as described in (b) or (c), any cadet who enters the Academy from the Regular or Reserve Coast Guard or from another armed force of the United States but does not complete the course of instruction will revert to their prior status and branch of service and complete the remainder of their duty obligation. All time served in a cadet status is counted as service under any preexisting enlistment or service obligation. Those individuals with less than one year remaining in their original enlistment contract may be discharged on approval of Commander, CG PSC.

**114**

(b) **Any cadet with a prior service obligation to the Coast Guard who is disenrolled because they are determined to have breached the service obligation agreement and who is disqualified for return to enlisted Military Service, may be denied re-enlistment at the discretion of Commander, CG PSC. Those former cadets are subject to repayment of advanced education benefits in accordance with Recoupment of Advanced Education Costs in the Event of Separation Before Completion of Obligated Service, COMDTINST 1560.3 (series).**

(c) **Any cadet who enters the Academy from another Service and is disenrolled because they are determined to have breached the service obligation agreement will return to that Service, unless denied re-enlistment by their Service.**

(5) <u>Exemptions from Recoupment</u>. **Cadets are exempt from recoupment of advanced education benefits in accordance with the exceptions found in Recoupment of Advanced Education Costs in the Event of Separation Before Completion of Obligated Service, COMDTINST 1560.3 (series).**

1.E.4.j.     **Transition from Cadet to Enlisted Service**

(1) <u>Paths to Enlisted Service</u>. **Disenrolled cadets may either voluntarily become enlisted or may become enlisted by operation of law in accordance with Recoupment of Advanced Education Costs in the Event of Separation Before Completion of Obligated Service, COMDTINST 1560.3 (series). Taking into account the best interests of the Coast Guard and the Superintendent's recommendation, Commandant (CG-1) may authorize disenrolled cadets to serve in the Coast Guard Reserve and order to active duty for up to four years in accordance with 14 U.S.C. 182 (c)(1) and (2). This authority may be delegated in writing pursuant to Recoupment of Advanced Education Costs in the Event of Separation Before Completion of Obligated Service, COMDTINST 1560.3 (series).**

(2) <u>Accession of Former Cadets</u>. **Cadets who enlist in either the Coast Guard or Coast Guard Reserve upon disenrollment from the Academy will normally enter in the following pay-grades:**

(a) **Fourth Class: non-rated E-2,**

(b) **Third Class: non-rated E-3, and**

(c) **Second and First Class Cadets: BM3, or non-rated E-3 with immediate application for any A school.**

(3) <u>Authority</u>. **Commander, CG PSC will be the final determining authority for the**

rank and rate of an enlisted member accessing from the Academy as a former cadet and will issue orders as appropriate.

(4) <u>Active Duty Base Date (ADBD) and Pay Entry Base Date (PEBD)</u>. The ADBD and PEBD for members accessing from the Academy as a former cadet will reflect all time served as a cadet. A new Reserve enlisted member accessing from the Academy as a former cadet will sign an Administrative Remarks, Form CG-3307 acknowledging this policy.

(5) <u>Returning Officers</u>. Cadet time will be removed from the member's ADBD and not count towards any retirement if the enlisted member who served as a cadet subsequently becomes an officer (10 USC 971).

## 1.E.5.    Responsibilities

The competition for appointment as Cadet, U.S. Coast Guard, is widely publicized for the purpose of attracting a large well qualified applicant pool.

### 1.E.5.a.    Commandant's Responsibilities

The Commandant establishes Academy admissions policies and procedures.

### 1.E.5.b.    District Commander's Responsibilities

District commanders coordinate cadet recruiting and awareness activities in their districts with the Coast Guard Academy Superintendent.  They develop district programs and support Academy programs to recruit a large, well qualified, career-motivated applicant pool.  Further, district commanders assist the Academy in appointees' sponsor and follow-up programs and by 15 June annually submit to the Superintendent a Report of Cadet Recruiting and Awareness Programs, a report in letter form containing this information:

(1) <u>Schools Visited</u>.  List of high schools and preparatory schools visited for Academy recruiting or awareness purposes.  Suggested items are listed below:

  (a) High school name,

  (b) City and state,

  (c) Contact personnel,

  (d) Total attendees,

  (e) Date visited,

(f)  Return visit recommended, and /or

(g)  Remarks (significant minority population, name of outstanding candidate for Academy follow up, etc.).

(2)  <u>Recruiting and Awareness Programs Conducted</u>.  List of Academy recruiting and awareness programs conducted (such as presentations to civic or youth groups, television or radio appearances, special programs, and visits to Coast Guard units, etc.).

(3)  <u>Recommendations for Improvement</u>.  Recommendations for improving Academy and district recruiting efforts.

(4)  <u>Minority Efforts</u>.  Specific efforts in minority awareness.

**1.E.5.c.**      **Academy Superintendent's Responsibilities**

(1)  <u>Recruiting Programs</u>.  Develop and initiate Academy recruiting programs in cooperation with the district commander.

(2)  <u>Information Distribution</u>.  Prepare and distribute necessary bulletins of information, posters, television and radio spots, and other media releases to support the admissions program.

(3)  <u>Field Support</u>.  Encourage and support the district commanders and field units in furthering cadet recruiting efforts and Academy awareness programs.

(4)  <u>Cadet Specific Responsibilities</u>.  Process, evaluate, select, and appoint candidates as Cadet, U.S. Coast Guard.

**1.F.        Reserved**

## 1.G. Appointing Regular Coast Guard or Navy Officers to the Coast Guard Reserve

### 1.G.1. General

1.G.1.a. Authority

The basis for this policy is 10 U.S.C. § 12201 (b)(2).

1.G.1.b. Board Recommendation

A board of officers shall recommend to the Secretary concerned on the disposition of applicants for commissions in the U.S. Coast Guard Reserve.

### 1.G.2. Board Applicants

1.G.2.a. Who May Voluntarily Apply

(1) Former Coast Guard or Navy officers. Former officers of the Coast Guard or Navy who are within one year of the effective date of resignation of their commission. If more than one year has passed since the effective date of resignation or discharge, then the provisions of Article 1.C. of this Manual apply.

(2) Current Coast Guard Officers Upon Resignation. Coast Guard officers who submit an unqualified resignation in accordance with Article 1.A.5. of Reference (c), Military Separations, COMDTINST M1000.4 (series).

(3) Regular Officer Twice Non-Selected. Regular officers who have been twice non-selected on the active duty promotion list (ADPL), who are not retirement eligible, and are scheduled for discharge.

1.G.2.b. Who Shall Apply

Officers with a military service obligation shall apply when resigning their regular commission (10 U.S.C. 651 (b)).

1.G.2.c. Exempt Officers

The following officers are not required to be screened by this Board and may have their names sent to the Secretary concerned separately for a Reserve commission. This determination shall be made by Commander (CG PSC-RPM).

(1) Officers approved for temporary separation through Temporary Separations, COMDTINST M1040.6 (series), and

(2) Officers approved or selected for designation as a provisional Reserve Program Administrators (RPA).

1.G.2.d.    Medical Standards

Officers who do not meet retention standards described in reference (b), Coast Guard Medical Manual, COMDTINST M6000.1 (series) shall not be allowed to affiliate with the Reserve.

1.G.2.e.    Application Procedures

Applicants shall follow guidance as directed by Commander (CG PSC).

## 1.G.3.    Board Recommendations to the Secretary

For each applicant, the board shall recommend to the Secretary concerned:

a.    Approve the request held at the same grade previously held,

b.    Approve the request at a lower grade than previously held, or

c.    Disapprove the request.

## 1.G.4.    Date of Rank and Precedence Determination

1.G.4.a.    Approved Appointment to the Same Grade

(1) Applicants who apply **for a Reserve commission within one year of resigning their Regular commission, including those who apply prior to their resignation or have multiple non-selections on the ADPL, and who are appointed in the same grade previously held in the Regular Navy or Coast Guard, shall be given the same date of rank and precedence in that grade as was previously assigned to the officer while a member of the Regular Navy or Coast Guard.** (14 USC § 744).

1.G.4.b.    Approved Appointment to a Lower Grade

Applicants approved for appointment to a lower grade shall:

(1) Have the same date of rank as the senior most officer in the Inactive Duty Promotion List in that grade who has not yet been considered for promotion to the next higher grade.

(2) Be senior in precedence to the senior most officer on the Inactive Duty Promotion List in that grade who has not yet been considered for promotion to the next higher grade.

**120**

### 1.G.5.        Appeals

**1.G.5.a.**        **Appeal Authority**

Commander (CG PSC-RPM) serves as the appeal authority for this panel.

**1.G.5.b.**        **Nature of Appeal**

Appeals can be made only for appointments to a lower grade.

**1.G.5.c.**        **Additional Information**

The appeal must be based on additional information that is a matter of record but not available to the panel making the original determination.  Mere disagreement is not sufficient justification for appeal.

**1.G.5.d.**        **Appeal Guidance**

Applicants shall follow guidance as directed by Commander (CG PSC-RPM).

COMDTINST M1000.3A

PAGE INTENTIONALLY LEFT BLANK

# CHAPTER 2      GRADES AND SPECIALTIES

## 2.A.      Grades of Officers

### 2.A.1.      Commissioned and Chief Warrant Officers

The grades of officers of the Coast Guard in order of seniority, with abbreviations and pay grades, are as follows:

| Grade | Abbreviation | Pay Grade |
|---|---|---|
| Admiral | ADM | O-10 |
| Vice Admiral | VADM | O-9 |
| Rear Admiral | RADM | O-8 |
| Rear Admiral (Lower Half) | RDML | O-7 |
| Captain | CAPT | O-6 |
| Commander | CDR | O-5 |
| Lieutenant Commander | LCDR | O-4 |
| Lieutenant | LT | O-3 |
| Lieutenant (Junior Grade) | LTJG | O-2 |
| Ensign | ENS | O-1 |
| Chief Warrant Officer | CWO4, CWO3, CWO2 | W-4, W-3, W-2 |
| Cadet | CDT | |

### 2.A.2.      Chief Warrant Officer Specialties and Temporary Lieutenants

#### 2.A.2.a.      Chief Warrant Officer Specialties

The titles and precedence of the specialties of chief warrant officers are as follows:

| Specialty Name | Abbreviation |
|---|---|
| Boatswain | BOSN |
| Weapons | WEPS |
| Operations Systems Specialist | OSS |
| Electronics | ELC |
| Naval Engineering | ENG |
| Aviation Engineering | AVI |
| Material Maintenance | MAT |
| Personnel Administration | PERS |
| Public Information | INF |
| Finance & Supply | F&S |
| Medical Administration | MED |
| Bandmaster | BNDM |
| Criminal Investigator | INV |
| Information Systems Management | ISM |

| Specialty Name | Abbreviation |
|---|---|
| Intelligence Systems Specialist | ISS |
| Marine Safety Specialist Deck | MSSD |
| Marine Safety Specialist Engineering | MSSE |
| Maritime Law Enforcement Specialist | MLES |
| **Marine Safety Specialist Response** | **MSSR** |
| **Diver** | **DIV** |

Note:  Appointees in the same warrant specialty shall take precedence with each other as outlined in Article 2.B.2 of this Manual.

**2.A.2.b.**  **Permanent Chief Warrant Officers Appointed to Temporary Lieutenants**

The precedence of the specialties of permanent chief warrant officers appointed to temporary lieutenants are as follows:

| Officer Specialty | Warrant Specialty |
|---|---|
| Operations Afloat | Boatswain (BOSN)<br>Weapons (WEPS) |
| Operations Ashore – Response | Boatswain (BOSN)<br>Maritime Law Enforcement Specialist (MLES)<br>Operations Systems Specialist (OSS)<br>**Marine Safety Specialist Response (MSSR)**<br>**Diver (DIV)** |
| C4IT | Electronics (ELC)<br>Information Systems Management (ISM)<br>Operations Systems Specialist (OSS) |
| Engineering | Material Maintenance (MAT)<br>Naval Engineering (ENG) |
| Aviation | Aviation Engineering (AVI) |
| Human Resources | Personnel Administration (PERS) |
| Management | Public Information (INF) |
| Finance | Finance and Supply (F&S) |
| Medical | Medical Administration (MED) |
| Intelligence | Criminal Investigator (INV)<br>Intelligence Systems Specialist (ISS) |
| Operations Ashore - Prevention | Marine Safety Specialist Deck (MSSD)<br>Marine Safety Specialist Engineering (MSSE) |

(1) Temporary grade precedence (i.e., lieutenant) is determined by the officer specialty hierarchy listed above.  Warrant specialty within the officer specialty does not affect precedence.  Appointees in the same officer specialty shall take precedence with each other by the order of selection recommended at the Chief Warrant Officer to Lieutenant Selection Board.

**124**

(2) Permanent grade precedence will remain the same as listed in Article 2.A.2.a. of this Manual.

(3) If an officer integrates in accordance with Article 1.A.8 of this Manual, their temporary grade will become their permanent grade and they shall take precedence among themselves as they are listed on the active duty promotion list.

## 2.A.3.  Manner of Addressing Officers

### 2.A.3.a.  Commissioned Officers

Commissioned officers shall be designated and addressed in official communications by the title of their grades.  In oral communication, commissioned officers below the grade of commander may be addressed as "Mister," "Mrs.," "Miss," or "Ms.," as appropriate. Medical officers in the grade of captain and below may be addressed as "doctor."

### 2.A.3.b.  Chief Warrant Officers

Chief warrant officers shall be addressed by the title of their grades.  The abbreviations CWO2, CWO3, and CWO4 shall be used in written form.  The specialty name or abbreviation will not be used except when it is necessary to state the chief warrant officer's specialty.  In oral communication, chief warrant officers may be addressed as "Mister," "Mrs.," "Miss," or "Ms," as appropriate.

## 2.A.4.  Active Duty Promotion List and Lineal List

### 2.A.4.a.  Active Duty Promotion List

Commander (CG PSC) maintains a single active duty promotion list (ADPL) of officers of the Coast Guard on active duty in the grades of ensign and above in accordance with Article 3.A.2. of this Manual in the order of precedence as outlined in this section.

### 2.A.4.b.  Lineal List

Commander (CG PSC) maintains a lineal list of chief warrant officers in the order of precedence as outlined in this section.

## 2.A.5.  Date of Rank

### 2.A.5.a.  Appointment

Upon original appointment in the Coast Guard, the date of rank of a commissioned officer or chief warrant officer shall be the date specified in the appointment letter, or, if there be no specified date, then the date the oath of office is taken.

**2.A.5.b.**  **Promotion**

(1) <u>Commissioned Officers</u>.  Upon promotion of a commissioned officer above the grade of ensign, the date of rank will be the date of appointment to that grade, except that the date of rank of an active duty officer not on the ADPL shall be the date of rank of their running mate.

(2) <u>Warrant Officers</u>.  Upon promotion of chief warrant officers, the date of rank will be as specified in Article 3.B. of this Manual.

## 2.A.6.   Commencement of Pay and Allowances

Pay and allowances for an original appointment or for a promotion appointment will accrue from the effective date specified in the appointment letter, but not before the date the oath of office is administered for an original appointment.

**126**

## 2.B.        Order of Precedence

### 2.B.1.        Precedence of Coast Guard Commissioned Officers in the Grade of Ensign or Above

#### 2.B.1.a.        Seniority by Grade

Commissioned officers in the grade of ensign or above shall take precedence on the active duty promotion list in order of seniority of the grades in which appointed.

#### 2.B.1.b.        Seniority by Date of Rank

Officers serving in the same grade shall take precedence in the order of their date of rank in that grade, except for officers who have lost numbers in grade.

#### 2.B.1.c.        Seniority as Listed on the Active Duty Promotion List

Officers serving in the same grade with the same date of rank shall take precedence among themselves as they are listed on the active duty promotion list and as Commander (CG PSC) shall determine in this section.

#### 2.B.1.d.        Precedence with Running Mate

Active duty officers not on the active duty promotion list and "extra number" officers under 14 U.S.C. § 432 shall take precedence with, but after their running mates.  Officers in this category with the same running mate shall take precedence with each other in the order determined by Commander (CG PSC).

#### 2.B.1.e.        Precedence on the Active Duty Promotion List

Officers appointed in the same grade with the same date of rank shall take precedence on the active duty promotion list in the following order:

(1) Officers Promoted from the Next Lower Grade.  Officers promoted from the next lower grade shall take precedence with each other in the order their names are listed on the active duty promotion list in the lower grade giving due consideration to the change in precedence which takes place upon the promotion of in-zone reordered officers, deep selected officers, officers once passed over, and officers completing a service requirement for promotion.

(2) Coast Guard Academy Graduates Appointed as Regular Officers.  Graduates of the Coast Guard Academy appointed as regular officers shall take precedence with each other in the order of their class standing upon graduation.  (See 14 U.S.C. § 185.)

(3) Coast Guard Academy Graduates Appointed as Reserve Officers.  Graduates of the

Coast Guard Academy appointed as reserve officers shall take precedence with each other in the order of their class standing upon graduation.

(4) U.S. Merchant Marines.  Licensed officers of the U.S. Merchant Marine appointed as regular officers under 14 U.S.C. § 211 (PL 80-219) shall take precedence with each other by date of rank and as specified by Commander (CG PSC).

(5) Enlisted Members.  If graduates of Officer Candidate School, before enlisted appointees who are not Officer Candidate School graduates and in the order of their class standing on graduation; if not graduates of Officer Candidate School, in the order of precedence of the rating and time in grade of their permanent status as set forth in Article 2.B. of this Manual.

(6) Chief Warrant Officers.  Chief warrant officers receiving appointments as temporary commissioned officers in the rank of lieutenant shall take precedence with each other in the order of seniority of their officer specialty as listed in Table 3 of Article 2.A.2.b. of this Manual. Appointees in the same officer specialty shall take precedence with each other by the order of selection recommended at the Chief Warrant Officer to Lieutenant Selection Board.  (See 14 U.S.C. § 214(d).)

(7) Officer Candidate School and Aviation Cadet Program Graduates.  Graduates of Officer Candidate School and the Aviation Cadet Program appointed as reserve officers shall take precedence with each other in the order of their class standing upon graduation.

(8) Direct Commission Officers.  Direct commission officers appointed in the reserve component shall take precedence with each other by date of rank and as specified by Commander (CG PSC).

## 2.B.2.        Precedence of Chief Warrant Officers of the Coast Guard

### 2.B.2.a.      Seniority of Chief Warrant Officers

Chief warrant officers shall take precedence with each other in the order of seniority of the grades in which appointed.

### 2.B.2.b.      Precedence by Date of Rank

Chief warrant officers serving in the same grade shall take precedence in the order of their date of rank in that grade.

### 2.B.2.c.      Precedence as Listed on the Lineal List

Chief warrant officers serving in the same grade with the same date of rank shall take precedence among themselves as they are listed on the lineal list.

**2.B.2.d.**       **Precedence Within the Same Grade**

Chief warrant officers appointed in the same grade with the same date of rank shall take precedence among themselves in the following order:

(1) Promoted from the Next Lower Grade.  Appointees promoted from the next lower grade shall take precedence with each other in the order their names are listed on the lineal list.

(2) Original Appointments.  Appointees receiving an original appointment shall take precedence with each other in the order of the seniority of their specialty as listed in Article 2.A.1. of this Manual.  Appointees in the same specialty shall take precedence with each other in the order recommended by the Warrant Officer Selection Board.

**2.B.2.e.**       **Retired Recalled Chief Warrant Officers**

A retired-recalled chief warrant officer will take precedence with, but after their running mate.

## 2.B.3.       Precedence with Relation to Officers of Other Services

**2.B.3.a.**       **Rank of Commissioned Officers between Services**

The commissioned officers of the Coast Guard rank as follows: admirals with admirals in the Navy and generals in the Army, Air Force, and Marine Corps; vice admirals with vice admirals in the Navy and lieutenant generals in the Army, Air Force, and Marine Corps; rear admirals of the upper half with rear admirals of the upper half in the Navy and major generals in the Army, Air Force, and Marine Corps; rear admirals of the lower half with rear admirals of the lower half in the Navy and brigadier generals in the Army, Air Force, and Marine Corps; captains with captains in the Navy and colonels in the Army, Air Force, and Marine Corps; commanders with commanders in the Navy and lieutenant colonels in the Army, Air Force, and Marine Corps; lieutenant commanders with lieutenant commanders in the Navy and majors in the Army, Air Force, and Marine Corps; lieutenants with lieutenants in the Navy and captains in the Army, Air Force, Marine Corps; lieutenants (junior grade) with lieutenants (junior grade) in the Navy and first lieutenants in the Army, Air Force, and Marine Corps; ensigns with ensigns in the Navy and second lieutenants in the Army, Air Force, and Marine Corps.

**2.B.3.b.**       **Precedence between Services**

The precedence of officers of the Coast Guard, Army, Navy, Air Force, Marine Corps, and Public Health Service, when serving together, shall be:

(1) In accordance with their relative grade.

(2) In accordance with their date of rank when of the same relative grade.

**129**

COMDTINST M1000.3A

(3) In accordance with the time each has served on active duty as a commissioned officer of the United States when of the same relative grade with the same date of rank.

# CHAPTER 3    PROMOTING COMMISSIONED OFFICERS

## 3.A.    Promoting Commissioned Officers

## 3.A.1.    General

### 3.A.1.a.    Statutory Authorities

(1) The authority to promote all officers on the active duty promotion lists (ADPL) is contained in 14 U.S.C. § 251 through § 275.

(2) The regulations to promote officers serving as ensigns and those not included on the ADPL are promulgated under 14 U.S.C. § 271(c) and § 276, respectively.

(3) Pursuant to 14 U.S.C. § 728, reserve officers serving on extended active duty agreements under 10 U.S.C. § 12311 agreement shall be considered for promotion by the appropriate ADPL selection board.

(4) Promotion year means the period beginning on 1 July of each year and ending on 30 June of the following year (14 U.S.C. § 256(a)).

### 3.A.1.b.    Mandatory Screening of Officers Selected for Flag Promotion

(1) Any appointment, promotion, continuation, or retention action above the grade of O-6 that requires Secretarial approval and/or advice and consent of the Senate, shall be screened for potentially adverse information concurrent with the nomination process. This includes, but is not limited, to:

(a) Appointment to the O-10 position (14 U.S.C § 44),

(b) Appointment to any O-9 position (14 U.S.C. § 47 and 14 U.S.C. § 50),

(c) Appointment to Director of the Coast Guard Reserve (14 U.S.C. § 53),

(d) Promotion to O-8 (14 U.S.C. § 271 (d)),

(e) Promotion to O-7 (14 U.S.C. § 271),

(f) Rear Admiral Continuation (14 U.S.C. § 290 (a) thru (e)), and/or

(g) Retention by Annual Action (14 U.S.C. § 290 (f)(1) thru (g)(2)).

(2) Potentially adverse information is information that meets any of the following:

(a) Information concerning a violation of law or regulation, failure to adhere to standards of conduct, or abuse of authority substantiated in a finding or

conclusion of an officially documented investigation or inquiry to include all substantiated incidents of discrimination, or official record or report.

(b) Information which is the basis for a pending official investigation or inquiry.

(c) Information that is minor in nature (except those resulting in personal harm or significant property damage) or more than ten years old (other than substantiated incidents of discrimination) are excluded.

(3) Responsibilities:

(a) COMDT (DCMS-34) shall coordinate the screenings using Coast Guard data repositories for potentially adverse information which will be provided to the Judge Advocate General (or Deputy).

(b) The Judge Advocate General (or Deputy) is responsible for the following:

[1] In conjunction with COMDT (DCMS-34), determine if any potentially adverse information received warrants further investigation, in which case the potentially adverse information will be provided to the applicable selectee who then has three days to provide comment.  A five day extension will be granted upon request; further extensions are within the discretion of VCG.

[2] Report potentially adverse information to VCG who makes final determinations of adverse information with the assistance of the Judge Advocate General or Deputy.

[3] Comply with the procedures mandated by Military Officer Actions Requiring Approval of the Secretary of Defense or the Presidents, or Confirmation by the Senate, DoDI 1320.4, when reporting adverse information.

## 3.A.2.   Active Duty Promotion List (ADPL)

### 3.A.2.a.   Discussion

The Commandant shall maintain a single active duty promotion list (ADPL) of officers of the Coast Guard, regular and reserve, on active duty.  The following officers are not included on the ADPL:

(1) Retired officers recalled to active duty.

(2) Officers of the Coast Guard Academy Permanent Commissioned Teaching Staff (PCTS).

(3) Officers designated as Reserve Program Administrators (RPAs).

(4) Reserve officers assigned to the Selective Service System.

**3.A.2.b.**　　**ADPL Seniority**

Officers appear on the ADPL in the order of seniority of the grades in which they serve. Officers serving in the same grade appear in the order of their seniority in that grade. Commander (CG PSC) may correct any erroneous position caused by administrative error on the ADPL.

**3.A.2.c.**　　**Ensigns' Seniority on Promotion List**

A member appointed in the grade of ensign or above in the regular Coast Guard shall be placed on the ADPL in order of date of rank and seniority.

**3.A.2.d.**　　**Reserve Officers Entering Extended Active Duty**

Except for one excluded by Article 3.A.2.a. of this Manual, a reserve officer entering on extended active duty appears on the ADPL in order of grade and seniority (14 U.S.C. § 41a).  Commander (CG PSC) shall determine the position of such a reserve officer among other active duty Coast Guard officers of the same date of rank (14 U.S.C. § 41d).

---

# 3.A.3.　　Number and Distribution of Commissioned Officers

**3.A.3.a.**　　**Number of Officers**

The total number of commissioned officers, excluding commissioned warrant officers, on active duty in the Coast Guard shall not exceed the level specified in 14 U.S.C. § 42.

**3.A.3.b.**　　**Officer Distribution**

Commissioned officers on the ADPL shall be distributed in grade in percentages as indicated below.  If Coast Guard needs require, the Secretary may reduce the percentage of any grade above lieutenant commander and, to compensate for such reduction, increase correspondingly the percentage of any lower grade.

| Rank | Percentage |
|---|---|
| Rear Admiral | 0.375 |
| Rear Admiral (Lower Half) | 0.375 |
| Captain | 6.0 |

| Rank | Percentage |
|------|-----------|
| Commander | 12.0 |
| Lieutenant Commander | 18.0 |
| Lieutenant, Lieutenant (Junior Grade), and Ensign | percentages the Secretary prescribes |

**3.A.3.c.**   **Secretary's Computation**

At least annually, the Secretary shall determine the number of officers on the ADPL authorized to serve in each grade by applying the applicable percentage to the total number of such officers serving on active duty on the date the computation is made. For this purpose, the nearest whole number is the authorized number in any case where the resultant contains a fraction.

**3.A.3.d.**   **Authorized Number per Grade**

For all purposes, the numbers resulting from these computations are the authorized number in each grade. The authorized number for a grade may temporarily increase between one computation period and the next computation period due to a promotion that was previously delayed for any reason.

**3.A.3.e.**   **Exceptions to Authorized Numbers**

Officers not on the active duty promotion list and officers serving with other departments or agencies on a reimbursable basis will not be counted in determining authorized strengths described in Article 3.A.3.c. of this Manual and will not count against those strengths. The Secretary shall prescribe the number of officers authorized to serve on active duty in each grade of the Coast Guard Academy's Permanent Commissioned Teaching Staff and of the reserve as RPAs (14 U.S.C. § 42).

# 3.A.4.   Selecting and Promoting Officers on the Active Duty Promotion List from Lieutenant (Junior Grade) Through Rear Admiral (Lower Half)

**3.A.4.a.**   **Eligibility for Consideration**

An officer on the ADPL becomes eligible for consideration for promotion to the next higher grade at the beginning of the promotion year in which they complete the following amount of service computed from date of rank in the grade in which serving:

| Grade In Which Serving | Length of Service |
|------------------------|-------------------|
| Lieutenant (Junior Grade) | 2 years |
| Lieutenant | 3 years |
| Lieutenant Commander | 4 years |

**134**

| Grade In Which Serving | Length of Service |
|---|---|
| Commander | 4 years |
| Captain | 3 years |

(1) <u>Qualifying Service</u>.  For these purposes, service in a grade includes all qualifying service in that or a higher grade under either a temporary or permanent appointment. However, service in a grade under a temporary service appointment under Article 3.A.10. of this Manual is considered as service only in the grade the officer concerned would have held had they not been so appointed.

(2) <u>Eligible for Consideration</u>.  No officer is eligible for consideration for promotion until all officers senior to them are so eligible.

(3) <u>Duration of Eligibility</u>.  Except when on a list of selectees, each officer who becomes eligible for consideration for promotion to the next higher grade remains eligible so long as the officer continues on active duty and is not promoted to that grade (14 U.S.C. § 257).

**3.A.4.b.**     **Number of Officers to be Selected for Promotion**

Before convening a selection board to recommend officers for promotion, the Secretary shall determine the total number of officers to be selected for promotion to that grade. This number shall be equal to the number of vacancies existing in that grade, plus the number of additional vacancies estimated for the next 12 months, less the number of officers on the selection list for the grade (14 U.S.C. § 255).

**3.A.4.c.**     **Promotion Zones**

(1) <u>Establishing Promotion Zone</u>.  Before convening a selection board to recommend officers for promotion to any grade above lieutenant (junior grade) and below rear admiral (lower half), the Secretary shall establish that grade's promotion zone:  The promotion zone for each grade shall consist of that grade's most senior officers on the ADPL who are eligible for consideration for promotion to the next higher grade who have not previously been placed in a promotion zone for selection for promotion to the next higher grade.  The number of officers in each zone shall be determined after considering:

(a) The needs of the service, including the ability for military pay and benefit budgets to support the proposed number of promotions,

(b) The estimated numbers of vacancies available in future years to provide comparable opportunity to promote officers in successive year groups, and

(c) The extent to which current terms of service in that grade conform to a desirable career promotion pattern.  However, the number of officers in-zone shall not exceed the number to be selected for promotion divided by six-tenths (0.6).

**135**

(2) <u>Establishing Promotion Zone for Rear Admiral (Lower Half)</u>.  The Secretary shall establish promotion zones from which officers will be selected for promotion to the grade of rear admiral (lower half) as the needs of the service require pursuant to 14 U.S.C. § 256.

**3.A.4.d.**   **Selection Boards**

Selection boards to recommend officers for promotion to the next higher grade shall be convened as described in Article 6.A. of this Manual.

**3.A.4.e.**   **In-Zone Reordering for Promotion Boards**

(1) <u>Background and Authority</u>.  In-zone reordering is a tool that may be utilized by any ADPL and RPA best qualified promotion board (O3 through O6).  After selecting the officers to be recommended for promotion, a selection board may recommend officers of particular merit, from among those officers chosen for promotion, to be placed at the top of the list of selectees.  Officers displaced from the top of the list shall retain their previous precedence immediately below those officers reordered and inserted at the top of the promotion list pursuant to 14 U.S.C. § 259.

(2) <u>Percentage That May be Reordered</u>.  The number of officers that a board may recommend to be placed at the top of the list of selectees may not exceed the percentages set forth in subsection (b) of 14 U.S.C. § 259 unless such a percentage is a number less than one, in which case the board may recommend one officer for such placement.

(3) <u>Majority Recommendation</u>.  No officer may be recommended to be placed at the top of the list of selectees unless they receive the recommendation of at least a majority of the members of a board composed of five members, or at least two-thirds of the members of a board composed of more than five members.

(4) <u>Reordering is Optional</u>.  Promotion boards are under no obligation to select officers for in-zone reordering.  The tool will only be made available for use at the discretion of the board.  Officers above zone, in zone, and below zone are all eligible for reordering if selected for promotion.

(5) <u>Placement on Selection List</u>.  In order of original seniority, ADPL members that are reordered within their respective promotion zone assume a position above the senior-most selected member.

(6) <u>Reordering and Placement of Reserve Program Administrators (RPAs)</u>.  In order of original seniority, RPAs reordered within their respective promotion zone are assigned running mates equal to the most junior of the ADPL members that were in-zone reordered during the same year.  In the event no ADPL members were reordered during the associated selection board, the senior most selected member on the ADPL will be assigned as a running mate.

**136**

**3.A.4.f.**      **Communicating with the Selection Board**

(1) <u>Background and Authority</u>.  Each officer eligible for consideration by a selection board may communicate with the board through the officer's chain of command by letter, inviting attention to any matter in their Coast Guard record that will be before the selection board.  A letter sent under this paragraph may not criticize any officer or reflect on any officer's character, conduct, or motive.  (See 14 U.S.C. § 253(b).)  The letter must arrive prior to the commencement of the board.

(2) <u>Enclosures and Attachments</u>.  One OER chain endorsement is optional.  Enclosures or attachments are limited to copies of official records and materials allowed to be submitted with Officer Evaluation Reports (OER), Form CG-5310 (series), under Article 5.A.4.c.3. of this Manual.  Letters from other officers will not be solicited or submitted as enclosures.  Officers requesting acknowledgement of receipt must provide an e-mail address in their communication.

(3) <u>Endorsements</u>.  Endorsements to letters submitted to selection boards shall not include opinions whether an officer should be selected for promotion or opinions on selection boards and their methods.

**3.A.4.g.**      **Failure of Selection for Promotion**

(1) <u>Commander and Below</u>.  Officers in the grade of commander and below in the promotion zone established under Article 3.A.4.c. of this Manual fail selection for promotion if they do not appear on the list of selectees recommended by the board considering them or if the President subsequently removes them from the list of selectees in the board's report (14 U.S.C. § 262(a)).

(2) <u>Administrative Error</u>.  Officers do not fail selection if a selection board did not consider them because of administrative error.  If selected by the next succeeding selection board, they receive the date of rank and position on the ADPL in the grade to which selected they would have held had the first selection board recommended them (14 U.S.C. § 262(b)).

**3.A.4.h.**      **Promotions**

(1) <u>List of Selectees</u>.  When the President approves a report of a board convened to recommend officers for promotion, the Commandant will place the names of all officers selected and approved on a list of selectees in the order of their seniority on the ADPL (14 U.S.C. § 271(a)).

(2) <u>Date of Promotion</u>.  Officers on the list of selectees may be promoted by appointment to the next higher grade after officers on any previous list of selectees for that grade have been promoted provided the maximum strength for that grade is not exceeded as defined by Article 3.A.3. of this Manual. Officers will be promoted in the order they appear on the list of selectees.  The date of rank of an officer promoted under this

**137**

paragraph is the date of appointment in that grade (14 U.S.C. § 271(b)).

(3) <u>Promotions to Lieutenant Commander and Above</u>.  Officers selected for promotion to lieutenant commander and above may be promoted to fill vacancies (14 U.S.C. § 271(b)).

(4) <u>Promotions of Lieutenant</u>.  Promotions for officers selected for lieutenant will be effected as follows:

    (a) <u>After Selection by First Board</u>.  A lieutenant (junior grade) eligible for promotion may be promoted to the grade of lieutenant without regard to vacancies on the day after completing 30 months of service in grade.

    (b) <u>After Selection by First Board from Below the Zone</u>.  Any lieutenant (junior grade) eligible for promotion selected from below the established promotion zone shall be placed on the new list of selectees prepared by the board in order of existing seniority.  They shall be tendered appointment to lieutenant on the same date as the most junior lieutenant (junior grade) on the list of selectees who was in the published promotion zone.

    (c) <u>After Selection by Second Board</u>.  Any lieutenant (junior grade) selected for promotion to lieutenant by the second board to consider them shall be placed at the top of the new list of selectees prepared by the board in order of existing seniority.  They shall be tendered appointment to lieutenant on the same date as the most senior lieutenant (junior grade) on the approved list of selectees who has not previously failed of selection to the grade or whose record has not been corrected by the Personnel Records Review Board or Board for Correction of Military Records to remove a previous non-selected status to that grade.

**3.A.4.i.**　　　**Removing Officer from List of Selectees for Promotion**

(1) <u>Presidential Authority</u>.  The President may remove any officer from a list of selectees established under Article 3.A.4.g. of this Manual.

(2) <u>Senatorial Authority</u>.  If the Senate does not consent to appoint an officer whose name is on a list of selectees established under Article 3.A.4.g. of this Manual, that officer's name shall be removed from this list.

(3) <u>Eligibility for Further Consideration</u>.  An officer whose name is removed from a list under this Article remains eligible for consideration for promotion.  If promoted as a result of selection by the next selection board, they hold the date of rank and position on the ADPL in the grade to which promoted which they would have held if their name had not been removed.  If the next selection board does not select the officer or if their name again is removed from the list of selectees, the officer shall be considered for all purposes as having twice failed of selection for promotion (14 U.S.C. § 272).

U.S.C. § 272).

(4) <u>Removal from Selection List</u>.  The name of an officer who declines a promotion shall be removed from the list of selectees, as provided in Article 3.A.4.i.(3) above.

3.A.5.        Selecting and Promoting Ensigns to Lieutenant (Junior Grade)

**3.A.5.a.        Eligibility for Promotion**

An ensign on the ADPL is eligible for promotion to lieutenant (junior grade) after:

(1) Completing 12 months of active service as defined in 10 U.S.C. § 101, computed from date of rank as an ensign on the ADPL,

(2) A board recommends them as fully qualified for promotion, and

(3) The Commandant has approved the board's recommendation.

**3.A.5.b.        Selection Boards**

Selection boards to recommend ensigns for promotion to lieutenant (junior grade) shall be convened as Article 6.A. of this Manual describes.

**3.A.5.c.        Communicating with the Selection Board**

Each officer eligible for consideration by a selection board may communicate directly with the board as prescribed in Article 3.A.4.e. of this Manual.

**3.A.5.d.        Failure of Selection for Promotion**

(1) <u>Out of Line of Promotion</u>.  Ensigns whom a board does not recommend and whose commissions are not revoked under Article 3.A.5.d.(2) of this Manual shall be placed out of the line of promotion for at least nine months, beginning on the date the board report, which did not recommend them for promotion, is approved.  The out-of-line period provides these officers with the opportunity to improve their performance before a second board considers them for promotion.

(2) <u>Finding of Unsatisfactory in Grade</u>.  In accordance with 14 U.S.C. § 214(c) or 14 U.S.C. § 281, as applicable, the Commandant may revoke the commissions or vacate the temporary appointments of ensigns who, in their first five years of commissioned service, fail selection for promotion to lieutenant (junior grade) and whom the selection board determines are performing unsatisfactorily in grade, irrespective of Articles 1.A.8. and 1.A.10. of reference (c), Military Separations, COMDTINST M1000.4 (series).

(3) <u>Consideration by Second Board</u>.  A second board convened as described in Article 6.A. shall consider an ensign placed out of line of promotion.

(4) <u>Failure of Selection by Second Board</u>.  If a second board finds an ensign is not fully qualified, the Commandant will revoke their regular or reserve commission or vacate their temporary appointment irrespective of Articles 1.A.8. and 1.A.10. of reference (c), Military Separations, COMDTINST M1000.4 (series).

**3.A.5.e.**   **Non-Consideration Due to Administrative Error**

An ensign does not fail selection for promotion if a board does not consider them because of administrative error.  If the next succeeding board considering ensigns for promotion recommends that ensign for promotion, they hold the date of rank and position on the ADPL as a lieutenant (junior grade) which they would have held had the first board recommended them.

**3.A.5.f.**   **Promotion**

(1) <u>After Selection by First Board</u>.  An ensign eligible for promotion may be promoted to lieutenant (junior grade) without regard to vacancies on the day after they complete 18 months of active service.

(2) <u>After Selection by Second Board</u>.  The board shall place ensigns found fully qualified for promotion at the top of the new list in order of existing seniority.  They shall be tendered appointment to lieutenant (junior grade) without regard to vacancies on the day the board report is approved, as long as they have completed 18 months of active commissioned service.  An ensign whose record only appeared before a second board due to an administrative error will be assigned a date of rank based upon time in grade and prior seniority in the register of officers.  Such an ensign will not be considered the "most senior ensign on the approved list of selectees" for the purpose of ranking others in precedence order.

**3.A.5.g.**   **Separations**

Effective not later than three months from the date the selection board report is approved but not later than the day before the three-year anniversary of commissioned service, ensigns whose commissions are revoked or vacated shall be honorably discharged.

**3.A.6.**   **Selecting and Promoting U.S. Coast Guard Reserve Officers on Active Duty as Reserve Program Administrators (RPAs)**

**3.A.6.a.**   **Reserved**

**3.A.6.b.**    **Running Mates**

Each RPA shall be assigned a running mate as prescribed in 14 U.S.C. § 726.

**3.A.6.c.**    **Eligibility for Selection for Promotion**

An RPA is eligible for consideration for selection for promotion when their running mate first enters a promotion zone and remains eligible as long as they:

(1) Continue on active duty, and

(2) Are not promoted to that grade (14 U.S.C. § 257).

**3.A.6.d.**    **RPA Promotion Zone**

The size of the promotion zone for each grade of lieutenant and above equals the number of officers eligible for selection for promotion as described in Article 3.A.6.c. of this Manual.

**3.A.6.e.**    **Opportunity of Selection**

When feasible a best-qualified selection process shall be used to promote RPAs to the next higher grade. The opportunity of selection at each grade will compare to that grade's opportunity during the most recent ADPL selection board. The computed opportunity of selection for each grade, lieutenant and above, shall be determined as follows:

(1) If RPAs going before the selection board include only first-time candidates for the grade being considered, the percentage will be the total number of ADPL officers who were selected for promotion, divided by the total number of ADPL officers considered for promotion to that grade in the ADPL zone.  Fractions of a percentage shall be rounded to the next higher number.

(2) If Article 3.A.6.e.(1) of this Manual does not apply, the percentage is the total number of ADPL officers selected for promotion, divided by the total number of ADPL officers considered for promotion to that grade in the ADPL zone plus the number of officers above the ADPL zone who have been once not selected.  Fractions of a percentage shall be rounded to the next higher number.

**3.A.6.f.**    **Number Selected for Promotion**

Before convening a board to recommend RPAs for promotion to any grade, the Commandant will determine the total number of RPAs who may be selected for that grade by multiplying the computed opportunity of selection by the number of RPAs in the promotion zone.  In applying the computed percentage, a fraction of five-tenths or greater shall be counted as a whole number.  If the number of officers to be selected equals the number of officers in the promotion zone, a fully qualified promotion board

shall be convened to select officers on a fully-qualified basis using the criteria established in Article 6.B.3. of this Manual.

**3.A.6.g.**  **Selection Boards**

Selection boards to recommend RPAs for promotion to all grades of captain and below shall be convened as Article 6.B.3. of this Manual describes.

**3.A.6.h.**  **Communicating with the Selection Board**

RPAs may communicate with a selection board in the same manner as described in Article 3.A.4.f. of this Manual.

**3.A.6.i.**  **Failure of Selection for Continuation or Promotion**

The following officers shall be released to inactive duty, continued on active duty, or retired in accordance with **Chapter 5** of reference (c), Military Separations, COMDTINST M1000.4 (series):

(1) An RPA captain not recommended for continuation, and

(2) Any RPA who has failed selection for promotion to the next higher grade.

   (a) Other than one serving as captain, an officer fails selection if the board that considered them did not select that officer for promotion or, if the Commandant later removes the officer's name from the board's report or the list of selectees after the board recommended them for promotion.

   (b) An officer does not fail selection if a board does not consider them due to administrative error.  If the next succeeding board selects them and they are promoted, the officer holds the date of rank and precedence they would have held if the first selection board recommended them.

**3.A.6.j.**  **Promotions**

(1) List of Selectees.  When the Commandant has approved the promotion board's report, all RPAs selected and approved will appear in the order of their current relative seniority.

(2) Promotion.  An RPA on the list of selectees shall be promoted effective on the date their running mate is promoted and assigned the same date of rank as their running mate under the procedures of Article 3.A.12. of this Manual.  (14 U.S.C. § 276)

(3) Delay of Promotion.  The promotion of any RPA may be delayed if they have disqualified themselves under the conditions set forth in Article 3.A.12. of this

COMDTINST M1000.3A

Manual.

(4) <u>Removal of Name by Commandant</u>.  Subject to the Secretary's approval, the Commandant may remove any officer recommended for promotion from the report of the board convened under Article 6.B.3. of this Manual.

**3.A.7.**　　　**Promotion of Officers on the Permanent Commissioned Teaching Staff (PCTS) of the Coast Guard Academy**

**3.A.7.a.**　　　**Running Mates**

(1) <u>Assignment of Rank, Date of Rank, and Running Mate of Member Upon Completion of Probationary Period</u>.  An officer selected for PCTS, after successful completion of

the probationary period discussed in Article 6.B.12.j. of this Manual, shall be sworn into the PCTS and assigned a running mate on the ADPL.  If an officer has successfully served at the Coast Guard Academy for two years or more, the Superintendent may recommend that the probationary period be waived.  In such a case the officer will be assigned a running mate on the ADPL immediately following appointment.  If the officer is appointed directly from the ADPL, the running mate shall be the officer of the same grade who was one person senior on the lineal list as of the date of permanent appointment to the PCTS.  If the PCTS appointee happens to be the most senior officer of that grade, then the officer one person junior on the ADPL becomes the running mate.

(2) <u>Assignment of Rank, Date of Rank, and Running Mate of Member in a Probationary Status</u>.  When an individual is appointed to the PCTS in probationary status from a source other than active duty Coast Guard commissioned officer status, a rank and date of rank are assigned on the basis of their educational qualifications and professional experience.  If the appointee is already a commissioned officer in good standing in the Coast Guard inactive reserve or in another service component, the current equivalent rank and date of rank will normally be retained.  When such an appointee subsequently receives a permanent appointment to the PCTS, then the junior officer of the same grade and date of rank on the ADPL becomes the running mate.  In case there is no one on the ADPL with the same date of rank, then the next senior officer of the same grade becomes the running mate.

(3) <u>Running Mate Changes</u>.  If a PCTS officer's running mate is removed from the ADPL or changes position, then the new running mate is the officer next most senior on the list.

(4) <u>Assigning a New Running Mate Upon Non-Selection for Promotion</u>.  A member of the PCTS who fails selection for promotion for the first time shall be assigned as a new running mate the first ADPL officer who meets one of the following criteria (to be taken in order):

   (a) The officer of the same grade on the ADPL who has also failed selection for the first time and is one person senior;

   (b) The senior officer of that grade who has failed selection;

   (c) The senior officer of that grade who has not previously been in the primary promotion zone.  If the current running mate is selected for promotion or promoted while the PCTS member is out of line of promotion, a new running mate shall be assigned in accordance with the procedure described in this paragraph.

(5) <u>Assigning a New Running Mate Upon Selection for Promotion</u>.  If a member of the PCTS is selected for promotion but their running mate was not, then the new running

(6) mate is the officer one person senior on the lineal ADPL list who was selected.

3-14

**144**

mate is the officer one person senior on the lineal ADPL list who was selected.

**3.A.7.b.**      **Eligibility for Promotion**

(1) Members of the PCTS shall not be promoted to a grade above that of captain.

(2) A member of the PCTS who is serving in a grade below captain becomes eligible for consideration for promotion when their running mate is in the promotion zone established for that grade.

**3.A.7.c.**      **Selection Boards**

Selection boards to recommend members of the PCTS for promotion to the next higher grade shall be convened as described in Article 6.A. of this Manual.

**3.A.7.d.**      **Promotion**

(1) List of Selectees.  When the report of a board convened to recommend members of the PCTS for promotion has been approved, the names of those recommended shall be placed on a list of selectees in the order of their present seniority.

(2) Appointment.  The appointment of a member of the PCTS to a higher grade shall be made in the same manner as an appointment of a regular officer on the active duty promotion list.  (See Article 3.A.12. of this Manual.)

(3) Promotion.  A member of the PCTS recommended for promotion shall be promoted on the date their running mate is promoted or as soon thereafter as the Senate confirms the appointment.  The procedures outlined in Article 3.A.12. of this Manual apply.

(4) Removal from List of Selectees for Promotion.  The name of a member of the PCTS may be removed from a list of selectees by the Secretary in the same manner as the President may remove the name of an officer on the active duty promotion list and the effect upon their status and continued eligibility for promotion shall be the same. (See Article 3.A.4.g. of this Manual.)

(5) Member of PCTS Appointed as Dean of Academics.  A member of the PCTS who is appointed to the position of Dean of Academics at the Coast Guard Academy shall be appointed in the grade of captain without regard to Articles 3.A.7.c. and 3.A.7.d. of this Manual.  If the individual is not already serving in the grade of captain, the date of rank will normally be the effective date of the appointment as Dean.  In such a case, the running mate will be the junior ADPL captain with the same or earlier date of rank.  If there is no officer who meets this criterion, then the next senior ADPL captain will be the running mate.

**3.A.7.e.**        **Failure of Recommendation for Promotion**

(1) <u>Placed Out of Line of Promotion</u>.  A PCTS member not recommended for promotion is out of line for promotion for one year from the date the Secretary approves the board.

(2) <u>Consideration by Second Board</u>.  A second board convened as described in Article 6.A. of this Manual considers a PCTS member out of line for promotion.

(3) <u>Promotion after Selection by Second Board</u>.  A member of the PCTS who has once failed selection and is recommended for promotion by a subsequent board shall be promoted on the same day as the new running mate defined in Article 3.A.7.a. of this Manual.

(4) <u>Members of the PCTS who Fail Selection for Promotion Two Times</u>.  A member of the PCTS who fails selection for promotion two times shall fall under the guidelines of ADPL officers who fail selection for promotion two times as described in Article 1.A.12. of reference (c), Military Separations, COMDTINST M1000.4 (series).

## 3.A.8.        Selecting and Promoting Retired Officers Recalled to Active Duty

**3.A.8.a.**        **Eligibility for Selection for Promotion**

(1) <u>Exceptions for Promoting Retired Recalled Officers</u>.  Except in extraordinary circumstances, such as wartime recall or urgent service need, retired officers recalled to active duty normally are not eligible for promotion to the next higher grade, an exclusion the recall order will note.

(2) <u>Maximum Grade to Which Retired Recalled Officers Can Be Promoted</u>.  In all cases the highest grade to which retired officers recalled to active duty are eligible for promotion is captain.

(3) <u>Promotion of Retired Recalled Officer Twice Non-Selected for Promotion Prior to Retirement</u>.  A retired officer who at retirement had once or twice failed selection for promotion to the next higher grade is not eligible for promotion if recalled to active duty.

(4) <u>Date of Eligibility of Promotion of a Retired Recalled Officer</u>.  If a retired officer recalled to active duty is eligible for promotion, they are eligible when their running mate is in the promotion zone established for the next higher grade.

**3.A.8.b.**        **Running Mates**

(1) <u>Assigning a Running Mate for a Retired Recalled Officer on the ADPL at Time of Retirement</u>.  Each retired, recalled officer who at retirement was on the active duty promotion list (ADPL) is assigned as a running mate an officer on the ADPL,

excluding extra numbers, who occupies the same relative position in grade the retired officer did when they retired. The running mate is determined as follows:

    (a) At retirement, count down from the most senior officer in their grade, excluding extra numbers, to and including the retiring officer. The number so determined is the relative position in grade.

    (b) At recall to active duty, from the most senior officer in the same grade the recalled officer held at retirement, count down the same number of officers, excluding extra numbers, as determined in Article 3.A.8.b.(1)(a) above. The officer so located is the assigned running mate.

(2) <u>Assigning a Running Mate for a Retired Recalled Officer Not on the ADPL at Time of Retirement</u>. Each recalled, retired officer who was not included on the ADPL at retirement is assigned as a running mate an officer on the ADPL, excluding extra numbers, who occupies the same relative position in grade the retired officer's running mate did when they retired. The running mate is determined in this manner:

    (a) At retirement, from the most senior officer in their grade, excluding extra numbers, countdown to and including the retiring officer's running mate. The number so determined is the relative position in grade.

    (b) At recall to active duty, from the most senior officer in the same grade the recalled officer held at retirement, count down the same number of officers, excluding extra numbers, as determined in Article 3.A.8.b.(2)(a) above. The officer so located is the assigned running mate.

(3) <u>Assigning a New Running Mate</u>. A recalled, retired officer whose running mate changes their relative position or is removed from the active duty promotion list for any reason is assigned as a new running mate the ADPL officer next senior to the old running mate; however, if the former running mate was the senior officer in their grade, the new running mate is that grade's new senior officer.

(4) <u>Assigning a New Running Mate Upon Non-Selection for Promotion</u>. A recalled, retired officer who fails selection for promotion the first time is assigned as a new running mate the next senior officer in the same grade on the ADPL who failed selection for promotion to the next higher grade the first time. If no officer senior to them has failed selection for the first time, they are assigned as a running mate that grade's senior officer on the ADPL who has so failed; if no officer in that grade has failed selection for the first time, the recalled officer takes as a running mate that grade's senior officer on the ADPL who has not previously been in a Promotion zone until an officer fails selection for the first time. If their current running mate also has failed selection for the first time, a recalled, retired officer who fails selection for the first time retains that officer as running mate. If their current running mate is selected promoted while a recalled, retired officer is out of the line of promotion, they are assigned a new running mate under the procedure described here.

(5) Assigning a New Running Mate Upon Selection for Promotion by a Second Board. A recalled, retired officer who fails selection once and whom a second board recommends for promotion on being promoted under Article 3.A.8.e. of this Manual is assigned a new running mate who is that grade's junior officer on the ADPL on the promotion date.

**3.A.8.c.**      **Selection Boards**

Article 6.A. of this Manual describes the convening process for selection boards to recommend recalled, retired officers for promotion to the next higher grade.

**3.A.8.d.**      **Failure of Recommendation for Promotion**

(1) Out of Line of Promotion. A recalled, retired officer not recommended for promotion is out of the line of promotion for one year from the date the Secretary approves the board report.

(2) Second Board's Consideration. A second board, convened as Article 6.A. of this Manual describes, shall consider recalled, retired officers placed out of line of promotion.

(3) Failure of Selection by Second Board. A recalled, retired officer whom a second board does not recommend for promotion then has failed selection twice, is not thereafter eligible for promotion, and returns to retired status not later than 30 June of the promotion year in which their second failure of selection occurs.

**3.A.8.e.**      **Promotion**

(1) List of selectees. When the report of a board convened to recommend recalled, retired officers for promotion has been approved, the officers so selected shall be placed on a list of selectees in the order of their seniority.

(2) After Selection by First Board. A recalled, retired regular officer recommended for promotion is promoted on the date their running mate is promoted or as soon after as the Senate consents to their appointment under the procedures of Article 3.A.12. of this Manual.

(3) After Selection by Second Board. One year after the Secretary approves the first board that considered them, a recalled, retired officer whom a second board recommends for promotion shall be promoted to the next higher grade, or, if a retired regular officer, as soon after as the Senate consents to their appointment.

(4) Removal from List of Selectees. The Secretary may remove a recalled, retired officer from a list of selectees in the same manner as the President may remove an officer on the ADPL; the effect on their status and continued eligibility for promotion is the same. (See Article 3.A.4. of this Manual.)

### 3.A.9.  Selecting and Promoting the Coast Guard Band Director

#### 3.A.9.a.  Running Mate

The Director of the Coast Guard Band shall be assigned a running mate similarly as prescribed in 14 U.S.C. § 726 for reserve officers.

#### 3.A.9.b.  Eligibility for Promotion

The highest grade to which the band director can be promoted is captain (14 U.S.C. § 336).  The band director is eligible for selection for promotion to the next higher grade when their running mate is in that grade's established promotion zone.

#### 3.A.9.c.  Selection Board

A selection board to recommend the band director for promotion to the next higher grade shall be convened as Article 6.B.7. of this Manual describes.

#### 3.A.9.d.  Promotion

When a board recommends the band director for promotion, they shall be promoted on the date their running mate is promoted or as soon after as the Senate consents to their appointment.  (See Article 3.A.12. of this Manual.)

#### 3.A.9.e.  Failing Recommendation for Promotion

(1) <u>Not Recommended for Promotion by First Board</u>.  If the board does not recommend the band director for promotion, they are out of line of promotion for one year from the date the Commandant approves the board.

(2) <u>Convening a Second Board</u>.  A second board convened, as Article 6.A. of this Manual describes, will consider the band director for promotion.

(3) <u>Recommended for Promotion by Second Board</u>.  If the second board recommends the band director for promotion and the Commandant approves the board, they shall be promoted to the next higher grade one year from the date of approval of their first board or as soon after as the Senate consents to their appointment.

### 3.A.10.  Wartime Temporary Service Promotions

#### 3.A.10.a.  Presidential Suspension

In time of war or national emergency declared by the President or Congress, the President may suspend any provision in this Article governing selecting and promoting officers. Such a suspension may continue up to six months after the war or national emergency concludes.

**3.A.10.b.**   **Presidential Authority**

If any provisions on selecting and promoting officers are so suspended and service needs require, the President may prescribe regulations and under them promote to a higher grade any active duty Coast Guard officer serving as ensign or higher.

**3.A.10.c.**   **Promotion to Lieutenant Commander and Above**

A promotion under this Article to lieutenant commander and above may be made only on the recommendation of a board of officers convened for that purpose.

**3.A.10.d.**   **Scope of Presidential Authority**

Any promotion under this Article is an appointment for temporary service.  Under this Article, the President, by and with the advice and consent of the Senate, makes any appointment to a grade above captain.  Any other appointments under this Article shall be made by the President alone.

**3.A.10.e.**   **Terms of Acceptance**

Unless expressly declined, an appointment under this Article is regarded as accepted and the officer so promoted entitled to the appointed grade's pay and allowances on the date the Secretary specifies as the appointment date.

**3.A.10.f.**   **Scope of Appointment**

An appointment under this Article does not terminate any other appointment an officer holds under any other provisions of 14 U.S.C.  The President may terminate temporary appointments made under this Article at any time.  An appointment made under this Article is effective for as long as the President determines.  However, the appointment may not be effective later than six months after the war or national emergency ends.  When the officer's temporary appointment under this Article is terminated or expires, they revert to their former grade.

**3.A.10.g.**   **Reestablishing the Active Duty Promotion List**

Within six months after the war or national emergency ends, the President shall prescribe regulations to reestablish the ADPL with adjustments and additions appropriate to the conditions of original appointment and wartime service of all officers included on it.  By and with the Senate's advice and consent, the President may appoint officers on the reestablished ADPL to fill vacancies in each grade's authorized active duty strength.  Such appointments shall be considered to have been made under Article 3.A.4. of this Manual.  (14 U.S.C. § 275).

## 3.A.11.    Procedures to Permanently Appoint Reserve and Temporary Officers

### 3.A.11.a.    Appointments

With the advice and consent of the Senate, the President shall appoint temporary officers (except those appointed under the chief warrant officer to lieutenant program) and reserve officers selected for integration as permanent regular officers.  Commander (CG PSC-OPM-1) will transmit appointment letters via the chain of command for delivery to the officer concerned (14 U.S.C. § 211).

### 3.A.11.b.    Acceptance

An appointment as a permanent commissioned officer becomes effective only when the officer concerned accepts the appointment by completing the Acceptance and Oath of Office, Form CG-9556, to indicate acceptance; an additional letter is not required.

### 3.A.11.c.    Oath of Office

An oath of office is required; for this purpose, Commander (CG PSC-OPM-1) transmits the Acceptance and Oath of Office, Form CG-9556, with the appointment letter.  The officer shall not execute the oath of office before the date of rank specified in the appointment letter.  After completing the oath, the officer forwards the original to their Administration Office and one copy to Commander (CG PSC-OPM-1).

### 3.A.11.d.    Pay and Allowances

The pay and allowances of officers appointed under this Article remain unchanged since the appointments are in the grade in which the officers are serving or a lower grade.

### 3.A.11.e.    Physical Examination

A physical examination is not required for officers serving on active duty.

### 3.A.11.f.    Delaying Appointment

An officer's records, available at Commander (CG PSC-BOPS-C-MR), are complete only up to the date of the latest officer evaluation report; more than six months may elapse between that date and when an appointment letter is issued.  Therefore, each officer in the chain of command is responsible for delaying an appointment letter if, in their knowledge, the appointee has disqualified themselves in the elapsed interval.  Delaying an appointment letter consists of returning it to Commander (CG PSC-OPM-1) together with a succinct explanation of the circumstances which prompted the action.  A disqualification here means any circumstance which casts serious doubt on the moral or professional qualifications of the officer concerned for appointment as a permanent Coast Guard officer.

**151**

**3.A.11.g.**          **Discharge from Warrant, Enlisted, or Reserve Status**

Members holding chief warrant officer, enlisted, or reserve status who accept permanent appointment are discharged from their permanent status on accepting the appointment effective as of the day preceding that on which they execute the oath of office.  See Article 1.A.2. of reference (c), Military Separations, COMDTINST M1000.4 (series).

## 3.A.12.          Procedures to Promote Officers

**3.A.12.a.**          **Promotions**

Under this Article, the President, by and with the advice of the Senate, promotes all regular officers to the grades of lieutenant commander and above and all integrated reserve officers to the grades of commander and above.  The President alone promotes regular officers to lieutenant and below and integrated reserve officers to lieutenant commander and below.  Promotions are authorized in this manner.  Commander (CG PSC-OPM-1) publishes the Officer Promotion Authorization Listing (OPAL) monthly by general message.  The OPAL authorizes commanding officers or officers exercising administrative control to promote commissioned officers, ensign through captain, and chief warrant officers to the next higher grade.  A letter from the Commandant authorizes flag officer promotions; the OPAL announces them.  In all cases, either a copy of the OPAL or the letter authorizing the promotion shall be delivered to the officer concerned.

**3.A.12.b.**          **Acceptance**

Unless they expressly decline the promotion within five days after receipt, an officer promoted under this Article is considered to have accepted the promotion on its effective date.

**3.A.12.c.**          **Oath of Office**

An officer who has served continuously since they subscribed to the oath of office prescribed in 5 U.S.C. § 3331 is not required to take a new oath on promotion to a higher grade (14 U.S.C. 273).

**3.A.12.d.**          **Pay and Allowances**

An officer promoted under this Article is entitled to the pay and allowances of the grade to which promoted as of the effective date listed in a promotion letter or the OPAL (14 U.S.C. § 274).

**3.A.12.e.**          **Physical Examination**

A physical examination is not required in promoting an officer to the next higher commissioned grade.

**3.A.12.f.**    **Delaying Promotion**

Each officer in the chain of command or Commander (CG PSC-OPM) is responsible for delaying a promotion if they know the appointee has disqualified themselves after being placed on a promotion list. Disqualification here means any circumstance which casts doubt on the moral or professional qualifications of the officer concerned, including pending action by a board of officers, courts-martial, or investigative proceedings (14 U.S.C. § 271(f)). The following actions will take place in this event:

(1) <u>Reporting Requirement</u>. A complete report of the circumstances recommending removing the selectee from the promotion list under Article 3.A.4. of this Manual shall be sent to Commander (CG PSC-OPM). If the promotion letter is used for notification, include it if received; a copy of the OPAL need not be included. The selectee shall be furnished a copy of the report and required to acknowledge receipt. Attach a signed copy of the acknowledgment as an enclosure to the report.

(2) <u>Notification Requirement if Initiated by CG PSC</u>. If Commander (CG PSC-OPM) initiates delaying a promotion, they shall advise the officer concerned in writing of the reasons for so doing and require acknowledgment of receipt.

(3) <u>Board of Officers</u>. The Commandant shall refer the case to a board of officers to recommend to the President whether to remove the selectee from the promotion list. The officer concerned will be afforded 10 calendar days notice of the proceedings, and may communicate by memorandum to the board via Commander (CG PSC-OPM-1) in accordance with Article 3.A.6.h. of this Manual.

(4) <u>Board Findings and Subsequent Actions</u>. The president of the board will forward a report of the board proceedings containing a recommendation to the Commandant on whether or not the officer should be promoted, along with reasons for the recommendation. If the Commandant finds removal from the promotion list appropriate, they will forward the report with endorsements to the Secretary of Homeland Security (acting as the alter ego of the president), who is the final reviewing authority. If the Commandant determines that removal is inappropriate, the case is closed, and the promotion delay cancelled.

## 3.A.13.    Frocking Officers Selected for the Next Higher Grade

**3.A.13.a.**    **Conditions for Frocking**

Under the authority of 10 U.S.C. § 777, the Commandant may frock Coast Guard officers; i.e., authorize a brevet to the grade to which selected but not yet promoted. These officers may be considered for "frocking" under these circumstances:

(1) <u>Assignment to Another Agency or Service</u>. The higher grade is necessary to clearly establish the officer's position when they report to another agency or service for duty.

(2) <u>To Attain Government Quarters</u>.  The higher grade is necessary to ensure the officer is assigned government quarters commensurate with the grade in which they will serve.

(3) <u>To Maintain Coast Guard Image</u>.  In selected instances in which the officer is ordered to a command billet of the higher grade for which they have been selected and the higher grade is desired to maintain the Coast Guard's image in an area where they are the senior Coast Guard officer.

(4) <u>Essential to Carrying Out Duties</u>.  In selected instances when the higher rank is a significant factor in establishing the officer's stature and enhances their ability to successfully carry out their duties.

### 3.A.13.b.      Commands Authorized to Request Frocking

Flag officers, SESs, and commanding officers of Headquarters units may request authority from Commander (CG PSC-OPM) or (CG PSC-RPM) to frock officers under their cognizance who meet any one of these requirements.

### 3.A.13.c.      Frocking Procedure

Captain and commander assignment panels recommend to Commander (CG PSC) those officers who, in the panel's opinion, should be frocked to the next higher grade in conjunction with their future assignments.  The general message announcing the panel results will note frockings approved in conjunction with assignment panels.  Approved frockings generally are effective when the officer detaches from their current assignment; however, the official transfer orders issued by Commander (CG PSC-OPM-2) or (CG PSC-RPM-2) will contain actual authority.

### 3.A.13.d.      Effective Dates

Officers selected for promotion who will be entitled to dates of rank earlier than the date the particular board is approved, either due to action of the Board for Correction of Military Records or to correct administrative error (14 U.S.C. § 262), will be frocked to the grade for which selected effective 10 days after Commander (CG PSC-OPM) or (CG PSC-RPM), as applicable, receives Senate confirmation (lieutenant commander and above) or Presidential appointment authority (below lieutenant commander).  Also, regular ensigns selected to lieutenant (junior grade) will be frocked, if required, when they complete the necessary time in grade.  Commander (CG PSC-OPM-1) will perform these actions; they need not be separately requested.

### 3.A.13.e.      Benefits

(1) <u>General</u>.  Frocked officers are authorized to:

   (a) Assume the title and wear the insignia of the grade to which frocked.

**154**

(b) Housing commensurate with the grade to which frocked.

(c) A new Armed Forces Identification Card, , to reflect the higher grade, as outlined in Personnel and Pay Procedures Manual, PPCINST M1000.2 (series).

(2) <u>Pay, Allowances, and Travel Entitlements</u>.  Pay, allowances, and travel entitlements accrue at the lower permanent grade.  The higher grade's pay and allowances accrue from the effective date listed in the promotion letter or the OPAL as outlined in Article 3.A.12. of this Manual.

(3) <u>Officer Evaluation Reports (OER)</u>.  Officer evaluation reports continue to be submitted in the lower permanent grade as outlined in Article 5.A. of this Manual.

(4) <u>Disciplinary Powers</u>.  Frocking does not authorize increased disciplinary powers under Article 15, Uniform Code of Military Justice (UCMJ).

(5) <u>Time in Grade</u>.  Time in grade for determining retirement eligibility is computed from the appointment date, not the frocking date.

COMDTINST M1000.3A

## 3.B.        Promoting Chief Warrant Officers

### 3.B.1        Reserved

**The content of this section has been relocated to a new Directive, Appointing Warrant Officers, COMDTINST M1420.1.**

### 3.B.2        Reserved

**The content of this section has been relocated to a new Directive, Appointing Warrant Officers, COMDTINST M1420.1.**

## 3.B.3          Selection Process

**3.B.3.a          Reserved**

**The content of this section has been relocated to a new Directive, Appointing Warrant Officers, COMDTINST M1420.1 (series).**

**3.B.3.b.          Promotion Zone (10 U.S.C. § 574)**

The promotion zone for the next higher grade will include all warrant officers who will have completed three years time in grade **by 15 December of the promotion year in which the selection board convenes.** Commander (CG PSC) will announce promotion zones via message.

**3.B.3.c.          Communication with Selection Boards (10 U.S.C. § 573(f))**

(1) General.  Individuals eligible for consideration by a selection board may communicate directly with the board by letter arriving by the date the board convenes, inviting attention to any matter in their Armed Forces record.  A letter sent under this paragraph may not criticize any officer or reflect on any officer's character, conduct, or motive (10 U.S.C. § 573(f)).

(2) Correspondence Contents.  Correspondence to the board shall be in care of Commander (CG PSC-OPM-1).  Chain of command endorsements are optional.  The only enclosures or attachments permitted are copies of official records and materials allowed to be submitted with officer evaluation reports under Article 5.A.4.c.(3) of this Manual.  Do not solicit or submit as enclosures letters from other officers.  To receive an acknowledgment, submit a completed, self-addressed Interim Response, Form CG-4217, with the letter.

(3) Composition of Endorsements.  Endorsements to letters submitted to selection boards shall not include opinions whether an individual should be selected for promotion or opinions on selection boards and their methods.

**3.B.3.d.          Convening of Selection Boards (10 U.S.C. § 573)**

When service needs dictate, the Commandant shall convene a selection board to recommend eligible active duty warrant officers for promotion.  The schedule of board convening dates shall be published annually in reference (h), Schedule of Active Duty Promotion List (ADPL) and Inactive Duty Promotion List (IDPL) Officer Personnel Boards and Panels, PSCNOTE 1401.5 (series).

**3.B.3.e.**      **Composition of Boards (10 U.S.C. § 573)**

The board shall consist of at least five officers on the active duty promotion list above the permanent grade of lieutenant commander.  Warrant officers, senior in grade to those under consideration, may be assigned as additional members of the selection board.  No officer may serve on two consecutive boards if the second board considers any warrant officer who was considered by the first board.  When reserve warrant officers are to be considered by the selection board, the membership of the board shall, if feasible, include at least one reserve officer.

**3.B.3.f.**      **Oath of Members of the Board (10 U.S.C. § 573)**

Members of the selection board shall swear that they will, without prejudice or partiality and having in view both the special fitness of officers and the efficiency of the Coast Guard, perform the duties imposed upon them.

**3.B.3.g.**      **Information to be Furnished to Boards (10 U.S.C. § 576)**

Commander (CG PSC) shall furnish the selection board with a precept containing:

(1) The maximum number of officers that the board may recommend for promotion to the next higher grade,

(2) The names and records of all chief warrant officers who are eligible for consideration for promotion to the grade to which the board will recommend chief warrant officers for promotion, and

(3) Such information and guidelines relating to the needs of the Coast Guard for chief warrant officers having particular skills.

**3.B.3.h.**      **Number to be Selected (10 U.S.C. § 576)**

(1) The maximum number of warrant officers who may be selected for promotion to W-3 or W-4 shall be prescribed by the Commandant.

(2) If a board is unable to select the number of warrant officers established by the Commandant because an insufficient number are determined to be fully qualified, only those officers who are found fully qualified for promotion may be recommended for promotion.

**3.B.3.i.**      **Finding Unfit or Unsatisfactory Performance (10 U.S.C. § 576)**

The selection board shall report the names of those chief warrant officers considered by it, whose records and reports establish, in its opinion, their unfitness or unsatisfactory performance in their permanent regular grade.  The selection board will fulfill the requirements of a special board as outlined in Article 1.A.20.b. of reference (c), Military

Separations, COMDTINST M1000.4 (series).  Warrant officers found unfit or unsatisfactory in their performance of duty by the selection board shall be referred to an evaluation board convened under the guidelines of Article 1.A.20.c. of reference (c), Military Separations, COMDTINST M1000.4 (series).

**3.B.3.j.** **Procedures for Boards Considering Chief Warrant Officers on Both a Fully Qualified and a Best Qualified Basis (10 U.S.C. § 575)**

    (1) <u>Board Guidance</u>.  Boards convened to consider chief warrant officers on a fully and best qualified basis for promotion shall refer to the guidelines in Article 6.A.7. of this Manual and may not recommend more than the number specified in the precept.

    (2) <u>Findings of Not Fully-Qualified</u>.  In addition to the names and reasons for those found unsatisfactory pursuant to Article 3.B.3.i. of this Manual, the names of those officers found not fully-qualified, as well as the reasons for the findings, shall be included if less than the number specified in the precept are selected.  In arriving at these recommendations, the criteria in Article 6.A.7. of this Manual shall be followed.

    (3) <u>Board Report</u>.  The board shall submit a report as provided in Article 6.A.7. of this Manual.

**3.B.3.k.** **Selection Board Reports**

    (1) <u>Commandant's Authority</u>.  The Commandant may approve or disapprove all or part of the report.  The Commandant shall determine whether the board acted contrary to law or regulation.  If the Commandant determines that the board acted contrary to law or regulation, the Commandant shall return the report to the board for further proceedings, together with a written explanation of the determination.  The selection board shall then conduct such proceedings as may be necessary to comply with the law and regulations, and shall submit a revised report to the Commandant (10 U.S.C. § 576).

    (2) <u>Appointment Process</u>.  When the Commandant approves the selection board report, the Commandant shall place the names of the chief warrant officers approved for promotion on a single promotion list for each grade in order of their seniority and submit the list to the Secretary for their appointment by the President (10 U.S.C. § 578).

**3.B.3.l.** **Failure of Selection (10 U.S.C. § 577)**

A warrant officer who is not recommended for promotion is considered to have failed of selection.  The date of failure of selection for promotion is the date the Commandant approves the report of a selection board not recommending the promotion or the date the name of the officer concerned is removed from a promotion list.

**3.B.3.m.**      **Effective Date of Promotion**

Except in the case of a previous failure of selection for promotion, the date of appointment and the date of rank for promotion to W-3 or W-4 is as follows:

(1) <u>W-2 to W-3</u>.  Four years from date of appointment as W-2.  For example, a W-2 appointed on 1 June 2001 would be promoted to W-3 on 1 June 2005.

(2) <u>W-3 to W-4</u>.  Four years from date of appointment as W-3.  For example, a W-3 appointed on 1 June 2004 would be promoted to W-4 on 1 June 2008.

Note:   Determining the date of rank of a chief warrant officer who has previously failed selection is outlined in Article 3.B.4. of this Manual.

# 3.B.4.        Consideration by the Next Annual Selection Board

**3.B.4.a.**      **General (10 U.S.C. § 577)**

Warrant officers who once fail of selection shall be considered by each later selection board that considers chief warrant officers in their grade until they are retired, separated, or selected for promotion.  Unless retained under the provisions of 10 U.S.C. § 580(a) or 10 U.S.C. § 580(e), a warrant officer who twice fails selection for promotion is not eligible for further consideration for promotion.

**3.B.4.b.**      **Selection by Subsequent Board (10 U.S.C. § 578)**

The name of each warrant officer who failed selection while in the zone, and who is selected by a subsequent selection board, shall be placed on the new list prepared by the current board in order of existing seniority.  Officers in this category shall be tendered appointment either one year after the date they would have been appointed had they been selected by the board immediately preceding the current board or the earliest date on which any warrant officer who has not failed selection and whose name follows theirs on the approved promotion list is promoted to the higher grade, whichever is earlier.  The member's date of rank shall be the date of their promotion to the higher grade.  A warrant officer not in the zone who is considered in accordance with Article 1.A.2.b. of reference (c), Military Separations, COMDTINST M1000.4 (series) shall not lose numbers until they enter the zone.

**3.B.4.c.**      **Failure of Selection by Subsequent Board (10 U.S.C. § 580)**

(1) <u>Retirement Eligible</u>.  Unless continued, retired, or separated under some other provisions of law, a retirement eligible chief warrant officer who has twice failed selection for promotion to the next higher chief warrant officer grade shall be retired not later than the first day of the seventh month after approval of the findings of the board.  Mandatory retirement will be effected under the provisions of 10 U.S.C. § 580, unless the officer concerned requests voluntary retirement under 10 U.S.C. §

COMDTINST M1000.3A

1293.  At the request of the member, the Commandant may defer the retirement of a warrant officer who twice fails selection for promotion to the next higher grade if the officer is serving in a temporary grade above chief warrant officer.  When the warrant officer is retired or separated, the officer's commission in the temporary grade above chief warrant officer shall be terminated on the date the officer is retired or separated.  In accordance with the provisions of 14 U.S.C. § 334, the officer shall be retired with the highest commissioned grade above chief warrant officer, W-4, held by them for not less than six months in which, as determined by the Coast Guard, the officer's performance of duty was satisfactory.

(2) 18 Years Service.  Unless continued, retired, promoted, or separated under another provision of law, a regular chief warrant officer who twice fails selection for promotion to the next higher grade and who has 18 years of service:

   (a) On the date the Secretary approves the report of the board that did not select the officer for promotion to the next higher grade a second time,

   (b)  The date the officer's name is removed from the list of officers recommended for promotion by the selection board,

   (c) The date the officer's name is removed from the promotion list, or

   (d) Pursuant to 10 U.S.C. § 580(a)(4)(C), the date on which the officer would otherwise be separated 10 U.S.C. § 580(a)(4)(A), shall be retired on the first day of the month immediately following the month in which the officer completes 20 years of active service creditable for retirement.  Such a warrant officer remains eligible to be considered for promotion by subsequent selection boards, and shall not be retired if the officer is selected for promotion prior to the retirement date.

(3) Fewer Than 18 Years Service.  Unless promoted, continued, discharged, or retired under another provision of law, a warrant officer who has fewer than 18 years service creditable for retirement, shall be discharged for twice failing of selection to the next higher grade on the first day of the seventh month following the date on which the report of the board is approved, the date on which the officer's name is removed from the recommended list of selectees, or the date on which the officer's name is removed from the promotion list, whichever applies.

(4) Selected for Continuation.  A regular warrant officer who twice fails selection for promotion may be continued on active duty if selected for continuation by a selection board.  The Commandant will determine whether a service need exists for warrant officers who twice fail of selection for promotion, and provide authority for their retention in the precept convening a selection board.  The precept shall fix the maximum number of such officers that may be recommended for retention, and the period of retention.  Officers continued on active duty pursuant to the recommendation of a selection board continue to be eligible for consideration for promotion.  If not sooner retired or discharged under another provision of law, an

**161**

officer who is continued shall be discharged, or retired if eligible, upon the expiration of the period of continued service, unless promoted, on an approved list of selectees for promotion, continued pursuant to the recommendation of a subsequent selection board approved by the Commandant, or is within two years of qualifying for retirement under 10 U.S.C. § 1293.

## 3.B.5.       Removal from a Promotion List

### 3.B.5.a.       General (10 U.S.C. § 576(d))

When information of an adverse nature is received concerning a warrant officer subsequent to having been recommended for promotion by a selection board, but before an appointment letter has been tendered, or when an appointment letter is returned by an officer in the chain of command who deems the officer unqualified for the appointment, the name of the warrant officer shall be referred to a board in accordance with Article 1.A.20.b. of reference (c), Military Separations, COMDTINST M1000.4 (series).  If the officer is found unfit or unsatisfactory, the warrant officer's name will also be referred to an evaluation board in accordance with Article 1.A.20.c. of reference (c), Military Separations, COMDTINST M1000.4 (series) unless the officer has fewer than three years as a commissioned warrant officer, then Article 1.A.19. of reference (c), Military Separations, COMDTINST M1000.4 (series) applies.

### 3.B.5.b.       Consideration by the Next Board (10 U.S.C. § 579)

A warrant officer whose name has been removed from the list of selectees pursuant to Article 3.B.5.a. of this Manual shall be considered for promotion by the next regularly scheduled selection board.  If selected by this board, the warrant officer's name shall be replaced without prejudice on the list from which it was removed.  The date of rank is the date it would have been had the member's name not been removed; pay and allowances accrue from the date of rank.  If the warrant officer is not selected for promotion by this board, the officer shall be considered to have twice failed selection for promotion, and shall be retired or separated as outlined in Article 3.B.4. of this Manual.

## 3.B.6.       Procedures for Effecting Promotion of Warrant Officers

### 3.B.6.a.       Promotions

The Officer Promotion Authorization Listing (OPAL) will be used to promote chief warrant officers to the next higher permanent grade (W-3 and W-4).

### 3.B.6.b.       Withholding Promotion

It is the responsibility of each officer in the chain of command or Commander (CG PSC), to withhold the promotion of a chief warrant officer if there is knowledge that they have disqualified themselves after being placed on a promotion list.  Disqualification, as used herein, is deemed to be any circumstance which casts doubt on the moral or professional

qualifications of the warrant officer concerned.  This includes pending action by a board of officers, courts-martial, or investigative proceedings.  The withholding of a promotion by the command shall consist of the following action:

(1) Contact Commander (CG PSC-OPM-1) by the most rapid means available to execute the appropriate pay action.

(2) Return the appointment letter to Commander (CG PSC-OPM-1).

(3) Provide a complete written report of the reason for withholding the promotion to Commander (CG PSC-OPM-1).  The warrant officer concerned shall be furnished a copy of the report and shall be required to acknowledge receipt.  A signed copy of the acknowledgment shall be attached as an enclosure to the report.

Note:  If Commander (CG PSC) initiates withholding a promotion, the chief warrant officer shall be notified in writing of the reason(s) thereof and be required to acknowledge receipt.  Upon completion of the notification action, the board action outlined in Article 3.B.5. of this Manual will be initiated.

**3.B.6.c.**    **Acceptance**

Acceptance of promotion to the next higher grade is considered accomplished unless specifically declined within five days after receipt.  A new oath shall not be administered.

**3.B.6.d.**    **Physical Examinations**

A physical examination is not required for promotion of chief warrant officers serving on active duty.

## 3.B.7.    Selection and Promoting Retired Warrant Officers Recalled to Active Duty

**3.B.7.a.**    **Eligibility for Selection for Promotion**

(1) Exceptions for Promoting Retired Recalled Warrant Officers.  Except in circumstances such as wartime recall or cases of urgent service need, retired warrant officers recalled to active duty shall not normally be eligible for promotion to the next higher grade.  This exclusion will be noted in the recall order.

(2) Promotion of Retired Recalled Warrant Officer who was Twice Non-Selected for Promotion Prior to Retirement.  A retired warrant officer who at the time of retirement had once or twice failed selection for promotion to the next higher grade shall in no case be eligible for promotion if recalled to active duty.

**3.B.7.b.**  **Selection**

Under the circumstances noted above, when a board is convened, eligible retired warrant officers recalled to active duty will be considered for promotion by the warrant selection board consisting of five or more officers in the grade of commander or above convened for that purpose.  Warrant officers, senior in grade to those under consideration, may be assigned as additional members of the selection board.  Consideration for promotion will be on a fully qualified basis.

**3.B.7.c.**  **Failure of Selection**

Any retired warrant officer recalled to active duty who fails selection for promotion shall be returned to the retired list not later than the first day of the seventh month after the date the selection board is approved by the Commandant.

**3.B.7.d.**  **Promotion**

Promotion of retired warrant officers will be per the provisions of Article 3.B.6. of this Manual.

# 3.B.8.  Reserved

**Policies and Standards for conducting the Selective Early Retirement Boards (SERB) for warrant officers have been moved to Reference (c).**

**164**

COMDTINST M1000.3A

**THIS PAGE INTENTIONALLY BLANK**

| |

| |

## 3.B.9.   Lateral Change in Warrant Specialty

A request for lateral change in warrant officer specialty will be considered on its own merits, and a lateral change in specialty will be authorized only in those unique cases where it is clearly in the best interests of the service to do so.

## 3.B.10.   Appointing Chief Warrant Officers as Temporary Officers (    14 U.S.C. § 214)

### 3.B.10.a.   General

The primary objective of this program is to improve the inventory of officers in the middle grades in certain occupational fields where the special skills and experience of warrant officers are needed to round out the experience of the total officer population.  A secondary objective is to provide a limited opportunity for upward mobility for deserving senior members of the warrant officer corps.

(1) Appointments Based on Needs of the Service.  The program will be responsive to the needs of the service, limited in scope, and highly selective.  Appointments will not necessarily be apportioned among all warrant officer specialties.  The exact numbers and specialties will be determined annually based on projected service needs and after considering the impact on critical enlisted ratings, officer promotion rates, and Officer Candidate School inputs.

(2) Temporary Appointment.  Selected applicants will be offered appointments as temporary regular officers and placed on the active duty promotion list in accordance with the provisions of Article 3.A.2. of this Manual.  Permanent appointments will not be tendered to officers appointed under this program until the officer is selected by their first best-qualified promotion board and subsequently requests integration in

accordance with Article 1.A.8. of this manual.  Selectees who do not integrate will continue to be eligible for promotion in their permanent warrant officer grade as set forth in Article 3.B.3. of this Manual.

**3.B.10.b.**    **Obligated Service**

Appointees are obligated by acceptance of the appointment to serve as temporary officers for three years from date of appointment.

**3.B.10.c.**    **Assignments**

Officers appointed as temporary lieutenants will be assigned to duty within the primary occupational field for which they were selected and will not normally be rotated out of such duty.

**3.B.10.d.**    **Reversion**

Requests to revert from a temporary grade to a permanent warrant grade will normally be disapproved unless unique needs of the service support the reversion.  Warrant officers who accept temporary appointments to lieutenant may revert to their warrant grade if twice non-selected for promotion; however, those officers approved for reversion to their former warrant officer grade, who were appointed to a higher warrant grade subsequent to their appointment to lieutenant, must serve two years time in grade as required by Article 1.C.9. of reference (c), Military Separations, COMDTINST M1000.4 (series).

**3.B.10.e.**    **Retirement**

(1) <u>Upon 30 Years Service</u>.  Upon completion of 30 years service, officers appointed under this program who do not integrate, as outlined in Article 1.A.8.a. of this Manual, shall be retired pursuant to 10 U.S.C. § 1305, in the highest grade satisfactorily held as outlined in 14 U.S.C. § 334 and 10 U.S.C. § 1371.

(2) <u>Twice Fail Selection</u>.  Lieutenants who twice fail selection for lieutenant commander will be retired, or if they request, reverted to their chief warrant officer grade.

**3.B.10.f.**    **Original Appointment of Temporary Officers (14 U.S.C. § 214)**

At such times as the needs of the service dictate, the Commandant shall convene an appointment board to recommend eligible warrant officers for appointment to temporary lieutenant.  Reference (h), Schedule of Active Duty Promotion List (ADPL) and Inactive Duty Promotion List (IDPL) Officer Personnel Boards and Panels, PSCNOTE 1401.5 (series), will publish the convening date of the board.  The occupational fields and specialties needed for that promotion year will be announced by message.

**167**

**3.B.10.g.**   **Eligibility**

Applications will be considered from chief warrant officers, W-3, W-4, or W-2, who will be considered by the W-3 selection board in the same promotion year.  However, appointments of chief warrant officers W-2 to lieutenant, shall be offered only to those whose name appears on a promotion list to W-3.  All applicants must have completed at least 13 years but not more than 26 years of active duty for retirement, computed to 30 June following the board.  In addition to this active duty service requirement, applicants must possess normal color perception, a requirement for all commissioned officers.  In addition, applicants for the MMS (Deck) and MMS (Engineering) specialties must hold qualification (hull inspector and/or machinery inspector) for the specific occupational field(s) requested.  Qualification letters must be appended to the application/resume.

**3.B.10.h.**   **Application**

Applications may be made for only the occupational field which is related to the warrant officer specialty listed in Article 3.B.10.h.(3) of this Manual.  If the applicant is serving in a warrant specialty which is related to more than one of the occupational fields offered, the officer may request consideration for more than one; however, the officer must specify the order of preference (i.e,, first and second choice).

(1) <u>Form and Content</u>.  Candidates shall apply via Direct Access e-Resume requesting consideration by the CWO to LT selection board.  The e-Resume is used to populate Direct Access which informs Commander (CG PSC-OPM-1) of the members' candidacy.  In addition, candidates must apply by memorandum to Commander (CG PSC-OPM-1) via their immediate command.  The selection board will use the candidates' memorandum as one of the selection criteria.  No enclosures to the application are permitted with the exception of hull or machinery qualification letters.  The application/resume shall be submitted in basic Coast Guard memorandum format (limited to a maximum of 2 pages, single-sided, single-spaced, 12 point text with 1 inch margins) and in the following sequence:

(a) <u>Paragraph 1</u>.  The occupational field, or fields (specify preference) for which the candidate is applying.

(b) <u>Paragraph 2</u>.  The historical summary of units assigned as a CWO with the primary and collateral duties assumed for each (listed in chronological order with the most recent first).

(c) <u>Paragraph 3</u>.  A summary of major professional accomplishments including medals, awards, and academic achievements.  (List only personal medals and awards.  Do not list all ribbons earned.)

(d) <u>Paragraph 4</u>.  A statement addressing the candidate's reasons for desiring appointment to the grade of lieutenant.

(2) <u>Endorsement</u>.  The e-interview portion of the e-Resume shall not be completed.  Endorsements are to be completed as attachments to the letter application.  The commanding officer's endorsement shall address the applicant's potential to perform successfully in the grade of temporary lieutenant and shall include a computation of the applicant's total service computed to 30 June following the board.  The command endorsement is limited to one page.

(3) <u>Specialties</u>.  Chief warrant officers who meet the eligibility requirements of this Article may apply to the occupational field or fields that are related to their specialty as indicated by Article 2.A.2.b. of this Manual.

**3.B.10.i.**     **Waivers**

**Eligibility requirements will not normally be granted.  Candidates requesting a waiver to eligibility requirements in Article 3.B.10.g of this Manual, must apply by memorandum to Commander (CG PSC-OPM-1) as the waiver authority via their immediate command.  CG-133 is the appeal authority.**

COMDTINST M1000.3A

PAGE INTENTIONALLY LEFT BLANK

COMDTINST M1000.3A

## CHAPTER 4        (RESERVED)

**The content of this chapter, under the previous title of Officer Qualifications, has been relocated to a new directive, Military Qualifications and Insignia, COMDTINST M1200.1 (series).**

# Chapter 5     Officer Evaluation System (OES)

A. <u>Overview</u>. This Chapter states policies and standards for conducting performance evaluations for Coast Guard officers.

  1. <u>Purpose</u>. The Officer Evaluation System documents and drives officer performance and conduct in accordance with Service values and standards. This information is used to support personnel management; primarily selection boards and panels, retention, and assignments

  2. <u>Applicability</u>.

     a. All active duty officers in the grade of W-2 to O-6 must receive officer evaluation reports (OERs).

     b. All IDPL officers in the grade of W-2 to O-6 must receive officer evaluation reports (OERs).

     c. Retired officers recalled to active duty may receive OERs in accordance with Article 5.M. of this Manual.

     d. Flag officers are managed under a separate system.

     e. Public Health Service (PHS) officers are evaluated under a separate system.

B. <u>Roles and Responsibilities</u>.

  1. Commandant (CG-133) must:

     a. Establish and maintain policy governing OERs.

     b. Provide policy guidance to Commander (CG PSC).

  2. Commander (CG PSC) has overall responsibilities for the OES. Administrative servicing of OERs is accomplished by Commander (CG PSC-OPM-3) or Commander (CG PSC-RPM-1). Servicing of an officer's personnel record is accomplished by Commander (CG PSC-BOPS-C-MR).

  3. Commander (CG PSC-OPM-3) or Commander (CG PSC-RPM-1) must:

     a. Maintain all forms and issue procedural instructions to implement the policies and standards of this Chapter. Make policy recommendations to Commandant (CG-133).

     b. Review and validate OERs for administrative and substantive errors with attention given to inconsistencies between the numerical evaluations and written comments (if applicable).

(1) May return any OER requiring significant correction or redaction to the appropriate member of the rating chain.

(2) Correct OERs containing minor administrative errors or as directed by judicial or administrative adjudications without return to the rating chain.

(3) The review is not intended to question a rating official's judgment about a subordinate's performance, but to ensure OERs have been prepared in accordance with this Chapter's policies and standards.

(4) Provide final quality control review of OERs containing substantive errors, including "restricted" remarks as outlined in Article 5.I. of this Chapter. Certain corrective measures may be taken to expedite validation of OERs, reviewer comments, OER replies, and addenda.

c. Serve as reviewer on an OER in unusual circumstances.

d. Provide training and guidance:

(1) on the OES, subject to resource availability.

(2) to rating chains, **both officer and civilian**, as requested.

e. Determine which officers, if any, must use the Office Support Form (OSF), Form CG 5308.

f. Grant or deny exceptions to policies and standards as permitted in this Chapter.

g. Report annually on the health of the OES to Commander (CG PSC). Statistical trends and conclusions will be included in the report, plus recommended changes for the current year and identification of issues and/or changes under consideration.

h. Publish Coast Guard Officer Evaluation System Procedures Manual, PSCINST M1611.1 (series) to discuss procedure and expanded guidance on OER completion and submission.

4. Commander (CG PSC-BOPS-C-MR) must:

a. Maintain the validated OER as a part of the Electronically Imaged Personnel Data Record (EI-PDR) in accordance with Military Personnel Data Records (PDR) System, COMDTINST M1080.10 (series).

b. Respond to individual inquiries and requests related to those records, including missing copies of OERs and requests for copies of reported-on officer's EI-PDR.

5. For this Chapter, commanding officers include area and district commanders, commanders of logistics/service centers, commanding officers of Headquarters units and subordinate units or organizations, **sectors**, and cutters. Commanding officers must:

   a. Ensure accurate, fair, and objective evaluations are provided to all officers under their command. In using the OER, strict and conscientious adherence to specific wording of the standards is essential to realizing the purpose of the evaluation system.

   b. Ensure members of the rating chain carry out their OES responsibilities.

   c. Implement the OES for all Coast Guard officers within their commands.

   d. Designate and publish the command's rating chains.

   e. Establish procedures that ensure timely submission of OERs. Ensure OERs for officers eligible for promotion or panel action are not delayed.

   f. Provide local oversight and accountability for the proper preparation of OERs. Commanding officers are encouraged to monitor OERs submitted by the designated rating chain within their commands as a means of ensuring consistency.

   g. Require mid-period counseling.

   h. Encourage recurring training, for all officers **and civilians with rating chain responsibilities** within their commands, on OES policies, standards, procedures, and forms.

   i. **Ensure performance in meeting requirements of the Coast Guard occupational health and safety program are documented appropriately and consistently with the reported-on officer's assigned responsibilities and authority. (This Article complies with Article 1960.11 of 29 CFR XVII.)**

C. OES Standards and Policies. The following standards and policies apply to the entire Chapter, unless explicitly amended by another article in this Chapter.

   1. The OES must document every day of an officer's commissioned, unless they are:

      a. a flag officer,

      b. retired, or

      c. assigned to the Inactive Status List (ISL).

   2. All Reported-**on** Officers must be counseled on their performance during the reported period. The Reported-on Officer is responsible to ensure this session takes place and is documented.

3. OERs may only be submitted in accordance with, and for occasions listed in, Articles 5.E. and 5.F of this Manual.

4. The period of report must not exceed:

    a. 30 months for officers on a biennial schedule,

    b. 18 months for officers on an annual schedule, and

    c. 12 months on a semiannual schedule.

5. The only exceptions to Article 5.C.4. of this Manual are:

    a. Duty under instruction (DUINS) OERs (see Article 5.E.8. of this Manual), or

    b. Continuity OERs for the period an IDPL officer is in the Individual Ready Reserve (IRR) or Active Standby list (ASL) (see Article 5.E.9. of this Manual).

6. Periodically, officers may experience circumstances due to a temporary condition which result in a limited opportunity to perform. These circumstances may involve specific performance restrictions (e.g., those imposed by a medical authority), which require restructuring or reassignment of duties. While preferential treatment must not be given, the rating chain must ensure these individuals do not receive substandard evaluations strictly as a consequence of these circumstances.

7. The rating chain, in consultation with the health care providers, must establish a "reasonable expectation of performance" given the individual's current circumstances. In particular, rating chain must determine whether or not an individual requires reassignment to a different work environment and/or restrictions on performing specific types of tasks. Additionally, reduced work hours may be necessary. When considering reassignment or restructuring of duties, the rating chain must identify service needs which complement the temporarily limited abilities of the officer.

8. Officers who have been frocked (excluding captains serving as flag officers) must follow the schedule for their actual pay grade, not for the grade to which they have been frocked.

9. Officers promoted during a reporting period must follow the submission schedule for the promoted pay grade to determine when their next OER is due. The reported-on officer's grade on the occasion of the "promotion of officer" OER is the grade prior to promotion.

10. Officers with both a temporary and a permanent commission (such as CWO to LT) will follow the higher commission's schedule and standards.

D. <u>OER Rating Chain</u>. The rating chain is the succession of individuals who are responsible for preparing, completing, and reviewing an officer's OER. Commander (CG PSC) must promulgate designation and responsibilities for each member of the rating chain, taking into account the nature of the occasion the OER.

1. For reported-on officers receiving a DUINS OER, rating chains will be individuals within the appropriate program managing office. Program managers will designate the rating chain for reported-on officers, including captains, assigned to DUINS programs.

2. For captains receiving a DUINS OER, the reporting officer and reviewer must be a Coast Guard flag officer or Coast Guard Senior Executive Service member from the appropriate headquarters program managing office.

3. For captains attending Senior Strategic Groups (SSG), the reporting officer and reviewer must be a Coast Guard flag officer, Coast Guard Senior Executive Service member, or service equivalent (e.g., Chief of Naval Operations for the CNOS SSG) unless the reporting officer is at least equivalent to a Coast Guard flag officer or SES (e.g., White House, DHS, other services).

4. **The Coast Guard Judge Advocate General shall be the Reviewer for those Reported-on Officers in legal billets without a Judge Advocate in the rating chain as designated by the unit commanding officer (e.g., District Staff Judge Advocates).**

5. **As required by the Military Justice Act of 2016 to preserve the independent judiciary, for all Reported-on Officers who perform collateral duties as a military or appellate judge during the period of report, the Judge Advocate General shall provide additional comments on the Comments Form, CG-5315, to document judicial performance only. For Reported-on officers out of specialty who do not perform any collateral duties as a military judge during the period of report, the Judge Advocate General will not provide additional comments.**

6. In instances where a rating chain member is unavailable or disqualified to carry out their responsibilities and if not already determined by the commanding officer, it is incumbent on the reported-on officer to identify the next senior officer in the chain of command that an exception to the rating chain may exist and an appropriate substitute for evaluating the reported-on officer must be designated **and properly documented as a rating chain exemption with CG PSC-OPM-3 or CG PSC-RPM-1.** This issue should be raised by the reported-on officer during the reporting period or within 60 days after the end of the reporting period.

E. Occasions for Regular OERs. A regular OER is a report that qualifies for continuous chronological coverage of the reported-on officer's commissioned service. All OERs listed are Regular OERs.

1. Amount of days. Multiple Articles within Article 5.E. of this Manual reference the following days.

   a. All IDPL schedule officers and Annual ADPL schedule officers. 184 days

   b. Semiannual ADPL schedule officers. 92 days

2. Biennial, annual, or semiannual. Officers must receive biennial, annual, or semiannual OERs unless exempted by a policy in Article 5.E. of this Manual.

   a. Submission Schedule. Commander (CG PSC) must promulgate when biennial, annual, or semiannual OERs must be submitted, making allowances for differences in pay-grade, promotion lists, active duty orders, and any other concerns.

   b. **Required Submission. All officers above or in zone for consideration for promotion, as announced by Commander (CG PSC), may not delay a scheduled biennial, annual, or semiannual OER in favor of a later regular OER. This requirement also applies to officers separating from the ADPL competing on the IDPL promotion board.**

   c. Optional submissions.

      (1) Any officer who received another regular OER, within the time frame specified in Article 5.E.1. of this Manual, prior to the required submission may choose not to submit a biennial, annual, or semiannual OER submission requirement. This includes officers above or in zone for consideration for promotion.

      (2) Officers who are not above or in zone for consideration for promotion and who expect to receive another type of regular OER within the time frame specified in Article 5.E.1. of this Manual after the biennial, annual, or semiannual OER is due may choose not to submit a biennial, annual, or semiannual OER.

      (3) Officers, regardless if the officer is above or in zone, with an approved retirement, separation, or resignation letter on file may choose to submit a Continuity OER in lieu of a biennial, annual, or semiannual OER in accordance with Article 5.E.9 of this Manual.

      (4) Newly commissioned officers who have been at their first unit less than 120 days may choose to not submit a biennial, annual, or semiannual OER, provided the next regular OER does not exceed the period of report limit in Article 5.C.4. of this Manual.

3. <u>Change of the Reporting Officer (RO)</u>.

    a. <u>Required Submission.</u> Officers must receive this OER when their RO detaches or changes in the rating chain and more than the following number of days have elapsed since the ending date of the last regular OER:

       (1) <u>Biennial</u>. 365 days or 366 days if it is a leap year

       (2) <u>ADPL and IDPL Annual</u>.184 days

       (3) <u>Semiannual</u>. 92 days

    b. <u>Optional submission</u>. Article 5.E.3.a. of this Manual does not apply when the **Reported-on Officer** has an approved retirement, separation or discharge on file and is planning on submitting a continuity OER.

4. <u>Detachment on Permanent Change of Station (PCS) Orders or Separation from the Service of the Reported-on Officer</u>.

    a. Officers must receive this OER when they execute a PCS and exceed the time limits specified in Article 5.E.1 of this Manual.

    b. All ADPL schedule officers must receive this OER when they leave active duty, regardless of the length of period for the report. The period of the report must end on the final day of active service, including days on terminal leave. Separations include:

       (1) retirement,

       (2) release from active duty of Reserve commissioned officers,

       (3) discharge of Regular commissioned officers regardless of accession into the Reserve.

       (4) Change of component for ADPL submission schedule to/from IDPL submission schedule or any change of category within the Reserve component.

    c. All IDPL schedule officers must receive this OER when they leave active status, regardless of the length of period for the report. The period of report must end on the final day of active status. Separations include:

       (1) retirement,

       (2) discharge,

       (3) transfer to the Inactive Status List (ISL)**,**

       (4) **transfer to the ADPL**

    d. For separating members, with the concurrence between the rating chain and the reported-on officer, a continuity OER is authorized instead of this OER in accordance with Article 5.E.9. of this Manual.

5. <u>Promotion or Appointment of Officers</u>. Certain officers must submit this OER for promotion or appointment to a higher grade, with the period of report ending on the last day at the previous grade.

    a. <u>Required Submission</u>.

        (1) Captains promoted or frocked to flag grade must submit this OER. With the concurrence between the rating chain and the reported-on officer, a continuity OER is authorized instead of this OER in accordance with Article 5.E.8. of this Manual.

        (2) Commanders promoted to captain and CWO appointed to LT must submit this OER, if more than the 184 days have occurred since the last regular OER:

        (3) For all other promotions and appointments not explicitly listed in this Article, this OER must be submitted only if the next biennial, annual, or semiannual OER will result in a time period greater than the limits allowed in Article 5.C.4. of this Manual.

    b. <u>Optional Submission</u>. This OER is never optional and must not be submitted unless explicitly required under Article 5.E.5.a. of this Manual. **If not required, one of the above regular OERs must be submitted.**

6. **<u>For Consideration by Selection Panels or Boards</u>. This OER may be submitted for ADPL officers being considered by Coast Guard sponsored or officially advertised selection panels (e.g., flight school, command screening, NASA astronaut) or selection boards for promotion, extension, or continuation. The period of report must be at least the amount of time specified in Article 5.E.1. of this Manual.**

7. <u>Removal from Primary Duty (RPD)</u>.

    a. This OER must be submitted when permanently removing an officer from their primary duties as a result of conduct or performance which is substandard or as directed by the permanent relief authority's final action on a permanent relief for cause request in accordance with Reference (q), Military Assignments and Authorized Absences, COMDTINST M1000.8 (series).

    b. The OER will be defined as derogatory and must follow the policies and standards for derogatory OER stated in Article 5.H. of this Manual.

    c. Reassignment not constituting RPD as provided in Reference (q), Military Assignments and Authorized Absences, COMDTINST M1000.8 (series), is not derogatory and therefore does not require a RPD OER.

8. <u>Duty Under Instruction (DUINS)</u>. A DUINS OER is not an occasion for report, and may only be submitted for a reason in Articles 5.E.2 to 5.E.7. of this Manual.

    a. Commander (CG PSC) must:

      (1) determine which officers, based on their assignment, will follow this schedule in lieu of Article 5.E.2. of this Manual.

      (2) promulgate when DUINS OERs must be submitted, making allowances for differences in pay-grade, promotion lists, active duty orders, and any other concerns.

    b. OER submission will be submitted once a year at a minimum. The period of report must not exceed 18 months; this includes ensign and lieutenant (junior grade) submissions. Officers in and above zone for promotion must follow the regular DUINS submission schedule.

    c. When a reported-on officer is assigned PCS duty under instruction to industry training, DUINS OERs must be submitted upon detachment of the officer or completion of the program.

    d. When a reported-on officer is assigned PCS duty under instruction to flight training, OERs must be submitted at the end of each training phase.

    e. Senior Strategic Group (SSG) students must not receive DUINS OERs.

9. <u>Continuity OER</u>. This OER may be submitted in cases where full documentation is impractical, impossible to obtain, or does not meet OES goals. A continuity OER is not an occasion for report, and may only be submitted for a reason in Articles 5.E.2 to 5.E.7. of this Manual.

    a. Commander (CG PSC-OPM-3) or (CG PSC-RPM-1) may reject any continuity OER and require the rating chain to submit a regular or non-regular OER instead of the continuity OER.

    b. **A continuity OER may be submitted in lieu of a biennial, annual, or semiannual if the officer was on leave or unobserved for the entire period of report.**

    c. A continuity OER may be submitted in lieu of a Departure/Separation from the Service OER for any officer with approved separation within the time standards listed in Article 5.C.4 of this Manual of the last regular OER submission.

d. Officers requesting reserve commissions, temporary separation, or being released from active duty (RELAD) may not apply these criteria.

e. Commander (CG PSC) may issue a continuity OER to implement judicial and administrative adjudications.

f. A continuity OER may be submitted for captains selected for promotion or frocked to flag grade.

g. Commander (CG PSC-RPM-1) must complete a continuity OER for non-drilling officers assigned to either the Individual Ready Reserve (IRR) or the Active Status List (ASL) and who are being considered for selection for promotion.

   (1) This OER may exceed the time standards listed in Article 5.C.4.

   (2) **This OER must end on the date required by Article 5.E.2. for other officers receiving a biennial or annual OER and who are also being considered for selection for promotion.**

   (3) **Commander (CG PSC-RPM-1) may also complete this OER in accordance with the IDPL submission schedule for IDPL officers in the IRR or ASL.**

F. Occasions for Non-Regular OERs. The OERs listed in this Article do not count for continuity.

   1. Concurrent. A concurrent OER is an OER submitted outside of the regular submission schedule in addition to a regular OER and thus does not count for continuity.

   a. The unit to which the reported-on officer is permanently attached is always responsible for ensuring that OER continuity is maintained with regular OERs. The permanent unit's OER is never considered a concurrent report.

   b. Concurrent reports may be submitted only when the officer is:

      (1) On active duty and performing temporary duty (TDY) away from a permanent **unit** while being observed by a senior officer other than the regular reporting officer, (e.g., senior aviator deployed aboard a Coast Guard icebreaker). In this case, the concurrent report normally will be written upon the detachment of the TDY officer and cover only the period of temporary duty. This is an optional OER and will be submitted at the discretion of the TDY command. A TDY concurrent OER must be for a period of at least 60 days.

      (2) Performing an internship or training at a Coast Guard unit (e.g., Law student, legal staff intern) while in a DUINS status. In this case, the concurrent report normally will be written upon internship completion and cover only the internship period. A concurrent OER for an internship must be for a period of at least 14 days.

(3) **For IDPL officers completing short-term Active Duty (180 days or less), performing active duty for greater than 30 days away from a permanent unit while being observed by a senior officer other than the regular reporting officer.**

(4) Filling separate or distinct billets or command functions under different commanding officers.

(5) Filling a billet for which technical control and administrative control are separated, such as senior contracting officers.

(6) Commanding a unit for which operational control and administrative control are separated, (e.g., units assigned to International Ice Patrol, Deep Freeze Operations).

(7) Commanding a unit with divided operational control.

2. <u>Subsequent to Substandard Performance or Conduct</u>. This OER may be completed to document performance or conduct that is substandard but not necessitating a removal from primary duties if deferring the report until the next regular report would preclude documentation to support adequate personnel management decisions, such as selection, retention, or reassignment.

3. <u>Subsequent to Disciplinary Action</u>.

   a. This OER must be submitted when actions resulting in a civil court or criminal offense conviction bring discredit upon the Coast Guard and, except for minor traffic violations, must be reflected in the performance evaluation of officers. Therefore, this OER is required after an officer is found guilty of a civil or criminal offense with a detailed description of the conduct documented in the OER as required by Reference (r), Discipline and Conduct, COMDTINSTM1600.2 (series).

   b. This OER must be submitted when an officer receives non-judicial punishment which is not subject to appeal or when the final reviewing authority's action on an investigation includes direction that an OER must be prepared. In courts martial cases, this OER must be initiated once the convening authority has taken action and the finding of guilty has not been disapproved.

   c. The reporting period for this report will be the day that the proceedings were completed. The report must clearly state:

      (1) The nature of the proceeding prompting the report and the result of the proceeding, (e.g., criminal conviction, non-judicial punishment, or final reviewing authority's action directing a OER due to criminal culpability),

    (2) Any punishment imposed as a result of criminal conviction or non-judicial punishment, and

d. Other information as necessary to accurately reflect the performance being evaluated. Information about the proceeding may be included in the report even if the proceeding took place outside of the reporting period. The evaluation must be limited to those areas affected by such conduct, since all other dimensions will be evaluated in the regular OER. Any dimension which is not evaluated must be marked "not observed". A comparison or rating scale mark and comments on the officer's potential are required.

e. If the conduct resulting in the court-martial, non-judicial punishment, or investigation occurs during the current reporting period, a Subsequent to Disciplinary Action OER is not required if the process is completed, i.e., not subject to further review, by the time that the regular report is due to be submitted for the current period (within 30 days from the end of period of report). The basis for the court-martial, non-judicial punishment, or investigation must be reported in the regular report.

4. <u>To Document Significant Historical Performance</u>. This OER may be submitted to document significant historical performance or behavior of substance and consequence which were unknown when a previous OER was prepared and submitted.

    a. This OER must not be used in lieu of a Subsequent to Disciplinary Action OER.

    b. The OER must address only the performance dimensions relevant to the OER since all other performance dimensions will have been addressed in the previously submitted OER.

    c. This OER must be initiated by the original rating chain unless they are unavailable or disqualified.

    d. The reviewer must be a flag officer. Commander (CG PSC) must promulgate additional rating chain standards in accordance with Article 5.D. of this Manual.

5. <u>Miscellaneous</u>. When specifically directed by another article in this Manual. This OER may count for continuity, depending upon the circumstances which prompt its submission.

G. <u>Exceptions from submitting an OER</u>. The welfare of the reported-on officer must be considered along with system goals when determining the appropriate time to submit an OER. Exceptions to the normal submission schedule will not be granted without indicating extraordinary circumstances. Commander (CG PSC-OPM-3) or (CG PSC-RPM-1) may not issue an exception to policy that would violate OER period of report limits in Article 5.C.4. of this Manual.

1. <u>Occasion for Exceptions</u>. The reported-on officer may request an exception to policy to Commander (CG PSC-OPM-3) or (CG PSC-RPM-1) to the submission schedule, including deadlines for derogatory OER addenda and OER replies.

2. <u>Submitting a request for exception to policy</u>. Commander (CG PSC-OPM-3) or (CG PSC-RPM-1) must promulgate procedures and be the contact for requesting an exception to policy.

H. <u>Derogatory OERs</u>. A derogatory OER is any regular or non-regular OER that indicate the Reported-on officer has failed in the accomplishment of assigned duties.

1. Derogatory reports are only those OERs which:

   a. contain a numerical mark of one in any performance dimension, and/or

   b. contain an "unsatisfactory" mark by the reporting officer in comparison scale or

   c. rating scale, and/or

   d. documents conduct or performance which is adverse or below standard and results in the removal of a member from their primary duty or position.

2. The rating chain must provide an authenticated copy to the reported-on officer and counsel the reported-on officer of their option to prepare an addendum.

3. The reported-on officer has the option to prepare an addendum limited to two pages with no enclosures.

4. The supervisor and the reporting officer must be afforded the opportunity to address the reported-on officer's addendum via individual one page signed endorsements to the reported-on officer's addendum.

5. The reporting officer will then forward the OER and attachments to the reviewer.

6. The reported-on officer's addendum does not constitute an official request for correction of a record but provides the reported-on officer an opportunity to explain the failure or provide their views of the performance in question.

7. Commenting or declining comment does not preclude the reported-on officer from an official request for correction of the record in accordance with Correcting Military Records, COMDTINST 1070.1 (series) or submitting an OER Reply under Article 5.K. of this Manual.

8. If the reported-on officer declines to make an addendum, they must so indicate by attaching the following statement: "I am aware of the contents of the performance report and decline comment."

9. If the reported-on officer fails to provide either an addendum or statement declining an addendum within 14 days for ADPL schedule officers and 28 days for IDPL schedule officers, the reporting officer must forward the OER to the reviewer noting that an addendum was solicited and not received. In such cases, the reviewer must prepare a Reviewer addendum specifically stating that an addendum was solicited but not received.

10. The reviewer must ensure that the evaluation of the reported-on officer is consistent and that the derogatory information is substantiated. If the reviewer finds otherwise, they must return the report to the reporting officer for additional information and/or clarifying comments. Substantive changes to the OER require its return to the reported-on officer to provide another 14-day opportunity for the reported-on officer to revise the addendum.

I. <u>Prohibited Comments</u>. The rating chain must not:

1. **Mention gender specific pronouns or first name in the narrative blocks of the OER. Alternative words such as ROO and/or ROM may be utilized.**

2. Mention a judicial, administrative, or investigative proceeding, including criminal and non-judicial punishment proceedings under the Uniform Code of Military Justice, civilian criminal proceedings, Personnel Records Review Board (PRRB), Coast Guard Board for Correction of Military Records (BCMR), or any other investigation (including discrimination investigations) except as required by a non-regular OER. Referring to the fact conduct was the subject of a proceeding of a type described above is permissible when necessary to respond to issues regarding that proceeding first raised by an officer in a reply under Article 5.K. of this Manual. These restrictions do not preclude comments on the conduct that is the subject of the proceeding. They only prohibit reference to the proceeding itself.

3. Consider or evaluate the performance of any officer as a member of a court-martial, or give a less favorable evaluation to any defense counsel because of the zeal with which they represented an accused. Such evaluations are prohibited by Reference (d), Manual for Courts-Martial (MCM), 104 (b) (1). This is not intended to preclude the accurate evaluation of, and comment on, counsels' advocacy skills (e.g., trial preparation, organization, logical analysis, writing ability, oral advocacy, direct or cross examination, handling of evidence, or use of expert witnesses or demonstrative evidence, etc.) displayed in a court-martial setting. In commenting on such performance, however, whether favorable or unfavorable, no reference will be made to the name, case number, or final result (acquittal, conviction, or sentence).

4. Mention or allude to the fact that the reported-on officer was not selected by a board or panel (e.g., references to non-voluntary retirement or non-voluntary separation).

5. Mention any PRRB or BCMR application or decision.

6. Mention any medical or psychological conditions, whether factual or speculative. Restriction applies to reported-on officer and family members. The mention of not fit for fully duty (NFFD) status is prohibited.

7.  Mention pregnancy. Restriction applies to reported-on officer and family members.

8.  Expressly evaluate, compare, or emphasize gender, religion, color, race, sexual orientation, or ethnic background.

9.  Place emphasis upon a third party by gender, religion, color, race, sexual orientation, or ethnic background (e.g., Catholic lay minister wrote award recommendation for African-American civilian). Although there is no restriction on naming third parties, rating chains should realize it is much easier to reconcile titles with positions of authority rather than correlating performance with proper names

10. Refer to the reported-on officer by first or **last** name in the comment blocks. **Alternative words such as ROO and/or ROM may be utilized.**

11. Refer to reported-on officer's marital or family status.

12. Discuss reported-on officer's performance or conduct which occurred outside the reporting period except as provided in Article 5.F.3. of this Manual.

13. Provide comments, attachments, or citations which include information subject to a security classification. Evaluations of officers in billets dealing with classified national security issues should characterize performance in a manner which captures the essence of actions and their impact as specifically as possible without raising the classification above the UNCLAS level.

14. OERs must not comment on non-military Coast Guard paid employment, including IDPL scheduled officers who are employed as civilians with the Coast Guard.

J.  Required Comments.

1.  The rating chain must support any mark of 1, 2, 3, and 7. Comments with 4, 5, or 6 do not require support.

    a.  **Forms CG-5310A and CG-5310C, the rating chain must support any mark of 1, 2, 3, and 7.  Comments are not required for marks of 4, 5, or 6.**

    b.  **Form CG-5310B, the rating chain must support any mark of 1, 2, 3, and the selected performance dimension (three for W4/O1 and five for O2) that best characterizes the ROO.  Comments of 4, 5, 6, or 7 do not require support.**

2.  Actions resulting in a drug or alcohol incident (DI/AI) must be documented in the OER. Commanding officers must also follow policy and standards with accordance with the Coast Guard Drug and Alcohol Abuse Program, COMDTINST M1000.10 (series).

3.  Failure to comply with body fat standards must be documented in the OER. Commanding officers must also follow policy and standards in accordance with the Coast Guard Weight and Body Fat Standards Program Manual, COMDTINST M1020.8 (series).

K.  Replies to OERs. The reported-on officer may reply to any OER. Replies provide an opportunity for the reported-on officer to express a view of performance which may differ from that of a rating official.

1.  Content of Replies. Comments should be performance-oriented, either addressing performance not contained in the OER or amplifying the reported performance. Restrictions outlined in Article 5.I. of this Manual apply. Comments pertaining strictly to interpersonal relations or a personal opinion of the abilities or qualities of a rating chain member are not permitted.

2.  Corrections. Reported-on officer replies do not constitute a request to correct a record. An officer who believes their OER contains a major administrative or substantive error should follow the procedures to correct military records as outlined in Article 5.N. of this Manual. This includes requests to have the OER, or a part thereof, removed from the record. Members of the rating chain who, in their review of a reported-on officer's reply, concur with the reported-on officer that an error may be present in the OER, must return the reply to the reported-on officer and assist that officer in following the procedures of Article 5.N. of this Manual.

L.  IDPL schedule specific OERs. This Article determines when IDPL scheduled officers will follow the ADPL schedule.

1.  IDPL scheduled officers on active duty, including multiple sets of active duty orders with no break in service, 181 consecutive days or greater must follow the ADPL submission schedule and be treated as an ADPL schedule officer for as long as they remain on active duty. If Article 5.L.1. applies, no other Article in 5.L may apply.

2.  IDPL schedule officers performing active duty of any length at their permanent unit must have the performance documented in their regular OER and not a concurrent OER.

3.  IDPL schedule officers performing active duty for 30 days or less at a unit other than their permanent unit may have the performance documented in a concurrent OER or in their regular OER, with input the unit where active duty was completed.

4.  IDPL schedule officers performing active duty for over 30 day but less than 181 days at a unit other than their permanent unit must have the performance documented in a concurrent OER.

5.  Officers in the IRR and ASL who are authorized to drill for points only, including Individual Augmentations Duty (IAD), must have the performance documented in a Regular OER according to the IDPL submission schedule.

6.  Officers in the IRR and ASL who do not have drill for points or IAD authorization must receive a Continuity OER according to the IDPL submission schedule.

7. Officers in the IRR and ASL, **not authorized to drill for points only or IAD**, performing active duty for 180 days or less must have the performance documented in a Concurrent OER.

M. Retired Officers Recalled to Active Duty.

1. Background. Because the personnel management goals (promotion, assignment, career development) of the OES don't apply to officers who are recalled to active duty from retired status, there is no mandatory requirement to submit an OER for these officers.

2. When Significant Information Exists. Where any member of the rating chain, including the reported-on officer, has information deemed significant enough to report for the retired recall period, any OER may be submitted, including a non-regular derogatory OER. Such information may be useful for future retired recall decisions regarding the officer.

3. Implications in the Event a Retired Recall Promotion Board is Convened. If service need requires that a retired recall promotion board be convened, eligible officers who declined to submit an optional OER for a previous retired recall period are not permitted to resurrect that exercised option to retroactively submit OERs for consideration by the board.

N. Correction of OERs and Military Records.

1. Quality of Comments. Comments in the OER must be sufficiently specific to present a complete picture of the reported-on officer's performance and qualities during the period. They should be both reasonably consistent with the numerical marks assigned. On those marks indicated by Commander (CG PSC-OPM-3) or (CG PSC-RPM-1) as not being supported, the rating chain must either provide additional narrative support reflecting specific performance observations or adjust the marks to the information already provided.

2. Comments.

   a. Marks and comments may be changed only by the original supervisor and reporting officer.

   b. All changes to the original OER must be initialed.

   c. The signature dates must be adjusted to reflect the date that the necessary changes and reviews were actually made. Reported-on officers must be afforded an opportunity to review and sign the updated OER.

3. <u>Correction of Military Records</u>. Coast Guard officers are encouraged to review their record periodically. While Commander (CG PSC) attempts to ensure that OERs accurately reflect officers' performance, the possibility of administrative or substantive error still exists. Accordingly, officers may seek correction of any OER, or any portion thereof, if in their opinion the report is in error.

   a. Those officers wishing to exercise this right should follow the procedures to correct military records contained in Correcting Military Records, COMDTINST 1070.1 (series) for forwarding the application to the Personnel Records Review Board (PRRB) or Board for Correction of Military Records (BCMR), as appropriate.

   b. The application may be forwarded through the original rating chain at the officer's option. If the whereabouts of the original members of the rating chain are unknown, officers should submit the application directly to the PRRB or BCMR. Additionally, an officer may forward their application via the officer's current chain of command but is not required to do so and may send the application directly to the PRRB or BCMR.

O. <u>Definitions</u>. The following definitions apply only to this Chapter.

1. <u>ADPL schedule</u>. All officers are considered Active Duty Promotion List (ADPL) schedule unless explicitly Inactive Duty Promotion List (IDPL) schedule. ADPL schedule includes all Regular officers, Reserve officers on extended active duty (EAD), and Reserve Program Administrators (RPA).

2. <u>Officer Evaluation System (OES)</u>. The Coast Guard system that addresses performance appraisal of its officers.

3. <u>Officer Evaluation Report (OER)</u>. A report for a specific Coast Guard officer used to document performance and potential.

4. <u>Rating Chain</u>. The succession of individuals who are responsible for preparing, completing, and reviewing an officer's OER as defined by the following roles:

   a. Reported-on Officer. The subject of the OES.  All commissioned officers of the Coast Guard are evaluated periodically.

   b. Supervisor. Normally, the individual to who the reported-on officer reports to on a daily or frequent basis and from who the reported-on officer receives the majority of direction and requirements.

   c. Reporting Officer. Normally the supervisor's supervisor.

   d. Reviewer. Normally the reporting officer's supervisor.

5. <u>Regular OER</u>. A regular OER is a report that qualifies for continuous chronological coverage of the reported-on officer's commissioned service.

6. <u>IDPL schedule</u>. IDPL officers not on active duty to the extent required to follow the ADPL schedule. IDPL officers, per Reserve Policy Manual, COMDTINST M10001.28 (series) is made up of the Selected Reserve (SELRES), Individual Ready Reserve (IRR), and Active Status List (ASL).

7. <u>Unavailable</u>. Includes illness, injury, death, prolonged absence, separation from the service, retirement, or any other situation which prevents or substantially hinders the supervisor, reporting officer, or reviewer from properly carrying out their rating chain responsibilities.

8. <u>Disqualified</u>. Includes relief for cause due to misconduct or unsatisfactory performance, being an interested party to an investigation or court of inquiry, or any other situation in which a personal interest or conflict on the part of the supervisor, reporting officer, or reviewer raises a substantial question as to whether the reported-on officer will receive a fair, accurate evaluation.

9. <u>Non-regular OER</u>. A non-regular OER is a report that does not qualify for continuous chronological coverage of the reported-on officer's commissioned service.

# CHAPTER 6    PERSONNEL BOARDS

## 6.A.    Commissioned and Chief Warrant Officer Personnel Boards

## 6.A.1.    General

### 6.A.1.a.    Significance

Personnel boards are so significant every officer in the service should know board procedure and the general criteria boards use, whether determining promotion, continuation, retention, or appointment.

### 6.A.1.b.    Guidelines

The criteria published here are furnished to boards solely to guide and do not limit the scope of authority vested in them.  Each board member must retain an impartial, unbiased, unprejudiced attitude about all officers being considered and all groups and Coast Guard specialized duties.  Any limitation of choice arbitrarily imposed on personnel boards by an outside authority would be unlawful and highly improper.

### 6.A.1.c.    Type of Board

Personnel boards, such as those that select officers on the active duty promotion list (ADPL) to grades above lieutenant (junior grade) and consider captains for continuation on active duty, select on a best-qualified basis, in which the board is limited to a specific number it may select.  Other personnel boards, such as those selecting officers for promotion to lieutenant (junior grade), select on a fully-qualified basis.  Under this selection process, system, or method, the board compares each officer to a standard and recommends all who meet or exceed it.  Accordingly, in addition to the fully-qualified standard, a best-qualified board also must select by comparing each officer to all others considered.  This procedure enables the board to select from the entire group the limited number whom it believes are the best-qualified.

## 6.A.2.    Board Purposes

Personnel boards are convened for various purposes, including recommending officers for:

(1) Promotion,

(2) Continuation on active duty,

(3) Retention in a particular occupational field, and

(4) Designation in a particular occupational field.

**192**

### 6.A.3.    Selection Criteria

**6.A.3.a.    General**

(1) Personnel boards recommend on either a best-qualified or fully-qualified basis as set forth in law and directed in the precept.  All personnel boards consider fundamentally the same type of information.  However, each board develops its own overall standards and selection criteria.  The degree of significance a board assigns to each of the many factors it considers may vary according to the grade and type of selection the board is making  A board selecting officers for lieutenant may emphasize different factors than would a Captain Continuation Board.

(2) Promotion is not a reward for satisfactory service.  It confirms an officer's demonstrated potential to serve the Coast Guard in a higher grade.

**6.A.3.b.    Basic Criteria**

(1) <u>Performance Evaluations</u>.  A significant selection criterion is performance in present and past assignments.  Boards should adhere to the following interpretations and policies when evaluating performance.

    (a) Officer evaluation report forms define performance dimensions considered most significant in assessing an officer's performance and readiness for greater degrees of responsibility.

    (b) Though the same performance dimensions seem important at every grade, areas of emphasis at ensign level are quite different from that at the captain level, even though leadership at each level shares many common elements.

(2) <u>Professionalism</u>.

    (a) Professionalism is an essential element in selecting officers for promotion.  Coast Guard officers must provide quality service to the public while promoting a positive image of the Coast Guard.

    (b) The diversity of officer assignments in the Coast Guard makes it impossible for any officer to be qualified for all of them; the service expects each officer to have true professional competence in one occupational field and, from assignments outside it, experience in other fields.  While technical specialization is essential in certain lower grades and for certain assignments, in the higher grades emphasis shifts to leadership skills.

    (c) Each officer must be familiar with Coast Guard general administration and display interest in the immediate assignment, the rest of the service, the surrounding community, and the world by improving their knowledge of service-related subjects through study, activities, and associations.  The capable

**193**

individual is highly adept at transferring talents from one task to another, which enables the service to fulfill its mission and objectives.

(d) Until recently, most officers had frequent operational assignments throughout their careers and were competent mariners or aviators. However, Coast Guard missions have changed so much the present number of operational billets makes this impractical. In fact, to maintain professional competence, it is necessary to repeatedly assign certain officers to similar billets. This means the service may not assign many officers to operational duty, particularly lieutenant commanders and above. It thus follows that operational experience, by itself, cannot be a universal selection requirement.

(3) Leadership. Officers selected demonstrate those leadership traits and values that allow them to serve in a series of assignments with increasing responsibility in the grade to which promoted. Officers must exemplify our core values of honor, respect, and devotion to duty in the highest degree.

(a) A leader influences people to accomplish a purpose. Coast Guard leaders concentrate on "doing right things right," integrating a leader's focus on effectiveness with a manager's focus on efficiency.

(b) A successful leader inspires others by:

[1] Convincing them they have the solution and acting decisively and confidently,

[2] Sharing a vision of service, excellence, and achievement,

[3] Demonstrating a commitment to innovation and quality team work, and,

[4] Modeling strength of character in word and action.

(4) Education. Another consideration is education. To maintain a high level of expertise in areas such as science, engineering, operations, and administration, many officers are detailed to postgraduate education or specialized training. It would be desirable to afford every officer such an opportunity, but this is impossible. Thus, a board should not disproportionately emphasize an officer's postgraduate training. Commissioned officers participate in education programs voluntarily. Each board should consider these factors in evaluating education:

(a) Whether an officer pursues educational courses commensurate with their previous training and experience, and/or

(b) An officer's accomplishments in the program, including the grades attained where applicable.

## 6.A.4.  General Procedures for All Boards

### 6.A.4.a.  Responsibilities

Each personnel board member shall impartially and fairly evaluate the qualifications of each officer whose name is submitted to the board to determine whether they  meet the overall criteria the board established considering the parameters outlined in Article 6.A.3. of this Manual.

### 6.A.4.b.  Compliance

Personnel board actions shall comply with applicable laws, regulations, and their precept.

### 6.A.4.c.  Consistency

So successive personnel boards' actions may be consistent, Commander (CG PSC-OPM) and selected staff members shall appear before each personnel board to brief the members on applicable laws, regulations, and service needs.  Since the board is convened solely to obtain its members' opinion, it must act according to its own judgment and is bound only by existing law and the oath its members take.

### 6.A.4.d.  Material Furnished

Commander (CG PSC-OPM) furnishes personnel boards the names and personnel records of all officers to be considered.  The personnel record consists of general administrative paperwork including such items as statements of service and sea service; the record of emergency data; Administrative Remarks, Form CG-3307, entries; documentation of alcohol incidents, and reports of civil arrests; performance evaluations; education information; and awards and discipline documentation.  A board must consider an officer's entire record; however, the following is considered the most significant portion of the record evaluated:

| Grade Considered | Service Period |
|---|---|
| Rear Admiral (Lower Half), Captain, Commander | Seven years of immediate previous service or all service in present grade, whichever is greater. |
| Lieutenant Commander | Six years of immediate previous service or all service in present grade, whichever is greater. |
| Lieutenant, Lieutenant (Junior Grade) | All commissioned service. |

### 6.A.4.e.  Additional Information

If the board desires additional information or clarification, the board president shall request it in writing from Commander (CG PSC-OPM).

**195**

**6.A.4.f.**    **Fitness for Duty**

Boards shall assume each officer it considers is fit for full duty unless otherwise advised.

**6.A.4.g.**    **Administrative Letters of Censure**

Article 1.E. of reference (r), Discipline and Conduct, COMDTINST M1600.2 (series), prohibits filing administrative letters of censure in officers' personnel records. Since non-punitive censures were previously filed in an officer's official record, a board finding one shall ignore it when evaluating performance. A board , however, may consider and evaluate the facts on which an administrative letter is based if an officer evaluation report or other documents refer to them.

**6.A.4.h.**    **Officer Education Reporting Program**

The Officer Education Reporting Program is voluntary. Officers may report educational achievement annually on a Record of Professional Development, Form CG-4082, for board consideration.

**6.A.4.i.**    **Board Proceedings**

Except for its Report of the Board, the board members shall not disclose proceedings or deliberations to any person not a member of the board (14 U.S.C. § 261).

## 6.A.5.    Procedure for Boards Considering Officers on a Fully-Qualified Basis

**6.A.5.a.**    **Board Recommendation**

Boards convened to recommend officers for promotion on a fully-qualified basis should recommend those whose records indicate they are qualified to perform all duties to which they reasonably might be assigned in the grade for which they are being considered. Each board shall definitely recommend whether each officer it considers is or is not qualified, without any restrictions or qualifications.

**6.A.5.b.**    **Comparison**

In recommending each officer it considers, the board should compare them to the present grade and those in the next higher grade to determine how well the individual measures up to such officers according to the overall criteria the board established. If the board believes the officer has demonstrated by past performance, fitness, and potential to perform creditably those duties to which they reasonably might be assigned, the board should recommend them. If past performance indicates potential for increased responsibilities and administrative assignments is doubtful or limited, the board should not recommend the officer.

**6.A.5.c.**     **Not Recommended**

If the board does not recommend an officer or finds an officer's performance in their present grade is unsatisfactory, the board shall indicate its reasons.

**6.A.5.d.**     **Board Report**

Each board's report shall contain:

(1) A cover sheet,

(2) A membership roster,

(3) The convening, meeting, and adjourning dates,

(4) A list of officers recommended,

(5) A list of officers found not fully-qualified for promotion with the specific reason why each was not recommended for promotion,

(6) A list of officers whose performance of duty in present grade the board considered unsatisfactory with the specific reason why each was found as such,

(7) A certification that in the opinion of at least three members if the board has five, or two-thirds of the members if the board has six or more members, the officers recommended are fully-qualified for promotion, and

(8) Each member's signature.

## 6.A.6.     Procedure for Boards Considering Officers on a Best-Qualified Basis

**6.A.6.a.**     **Number of Officers**

Boards convened to consider officers on a best-qualified basis for promotion, continuation on active duty, retention in a particular occupational field, or appointment in another status may recommend to promote, continue, retain, or appoint only the number specified in the precept.

(1) In 1963, legislation amended Title 14, United States Code, to improve the quality and efficiency of the Coast Guard officer corps by replacing a system based on seniority with one which would select the best-qualified officers.

(2) Fundamental to selecting for promotion on a best-qualified basis is the fact the number of officers to be selected is fewer than the number being considered.

**197**

**6.A.6.b.**      **Comparison**

In recommending, a board shall compare all officers submitted for consideration and base its recommendations on the extent to which they compare among themselves in accomplishing past assignments and their potential for greater responsibility according to the overall criteria the board adopted; however, Article 6.B.1.f. of this Manual limits below zone promotion selections.

(1) Selection on a best-qualified basis embodies three elements.  The board:

    (a) First, considers all officers impartially and equally.

    (b) Second, applies the same criteria to all.

    (c) Third, evaluates by comparison, with the most capable officers advancing to positions of higher responsibility.

(2) Best-qualified boards consider officers' records, comparing past performance, their capacity to undertake successfully tasks of progressively greater difficulty involving broader responsibilities, their capability and inclination to study for further professional growth, and their potential to perform creditably those duties to which these officers might be assigned in the next higher grade.

**6.A.6.c.**      **Board Report**

The report of the board shall contain:

(1) A cover sheet,

(2) A membership roster,

(3) The convening, meeting, and adjourning dates,

(4) A list of the officers recommended for promotion, continuation, retention, or appointment in the order of relative precedence they held before the current consideration,

(5) A certification that, in the opinion of at least three members if the board has five or two-thirds of the members if the board has six or more, the officers recommended for promotion, continuation on active duty, retention in a particular occupational field, or appointment in another status are the best-qualified for promotion, continuation, retention, or appointment of those officers whose names were furnished to the board (14 U.S.C. § 260), and

(6) Each member's signature.

### 6.A.7. Procedure for Boards Considering Officers on Both a Fully-Qualified and Best-Qualified Basis

#### 6.A.7.a. Number of Officers

Boards convened to consider officers on both a fully- and best-qualified basis for promotion, continuation on active duty, retention in a particular occupational field, or appointment in another status may recommend to promote, continue, retain, or appoint up to the number specified in the precept.

#### 6.A.7.b. Comparison

In recommending each officer it considers, the board must make two determinations, fully-qualified and best-qualified.

(1) The Fully-qualified Determination. First, the board should compare each officer to those in the present grade and those in the next higher grade to determine how well the individual measures up to such officers according to the overall criteria the board established. If the board believes the officer has demonstrated by past performance, fitness, and potential to perform creditably those duties to which they reasonably might be assigned, the board should go to the second determination step. If past performance indicates the potential for increased responsibilities and administrative assignments is doubtful or limited, the board should not recommend the officer.

(2) The Best-qualified Determination.

    (a) Those officers meeting the fully-qualified determination described above must then be selected on a best-qualified basis, which embodies three elements; the board:

        [1] First, considers all those fully-qualified officers impartially and equally.

        [2] Second, applies the same criteria to all.

        [3] Third, evaluates by comparison, with the most capable officers advancing to positions of higher responsibility.

    (b) In recommending, a board shall compare all officers submitted for consideration and base its recommendations on the extent to which they compare among themselves in accomplishing past assignments and potential for greater responsibility according to the overall criteria the board adopted. Best-qualified boards consider officers' records comparing past performance, their capacity to undertake successfully tasks of progressively greater difficulty involving broader responsibilities, their capability for further professional growth, and their potential to perform creditably those duties to which these officers might be assigned in the

next higher grade.  Only officers who have been found fully-qualified may be selected.

[1] Normally, the number of officers found fully-qualified exceeds the number of officers found best-qualified.  There is no requirement to identify reasons for those officers who were fully-qualified but not best-qualified.  If an officer is found to be performing in an unsatisfactory manner, however, the board shall specify the reason for that finding.

[2] When the board is tasked with choosing up to a maximum number of best-qualified candidates, they may choose less than that number only if there are an insufficient number of fully-qualified officers.  If the board selects less than the maximum number, it is indicating that the officers not chosen were either not fully-qualified or unsatisfactory in their performance and shall specify in writing the reasons for each of these non-selections.

**6.A.7.c.** **Board Report**

(1) Commander (CG PSC-OPM-1) may furnish boards with procedures and forms to assist them in evaluating records.  The determination to use such assistance in the form provided or in modified form or not at all, rests solely with the board.

(2) The board shall submit a report of its proceedings to the Commandant for Secretarial approval under the delegation contained in 49 CFR 1.45(a)(1), to include:

(a) A cover sheet,

(b) A listing of membership,

(c) A listing of the convening, meeting, and adjourning dates,

(d) A listing of the names of officers recommended for promotion in the order of relative precedence that they held prior to the current consideration,

(e) A certification that, in the opinion of at least a majority of the members of the board, the officers recommended for promotion are fully qualified and the best qualified of those officers whose names have been furnished to the board,

(f) The signature of each member, and

(g) The original precept, appended.

## 6.B.        Selection for Promotion

### 6.B.1.    Selection Boards for Promotion from Lieutenant (Junior Grade) Through Rear Admiral (Lower Half)

#### 6.B.1.a.    Convening a Board

At least annually and at other times when the needs of the service require, the Secretary shall convene selection boards to recommend for promotion to the next higher grade officers on the active duty promotion list (ADPL) in each grade from lieutenant (junior grade) through captain, with separate boards for each grade.  However, the Secretary need not convene a board to recommend promotion to a grade if no vacancies exist in it and estimates none will occur in the next 12 months (14 U.S.C. § 251).

#### 6.B.1.b.    Selection Board Composition

The selection board shall consist of five or more officers on the ADPL who serve in or above the grade to which the board may recommend promoting officers.  No officer may serve on two successive boards convened to consider officers of the same grade for promotion (14 U.S.C. § 252).

#### 6.B.1.c.    Board Convening Notice

Before convening the selection board, Commander (CG PSC) gives the service at large notice of the convening date, the promotion zone considered, officers eligible for consideration, and the number of officers the board may recommend for promotion (14 U.S.C. § 253(a)).

#### 6.B.1.d.    Selection Board Member's Oath

Each selection board member shall swear they will perform the duties imposed on them without prejudice or partiality having in view both officers' special fitness and the efficiency of the Coast Guard (14 U.S.C. § 254).

#### 6.B.1.e.    Information Furnished to Selection Boards

Commander (CG PSC) shall furnish each selection board with this information:

(1) The number of officers the board may recommend for promotion to the next higher grade; and

(2) The names and records of all officers eligible for consideration for promotion to the grade to which the board will recommend officers for promotion (14 U.S.C. § 258).

**201**

**6.B.1.f.**       **Number of Officers Recommended for Promotion from Below the Zone**

(1) The number of eligible officers the board may select from below the zone for rear admiral (lower half) is unlimited.  For all lower grades, the selection board shall recommend those officers it considers best-qualified from among those eligible under consideration in, above, and below the promotion zone in the limited numbers prescribed below.

(2) The number of officers the selection board may recommend for promotion to the grade of captain or below from among eligible officers junior in rank to the junior officer in the appropriate promotion zone may not exceed:

(a) Five percent of the total number of officers the board is authorized to recommend for promotion to the grade of lieutenant or lieutenant commander.

(b) Seven and one half percent of the total number of officers the board is authorized to recommend for promotion to commander, and

(c) Ten percent of the total number of officers the board is authorized to recommend for promotion to captain.

(3) However, if such percentage is a number less than one, the board may recommend one officer for promotion (14 U.S.C. § 259).

**6.B.1.g.**       **Submitting Selection Board Reports**

(1) The selection board submits a report, as outlined in Article 6.A.6.c. of this Manual, to the Secretary.  If the board has acted contrary to law or regulation, the Secretary may return the report for revision and resubmission.  After final review, the Secretary submits the board report to the President for approval, modification, or disapproval.

(2) If any officer recommended for promotion is not acceptable to the President, they may remove that officer from the board's report.

(3) When the President approves the report, Commander (CG PSC) promptly disseminates the names of officers the board selected for promotion to the service at large.

(4) Except as this Article requires, no one shall disclose selection board proceedings to any person not a member of the board (14 U.S.C. § 261).

### 6.B.2. Selection Boards for Promotion from Ensign to Lieutenant (Junior Grade)

**6.B.2.a.   Convening a Board**

Approximately three months before the date an ensign completes 18 months of active service, computed from their date of rank as an ensign on the active duty promotion list (ADPL), Commander (CG PSC) shall convene a selection board to consider them for promotion to the grade of lieutenant (junior grade).

**6.B.2.b.   Board Composition**

The selection board shall consist of at least five officers on the ADPL serving as lieutenants or above.  If practical, boards considering reserve ensigns on extended active duty shall include at least one reserve officer.

**6.B.2.c.   Board Members' Oath**

Selection board member shall comply with Article 6.B.1.d. of this Manual.

**6.B.2.d.   Selection Method**

A board considering ensigns for promotion shall recommend those officers it considers fully-qualified for promotion to lieutenant (junior grade).  (See Article 6.A.5. of this Manual.)

**6.B.2.e.   Submitting Reports**

The board shall submit a report as outlined in Article 6.A.5.d. of this Manual to the Commandant, through Commander (CG PSC) for approval, modification, or disapproval. If the board has acted contrary to law or regulation, Commander (CG PSC) shall return the report for revision and resubmission.

**6.B.2.f.   Consideration by Second Board**

A second selection board will consider ensigns placed out of line for promotion whom the first board previously judged to be performing satisfactorily in that grade.  If the second board selects the ensign, they shall be promoted under Article 3.A.5. of this Manual.  Article 6.B.2.b. of this Manual specifies the second board's members; no one who served on the first board may serve on the second.  The board considers the officer's entire record, emphasizing particularly the period when the officer was out of the line of promotion.  The board should compare performance evaluation reports for that period with previous reports to determine whether the officer's performance has improved to the extent they now warrant selection on a fully-qualified basis.

**203**

**6.B.2.g.**          **Finding of Unsatisfactory in Grade**

In accordance with 10 U.S.C. § 12681, 14 U.S.C. § 214(c), or 14 U.S.C. § 281, as applicable, the Commandant will revoke the commissions or vacate the temporary appointments of ensigns in their first three years of commissioned service who fail selection for promotion to lieutenant (junior grade) and whom the selection board determines are performing unsatisfactorily in grade, irrespective of Article 1.A.8. and 1.A.10. of reference (c), Military Separations, COMDTINST M1000.4 (series).

# 6.B.3.          Selection Boards for Promoting RPAs

**6.B.3.a.**          **Convening a Board**

At least annually or when service needs require, Commander (CG PSC) shall convene selection boards to recommend for promotion to the next higher grade Reserve Program Administrators (RPAs) in each grade from lieutenant (junior grade) through commander. A board may consider officers in more than one grade.

**6.B.3.b.**          **Board Composition**

A board convened to consider RPAs for promotion to the next higher grade shall consist of five or more officers serving in or above the highest grade to which the board may recommend officers for promotion. Three members shall be RPAs. If enough are not available to satisfy this requirement, Commander (CG PSC-OPM) may reduce the number of RPA members, but the board must have at least one RPA. If no reserve officer serving on active duty is senior to all officers under consideration, Commander (CG PSC-OPM) may recall to active duty a retired reserve officer or one serving on inactive duty senior to all officers the board will consider to serve on the board.

**6.B.3.c.**          **Notice of Convening**

Commander (CG PSC) shall give notice of convening a selection board in the same manner as described in Article 6.B.1.c. of this Manual.

**6.B.3.d.**          **Members' Oath**

Selection board members shall comply with Article 6.B.1.d. of this Manual.

**6.B.3.e.**          **Information Furnished to Boards**

Commander (CG PSC) shall furnish the appropriate selection boards with this information:

(1) The number of officers the board may recommend for promotion to the next higher grade, and

**204**

(2) The names and records of all officers eligible for the board to consider.

**6.B.3.f.**     **Selection Criteria**

(1) The board uses best-qualified criteria to consider RPAs for promotion to lieutenant and above.  However, if the number of officers eligible for selection equals the number to be selected as determined in Article 3.A.6.a. of this Manual, the board uses fully-qualified criteria.

(2) Under fully-qualified criteria, a board recommends for promotion only those RPAs who have demonstrated:

(a) Competence in Reserve Program Administration and as an officer,

(b) Desire for continued growth and development as an RPA.  The board may consider such factors as achievements as a reserve officer, educational accomplishments, and demonstrated competence in a responsible position within the reserve program, and

(c) Potential for increased duties and responsibilities, additional growth, and professional development needed to qualify them for assignments to duties and responsibilities in the next higher grade.

**6.B.3.g.**     **Reports**

(1) Each board convened to select RPAs for promotion shall submit a written report signed by its members listing the officers recommended for promotion.  If the board selects on a fully-qualified basis, its report shall contain detailed reasons for not recommending an officer for promotion.

(2) The board shall certify that in the opinion of at least three members, if it has five, or two-thirds of the members, if the board has six or more, the RPAs recommended are fully qualified or the best-qualified for promotion, as applicable, of those Commander (CG PSC) furnished the board.

**6.B.3.h.**     **Submitting Reports**

(1) Each board shall submit its report to the Commandant, through Commander (CG PSC), for approval, modification, or disapproval.  If the board has acted contrary to law or regulation, the Commandant or Commander (CG PSC) shall return the report for appropriate revision and resubmission.

(2) When the Commandant approves the report, Commander (CG PSC) promptly disseminates the names of the officers selected to the service at large.

(3) Except as this Article requires, no one shall disclose selection board proceedings to any person not a member of the board.

## 6.B.4. Selection Boards for Promotion of Officers on the Permanent Commissioned Teaching Staff (PCTS) of the Coast Guard Academy

**6.B.4.a.    Convening of Boards**

When one or more members of the PCTS are in the promotion zone, Commander (CG PSC) shall convene a selection board to consider them for promotion to the next higher grade.  Separate boards may be convened for each grade if Commander (CG PSC) deems it appropriate; otherwise a single board shall act for all grades.

**6.B.4.b.    Composition of Boards**

A board convened to select members of the PCTS for promotion to the next higher grade shall consist of five officers of the regular Coast Guard who are serving in or above the highest grade to which the board may recommend members of the PCTS for promotion. An officer who has served as a member of a board that did not recommend an eligible PCTS officer for promotion may not serve on a later board that again considers the same officer for promotion to the failed grade.  To the extent that qualified members of the PCTS are available, at least two members shall serve as members of the selection board. However, at least one member of the board must be appointed from the ADPL.

**6.B.4.c.    Oath of Members of Boards**

All members of the selection board shall swear that they will, having in view both the special fitness of members of the PCTS and the efficiency of the Coast Guard Academy in the accomplishment of its mission, perform the duties imposed upon them without prejudice or partiality.  Further, that they will make their recommendations as to selection for promotion in accordance with the standards prescribed in Articles 6.B.4.e. and 6.B.4.f. of this Manual to the best of their ability.

**6.B.4.d.    Required Documentation**

For each PCTS officer being considered for promotion, the officers' official personnel file will serve as the documentation on which the promotion decision will be based.  The PCTS officer shall ensure that their Record of Professional Development, Form CG-4082, is updated and accurate.

**6.B.4.e.    Basis for Recommendation**

Each selection board shall recommend for promotion those eligible members of the PCTS whom it considers fully qualified.

**6.B.4.f.**      **Performance Standards**

(1) Typically, faculties at an institution of higher learning are evaluated based on their contributions to teaching, service, and intellectual activities. At the Academy, however, the faculty have the additional responsibility of contributing to the development of cadets as Coast Guard officers. This responsibility is especially important to the role of PCTS. In addition, members of the PCTS are commissioned officers and thus are required to conduct themselves as such. Each performance dimension is discussed in general below.

(a) Teaching and advising is the primary emphasis of all CGA faculty. Teaching encompasses course design, project design and supervision, daily class preparation, presentation of course material, assessment and evaluation of student performance, and techniques for motivating students to learn. Successful teachers have excellent skill in analysis and communication and are wholly committed to students and student learning.

(b) Service as in service to the Academy and the greater Coast Guard is expected; opportunities to contribute in this regard are many and varied. Examples of this performance standard include Academic Division leadership positions, major project officer responsibilities, major committee assignments, and Academy Coast Guard related work assignments.

(c) Intellectual activity is a vital and necessary ingredient for a faculty at an institution of higher learning. Expectations for scholarly activity and professional growth depend upon rank and may vary somewhat with individual circumstances, such as seniority at the time of initial appointment and the service commitment of the PCTS member. Intellectual activity is to be interpreted broadly encompassing basic research, applied scholarship, pedagogy, and professional development.

(d) Cadet development is one of the Academy's two primary missions. Thus it is expected that members of the PCTS contribute significantly to the development of cadets as young adults, students, and future leaders. Examples of areas where faculty may contribute include summer training programs, participation in cadet social and musical activities, acting as a coach to a sporting team, or advisor to a cadet club. Additionally, cadet development may manifest itself in the member's teaching, service, and/or intellectual activity. Members of the PCTS are also role models for cadets and junior military faculty. As role models and commissioned officers, they must maintain a high standard of bearing, conduct, integrity, and military professionalism.

(2) These performance standards are meant to be flexible enough to capitalize on the strengths of individual members of the PCTS and meet the needs of the Academy as a whole while delineating the fully qualified standards for promotion. While each of the performance dimensions (teaching, service, intellectual activity, and cadet development and military professionalism) is important, it is neither expected nor

**207**

desired that every member of the PCTS would focus their efforts in a like manner. For example, a member of PCTS may serve in a variety of Academic Division leadership positions, thus focusing on "service." Another member of the PCTS may be conducting and publishing academic research and thus focusing on "intellectual activity." A third member of the PCTS may provide a more balanced picture of activity. As such, the three members will look very different to the promotion board. All three PCTS officers, however, may be fully qualified for promotion, if there is evidence of performance at or above the fully qualified level in each performance dimension.

(3) A PCTS officer normally must be found to be performing at or above the fully qualified level in each performance dimension in order to be selected for promotion to the next grade. The fully qualified performance standards for promotion to each rank are defined more specifically as follows.

**6.B.4.g.        Performance Standards for Lieutenant/Lieutenant Commander**

(1) <u>Teaching</u>. Able to teach effectively any lower-level (i.e., introductory) course in the academic specialty.

(2) <u>Service</u>. Has contributed to mission accomplishment at the Academy through service. Has demonstrated leadership potential.

(3) <u>Intellectual Activity (Lieutenant Commander only)</u>. Has demonstrated professional knowledge through participation in a terminal degree program and produced high quality work in that program. Has demonstrated that the quality of work in terminal degree program to date has been of high quality. Has made progress toward the doctoral degree as contemplated in initial course of study approved by Dean of Academics as discussed in Article 6.B.12.i. of this Manual.

(4) <u>Cadet Development and Military Professionalism</u>. Has performed satisfactorily in cadet leadership development and /or summer training activities. Has demonstrated counseling and role modeling skills through academic advising or other mentoring opportunities. Has maintained a high standard of bearing, conduct, and military professionalism.

**6.B.4.h.        Performance Standards for Commander**

(1) <u>Teaching</u>. Able to teach effectively any course in the primary academic specialty. Has the ability to serve as course coordinator for multi-section courses. Has served as an effective mentor for junior faculty members.

(2) <u>Service</u>. Has continued to contribute to the Academy through service. Has demonstrated leadership potential through development and rational presentation of original ideas for the improvement of the Academy.

**208**

(3) <u>Intellectual Activity</u>.  The PCTS officer has met the timetable for completion of the terminal degree as approved by the Dean of Academics as set forth in Article 6.B.12.i. of this Manual.  In addition, the PCTS officer is active in the academic community.  Examples of intellectual activity include but are not limited to presentations at seminars, academic conferences, an approved dissertation proposal, a completed dissertation, and publications in academic and/or practitioner journals.

(4) <u>Cadet Development and Military Professionalism</u>.  Has participated in cadet leadership development and/or summer training activities.  Has demonstrated counseling and role modeling skills through academic advising or other mentoring opportunities.  Has continued to maintain a high standard of bearing, conduct, and military professionalism.

**6.B.4.i.**       **Performance Standards for Captain**

For selection to captain, the member must satisfy the following performance standards.  In addition, the member should be recognized as outstanding in either teaching, service, or intellectual activities in accordance with the criteria specified below.

(1) <u>Teaching</u>.  Recognized as a teacher who promotes creative and active learning in students by cultivating critical thinking and improving the overall quality of teaching and learning at the Academy.  Has a demonstrated record of success in guiding and evaluating junior faculty members.  Outstanding:  Has demonstrated professional knowledge through design of new courses and suggestions for curricula revision.  Has made a significant impact on other faculty by fostering the art of teaching.  Recognized by students as a superior teacher.

(2) <u>Service</u>.  Has served successfully in significant leadership positions, such as section chief, Assistant Dean, assistant department head, project officer for a major Academy event, or chairperson of a major faculty committee.  Has demonstrated potential for future service as department head or equivalent position of academic leadership.  Outstanding:  Has demonstrated clear potential for positions of the highest leadership in the Academic Division through successful service in a significant service role.  Examples include but are not limited to serving as Assistant Dean, Director of Academic Advising, and section chief.

(3) <u>Intellectual Activity</u>.  Has earned a terminal degree.  Has shown evidence of continued and varied intellectual activity.  Examples include but are not limited to conference proceedings, conference presentations, conference participation, book reviews, and intellectual service (e.g., journal editor/ reviewer).  Outstanding:  Has demonstrated exceptional competence in academic specialty through publication of original research.  Examples include but are not limited to books, monographs, and peer-reviewed journal articles.  To merit outstanding, the intellectual activity must be subject to external peer review.

(4) <u>Cadet Development and Military Professionalism</u>.  Has continued to demonstrate

**209**

support for cadet development programs through participation and/or supporting actions.  Has continued to maintain a high standard of bearing, conduct, and military professionalism.  It is expected, however, that as a member of the PCTS becomes more senior, their cadet development activities will be more concentrated in "teaching" and "service" versus specific cadet professional development programs.  Thus no "outstanding" criteria is specified for this performance dimension.

**6.B.4.j.**      **Submission of Reports of Boards**

(1) The selection board shall submit a report as outlined in Article 6.A.5.d. of this Manual to Commandant via Commander (CG PSC) and the Assistant Commandant for Human Resources for approval, modification, or disapproval.  If the board has acted contrary to law or regulation, Commander (CG PSC) shall return the report for reconsideration, revisions, and resubmission.

(2) After approval of the report by the Secretary, the officers concerned shall be promptly notified of the board's action.

(3) Except as required by this Article the proceedings of the selection board shall not be disclosed to any person not a member of the board.

**6.B.4.k.**      **Consideration by Second Board**

A second board convened as described in Article 6.B.4.a. of this Manual shall consider a member of the PCTS who is out of the line of promotion.  No officer who was a member of the first board may serve on the second board to consider the same officer.

# 6.B.5.      Selection Boards for Promoting Retired Officers Recalled to Active Duty

**6.B.5.a.**      **Convening Boards**

When one or more retired officers recalled to active duty are eligible for promotion under Article 3.A.8. of this Manual, Commander (CG PSC) convenes a selection board to consider promoting them to the next higher grade.  If Commander (CG PSC) deems this appropriate, they may convene separate boards for each grade; otherwise, a single board acts for all grades.

**6.B.5.b.**      **Composition of Boards**

The board consists of five active duty Coast Guard officers serving in or above the highest grade to which the board may recommend retired officers recalled to active duty for promotion.  An officer who has served on a board that failed to recommend an eligible recalled retired officer for promotion may not serve on a later board that considers that same recalled retired officer for the same grade.

**210**

**6.B.5.c.**     **Board Members' Oath**

Each selection board member swears they will keep in mind both recalled retired officers' special fitness and Coast Guard efficiency and perform the duties imposed on them without prejudice or partiality.

**6.B.5.d.**     **Selection**

Each selection board shall recommend for promotion those eligible recalled retired officers whom it considers fully-qualified for promotion.

**6.B.5.e.**     **Submitting Board Reports**

(1) Each board submits a report as described in Article 6.A.5.d. of this Manual to the Commandant, through Commander (CG PSC), for approval, modification, or disapproval.  If the board has acted contrary to law or regulation, Commander (CG PSC) returns the report for revision and resubmission.

(2) After the Commandant approves the report, Commander (CG PSC) promptly notifies the officers concerned of the board's action.

(3) Except as this Article requires, no one shall disclose selection board proceedings to any person not a member of the board.

**6.B.5.f.**     **Consideration by Second Board**

A second board convened under Article 6.B.5.a. of this Manual considers a recalled retired officer out of line of promotion.  No officer who served on the first board can serve on the second board to consider the same officer.

## 6.B.6.     Selection Boards for Officers Recalled from the Temporary Disability Retired List

**6.B.6.a.**     **Commissioned Officers**

Commissioned officers recalled to active duty from the Temporary Disability Retired List (TDRL) will be placed back on the ADPL and considered for promotion under the usual procedures for officers of their status, except as otherwise defined in Article 1.A.12.b.  of this Manual.

**6.B.6.b.**     **Chief Warrant Officers**

Chief warrant officers recalled to active duty from the TDRL will be considered for promotion under the usual procedures for officers of that status, except as otherwise defined in Article 1.A.12.b. of this Manual.

## 6.B.7.  Selection Boards for Promoting the Coast Guard Band Director

### 6.B.7.a.  Convening a Board

When the band director is eligible for selection for promotion, Commander (CG PSC) convenes a selection board to consider promoting this officer.

### 6.B.7.b.  Composition of Board

A board convened to consider the band director for promotion to the next higher grade shall consist of five regular Coast Guard officers serving in or above the grade to which the board may recommend the director for promotion.  No officer who served on a board which failed to recommend the band director for promotion may serve on a later board which again considers the same band director.  If reasonably available, a Coast Guard Academy PCTS member shall serve as a board member.

### 6.B.7.c.  Members' Oath

Each board member shall swear to the best of their ability to keep in view both the band director's special fitness and the efficiency of the Coast Guard Band; perform the duties imposed without prejudice or partiality; and, further, recommend selection for promotion under the standards prescribed in Article 6.B.7.d. of this Manual.

### 6.B.7.d.  Performance Standards

The selection board shall recommend promoting the band director if it believes they are fully qualified for promotion by meeting these standards:

(1) Is a versatile musician,

(2) Is highly motivated toward the Coast Guard and demonstrates outstanding efforts to enlist highly qualified musicians for assignment to the Coast Guard Band,

(3) Instills and maintains a high spirit of professionalism within the band,

(4) Demonstrates outstanding leadership qualities and maintains harmonious relationships within the band, the band members' superiors, and the general public,

(5) Develops and maintains the Coast Guard Band at peak performance at all times, and

(6) Although the Coast Guard Band is their prime responsibility, demonstrates efficiency in performing assigned collateral duties.

**6.B.7.e.**      **Submitting Board Reports**

(1) The board submits its report as described in Article 6.A.5.d. of this Manual to the Commandant, through Commander (CG PSC), for approval, modification, or disapproval.

(2) After the Commandant approves the report, Commander (CG PSC) promptly notifies the officer concerned of the board's action.

(3) Except as this article requires, no one shall disclose selection board proceedings to any person not a member of the board.

## 6.B.8.      Boards to Designate Reserve Officers as Reserve Program Administrators

**6.B.8.a.**      **Convening a Board**

As service needs require, Commander (CG PSC) convenes a board to consider reserve officers for designation as Reserve Program Administrators (RPAs) and provisional RPAs for designation as permanent RPAs.

**6.B.8.b.**      **Board Composition**

The board shall consist of five officers, ADPL and RPA, serving in or above the grade to which the board may recommend RPA applicants.

**6.B.8.c.**      **Board Members' Oath**

Each board member shall swear to keep in view both RPA's special fitness and the Coast Guard's efficiency and to perform the duties imposed without prejudice or partiality.

**6.B.8.d.**      **Information Furnished to Boards**

Commander (CG PSC) shall furnish the board with the following information:

(1) The number of officers the board may recommend for designation as provisional RPAs,

(2) The names of provisional RPAs eligible for consideration as permanent RPAs, and

(3) The names and records of all officers eligible for board consideration.

**6.B.8.e.**      **Selection Method**

The board shall carefully consider applicants' performance of duty, educational background, administrative ability, and personal characteristics and select only those

whom it considers fully qualified and will be successful in this occupation.  If more fully qualified applicants for designation are available than vacancies, Commander (CG PSC) shall instruct the board to select on a best-qualified basis.

**6.B.8.f.**   **Submitting Board Reports**

Each board shall submit a report as outlined in Article 6.A.6.c. of this Manual to the Commandant through Commander (CG PSC) for approval.  If the board has acted contrary to law or regulation, the Commandant or Commander (CG PSC) shall return the report for revision and resubmission.  Commander (CG PSC) notifies applicants as soon as possible after the Commandant has approved the board recommendation.

**6.B.8.g.**   **Designation**

All selected applicants are initially designated as provisional RPAs.  After they complete their two-year active duty requirement, their designation is removed if a board does not select them as permanent RPAs.  (See Article 1.B.3.i. of this Manual.)

# 6.B.9.   Selection Boards for Promoting Chief Warrant Officers

**6.B.9.a.**   **Convening Selection Boards (10 U.S.C. § 573)**

When service needs require, the Secretary convenes a selection board to recommend eligible active duty warrant officers for promotion.

**6.B.9.b.**   **Board Membership (10 U.S.C. § 573)**

The board consists of at least five ADPL officers serving in a permanent grade above lieutenant commander.  Commander (CG PSC-OPM) may assign warrant officers senior in grade to those under consideration as additional selection board members.

**6.B.9.c.**   **Board Members' Oath (10 U.S.C. § 573(f))**

Board members shall comply with Article 3.B.3.f. of this Manual.

**6.B.9.d.**   **Information Furnished to Boards (10 U.S.C. § 576)**

Commander (CG PSC) furnishes information as indicated in Article 3.B.3.g. of this Manual.

**6.B.9.e.**   **Selection Method**

The board shall comply with the guidelines found in Articles 3.B.3.j. and 6.A.7. of this Manual.

**6.B.9.f.**          **Submitting Report**

The board submits a report as described by Articles 3.B.3.j. and 6.A.7. of this Manual, with the name of any chief warrant officer it finds unfit or serving unsatisfactorily in their present grade, or found not fully-qualified to serve in the next higher grade, with a description of the reasons for their findings, for the Commandant's approval or disapproval.  If the board has acted contrary to law or regulation, Commander (CG PSC) returns the report for revision and resubmission.

## 6.B.10.          Selection Boards to Continue Active Duty Promotion List Captains on Active Duty

**6.B.10.a.**          **Convening a Board**

At most annually, or less often as service needs require, the Secretary may convene a board to recommend continuation for active duty ADPL captains who will complete at least three years' service in that grade during the promotion year in which the board meets and whom the Secretary has not approved for promotion to rear admiral (lower half).  The board shall not consider officers subject to a 30- year mandatory retirement under 14 U.S.C. § 288 during the promotion year in which the board meets (14 U.S.C. § 289).

**6.B.10.b.**          **Board Composition**

The continuation board consists of at least six officers in the permanent grade of rear admiral (lower half) or rear admiral (14 U.S.C. § 289).

**6.B.10.c.**          **Convening Notice**

Before the continuation board convenes, Commander (CG PSC) notifies the service at large of the convening date, the continuation zone the board will consider, officers eligible for consideration, and the number of officers the board may recommend for continuation (14 U.S.C. § 289(d) and 14 U.S.C. § 253).

**6.B.10.d.**          **Continuation Zone**

Before convening a continuation board under Article 6.B.10.a. of this Manual , the Secretary establishes a continuation zone of ADPL captains eligible for consideration for continuation on active duty who previously were not placed in a continuation zone convened under 14 U.S.C. § 289.

**6.B.10.e.**          **Communicating with the Continuation Board**

Officers in the continuation zone may communicate to the president of the continuation board.  The provisions of Article 3.A.4.f. of this Manual apply.  (14 U.S.C. § 289(d) and 14 U.S.C. § 253)

**215**

**6.B.10.f.**      **Continuation Board Members' Oath**

Continuation board members shall comply with Article 6.B.1.d. of this Manual.  (14 U.S.C. § 289(d) and 14 U.S.C. § 254)

**6.B.10.g.**      **Information Furnished to Continuation Boards**

Commander (CG PSC) shall furnish the continuation board with the following information:

(1) The names and records of all officers eligible for consideration in the established continuation zone (14 U.S.C. § 289(d) and 14 U.S.C. § 258), and

(2) The number of officers the board may recommend for continuation on active duty (14 U.S.C. § 289(c)).  This number shall be no fewer than 50 percent of the number considered.

**6.B.10.h.**      **Selecting the Number of Officers Recommended for Continuation**

(1) The board shall select the number the Secretary directs from the designated continuation zone those officers who in its opinion are best-qualified to continue on active duty (14 U.S.C. § 289(c)).

(2) When deliberating the board shall adhere to both the general criteria this Article establishes for all personnel boards and the following specific procedures (14 U.S.C. § 289(e)).

(a) The board shall divide itself into two equally-sized, or as nearly so as possible, panels with each member on one.

(b) Each panel independently considers the records of each officer in the continuation zone, recommends the number of officers the Secretary has directed for continuation, and lists those recommended for continuation.

(c) The two panels then meet jointly to compare their recommendations.  If both panels recommend an officer for continuation, the board recommends the officer or if neither recommends an officer, the board does not recommend the officer.

(d) The board then jointly considers those officers one panel but not the other recommends.  A panel may recommend continuing an officer only if at least a majority of the panel members recommends them.  The board recommends an officer for continuation only if at least two-thirds of the board members recommends them.

**6.B.10.i.**   **Submitting Continuation Board Reports**

(1) The continuation board shall submit a report, described in Article 6.A.6.c. of this Manual, to the Secretary.  If the board has acted contrary to law or regulation, the Secretary returns the report for proceedings in revision and resubmission.  After final review the Secretary submits the board report for the President's approval.

(2) On Presidential approval, Commander (CG PSC) promptly disseminates the names of the officers the board selected for continuation on active duty to the service at large.

(3) Except as this Article requires, no one shall disclose board proceedings to any person not a member of the board.  (14 U.S.C. § 289)

# 6.B.11.   Selection Board to Continue Reserve Program Administrator (RPA) Captains on Active Duty

**6.B.11.a.**   **Convening a Board**

The Commandant may convene a board annually, or less often as service needs require, to recommend for continuation on active duty those RPA captains who will complete at least three years of service in that grade during the promotion year in which the board meets and who previously were not considered for continuation.  The board shall not consider officers subject to mandatory retirements under either 14 U.S.C. § 742 or Article 1.C.7.e. of reference (c), Military Separations, COMDTINST M1000.4 (series) during the promotion year in which the board meets.  A board normally convenes if:

(1) Commander (CG PSC) does not expect a sufficient number of vacancies at captain to cause attrition and provide needed vacancies to meet the strength limitations of RPA captains as described in Article 3.A.6.a. of this Manual, or

(2) The needs of the service otherwise require it.

**6.B.11.b.**   **Board Composition**

A board convened to consider RPA captains for continuation on active duty consists of five or more officers who serve as captain or above who previously have been continued.  Three members shall be RPAs, but if a sufficient number of RPAs is not available to satisfy this requirement, Commander (CG PSC) may reduce the number of RPA members to a minimum of one.  If no reserve officer serving on active duty is senior to all officers considered for continuation, Commander (CG PSC-OPM) recalls a retired or inactive duty reserve officer senior to all officers the board will consider to active duty to serve on the board.

**6.B.11.c.**   **Convening Notice**

Before the continuation board convenes, Commander (CG PSC) notifies the service at

**217**

large of the convening date, the composition of the continuation zone, and the number of officers the board may recommend for continuation.

**6.B.11.d.**   **Continuation Zone**

Before convening a continuation board, Commander (CG PSC) establishes a continuation zone of RPA captains who will have completed at least three years' service in that grade during the promotion year in which the board meets.  The zone consists of the most senior RPA captains on active duty eligible but not previously considered for continuation.

**6.B.11.e.**   **Communicating with the Continuation Board**

Officers in the continuation zone may communicate to the president of the continuation board.  Article 3.A.4.f. of this Manual applies.

**6.B.11.f.**   **Continuation Board Members' Oath**

Continuation board members shall comply with Article 6.B.1.d. of this Manual.

**6.B.11.g.**   **Information Furnished to Continuation Boards**

Commander (CG PSC) furnishes this information to the continuation board:

(1) The names and records of all officers eligible for consideration in the established zone, and

(2) The number of officers the board may recommend for continuation on active duty. This number shall be fewer than 100 percent, but not fewer than 50 percent of the number considered.

**6.B.11.h.**   **Selection**

The board shall select from the designated continuation zone those officers who in its opinion are best-qualified to continue on active duty.

**6.B.11.i.**   **Submitting Continuation Board's Reports**

(1) The continuation board submits a report as outlined in Article 6.A.6.c. of this Manual to the Commandant, through Commander (CG PSC).  If the board has acted contrary to law or regulation, the Commandant returns the report for revision and resubmission.

(2) On the Commandant's approval, Commander (CG PSC) promptly disseminates the names of the officers the board selected for continuation on active duty the service at large.

(3) Except as this Article requires, no one shall disclose board proceedings to any person not a member of the board.

## 6.B.12.   Screening, Selection, and Appointment of Officers to the Permanent Commissioned Teaching Staff (PCTS) of the Coast Guard Academy

### 6.B.12.a.   Convening a Panel (14 U.S.C. § 188)

As service needs require, panels will be convened to consider applicants for appointment as members of the Coast Guard Academy's Permanent Commissioned Teaching Staff (PCTS). Commander (CG PSC) will solicit applications through an ALCOAST and other publications deemed necessary to broaden the pool of qualified candidates. All applications received will be processed by Commander (CG PSC) to ensure each applicant has submitted all the required information.

### 6.B.12.b.   Selection Method

(1) Initially, applicants will be considered by a panel convened by Commander (CG PSC). Commander (CG PSC), with the concurrence of the Superintendent, shall prepare a panel precept, which will include, but may not be limited to, the following criteria: knowledge in the discipline, teaching/presentation skills, potential for further growth as an educator, scholar, administrator and role model, and ability to contribute to cadet life outside the classroom. The precept will also mandate adherence to the Coast Guard's Equal Opportunity policy. The panel will evaluate all applicants and will choose the ones they deem best qualified. The panel will then reconvene at the Coast Guard Academy to further evaluate the best qualified applicants through interviews, teaching/presentations, and subject matter expertise demonstrations. In a report to the Superintendent, through the Dean of Academics, the panel will recommend a final list of those candidates determined to be best qualified for the PCTS position. The Superintendent shall recommend a preferred candidate for PCTS to the Commandant via Commander (CG PSC) and the Assistant Commandant for Human Resources. The Superintendent will include a prioritized list of an appropriate number of alternates.

(2) The Commandant is the approving official on the selection.

### 6.B.12.c.   Panel Composition

The panel shall consist of five or more members to include: the Associate Dean, the head of the academic department in which the appointment will be made or the respective section chief, an officer from Commander (CG PSC-OPM), a representative from the program manager's office most closely concerned with the discipline in which the PCTS selectee will teach, and additional members designated by the Superintendent. At least two panel members will be members of the PCTS. Typically, the panel includes at least one faculty member from another academic department. All members of the panel must be senior to the applicants.

**6.B.12.d.**     **Panel Convening Notice**

A solicitation message released by Commander (CG PSC) will announce the convening of a panel to fill authorized PCTS vacancies.

**6.B.12.e.**     **Panel Members' Oath**

Panel members shall swear or affirm that they will, without prejudice or partiality and having in view both the special fitness of officers and the efficiency of the Coast Guard Academy, perform the duties imposed upon them.

**6.B.12.f.**     **Information Furnished to Panel**

Commander (CG PSC) shall furnish the service records (if applicant is a military member) and applications of all the qualified candidates responding to the solicitation.

**6.B.12.g.**     **Selection Criteria**

The PCTS of the Coast Guard Academy exists to support the mission of providing teaching expertise and leadership in the academic division.  Members of the PCTS should be models of academic, leadership, and professional excellence.  The military component of the PCTS complements the civilian and rotating military components of the faculty. PCTS applicants:

(1) Must possess at least a master's degree in the discipline or other closely aligned discipline associated with the PCTS vacancy,

(2) Must demonstrate capacity to complete the terminal degree in a timely manner,

(3) Must possess the teaching and presentation skills necessary for success in the classroom and other professional venues (two years of teaching experience is desired but is not required),

(4) Must have the potential for growth as a leader, educator, scholar, administrator and role model.  Applicants must have the potential to become competitive for the position of academic department head,

(5) Must have the desire and ability to contribute to cadet life and development in non-academic areas, and

(6) Will normally be in grades O-2 through O-4, if the applicant is already a commissioned officer.

**6.B.12.h.**     **Reports**

(1) The panel shall submit a report as outlined in Article 6.A.6.c. of this Manual

(applicable subparagraphs (1) through (3) and (6)) to Superintendent, Coast Guard Academy, through the Dean of Academics, for further consideration.  If the panel has acted contrary to regulation, the Superintendent will return the report for revision and resubmission.  The panel will certify that in the opinion of at least a majority of the members, the candidates recommended for designation were selected on a best qualified basis.

(2) After reviewing the recommendation of the panel, the Superintendent, Coast Guard Academy will forward their preferred candidate to Commandant (CCG) through Commander (CG PSC) and Commandant (CG-1).

(3) When the Commandant approves the report, Commander (CG PSC) shall promptly disseminate the name(s) of the individual(s) selected for designation to the PCTS to the service at large.

(4) Except as this Article requires, no one shall disclose panel proceedings to any person not a member of the panel.

**6.B.12.i.    Plan of Study**

(1) Upon selection for the PCTS, a candidate who does not already hold the terminal degree will, in consultation with their Department Head and with due regard for the requirements of the academic discipline and the contemplated graduate programs, design a plan of study for completion of the degree.

(2) The plan of study will include processes for selection of graduate programs and detailed timetables for the completion of course work and qualifying examinations, preparation of the dissertation prospectus, and research and writing of the dissertation.

(3) The plan of study must be approved by the Dean of Academics, who will keep the document on file.  Timely progress toward completion of the terminal degree, as outlined in the plan of study, will be evaluated annually as part of the officer's regular officer evaluation report.

(4) In consultation with the department head and with the approval of the Dean of Academics, a PCTS officer may revise the plan of study if such revision becomes necessary during the officer's course of study.

**6.B.12.j.    Probationary Period**

Each person who is selected to the PCTS will normally complete a two-year probationary period before being permanently appointed.  If an officer has successfully served at the Coast Guard Academy for two years or more, the Superintendent may recommend that the probationary period be waived.  During the probationary period, the officer must demonstrate the capacity to complete the terminal degree, the skills of an excellent

teacher, and the willingness to contribute to the professional development of cadets. Following successful completion of the probationary period, the officer shall be sworn into the PCTS.  If, at the end of the probationary period, the Superintendent deems the officer has not demonstrated the capacities required above, the officer will not be sworn into the PCTS. not a member of the board.

## 6.B.13.     Special Selection Boards (SSB)

**6.B.13.a.     Purpose**

A SSB considers one or more commissioned or former commissioned active duty officers for promotion to lieutenant (junior grade) through captain for either of the following reasons (14 U.S.C. §263):

(1) An officer considered but not selected for promotion to the next higher grade because of a material error in their record, or

(2) An officer not considered and not selected for promotion to the next higher grade because of an administrative error.

**6.B.13.b.     General**

(1) Challenges to the correctness of material contained in an officer's apparently complete and correct record and which was considered by a regular selection board may be appealed to the Board for the Correction of Military Records (BCMR) in accordance with 33 CFR 52 and Article 5.B. of this Manual.

(2) SSBs are governed by the same instructions provided to the selection boards convened under 14 U.S.C. § 251 and are applicable only to those officers that were considered or should have been considered for promotion under that section.

(3) A SSB may consider multiple eligible officers of the same pay grade at the same time.

(4) Regularly scheduled selection boards may also be convened as SSBs if appropriate. (14 U.S.C. § 263 (h))

(5) The term "prior selection board" will mean the selection board the member was not selected for promotion because of material or administrative error, regardless of when that selection board convened.

**6.B.13.c.     Requesting a SSB**

(1) Commander (CG PSC-OPM) shall review reports of selection boards convened in accordance with 14 U.S.C. § 251 to determine whether an officer should be

considered for action under this Article.  If Commander (CG PSC-OPM) determines that a material administrative error occurred in the case of an officer(s) or former officer(s), it shall recommend, to the appropriate convening authority, that a SSB be convened.

(2) An officer may submit a request for review to Commander (CG PSC-OPM) through his or her chain of command.

(3) A former officer may submit a request for review directly to Commander (CG PSC-OPM).

(4) A request for review may be submitted in the form of a letter to Commander (CG PSC-OPM) containing the following information.

(a) Officer's name, rank, and EMPLID;

(b) Length of service;

(c) Reason for request including specific facts or circumstances relating to alleged administrative or material error.

(5) Requests for review must be submitted within one year of the announcement of the board results.  A commissioned officer or former officer may pursue relief through the CG BCMR in accordance with 33 CFR 52 and Article 5.B. of this Manual if submitted after one year.

(6) Barring extenuating circumstances, the convening authority will normally convene a SSB within 120 days of the determination of Commander (CG PSC-OPM), or decision by a CG BCMR or federal court, that a SSB is warranted.

6.B.13.d.     Convening Authority for a SSB

Commander (CG PSC) shall be the convening authority for all officers eligible for consideration per 14 U.S.C. § 263.

6.B.13.e.     Basis for convening a SSB

SSBs may be convened pursuant to 14 U.S.C. § 263 to consider or reconsider commissioned officers or former commissioned officers for promotion when one or more of the following occur:

(1) An officer was not considered from in or above the promotion zone by a regularly scheduled selection board because of administrative error.

(2) The Secretary determines that a selection board that considered an officer from in or above the promotion zone acted contrary to law or made a material error.

(3) The selection board that considered an officer from in or above the promotion zone did not have before it some material information required to be presented to the board by Coast Guard policy.

(4) The Coast Guard Board for Correction of Military Records (CG BCMR) or a federal court directs a SSB be convened.

**6.B.13.f.**      **Prohibition for convening a SSB**

SSBs shall not be convened for the following reasons:

(1) The officer's name was intentionally removed, by Commander, CG PSC, from the list of officers in or above the promotion zone or from the promotion list because the officer's name was removed from the active duty promotion list.

(2) The officer is pending removal from a promotion or recommended list in accordance with 14 U.S.C. § 272, and the removal action was not finalized by the Secretary or the President 30 days before the next regularly scheduled selection board convened to consider officers of his or her grade.

(3) The consideration in question involved an officer below the promotion zone.

(4) The board did not consider correspondence to the board that was not delivered to CG PSC in accordance with CG PSC direction.

(5) The convening authority determines that the error in the officer's record was immaterial or could have been discovered and corrected prior to board convening.

   (a) It is the officer's responsibility to review his or her record before the board convenes and take reasonable steps to correct any errors or notify the board, in writing, of possible administrative deficiencies.

   (b) The omission of letters of appreciation, commendation, or other commendatory data or awards of the Meritorious Service Medal and below from an officer's record does not constitute grounds to initiate SSB action under this Article.

(6) The officer's record that the board considered was substantially complete and correct, but the content of which, an officer or former officer contends was materially incorrect.

**6.B.13.g.**      **SSB Composition**

(1) **ADPL officers: The SSB shall consist of five or more officers on the ADPL who serve in or above the grade to which the board may recommend promoting officers. No officer may serve on two successive boards convened to consider officers of the same grade for promotion. (14 U.S.C. § 252) No officer should have served on the selection board previously convened to consider the officer or former officer being reviewed.**

(2) **RPA officers: A SSB convened to consider an RPA for promotion shall consist of five or more officers serving in or above the highest grade to which the board may recommend officers for promotion. Three members shall be RPAs; if enough RPAs are not available to satisfy this requirement, Commander (CG-PSC-OPM) may reduce the number of RPA members, but the board must have at least one RPA. If no RPA serving on active duty is senior to the officer(s) or former officer(s) under consideration, Commander (CG PSC-OPM) may recall to active duty a retired RPA or Reserve officer or one serving on inactive duty senior to all officers the board will consider to serve on the board. (14 U.S.C. §§ 276, 728) No officer should have served on the selection board previously convened to consider the officer or former officer being reviewed.**

**6.B.13.h.**   **Notice of Convening**

Before convening the SSB, Commander (CG PSC) will notify the affected officer(s).

**6.B.13.i.**   **Communications to SSBs**

An officer who is appearing before a SSB may submit communications to the board in accordance with Article 3.A.4.f of this Manual. (14 U.S.C. § 253)

**6.B.13.j.**   **Requirements for SSBs**

(1) **The SSB shall consider the record of an officer or former officer as that record, if corrected, would have appeared to the initial selection board.**

(2) **The corrected record shall be presented within a weighted sample of records, reflecting the Opportunity of Selection of the prior board to include an appropriate number of records from officers of the same grade who were recommended for promotion by the prior selection board along with an appropriate number of records from those officers of the same grade who were not recommended for promotion by the prior selection board.**

(3) **The SSB shall not be told which officer is the affected officer or which officers are being used for weighted sampling.**

(4) **Except for the affected officer(s), the SSB's findings will not affect the previous selection board's decision to recommend to promote or not to promote any other officer in the weighted sample of records.**

6.B.13.k.    SSB report

(1) The SSB shall submit a report, described in Article 6.A.5.d or 6.A.6.c. of this Manual as applicable, to the Secretary. If the board has acted contrary to law or regulation, the Secretary may return the report for proceedings in revision and resubmission. (14 U.S.C. § 261(a))

(2) On approval of the board report, Commander (CG PSC) shall promptly disseminate the name(s) of the officer(s) the SSB selected for promotion. (14 U.S.C. § 261(c))

(3) Except as this Article requires, no one shall disclose board proceedings to any person not a member of the board. (14 U.S.C. § 261(d))

6.B.13.l.    Officers Not Considered Due to Administrative Error

(1) An officer in the grade of commander or below whose record was not reviewed by the regularly scheduled selection board because of administrative error will not be considered to have failed selection prior to the consideration of the SSB. (14 U.S.C. § 263(a)(1))

(2) An officer who is considered for selection by a SSB will be considered to have failed selection for promotion if that board does not recommend the officer for promotion. (14 U.S.C. § 263(a)(2))

6.B.13.m.    Officers Not Recommended for Promotion Due to Material Error

(1) An officer in the grade of commander or below whose record was reviewed by the regularly scheduled selection board but was not recommended for promotion due to material error (i.e., incomplete or erroneous records) will not be considered to have failed selection for promotion if the subsequent SSB recommends that officer for promotion. (14 U.S.C. § 263(b)(2)(a))

(2) An officer who is considered for selection by a SSB and is not recommended for promotion will be considered to have failed the regularly scheduled selection board but will not incur an additional failure of selection as a result of the action of the SSB. (14 U.S.C. § 263(b)(2)(b))

6.B13.n.    Officers Recommended for Promotion by an SSB

(1) An officer placed on a promotion list by a SSB convened under this Article shall be appointed, as soon as practicable, to the next higher grade in accordance with the law and policies that were applicable to the officer at the time the prior selection board convened.

**(2)** The officer shall have, upon such promotion, the same date of rank, the same effective date for pay and allowances of that grade, and the same position on the active duty promotion list had they been selected by the prior selection board. (14 U.S.C. § 263(d)(1) and (2))

## 6.B.14.   Specialty Considered Selections (SCS)

**6.B.14.a.**   **Overview**

**(1)** <u>Purpose</u>. SCS fulfills a specific Service need by selecting officers possessing a particular skill set.

**(2)** <u>Legal Authority</u>. The legal authority for this policy is 14 USC § 258.
P
**(3)** <u>Applicability</u>. This policy is applicable only for ADPL lieutenant to captain selection boards.

**(4)** <u>Other Coast Guard Policies</u>. Officers will follow policy in Coast Guard Officer Specialty Management System Manual, COMDTINST M5300.3 (series) for earning specialty codes.

**6.B.14.b.**   **Authority to implement SCS**

The Commandant (CCG) will determine:

**(1)**  if officer specialty codes will be considered during the selection board, and

**(2)** The number of officers needed with a particular officer specialty. That total number may be greater than the limit allowed in Article 6.B.14.c.(2) of this Manual.

**6.B.14.c.**   **Use of SCS**

**(1)** When SCS is employed the Commandant will provide the selection board with guidance on selecting officers possessing a particular officer specialty code to meet an existing or anticipated Service need.

**(2)** When so directed by the Commandant, the board shall consider officer specialty codes. The number selected when specialty is considered a factor in selection may not exceed the percentages of 14 U.S.C. § 259 (b) unless such a percentage is a number less than one, in which case the board may recommend one officer for such placement.

**(3)** Any officer selected when specialty is considered during the selection process must be the best-qualified to carry out the duties and responsibilities of the grade for which they are selected and receive the recommendation of at least a

**227**

of a board composed of more than five members.

(4) When directed to use SCS, the board shall recommend at least the required number of officers in Article 6.B.14.b.(2) of this Manual, unless:

    a.  the board has recommended maximum amount of officers allowed by Article 6.B.14.c.(2) of this Manual, or

    b.  there are not enough in or above zone officers that meet requirements of both Articles 6.B.14.b.(2) and 6.B.14.c.(3) of this Manual.

**6.B.14.d.**    **Placement on Selection List**

Officers recommended for selection for promotion by this policy shall not lose or gain precedence as a result of being recommended, unless otherwise reordered for another reason.

---

**6.B.15.**    **Aviator Evaluation Board**

**6.B.15.a.**    **Convening a Board**

**A Coast Guard Aviator Evaluation Board will be convened by Commander (CG PSC) when necessary to evaluate the performance, potential, and motivation for continued service in flight status of certain Coast Guard aviators. The board will function in an advisory capacity to the convening authority and will recommend appropriate action to ensure only those aviators who can satisfactorily perform the duties required are continued in a flying status. The board is not a disciplinary agency in any respect; any action resulting from board recommendation is not disciplinary in nature, but rather is intended solely to support the safety of flight operations. Where events leading to board action also require disciplinary action, the commanding officer, whenever possible, should take such action before the board is convened; however, it is not required or necessary that the board be informed of the action taken.**

**6.B.15.b.**    **Reasons for Convening a Board**

**Commander (CG PSC) will normally convene an Aviator Evaluation Board within 30 days of being advised by the aviator's commanding officer or administrative senior that any of the following conditions are considered to exist.**

**(1) <u>Faulty Judgment</u>. The aviator has demonstrated faulty judgment in flight situations. This may be evidenced by serious or repeated violations of flight discipline or mishaps involving pilot judgment.**

**(2) <u>Lack of Skill</u>. The aviator has demonstrated a lack of general or specific flight skills. This may be evidenced by mishaps or near mishaps involving pilot skill,**

failure to satisfactorily complete all or any part of a prescribed training syllabus, or failure to comply with minimum annual flight requirements for reasons within the aviator's control.

(3) <u>Lack of Mental Abilities</u>.  The aviator has demonstrated certain habits, traits of character, emotional tendencies, lack of mental aptitude, or motivation that makes continuing in assigned flying duties questionable.

(4) <u>Professionally Unfit</u>.  The aviator is considered to be professionally unfit for flying for any reason not specified above.

(5) <u>Not Aeronautically Adaptable</u>.  The aviator is considered by a military flight surgeon not to be aeronautically adaptable.

(6) <u>Aviation Class A Mishap</u>.  An Aviation Evaluation Board is mandatory following any aviation operational Class A mishap and will normally be convened after the determination that no disciplinary action will be taken.

6.B.15.c.    **Board Membership**

A Coast Guard Aviator Evaluation Board will consist of three Coast Guard aviators and a military flight surgeon, preferably Coast Guard.  The aviator members must be senior to the aviator whose performance is under evaluation and should be completely familiar with the same air frame.  No member will be appointed who is considered to be a prospective witness or interested party.  The senior aviator will act as senior member of the board.  Selections normally will be made so as to provide representation from the Officer Personnel Management Division (CG PSC-OPM); the Office of Aviation Forces, Commandant (CG-711); and the Operational Medicine and Medical Readiness Division, Commandant (CG-1121).  Other aviators will be designated by Commander (CG PSC) as required to complete the board.

6.B.15.d.    **Legal Counsel**

Legal counsel is not a requirement for an informal board.

6.B.15.e.    **Commanding Officer Preparation for Board**

The most important reason for removing an aviator from flying status is safety, yet Reference (k), Safety and Environmental Health Manual, COMDTINST M5100.47 (series), prohibits the use of a mishap report as evidence for evaluation boards. Therefore, documentation must be derived from other sources such as a Major Incident Investigation report, a board of investigation, Flight Examining Board minutes, notes to the file, evaluation reports, training records, etc.  The following general guidelines must be followed in preparing for the board.

(1) Discuss the deficiencies with the aviator involved.

(2) If the commanding officer is current in the model aircraft flown by the aviator

under question, then fly with the aviator and evaluate his or her performance.

(3) Several members of the Flight Examining Board should evaluate, in writing, the aviator's performance over a period of time.

(4) When an aviator's performance is considered substandard, the commanding officer should direct, in writing, that a program or a plan for additional training be established with definite objectives outlined.

(5) Evaluation report comments and marks should coincide with those of the aviator's training and/or syllabus records.  When an aviator, who is not an aircraft commander (AC), is having difficulties, comments reflecting the aviator's performance should be made in the training record after every flight.  When the performance of an AC is questioned, then:

(a) The commanding officer should counsel the aviator and write a memorandum to the file that the aviator has read and signed.

(b) If the commanding officer revokes the AC designation, training objectives for requalification should be established unless this action is not feasible.

**6.B.15.f.**     **Required Data**

The following material shall be forwarded to Commander (CG PSC) when an aviator is to be considered by a board.  Board members will be provided with a copy of the case file by Commander (CG PSC) in advance of board proceedings.

(1) The Commanding Officer shall forward the following info:

(a) A summary of the facts pertinent to the case, including documentation of the commanding officer's actions.

(b) Witness statements, if applicable.

(c) Notification in writing from the commanding officer to the officer that he or she is being recommended for an Aviator Evaluation Board with specific references to the reasons for the recommendation.

(d) Written acknowledgment from the aviator concerned, including a statement that he or she fully understands the purpose of the board.

(e) A statement from the commanding officer evaluating the individual's capabilities as a Coast Guard aviator.

(f) The aviator's flight logs, training records, and any pertinent correspondence, such as Aviation Training Center Mobile evaluation, minutes of Unit Standardization Board, etc.

(g) Summary of total flight hours, total hours for the previous three months, total hours by model for the previous three months, and the types of aircraft that the aviator is currently qualified to fly.

(h) An evaluation by a military flight surgeon, preferably Coast Guard.

(2) In the event of an AEB convened due to a Class A Mishap, the Major Incident Investigation (MII) convening authority will forward a copy of the MII report once signed by the MII president.

**6.B.15.g.   Board Action**

(1) <u>Proceedings</u>.  Board proceedings are to be kept informal to permit a free exchange of information and development of additional relevant facts.

(2) <u>Opening Comments/Statements</u>.  Sample opening comments and statements to witnesses by the senior member will be provided by Commander (CG PSC) for each board.

(3) <u>Questioning</u>.  It is essential that the board and the evaluee be given the opportunity to cross-examine witnesses.  It is also important that the board question the evaluee.  The evaluee and witnesses should appear in person during board proceedings.

(4) <u>Recommendations</u>.  The board shall carefully consider the data in the case file and make one or more of the following recommendations:

(a) Continuation in full flight status.

(b) Probationary flight status for a definite period.

(c) Additional training.

(d) Orders to duty not involving flying.

(e) In the case of a Reserve officer, retention on or release from active duty.

**6.B.15.h.   Board Report and Final Action**

Upon completion, the board will submit all pertinent documents together with its findings and recommendations, signed by all members, to Commander (CG PSC) for review.  When the board is not unanimous in its recommendations, a minority report by a dissenting member may be included.  Letter notification of final action as approved by Commander (CG PSC) will be forwarded to the evaluee via the chain of command.

COMDTINST M1000.3A

**6.B.15.i.**       **Restoration to Duty Involving Flying**

Requests for reinstatement must be addressed to Commander (CG PSC-OPM) via the chain of command and must be accompanied by a completed Report of Medical Examination, DD Form 2808.  Regardless of the reason for original removal from flight status, an aviator will not normally be considered for reinstatement if flight status was terminated more than 18 months prior to initiation of a request for reinstatement, or if the aviator's age, grade, specialty, and/or previous flight experience indicate that he or she cannot be expected to fill an operational flying billet satisfactorily.  A former Coast Guard aviator will not normally be reinstated in flight status when the removal from flight status was a result of any of the following:

(1)  Voluntary request.

(2)  Recommendation of an Aviator Evaluation Board.

(3)  Voluntary acceptance of a change in status or entry into a program which does not require flight status (e.g., Reserve Program Administrator).

**6.B.15.j.**       **Reassignment upon Termination of Flight Status**

Aviators whose flight status is terminated as a result of actions taken under Chapter 5 of this Manual will be reassigned to duty or released as required by the needs of the Service at that time.

**6.B.15.k.**       **Disciplinary Action**

Situations involving aviators where disciplinary action is indicated must be handled in accordance with instructions applicable to all Coast Guard officers.  Suspension from duty involving flying is not a disciplinary measure.  Further, since the action of an Aviator Evaluation Board is not of a disciplinary nature, its recommendations do not create a bar to disciplinary measures.

COMDTINST M1000.3A

PAGE INTENTIONALLY LEFT BLANK

# CHAPTER 7   RESERVE PROGRAM ADMINISTRATORS (RPA)

A. <u>Overview</u>. This Chapter states policies and standards for designating Coast Guard officers as Permanent and Provisional Reserve Program Administrators (RPAs) and removing such designations.

   1. Policies and standards for promoting RPAs are stated in Chapter 3 of this Manual.

   2. Policies and standards for RPAs boards for selection for promotion and designation are stated in Chapter 6 of this Manual.

   3. Policies and standards for removing RPA designation and subsequent separations are stated in Chapter 5 of Reference (c).

   4. Policy and standards in Article 3.B.10. of this Manual do not apply at any time to chief warrant officers (CWO) applying for designation as an RPA.

B. <u>Roles and Responsibilities</u>.

   1. Commandant (CG-1) must:

      a. detail officers as RPAs to effectively develop, train, instruct, and administer the Coast Guard Reserve (10 U.S.C. § 10211 and § 12501),

      b. be the approving authority to designate officers as provisional and permanent RPAs, and

      c. annually determine the number of officers to be designated as provisional RPAs.

   2. Commandant (CG-133) may grant waivers to policies and standards in this Chapter not explicitly delegated to Commander (CG PSC) .

   3. Commander (CG PSC) must:

      a. hold the provisional and permanent designation boards in accordance with Chapter 6 of this Manual, and

      b. promulgate additional procedural guidance as necessary.

C. <u>Number and Distribution in Grade</u>.

   1. <u>Overall RPA limits</u>. The total number of permanent RPAs must be maintained at 1.3 times the number of RPA coded billets, rounding to the nearest integer. The authorized reserve funded general detail billets of lieutenant (junior grade) and above must be included in computing the total number of authorized RPAs.

   2. <u>Distribution</u>. Because of their small numbers and uneven distribution by year groups, Reserve Program Administrators' (RPAs) grade distribution will not be regulated to conform to the grade distribution percentages used on the ADPL.

3. <u>RPAs Authorized in Grade of Captain</u>. The maximum number of RPA captains must be maintained at 1.5 times the number of RPA captain billets, rounding to the nearest integer. A continuation board must be convened under Chapter 6 of this Manual to cause attrition and provide needed vacancies to meet the strength limitations of RPA captains under this Article.

4. <u>Exception to RPAs Authorized in Grade of Captain</u>. Without further action, the number of RPA captains authorized will be increased temporarily to the extent necessary to permit:

   a. Retaining those RPA captains not recommended for continuation but not yet eligible for a regular retirement under **10 U.S.C. § 8323**.

   b. Promoting all RPAs on the selection list to captain on the dates their running mates are promoted. (14 U.S.C. § 726)

   c. The temporary increase provided above is authorized only for as long as is necessary to reduce through normal attrition the number of RPA captains to that otherwise prescribed.

D. <u>Designation as Provisional RPAs</u>.

1. <u>Eligibility for consideration</u>. The following Coast Guard officers are eligible at the beginning of the promotion year (1JUL) in which they are competing for designation:

   a. **Any Reserve or Regular commissioned ensign with at least 12 months time in grade.**

   b. **Any Reserve or Regular commissioned lieutenant (junior Grade).**

   c. **Any Reserve or Regular commissioned lieutenant with four or fewer years in grade.**

   d. Any Regular or Reserve F&S or PERS specialty warrant officer serving in the grade of W-4, W-3, or who is a W-2 and who will be considered by the W-3 selection board in the same promotion year. **Warrant officers must have 26 or fewer years time in service.**

2. **<u>Waivers</u>. Officers who desire a waiver to the eligibility requirements may apply to Commander (CG PSC) through their chain of command. Requests may not be approved unless the applicant meets critical Service needs. Waivers for the ensign time in grade requirement or the W-3 selection board requirement will not be considered.**

3. **<u>Requirements for consideration</u>. Applicants must follow procedures promulgated by Commander (CG PSC).**

4. **Duration of designation offer.** At their discretion, the Commandant may withdraw the offer of RPA desination if the selectee has not accepted provisional RPA status within 60 days from the notification date.

5. **Impact of designation.**

a. Regular officers in the grade of ensign and above and warrant officers must resign their Coast Guard commission and accept a commission in the Coast Guard Reserve. They are exempt from the Regular to Reserve Board in accordance with Article 1.G. of this Manual, but must follow date of rank and precedence standards in Article 1.G.4.a. of this Manual.

b. All warrant officers designated as a provisional RPA will be offered appointments as temporary reserve lieutenants with a date of rank as the first day of EAD.

(1) Temporary reserve lieutenant precedence will be determined by date of rank. Precedence will be determined by warrant specialty hierarchy listed in Article 2.A.2.b. of this Manual for officers with the same date of rank.

(2) Permanent grade precedence will remain the same as listed in Article 2.A.2.a. of this Manual except that they are not considered by an ADPL board.

c. Temporary reserve lieutenants who receive their commission through the warrant to RPA designation program have the option to integrate to permanent reserve officer status upon selection by a best-qualified RPA promotion board in their temporary status. Officers that elect to integrate are subject to the service limitations in Article 1.A.8.a.(1)(a) and 1.A.8.a.(1)(b) of this Manual.

(1) Officers electing integration are subject to the requirements in Article 1.A.8.b. of this Manual.

(2) Correspondence requesting appointment authority of all officers eleigible for integration as permanent reserve officers will be initiated by Commander (CG PSC).

d. Upon the effective date of designation, officers must be added to the RPA promotion list and immediately begin serving as provisional RPAs on extended active duty (EAD). Officers already on EAD must cancel their existing EAD contract and sign a new EAD contract. The two EAD contracts may be signed without a break in active duty.

6. **Effective date of designation.** The effective date of designation must be the first day of EAD.

7. **Duration of designation. The officer must not be a provisional RPA for more than three consecutive years.**

E. Designation as Permanent RPAs.

1. Opportunity for designation. The permanent RPA designation board must select officers on a fully qualified basis.

2. Eligibility for consideration. The officer must be a provisional RPA between their 2nd and 3rd anniversary of designation as a provisional RPA.

3. Effective date of designation. The effective date of designation must be the third anniversary of designation as a provisional RPA.

F. Transfer to the ADPL and receiving a Regular commission. At their request and based on Service needs, a permanent RPA serving as a lieutenant or higher may request to have their RPA designation removed and be transferred to the ADPL.

1. The RPA must submit this request to, and in accordance with procedures promulgated by, Commander (CG PSC).

2. Commander (CG PSC) must be the approving authority for this request. This authority may be delegated.

3. RPAs who transfer to the ADPL must execute an active duty agreement for up to five years to enable them to be considered for selection to the next higher grade.

4. If an ADPL board selects a former RPA for commander or captain, that officer must integrate. Those selected to lieutenant commander must meet all requirements of Article 1.A.8. of this Manual to be eligible for integration.

G. Reversion to CWO grade.

1. No permanent RPA designated under Article 7.D.1.d. of this Manual will revert back to a CWO grade.

2. A provisional RPA designated under Article 7.D.1.d. of this Manual may request to give up their RPA designation and regain their previous commission, specialty, grade, and time in grade served immediately prior to being designated as a provisional RPA. Such requests will be considered based on needs of the Coast Guard.

3. Upon reversion to CWO, time as an RPA must be **credited** towards the 30 years total active service. (10 U.S.C. 1305)

```
R 131822Z DEC 22 MID200080590740U
FM COMCOGARD PSC WASHINGTON DC
TO ALCGPSC
BT
UNCLAS
ALCGPSC 159/22
SUBJ: PY23 ADPL LIEUTENANT SELECTION BOARD RESULTS
A. Officer Accessions, Evaluations, and Promotions, COMDTINST M1000.3(series)
1. The Secretary, acting for the President, has approved the report of the
selection board convened on 12 September 2022 which recommended the following
officers on the active duty promotion list (ADPL) for promotion to the grade of
lieutenant. Officers selected are listed below in ADPL precedence order:
NO  RANK NAME                        UNIT (AS OF BOARD CONCLUSION)
1   LTJG SIEGRIST, RACHEL A.         D11 INTELLIGENCE BR (DRI)
2   LTJG LAMUN, TRENT J.             OL-HSWL SC FIELD OPS-NOLA
3   LTJG DEVALK, KAITLYN S.          UNIV OF MARYLAND
4   LTJG HOLBERTON, AYLEEN N.        CGC TYBEE
5   LTJG TWAROG, EVAN J.             MIFC PAC INTEL PLNS & PLCY DI
6   LTJG WADDELL, HANNAH S.          OL-SFLC-ALAMEDA CA
7   LTJG KENIS, SAMANTHA N.          CEU MIA CONSTRUCTION SEC A
8   LTJG JEZUIT, JUSTIN W.           CGC STINGRAY
9   LTJG LOEWENSTEIN, JOHN H.        CGC PIKE
10  LTJG JARRETT III, JOHN S.        SEC MARYLAND-NCR CMD CENTER
11  LTJG DORIS, CARRIE A.            OL-SFLC-MIAMI FL
12  LTJG GRIFFIN JR, ROBERT L.       COMMANDANT (CG-7613)
13  LTJG O'DONNELL, JESSICA E.       SEC NOLA INVESTIGATE DIV
14  LTJG BAIN, CODY A.               OL-CGCC-35 COB-ALX
15  LTJG COLLINS, ASHLEY D.          MARINE SAFETY CENTER
16  LTJG FOSTER, BRETT A.            CONSTRUCTION SEC
17  LTJG HOULE, DANIEL F.            SEC SAN DIEGO ENFORCEMENT DIV
18  LTJG TALENS, PATRICIANOEMI C.    PLANNING & REAL PROPERTY SEC
19  LTJG CHANG, OLIVIA M.            DOL-43
20  LTJG CHUNG, BRANDI H.            BASE ALAM MWA DIV (NM)
21  LTJG GROFF, ALEC J.              NAVCEN MAR TFC/TRACK ANALY DI
22  LTJG RILEY, MATTHEW T.           AIRFAC NEWPORT
23  LTJG BALAZS, MIHALY              CGCIS OPS & INVESTIGATIONS DI
24  LTJG BRAZILE, CORNELIEUS L.      COMMANDANT (CG-9323)
25  LTJG OLSON, LIESL C.             PACAREA (PAC-544)
26  LTJG BURSELL, STEVEN E.          MSU HOUMA
27  LTJG REYNOLDS, CASEY M.          MSU PORT ARTHUR
28  LTJG WILLIAMS, TYLER S.          SFLC SB ASSET MANAGEMENT SEC
29  LTJG SESSA, PAUL M.              SEC LA/LB INTEL STAFF
30  LTJG POST, JESSE P.              SEC JCKSNVILLE ENFORCEMENT DI
31  LTJG DEAN, BRANDON R.            SEC NEW YORK INSPECTIONS DIV
32  LTJG O'NEAL, MORIAH T.           OL-SFLC LRE AMS-ALAMEDA
33  LTJG COZBY, JAMES A.             OL-FC-NAV AIR STA PENSACOLA
34  LTJG FIELDS, CHRISTIAN K.        CGC BARANOF
35  LTJG BATCHELDER, JEFFREY P.      AIRFAC CHARLESTON
36  LTJG CATO, MARIAH D.             OL-CGCC-36 TMB-ALX
37  LTJG GONZALEZ, JACOBO            C5ISC AFLOAT PLATFORM SEC
```

```
38  LTJG  GRAFF, BENJAMIN M.        LOYOLA UNIVERSITY (ONLINE)
39  LTJG  OGG, DEVIN J.             BASE HONO ESD OPS DIV (EO)
40  LTJG  YATES, JACOB W.           BASE NOLA ESD OPS DIV (EO)
41  LTJG  MCDONALD, ALLEN J.        ASSET LINE MGMT SECTION
42  LTJG  GRIBBLE, MATTHEW B.       D7 INTELLIGENCE BRANCH (DRI)
43  LTJG  BAGNAL, HOLDEN B.         LDC OFF ACC & TRANSITIONS DEP
44  LTJG  CRISCI, DANIEL A.         TACLET PACAREA LEDET 107
45  LTJG  ESPINOZA, PHILLIP T.      BASIC FLIGHT
46  LTJG  COOPER, TODD J.           ACTIVITIES FAR EAST
47  LTJG  WHITE, CHRISTOPHER J.     TRACEN YKTWN INTL MOBILE TRNG
48  LTJG  PURCELL, PETER J.         CG NORTH PACIFIC RFTC
49  LTJG  LEVESQUE, SARAH N.        CG STA WASHINGTON
50  LTJG  YELVINGTON, JASON R.      SEC NOLA INSPECTIONS DIV
51  LTJG  OINGERANG, EDWARD M.      CGFM/SEC GUAM INCIDENT MGMT
52  LTJG  SEXTON, RYAN A.           SEC PUGET SND CMD CENTER
53  LTJG  DEER, KATHLEEN E.         BASIC FLIGHT
54  LTJG  RAYMOND, JASON C.         TRACEN YKTWN INCID RESP SCH
55  LTJG  MAGNUS, BENJAMIN K.       AIRSTA BORINQUEN
56  LTJG  DIRADO, ROBERT J.         CG SOUTHEAST RFTC
57  LTJG  PERKINS, CHRISTOPHER A.   TRACEN YKTWN RESP TRNG BR
58  LTJG  OLP, MATTHEW C.           SEC HOU/GAL INVESTIGATE DIV
59  LTJG  CROW, JOHN R.             SEC VIRGINIA INVESTIGATE DIV
60  LTJG  FERRELL, DYLAN F.         SEC NORTH BEND AV OPS DIV
61  LTJG  TRUMPER, WILLIAM R.       CG MFPU BANGOR
62  LTJG  LASTER, BRYCE A.          CG STA MONTEREY
63  LTJG  PETERSON, TYLER D.        D14 ENFORCEMENT BR (DRE)
64  LTJG  FEELY, TYLER P.           AIRSTA BORINQUEN
65  LTJG  MAX, VERA M.              SEC MOBILE INSPECTIONS DIV
66  LTJG  REICHELT, COLLIN R.       TACLET PACAREA LEDET 101
67  LTJG  SATTELBERG, DEVIN L.      SEC HMBLDT BAY AV OPS DIV
68  LTJG  BURNS, TIMOTHY J.         CGC COHO
69  LTJG  IMAGANE, JULIE N.         SEC SAN FRAN INSPECTIONS DIV
70  LTJG  KEENAN, THEODORE M.       AIRSTA TRAVERSE CITY
71  LTJG  NEWCOMER, JOHN A.         UNIV OF CALIFORNIA SAN DIEGO
72  LTJG  AVELLA, PAUL A.           MSRT EAST DIRECT ACTION SEC
73  LTJG  LAMACCHIO, ELIJAH M.      SEC SE NEW ENG WTRWAYS MGT DI
74  LTJG  QUINTIN, JULIAN R.        ICC COUNTER NETWORK ACT DIV
75  LTJG  MASSEY, DANIEL J.         SEC MARYLAND-NCR INVEST DIV
76  LTJG  THOMPSON, MARCUS J.       MSD PORT CANAVERAL
77  LTJG  MILLER, JULIANA M.        AIRSTA MIAMI
78  LTJG  BLOCK, DYLAN H.           AIRSTA CAPE COD
79  LTJG  TRUNCALE, JOHN R.         CG STA FORT LAUDERDALE
80  LTJG  GUNN, BRENDAN W.          AIRSTA SACRAMENTO
81  LTJG  VALLET, TREVOR J.         D14 EXT AFFAIRS STAFF (DE)
82  LTJG  KAROUSOS, MICHAEL A.      SEC HOU/GAL ENFORCEMENT DIV
83  LTJG  MCPHILLIPS IV, TERENCE W. BASIC FLIGHT
84  LTJG  GOETZ, KYLE A.            SEC ST PETE INSPECTIONS DIV
85  LTJG  BARBER, EVAN R.           SEC PUGET SND INCIDENT MGT DI
86  LTJG  JARVIS III, JESSE B.      AIRSTA HOUSTON
87  LTJG  DURFEE, STEVEN P.         BASIC FLIGHT
```

```
88  LTJG  LEMKE, TRAVIS J.           BASIC FLIGHT
89  LTJG  PROVEAUX, ERICK C.         SEC ST PETE INSPECTIONS DIV
90  LTJG  LAYMAN, TREVOR A.          SEC JUNEAU CMD CENTER
91  LTJG  CASTILLO, DAVID            SEC MIAMI INVESTIGATE DIV
92  LTJG  SEEVERS, CODY W.           CG NORTHEAST RFTC
93  LTJG  BROWN, TRENTON D.          PST CHEMICAL DIV
94  LTJG  GREENFIELD, MARIA R.       SEC NEW YORK WTRWAYS MGT DIV
95  LTJG  EVRETT, JACOB G.           SEC ANCHORAGE CMD CENTER
96  LTJG  BUTTERS, CHRISTOPHER J.    SEC PUGET SND INCIDENT MGT DI
97  LTJG  GANDARA, MICHAEL J.        OPC PRO PANAMA CITY
98  LTJG  VARRICHIONE, MICHAEL S.    SEC CHARLESTON INSPECTIONS DI
99  LTJG  MCCARTY, JULIA C.          SEC MOBILE INVESTIGATE DIV
100 LTJG  PINTO, ANTHONY M.          MSU MORGAN CITY
101 LTJG  OATWAY, STEPHANIE P.       SEC VIRGINIA ENFORCEMENT DIV
102 LTJG  SHERRY, STACIE L.          MSST CAPE COD OPS SPRT DEPT
103 LTJG  WELCH, CHRISTIAN J.        BASIC FLIGHT
104 LTJG  RUSSELL, WILLIAM W.        SEC PUGET SND INSPECTIONS DIV
105 LTJG  KIM, SHERA S.              SEC SAN DIEGO WTRWAYS MGT DIV
106 LTJG  DE LA RIVA, KENDRA M.      MIFC PAC LIVING MAR RESRC SEC
107 LTJG  GILBERT III, GEORGE R.     SEC HOU/GAL INSPECTIONS DIV
108 LTJG  COOK, NICHOLE K.           SEC NEW YORK INSPECTIONS DIV
109 LTJG  WILLIAMS, ANTHONY L.       LANTAREA (LANT-33)
110 LTJG  LUDLAM, DANIEL W.          SEC SE NEW ENG INTEL STAFF
111 LTJG  SMARZO, JOSHUA E.          SEC LIS INCIDENT MGT DIV
112 LTJG  MULLEN, RIKKILYNN R.       SEC LOWER MISS INCIDENT MGT D
113 LTJG  BAIR, RACHEL P.            SEC CHARLESTON CMD CENTER
114 LTJG  KNIEP, CHRISTIAN H.        BASE KOD HEALTH SVC DIV (HH)
115 LTJG  ATKINSON, COLTON E.        AIRSTA CAPE COD
116 LTJG  LOWE, SAMUEL W.            BASIC FLIGHT
117 LTJG  DANIELS, WALTER P.         BASIC FLIGHT
118 LTJG  HARKRADER, BROOKE M.       CGC MARGARET NORVELL
119 LTJG  BORDEN, KALI K.            CGC EMLEN TUNNELL
120 LTJG  ROSENBERG, MICHAEL L.      MSST SEATTLE OPS DEPT
121 LTJG  BENTON JR, JOHN L.         2003 CYBER PROTECTION TEAM
122 LTJG  HOPPER, IAN M.             AIRSTA CORPUS CHRISTI
123 LTJG  PHILSON, CHEYENNE M.       CG CRYPTOLOGIC UNIT TEXAS
124 LTJG  ZHOU, WILSON               SEC SAN FRAN INVESTIGATE DIV
125 LTJG  CREAMER, TITUS P.          AIRSTA BARBERS PT
126 LTJG  LEE, GYUMIN                VIRGINIA TECH (ONLINE)
127 LTJG  REYBURN, MARSHALL J.       BASIC FLIGHT
128 LTJG  SCHROEDER, VICTORIA J.     SEC MIAMI INSPECTIONS DIV
129 LTJG  TAMINGER, BENJAMIN K.      BASIC FLIGHT
130 LTJG  AMBROSE, SKYE N.           MIFC PAC POLAR & MAR GOV SEC
131 LTJG  BRACHMANN, MICHAEL L.      AIRSTA ELIZABETH CITY
132 LTJG  MURBY, MATTHEW R.          AIRSTA NORTH BEND
133 LTJG  ZHANG, JIAN                CEU MIA CONSTRUCTION SEC A
134 LTJG  GROCE, ZACHARY W.          BASIC FLIGHT
135 LTJG  REMKE, NICHOLAS A.         NORTHWESTERN UNIVERSITY
136 LTJG  JOHNSON, COLIN A.          TRANS FLIGHT-CNATT
137 LTJG  NADEAU, CHRISTOPHER N.     CGC JOSEPH DOYLE
```

```
138 LTJG  SNEED, KAITLYN E.           AIRSTA ATLANTIC CITY
139 LTJG  GEURTSEN, BENNER A.         MAT KINGS BAY
140 LTJG  HARRIS, ANDREA M.           OL-SFLC-CHARLESTON
141 LTJG  FENSTER, COLIN D.           CGCC-33 NET OPS & SECURITY CT
142 LTJG  GILLESPIE, DANIEL K.        NAVAL POSTGRADUATE SCHOOL
143 LTJG  CHAN, WARREN K.             BASIC FLIGHT
144 LTJG  JENKINS, CAROLINE M.        BOSTON COLLEGE
145 LTJG  NIEDBALA, ANDREW P.         CGC DONALD HORSLEY
146 LTJG  KIM, BRIAN S.              AIRSTA ELIZABETH CITY
147 LTJG  HEISER, MEGAN M.            SEC NOLA INVESTIGATE DIV
148 LTJG  LOGAN, IAN S.              AIRSTA MIAMI
149 LTJG  ATKINSON, ANITA J.          BASIC FLIGHT
150 LTJG  REYNOLDS, HAILYE M.         SEC KEY WEST WTRWAYS MGT DIV
151 LTJG  BROOMFIELD, ALEXANDER P.    OL-SFLC LRE APM2-ALAMEDA
152 LTJG  HOGAN, EMILY E.             CGC RICHARD ETHERIDGE
153 LTJG  BECK, JUSTIN M.             CGC SAWFISH
154 LTJG  SIMCO, SHARAYAH N.          CGC JOHN SCHEUERMAN
155 LTJG  PALERMO-RE, PATRICK M.      BASIC FLIGHT
156 LTJG  GIRALDO TORRES, VALENTINA   CG ACADEMY
157 LTJG  NAGLE, MATTHEW J.           CGC TERN
158 LTJG  KUONG, PHILIP A.            MSRT EAST PREC MARKSMAN DIV
159 LTJG  PSOINAS, LUKAS J.           CGC KIMBALL
160 LTJG  ZELLER, MICHAEL P.          SEC LAKE MICH INCIDENT MGT DI
161 LTJG  JABS, NICHOLAS D.           CGC STRATTON
162 LTJG  BISHOP, MICHAEL J.          MASSACHUSETTS INST OF TECH
163 LTJG  GRANT, MARSHALL C.          COMMANDANT (CG-OEM-2)
164 LTJG  STEPHENS, WILLIAM H.        UNIV OF OREGON
165 LTJG  MCCULLA, CHRISTINE C.       CGC CHARLES SEXTON
166 LTJG  CARR, MARY E.              CGC DIAMONDBACK
167 LTJG  DUNAWAY, HUDSON P.          SEC LAKE MICH INTEL STAFF
168 LTJG  GRIFFITT, LANDRY L.         SEC NORTH BEND AV OPS DIV
169 LTJG  BRUMM, RYAN C.              CGC CLARENCE SUTPHIN
170 LTJG  BRUNO JR, STEPHEN J.        OL-SFLC-ALAMEDA CA
171 LTJG  FRIEDMAN, JILL M.           1790 CYBER PROTECTION TEAM
172 LTJG  CASTIGLIONE, MICHAEL A.     MSRT WEST CBRNE DIV
173 LTJG  HARRIS, WALTER A.           SEC HOU/GAL INSPECTIONS DIV
174 LTJG  NIEDERMEYER, ANNA F.        BASIC FLIGHT
175 LTJG  PERKINS, JACOB E.           UNIV OF WASHINGTON
176 LTJG  FRANZA, KELLI A.            UNIV OF CALIFORNIA DAVIS
177 LTJG  SCHROEDER, BRYCE C.         TACLET SOUTH LEDET 407
178 LTJG  THOMPSON, LUKE A.           CGC JAMES
179 LTJG  FRYSTAK, NICHOLAS E.        OPC PRO PANAMA CITY
180 LTJG  FRENCH, WILLIAM J.          AIRSTA MIAMI
181 LTJG  JACKSON, ROBERT E.          UNIV OF MICHIGAN
182 LTJG  DURHAM-YOUNG, KRISTEN A.    UNIV OF CALIFORNIA BERK
183 LTJG  BRANDT III, JOHN J.         CGC CLARENCE SUTPHIN
184 LTJG  LEHENBAUER, ANNIKA E.       CGC BAILEY BARCO
185 LTJG  CASSIDY, RILEY E.           SEC ANCHORAGE INCIDENT MGT DI
186 LTJG  HUGHLEY, KYLA M.            AIRSTA DETROIT
187 LTJG  JACOBSON, CHARLES G.        OL-SFLC IBCT APM2-ALAMEDA
```

```
188 LTJG  KLOPFENSTEIN, LANDON W.     BASIC FLIGHT
189 LTJG  SHIBAZAKI, SASHA R.         TEXAS A&M UNIVERSITY
190 LTJG  HARTER, LEAH M.            CGC FORREST REDNOUR
191 LTJG  BOYCE, HANNAH M.           AIRSTA MIAMI
192 LTJG  BALLANTYNE, LIAM P.        AIRSTA PORT ANGELES
193 LTJG  HOLT, OLIVIA R.            BASIC FLIGHT
194 LTJG  MCGOLDRICK, ANNE R.        SEC BOSTON INCIDENT MGT DIV
195 LTJG  WITTROCK, NICHOLAS J.      ATC MOBILE AVIATION OPS DEPT
196 LTJG  HOLFINGER, ALLYSON D.      BASIC FLIGHT
197 LTJG  BOARDMAN, WILLIAM C.       BASIC FLIGHT
198 LTJG  KLINE, LYDIA M.            MIFC PAC TARGETING & WATCH BR
199 LTJG  DILLEY, JACQUELYN S.       MIFC PAC TARGETING & WATCH BR
200 LTJG  BAKER, ZACHARY I.          OPBAT SUPPORT
201 LTJG  CASHIN, COLIN P.           OL-SFLC-BOSTON MA
202 LTJG  WIDMEIER, MADELYNN E.      PACAREA (PAC-33)
203 LTJG  KEARNEY, ALEXANDER L.      CGC BENJAMIN BOTTOMS
204 LTJG  HEPLER, MICHAELA M.        CGC MORAY
205 LTJG  GOLDCAMP, ETHAN M.         CGC NATHAN BRUCKENTHAL
206 LTJG  MAGILL, GARRETT S.         OL-SFLC-BOSTON MA
207 LTJG  HOEHLE, CONNOR T.          AIRSTA MIAMI
208 LTJG  EDMONDS, REBECCA P.        CGC JOHN MCCORMICK
209 LTJG  HARPER, NOAH D.            UNIV OF COLORADO
210 LTJG  CROWLEY, CHARLES P.        D1 ENFORCEMENT BR (DRE)
211 LTJG  OH, HELEN S.               SEC SAN FRAN WTRWAYS MGT DIV
212 LTJG  BEHNE, JACOB P.            CGC MIDGETT
213 LTJG  GOSCH, CHRISTIAN H.        CGC STRATTON
214 LTJG  RAYMOND, ALBERTO S.        BASIC FLIGHT
215 LTJG  RODRIGUEZ, DAVID          CGCC-3 OPERATIONS DEPT
216 LTJG  JOHNSON III, SIGVARD B.   BASIC FLIGHT
217 LTJG  MARANT, ROBERT A.         CGC PABLO VALENT
218 LTJG  BOINAY, NICHOLAS A.       MSU PORT ARTHUR
219 LTJG  YUAN, MOLLY Y.            OL-SFLC-SAN PEDRO
220 LTJG  MARZINSKY, CELIA F.       TRACEN YKTWN DESIGN/CONSTR BR
221 LTJG  FORD III, RANDALL L.      CGC DANIEL TARR
222 LTJG  BAEK, JESSICA Y.          BASIC FLIGHT
223 LTJG  MARRIOTT, MICHAEL D.      CGC KUKUI
224 LTJG  MARTINELLI, MICAELA M.    BASIC FLIGHT
225 LTJG  HELWIG, HUSTON A.         OL-SFLC PB APM2-NORFOLK VA
226 LTJG  KELLER, JORDAN T.         D9 COMMAND CENTER (DRMC)
227 LTJG  HOWE, RYLEY P.            BASIC FLIGHT
228 LTJG  HAWLEY, ALEXANDER N.      BASIC FLIGHT
229 LTJG  FRICK, MICHAEL A.         BASIC FLIGHT
230 LTJG  LENNON, NINA J.           SEC MOBILE CP/RDNS STF
231 LTJG  WOOLFOLK, NICHOLAS T.     BASIC FLIGHT
232 LTJG  WYLER, ANTHONY S.         SEC NOLA INSPECTIONS DIV
233 LTJG  ISHIDA, KAYLA L.          PACAREA (PAC-3MF)
234 LTJG  ELLIS, PATRICK T.         TACLET SOUTH LEDET 402
235 LTJG  SODEMANN, CHASSE H.       MSRT WEST DIRECT ACTION SEC
236 LTJG  HALL, ALEXANDER D.        BASIC FLIGHT
237 LTJG  CARTER, ZANE N.           CGC JACOB POROO
```

```
238 LTJG  EVERETT, MACKENZIE L.       AIRSTA HOUSTON
239 LTJG  JAICTIN, CHRISTIAN L.       OL-SFLC LRE APM2-ALAMEDA
240 LTJG  BENSON, CADE D.             AIRSTA ATLANTIC CITY
241 LTJG  LLEWELLYN, LEAH L.          BASIC FLIGHT
242 LTJG  JOHNSON, SYDNEY S.          OL-SFLC LRE SES1-ALAMEDA
243 LTJG  MCCLUSKY, KENDALL F.        BASIC FLIGHT
244 LTJG  HINDLE, MALIA R.            SEC DEL BAY CMD CENTER
245 LTJG  DEMAIO, DAVID B.            CGC SHRIKE
246 LTJG  BOINAY, CARTER E.           MSU PORT ARTHUR
247 LTJG  BURNHAM, GREGORY G.         CGC HADDOCK
248 LTJG  ROWE, TAYLOR M.             CGC ARGUS
249 LTJG  JUNG, TAEHYUN               CGC HAROLD MILLER
250 LTJG  LARSON, MICAH J.            OL-SFLC PB APM3-NORFOLK VA
251 LTJG  MORIN, ANNA G.              CGC ROLLIN FRITCH
252 LTJG  ROSE, DAVID M.              CGC WAESCHE
253 LTJG  MOOLENAAR, JOHANNA L.       SEC NEW YORK ENG/SUPPORT DIV
254 LTJG  CARDINAL, JONATHAN H.       BASE KOD ENG & MGMT DIV (FM)
255 LTJG  ELLIS, JAMES C.             CGC RAYMOND EVANS
256 LTJG  SALMON, SCOTT R.            BASIC FLIGHT
257 LTJG  PARSONS, QUINTIN H.         TACLET PACAREA LEDET 106
258 LTJG  HUDSON, COLE T.             OL-SFLC-KEY WEST FL
259 LTJG  AUSTIN, COLE T.             MSRT EAST DIRECT ACTION SEC
260 LTJG  NELTHROPP JR, GARY C.       CONSTRUCTION SEC
261 LTJG  BRIZZI, MELISSA A.          SEC HOU/GAL CMD CENTER
262 LTJG  JONES, MATTHEW N.           MSU TEXAS CITY
263 LTJG  JONES, THOMAS M.            REGIONAL EXECUTION BRANCH
264 LTJG  FITZPATRICK, JAMES T.       BASIC FLIGHT
265 LTJG  ATHANASATOS, STEPHANIE R.   SEC MIAMI INCIDENT MGT DIV
266 LTJG  MCCASLIN, MICHAEL R.        BASIC FLIGHT
267 LTJG  JENKINSON, JARRED W.        CGC STONE
268 LTJG  ANDREWS, CASSIDY F.         LDC OFF ACC & TRANSITIONS DEP
269 LTJG  TURNER, JOSHUA Q.           SEC COL RIVER INSP DIV
270 LTJG  VACCARO, ANNA M.            CGC WALNUT
271 LTJG  GAUSE, MAYA S.              SEC NEW YORK CP/RDNS STF
272 LTJG  REEDER, DUSTIN L.           CGC RICHARD SNYDER
273 LTJG  ORTIZ, ANGELA L.            BASIC FLIGHT
274 LTJG  STEPHANY, BRENDAN J.        NAVCEN MAR SAFETY INFO DIV
275 LTJG  PORTER, JEFFREY E.          CGC SYCAMORE
276 LTJG  BENSON, NOLAN G.            CGCIS RESOURCES & ADMIN BR
277 LTJG  BLEIFUSS, THOMAS C.         CGC SITKINAK
278 LTJG  O'DONNELL, DUGAN M.         CGC MAPLE
279 LTJG  NELSON, WILLIAM C.          CGC JAMES
280 LTJG  SHORT, HAYDEN M.            BASIC FLIGHT
281 LTJG  CERRATO III, RAYMOND J.     CGC STONE
282 LTJG  CARTER, RACHEL H.           BASIC FLIGHT
283 LTJG  DUPREE, JACOB C.            CGC ROBERT YERED
284 LTJG  JOYNER, JAYLA D.            CGC JOHN SCHEUERMAN
285 LTJG  HOVEY, KAREN A.             SEC PUGET SND INCIDENT MGT DI
286 LTJG  JENKINS JR, PERRY R.        CGC WAESCHE
287 LTJG  GOCHNOUR, GRETCHEN A.       D8 COMMAND CENTER (DRMC)
```

243

```
288 LTJG  WIEGLEB, REID E.            CGC LIBERTY
289 LTJG  GILLILAND, CLAIRE A.        SFLC SB PRGM DEPOT MAINT SEC
290 LTJG  FINN, DANIEL P.             CGC HERIBERTO HERNANDEZ
291 LTJG  WILSON, LUKE M.             CGC WILLIAM TRUMP
292 LTJG  WILHELM, ADAM M.            CGC MUSTANG
293 LTJG  HACKETT, THOMAS A.          BASIC FLIGHT
294 LTJG  RE, ALICEN T.               CGC DOUGLAS DENMAN
295 LTJG  CHAPMAN V, RYLAND O.        PRO GULF COAST
296 LTJG  BYNUM, KRISTINA A.          SEC SAN JUAN INCIDENT MGT DIV
297 LTJG  CONNELLY, ANDREW S.         AIRSTA CORPUS CHRISTI
298 LTJG  KANG, ANDREW K.             D11 ENFORCEMENT BR (DRE)
299 LTJG  GUMBLETON, JOSHUA W.        CGC BERTHOLF
300 LTJG  CARMINE, MATTHEW W.         CGC GLEN HARRIS
301 LTJG  POPE, JOHN M.               MIFC PAC POLAR & MAR GOV SEC
302 LTJG  DAVIS, CHANDON J.           CGC PENOBSCOT BAY
303 LTJG  YAKE, JONATHAN B.           MAT BANGOR
304 LTJG  MORENO, DANIEL S.           C5ISC SHORE PLATFORM SEC
305 LTJG  BOLDRIN, EVAN M.            BASIC FLIGHT
306 LTJG  BRIGHAM, ZACHARY R.         COMMANDANT (CG-438)
307 LTJG  JACKSON, PATRICK D.         CG MFPU KINGS BAY
308 LTJG  MIRANDA, STEPHANIE L.       D7 WATERWAYS MGMT BR (DPW)
309 LTJG  RITTENHOUSE III, HOWARD A.  COMMANDANT (CG-933)
310 LTJG  HARVEY, NATHANIEL A.        USS DONALD COOK (DDG 75)
311 LTJG  LAMBERT, JOSHUA L.          BASIC FLIGHT
312 LTJG  HARRINGTON, ALEXANDRIA L.   SEC MIAMI LOGISTICS DEPT
313 LTJG  CHAU, ADRIAN A.             D13 COMMAND CENTER (DRMC)
314 LTJG  SANSONE, RILEY S.           CGC WAESCHE
315 LTJG  GUMBLETON, JOHN P.          OL-SFLC-SEATTLE WA
316 LTJG  DELP, BRYAN G.              SEC DEL BAY ENFORCEMENT DIV
317 LTJG  KLAGES, GRIFFIN M.          SEC NOLA INSPECTIONS DIV
318 LTJG  MCCRARY, MAXIMILIAN V.      D13 COMMAND CENTER (DRMC)
319 LTJG  GUILLEN-BLANFORD, JAMES A.  D11 COMMAND CENTER (DRMC)
320 LTJG  PERKINS, NICHOLAS S.        CGC MIDGETT
321 LTJG  FROSLEE, JULIE M.           OPBAT SUPPORT
322 LTJG  MONTION, LUKAS C.           AIRSTA ASTORIA
323 LTJG  BREARD, THOMAS M.           AIRFAC CHARLESTON
324 LTJG  DUARTE, ALEX                SEC SAN JUAN INSPECTIONS DIV
325 LTJG  HELMKE, CAROLINA C.         SEC HONOLULU INVESTIGATE DIV
326 LTJG  CUNNINGHAM, KYLE R.         MSST HONO OPS SPRT DEPT
327 LTJG  KELLY, JOHN P.              CGC LAWRENCE LAWSON
328 LTJG  LEFLER, KATHERINE B.        SEC ANCHORAGE INSPECTIONS DIV
329 LTJG  KELLEY, WILLIAM H.          SEC BUFFALO WTRWAYS MGT DIV
330 LTJG  DZURIK, MARTIN P.           SEC LA/LB INSPECTIONS DIV
331 LTJG  FOGARTY, AODHAN P.          ATC MOBILE AVIATION OPS DEPT
332 LTJG  ANDERSON, PETER E.          SEC NOLA INSPECTIONS DIV
333 LTJG  JABLONSKI, NIKITA A.        MSRT EAST WHETSTONE DIV
334 LTJG  WALKER, ELLEN C.            SEC JCKSNVILLE CMD CENTER
335 LTJG  KESICH, MARK F.             MSU HOUMA
336 LTJG  FITZSIMMONS, PATRICK M.     OL-FC-NAV AIR STA PENSACOLA
337 LTJG  MARCANO DIAZ, ORLANDO J.    C5ISC MOBILE & CELLULAR BR
```

```
338 LTJG  LOFTON JR, CHARLES T.        C5ISC MOBILE DATA & VOICE-ALE
339 LTJG  HANSEN, JENNIFER P.          UNIV OF MICHIGAN
340 LTJG  FOLK, BENJAMIN D.            UNIV OF CALIFORNIA BERK
341 LTJG  BANKS, CURTIS T.             OL-LANT JTF E-PORTSMOUTH
342 LTJG  MCCLENDON, ZADA S.           SEC MARYLAND-NCR CP/RDNS STF
343 LTJG  FERGUSON, RUSSELL C.         COMMANDANT (CG-MSR-1)
344 LTJG  ANDERSON, GEOFFREY O.        CGC JACOB POROO ALT CREW
345 LTJG  WOLFE, KRYSTAL L.            COMMANDANT (CG-9335)
346 LTJG  THOMAS JR, DARRYL V.         COMMANDANT (CG-7D)
347 LTJG  WAIDE, ALEXANDER J.          SEC SAN JUAN ENFORCEMENT DIV
348 LTJG  BOATMAN, RYAN C.             TRACEN YKTWN HEALTH SVCS BR
349 LTJG  CLAY, CHAD E.                TRACEN C MAY HEALTH SVCS BR
350 LTJG  MEEK, BRYAN R.               TRACEN PET HEALTH SVCS BR
351 LTJG  VOLLEN, JACOB M.             TRACEN C MAY HEALTH SVCS BR
352 LTJG  MCCULLARS, ERIC G.           COMMANDANT (CG-NCC)
353 LTJG  YETZER, NICOLE C.            C5ISC IDENT & ASSET ACCESS MG
354 LTJG  PIETRUSZKA, LISA M.          SFLC LRE SYS AND EQUIP SEC 2
355 LTJG  KORENGEL, KARA I.            MSU PORT ARTHUR
356 LTJG  CARROLL, CLAYTON D.          SEC MOBILE INSPECTIONS DIV
357 LTJG  SACINO, JOHN G.              SEC ST PETE INSPECTIONS DIV
358 LTJG  HAUSSLER, TARNEY K.          SEC NORTH BEND AV OPS DIV
359 LTJG  NELSON, LUCAS H.             ICC CYBER & ACQUISITIONS BR
360 LTJG  DIDIANO, NICHOLAS J.         TACLET SOUTH LEDET 403
361 LTJG  DUPRE, SARAH C.              AST CHEMICAL DIV
362 LTJG  COLUCCI, JOHN R.             CGC HAMILTON
363 LTJG  KIRLIN, ELIZABETH T.         SEC VIRGINIA INSPECTIONS DIV
364 LTJG  NELSON, MARK W.              SEC HOU/GAL INSPECTIONS DIV
365 LTJG  TURNER, RIANA K.             SEC NEW YORK CMD CENTER
366 LTJG  RUBIO, KATHRYN S.            C5ISC PLANNING SUT SEC-KERN
367 LTJG  HALEY, SAMUEL R.             SEC MOBILE INSPECTIONS DIV
368 LTJG  WILLIAMS, SARAH A.           LANTAREA (LANT-35)
369 LTJG  MEDINA, JEREMY A.            MSU TEXAS CITY
370 LTJG  TRAVERS, MICHAEL R.          AIRSTA ASTORIA
371 LTJG  MORRISON, SAMUEL L.          SEC PUGET SND INSPECTIONS DIV
372 LTJG  MAES III, RENE F.            SEC SAN DIEGO CMD CENTER
373 LTJG  KIHN, ANDREW J.              MSRT EAST WHETSTONE DIV
374 LTJG  DEINNOCENTIIS, JAMES J.      SEC MIAMI INSPECTIONS DIV
375 LTJG  HARRISON, AMY E.             D1 INTELLIGENCE BR (DRI)
376 LTJG  DOHERTY, BRETT D.            AIRSTA SACRAMENTO
377 LTJG  MORALES-RIVERA, ANGEL E.     SEC JCKSNVLLE INSPECTIONS DI
378 LTJG  DIGERNESS, COLETTE L.        SEC DEL BAY INSPECTIONS DIV
379 LTJG  EASTMAN, SKYE J.             SEC HONOLULU INSPECTIONS DIV
380 LTJG  SHAVER, RYAN P.              SEC MOBILE INSPECTIONS DIV
381 LTJG  ROMITO, MADELINE K.          SEC ANCHORAGE CMD CENTER
382 LTJG  CARROLL, ANDREW B.           AIRSTA ATLANTIC CITY
383 LTJG  KUPFER, SAMUEL J.            SEC CORPUS CHR INSPECTIONS DI
384 LTJG  STOEHR, CHRISTOPHER H.       BASIC FLIGHT
385 LTJG  MORRISON, DON P.             MSU TEXAS CITY
386 LTJG  CONRAD, GARRETT              SEC DEL BAY INSPECTIONS DIV
387 LTJG  VELANDIA, ALVARO N.          BASIC FLIGHT
```

```
388 LTJG  REDMOND, JEFFREY J.       IPF SOUTH PORTLAND
389 LTJG  YOST, KELLY N.            SEC PUGET SND INSPECTIONS DIV
390 LTJG  ELDRIDGE, BRIAN Z.        AIRSTA TRAVERSE CITY
391 LTJG  OATES, SKYLER S.          SEC SAN FRAN INSPECTIONS DIV
392 LTJG  ONORATO, MITCHELL J.      SEC NEW YORK INSPECTIONS DIV
393 LTJG  HICKS, DARREN M.          SEC CORPUS CHR INSPECTIONS DI
394 LTJG  SHAIKH, ZAIN S.           MSST KB OPS SPRT DEPT
395 LTJG  EDWARDS, ROY T.           LDC OFF ACC & TRANSITIONS DEP
396 LTJG  HARRIS, SARAH M.          SEC SAN FRAN INSPECTIONS DIV
397 LTJG  OSBURN, ZACCARY S.        BASIC FLIGHT
398 LTJG  SMITH, EMILY C.           SEC NEW YORK INSPECTIONS DIV
399 LTJG  TURNER, SHELLEY E.        SEC NOLA INSPECTIONS DIV
400 LTJG  MAREK, CONNER S.          AIRSTA HOUSTON
401 LTJG  STODDARD, ANDREW R.       BASIC FLIGHT
402 LTJG  LEWTER, TIANA R.          LANTAREA (LANT-35)
403 LTJG  KOSTEK, ANTHONY J.        SEC LIS ENFORCEMENT DIV
404 LTJG  HARRIS, ANTHONY E.        MSU MORGAN CITY
405 LTJG  HOGAN, SCOTT E.           BASIC FLIGHT
406 LTJG  VILLARREAL, MARTHA A.     D8 INTELLIGENCE BR (DRI)
407 LTJG  UNDERWOOD, KALEY D.       SEC KEY WEST ENFORCEMENT DIV
408 LTJG  KING, TRENTON M.          BASIC FLIGHT
409 LTJG  ANSLEY, ELIZABETH T.      MIFC LANT  ANALYSIS BR
410 LTJG  ETIENNE, GUERSCHOM        MSU MORGAN CITY
411 LTJG  THOMPSON, LYNETTE K.      SEC JCKSNVILLE INCIDENT MGT D
412 LTJG  CASH, ITZEL L.            C5ISC LONG RANGE SYSTEMS BR
413 LTJG  BANNON, MICHAEL L.        MSU HOUMA
414 LTJG  MASDEU, MATIAS G.         CGCYBER COMMAND
415 LTJG  CAMPBELL, CHRISTIAN S.    PACAREA (PAC-3MF)
416 LTJG  AGRUSTA, ROBERTO          TACLET PACAREA LEDET 110
417 LTJG  RUBINO, SOPHIA C.         AIRFAC CHARLESTON
418 LTJG  QUESNELL, JACOB D.        SEC NOLA INSPECTIONS DIV
419 LTJG  GARNER, RINARDO S.        SEC HONOLULU ENFORCEMENT DIV
420 LTJG  MAHONEY, JAMES P.         SEC CORPUS CHR INCIDENT MGT D
421 LTJG  VANDER MOLEN, RYAN B.     OL-SFLC-BOSTON MA
422 LTJG  GIORGI, BRYANT R.         CGC KATMAI BAY
423 LTJG  FINK, LESTER S.           AIRSTA CORPUS CHRISTI
424 LTJG  HESSE, CHRISTOPHER D.     AIRFAC CHARLESTON
425 LTJG  ZIEBELL, ANDREW S.        AIRSTA CORPUS CHRISTI
426 LTJG  MUENTER, GRANT R.         SEC ANCHORAGE CMD CENTER
427 LTJG  SOBELMAN, MICHAEL B.      SEC SAN DIEGO CMD CENTER
428 LTJG  US, CHRISTOPHER J.        CGC ALEX HALEY
429 LTJG  GOMEZ, NOELLE E.          SEC NOLA INSPECTIONS DIV
430 LTJG  HARRISON, JOHN W.         SEC VIRGINIA INSPECTIONS DIV
431 LTJG  HELLER, SAMUEL N.         SEC PUGET SND INSPECTIONS DIV
432 LTJG  USSEGLIO, THOMAS J.       BASIC FLIGHT
433 LTJG  GRAHAM, NICHOLAS D.       SEC N CAROLINA CMD CENTER
434 LTJG  CULTON, SCOTTI L.         SEC SS MARIE CMD CENTER
435 LTJG  BABIN, LIONEL T.          SEC MIAMI INSPECTIONS DIV
436 LTJG  BAER, JOSHUA S.           COMMCOM OPERATIONS DEPT
437 LTJG  CARR, PAUL S.             OLD DOMINION UNIVERSITY
```

```
438 LTJG  GAINER, SAMUEL M.         CGCC-33 CYBERSECURITY OPS CTR
439 LTJG  HIGGINS, JAMIE M.         C5ISC INTEGRATED COMMS SYSTEM
440 LTJG  COREANO, JOHN             UNIV OF SAN DIEGO
441 LTJG  JORDAN, JENNIFER E.       D5 INTELLIGENCE BR (DRI)
442 LTJG  STEWART, RACHEL E.        COMMANDANT (CG-257)
443 LTJG  SCHOEPPNER, BRYAN R.      ICC DRUGS BRANCH
444 LTJG  HOFFMAN, CHARLES R.       BASE KET PERS SUPPORT DEPT (P
445 LTJG  WILSON, KRISTOFER S.      OL-(CG-LGL)-BOSTON
446 LTJG  VEGA MERCADO, JOSE L.     COMMANDANT (CG-7613)
447 LTJG  HUGHES, MARQUICHE O.      COMMCOM LOGISTICS DEPT
448 LTJG  ROBIDA, MATTHEW R.        OL-FC-NAV AIR STA PENSACOLA
```

2. Officer selection boards review only officers' records and any communications from candidates directly to the board. The board is also given a roster of the eligible candidates listed in alphabetical order. Above and In-Zone officer rosters are combined, so the status of the officer is not discernible. Only the officer portion of a record is viewable by the board.

3. Ref A outlines the In-Zone Reordering tool available to all ADPL and RPA best-qualified promotion boards for ranks O-3 through O-6. The board chose to utilize this tool. The board chose to reorder 11 of those chosen for promotion. These officers are listed at the top of the list by order of precedence.

4. Promotion statistics for this board are provided below. There are many variables (e.g., changes in performance, group size, etc.) that will cause selection rates to fluctuate from year to year among groups. Documented, sustained high performance is the best way to remain competitive for promotion.

5. Stated opportunity of selection (OOS) In-Zone: 95%
    a. Actual Selection Rate In-Zone: (427/472 - 91%)
    b. Actual Selection Rate Above-Zone: (21/39 - 54%)
    c. Number of officers selected Below-Zone: N/A
    d. Number of officers selected for In-Zone Reordering: 11
    e. Approved voluntary separations: 5

6. In-Zone selection rates by gender:
    a. Female: (120/132 - 94%)
    b. Male: (307/340 - 90%)

7. In-Zone selection rates by race category:
    a. American Indian/Alaskan Native: (2/2 - 100%)
    b. Asian: (23/29 - 79%)
    c. Black or African American: (26/32 - 81%)
    d. Multi Race: (24/30 - 80%)
    e. Native Hawaiian/Pacific Islander: (3/3 - 100%)
    e. White: (320/345 - 93%)
    f. Declined to respond: (29/31 - 94%)

8. In-Zone selection rates by ethnic category:
    a. Hispanic: (44/48 - 92%)
    b. Non-Hispanic: (308/338 - 91%)
    c. Declined Comment: (75/86 - 87%)

9. In-Zone selection rates by accession source:
    a. Academy: (212/233 - 91%)
    b. Appointment from Enlisted Status: (8/8 - 100%)
    c. Appointment from other source: (68/78 - 87%)
    d. Reserve Grad OCS: (138/152 - 91%)

```
     e. Appointment from other Reserve: (1/1 - 100%)
     f. Licensed Officer Merchant Marines: (0/0 - N/A)
10. The board's membership and units are:
NAME                           UNIT
CAPT   Michael E. Campbell     D11 COMMAND CADRE (D)
CDR    Clay D. McKinney        CEU MIAMI-PRODUCT LINE
CDR    Noel H. Johnson         MSST NY COMMAND STAFF
LCDR   Kristine R. Red Elk     COMMANDANT (CG-9315)
LCDR   Shea G. Winterberger    CGC HICKORY
LCDR   Alexandra S. Miller     SEC SAN FRAN WTRWAYS MGT DIV
LT     Nicole Y. Kenney        TRACEN YKTWN OP INTEL SCHOOL
LT     George O. Ziworitin     BASE MB ESD OPS DIV (EO)
LT     Matthew A. Martin       OL-(CG-721)-DHS CWMD DC
```

11. The Commandant's Guidance to Promotion Year 2023 Officer Selection Boards and Panels is available at the following link:
(Copy and paste the URL below into browser)

https://cglink.uscg.mil/7e87f681

12. The proceedings of the selection board, including its deliberations and criteria for selection, cannot be disclosed to any person who was not a member of the board. If there are any questions regarding the board process, please contact LCDR Christopher Rabalais, Chief, Boards Section, at Christopher.P.Rabalais@uscg.mil and CWO Timothy Jones at Timothy.R.Jones @uscg.mil. Questions regarding officer status or precedence should be directed to LT Michele Natale at Michele.A.Natale@uscg.mil.

13. Release: RDML D. C. Barata, Commander, Personnel Service Center, sends.

14. Internet release is authorized.

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **ERIC JACKSON**, **ALARIC STONE**, and | ) | |
| **MICHAEL MARCENELLE**, on behalf of | ) | |
| themselves and all others similarly situated, | ) | |
| | ) | Case No. 4:22-cv-00825-P |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| **ALEJANDRO N. MAYORKAS**, in his official | ) | |
| capacity as Secretary of Homeland Security, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### DECLARATION OF VICE ADMIRAL (RETIRED) WILLIAM LEE

Pursuant to 28 U.S.C. § 1746, I, William Lee, under penalty of perjury declare as follows:

1. I am over the age of eighteen and am competent to make this declaration.

2. I retired from active duty service in the Coast Guard in 2016. I served in the Coast Guard for nearly 36 years, and retired as a 3-star Vice Admiral. I still maintain contact with many active duty service members of various ranks and remain generally aware of how the Coast Guard currently functions including in making personnel decisions as described in this declaration.

3. During my career, I held numerous command, operational, and staff positions. The Coast Guard as a whole is divided into two area commands: the Atlantic Area and the Pacific Area. In my final assignment, I served as the Commander of the Coast Guard Atlantic Area. In this role, I was the operational commander for all Coast Guard missions from the Rocky Mountains to the Arabian Gulf. More than 100 ships, more than half of the Coast Guard's aircraft, and around two thirds of the Coast Guard's operational personnel fell under my command. By law, the Coast Guard may have no more than five Vice Admirals at a time. I reported directly to the Commandant of the Coast Guard.

1

**249**

4.      I am aware that the Coast Guard has rescinded its vaccine mandate and has issued some related guidance. I am also aware that the Coast Guard has directed that all adverse paperwork such as CG-3307s documenting noncompliance with the vaccine mandate be removed from service members' records.

5.      In my opinion, these moves, even if promptly and properly enacted without causing further harm, are not sufficient to halt all ongoing harms objecting service members are facing and will face during their careers in the Coast Guard.

6.      The Coast Guard is much smaller than other United States' military services, having less than 50,000 active and reserve service members.  As a result, the Coast Guard is a tight-knit community.  Commanders, and particularly admirals, spend their careers working closely together and attending professional military education.  I frequently consulted my peers to collaborate on leadership decisions.

7.      Some of the most important leadership decisions I made in the Coast Guard were personnel decisions, which I believe are generally made in substantially the same way as when I was in the Coast Guard.  As a commander, I consulted with other officers to determine best candidates for prestigious leadership positions and promotions based on a candidate's "service reputation."  These conversations helped us commanders foster our most talented personnel by ensuring assignments were made with a comprehensive view of a candidate's performance and character.  Like other commanders, I often advocated for promising officers and enlisted members to my peer commanders by "putting a good word in for them."  On the other hand, like other commanders, I also provided frank insights to my peers when, in my professional military judgment, a candidate was not qualified for a position.  Moreover, when a service member transferred out of my unit, like other commanders, I would regularly contact the gaining unit to

2

**250**

pass on my leadership insights, including the person's strengths, weaknesses, and any disciplinary issues I had encountered during my period of supervision.

8.     As another example of how "service reputation" affects a member's career, the Coast Guard uses promotion boards to select eligible candidates for promotion to higher ranks or for command.  The boards are comprised of officers who are senior in rank to the candidate.  For junior ranks with many candidates, selections are based primarily on the candidates' record.  For higher ranks, however, there are fewer candidates and therefore a greater likelihood that a board member personally knows a candidate.  When this happens, it is my experience that a board member will advocate for or caution against the candidate based on his or her personal knowledge of the candidate.

9.     In other words, selection boards frequently consider material beyond just the candidate's performance records.  This extra information often has a direct effect on the selection or nonselection of a candidate.

10.     As a result, even if all documentation of a service member's religious accommodation request and any subsequent punishments are completely expunged from a service member's record, the member's service reputation may still be tainted with concrete, predictable harms to their career because selection board members may share personal knowledge of a candidates' failure to comply with what many in the Coast Guard still consider to be "a lawful order."

11.     Coast Guard commanders and service members as a whole are required to abide by and to respect any civil-court order that declares unlawful a Coast Guard order or policy.

12.     I am aware that courts have entered orders specifically recognizing the unlawful treatment of religious objectors to the vaccine mandate in all of the other service branches—Navy,

3

Air Force, Marines, and Army—but to my knowledge no court has specifically recognized the unlawful treatment of religious objectors in the Coast Guard.

13.     In my opinion, the Coast Guard's persistent assertion that its COVID-19 vaccination mandate was a "lawful order," especially given the absence of a court order specifically recognizing the unlawful treatment of religious objectors in the Coast Guard, perpetuates the harm to service reputation of religious objectors.  Based on conversations I have had with admirals still on active duty, many in Coast Guard leadership have regarded these service members as disobeying a lawful order since the mandate went into effect.  From recent conversations I have had with those admirals, Coast Guard leadership *still* considers these service members to have disobeyed a lawful order, even where no such documentation currently exists in their records.  Their opinion of these service members has not changed, despite Congress passing a law to halt the DoD's mandate, and the Coast Guard rescinding the mandate, lifting restrictions on unvaccinated personnel, and removing adverse records.

14.     With the Coast Guard maintaining that the mandate was a lawful order, and absent a court order, I believe there is a very strong likelihood that institutional memory of a service member's noncompliance will harm the service reputation of religious objectors, resulting in fewer opportunities and fewer promotions.

15.     This declaration comes with considerable personal angst, for I find myself at odds with the institution that I love, and with current leaders whom I admire and respect.  I do not believe that any of them would purposely perpetrate and/or advocate for any action that they did not perceive was legal, necessary, and in the best interest of the service.  However, while I recognize that the service is making efforts to expunge some records, the remaining issue, i.e., the legality of the order itself, remains to be resolved.  The itinerate complexities surrounding this

4

**252**

matter have inserted enough uncertainty that any ethical leader would want—better yet insist—that it be run to ground. The U.S. military has long remained America's most trusted institution. If that institutional trust is to be preserved, and if the members affected by the vaccine mandate are to be treated fairly, I believe the lingering question of legality needs to be answered by an independent and unbiased court. If the order was not lawful, let the governing entities who declared it lawful, and all who stood by it, come to terms with the fact that a mistake was made. I believe the public, and the service members involved, will forgive a leader, or an institution, who acknowledges an error, especially one made in good faith. But I believe the public will forever mistrust those who seek to ignore an error, no matter the original intent. Let us collectively endeavor to ascertain the final truth on this matter, for not only is the integrity of the institution at stake, so too are the reputations of thousands of unvaccinated service members. The U.S. military may be the last bastion of institutional trust in our land. If it is to maintain that trust, then its leaders must be willing to exercise their moral obligation to ensure that the edict they forced upon their trusting people was, in fact, legal. If so, let the entire ordeal be put to bed. If not, military commanders must do what is right. Whatever the case, all Coast Guard service members deserve the truth.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March **31**, 2023.

William D. Lee
Vice Admiral, USCG (Retired)

5

**253**

R 091811Z JAN 23 MID600052595748U
FM COMDT COGARD WASHINGTON DC
TO ALCOAST
BT
UNCLAS
ALCOAST 009/23
SSIC 1600
SUBJ:  COVID-19: MANDATING COVID-19 VACCINATION FOR MILITARY
MEMBERS UPDATE
A. COMDT COGARD WASHINGTON DC 262212Z AUG 21/ALCOAST 305/21
B. COMDT COGARD WASHINGTON DC 072247Z SEP 21/ALCOAST 315/21
1. The President signed the National Defense Authorization Act
(NDAA) for Fiscal Year 2023 on December 23, 2022, which includes
a provision directing the Secretary of Defense to rescind the
mandate that members of the Armed Forces be vaccinated against
COVID-19. The Department of Defense (DOD) rescinded its mandate
on January 6, 2023.
2. In alignment with the DOD, REFs (A) and (B) are cancelled.
Effective immediately, the Coast Guard is stopping all involuntary
administrative separations that resulted from violations of the
lawful general orders to become vaccinated against COVID-19
included within REFs (A) and (B).
3. Further guidance on other administrative actions, including PCS
and TDY transfer policies for unvaccinated members, is forthcoming.
4. Questions regarding this ALCOAST may be directed to Office of
Military Personnel Policy (CG-133) at:
HQS-PolicyandStandards@uscg.mil.
5. ADM Steven Poulin, Vice Commandant (VCG), sends.
6. Internet release is not authorized.

**254**

R 092116Z JAN 23
FM COMDT COGARD WASHINGTON DC
TO ALCOAST
BT
UNCLAS
ALCOAST 011/23
SSIC 1020
SUBJ:  COVID-19: CANCELLATION OF ALCOAST 009/23 - MANDATING
COVID-19 VACCINATION FOR MILITARY MEMBERS UPDATE
A. COMDT COGARD WASHINGTON DC 091811Z JAN 23/ALCOAST 009/23
B. COMDT COGARD WASHINGTON DC 262212Z AUG 21/ALCOAST 305/21
C. COMDT COGARD WASHINGTON DC 072247Z SEP 21/ALCOAST 315/21
1. REF (A) was inadvertently released and is hereby cancelled.
REFs (B) and (C) remain in effect until further notice.
2. ADM Steven Poulin, Vice Commandant (VCG), sends.
3. Internet release is not authorized.

255



**SECRETARY OF DEFENSE**
**1000 DEFENSE PENTAGON**
**WASHINGTON, DC 20301-1000**

JAN 1 0 2023

**EXHIBIT**

**B**

MEMORANDUM FOR SENIOR PENTAGON LEADERSHIP
                        COMMANDERS OF THE COMBATANT COMMANDS
                        DEFENSE AGENCY AND DOD FIELD ACTIVITY DIRECTORS

SUBJECT:  Rescission of August 24, 2021 and November 30, 2021 Coronavirus Disease 2019
                 Vaccination Requirements for Members of the Armed Forces

        I am deeply proud of the Department's work to combat the coronavirus disease 2019
(COVID-19).  Through your leadership, we have improved the health of our Service members
and the readiness of the Force, and we have provided life-saving assistance to the American
people and surged support to local health care systems and agencies at all levels of government.
The Department has helped ensure the vaccination of many Americans, while simultaneously
providing critical and timely acquisition support for life-saving therapeutics, tests, and treatments
for COVID-19.  We have demonstrated the ability to support and defend the Nation under the
most trying of circumstances.

        The Department will continue to promote and encourage COVID-19 vaccination for all
Service members.  The Department has made COVID-19 vaccination as easy and convenient as
possible, resulting in vaccines administered to over two million Service members and 96 percent
of the Force — Active and Reserve — being fully vaccinated.  Vaccination enhances operational
readiness and protects the Force.  All commanders have the responsibility and authority to
preserve the Department's compelling interests in mission accomplishment.  This responsibility
and authority includes the ability to maintain military readiness, unit cohesion, good order and
discipline, and the health and safety of a resilient Joint Force.

        On December 23, 2022 the James M. Inhofe National Defense Authorization Act
(NDAA) for Fiscal Year (FY) 2023 was enacted.  Section 525 of the NDAA for FY 2023
requires me to rescind the mandate that members of the Armed Forces be vaccinated against
COVID-19, issued in my August 24, 2021 memorandum, "Mandatory Coronavirus Disease 2019
Vaccination of Department of Defense Service Members."  I hereby rescind that memorandum.
I also hereby rescind my November 30, 2021 memorandum, "Coronavirus Disease 2019
Vaccination for Members of the National Guard and the Ready Reserve."

        No individuals currently serving in the Armed Forces shall be separated solely on the
basis of their refusal to receive the COVID-19 vaccination if they sought an accommodation on
religious, administrative, or medical grounds.  The Military Departments will update the records
of such individuals to remove any adverse actions solely associated with denials of such
requests, including letters of reprimand.  The Secretaries of the Military Departments will further
cease any ongoing reviews of current Service member religious, administrative, or medical
accommodation requests solely for exemption from the COVID-19 vaccine or appeals of denials
of such requests.

Religious liberty is a foundational principle of enduring importance in America, enshrined in our Constitution and other sources of Federal law. Service members have the right to observe the tenets of their religion or to observe no religion at all, as provided in applicable Federal law and Departmental policy. Components shall continue to apply the uniform standards set forth in DoD Instruction 1300.17, "Religious Liberty in the Military Services."

Other standing Departmental policies, procedures, and processes regarding immunizations remain in effect. These include the ability of commanders to consider, as appropriate, the individual immunization status of personnel in making deployment, assignment, and other operational decisions, including when vaccination is required for travel to, or entry into, a foreign nation.

For Service members administratively discharged on the sole basis that the Service member failed to obey a lawful order to receive a vaccine for COVID-19, the Department is precluded by law from awarding any characterization less than a general (under honorable conditions) discharge. Former Service members may petition their Military Department's Discharge Review Boards and Boards for Correction of Military or Naval Records to individually request a correction to their personnel records, including records regarding the characterization of their discharge.

The Under Secretary of Defense for Personnel and Readiness shall issue additional guidance to ensure uniform implementation of this memorandum, as appropriate.

The Department's COVID-19 vaccination efforts will leave a lasting legacy in the many lives we saved, the world-class Force we have been able to field, and the high level of readiness we have maintained, amidst difficult public health conditions. Our efforts were possible due, first and foremost, to the strength and dedication of our people. I remain profoundly greatful to the men and women of the Department of Defense for their efforts to protect our Force, the Department of Defense community, and to aid the American people.

2

**257**

EXHIBIT

A

R 111557Z JAN 23   MID600052626412U
FM COMDT COGARD WASHINGTON DC
TO ALCOAST
BT
UNCLAS
ALCOAST 012/23
SSIC 1600
SUBJ:  COVID-19: MANDATING COVID-19 VACCINATION FOR MILITARY
MEMBERS UPDATE
A. COMDT COGARD WASHINGTON DC 262212Z AUG 21/ALCOAST 305/21
B. COMDT COGARD WASHINGTON DC 072247Z SEP 21/ALCOAST 315/21
1. The President signed the National Defense Authorization Act
(NDAA) for Fiscal Year 2023 on December 23, 2022, which includes a
provision directing the Secretary of Defense to rescind the mandate
that members of the Armed Forces be vaccinated against COVID-19.
The Department of Defense (DOD) rescinded its mandate on
January 10, 2023.
2. In alignment with the DOD, REFs (A) and (B) are cancelled.
Effective immediately, the Coast Guard is stopping all involuntary
administrative separations that resulted from violations of the
lawful general orders to become vaccinated against COVID-19 included
within REFs (A) and (B).
3. Further guidance on other administrative actions, including PCS
and TDY transfer policies for unvaccinated members, is forthcoming.
4. Questions regarding this ALCOAST may be directed to Office of
Military Personnel Policy (CG-133) at:
HQS-PolicyandStandards@uscg.mil.
5. ADM Steven Poulin, Vice Commandant (VCG), sends.
6. Internet release is not authorized.

**EXHIBIT 1**

```
R 252052Z JAN 23 MID200080683541U

FM COMCOGARD PSC WASHINGTON DC

TO ALCGPSC

BT
UNCLAS
ALCGPSC 012/23

SUBJ: CANCELLATION OF COVID-19 ADMINISTRATIVE MEASURES
A. ALCGPSC 016/22
B. ALCGPSC 104/21
C. ALCOAST 012/23

1. References A. and B. are hereby canceled.

2. Questions or concerns regarding the cancellation of these COVID-19
Administrative Measures should be addressed to the applicable CG PSC or
FORCECOM Division.

3. Additional personnel guidance regarding the implementation of reference C.
will be published SEPCOR.

4. RDML David Barata, Commander, Personnel Service Center, sends.

5. Internet release not authorized.
```

259

**EXHIBIT 2**

261329Z JAN 23 MID200080685332U
ALCGOFF 005/23
SUBJ: RESCISSION OF COVID-19 VACCINATION MANDATE – GUIDANCE FOR ACTIVE DUTY OFFICERS
A.   ALCOAST 012/23
B.   OFFICER ACCESSIONS, EVALUATIONS, AND PROMOTIONS, COMDTINST M1000.3 (series)
C.   ALCGPSC 012/23
D.   ALCGPSC 016/22
E.   ALCGPSC 104/21
1.   Purpose: Ref A. prohibits the involuntary administrative separation of members based solely on their refusal of the COVID-19 vaccination. Consistent with the intent of ref A., this ALCGOFF provides guidance to units and the officer corps.
2.   CG PSC-OPM contacted all officers pending board action to consider involuntary separation based solely on their refusal of the COVID-19 vaccination and notified them that the pending board action has been cancelled. Officers who elected to separate in lieu of board action have also been contacted and separations based solely on their refusal of the COVID-19 vaccination have been cancelled. Any officer who was issued a notification of intent to initiate board action based solely on their refusal of the COVID-19 vaccination and has not been contacted by CG PSC-OPM should immediately contact CG PSC-OPM-1 (Separations) at HQS-SMB-PSC-OPM-1-Separations@uscg.mil.
3.   Assignments:
A.   Ref C. cancels all assignment and training restrictions imposed by refs D. and E.
B.   Members who remain unvaccinated against COVID-19 are no longer prohibited from executing Permanent Change of Station orders.
C.   Members who had a pending separation in lieu of special board action for remaining unvaccinated against COVID-19 are encouraged to contact their Assignment Officer for career counseling regarding Assignment Year 2023.
4.   Any future actions stemming from ref A. will be announced and promulgated SEPCOR.
5.   Commands with questions or concerns regarding this guidance should be directed to the POCs below:
A.   Boards, Promotions, and Separations: CDR David Ratner at David.W.Ratner@uscg.mil or (202) 795-6438.
B.   Assignments: CDR Todd Behney at Todd.M.Behney@uscg.mil or (202) 795-6425.
C.   OERs: CDR Kellee Nolan at Kellee.M.Nolan@uscg.mil or (202) 795-6468.
6.   CAPT P. J. Dougan, Chief, Officer Personnel Management Division, CG Personnel Service Center, sends.
7.   Internet release not authorized.

**260**

EXHIBIT
3

R 252057Z JAN 23 MID200080683568U

FM COMCOGARD PSC WASHINGTON DC

TO ALCGENL

BT
UNCLAS
ALCGENL 013/23

SUBJ: RESCISSION OF COVID-19 VACCINATION MANDATE - INITIAL GUIDANCE FOR ACTIVE
DUTY ENLISTED MEMBERS
A. ALCOAST 012/23
B. Enlistments, Evaluations, and Advancements, COMDTINST M1000.2 (series)
C. ALCGPSC 012/23
D. ALCGPSC 016/22
E. ALCGPSC 104/21

1. Purpose: Reference A. prohibits the involuntary administrative separation of
members based solely on their refusal of the COVID-19 vaccination.  Consistent
with the intent of reference A. and in consideration of processes governing
active duty enlisted assignments and advancements, this ALCGENL provides
initial guidance to commands with particular focus on retaining unvaccinated
members, facilitating their participation in Assignment Year 2023 (AY23), and
preserving their advancement eligibility. Additional guidance will be
promulgated when available.

2. Retention.
A. CG PSC-EPM contacted all members with unexecuted Separation Authorizations
(SEPAUTHs) based solely on their refusal of the COVID-19 vaccination to inform
them that they will no longer be separated, barring a separate request for
voluntary separation from the member.  Commands who believe they have a member
issued a SEPAUTH based solely on their refusal of the COVID-19 vaccination who
has not been contacted by CG PSC-EPM should immediately contact CG PSC-EPM-1
(Separations) at HQS-SMB-CGPSC-EPM-1-Separations@uscg.mil.
B. Over 200 involuntary administrative separation packages based solely on a
member's refusal of the COVID-19 vaccination pend final disposition. CG PSC-EPM
will return all involuntary administrative separation packages based solely on
a member's refusal of the COVID-19 vaccination to the originating command with
no action taken.
C. Documentation of a member's failure to comply with COVID-19 vaccination
mandate alone will not render the member ineligible to reenlist or extend. All
other reenlistment and extension requirements contained in reference B. remain
applicable.

3. Assignments.
A. Reference C. cancels all assignment, boards and panels, and training
restrictions imposed by references D. and E.
B. Members who remain unvaccinated against COVID-19 are no longer prohibited
from executing Permanent Change of Station orders.

**261**

C. Members who are tour complete in AY23 and who remain unvaccinated against COVID-19 are encouraged to contact their Assignment Officer for career counseling if they have not done so already.

4. Advancements.
A. A member's refusal of the COVID-19 vaccination alone does not require the withholding of advancement. Commands withholding the advancement of members on the 2023 Advancement Eligibility List based solely on the member's refusal of the COVID-19 vaccination shall remove the withholding and CG PSC-EPM will authorize advancement via a future Enlisted Personnel Advancement Announcement.
B. Members whose advancement was withheld on the now expired 2022 Advancement Eligibility List are encouraged to compete in the 2023 SWE or Master Chief Advancement Panel (MCAP) if they meet all other advancement eligibility requirements.
C. Commands having awarded a mark of "Not Recommended" based solely on a member's refusal of the COVID-19 vaccination shall submit a Commanding Officer's Recommendation Change (CORC) Enlisted Employee Review (EER) to ensure the member's eligibility to compete in the 2023 SWE or MCAP.
D. Reference B. contains guidance on removing the withholding of advancement and submitting CORC EERs. Commands seeking additional clarity on policies governing EERs may submit an email to HQS-SMB-CGPSC-EPM-3-Evaluations@uscg.mil.
E. Commands are reminded that the SWE and MCAP Eligibility Date for participation in the 2023 SWE and MCAP is 01 February 2023.
F. Members must report any Personnel Data Extract (PDE) discrepancies to their administrative office or SPO and verify the online PDE reflects a status of "eligible."  If the online PDE is not correct, contact PPC (ADV) prior to the PDE correction period deadline. The correction period deadline for the May 2023 SWE is 01 April 2023. All EER CORCs must be submitted to EPM-3 on or before 01 April 2023 with an effective date of 1 February 2023. Given the proximity of SWE and MCAP Eligibility Date and the PDE correction period, commands are encouraged to engage with the CG PSC-EPM-1 Advancement Branch early if they believe more time is needed to meet advancement eligibility requirements. Commands seeking additional clarity on policies governing advancement eligibility may submit an email to HQS-SMB-CGPSC-EPM-1-Advancements@uscg.mil.

5. Commands with questions or concerns regarding this guidance should be directed to the POCs below:
A. Separations/Reenlistments: CAPT(s) Evelynn Samms at Evelynn.B.Samms@uscg.mil or (202) 795-6565.
B. Assignments: CAPT(s) Tony Migliorini at Anthony.R.Migliorini@uscg.mil or (202) 795-6596.
C. Evaluations: CDR(s) La'Shanda Hawkins at Lashanda.R.Hawkins@uscg.mil or (202) 795-6388.

6. CAPT J. A. Carter, Chief, Enlisted Personnel Management Division, CG Personnel Service Center, sends.

7. Internet release not authorized.

**262**

EXHIBIT
4

```
R 261519Z JAN 22
FM COMCOGARD PSC WASHINGTON DC
TO ALCGPSC
BT
UNCLAS
26 JAN 22
ALCGPSC 016/22
SUBJ: PCS TRANSFERS FOR MEMBERS UNVACCINATED AGAINST COVID-19
A. ALCOAST 305/21
B. ALCOAST 315/21
C. ALCOAST 352/21
D. ALCOAST 420/21
E. ALCOAST 446/21
F. ALCGPSC 104/21
```

1. As the COVID-19 pandemic continues, the safety and welfare of our entire workforce remains a top priority to ensure mission readiness.  References (a) thru (c) directed the vaccination of all members. References (d) and (e) provided additional guidance regarding the execution of this direction. Reference (f) established the implementation guidelines for the administrative risk mitigation and leadership measures announced in reference (c).  This ALCGPSC establishes administrative risk mitigation measures for Permanent Change of Station (PCS) orders.

2. Subject to needs of the Service, service members who refuse full vaccination are ineligible to execute PCS orders. This direction does not apply to members who are receiving PCS orders based on Separation Authorizations for separations that will be completed by 1 October 2022, or members who have a current COVID -19 vaccination medical exemption or approved religious accommodation.

3.  The term "fully vaccinated" is currently defined in reference (a), but may be updated as the pandemic progresses. Temporary medical exemptions will be considered "current" for purposes of execution of PCS orders as long as they do not expire prior to departure from the unit.

4.  Servicing Personnel Offices and Personnel and Admin Shops are directed to amend all unexecuted PCS orders and include in all future PCS orders the following statement: "Subject to the needs of the Service, service members who refuse full vaccination are ineligible to execute PCS orders."

4. Questions regarding this direction may be addressed to:
A. OPM: CAPT Catherine Carabine (Catherine.T.Carabine@uscg.mil);
B. RPM: LCDR Cecilia Williams (Cecilia.R.Williams@uscg.mil);
C. EPM: LT Charles Collins (Charles.V.Collins@uscg.mil).

5. Released by RDML S. N. Gilreath, Commander, Personnel Service Center. The Service Center for our Most Important Resource - Our People.

6. Internet release not authorized.

R 07 OCT 21
UNCLAS //N01500//
ALCGPSC 104/21

SUBJ:  EXECUTION OF COVID-19 ADMINISTRATIVE RISK MITIGATION AND LEADERSHIP
MEASURES

A.     COMDT COGARD WASHINGTON DC 271530Z SEP 21/ALCOAST 352/21
B.     COMDT COGARD WASHINGTON DC 072247Z SEP 21/ALCOAST 315/21
C.     COMDT COGARD WASHINGTON DC 262212Z AUG 21/ALCOAST 308/21
D.     MILITARY ASSIGNMENTS AND AUTHORIZED ABSENCES, COMDTINST M1000.8A

1. This ALCGPSC establishes the implementation guidelines for the administrative
risk mitigation and leadership measures announced in ref (a) to achieve
compliance with the COVID-19 vaccine mandate established in refs (b) and (c).
The unprecedented effect of COVID-19 and commensurate continued health risk
presented to and by unvaccinated personnel predicate the need to implement
these tools. The administrative risk mitigation measures described in
paragraphs 3-5 will remain in place regardless of whether a members request for
religious accommodation or medical exemption is pending or approved. Members
with an approved medical exemption or religious accommodation may, however,
request exceptions to these measures on a case-by-case basis. Members should
make these requests for exceptions through their chain of command, to POCs from
FORCECOM for paragraphs 3-4 and flight school (as noted in paragraph 5), and
PSC for paragraph 5. POCs are listed in paragraph 8.

2. For the purpose of this message, unvaccinated members refers to personnel yet
to commence a COVID-19 vaccination regimen. Per ref (c), members are
considered fully vaccinated two weeks after the last required dose of a FDA
-approved COVID-19 vaccine, a COVID-19 vaccine administered under the FDA's
Emergency Use Authorization, or a COVID-19 vaccine on the World Health
Organization Emergency Use Listing.

3. Administrative Risk Mitigation Measure  A School Eligibility:  Only fully
vaccinated members are permitted to attend A School or permitted to put their
name on an A School list.  PSC-EPM-2 or PSC-RPM-2, as appropriate, will not
issue orders to A School for members who are not fully vaccinated and are
currently on an A School list.  Additionally, PSC-EPM-2 or PSC-RPM-2, as
appropriate, will cancel A School orders for all members who are not fully
vaccinated; commands shall direct these members not to execute orders to A
School. Commands with active duty members who are not fully vaccinated but who
are already en route to A School, will direct these members to return to their
unit.  Commands shall request that PSC-EPM-2 place the returned member into a
medical hold status by sending an e-mail to PSC-EPM-2 at HQS-SMB-CGPSC-EPM
-ASCHOOLREQUESTS@uscg.mil. Commands with Reservists who are not fully vaccinated
and who were en route to A school should likewise order them to return to their
unit. Reservists will not be placed in a medical hold status, because this
requires reserve members to be placed in an active duty pay status awaiting
medical treatment.  Members who have already commenced travel to A School, but
are directed to return to their unit, may use their initial travel order number
to process travel claims for both their departure and return trips.

a. (Active Duty Only) PSC-EPM-2 will query data in the Medical Readiness
Reporting System (MRRS) maintained by Coast Guard clinics to determine the
vaccination status of members who are awaiting orders to A School; those
members who are not fully vaccinated will be placed in a medical hold status.
If a member who is on medical hold becomes fully vaccinated, the command should
update their status in MRRS and then request PSC-EPM-2 change their medical
hold status by sending an email to PSC-EPM-2 Non-Rate Assignments at HQS-SMB
-CGPSC-EPM-ASCHOOLREQUESTS@uscg.mil.

b. (Ready Reserve Only) PSC-RPM-2 will query data in MRRS to determine vaccination status for those members who are awaiting orders to A School. PSC -RPM-2 will cancel A School orders for members who are not fully vaccinated and notify commands of the cancellation.  Ready Reserve members who are not fully vaccinated will not be placed in a medical hold status; this requires reserve members to be placed in an active duty pay status awaiting medical treatment.  Commands will retain ADCON of these members until provided further direction.

4. Administrative Risk Mitigation Measure  C School Eligibility:  Details in this section apply to all C Schools.

a.  Only fully vaccinated members are authorized to attend C Schools.  Members who are not fully vaccinated will have their orders cancelled by the Education and Training Quota Command (ETQC).  Commands with members who are not fully vaccinated but are already en route to C Schools, will direct those members to return to their unit.  In this case, members who have already commenced travel to C Schools but are directed to return to their unit, may use their initial travel order number to process travel claims for both their departure and return trips.

b.  Updated Restriction of Movement (ROM) Policy: Effective immediately, the FORCECOM Home ROM for Training (HT-ROM) policy no longer applies to CG courses, however members are still required to follow policies prescribed by the Department of Defense or other government agencies when attending training at those facilities.

c. The current status of all FORCECOM Readiness Activities (AIA Activities, Exercise Support Activities, and Class "A" and "C" schools) are updated regularly, and can be found on the ETQC Portal site at: https ://cg.portal.uscg.mil/units/forcecom/ETQC/SitePages/Home.aspx.

5.  Administrative Risk Mitigation Measure – Consideration for Advanced Education and Senior Education and Fellowship Programs.

a. Advanced education and senior education and fellowship panels will only consider personnel who are fully vaccinated, or those who will be fully vaccinated (as defined by paragraph 2. above) by 22 November 2021.  For the purposes of this message, advanced education programs include, but are not limited to, post graduate education (including Senior Education and Fellowship Programs), specialized degrees, and flight school.  Reserve Senior Education and Fellowship Programs include, but are not limited to, the Reserve Component National Security Course (RCNSC), the Joint Combined Warfighter School  Hybrid (JCWS-H), and the Reserve Masters of Science in Strategic Intelligence (MSSI).

b. Any active duty or reserve officer or enlisted member who has orders to attend, but is not currently enrolled in an advanced education program will have their orders cancelled unless they are fully vaccinated prior to attending, but in any event not later than 22 November 2021.  Members who are not fully vaccinated, or those who will not be fully vaccinated (as defined by paragraph 2. above) by 22 November 2021, and who have not received orders will not be issued orders and will be removed as the primary candidate or from alternate candidate pools, as appropriate. PSC-EPM, OPM, or RPM, as appropriate, will validate a members vaccination status through MRRS. The applicable Assignment Officer will notify members of removal from a program.

c. Orders for Ready Reserve members to participate in education opportunities are typically generated by the local unit.  PSC-RPM-2 will contact Commands to ensure that units know not to create orders for candidates who are not fully

Page 3 of 4

vaccinated, or those who will not be fully vaccinated (as defined by paragraph 2. above) by 22 November 2021.

6. Leadership  Commanding Officer, Officer-in-Charge, Full-Time Command Master Chief, Command Senior Chief, and Command Chief (Gold and Silver Badge) positions:

a. Officers requesting assignment to command positions listed in Section 1.F.1.a. of ref (d) must be fully vaccinated against COVID-19.  Prior to issuing orders to command in AY22, PSC-OPM and PSC-RPM, as applicable, will verify the vaccination status of officer applicants in MRRS to ensure that officer applicants are fully vaccinated.  The applicable Assignment Officer will notify officer applicants who have been removed from consideration.

(1) Unvaccinated members who successfully screened for O-6, O-5, and CWO commands, who are not fully vaccinated by 16 November 2021 will be removed from consideration and only allowed to compete for general duty assignments in AY22.  Those who have an approved medical exemption or religious accommodation, or are awaiting the final determination for either, remain eligible for command assignment.

(2) Junior Command Screening Panel (JCSP): OPM will verify a members COVID-19 vaccination status through MRRS prior to JCSP convening, and if applicable, a members request for a medical exemption or religious accommodation. Unvaccinated members who successfully screened for JCSP commands, who are not fully vaccinated by 16 November 2021 will be removed from consideration and only allowed to compete for general duty assignments in AY22. Those who have an approved medical exemption or religious accommodation, or are awaiting the final determination for either, remain eligible for command assignment.

b. Enlisted (Active Duty and Ready Reserve): PSC-EPM-2 or PSC-RPM-2, as applicable, will verify the COVID-19 vaccination status of members in MRRS prior to issuing orders to Officer-in-Charge or full-time Command Master Chief, Command Senior Chief, or Command Chief positions in AY22.  Unvaccinated members who successfully screened for these opportunities, but who are not fully vaccinated by 16 November 2021 will be removed from consideration and only allowed to compete for general duty assignments in AY22.  Those who have an approved medical exemption or religious accommodation, or are awaiting the final determination for either, remain eligible for command assignment.  Members will be notified of their removal from consideration for these assignments by the applicable Assignment Officer.

7.  Leadership Measures - Relief for Cause (RFC):  Consistent with paragraph 6 of ref (a), the loss of confidence in the judgment and ability of members serving as a Commanding Officer, Officer-in-Charge, or full-time Command Master Chief, Command Senior Chief, or Command Chief is grounds for a temporary and/or permanent RFC due to unsatisfactory conduct.  Officers with temporary RFC authority should consult the appropriate CG PSC division POC before initiating RFC action:  Regular officers - CAPT Catherine Carabine (Catherine.T.Carabine @uscg.mil); Reserve officers and enlisted  LCDR Cecilia Williams (Cecilia.R.Williams@uscg.mil); Regular enlisted - LT Charles Collins (Charles.V.Collins@uscg.mil).

8.  Points of Contact:
  a. PSC-OPM:  CAPT Catherine Carabine, (202) 795-6426, or Catherine.T.Carabine
     @uscg.mil.
  b. PSC-EPM:  LCDR Mike Deal, (202) 795-6576, or Michael.A.Deal@uscg.mil.
  c. PSC-RPM:  CDR Andy Younkle, (202) 795-6501, or Andrew.R.Younkle@uscg.mil.
  d. FORCECOM: LCDR Mike Thompson, Education and Training Quota Management
     Center(ETQC) Commanding Officer, (757)756-5340 or Michael.g.thompson

Page 4 of 4

@uscg.mil.

9.  Additional information on the execution of administrative risk mitigation and leadership measures for the enlisted workforce can be found on the PSC-EPM -2 Portal Site at PSC-EPM - COVID19 Vaccination Notification (uscg.mil).

10. Released by: RDML Shannon Gilreath, Commander, Personnel Service Center, sends. PSC  The Service Center for our most important resource  Our People.

11. Internet release not authorized.

**U.S. Department of
Homeland Security**

**United States
Coast Guard**

Commandant
United States Coast Guard

2100 2nd Street, SW – Stop 7907
Washington, DC 20593-7801
Staff Symbol: CG-1
Phone: (202) 475-5422

1070

# MEMORANDUM

Dr. Donna Mischell
Navarro

Digitally signed by Dr. Donna
Mischell Navarro
Date: 2023.02.04 09:21:08 -05'00'

From:  Dr. D. M. Navarro, SES
         Acting CG-1

Reply to  CAPT A. Williams
Attn of:   202-475-5422

To:      CG PSC

Subj:    CORRECTING MILITARY RECORDS (COVID-19)

Ref:      (a)  COMDT COGARD WASHINGTON DC 111557Z JAN23/ALCOAST 012/23

1.  Subsequent to reference (a), CG PSC shall remove all CG-3307 (P&D-41(series)), administrative remarks referencing the Coast Guard's COVID-19 vaccine requirement from active duty and reserve service members' personnel data records.

2.  The order of priority for removal of CG-3307s shall be as follows:
    a.  all members going before a board or panel (not later than 1 Jul 2023),
    b.  all members who return to active duty or Selected Reserve will have their records corrected at that time,
    c.  members who have requested correction,
    d.  all remaining members (not later than 31 Dec 2023).

3.  For service record-keeping purposes, CG PSC shall document who was discharged in association with the Coast Guard's COVID-19 vaccine requirement. The documentation should include the basis for discharge, discharge characterization, reenlistment code, and date of discharge.

4.  Guidance for separated members will be provided via separate correspondence.

#

**Exhibit 4**

**268**

**DEPUTY SECRETARY OF DEFENSE**
**1010 DEFENSE PENTAGON**
**WASHINGTON, DC 20301-1010**

FEB 2 4 2023

MEMORANDUM FOR SENIOR PENTAGON LEADERSHIP
        COMMANDERS OF THE COMBATANT COMMANDS
        DEFENSE AGENCY AND DOD FIELD ACTIVITY DIRECTORS

SUBJECT: Guidance for Implementing Rescission of August 24, 2021 and November 30, 2021
          Coronavirus Disease 2019 Vaccination Requirements for Members of the Armed
          Forces

    In today's rapidly changing global security environment, vaccines continue to play a
critical role in assuring a ready and capable force that is able to rapidly deploy anywhere in the
world on short notice. Department leadership is committed to ensuring the safety of our Service
members and will continue to promote and encourage vaccinations for all Service members
along with continued use of other effective mitigation measures. This includes monitoring
changing public health conditions, relevant data, and geographic risks; and updating policies and
processes as required to maintain the strategic readiness of our forces and our ability to defend
national security interests around the globe.

    This memorandum provides additional guidance to ensure uniform implementation of
Secretary of Defense Memorandum, "Rescission of the August 24, 2021 and November 30, 2021
Coronavirus Disease 2019 Vaccination Requirements for Members of the Armed Forces,"
January 10, 2023 (January 10, 2023 memorandum).

    As required by section 525 of the James M. Inhofe National Defense Authorization Act
for Fiscal Year 2023, the January 10, 2023 memorandum rescinded the August 24, 2021 and
November 30, 2021 Secretary of Defense mandates that members of the Armed Forces be
vaccinated against the coronavirus disease 2019 (COVID-19) and thereby also rendered all DoD
Component policies, directives, and guidance implementing those vaccination mandates as no
longer in effect as of January 10, 2023. These include, but are not limited to, any COVID-19
vaccination requirements or related theater entry requirements and any limitations on
deployability of Service members who are not vaccinated against COVID-19.

    DoD Component policies, directives, and guidance have not been operative since the
January 10, 2023 memorandum was issued, regardless of the status of the DoD Component
conforming guidance. DoD Component heads shall formally rescind any such policies,
directives, and guidance as soon as possible, if they have not done so already. DoD Component
heads shall certify to the Under Secretary of Defense for Personnel and Readiness in writing that
these actions have been completed no later than March 17, 2023.

    The January 10, 2023 memorandum recognizes that other standing Departmental policies,
procedures, and processes regarding immunizations remain in effect, including the ability of
commanders to consider, as appropriate, the individual immunization status of personnel in
making deployment, assignment, and other operational decisions, such as when vaccination is



required for travel to, or entry into, a foreign nation. This continues to be the case, in accordance with the guidance below.

The Department's Foreign Clearance Guide will be updated to reflect that DoD personnel must continue to respect any applicable foreign nation vaccination entry requirements, including those for COVID-19. Other than to comply with DoD Foreign Clearance Guidance, DoD Component heads and commanders will not require a Service member or group of Service members to be vaccinated against COVID-19, nor consider a Service member's COVID-19 immunization status in making deployment, assignment, and other operational decisions, absent establishment of a new immunization requirement in accordance with the process described below. It is my expectation that any requests to the Assistant Secretary of Defense for Health Affairs (ASD(HA)) for approval to initiate mandatory immunizations of personnel against COVID-19 will be made judiciously and only when justified by compelling operational needs and will be as narrowly tailored as possible.

Department of Defense Instruction (DoDI) 6205.02, "DoD Immunization Program," July 23, 2019, will be updated as follows to establish a process requiring the Secretary of a Military Department, the Director of a Defense Agency or DoD Field Activity that operates medical clinics, or the Commandant of the Coast Guard, to submit a request for approval to initiate, modify, or terminate mandatory immunizations of personnel. Effective immediately, I direct the following action:

Paragraph 2.11. of DoDI 6205.02 is revised by adding a new subsection g., which will read:

"Submit requests to the ASD(HA) for approval to initiate, modify, or terminate mandatory immunizations of personnel and voluntary immunizations of other eligible beneficiaries determined to be at risk from the effects of deliberately released biological agents or naturally occurring infectious diseases of military or national importance."

The Commander of a Combatant Command must submit a request for approval to initiate, modify, or terminate mandatory immunizations of personnel through the Joint Staff, consistent with existing processes specified in DoDI 6205.02.

The Director of Administration and Management will make the revision directed above as a conforming change to the version of DoDI 6205.02 published on the DoD Issuances website.

2

R 272043Z FEB 23 MID200080757493U
FM COMCOGARD PSC WASHINGTON DC
TO ALCGPSC
BT
UNCLAS
ALCGPSC 024/23
SUBJ: CORRECTING MILIITARY RECORDS (COVID-19)
REF: (a) COMDT COGARD WASHINGTON DC 111557ZJAN23/ALCOAST 012/23
1. In accordance with reference (a), Personnel Service Center (PSC) is taking action to remove all CG-3307 Administrative Remarks Entries related to the COVID-19 vaccination mandate from the Coast Guard Military Human Resources Record for members currently serving on Active Duty or in the Reserve Component. The estimated completion date of this task is 31 March 2023.
2. Members whose military record still contains a CG-3307 related to the COVID-19 vaccination mandate after 31 March 2023 should contact their P&A shop to request removal.
3. Members who anticipate going before a board or panel in CY 2023 are encouraged to review their personnel record in iPERMS and work proactively with their P&A shop to ensure timely removal.
4. Procedures for requesting action on other personnel records that reference the COVID-19 vaccination mandate will be promulgated SEPCOR.
5. Released by: CAPT R. E. Dash, Acting Commander, Personnel Service Center, sends.
6. Internet release authorized.

009

**271**