UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| ERIC JACKSON, *et. al.*, <br><br>        *Plaintiffs,* <br><br>     v. <br><br> ALEJANDRO N. MAYORKAS, <br> Secretary of Homeland Security, *et al.*, <br><br>        *Defendants.* | Case No. 4:22-cv-0825-P |

**DEFENDANTS' REPLY**
**IN SUPPORT OF THEIR MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 1

   I.    This case is moot ........................................................................................................... 1

   II.   No exception to mootness applies ............................................................................... 5

CONCLUSION .................................................................................................................... 10

## INTRODUCTION

Based on directives from Congress and the Secretary of Defense, the Coast Guard rescinded the COVID-19 vaccination policy challenged in this case. As a result, Plaintiffs may continue to serve in the Coast Guard without becoming vaccinated. Disagreements about the lawfulness of the old policy and its enforcement are "no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

Nothing in Plaintiffs' opposition alters that conclusion. The post-rescission remedies that Plaintiffs press for are beyond the scope of their complaint or otherwise unavailable. And none of the various exceptions to mootness can sustain this action. Accordingly, the Court should deny Plaintiffs' outstanding motions and dismiss the case as moot.

## ARGUMENT

### I.      This case is moot.

Plaintiffs sued to stop the Coast Guard from enforcing the vaccination policy against them (and others similarly situated) because they believed, contrary to Defendants' determinations, that they should be exempt based on their sincerely-held religious beliefs and their supposed acquired immunity to COVID-19. *See, e.g.*, Compl. ¶¶ 2, 449, 460. According to Plaintiffs, Defendants' exemption procedures forced them to choose between their careers, on one hand, and their religious beliefs, on the other. *See, e.g.*, *id.* ¶¶ 1, 239, 247–248. To remedy those harms, Plaintiffs asked this Court to declare that imposing the Coast Guard's COVID-19 vaccination policy on them would violate their rights and to "prohibit[] Defendants . . . from enforcing the [policy] against Plaintiffs or any member of the Class and from taking any adverse action against Plaintiffs or any member of the Class on the basis of this lawsuit or of Plaintiffs' or any member's request for religious accommodation related to the Mandates." Compl. at 66 (prayer for relief).

1

The rescission of the Coast Guard's COVID-19 vaccination policy has rendered Plaintiffs' contentions academic. Whether or not Defendants properly determined that Plaintiffs should be vaccinated against COVID-19, Plaintiffs are no longer subject to any such requirement. And because they are no longer required to become vaccinated in order continue serving in the Coast Guard, Plaintiffs would not obtain any practical benefit from an order declaring the former requirement invalid or prohibiting its theoretical application to them. Under these circumstances, the case is moot, and the Court cannot continue to exercise jurisdiction over the case.[1]

Plaintiffs resist this conclusion, claiming they "continue to face pressure to violate their religious beliefs and continue to face ongoing harm, absent Court-ordered relief." Pls.' Opp'n, ECF No. 72, at 9. But each example of alleged "pressure" does not maintain a live controversy here. Moreover, this lawsuit sought to enjoin a legal requirement to become vaccinated, which is no longer in place, and the Court lacks jurisdiction to continue to review Plaintiffs' general concerns about the conditions of their ongoing service. No policy requires them to be vaccinated, the Coast Guard has taken steps to rescind prior adverse records, and no ongoing concern has ripened into an actual Article III case or controversy. Further, contrary to Plaintiffs' assertions, Pls.' Opp'n 9, the Coast Guard does not currently consider a service members' vaccination status for personnel purposes. And an order finding that the prior COVID-19 vaccination policy was invalidly applied to Plaintiffs would not preclude Plaintiffs from being subject to some *future*, more narrowly tailored policy. *Cf.* Compl ¶ 163 ("Plaintiffs do not oppose all vaccines.").

---

[1] Plaintiffs propose that, if the Court is inclined to grant Defendants' motion, it should instead grant leave for Plaintiffs to amend their complaint. *See* Pls.' Opp'n 10 n.9. But that route is unavailable: Now that this case has become moot, it is too late for Plaintiffs to amend. *See Whitmire v. Victus Ltd.*, 212 F.3d 885, 888 (5th Cir. 2000).

Plaintiffs complain about past harm to their service records, including lost promotions and negative performance reviews. Pls.' Opp'n 9. But the injunctive remedies they seek for those harms are not encompassed within the complaint's demand to "prohibit[]" enforcement of the vaccination requirement. Compl. at 66 (prayer for relief); *cf. Colonel Financial Management Officer v. Austin*, No. 8:22-cv-1275-SDM-TGW, 2023 WL 2764767, at *2 (M.D. Fla. Apr. 3, 2023) ("plaintiffs have repeatedly phrased their request for relief as a preliminary injunction against application of the COVID-19 vaccine mandate to religiously objecting service members . . . ."). Even assuming away the limited scope of Plaintiffs' complaint, the harms Plaintiffs now identify do not rise to the level of a constitutional injury. As a group, Plaintiffs contend that they are all aggrieved by the substitution of "injurious remarks" in their personnel records in lieu of CG-3307s noting their non-compliance with the Coast Guard's past policy.[2] *See* Pls.' Opp'n at 10. But the memorandum that remains in their service records simply documents that the prior adverse record (GC-3307) was removed, in accord with how the military generally corrects its records. *See* Lemorie Decl. ¶ 4, Supp. App'x 002–03. That documentation does not harm Plaintiffs, particularly where it is not among the personnel files reviewed by promotion boards, and simply ensures that there is an accurate record of the changes to Plaintiffs' files. *See id.* For his part, Plaintiff Stone claims that his most recent evaluation was "downgrade[d]" because he was unable to complete a required training while unvaccinated, *see* Pls.' Opp'n 9, yet his own declaration reveals that his vaccination status did not, as a matter of policy, preclude him from participating in the training, *see* Pls.' App'x, ECF No. 73, at 6. And the claim that he was downgraded based on his vaccination

---

[2] As explained in the Declaration of Michael Lemorie, BM1 Jackson's CG-3307 was removed on April 12, 2023. *See* Lemorie Decl. ¶ 4, Supp. App'x 002.

status is unsubstantiated.[3]  In a similar vein, Plaintiff Marcenelle is dissatisfied that he has not yet been granted a promotion to Lieutenant or been told when a special board might convene to consider his potential promotion.  *See* Pls.' Opp'n 10.  But the Coast Guard will give him another look in the next promotion cycle.  Moreover, if a special board ultimately is empaneled and recommends Marcenelle for promotion, he can receive back pay.  *See* 14 USC 2120(d)(1)–(2).

Finally, relying on the declaration of retired Vice Admiral Lee, Plaintiffs complain that Defendants have failed to remedy various harms to their professional reputations.  *See* Pls.' Opp'n 9–11; *see also* Pls.' App'x 251.  Such reputational injuries cannot sustain the Court's jurisdiction. *See Danos v. Jones*, 652 F.3d 577, 584 (5th Cir. 2011) ("[W]here reputational injury is the lingering effect of an otherwise moot aspect of a lawsuit, no meaningful relief is possible and the injury cannot satisfy the requirements of Article III." (quotation omitted)).  And even if that were not the case, Plaintiffs fail to explain how a court order declaring the old vaccination policy invalid would redress their reputational harms.  *Cf. Allied Home Mortg. Corp. v. HUD*, 618 F. App'x 781, 787 (5th Cir. 2015) (per curiam) (relief must be effective).

The tide of judicial authority supports a finding of mootness.  In *Roth v. Austin*, the United States Court of Appeals for the Eighth Circuit dismissed an appeal about military vaccination requirements, noting that the NDAA and subsequent rescission memorandum "afford[ed] [Plaintiffs] the requested relief" and that the vaccination policy was not likely to be reinstated.  62 F.4th 1114, 1119 (8th Cir. 2023); *see also id.* at 1119–20 (Stras, J., concurring) (noting that "the

---

[3] A review of Stone's evaluation reveals no reference to non-compliance with the past vaccination requirement; indeed, the evaluation is overwhelmingly positive.  *See* Pls.' App'x 9 ("Recommended for promotion w/best of peers . . . [r]ecommended for high vis assignments including:  Congressional Affairs and Flag aide").  To the extent that Stone hoped to obtain higher marks akin to those he received in the previous review cycle (when he was also non-compliant with the vaccination requirement), the discrepancy seems most attributable to his transition to a desk job and the related change in supervisors.  *Compare id.*, *with* ECF No. 6 at 40.

case is now moot" and that the plaintiffs "do not need relief from a mandate that no longer exists").
And in *Colonel Financial Management Officer*, the United States District Court for the Middle
District of Florida issued an indicative ruling that challenges to the Marine's and Navy's rescinded
vaccination requirements are moot. *See* 2023 WL 2764767, at *2 (citing, among others, *Navy
SEAL 1 v. Austin*, No. 22-5114, 2023 WL 2482927 (D.C. Cir. Mar. 10, 2023)). The court noted
that "recurrence of the military's challenged conduct seems . . . remote and implausible." *Id.*

## II.   No exception to mootness applies.

**Collateral Consequences.** As their principal defense to mootness, Plaintiffs invoke the
collateral-consequences doctrine. *See* Pls.' Opp'n 8–11. Pursuant to that doctrine, courts have
recognized that, in limited circumstances, even if "a litigant's primary stake in the outcome [of his
case] becomes moot[,] . . . some 'collateral consequence' of the litigation's outcome [may]
persist[]" and maintain the court's jurisdiction. *Alwan v. Ashcroft*, 388 F.3d 507, 511 (5th Cir.
2004) (quoting *Spencer v. Kemna*, 523 U.S. 1, 8 (1998)). As discussed above, Plaintiffs proffer a
list of grievances left unresolved by the rescission of the Coast Guard's COVID-19 vaccination
policy. *See* Pls.' Opp'n 9; *see also id.* at 5–7 (further detailing Plaintiffs' unresolved concerns).
But none amount to the sort of collateral consequence sufficient to stave off mootness.

Some of Plaintiffs' grievances—particularly those concerning the requirement to
quarantine if they contract COVID-19 and potential future vaccination requirements for certain
assignments or deployments—are independent of the rescinded policy and would not be impacted
by a decision on Plaintiffs' claims against it. *See Mendoza-Flores v. Rosen*, 983 F.3d 845, 848 (5th
Cir. 2020) ("Collateral consequences must stem from the underlying cause of action to salvage
justiciability."); *cf. Holloway v. City of Va. Beach*, 42 F.4th 266, 275 (4th Cir. 2022) (following
amendment of law, awarding injunctive relief based on alleged illegality of prior law would
"ha[ve] things backwards"). Many other grievances, including Plaintiffs' fears about future

vaccination requirements and possible impacts on their service reputations and, consequently, future career prospects, are too speculative and inchoate to give rise to a case or controversy. *See Bailey v. Southerland*, 821 F.2d 277, 279 (5th Cir. 1987). Others concern "discretionary decisions," *Spencer*, 523 U.S. at 13, like performance reviews and promotions, that are not reflexively determined by the mere fact of Plaintiffs' non-compliance with past policy. And ultimately, none constitute legal consequences stemming from the rescinded vaccination policy or flowing from any failure to adjudicate Plaintiffs' claims against it. *See Johnson v. City of Opelousas*, 658 F.2d 1065, 1068 (5th Cir. 1981) (rejecting reliance on consequences "of a social nature" in light of "the established law that only possible collateral *legal* consequences may maintain one's personal interest" in an adjudication (emphasis added)); *Mendoza-Flores*, 983 F.3d at 848; *Log Cabin Republicans v. United States*, 658 F.3d 1162, 1167 (9th Cir. 2011) (collateral-consequences doctrine did not apply in constitutional challenge to "Don't Ask, Don't Tell" policy because, although discharged service members may have lost several benefits due to their separation, "missed benefits are not legal penalties from past conduct"), *overruled on other grounds by Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195 (9th Cir. 2019).

Contending otherwise, Plaintiffs rely on *Connell v. Shoemaker*, 555 F.2d 483 (5th Cir. 1977), and *Dailey v. Vought Aircraft Co.*, 141 F.3d 224 (5th Cir. 1998), *see* Pls.' Opp'n 8, 10–11, but neither case controls here. Both of those decisions applied the collateral-consequences doctrine because, absent judicial review, the plaintiffs were certain to endure severe reputational harms that would translate into significant economic harms. That reasoning is inconsistent with earlier and later Fifth Circuit precedent holding that only collateral *legal* consequences trigger the collateral-consequences doctrine. *See Mendoza-Flores*, 983 F.3d at 847; *Johnson*, 658 F.2d at 1068. And as the Fifth Circuit has noted, *see Allied Home Mortg. Corp.*, 618 F. App'x at 787, it is

not clear that *Connell*'s holding in particular survives the observation that, historically, the Supreme Court "ha[s] obviously not regarded" an "interest in vindicating . . . reputation" as "constitutionally [s]ufficient to avoid mootness." *Spencer*, 523 U.S. at 16 n.8.

Whatever persuasive value *Connell* and *Dailey* may retain, their reasoning does not apply here. Both cases concerned reputational harm from potentially erroneous findings of fact on an issue central to the plaintiffs' livelihoods. Yet here, the facts of Plaintiffs' conduct are not in dispute; the only questions pertain to their legal significance under the Coast Guard's old vaccination policy. And the record undermines the suggestion that Plaintiffs suffer meaningful reputational harm. *See, e.g.*, Pls.' App'x 9 (recommending Plaintiff Stone for promotion).

**Voluntary Cessation.** Plaintiffs also seek to avail themselves of the voluntary-cessation exception to mootness, *see* Pls.' Opp'n 16–23, but as Defendants have explained, *see* Defs.' Br., ECF No. 70, at 13–14, that exception is similarly inapplicable here. Plaintiffs contend that the Coast Guard's rescission must be regarded as voluntary, and so the exception must apply, because "[t]he NDAA does not apply to the Coast Guard." Pls.' Opp'n 17. That would surely come as a surprise to Congress. While Section 525 is addressed to the Secretary of Defense and incorporates the title of his August 24, 2021 memorandum, "Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members," the statute's operative language directs the Secretary to "rescind the mandate that members of the Armed Forces be vaccinated against COVID-19" that was imposed "pursuant to the memorandum." James M. Inhofe National Defense Authorization Act for Fiscal Year 2023, Pub. L. No. 117-263, 136 Stat. 2395, 2571–72 (2022). And when Congress refers to the "armed forces," that term generally "means the Army, Navy, Air Force, Marine Corps, Space Force, *and* Coast Guard." 10 U.S.C. § 101(a)(4) (emphasis added). Any doubt about whether Congress meant to cover the Coast Guard with its rescission directive is

dispelled by Congress's express characterization, elsewhere in the text of the NDAA, of the Coast Guard as part of the "Armed Forces." Section 1045, 136 Stat. at 2773 (addressing "the case of a member of the Armed Forces who is a member of the Coast Guard"). The record also reflects that the Coast Guard's COVID-19 vaccination policy was inextricably linked to the COVID-19 vaccination directive issued by the Secretary of Defense—so much so that he is named as a Defendant in this case.[4] Where Plaintiffs' own complaint treats the DOD's vaccination policy as interchangeable and coextensive with the Coast Guard's policy, *see* Compl. ¶ 36, there is no basis to characterize the Coast Guard's rescission as unrelated and uniquely voluntary.

Even assuming the voluntary-cessation exception applies, there can be no reasonable expectation that the Coast Guard will subject Plaintiffs to the same allegedly unlawful policy in the future. *See Already*, 568 U.S. at 92.[5] As this Court has recognized in related circumstances, the unique nature of the COVID-19 pandemic renders it "speculative at best" that pandemic era requirements will be reinstituted. *Snider v. Cain*, No. 4:20-cv-670-P, 2020 WL 6262192, *3 (N.D. Tex. Oct. 23, 2020) (quotation omitted). And contrary to Plaintiffs' contentions, Defendants nowhere "admit[]" that they are likely to reinstitute the rescinded policy (or even a substantially similar one). Pls.' Opp'n 20. Defendants merely acknowledged the possibility that, based on developments with COVID-19 virality, advances in vaccine development, and the requirements of a given assignment or operation, *some* personnel within the Coast Guard might *some*day be subject to a more limited COVID-19 vaccination requirement. But Plaintiffs' claims do not concern any

---

[4] *See, e.g.*, ALCOAST 305/21 (noting that the Coast Guard instituted its vaccination policy to be "[c]onsistent with the Secretary of Defense's direction" and that COMDTINST M6230.4 "will be updated to reflect the Secretary of Defense's direction"); *see also* 14 U.S.C. § 102(7) (imposing statutory duty on the Coast Guard to "maintain a state of readiness to assist in the defense of the United States, including when functioning as a specialized service in the Navy").

[5] In meeting this test, Defendants "bear[] a lighter burden to prove that challenged conduct will not recur." *Moore v. Brown*, 868 F.3d 398, 406–07 (5th Cir. 2017).

such requirement, and "[t]he potential for a future dispute of another nature, presenting other issues, is immaterial" to the voluntary-cessation analysis. *Allied Home Mortg. Corp.*, 618 F. App'x at 787. Nor is there anything suspicious about the "timing" of the Coast Guard's rescission, Pls.' Opp'n 20, which is self-evidently explained by the passage of the NDAA, the Secretary of Defense's rescission order, and the Coast Guard's familiar practice of remaining consistent with the Secretary's vaccination directives. The rescission was not timed to prevent a decision by this Court on Plaintiffs' motions, which have been fully briefed since October 14, 2022, nor was it preceded by any decision invalidating the Coast Guard's policy. *Contrast Texas v. Biden*, 20 F.4th 928, 964 (5th Cir. 2021); *see also Col. Fin. Mgmt. Off.*, 2023 WL 2764767, at *2. Finally, Plaintiffs make much of Defendants' refusal to concede that the old policy violated Plaintiffs' rights, Pls.' Opp'n 20, "[b]ut the government need not concede unlawful conduct to moot an action by rescission of the challenged conduct." *Col. Fin. Mgmt. Off.*, 2023 WL 2764767, at *2; *see also Eden, LLC v. Justice*, 36 F.4th 166, 172 (4th Cir. 2022) (concluding that "mere ability to reimpose challenged restrictions is not enough to show a reasonable chance of recurrence").

**Capable of Repetition Yet Evading Review**. Briefly, Plaintiffs also invoke the mootness exception for cases capable of repetition yet evading review. *See* Pls.' Opp'n 23–24. "That exception applies only in exceptional situations, where (1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016) (quotations omitted). Plaintiffs bear the burden to prove these conditions, *Spell v. Edwards*, 962 F.3d 175, 180 (5th Cir. 2020), but they have not done so here.

9

On duration, Plaintiffs complain that the Coast Guard took too long to deny their religious-accommodation requests, leaving insufficient time for them to sue and obtain relief. Pls.' Opp'n 23. But "[c]laims need to be judged on how quickly relief can be achieved *in relation to the specific claim*," *Empower Texans, Inc v. Geren*, 977 F.3d 367, 370 (5th Cir. 2020) (emphasis added), and unlike the prototypical "'exceptional' situations" in which this exception may apply, namely "cases involving strikes, pregnancies, or elections," *Meadows v. Odom*, 198 F. App'x 348, 351–52 (5th Cir. 2006), vaccination requirements are not typically limited in duration. Indeed, the challenged policy was, by its terms, indefinite. Even assuming that a future COVID-19 vaccination requirement would be limited in duration, there is no reason to expect that diligent litigants will find it impossible to obtain review. *Cf. Austin v. U.S. Navy SEALs 1–26*, 142 S. Ct. 1301 (2022). And as to "reasonable expectations," Plaintiffs fail to meet their burden on that prong for all the reasons stated *supra* 8–9. Because "[n]othing within the four corners of [their] complaint provides the Court with anything beyond speculation that Defendants might reimpose the [rescinded vaccination requirement] or something like it," *Snider*, 2020 WL 6262192, at *3, Plaintiffs have not shown that this case presents issues capable of repetition yet evading review.

## CONCLUSION

Plaintiffs may continue to disagree with the Coast Guard's past vaccination policy. And even though that policy is no longer in force, its memory may stir emotions for some time to come. But federal courts are "not empowered to decide moot questions . . . or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before" them. *California v. San Pablo & Tulare R. Co.*, 149 U.S. 308, 314 (1893). Because the parties' disagreements are "no longer embedded in any actual controversy about [these Plaintiffs'] particular legal rights," *Alvarez v. Smith*, 558 U.S. 87, 93 (2009), the Court should deny Plaintiffs' now-stale motions and dismiss this case as moot.

10

Dated: April 14, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Branch Director

ANTHONY H. COPPOLINO
Deputy Branch Director

/s/ *Cody T. Knapp*
CODY T. KNAPP (NY Bar #5715438)
JOHNNY H. WALKER (DC Bar #991325)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20530
Tel.: (202) 532-5663 / Fax: (202) 616-8460
Email: cody.t.knapp@usdoj.gov

*Counsel for Defendants*