UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| ERIC JACKSON, *et. al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> ALEJANDRO N. MAYORKAS, <br> Secretary of Homeland Security, *et al.*, <br><br> *Defendants.* | Case No. 4:22-cv-825-P |

**DEFENDANTS' SUPPLEMENTAL BRIEF**

The Court recently ordered the parties to file supplemental briefs on the following questions:

1. Whether the Fifth Circuit's holding in *U.S. Navy SEALs 1-26 v. Biden*, No. 22-10077, 2023 WL 4362355 (5th Cir. July 6, 2023) provides support for Plaintiffs or Defendants?

2. Whether Plaintiffs' Motion for Preliminary Injunction is moot due to the rescission of Defendants' COVID-19 vaccination policy?

3. Whether the case is moot if Plaintiffs seek relief beyond enjoining Defendants' COVID-19 vaccination policy?

*See* ECF No. 92.  Defendants respectfully submit the following responses to the Court's questions.

**1.**  The Fifth Circuit's decision in *U.S. Navy SEALs* provides controlling support for Defendants' motion to dismiss this case as moot.  In *U.S. Navy SEALs*, the Navy had appealed individual and class-wide preliminary injunctions that prohibited enforcement of the military's COVID-19 vaccination requirement as to Navy service members who had sought religious exemptions from the vaccination requirement.  *See* 2023 WL 4362355, at *2.  But after the military's rescission of the COVID-19 vaccination requirement, the Fifth Circuit found that the Navy's appeal had become moot and that no exception to mootness applied.  *See id.* at *3–5.  In reaching its conclusion, the Fifth Circuit recognized that "mootness is the default" in such

circumstances. *Id.* at *3. And in *U.S. Navy SEALs*, the Fifth Circuit found that default rule applicable because the Navy had "[o]bey[ed] a newly enacted federal statute" by "rescind[ing] its COVID-19 mandate," "revoked each of the implementing policies," and "promulgated new policies" clarifying that Navy servicemembers were no longer subject to a COVID-19 vaccination requirement. *Id.* "Such actions," the Fifth Circuit held, "moot a dispute over the lawfulness of military vaccine mandates." *Id.*

That holding all but compels dismissal here. Obeying the same statute at issue in *U.S. Navy SEALs*, Defendants here—one of whom is also a defendant in *U.S. Navy SEALs*—have rescinded the policies that previously required Plaintiffs to become vaccinated against COVID-19. *See* Sec'y of Def. Rescission Mem. (Jan. 10, 2023), App'x 001 (rescinding "the mandate that members of the Armed Forces be vaccinated against COVID-19, issued in [the Secretary of Defense's] August 24, 2021 memorandum"); ALCOAST 012/23 (Jan. 11, 2023), App'x 003, (cancelling ALCOAST 305/21 (Aug. 26, 2021), which had directed all Coast Guard active duty and ready reserve members to become vaccinated "[c]onsistent with the Secretary of Defense's direction," and ALCOAST 315/21 (Sept. 7, 2021), which instructed commanders, commanding officers, and officers in charge to direct unvaccinated Coast Guard members to begin vaccination immediately). Defendants have also revoked the policies that previously implemented that requirement. *See, e.g.*, ALCGOFF 005/23 ¶ 3 (Jan. 26, 2023), App'x 006 ("cancel[ling] all assignment and training restrictions" imposed by ALCGPSC 016/22 and ALCGPSC 104/21); ALCGENL 013/23 ¶ 3 (Jan. 25, 2023), App'x 004 (similarly noting cancellation of "assignment, boards and panels, and training restrictions"). And they have formally promulgated new directives that preclude COVID-19 vaccination status from inhibiting service in the Coast Guard. *See, e.g.*, ALCGENL 013/23 ¶ 1 (Jan. 25, 2023), App'x 003 (expressing the Coast Guard's "particular focus on retaining

unvaccinated members, facilitating their participation in Assignment Year 2023 (AY23), and preserving their advancement eligibility"); *id.* ¶ 4, App'x 003 (affirming that "[a] member's refusal of the COVID-19 vaccination alone does not require the withholding of advancement" and requiring commanders to amend previous recommendations that had been based solely on a member's refusal to vaccinate); ALCGRSV 003/23 (Jan. 26, 2023), App'x 007 (similar with respect to reserve members); ALCGPSC 024/23 ¶ 1 (Feb. 27, 2023), App'x 011 (noting steps "to remove all CG-3307 Administrative Remark Entries related to the COVID-19 vaccination mandate"); ALCGPSC 044/23 ¶ 2 (Mar. 22, 2023), App'x 013 (instructing commands to request that Unsatisfactory Conduct marks awarded solely based on a member's noncompliance with the COVID-19 vaccination mandate "be upgraded to Satisfactory"); ALCGRSV 008/23 ¶ 3 (Mar. 16, 2023) (noting that "[u]nvaccinated reservists are authorized to be issued voluntary active duty orders of any type"); ALCGPSC 058/23 ¶ 6 (Apr. 12, 2023), App'x 015 (explaining that officers "who were considered but not selected for promotion in PY23 and had CG-3307 Administrative Remarks Entries removed from their records . . . may request consideration by a Special Selection Board" to be reconsidered for promotion). In short, because Defendants have lifted the COVID-19 vaccination requirement and ordered the adverse actions associated with it to be undone, the "dispute over the lawfulness of military vaccine mandates" in this case is moot. *U.S. Navy SEALs*, 2023 WL 4362355, at *3.

Critically, in addition to recognizing mootness in circumstances materially indistinguishable from this case, the Fifth Circuit also rejected virtually all of the theories Plaintiffs have advanced here to save their case from dismissal. Among other things, the plaintiffs in *U.S. Navy SEALs* (like Plaintiffs here) had contended that, notwithstanding the rescission of the military's COVID-19 vaccination policy, they continued to suffer from "adverse actions" and

collateral consequences stemming from the former policy. *See* 2023 WL 4362355, at *4. But the Fifth Circuit found these allegations irrelevant to its mootness analysis because "Navy policies now formally prohibit 'any new adverse administrative actions' against unvaccinated servicemembers and require removing past adverse actions." *Id.* So too here. *See, e.g.*, ALCOAST 012/23 (Jan. 11, 2023) (cancelling vaccination requirement); ALCGPSC 024/23 ¶ 1 (Feb. 27, 2023), App'x 011 (authorizing removal of vaccine-mandate-related administrative remarks); ALCGPSC 044/23 ¶ 2 (Mar. 22, 2023), App'x 013 (requiring upgrades to unsatisfactory marks based on vaccination status). As in *U.S. Navy SEALs*, because Defendants have "definitively restored Plaintiffs to equal footing with their vaccinated counterparts through repeated formal policy changes," 2023 WL 4362355, at *4, Plaintiffs cannot complain that they still need relief from "adverse actions" imposed under the rescinded policy.

The Fifth Circuit similarly rejected the doctrine of voluntary cessation as inapplicable in *U.S. Navy SEALs*, and in doing so, rejected the very arguments Plaintiffs have pressed in this case. *See id.* at *4–6. In contradistinction to Plaintiffs in this case, *see* Pls.' MTD Opp'n, ECF No. 72, at 1, 18, 20, the Fifth Circuit refused to require the defendants in *U.S. Navy SEALs* to disavow "a new vaccine mandate in the future," noting that "[i]t is black-letter law that the government's mere 'ability to reimplement the statute or regulation at issue is insufficient to prove the voluntary-cessation exception.'" *Id.* at *5. Instead, the court emphasized that the Navy had "rapidly complied" with the National Defense Authorization Act's directive to rescind the COVID-19 vaccination requirement, "promulgated multiple binding policies going beyond what Congress required to eradicate the effects of the mandate," and provided "official assurances" that COVID-19-vaccination status would not be considered for purposes of assessing service members' performance and suitability. *Id*. All of these circumstances indicated, just as they do here, that

4

there could be no serious suggestion of litigation gamesmanship on the part of the military. And that conclusion was only reinforced by the Fifth Circuit's recognition, in the face of arguments to the contrary, that "[g]overnmental entities bear a 'lighter burden' in proving that the challenged conduct will not recur once the suit is dismissed as moot," that courts should "presume that state actors, as public representatives, act in good faith," and that, absent evidence to the contrary, courts "assume that formally announced changes to official government policy are not mere litigation posturing." *Id.* at *5.

Notably, the Fifth Circuit found it unnecessary to decide whether the Navy's rescission of the COVID-19 vaccination requirement was voluntary. *See id.* at *5 n.7. Plaintiffs hotly contest whether Defendants here were involuntarily required to rescind the COVID-19 vaccination requirement for members of the Coast Guard. *See, e.g.*, Pls.' MTD Opp'n, ECF No. 70, at 1, 16–17. Indeed, they have pointed to Defendants supposedly voluntary action as a principal basis to distinguish the mootness analysis in this case from that in the many similar cases that have been dismissed as moot across the country. *See* Pls.' Response to Notice re *Bazzrea* and *Abbott*, ECF No. 87, at 3, 4 n.1; Pls.' Response to Notice re *Crocker*, ECF No. 90, at 3. As Defendants have explained elsewhere, Plaintiffs' novel view is puzzling and wrong. *See, e.g.*, Defs.' MTD Reply, ECF No. 74, at 7–8. But more fundamentally, the Fifth Circuit's analysis in *U.S. Navy Seals* confirms that Plaintiffs' view is also irrelevant to boot. *See* 2023 WL 4362355, at *5 n.7 ("We need not address this argument. Whether or not the Navy rescinded the mandate involuntarily, it took other actions to remedy Plaintiffs' asserted harms that the NDAA did not expressly require: namely, treating unvaccinated and vaccinated servicemembers alike for purposes of deployment, assignment, and operational decisions."). Rather than assess voluntariness, the Fifth Circuit simply focused on the absence of any grounds to conclude "that the upper echelons of the Navy,

5

including the Secretary of the Navy, issued the post-rescission policies with an eye toward resuming the challenged conduct as soon as the courts were done." *U.S. Navy SEALs*, 2023 WL 4362355, at *6. That dearth of evidence, uniformly recognized in military COVID-19 vaccination cases assessing voluntary cessation, is likewise sufficient here to reject Plaintiffs' appeal to the voluntary-cessation exception to mootness.

The Fifth Circuit in *U.S. Navy SEALs* also declined to apply the exception for controversies that are capable of repetition yet evade judicial review, which Plaintiffs also invoke here. *See id.* at *6; *see also* Pls.' MTD Opp'n, ECF No. 72, at 23–24. Ultimately, the Fifth Circuit found it unnecessary to consider that exception in the context of an interlocutory appeal, where no litigation had yet been concluded through final judgment. *See* 2023 WL 4362355, at *6. Instead, the court determined that the district court should evaluate in the first instance on remand whether the plaintiffs' claims remained justiciable. *See id.* In doing so, the Fifth Circuit reinforced the strict limits on the exception—namely that it requires "the challenged action [be] in its duration too short to be fully litigated prior to cessation or expiration, and [that] there [be] a reasonable expectation that the same complaining party will be subject to the same action again," and that it "applies 'only in exceptional situations.'" *Id.* Considered alongside the Fifth Circuit's other reasoning throughout the opinion, the treatment of the exception for controversies that are capable of repetition yet evade judicial review in *U.S. Navy SEALs* provides ample reason to doubt that this case presents the sort of "exceptional situation" where a plaintiff may invoke it.

To be sure, the Fifth Circuit applied its mootness analysis in *U.S. Navy SEALs* only to the Navy's appeal from the district court's preliminary-injunction orders, leaving it for the district court to "decide in the first instance whether any of Plaintiffs' claims are justiciable" or moot. *Id.* at *6. That was entirely appropriate: Only the Navy's interlocutory appeal from the district court's

preliminary-injunction orders was before the Fifth Circuit at the time of its decision, while extensive litigation had continued in the district court throughout the appeal's pendency and remained ongoing. Indeed, in resolving only the mootness of the specific appeal before it, the Fifth Circuit's decision accords with the decisions of every other court of appeals to confront similar circumstances. *See Roth v. Austin*, 62 F.4th 1114, 1119 (8th Cir. 2023); *Navy Seal 1 v. Austin*, No. 22-5114, 2023 WL 2482927, at *1 (D.C. Cir. Mar. 10, 2023); *Dunn v. Austin*, No. 22-15286, 2023 WL 2319316, at *1 (9th Cir. Feb. 27, 2023); *Short v. Berger*, No. 22-15755, 2023 WL 2258384, at *1 (9th Cir. Feb. 24, 2023); *cf. Doster v. Kendall*, 65 F.4th 792, 793 (6th Cir. 2023) (concluding, in a case where the mooting events post-dated the court's decision on appeal, that the district court should review questions of mootness in the first instance); *Robert v. Austin*, --- F. 4th ----, 2023 WL 4361082, at *3 (10th Cir. July 6, 2023) (finding the entire case moot on appeal where the plaintiff had appealed a final judgment rather than an interlocutory order). But in remanding "for further proceedings consistent with [its] opinion," *U.S. Navy SEALs*, 2023 WL 4362355, at *7, the Fifth Circuit gave no reason to doubt whether its reasoning concerning the preliminary-injunction appeal would apply with equal force to moot the plaintiffs' claims before the district court. *Cf. Creaghan v. Austin*, No. 22-cv-981-CKK, 2023 WL 3274309, at *1 (D.D.C. Mar. 10, 2023) (dismissing case as moot following remand by D.C. Circuit). Because *U.S. Navy SEALs* underscores the mootness of Plaintiffs' claims in this case, the Court should grant Defendants' motion to dismiss this case as moot.

**2.** The record in this case leaves no room for doubt: Plaintiffs' motion for a preliminary injunction is moot due to the rescission of Defendants' COVID-19 vaccination policy. Through their motion, Plaintiffs sought an order

> restraining and enjoining Defendants . . . from enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with certain COVID-19

7

>  vaccine mandates—including Department of Defense's August 24, 2021 Order and the Coast Guard's August 2021 Order, Coast Guard ALCOAST 305/21, Coast Guard ALCOAST 315/21, and Coast Guard ALCOAST 270/22 (collectively, the "Mandates")—against Plaintiffs or any member of the Class, and enjoining Defendants . . . from taking any adverse action against Plaintiffs or any member of the Class on the basis of this lawsuit or of any Plaintiff's or Class member's request for religious accommodation related to the Mandates.

Pls.' Prelim. Inj. Motion, ECF No. 4, at 4. Whether or not Plaintiffs needed that relief at the time of their motion, they clearly do not need it now because Defendants have "[o]bey[ed] a newly enacted federal statute" by "rescind[ing] [their] COVID-19 mandate" and "revoked each of the implementing policies." *U.S. Navy SEALs*, 2023 WL 4362355, at *3; *see also* Sec'y of Def. Rescission Mem. (Jan. 10, 2023), App'x 001; ALCOAST 012/23 (Jan. 11, 2023), App'x 003.[1] In addition, Defendants have issued formal policies that prohibit new adverse actions on the basis of Plaintiffs' vaccination status, require the correction of past adverse actions associated with the prior vaccination policy, and permit full participation in the service by unvaccinated members. *See, e.g.*, ALCGOFF 005/23 ¶ 3 (Jan. 26, 2023), App'x 006 (cancelling assignment restrictions associated with the COVID-19 vaccination requirement); ALCGENL 013/23 ¶ 3 (Jan. 25, 2023), App'x 004 (similar); *id.* ¶ 1 (emphasizing "particular focus on retaining unvaccinated members, facilitating their participation in Assignment Year 2023 (AY23), and preserving their advancement eligibility").

Collectively, these actions have nullified the COVID-19 vaccination requirement and threats of enforcement from which Plaintiffs sought relief. *See U.S. Navy SEALs*, 2023 WL 4362355, at *3 (concluding similar steps by the Navy mooted preliminary-injunction proceedings).

---

[1] Plaintiffs essentially acknowledged as much in conceding that a "preliminary injunction against 'enforcement' of the mandate itself[] is not currently warranted," and simultaneously offering to "submit an updated proposed order." Pls.' Notice re Rescission, ECF No. 64, at 4. If Plaintiffs' existing request for relief had not become stale, then there would be no reason to update it.

As the Fifth Circuit recently held in no uncertain terms in *U.S. Navy SEALs*, "[t]here is no need to enjoin policies that no longer exist." *Id.* at *4; *see also Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020) ("It makes sense, then, that a case challenging a statute, executive order, or local ordinance usually becomes moot if the challenged law has expired or been repealed. Once the law is off the books, there is nothing injuring the plaintiff and, consequently, nothing for the court to do." (citation omitted)). Thus, Plaintiffs' motion for a preliminary injunction is moot.

Virtually every court to consider the question has found that the rescission of the military's COVID-19 vaccination requirement moots a request for preliminary-injunctive relief against that policy. Among them are four federal courts of appeals, including the Fifth Circuit. *See U.S. Navy SEALs*, 2023 WL 4362355, at *7 (holding that actions to rescind the vaccination requirement, revoke policies implementing it, and promulgate new policies to accommodate unvaccinated servicemembers "moot a dispute over the lawfulness of military vaccine mandates"); *Roth*, 62 F.4th at 1119 (finding appeal seeking preliminary injunction moot where "[n]one of the Airmen is subject to a COVID-19 vaccination requirement, and no adverse action may be taken against the Airmen for refusing to receive the COVID-19 vaccine"); *Navy Seal 1*, 2023 WL 2482927, at *1 (similar result in Navy case); *Dunn*, 2023 WL 2319316, at *1 (similar result in Air Force case); *Short*, 2023 WL 2258384, at *1 (9th Cir. Feb. 24, 2023) (similar result in Navy case). District courts have likewise found requests to preliminarily enjoin COVID-19 vaccination requirements became moot following their rescission. *See Clements v. Austin*, No. 2:22-cv-2069-RMG, 2023 WL 2386118, at *1 (D.S.C. Mar. 7, 2023) (dismissing motion to preliminarily enjoin the Coast Guard), *reconsideration denied*, 2023 WL 3479466 (D.S.C. May 16, 2023); *Colonel Fin. Mgmt. Officer v. Austin*, No. 8:21-cv-2429-SDM-TGW, 2023 WL 2764767, at *3 (M.D. Fla. Apr. 3, 2023) (indicative ruling noting intent to dissolve preliminary injunction against the Marine Corps upon

9

remand); *cf. Alvarado v. Austin*, No. 1:22-cv-876-AJT-JFA, 2023 WL 2089246, at *3 (E.D. Va. Feb. 17, 2023) (finding that military chaplains' requests for relief from vaccination requirement "are now stale given the Rescission Memo"). Indeed, the only court declining to find a preliminary injunction request moot did so based on circumstances unique to that case, where the court found the Secretary of Defense had "reserved the ability to punish [National] Guardsmen who didn't seek a religious, administrative, or medical accommodation while the mandate was operative." *Abbott v. Biden*, 70 F.4th 817, 825 (5th Cir. 2023). Notably, the *Abbott* court distinguished the continued applicability of the COVID-19 vaccination requirement's enforcement mechanisms to certain National Guardsman from a situation like that presented in this case, where Defendants "simply rescind[ed] the vaccine mandate and all related enforcement measures," *id.*, noting that such complete abandonment of the prior policy "would very likely moot th[e] appeal," *id.* at 824. Thus, an overwhelming judicial consensus supports a finding that Plaintiffs' request for a preliminary injunction in this case has become moot.

Plaintiffs have urged the Court to break with this judicial consensus, but none of their arguments warrant doing so. In particular, the "collateral consequences" Plaintiffs contend require injunctive relief—principally the presence of administrative remarks in their personnel files referencing vaccination status, previously missed opportunities for promotion and training, and a policy requiring unvaccinated personnel to quarantine when infected with COVID-19—provide no support for Plaintiffs' continued claim to injunctive relief. In many instances, that is because those "consequences" are not, in fact, traceable to any ongoing application of the COVID-19 vaccination requirement Plaintiffs challenged. Thus, any ruling on the propriety of that requirement would not redress the harms Plaintiffs identify.

As one example, Plaintiff Stone complains of an administrative remark in his personnel file "that references his vaccination status" and that he claims, without explanation, "continues to negatively impact" him. *See* Pls.' Response re *Bazzrea* and *Abbott*, ECF No. 87; *see also* Fourth Suppl. Decl. of LTJG Alaric Stone, ECF No. 87-1. But that administrative remark cannot possibly be characterized as an "adverse action" imposed pursuant to the COVID-19 vaccination requirement that Plaintiffs challenged in this case; the remark pre-dates the adoption of that requirement by at least three months and merely documents Plaintiff Stone's compliance with mid-pandemic restrictions on servicemembers' movements. *See* Fourth Suppl. Decl. of LTJG Alaric Stone, ECF No. 87-1, at 4 (reflecting that policies were intended to promote readiness for patrol missions in Spring 2021).[2] Far from Defendants "refusing" to remove the remark, *id.* ¶ 3, Plaintiff Stone was simply informed that he "will have to follow established procedures if [he] want[s] to request it be removed" because the remark does not stem from the now-rescinded vaccination requirement and so is not covered by policies permitting the removal of vaccine-requirement remarks, *id.* at 3. Plaintiff Stone also complains about certain outdated COVID-19 health protection protocols, *see* Third Suppl. Decl. of LTJG Alaric Stone, ECF No. 73, at 7 ¶ 10, but those protocols—which Plaintiffs label a "discriminatory quarantine policy," Pls. MTD Opp'n, ECF No. 72, at 9—are independent of the mandatory vaccination requirement Plaintiffs challenged.

Similarly, Plaintiffs appear to contend that they face (or will soon face) a new vaccination requirement enacted *sub silentio*. *See* Pls.' MTD Opp'n, ECF No. 72, at 4–5, 23 (surmising that Defendants have "implicitly asserted the continuing right to consider vaccination status as a factor,

---

[2] The remark further reflects that even vaccinated servicemembers were subject to restrictions on movement at that time. *See* Fourth Suppl. Decl. of LTJG Alaric Stone, ECF No. 87-1, at 4 (prohibiting vaccinated servicemembers from using commercial transportation and attending gatherings of more than 50 persons).

11

even a significant factor, in making personnel decisions"). But all Plaintiffs can point to as the basis for that claim is their own rampant conjecture. *Compare* Pls.' MTD Opp'n, ECF No. 72, at 5 (citing ECF No. 67 at 3), *and* Pls.' Response re *Bazzrea* and *Abbott*, ECF No. 87, at 3 (citing the same), *with* Pls.' Notice, ECF No. 67, at 3 (speculating that ALCGENL 013/23 (Jan. 25, 2023) "implicitly *allows* the Coast Guard to consider vaccination status as a *factor*, even a substantial factor, meaning that getting vaccinated would plainly give one a presumptive advantage in obtaining advancement."). That conjecture flies in the face of express military directives to the contrary. *See* Dep. Sec'y of Def. Mem. (Feb. 24, 2023), App'x 009–10 (providing that any future COVID-19 vaccination requirements will be subject to Department of Defense approval); *see also* ALCGENL 013/23 ¶ (Jan. 25, 2023), App'x 004 (providing guidance with a "particular focus on retaining unvaccinated members, facilitating their participation . . . and preserving their advancement eligibility"). In any event, as numerous courts, including the Fifth Circuit, have now held, the mere ability of the government to reenact a rescinded policy or some policy substantially like it provides no basis to reject a finding of mootness. *U.S. Navy SEALs*, 2023 WL 4362355, at *5 ("It is black-letter law that the government's mere ability to reimplement the statute or regulation at issue is insufficient to prove the voluntary-cessation exception." (quotation omitted)); *see also Pool v. City of Houston*, 978 F.3d 307 (5th Cir. 2020) (emphasizing the centrality of "formal policy change[s]" over informal representations in assessing mootness).

Even setting aside Plaintiffs problems tracing their present complaints to the now-rescinded vaccination policy that they challenged, Plaintiffs also face insurmountable hurdles on redressability. Frustrated that Plaintiff Stone was unable to attend a particular training course in the past, Plaintiffs would have this Court micromanage the Coast Guard's course offerings and dictate the time at which that particular course will be offered. *Compare* Pls.' Response re *Bazzrea*

and *Abbott*, ECF No. 87, at 2–3 (alleging that Defendants "ha[ve] not permitted [Stone] to attend this course"), *with* Third Suppl. Decl. of LTJG Alaric Stone, ECF No. 73, at 6 ¶ 6 (indicating that the dates offered for the course are simply not to Plaintiffs' liking). But missing a training session pursuant to past policy provides no basis for prospective judicial relief. *See Log Cabin Republicans v. United States*, 658 F.3d 1162, 1167 (9th Cir. 2011) (collateral-consequences doctrine did not apply in constitutional challenge to "Don't Ask, Don't Tell" policy because, although discharged service members may have lost several benefits due to their separation, "missed benefits are not legal penalties from past conduct"). And in any event, it is not within the ambit of federal courts to direct the course of such internal military affairs. *See, e.g.*, *Mindes v. Seaman*, 453 F.2d 197, 201–02 (5th Cir. 1971) ("Courts should defer to the superior knowledge and experience of professionals in matters such as promotions or orders directly related to specific military functions."). That rule should apply with even greater force here, where the harm Plaintiffs claim regarding Plaintiff Stone's coursework is nebulous at best.[3]

The same holds true with respect to Plaintiff Marcenelle, who missed a promotion opportunity, yet has now been granted the Special Selection Board he requested in order to revisit that selection process. *See* ALCGOFF 042/23 ¶ 9 (June 8, 2023), App'x 017 (establishing that a selection board will convene on September 18, 2023 to consider Plaintiff Marcenelle for promotion to Lieutenant); Memorandum to Michael C. Marcenelle, LTJG re Special Selection Board Determination ¶¶ 3–4 (June 15, 2023), App'x 021 (explaining that the Lieutenant selection board will also be designated as a special selection board). If he is selected for promotion, Plaintiff

---

[3] As Defendants have noted, *see* Defs.' MTD Reply, ECF No. 74, at 3, 4 n.3, it appears that Plaintiff Stone's vaccination status did not, as a matter of policy, preclude him from participating in the training, *see* Third Suppl. Decl. of LTJG Alaric Stone, ECF No. 73, at 6 ¶ 5, and there is no clear relationship between his missing coursework and his (overwhelmingly positive) evaluation, *see* Officer Evaluation Report, ECF No. 73, at 9.

Marcenelle will receive pay, benefits, and rank with the same effective date as if he had been selected for promotion by his first selection board. *See* 14 U.S.C. § 2120(d); *see also* Memorandum to Michael C. Marcenelle, LTJG re Special Selection Board Determination ¶ 4, App'x 021 (confirming this fact). Plaintiffs cannot short-circuit that administrative process with preemptive appeals to this Court. *See Hodges v. Callaway*, 499 F.2d 417, 419–20 (5th Cir. 1974) (requiring that a plaintiff first exhaust all "available intraservice corrective measures" before bringing to federal court claims implicating "internal military affairs" (quoting *Mindes*, 453 F.2d at 201)). And even setting aside considerations of procedural regularity, this Court lacks authority to substitute its judgment for that of the appointing authorities. *See, e.g., Orloff v. Willoughby*, 345 U.S. 83, 92 (1953) ("Whether Orloff deserves appointment is not for judges to say and it would be idle, or worse, to remand this case to the lower courts on any question concerning his claim to a commission.").

Finally, to the extent Plaintiffs' true concern is that they face reputational harms due to their association with this case and their refusal to become vaccinated, *cf.* Pls.' MTD Opp'n, ECF No. 72, at 9 (claiming Defendants "permit[] harm to Plaintiffs' service reputation"), those fears are too speculative and inchoate to sustain Plaintiffs' claim for relief. *See Danos v. Jones*, 652 F.3d 577, 584 (5th Cir. 2011) ("[W]here reputational injury is the lingering effect of an otherwise moot aspect of a lawsuit, no meaningful relief is possible and the injury cannot satisfy the requirements of Article III." (quotation omitted)). Indeed, Plaintiffs' reputational concerns are belied by the record. *See, e.g.*, Officer Evaluation Report, ECF No. 73, at 9 (recommending Plaintiff Stone for promotion); Memorandum to Michael C. Marcenelle, LTJG re Special Selection Board Determination ¶¶ 3–4, App'x 021 (providing path to promotion for Plaintiff Marcenelle); ALCGOFF 042/23 ¶ 9, App'x 017 (stating that the "opportunity of selection" is 95 percent). Their

bare desire for "a court order specifically recognizing the unlawful treatment of religious objections in the Coast Guard," Pls.' MTD Opp'n, ECF No. 72, at 11, is a blatant and improper invitation to have this Court "declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before." *California v. San Pablo & Tulare R. Co.*, 149 U.S. 308, 314 (1893).

Similarly, for reasons Defendants have already stated in their briefs, none of the other exceptions to mootness save Plaintiffs' request for preliminary-injunctive relief from mootness. In particular, just as the Fifth Circuit concluded in *U.S. Navy SEALs*, the voluntary-cessation exception has no application here. *See* 2023 WL 4362355, at *7. For one thing, as Defendants have explained, their rescission of the challenged vaccination requirements was not voluntary.[4] But through their actions, Defendants have made clear that they accept the NDAA's directive and are committed to implementing it fully and fairly. Thus, there can be no reasonable expectation that Defendants will subject Plaintiffs to the same allegedly unlawful policy in the future. *See Already*, 568 U.S. at 92; *U.S. Navy SEALs*, 2023 WL 4362355, at *7.

Nor can Plaintiffs invoke the mootness exception for cases capable of repetition yet evading review. Again, Plaintiffs offer no meaningful evidence to suggest that Defendants intend to require them to become vaccinated against COVID-19. And the record belies Plaintiffs' insistence that they had insufficient time to sue and obtain relief in this case. Plaintiffs allege that

---

[4] Plaintiffs appear to accept that the Secretary of Defense's rescission was involuntary, but they strenuously contest the voluntariness of the Coast Guard Defendants' actions. *See, e.g.*, Pls.' MTD Opp'n, ECF No. 70, at 1, 16–17. But prior to rescission, Plaintiffs repeatedly characterized the Coast Guard's actions as being in lockstep with the broader military. *See* Pls.' Prelim. Inj. Br., ECF No. 5, at 2 (claiming that "[t]he military branches all operate under the same general policy of discrimination against religious service members"). Their protestations now that the Coast Guard somehow stands apart from the rest of the military ring hollow. Why else, then, was it necessary to name the Secretary of Defense as a Defendant?

15

their religious accommodation requests were denied in May 2022, yet they waited four months to file this suit. *See* Compl. ¶ 5. And once Plaintiffs filed it on September 16, their preliminary injunction and class certification motions were fully briefed less than a month later. *See* Pls.' Prelim. Inj. Reply Br., ECF No. 38 (Oct. 14, 2022). Any suggestion that this case could not be litigated in the time available ignores Plaintiffs' own delay in bringing suit.

In sum, because the COVID-19 vaccination requirement that Plaintiffs challenged no longer exists, and because they face no credible risk of further enforcement of that requirement in light of new policies formally prohibiting such enforcement, Plaintiffs' motion for a preliminary injunction against the COVID-19 vaccination requirement has become moot.

**3.** For all the reasons Defendants have explained *supra* and elsewhere in the record, it should make no difference to the Court's mootness analysis whether Plaintiffs' complaint requests relief beyond an injunction against the COVID-19 vaccination requirement; this case is moot because there is no meaningful relief—injunctive or otherwise—that this Court can provide to Plaintiffs from that now-defunct requirement.

As they concede, Plaintiffs requested only prospective forms of relief in this case, namely: (1) declarations that Defendants' COVID-19 vaccination requirement was unlawful under RFRA, the First Amendment, and the APA; (2) injunctions prohibiting Defendants from enforcing their COVID-19 vaccination requirement or otherwise "taking any adverse action against [Plaintiffs or putative class members] on the basis of this lawsuit or of [any related] request for religious accommodation" from the vaccination requirement, and (3) relief incidental to any such declaratory or injunctive relief. *See* Compl. at 66 (prayer for relief).[5] The third category of relief

---

[5] Plaintiffs also sought "reasonable attorneys' fees, costs, and other costs and disbursements" and "all other and further relief to which Plaintiffs may be entitled." Compl. at 66. But requests for costs and fees cannot sustain an otherwise moot case. *See* Fed. R. Civ. P.

16

is, by its nature, wholly derivative of the other two—if declaratory and injunctive relief are unavailable, then Plaintiffs cannot obtain other incidental relief. And as discussed above, because there is no longer a COVID-19 vaccination requirement to enjoin, Plaintiffs' request for injunctive relief as to that requirement is moot.

So too is Plaintiffs' request for declaratory relief. "[A]lthough a plaintiff seeking damages may avoid mootness even if injunctive relief is no longer available to him or her, the plaintiff 'must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future,' when merely pursuing declaratory relief." *Manzo-Hernandez v. Saucedo*, No. 21-40034, 2021 WL 5627068, at *3 (5th Cir. Nov. 30, 2021) (quoting *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003)). For all the reasons discussed *supra*, there is no such continuing harm or threat of harm here. Pursuant to formal policies, Defendants have ordered that any Plaintiff with an adverse action in his file attributable to that Plaintiff's noncompliance with the COVID-19 vaccination requirement shall have that action removed from his personnel file. Pursuant to yet other policies, Plaintiffs who missed training and advancement opportunities will no longer be disqualified owing to their vaccination status. And going forward, no plaintiff will be required to receive the COVID-19 vaccine under the now-rescinded August 2021 policy or be disciplined for declining it. Plaintiffs have therefore received all the relief for which they could have hoped in their suit. As a result, there no longer remains a live case or controversy under Article III.

---

56(d) (request for costs and fees are to be filed after judgment). And Plaintiffs cannot use a general prayer for relief to "extract late in the day" a claim for relief "solely to avoid otherwise certain mootness." *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 71 (1997); *cf. Herndon v. Upton*, 985 F.3d 443, 449 (5th Cir. 2021) (Oldham, J., concurring) (noting that "mootness is a function of a party's requested relief—not the theoretical possibility that a party could request or receive something").

In maintaining otherwise, Plaintiffs' post-rescission theory of injury boils down to the assertion that their careers will be impeded by Defendants' past imposition of the COVID-19 vaccination requirement, either because Plaintiffs missed certain training, credentialing, or advancement opportunities they could not pursue while the vaccination requirement was in effect or because, absent a judicial order condemning Defendants' policy, their military superiors will view them in a negative light for having requested religious exemptions from the vaccination requirement.  For redress, Plaintiffs invoke their complaint's request for an injunction against "adverse action . . . on the basis of this lawsuit or of Plaintiffs' or any member's request for religious accommodation related to the Mandates," and they urge this Court to, in effect, transform itself into an Article III human-resources office, wielding the extraordinary hammer of an injunction (against a component of the Armed Forces, no less) to quash such nuisances as stray references to vaccination status in personnel files, redline evaluations by military commanders' that Plaintiffs deem insufficiently glowing, and dispense new commissions for military officers. As Defendants have explained, relief of this sort is not encompassed within the complaint.  Indeed, nothing about an order finding Defendants' COVID-19 vaccination requirement invalid and enjoining its application to Plaintiffs would directly redress Plaintiffs' varied desires to bolster evaluations, update personnel files, and promote into new officer grades.

Even if that kind of relief were encompassed within Plaintiff's complaint, it would remain unavailable—Plaintiffs cannot sustain their challenge with requests that are not in the Court's power to grant.  Plaintiffs identify no concrete, nonspeculative harms flowing from their various paperwork injuries, and they cannot request an otherwise advisory opinion simply to persuade others as to the rightness of their position in this litigation.  Nor is it within the power of the Court to dispense promotions and rewrite performance assessments on behalf of military commanders.

*See, e.g., Orloff v. Willoughby*, 345 U.S. 83, 92 (1953) ("Whether Orloff deserves appointment is not for judges to say and it would be idle, or worse, to remand this case to the lower courts on any question concerning his claim to a commission."); *see also Austin v. Navy SEALs 1-26*, 142 S. Ct. 1301, 1302 (2022) (Kavanaugh, J., concurring) ("As the Court has long emphasized, . . . the 'complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments." (quoting *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973))). And a declaratory judgment opining on the validity of a former vaccination policy would have no practical effect on Plaintiffs—it would not require them to be promoted to new positions; it would not require them to be placed into their desired training courses; it would not require Defendants to clear Plaintiffs' personnel files of unrelated administrative remarks; and it would not affect Plaintiffs' professional reputations. It would not even require the granting of religious accommodations from the prior COVID-19 vaccination policy, as that policy no longer exists and there can be no exemptions from a nullity. To the extent Plaintiffs would seek to raise claims of injury from Defendants' post-recission actions—such as the potential denial of a promotion to Plaintiff Marcenelle by his Special Selection Board—those claims must be pursued by filing a new case, based on the new facts relevant to those claims, rather than attempting to fit them into a challenge to a now-defunct policy.

Dated: July 13, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Branch Director

JOSHUA E. GARDNER
Special Counsel

/s/ *Cody T. Knapp*
CODY T. KNAPP (NY Bar #5715438)
Trial Attorney
United States Department of Justice
Civil Division
Federal Programs Branch
1100 L Street NW
Washington, D.C. 20530
Tel.: (202) 532-5663
Fax: (202) 616-8460
Email: cody.t.knapp@usdoj.gov

*Counsel for Defendants*