**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **ERIC JACKSON**, **ALARIC STONE**, and **MICHAEL MARCENELLE**, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>**ALEJANDRO N. MAYORKAS**, in his official capacity as Secretary of Homeland Security, **LLOYD J. AUSTIN**, **III**, in his official capacity as Secretary of Defense, **LINDA L. FAGAN**, in her official capacity as Commandant of the Coast Guard, and **BRIAN K. PENOYER**, in his official capacity as Assistant Commandant for Human Resources of the Coast Guard,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:22-CV-00825-P |

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION AND IN OPPOSITION TO MOTION TO DISMISS**

## TABLE OF CONTENTS

I.   The *SEALs* holding provides support for Plaintiffs. ........................................................ 1

   A.   Background and history of the *SEALs* case. ................................................................. 1

   B.   The July 6 *SEALs* ruling sustains the preliminary injunction and the February 2022
       panel decision. ........................................................................................................................... 3

   C.   The July 6 *SEALs* ruling is critically distinguishable on key factual points. ................. 4

       1.   *The Navy's and Coast Guard's policies are crucially different.* ............................. 4

       2.   *The voluntary cessation doctrine applies entirely differently in this case.* ............. 6

   D.   The July 6 *SEALs* ruling did not speak to "capable of repetition yet evading review." 11

II.   Plaintiff's Motion for Preliminary Injunction is not moot. ................................................. 12

III.   This case, including the request for declaratory relief, is not moot even if the claims for
      injunctive relief were somehow moot. .............................................................................. 14

IV.   Conclusion. ....................................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Allied Home Mortg. Corp. v. U.S. Dep't of Hous. & Urb. Dev.*,
618 F. App'x 781 (5th Cir. 2015) (unpublished) .................................................................. 15

*Amerisure Ins. Co. v. Thermacor Process, Inc.*,
No. 4:20-CV-01089-P, 2021 WL 2695143 (N.D. Tex. Apr. 6, 2021) ................................. 1, 14

*Austin v. U.S. Navy SEALs 1-26*,
142 S. Ct. 1301 (2022) ............................................................................................................ 2

*Connell v. Shoemaker*,
555 F.2d 483 (5th Cir. 1977) .............................................................................. 1, 14, 15, 16

*Dailey v. Vought Aircraft Co.*,
141 F.3d 224 (5th Cir. 1998) ............................................................................................... 13

*DeFunis v. Odegaard*,
416 U.S. 312 (1974) .............................................................................................................. 18

*F.C.C. v. Fox Television Stations Inc.*,
586 U.S. 239 (2012) .............................................................................................................. 17

*Firefighters Loc. Union No. 1784 v. Stotts*,
467 U.S. 561 (1984) ........................................................................................................ 12, 13

*Freedom From Religion Found., Inc. v. Abbott*,
58 F.4th 824 (5th Cir. 2023) ............................................................................................... 18

*Johnson v. City of Opelousas*,
658 F.2d 1065 (5th Cir. 1981) ............................................................................................. 16

*Los Angeles Cnty. v. Davis*,
440 U.S. 625 (1979) ................................................................................................................ 6

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) .............................................................................................................. 14

*Mendoza-Flores v. Rosen*,
    983 F.3d 845 (5th Cir. 2020) ................................................................. 18

*Mindes v. Seaman*,
    453 F.2d 197 (5th Cir. 1971) ................................................................... 3

*Penthouse Int'l, Ltd. v. Meese*,
    939 F.2d 1011 (D.C. Cir. 1991) ............................................................... 3

*Sibron v. New York*,
    392 U.S. 40 (1968) ................................................................................. 16

*Spencer v. Kemna*,
    523 U.S. 1 (1998) ................................................................................... 16

*True the Vote, Inc. v. Internal Revenue Serv.*,
    831 F.3d 551 (D.C. Cir. 2016) ............................................................... 14

*U.S. Navy SEALs 1-26 v. Austin*,
    594 F. Supp. 3d 767 (N.D. Tex. 2022) .................................................... 2

*U.S. Navy SEALs 1-26 v. Biden*,
    578 F. Supp. 3d 822 (N.D. Tex. 2022) .................................................... 1

*U.S. Navy SEALs 1-26 v. Biden*,
    No. 22-10077, 2023 WL 4362355 (5th Cir. July 6, 2023).............................. *passim*

*U.S. Navy SEALs 1-26*,
    27 F.4th 336 (5th Cir. 2022) ............................................................... 2, 4

*United States v. W.T. Grant Co.*,
    345 U.S. 629 (1953) ............................................................................... 19

## Other Authorities

H.R. 2670 at §§ 525, 526 ......................................................................... 7

United States Navy, "COVID-19 Updates,"
    https://www.navy.mil/Resources/COVID-19-Updates/. ....................... 11

United States Coast Guard, "Mandatory Vaccination for Military Members FAQs,"
https://www.uscg.mil/Coronavirus/Information/Article/2753898/mandatory-vaccination-for-military-members-faqs/,
https://web.archive.org/web/20230714015149/https://www.uscg.mil/Coronavirus/Information/Article/2753898/mandatory-vaccination-for-military-members-faqs/ ..................................... 10

Statement of Administration Policy on H.R. 2670, July 10, 2023,
https://www.whitehouse.gov/wp-content/uploads/2023/07/H.R.-2670-NDAA.pdf .................. 8

Stephen Sorace, "Biden thanks Coast Guard rescuer for hurricane heroics days before firing over vaccine policy," Fox News, Oct. 2, 2022, https://www.foxnews.com/politics/biden-thanks-coast-guard-rescuer-hurricane-heroics-days-before-firing-vaccine-policy ............................ 18

**Treatises**

Wright & Miller § 3533.3.1 Injunctions, Declaratory Judgments, Other Specific Relief, 13C Fed.
Prac. & Proc. Juris. § 3533.3.1 (3d ed.) .................................................................................. 17

Pursuant to the Court's July 11, 2023 Order (ECF No. 92), in this supplemental brief Plaintiffs explain how:

1.      The Fifth Circuit's holding in *U.S. Navy SEALs 1-26 v. Biden*, No. 22-10077, 2023 WL 4362355 (5th Cir. July 6, 2023) provides support for Plaintiffs. The Court declined to vacate the existing injunction against the Navy or to hold the plaintiffs' request for permanent injunctive relief was moot, and the key facts supporting dismissal of the appeal as moot are not present here. Unlike the Plaintiffs in this case, the plaintiffs in *SEALs* "received everything" they asked for. 2023 WL 4362355, at *4.

2.      Plaintiffs' Motion for Preliminary Injunction is not moot following the Coast Guard's partial, voluntary rescission of its COVID-19 vaccination policy. The Coast Guard has not rescinded various aspects of its vaccination policy, and Plaintiffs face ongoing, adverse, collateral practical consequences.

3.      Even if their claims for injunctive relief were moot (which they are not), Plaintiffs seek relief—declaratory relief—beyond an injunction. The claims for declaratory relief are not moot. *Amerisure Ins. Co. v. Thermacor Process, Inc.*, No. 4:20-CV-01089-P, 2021 WL 2695143, *3 (N.D. Tex. Apr. 6, 2021); *Connell v. Shoemaker*, 555 F.2d 483, 486-88 (5th Cir. 1977).

**I.      The *SEALs* holding provides support for Plaintiffs.**

A.      <u>Background and history of the *SEALs* case.</u>

In January 2022, the district court preliminarily enjoined enforcement of the Navy's COVID-19 vaccine mandate against the named plaintiffs, 35 special warfare service members. *U.S. Navy SEALs 1-26 v. Biden*, 578 F. Supp. 3d 822 (N.D. Tex. 2022). The Navy appealed and sought a stay pending appeal. In February 2022, a Fifth Circuit panel denied the stay pending appeal and held that the Navy's categorical denial of religious exemptions to its vaccine mandate likely violated the Religious Freedom Restoration Act, and that the plaintiffs' claims were

justiciable. *U.S. Navy SEALs 1-26*, 27 F.4th 336 (5th Cir. 2022). In March 2022, the Supreme Court partially stayed the injunction, but only "insofar as it precludes the Navy from considering respondents' vaccination status in making deployment, assignment, and other operational decisions." *Austin v. U.S. Navy SEALs 1-26*, 142 S. Ct. 1301 (2022). Three days later, the district court entered a class-wide preliminary injunction against the Navy, and stayed it only "insofar as it precludes the Navy from considering respondents' vaccination status in making deployment, assignment, and other operational decisions." *U.S. Navy SEALs 1-26 v. Austin*, 594 F. Supp. 3d 767 (N.D. Tex. 2022). The Navy appealed the class-wide injunction, and the Fifth Circuit considered the appeals together.

On December 23, 2022, the President signed into law the 2023 National Defense Authorization Act (NDAA). The NDAA required the Secretary of the Department of Defense (DoD) to rescind the COVID-19 vaccine mandate applicable to all military branches under his command: the Navy, Air Force, Army, Space Force, and Marines. This NDAA provision did *not* apply to the Coast Guard, because the Coast Guard is not under the Secretary of the DoD; it is under the Secretary of the Department of Homeland Security.

The Coast Guard was the first to rescind its vaccine mandate, and it did so voluntarily on January 9, 2023. It then withdrew its rescission the same day. The next day, the Secretary of the DoD then rescinded the mandate applicable to the Navy, Air Force, Army, Space Force, and Marines. The Coast Guard then waited one more day before re-rescinding its vaccine mandate on January 11, giving the mere appearance that it was following the DoD's lead. ECF No. 72 at 3.

In light of the NDAA's statutory requirement, the Navy asked the Fifth Circuit to dismiss the *SEALs* appeal as moot and to vacate the panel's February 2022 denial of the stay pending appeal.

2

Last week, a Fifth Circuit panel dismissed the appeal as moot and declined to vacate the stay panel's denial of the stay pending appeal. *SEALs*, 2023 WL 4362355. It also declined to hold that the case itself was moot. *Id.* at *6. The panel thus sustained the preliminary injunction against the Navy and the panel's February 2022 stay denial. Each remains binding and precedential, except only "insofar as it precludes the Navy from considering respondents' vaccination status in making deployment, assignment, and other operational decisions." It also placed great weight on the fact the Navy has specifically and formally promulgated its own policy declaring that "COVID-19 vaccination status shall not be a consideration in assessing individual service member suitability for deployment or other operational missions" (NAVADMIN 038/23 (Feb. 15, 2023)), and indicated that it might not have deemed the appeal moot in the absence of such policy. *SEALs*, 2023 WL 4362355, at *4 n.6 & *5 n.7.

The panel found that the NDAA "required" rescission of the Navy mandate, the Navy "eradicate[d] the effects of the mandate," and the voluntary cessation doctrine did not save the case from mootness in light of the NDAA statutory change. *Id.* at *4-6. The panel remanded for further consideration of any claims that remain justiciable. *Id.* at *6.

B.    The July 6 *SEALs* ruling sustains the preliminary injunction and the
       February 2022 panel decision.

The July 6 *SEALs* ruling specifically declined to vacate the Fifth's Circuit's February 2022 stay panel ruling. Among other things, the February 2022 stay panel ruling found the case was justiciable ("it is likely that, following RFRA's enactment, abstention based on the *Mindes* [*v. Seaman*, 453 F.2d 197 (5th Cir. 1971)] test is no longer permissible"; "even under *Mindes*, Plaintiffs' claims are justiciable"), plaintiffs were likely to succeed on the merits, plaintiffs face irreparable harm absent an injunction and the military would not be irreparably harmed absent a stay, and a stay would substantially harm plaintiffs and would disserve public interests. *SEALs*,

3

27 F.4th at 346-353. All of those holdings support Plaintiffs here as discussed at length previously. *See* ECF No. 5 at 16, 24, 25; ECF No. 38 at 17, 19; ECF No. 72 at 22.

      C.    <u>The July 6 *SEALs* ruling is critically distinguishable on key factual points.</u>

            1.    <u>*The Navy's and Coast Guard's policies are crucially different.*</u>

The Fifth Circuit found that the Navy had mooted its own appeal by rescinding all of its "draconian" policies designed to "force servicemembers . . . to receive COVID-19 vaccines against their sincere religious obligations." *SEALs*, 2023 WL 4362355, at *4. The Coast Guard *still* has not rescinded all parallel policies negatively affecting the Coast Guard Plaintiffs here. The differences between the Navy and Coast Guard are numerous.

For example, in February 2023, the Navy revised various discriminatory policies including those related to promotions. The Secretary of the Navy issued a memorandum directing the Navy "to modify future selection board convening orders and precepts to include language ensuring the boards do not consider any adverse information related solely to COVID-19 vaccine refusal in cases in which an accommodation was requested." *SEALs* ECF No. 230-2 at 2-3. Commanders were also required to "clearly communicate" the rescission and "provide any necessary amplifying guidance." *Id.* The Navy also issued NAVADMIN 065/23 providing this "necessary amplifying guidance." *SEALs* ECF No. 233-1. NAVADMIN 065/23 begins by reiterating that vaccination status "shall not be a consideration in assessing individual Service member suitability for deployment or other operational assignments." Even more importantly, NAVADMIN 065/23 requires that "selection board precepts will include language that precludes consideration of adverse information regarding COVID-19 vaccine refusal in the case of Service members who submitted religious accommodation requests." *Id.* at 3. Between the February memorandum by the Secretary of the Navy and NAVADMIN 065/23, Navy commanders have received the clear message that vaccination status shall not hinder a Sailor's career.

The Coast Guard has issued nothing of the sort. Coast Guard selection boards and commanders remain free to, and will, consider vaccination status, absent relief to the contrary. In seeking his promotion, Plaintiff Marcenelle, for example, currently remains subject to discriminatory treatment based on his vaccination status. *See* ECF No. 83. If he were a member of the Navy, he would not be subject to this discriminatory treatment; the Navy, unlike the Coast Guard, now forbids it. As Admiral Lee explained in his declaration, promotion selection boards "frequently consider material beyond just the candidate's performance records," and such information "has a direct effect on the selection or nonselection of a candidate." ECF 73 at 253. The Navy established safeguards that the Coast Guard refused and continues to refuse to implement.

As another example, the Navy *fully expunged* any service member's record of not being vaccinated. *See SEALs* ECF 230-2 at 2 ("*any* adverse information related to [service members'] COVID-19 vaccine refusal shall be *removed* from the service record") (emphasis added). The Coast Guard, by contrast, did no such thing. Instead, it replaced some (not all) of the administrative remarks, known as CG-3307s, relating to vaccination status, with a copy of a memorandum that referenced the CG-3307s themselves and noncompliance with the vaccine mandate. ECF No. 72 at 16; ECF No. 68-4. Plaintiff Stone still has a CG-3307, referencing his unvaccinated status, in his file. ECF No. 87-1. He specifically requested that it be removed, and the Coast Guard refused. *Id.* Navy service members face no such harm.

As another example, and "critically," the Navy has "ruled out vaccination status to deny deployment eligibility, training opportunities, and assignments." *SEALs*, 2023 WL 4362355, at *4. In fact, the Navy issued two policy changes to this effect and is further restrained by a separate order from the DoD. *Id.* at *4 & *4 n.6. The Navy unequivocally forbade commanders

from exercising discretion on deployment eligibility for unvaccinated Sailors. *Id.* This "binding" directive to Commanders, among the other policy changes, is essential in putting unvaccinated service members on "equal footing" with vaccinated service members. *Id.*

Despite the Coast Guard's repeated assurances that it is aligning itself with the DoD, it still has not issued similar guidance forbidding commander discretion on deployment eligibility for unvaccinated Coast Guard members. Plaintiffs have consistently emphasized this discrepancy in filings since the DoD first issued its rescission earlier this year. *See* ECF No. 72 at 5-6, 18; ECF No. 90 at 4.

Moreover, unvaccinated Navy service members can no longer be asked about their vaccination status or be subject to quarantine. *See SEALs* ECF 223 at 15 (new Navy policy "end[s] [COVID-19] screening testing based on vaccination status" and "end[s] the requirement to ask about COVID-19 vaccination status."). The Coast Guard, by contrast, has still trained its safety officers, at least as of March 2023, to quarantine unvaccinated personnel but not vaccinated personnel, and to verify personnel vaccination as part of unit inspections. ECF No. 73 at 9-10.[1]

> 2.    *The voluntary cessation doctrine applies entirely differently in this case.*

The Fifth Circuit also considered the voluntary cessation doctrine, which can save an otherwise moot case where there's evidence of "litigation posturing," "bad faith or insincerity" or "gamesmanship." *SEALs*, 2023 WL 4362355, at *4-6. The Court considered the instances of the Navy "eradicat[ing] the effects of the mandate" and found "no signs of such gamesmanship here." *Id.* at *5. *See also Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979) (applying

---

[1] See also Section II below.

voluntary cessation doctrine where "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur . . . and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.") (cleaned up).

In this case, by contrast, there is ample evidence of litigation posturing, bad faith, insincerity, and gamesmanship (and as discussed above the Coast Guard has *far* from completely and irrevocably eradicated the effects of the mandate). For example, the Coast Guard admits its behavior can reasonably be expected to recur, and indeed some discriminatory policies continue to this day as discussed above.

Moreover, the President's administration recently and publicly reiterated that it considers the military vaccine mandates to be "lawful orders" and that it remains obstinately opposed to redressing harms to service members caused by its repeatedly-enjoined vaccination policies. Just this week, the House is debating its version of the National Defense Authorization Act for Fiscal Year 2024. And although the draft 2024 NDAA COVID-19 vaccine provisions, just like those in the 2023 NDAA before it, do not apply to members of the Coast Guard (*see*, *e.g.*, H.R. 2670 at § 525(c) (defining "covered Armed Force" to mean "the Army, Navy, Marine Corps, Air Force, or Space Force," with no mention of the Coast Guard)[2]), the House bill introduces multiple protections for "covered individuals" who lawfully chose to remain unvaccinated, including outlawing any adverse action on the basis of vaccination status (§ 525), requiring on-demand reinstatement of involuntarily separated members (*id.*), prioritizing review of discharge

---

[2] *See also* ECF No. ECF No. 50 at 2 n.1; ECF No. 52 at 2; ECF No. 55; ECF No. 72 at 10; ECF 87 at 4 n.1 (discussing why the 2023 NDAA COVID-19 vaccine provisions do not apply to the Coast Guard). The Coast Guard Authorization Act (Pub. L. No. 117-263, Div. K, § 11001 et seq. (2022)) applies to the Coast Guard and did not direct the rescission of (or even mention) the Coast Guard's vaccine mandate. ECF 87 at 4 n.1. The Coast Guard's rescission of its mandate was entirely voluntary.

characterizations for those involuntarily separated (§ 526), notifying separated members of their option to rejoin the military (§ 527), and exempting military service academy students from having to repay tuition if they were expelled for choosing to remain unvaccinated (§ 564).

Yet, the Administration strenuously opposed these remedial measures, rather than welcoming the opportunity to move past its unlawful policies, to improve morale, and to begin softening the blow of its shockingly-low recruitment numbers. In its view, even outlawing adverse actions for past vaccine noncompliance "sets a dangerous precedent that not following lawful orders is an option for service members." Statement of Administration Policy on H.R. 2670, July 10, 2023, at 5.[3] Moreover, the Administration objects that these provisions will constrain it from "again requir[ing] [COVID-19] vaccination." *Id.* This persistence reveals that the Administration would return to its old, illegal ways unless enjoined from doing so.

As another example, the timing of the Coast Guard's changes is suspicious. It voluntarily rescinded the mandate after this case was filed and issued guidance loosely tracking—though far from fully satisfying—Plaintiffs' demands, enough to claim that it is providing all the relief Plaintiffs seek without actually doing so. The Coast Guard's rescission guidance has closely tracked (though never completely resolved) many of Plaintiffs' specific demands throughout this litigation. For example:

- In Plaintiffs' January 2023 notice of ALCOAST 012/23, which halted involuntary separations (ECF No. 64), Plaintiffs identified multiple unresolved issues, including expungement of records and continued denial of training and promotions. The very next day, the Coast Guard issued a brief message, ALCGOFF 005/23, cancelling certain training restrictions. ECF No. 68-2.

---

[3] https://www.whitehouse.gov/wp-content/uploads/2023/07/H.R.-2670-NDAA.pdf.

- In February 2023, Plaintiffs highlighted the absence of any guidance to restore previously-denied officer promotions, such as Plaintiff Marcenelle's (which was otherwise nearly automatic for a Lieutenant Junior Grade Officer like him with a clean, let alone standout, record, according to his unrebutted testimony, ECF No. 73, Appx. at 10-11), and to expunge adverse records like the DoD services already had done. ECF No. 67. A week later, Defendants issued a memorandum directing expungement of certain adverse records. ECF No. 68-4.

- In March 2023, Plaintiffs (ECF No. 72) argued that the case was not moot in part because Plaintiff Jackson's file still recorded an adverse vaccination record. ECF No. 72 at 5. On April 12, two days before filing their Reply in further support of their Motion to Dismiss, Defendants finally removed that record. ECF No. 75.

- Also in March 2023, Plaintiffs raised Plaintiff Marcenelle's pending special selection board (SSB) as an example of a collateral consequence still needing resolution, thus proving that the case is not moot. ECF No. 72 at 7. In response, on April 12, the Coast Guard issued ALCGPSC 058/23 offering an SSB to unvaccinated officers. ECF No. 83 at 2. Defendants conspicuously failed to notify this Court and Plaintiffs' counsel of this new guidance in their Reply. ECF No. 83 at 2.

- On April 24, 2023, Plaintiffs requested assistance of the Court in resolving Plaintiff Marcenelle's outstanding SSB request, which had been pending without

9

action since March 22. ECF No. 77 at 6. Only afterwards did the Coast Guard

grant the SSB request. ECF No. 82-1.[4]

The Coast Guard claims it rescinded its mandate to "align" with the DoD. ECF No. 70 at

8, 10. But why did it choose to align with the DoD? The Coast Guard was not required to align

itself with the DoD (ECF Nos. 50, 52, 53, 55), the Coast Guard expressly distanced itself from

the DoD, for example, in connection with the Inspector General's findings of unlawful religious

accommodation processes (ECF No. 38 at 4 n.5; ECF No. 30 at 15, 39), the Coast Guard has not

aligned itself with a number of the Navy's efforts to "eradicate" its vaccination policies as

discussed above, and the Coast Guard continues to maintain the mandate was lawful,

appropriate, and served the interests of health and readiness. The reality is: the Coast Guard did

not want to be the only service branch left defending an increasingly unpopular and legally

indefensible mandate, and timed its rescission and guidance accordingly.

Moreover, as Plaintiffs have previously noted (ECF No. 90 at 3-4 n.2), on its official,

public website, the Coast Guard still claims the vaccine is "mandatory" and makes no mention of

the mandate's rescission. Even after Plaintiffs noted this in a filing last month, the false claim is

still up on the Coast Guard's website.[5] This is further evidence of the Coast Guard's disregard—

if not contempt—for the many service members, including Plaintiffs, who objected to the

vaccine mandate. Meanwhile, unlike the Coast Guard's website, the Navy's website since at least

---

[4] And yet the Coast Guard offered no assurance that Plaintiff Marcenelle will receive the SSB any time in the foreseeable future. ECF No. 83 & 83-1. The Coast Guard committed to no timeline of any kind. *Id.* It would not even provide an estimate. *Id.* To this day, the Coast Guard has failed to provide any timeline or estimated timeline.
[5] https://www.uscg.mil/Coronavirus/Information/Article/2753898/mandatory-vaccination-for-military-members-faqs/ (last visited July 13, 2023);
https://web.archive.org/web/20230714015149/https://www.uscg.mil/Coronavirus/Information/Article/2753898/mandatory-vaccination-for-military-members-faqs/.

February 2023 has acknowledged the "removal of the Navy's COVID-19 vaccine mandates at all levels."[6]

There is other, abundant evidence of the Coast Guard's bad faith. For example, the Coast Guard misrepresents the very nature of its cessation, claiming the NDAA "required" the CG to rescind the mandate when in fact it was provably voluntary. ECF No. 70 at 1, 7. And, fundamentally, the entire sham religious accommodation process evidences the Coast Guard's bad faith. *See* ECF Nos. 5 & 38.

>    D.    The July 6 *SEALs* ruling did not speak to "capable of repetition yet evading review."

The recent *SEALs* decision specifically declined to consider the "capable of repetition yet evading review" exception, so it offers no support to either Plaintiffs or the Coast Guard on that point. *SEALs*, 2023 WL 4362355, at *6. As discussed previously, that exception also saves this case from any mootness. ECF No. 72 at 30-31; ECF No. 90 at 4. In sum, the Coast Guard admits that it may implement the mandate again and thus there's a reasonable expectation that Plaintiffs would be subjected to the same unlawful action again; by prolonging a sham religious accommodation process as long as possible to delay the inevitable denials, then quickly rescinding any challenged mandate relatively soon after a service member is able to file suit and litigate the case, the Coast Guard could again illegally pressure religious believers to submit to any new mandate in the future; and if and when the Coast Guard were to reinstitute the mandate, there is no guarantee Plaintiffs or any putative class members would even be afforded a fair opportunity to seek religious accommodations. *Id.* Indeed, the Coast Guard's own website still

---

[6] https://www.navy.mil/Resources/COVID-19-Updates/ (last visited July 13, 2023).

claims the vaccine mandate remains in effect, even after being reminded that this claim is misinformation. *See* Section I.C. above.

## II.   Plaintiff's Motion for Preliminary Injunction is not moot.

Plaintiffs' Motion for Preliminary Injunction is not moot. Plaintiffs remain in need of injunctive relief as to certain ongoing and imminent adverse collateral practical consequences, including regarding Plaintiff Marcenelle's promotion and Plaintiff Stone's CG-3307, as detailed above and in previous filings.

While the mandate itself has been rescinded, Plaintiffs remain subject to various collateral practical consequences, *i.e.*, "some tangible, concrete effect, traceable to the injury, and curable by the relief demanded." *Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1019 (D.C. Cir. 1991). The Supreme Court has thus found non-mootness where a city rescinded a racially discriminatory hiring policy but, "those employees have not been made whole" who had been fired as a result of that policy, including because "seniority [] has not been restored." *Firefighters Loc. Union No. 1784 v. Stotts*, 467 U.S. 561, 571 (1984).

Here, for example, Plaintiff Stone, the recent top graduate of the Coast Guard Academy, was downgraded by more than a point on his officer comparison scale in his last evaluation, moving from "one of few distinguished officers" down to a "center of mass" officer. ECF No. 73, Appx. at 5-6. While the Coast Guard speculated that this might have resulted from the mere fact that he now works at a "desk job" (*i.e.*, high-level intelligence) with different supervisors (ECF No. 74, Br. at 4 n.4),[7] it failed to rebut his sworn testimony that he was specifically told this downgrade occurred in essential part because of a missed training, which in turn had

---

[7] The Coast Guard failed to mention Plaintiff Stone took this position only so he could increase his chances of obtaining an accommodation and thus continue to serve his country in the Coast Guard. *See* ECF No. 6 at 18-19 (Stone declaration).

occurred only because of his vaccination status. ECF No. 73, Appx. at 5-6. Moreover, the Coast Guard mischaracterizes the evaluation as "overwhelmingly positive" (ECF No. 74 at 4 n.4) because it specifically "recommends" Stone for promotion, but "recommends" is an internal, Coast Guard-specific term of art for a relatively lukewarm position on a service member's future promotion prospects (which is the minimum included on nearly every Junior Officer evaluation), in contrast to a "Must-select"-for-promotion term which Stone had obtained on his prior evaluation (ECF No. 73, Appx. at 5-6.). Plaintiff Stone seeks only a *prospective* injunction that would prevent the Coast Guard from using his missed training as a result of his COVID-19 vaccination status, or any other past or present consequence of his COVID-19 vaccination status, as a basis for downgrading him in future evaluations, and preventing him from timely receiving the necessary training for his career progression (especially given that delayed training itself places him at a long-term disadvantage). To that end, Plaintiffs would be willing to present live testimony to shed further light on these and other ongoing practical consequences—entirely glossed over by the Coast Guard in its prior filings—and confirm that Plaintiffs' claim for injunctive relief (preliminary and/or permanent) is not moot.[8]

Plaintiffs face various other collateral practical consequences that need to be remedied—including the still-pending promotion for Plaintiff Marcenelle and still present CG-3307 in Plaintiff Stone's record—as detailed above in Section I.C.1. The Coast Guard's failure to eradicate these collateral consequences necessarily means that Plaintiffs' requests for preliminary and permanent injunctive relief are still live. *See Firefighters*, 467 U.S. at 571; *Dailey v. Vought*

---

[8] In *SEALs* the Fifth Circuit remanded for consideration of any claims that "remain justiciable." *SEALs*, 2023 WL 4362355, at *6. Plaintiffs' claims here are justiciable, as they have discussed at length previously. ECF No. 72 at 20-23. *See also SEALs*, 27 F.4th at 346-353 (finding claims justiciable).

*Aircraft Co.*, 141 F.3d 224, 227 (5th Cir. 1998); *see also, e.g.*, *True the Vote, Inc. v. Internal Revenue Serv.*, 831 F.3d 551, 562-63 (D.C. Cir. 2016) (claims for injunctive and declaratory relief from IRS discrimination in processing tax-exemption applications of certain conservative organizations were not moot, in part because "it is absurd to suggest that the effect of the IRS's unlawful conduct . . . has been eradicated when two of the appellant-plaintiffs' applications remain pending").

### III.   This case, including the request for declaratory relief, is not moot even if the claims for injunctive relief were somehow moot.

As discussed above the Coast Guard has rescinded its mandate but has not rescinded various collateral consequences of that mandate. Even if the claims for injunctive relief were somehow moot (which they are not), Plaintiffs' pending claims for declaratory relief are not moot given the "continuing practical consequences" of the Coast Guard's wrongful conduct. *Connell*, 555 F.2d at 486-88; *see also Amerisure Ins. Co.*, 2021 WL 2695143, at *3 (declaratory judgment claims not rendered moot where defendant "made no indication that its decision was final, unconditional, and irrevocable").

To obtain a declaratory judgment, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). An action for declaratory judgment can remain live even if an injunction claim becomes moot, as discussed below.

For starters, in *Connell* the Fifth Circuit recognized that while a claim for injunctive relief was moot as against a since-rescinded military determination of discrimination without due process of law, a claim for *declaratory judgment* was *not* moot because of the ongoing practical

14

consequences of that determination—including harm to plaintiffs' "public image" as local business owners in multiple enterprises and as civic and political leaders (including "*whatever* [political] aspirations" one of the plaintiffs "might yet harbor" that "have almost certainly been undercut by the same stigma"). *Connell*, 555 F.2d at 486-87 (emphasis added); *see id.* at 487 ("[T]he imputation of bigotry implicit in the Army's widely publicized sanctions against [plaintiffs] could not but harm their reputations and, concomitantly, their livelihoods" with clients). The Court recognized that such "collateral consequences" meant "that a 'live' controversy . . . subsists" at least for purposes of declaratory judgment. *Id.*

The same is true here given the ongoing collateral consequences of the Coast Guard's COVID-19 vaccine mandate as detailed above. And indeed, just as the reputational harm in *Connell* arose from a potentially erroneous determination of discrimination on an issue central to the plaintiffs' livelihoods, here Admiral Lee has attested (without rebuttal) to the importance of "service reputation" in these military Plaintiffs' professional lives and the severe and practical harms that can result from being service members who the Coast Guard insists violated a "lawful order" (thus forever rendering them "law-breakers") absent a court order to the contrary. ECF No. 73, Appx. at 249-243.

An unpublished opinion questioned whether *Connell* remains good law with respect to whether reputational harm alone can sustain a live controversy. *See Allied Home Mortg. Corp. v. U.S. Dep't of Hous. & Urb. Dev.*, 618 F. App'x 781, 787-88 (5th Cir. 2015) (unpublished). But that case did *not* reverse *Connell* and in fact held that the reputational harm at issue there was being inflicted by *ongoing* administrative proceedings against the plaintiff *separate and apart from* a since-rescinded proceeding the plaintiff had originally challenged, an injunction against which would thus not have actually redressed the alleged injury. *Id.* Further, the Court

15

questioned *Connell* only in light of *Spencer v. Kemna*, 523 U.S. 1, 16 n.8 (1998), which involved the *separate* doctrine of "collateral *legal* consequences" in the context of whether a habeas corpus petition becomes moot after completion of a challenged sentence, *id.* at 12 (emphasis added), which is obviously inapplicable here. In *that* context the Supreme Court has stated that reputational damage alone, absent "concrete collateral consequences of conviction," does not sustain a live controversy. *Id.* at 16 n.8. There the Court looks for automatic *legal* consequences that would accrue from a potentially wrongful conviction or sentence, as distinct from *practical* consequences. *Id.* at 13.

Indeed, *Connell* itself expressly *disclaimed* reliance on the doctrine of "collateral legal consequences (as contrasted with collateral pragmatic consequences)," where one of plaintiffs' arguments was that if the military makes an additional determination of discrimination in the future, there could be *harsher legal sanctions* for an alleged "second offense" if the Court doesn't first determine the legality of the alleged original offense. *Connell*, 555 F.2d at 486 n.3. The Court held that likelihood of such "collateral *legal* consequences" was too "remote." *Id*. Yet the Court still found non-mootness because of *pragmatic* collateral consequences, which can include reputational harm. *Id.* at 486-88.[9]

Wright & Miller also recognizes these two separate and fundamentally distinct types of collateral consequences, observing that the collateral-consequences doctrine "was initially

---

[9] Thus the Fifth Circuit's decision in *Johnson v. City of Opelousas*, 658 F.2d 1065, 1068-69 (5th Cir. 1981) is readily distinguishable. There the Court held that a plaintiff's constitutional challenge to a local curfew ordinance for minors became moot when he reached the age of majority because of the "*social nature*" of the possible consequences for his prior *juvenile court* conviction of the curfew policy, because a "criminal case is moot only if it is shown that there is no possibility that any collateral *legal* consequences will be imposed on the basis of the challenged conviction." *Johnson*, 658 F.2d at 1068 (emphasis added) (quoting *Sibron v. New York*, 392 U.S. 40, 57 (1968)); *see also Spencer*, 623 U.S. at 12 (citing and quoting *Sibron*).

developed to ensure review of expired criminal sentences, but it has since been applied in civil

cases as well"; specifically, "[c]ollateral consequences may be found in the prospect that a

judgment will affect future litigation or administrative action," *and* "*practical* consequences also

may suffice, such as *adverse impact on a party's reputation*." § 3533.3.1 Injunctions,

Declaratory Judgments, Other Specific Relief, 13C Fed. Prac. & Proc. Juris. § 3533.3.1 (3d ed.)

(emphasis added). Wright & Miller specifically cited the Supreme Court's decision in *F.C.C. v.*

*Fox Television Stations Inc.*, 586 U.S. 239 (2012), where the Court held that the FCC's "policy

of forbearance" (*i.e.*, that "it will not consider [] prior indecent broadcasts 'in any context'") did

not moot due process claims against its previously unannounced prohibition on fleeting

expletives and brief indecency, given a combination of (a) the FCC's "statutory power" to take

such prior offenses into account when considering levels of penalties to administer, especially

given its prior finding of wrongdoing by Fox, and (b) "reputational injury" that "can result" with

viewers and advertisers from "findings of wrongdoing," especially given the "strongly

disapproving terms" the FCC used in orders reprimanding a particular broadcast by Fox. *Id.* At

254-56.

 The same is true here given the ongoing practical consequences detailed above, including

to Plaintiffs' all-important "service reputation," coupled with the Coast Guard's ongoing legal

authority to rescind any litigation (or mid-litigation) promises not to discriminate based on

COVID-19 vaccination status in certain limited ways, especially in light of its (and the

Commander in Chief's) ongoing position that Plaintiffs are putative law-breakers.

 Moreover, here, Plaintiffs' ongoing consequences "stem from" the original COVID-19

vaccine mandate itself (and specifically from the Coast Guard's categorical denial of all religious

exemptions thereto, in blatant violation of RFRA), and not from any additional policies that are

not the basis of their lawsuit. *See Mendoza-Flores v. Rosen*, 983 F.3d 845, 848 (5th Cir. 2020) ("Collateral consequences must stem from the underlying cause of action to salvage justiciability."); *cf. id.* at 847-848 (finding mootness where the consequence of inadmissibility was a collateral legal consequences of the plaintiff's removal order, *not* of the "withholding-only decision" that Plaintiff challenged). The Coast Guard cannot deny that the collateral consequences at issue stem from the original vaccine mandate.

Further, the Fifth Circuit very recently recognized the appropriateness of maintaining a declaratory judgment even after an injunction became moot where the underlying decision was, as a judicial precedent, inherently "valuable to the legal community as a whole," and "particularly valuable because it might bear on future state policies respecting a similar subject, and any related disputes." *Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 837 (5th Cir. 2023). And last week, as noted, the Fifth Circuit's *SEALs* decision reached a similar conclusion by refusing to vacate its denial of a stay of the district court's original preliminary injunction (finding a likely violation of RFRA), given the importance of the precedent for the public interest. *SEALs*, 2023 WL 4362355, at *6.

The same is all the more true here, where the Coast Guard is the last remaining military branch that has not been judicially reprimanded for its blatant violation of RFRA via its *en masse* denial of requests for religious accommodation to its COVID-19 vaccine mandate (including its unflinching willingness to discharge the three representational Plaintiffs in this case, as well as fellow putative class members).[10] While public importance alone does not make a live case or controversy, *see e.g.*, *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974), there is a great "public

---

[10] Stephen Sorace, "Biden thanks Coast Guard rescuer for hurricane heroics days before firing over vaccine policy," Fox News, Oct. 2, 2022, https://www.foxnews.com/politics/biden-thanks-coast-guard-rescuer-hurricane-heroics-days-before-firing-vaccine-policy.

interest in having the legality of the practices settled" where there are ongoing collateral consequences that render the underlying claim live. *Id.* at 18 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). As detailed above, Plaintiffs are suffering exactly those consequences, while the Biden Administration continues to maintain that they allegedly violated a "lawful order" and must continue to suffer tangible and devastating consequences as a result. If ever a case cried out for declaratory judgment, this is it.

## IV.   Conclusion.

The recent *SEALs* decision provides support for Plaintiffs. Plaintiffs' Motion for Preliminary Injunction is not moot following the Coast Guard's partial, voluntary rescission of its COVID-19 vaccination policy. Even if their claims for injunctive relief were somehow moot, Plaintiffs seek relief—declaratory relief—beyond an injunction that is not moot.

Dated: July 13, 2023


Respectfully submitted,

/s/ *Michael G. McHale*

Stephen Crampton, *pro hac vice*
THOMAS MORE SOCIETY – Senior Counsel
PO Box 4506
Tupelo, MS 38803
(662)255-9439
scrampton@thomasmoresociety.org

Michael G. McHale, *pro hac vice*
THOMAS MORE SOCIETY – Counsel
10506 Burt Circle, Ste. 110
Omaha, NE 68114
(402)501-8586
mmchale@thomasmoresociety.org

Adam S. Hochschild, *pro hac vice*
Hochschild Law Firm
THOMAS MORE SOCIETY – Special Counsel
PO Box 401
Plainfield, VT 05667
(314)503-0326
adam@hochschildlaw.com

Mary Catherine Hodes, *pro hac vice*
THOMAS MORE SOCIETY – Special Counsel
112 S. Hanley Rd., Second Floor
Clayton, MO 63105
(314)825-5725
mchodes@thomasmoresociety.org

Paul M. Jonna, *pro hac vice*
LiMandri & Jonna LLP
THOMAS MORE SOCIETY – Special Counsel
P.O. Box 9120
Rancho Santa Fe, CA 92067
(858)759-994
pjonna@limandri.com

Charles W. Fillmore
State Bar # 00785861
H. Dustin Fillmore III
State Bar # 06996010
THE FILLMORE LAW FIRM, L.L.P.
201 Main Street, Suite 700
Fort Worth, TX 76102
(817)332-2351
chad@fillmorefirm.com
dusty@fillmorefirm.com

Nathan Loyd, *pro hac vice*
THOMAS MORE SOCIETY – Special Counsel
5101 Old Highway 5, Box 442
Lebanon, GA 30146
(559)744-3664
nathaniel.loyd@thomasmoresociety.org

*Counsel for Plaintiffs*

20