**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| **ERIC JACKSON**, **ALARIC STONE**, and )<br>**MICHAEL MARCENELLE**, on behalf of )<br>themselves and all others similarly situated, )<br>)<br>Plaintiffs, )<br>v. )<br>)<br>**KRISTI NOEM**, in her official )<br>capacity as Secretary of Homeland Security, et al., )<br>)<br>Defendants. ) | Case No. 4:22-cv-00825-P |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' BRIEF**
**DESRCIBING PURPORTEDLY APPROPRIATE RELIEF**

Pursuant to this Court's order, Plaintiffs submitted a brief detailing "the relief they believe the Court can afford them." Pls.' Br. Describing Relief the Court Can Afford Them at 1, ECF No. 122 ("Pls.' Br."). Plaintiffs theory of harm and the resulting requested relief, however, is premised on a misunderstanding of the Coast Guard's record-keeping system. And, as explained below, Plaintiffs' fear of potential harm to their career advancement is highly speculative because they have either retired from the Coast Guard or have since been promoted. Nevertheless, Defendants remain committed to continue discussing the terms of a possible settlement in this case, and hope that their corrections of Plaintiffs' misunderstanding will assist settlement discussions moving forward.

In their briefing, Plaintiffs argue that they face ongoing harm to their career advancement because they discovered certain paper records in their military files, including CG-3307 administrative remarks, that reference their failure to comply with the Coast Guard's COVID-19 vaccination requirement. But Plaintiffs misunderstand the Coast Guard's record-keeping system. First, Plaintiffs' concern regarding paper copies of CG-3307s in their records is misplaced because

1

the Coast Guard no longer keeps any official paper copies of military records, and any review of the plaintiffs' military record for selection, promotion, or assignment is limited to only the digital record. And while Plaintiffs protest that their official digital records maintain references to their failure to comply with the Coast Guard's COVID-19 vaccination requirement, these references in a member's digital records are not viewable by members of selection and promotion boards or assignment officers. Plaintiffs thus do not explain how these records, which Coast Guard is required by federal records law to maintain, could harm them. Finally, to the extent any service member discovered remaining CG-3307s in their digital records, this was human error that the Coast Guard corrected immediately upon notification. Such human error does not counsel in favor of granting the requested relief, particularly in light of the Coast Guard's diligent efforts to implement the rescission of the COVID-19 vaccination requirement.

## BACKGROUND

### I.    The Supplemental Evidence

On August 17, 2023, this Court dismissed this case as moot in light of the Coast Guard's rescission of the COVID-19 vaccination requirement. *See* ECFs No. 98, 99. The Court found that Plaintiffs had demonstrated neither "continuing harm" nor "a real-and-immediate threat of repeated injury in the future." ECF No. 98 at 4 (citing *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003)). Plaintiffs appealed that dismissal. *See* ECF Nos. 103, 105. While this case was pending appeal, Plaintiffs filed—and the Fifth Circuit granted—three separate motions to supplement the record on appeal. *See id.* at 2.

First, on February 8, 2024, the Fifth Circuit granted Plaintiffs' unopposed motion to supplement the record with (1) a notice issued by the Coast Guard to Plaintiff Michael Marcenelle indicating that he had been promoted and stating that an Officer Evaluation Report—which

reflected that he had previously been denied a promotion based on his failure to comply with the COVID-19 vaccination requirement—was removed from his record, and (2) a declaration from Marcenelle. *See* Order of U.S. Court of Appeals for the Fifth Circuit, ECF No. 108 (docketing motion and supplemental evidence); Ex. A to Appellants' Unopposed Mot. to Suppl. the Record, ECF No. 108-1 at 14; Ex. B to Appellants' Unopposed Mot. to Suppl. the Record, ECF No. 108-1 at 16 ("First Marcenelle Decl."). Marcenelle's declaration states that the Officer Evaluation Report had previously been stored in the Personnel Electronic Records Management System ("iPERMS"),[1] but has since been removed; that there is no indication in his iPERMS that the Officer Evaluation Report "ever existed"; and that the Navarro Memo[2] is in his iPERMS. First Marcenelle Decl. ¶¶ 2–7.

On April 29, 2024, the Fifth Circuit granted Plaintiffs' second unopposed motion to supplement the record with (1) a declaration from Plaintiff Eric Jackson and (2) a second declaration from Marcenelle. *See* Order of U.S. Court of Appeals for the Fifth Circuit, ECF No. 109 (docketing motion and supplemental evidence); Ex. A to Appellants' Second Unopposed Mot. to Suppl. the Record, ECF No. 109-1 at 16 ("Jackson Decl."); Ex. B to Appellants' Second Unopposed Mot. to Suppl. the Record, ECF No. 108-1 at 21 ("Second Marcenelle Decl."). Both declarations attest that, on April 23, 2024, and April 25, 2024, respectively, Jackson and Marcenelle found copies of CG-3307s related to their failure to comply with the COVID-19 vaccination requirement in their paper records. *See* Jackson Decl. ¶¶ 3, 6; Second Marcenelle Decl. ¶ 5. Both declarations further attest that the CG-3307s were not present in their digital iPERMS. *See* Jackson Decl. ¶¶ 4, 6; Second Marcenelle Decl. ¶ 6.

---

[1] As explained in more detail below, *see infra* pp. 7–8, iPERMS is the Coast Guard's exclusive military records system.

[2] The Navarro Memo is explained further below. *See supra* pp. 8–9.

Finally, on June 21, 2024, the Fifth Circuit granted Plaintiffs' unopposed motion to supplement the record with (1) a sealed declaration from a pseudonymous Coast Guard Lieutenant, (2) a sealed copy of a CG-3307 referencing his failure to comply with the COVID-19 vaccine, and (3) a sealed copy of a second CG-3307 referencing his failure to comply with the COVID-19 vaccine. *See* Order of U.S. Court of Appeals for the Fifth Circuit, ECF No. 111; *see also* Ex. A to Appellants' Mot. to Suppl. the Record & for Leave to File Under Seal (filed under seal) ("Coast Guard Lieutenant Decl."). The unidentified Coast Guard Lieutenant is not a plaintiff in this case. His declaration states that he received two CG-3307s referencing his failure to comply with the COVID-19 vaccination requirement; that the Coast Guard removed the CG-3307s from his iPERMS and replaced them with the Navarro Memo; and that, in April 2024, the Coast Guard Lieutenant discovered that both CG-3307s had been re-inserted into his iPERMS. *See* Coast Guard Lieutenant Decl. ¶¶ 5–9 (sealed). Coast Guard Lieutenant's declaration further states that he "learned that the Coast Guard had been maintaining a paper copy of [his] personnel data records," but that they "were not present in the paper copy when [he] inspected it." *Id.* ¶ 11.

## II.    The Fifth Circuit's Reversal

On March 20, 2025, a divided panel of the United States Court of Appeals for the Fifth Circuit reversed this Court's determination. ECF No. 117. The Fifth Circuit held that the case was not moot because Plaintiffs' complaint seeks "an order restraining and enjoining Defendants . . . from taking any other illegal adverse action against them based on their unvaccinated status," and Coast Guard "has not issued policies affirmatively protecting the Plaintiffs from discrimination on account of their vaccination status." *Jackson v. Noem*, 132 F.4th 790, 793 (5th Cir. 2025). The Fifth Circuit further noted that Plaintiffs provided a declaration from a retired Coast Guard Vice Admiral who stated that "the service reputation of those who refused to follow

[the COVID-19 vaccination requirement] is tarnished" "[b]ecause the Coast Guard continues to consider the vaccination mandate a 'lawful order.'"  *Id.* at 794.

Following the Fifth Circuit's reversal, on May 13, 2025, this Court ordered Plaintiffs to submit a brief "describing what relief they believe the Court can afford them."  ECF No. 119 at 2. Plaintiffs did so on May 20, 2025.  ECF No. 122.  In that brief, Plaintiffs assert that "the Court can grant relief comparable to that afforded to Navy service members under [the] settlement with the Navy [in *U.S. Navy SEALs 1–26 v. Austin*, No. 4:21-cv-1236 (N.D. Tex.)], enjoin consideration of COVID-19 vaccine status in making personnel and selection decisions, require fair treatment in board decisions, and declare that the vaccine mandate was unlawful as implemented."  *Id.* at 1.[3] In support of this relief, Plaintiffs cite the supplemental evidence submitted on appeal to assert that they suffer the following "ongoing harm": (1) "the Coast Guard still maintains paper copies of CG-3307s in some service members' records even while it claimed it removed all copies;" (b) "the Coast Guard unnecessarily inserted into some service members' records the Navarro memo, which references the CG-3307s and past alleged noncompliance"; and (c) "the Coast Guard improperly reinserted copies of CG-3307s back into some service members' records after initially removing them."  *Id.* at 7.

---

[3] Plaintiffs premise much of their requested relief on the class-action settlement in *U.S. Navy SEALs 1–26 v. Austin*, No. 4:21-cv-1236 (N.D. Tex.).  That relief, of course, was pursuant to an agreement by the parties, not by a Court order, and thus does not assist this Court in determining "what relief . . . the Court can afford [Plaintiffs]."  ECF No. 119 at 2.  In any event, that settlement included the Navy's agreement to re-review personnel records; to post certain language and training information on the Navy's public website related to religious accommodation requests; to prohibit consideration of adverse information related solely to COVID-19 vaccine refusal in selection boards; to clarify that a service member could resubmit a previously denied religious accommodation request following a change in circumstances or policy; and to pay attorneys' fees and costs of $1.5 million.  *See* Settlement Agreement in *U.S. Navy SEALs 1–26* ¶¶ 17–24 (attached as Exhibit A).

5

On May 22, 2025, this Court issued an order noting that the supplemental evidence "established that many of the assertions made by Defendants" in Defendants' motion to dismiss "were incorrect," ECF No. 124 at 1, and directed the parties to conduct mediation.

## ANALYSIS

Plaintiffs' theory of injury is that certain information discovered in their military records could harm their "career advancement." Pls.' Br. at 5. Preliminarily, none of the three Plaintiffs can establish that they face any harm to their career advancement because each of them has either voluntarily left the Coast Guard or has since been promoted. Regardless, Plaintiffs' theory of harm is premised on a misunderstanding of the Coast Guard's record-keeping system. None of the information that Plaintiffs allegedly discovered in their records is viewable by members of selection and promotion boards or assignment panels, and Plaintiffs do not otherwise explain how the supplemental evidence establishes ongoing harm. Finally, Plaintiffs' suggestion that the Coast Guard is operating in bad faith ignores the significant and diligent efforts by the Coast Guard to implement the rescission of the COVID-19 vaccination requirement.

**I.    Plaintiffs cannot establish that they face any harm to career advancement because they have all either retired or since been promoted.**

None of the three Plaintiffs can establish that they face any career harm—imminent or otherwise—because each of them has either voluntarily left the Coast Guard or has since been promoted. Jackson voluntarily retired from the Coast Guard on September 1, 2024, after serving for twenty years. Decl. of Michael Lemorie ¶ 2 (attached as Exhibit B). Jackson has not indicated any intent to return to the Coast Guard. Jackson's claims are thus independently moot and he should be dismissed from this case. *See, e.g.*, *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 72 (1997) (finding employee's discrimination challenge was rendered moot when employee voluntarily quit). And despite Plaintiffs' subjective concern with "career advancement," Pls.' Br.

6

at 5, Plaintiff Alaric Stone and Marcenelle were both promoted in 2024.  Stone was promoted to lieutenant on May 20, 2024, and remains on active duty.  Lemorie Decl. ¶ 3.  On December 19, 2023, Marcenelle was retroactively promoted effective April 29, 2023—the date that he would have been promoted had he been selected for promotion in 2022.  *Id.* ¶ 4.  Marcenelle received back pay and allowances based on that retroactive promotion.  *Id.*  Plaintiffs do not and cannot explain how these three Plaintiffs face any ongoing harm from the now-defunct COVID-19 vaccination requirement.

## II.     The supplemental evidence does not establish any threat of harm.

In any event, Plaintiffs' conclusions about their supplemental evidence are inaccurate.  A Coast Guard member has official records stored in a single location: an Official Military Personnel File, which is maintained in iPERMS.  *See* Lemorie Decl. ¶ 5.  iPERMS is a "permanent, historical, and official record of a member's military service."  *Id.*  Records stored in iPERMS are Federal Records, which must be preserved by law.  *See* 44 U.S.C. § 3101–07.  Critically, iPERMS is not viewable by members of selection and promotion boards or assignment officers.  *See* Lemorie Decl. ¶ 8.  In addition, prior to 2022, Coast Guard members had a Personnel Data Record, which was a paper record maintained by the service member's assigned Servicing Personnel Office.  *See id.* ¶ 6.  Personnel Data Records were maintained in paper format only.[4]  As of 2022, however, the Coast Guard no longer maintains Personnel Data Records.  *See id.*  In 2022 and 2023, the Coast Guard converted any permanent military personnel records contained in a Personnel Data Record

---

[4] Some members also had a Personnel Data Record maintained by the service member's local Unit, "which function[ed] as a 'working' copy of the" member's Personnel Data Record "when the unit was geographically separated."  Lemorie Decl. ¶ 6.  Like the Personnel Data Record maintained by the Servicing Personnel Office, Personnel Data Records maintained by the local Unit were in paper format only.

into electronic form and loaded them into iPERMS.  *See id.*  Accordingly, Coast Guard members now have official records stored only in iPERMS.

Plaintiffs' supplemental evidence is irrelevant in light of this context.  First, Jackson and Marcenelle attest that they discovered copies of their CG-3307s in their Personnel Data Records in April 2024, even though these CG-3307s had been removed from iPERMS.  Jackson Decl. ¶ 2; Second Marcenelle Decl. ¶¶ 3–5.  Plaintiffs protest that these paper copies are "compelling evidence of ongoing harm."  Pls.' Br. at 7.  Even setting aside that Jackson is no longer a member of the Coast Guard and Marcenelle was retroactively promoted six months *before* he found these paper copies, the Coast Guard no longer officially maintains Personnel Data Records—and, thus, no longer officially maintains *any* paper records.  *See* Lemorie Decl. ¶ 6.  To the extent Jackson and Marcenelle located paper copies of Personnel Data Records in April 2024, such copies are not official and are not viewable by members of selection or promotions boards or assignment officers. *See id*.  Plaintiffs fail to explain how such unofficial records, unviewable by members of selection or promotions boards or assignment officers, could harm their careers.

Second, Marcenelle attests that the "Navarro [M]emo," which references his prior CG-3307s related to noncompliance with the COVID-19 vaccination requirement, was inserted into his iPERMS.  *See* First Marcenelle Decl. ¶ 4.  The "Navarro Memo" refers to a memorandum signed on February 4, 2023, by the Acting Assistant Commandant for Human Resources, Dr. Donna M. Navarro, directing the Coast Guard Personnel Service Center to remove all CG-3307 administrative remarks referencing a member's failure to comply with the Coast Guard's COVID-19 vaccine requirement from active duty and reserve service members' personnel data records. *See* Lemorie Decl. ¶ 7.  Where a service member had a CG-3307 related to failure to comply with the COVID-19 vaccination requirement in his or her iPERMS, the Personnel Service Center

removed the CG-3307 and replaced it with the Navarro Memo. *See id.* ¶ 8. This replacement was made for the purpose of "document[ing] the authority for changing this federal record" and "to comply with federal record keeping requirements." *Id.*

Plaintiffs allege that the Navarro Memo harms their career advancement. *See* Pls.' Br. at 7. But the Navarro Memo can only be viewed in iPERMS by the member himself and records management specialists; it is not viewable by members of selection and promotion boards or assignment officers. *See* Lemorie Decl. ¶ 8. Plaintiffs fail to explain how their career advancement could be harmed by records that are not viewable by members of selection and promotion boards and assignment officers.

Finally, the unidentified Coast Guard Lieutenant states that he discovered copies of two CG-3307s in his iPERMS. Preliminarily, the Coast Guard Lieutenant is not a plaintiff in this case. As Defendants have explained, Plaintiffs cannot sustain a moot lawsuit by reference to the interests of putative class members. *See* Defs.' Br. in Supp. of their Mot. to Dismiss at 11, ECF No. 70; *Murray v. Fid. Nat'l Fin., Inc.*, 594 F.3d 419, 421 (5th Cir. 2010) ("As a general principle, a purported class action becomes moot when the personal claims of all named plaintiffs are satisfied and no class has been certified."). In any event, the inclusion of these CG-3307s in Coast Guard Lieutenant's iPERMS was a human error that the Coast Guard immediately corrected upon notification. *See* Lemorie Decl. ¶ 9. In particular, the Coast Guard's transfer of all permanent military records from the paper Personnel Data Records into iPERMS, *see supra* pp. 7–8, coincided with the Coast Guard's conversion of CG-3307s into the Navarro memo in iPERMS, *see* Lemorie Decl. ¶ 9. Accordingly, during that overlapping time period, some paper CG-3307s were inadvertently re-uploaded into iPERMS. *See id.* This is what happened for the Coast Guard Lieutenant: his CG-3307s were inadvertently re-uploaded "due to administrative and review

failures." *Id*.  And upon notification, the Coast Guard promptly removed the CG-3307.  *See id*.
¶ 9.  Indeed, the Coast Guard explicitly directed members to conduct a comprehensive review of their record in iPERMS to ensure removal of any administrative remarks related to failure to comply with the COVID-19 vaccination requirement, and to contact their servicing personnel and administrative office to request removal if their record still contained such administrative remarks after March 31, 2023.  *See id*. ¶¶ 7, 10.

Because Plaintiffs' sole alleged ongoing harm is premised on the supplemental evidence, and none of Plaintiffs' supplemental evidence supports a finding of ongoing harm, Plaintiffs accordingly have not established that they are subject to any ongoing harm to warrant the requested relief.

### III.    The Coast Guard has diligently worked to implement the rescission of the COVID-19 vaccination requirement.

Plaintiffs' brief ignores the Coast Guard's diligent efforts to implement the rescission of the COVID-19 vaccination requirement.  Contrary to Plaintiffs' assertion that "the Coast Guard had done nothing to affirmatively prevent the *ad hoc* use of COVID-19 vaccination status in making personnel decisions," Pls.' Br. 7–8, the Coast Guard has made consistent and orderly efforts to erase the effects of the COVID-19 vaccination requirement.

Defendants' motion to dismiss provided a lengthy explanation of the Coast Guard's efforts up through March 10, 2023.  *See* Defs.' Mot. to Dismiss at 3–4.  That included the cancellation of the policies that imposed COVID-19 vaccination requirements for assignments, boards and panels, training, education, and command positions; the removal of past adverse actions and specific administrative remarks relating to COVID-19 vaccination from service members' records; and ensuring that enlisted members on advancement lists whose advancement had been withheld based

on their COVID-19 vaccination status were advanced—among many other things. *See* Decl. of CDR Kia Ausley ¶¶ 2–3 (attached as Exhibit C).

Since then, the Coast Guard has issued additional policies implementing the rescission, including further information about removing adverse actions and administrative remarks. *See id.* ¶¶ 2–3; *see also* ALCGPSC 044/23; ALCGPSC 058/23; ALCGOFF 042/23. The Coast Guard also temporarily created a special team to assist former Coast Guard members who separated either voluntarily or involuntarily due to the previous COVID-19 vaccination requirement to return to service. *See* Ausley Decl. ¶ 4. For returning members, the Coast Guard restored their previous rank, lost or unpaid leave, and any promotions or advancements withheld solely due to their COVID-19 vaccination status (assuming they met all other requirements). *See id.*

On January 27, 2025, the President signed Executive Order 14184, *Reinstating Service Members Discharged Under the Military's COVID-19 Vaccination Mandate*, 90 Fed. Reg. 8761 (Feb. 3, 2025) ("EO 14184"). Following EO 14184, the Coast Guard reinstated the special team to again assist former Coast Guard members who separated either voluntarily or involuntarily due to the previous COVID-19 vaccination requirement to return to service. *See* Ausley Decl. ¶ 5. From 2023 through May 22, 2025, the Coast Guard has reinstated 69 of the 274 members who were involuntarily discharged solely for their COVID-19 vaccination status and an additional 308 members who voluntarily separated while the vaccine mandate was in effect. *See id*.

Moreover, on May 22, 2025, the Coast Guard requested authorization from the Secretary of the Department of Homeland Security to file a group request with the Coast Guard Board for Corrections of Military Records ("BCMR") for the correction of military records for all members separated from the service based solely on their COVID-19 vaccination status who have returned to service. *See id*. Following the Secretary's authorization of the request, the Coast Guard issued

ALCOAST 248/25 on June 2, 2025, which informed all members who were involuntarily separated based on their COVID-19 vaccination status, and who have returned to service, that they would be automatically included in the group application to the BCMR. *See id.*; *see also* ALCOAST 248/25 (Jun. 2, 2025), https://perma.cc/V9C8-GTCA. Once a BCMR grants the request, the Coast Guard intends to award backpay, benefits, bonuses, or other compensation that each member would have earned had they remained on active duty during their period of separation. *See* Ausley Decl. ¶ 5.

In light of these significant and ongoing efforts and the highly speculative harm to Plaintiffs' career advancement discussed above, Plaintiffs' requested relief—including their request for "guidance *prohibiting* the use of COVID-19 vaccination status" by the Coast Guard— is entirely unwarranted. Pls.' Br. at 3.


Dated: June 10, 2025                    Respectfully submitted,

                                        YAAKOV M. ROTH
                                        Acting Assistant Attorney General
                                        Civil Division

                                        ALEXANDER K. HAAS
                                        Director
                                        Federal Programs Branch

                                        JEAN LIN
                                        Special Litigation Counsel
                                        Federal Programs Branch

                                        /s/ *Cassandra Snyder*
                                        CASSANDRA M. SNYDER
                                        Trial Attorney
                                        United States Department of Justice
                                        Civil Division, Federal Programs Branch
                                        1100 L Street, N.W.
                                        Washington, DC 20005
                                        Tel: (202) 451-7729

Email: cassandra.m.snyder@usdoj.gov

*Counsel for Defendants*