UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **ERIC JACKSON**, **ALARIC STONE**, and **MICHAEL MARCENELLE**, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br> v. <br><br> **KRISTI NOEM**, in her official capacity as Secretary of Homeland Security, et al., <br><br> Defendants. | Case No. 4:22-cv-00825-P |

## PLAINTIFFS' REPLY BRIEF
## REGARDING RELIEF THE COURT CAN AFFORD THEM

The Coast Guard wrongly insists that "Plaintiffs' sole alleged ongoing harm is premised on the supplemental evidence" (Dkt. 128 at 10)—ignoring much of Plaintiffs' May 20 brief (Dkt. 122) and the Fifth Circuit's recent decision in this case that "it is still possible for a court to grant effectual relief" without any mention of the supplemental evidence. *Jackson v. Noem*, 132 F.4th 790, 794 (5th Cir. 2025). But the Coast Guard nonetheless misapprehends the ongoing relevance of that evidence.

Unsurprisingly, then, the Coast Guard's response fails to show any reason why the Court cannot grant the relief Plaintiffs set forth in their brief describing relief the Court can afford them. As Plaintiffs noted in their brief, the Court can provide at least the following relief: (1) order the Coast Guard to fix the sham religious accommodation process; (2) order the Coast Guard to issue affirmative protections forbidding ad hoc discrimination; (3) order the Coast Guard to ensure removal of all documents indicating adverse actions for alleged non-compliance; and (4) declare that the mandate was unlawful as implemented.

Each of these forms of relief is within the Court's power to grant, and the Coast Guard failed to provide any of them despite its purportedly "diligent" efforts to implement the rescission of the COVID-19 vaccination requirement. Dkt. 128 at 10. The case is not moot. While Plaintiffs are engaging in good faith in settlement discussions with Defendants, Plaintiffs remain prepared to begin discovery.

### I. The Coast Guard's brief tellingly ignores Plaintiffs' claims regarding the sham religious accommodation process.

Plaintiffs' Complaint includes numerous allegations regarding the Coast Guard's sham religious accommodation process itself, including the Coast Guard's "policy, practice, or procedure of not conducting 'to the person' assessment[s] to which service members are entitled under [the Religious Freedom Restoration Act] and/or the First Amendment." *See, e.g.*, Dkt. 1 at 138, ¶¶172, 263, 265(a), (b), (c), and (d). The Fifth Circuit held these allegations prevent mootness in light of *Crocker v. Austin*, 115 F.4th 660 (5th Cir. 2024), which in turn held that a similar challenge remained live where the military "had not made changes to its allegedly 'sham religious accommodation process for vaccinations.'" *Jackson*, 132 F.4th at 794 (quoting *Crocker*, 115 F.4th at 668). Yet in a de facto concession, the Coast Guard's brief fails to even *mention* Plaintiffs' claims regarding the religious accommodation process itself or the Fifth Circuit's decision on this point. *See* Dkt. 128 at 1-12.

To be sure, the Coast Guard's response included one paragraph in the Ausley Declaration providing skeletal data about a small number of vaccine-related religious accommodations granted in 2023 and 2024. Dkt. 128-3 at ¶7. But the declaration says nothing about whether the Coast Guard is still basing religious accommodation denials on *generalized interests* such as "military readiness," rather than on whether it has a compelling interest in denying *the individual religious accommodation itself. See Fulton v. City of Philadelphia, Pa.*, 593 U.S. 522, 541 (2021) ("Rather

than rely on 'broadly formulated interests,'" strict scrutiny requires "'scrutiniz[ing] the asserted harm of granting specific exemptions to particular religious claimants'") (quoting *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 431 (2006) (analyzing RFRA)); *see also Crocker*, 115 F.4th at 666 (*Mindes* deference not applicable to RFRA claims in military context).

The Coast Guard admits to the existence of a recent settlement with a class of Navy service members requiring *the Navy* to correct its sham religious accommodation process. Dkt. 128 at 5 n.3. But the Coast Guard wrongly insists that because this example was part of a settlement, it somehow "does not assist this Court in determining" what a court can still order. *Id.* That is false. "Once a right and a violation have been shown, the scope of a district court's equitable powers . . . is broad" and "flexib[le]." *Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 15 (1971). The Navy settlement is thus relevant. *See also Pederson v. Louisiana State Univ.*, 213 F.3d 858, 874 (5th Cir. 2000) (affirming requirement that LSU submit Title IX "Compliance Plan" and finding LSU failed to show sufficient commitment to providing "fair accommodation for both their female and male athletes in the long run"). The Coast Guard's failure to even mention the religious accommodation process itself confirms this Court can still order effective relief.

## II. Plaintiffs' promotions and retirement do not negate their need for relief.

Citing Marcenelle's and Stone's promotions to Lieutenant, the Coast Guard argues that because it has remedied some past harm, there is somehow no possibility of present or future harm. This is a specious argument, implying that the Coast Guard will never consider Marcenelle and Stone for promotion again. By regulation, the Coast Guard should again consider Marcenelle and Stone for promotion after three years as Lieutenants. Dkt. 73 at 136 (COMDTINST M1000.3A ¶3.A.4.a). If it does not, or if it considers but rejects them, they can no longer serve. *Id*. at 169 (¶3.B.10.d) ("Lieutenants who twice fail selection for lieutenant commander [the rank after

3

Lieutenant] will be retired"). Given that Marcenelle's promotion was effective April 29, 2023 (Dkt. 128-2 at ¶4), he should be considered for promotion in 2026. Stone promoted on May 20, 2024 (*id.* at ¶3) and should be considered in 2027.

Indeed, the Fifth Circuit credited Vice Admiral Lee's declaration in finding Plaintiffs have sufficiently alleged ongoing reputational harm in the absence of judicial relief. *Jackson*, 132 F.4th at 790. But Vice Admiral Lee attested that "service reputation" is particularly important in seeking promotion to "*higher ranks*" where "there are fewer candidates." Dkt. 73 at 253, ¶8 (emphasis added). That the Coast Guard granted Plaintiffs Marcenelle and Stone *earlier* promotions fails to address this issue—and indeed, the Fifth Circuit already rejected the contrary argument. *See Jackson*, 132 F.4th at 795-796 (Dennis, J., dissenting, arguing that no relief is available because Marcenelle had been promoted).

Nor does Jackson's retirement moot his claims. For example, he still maintains an interest in his reputation, which the Coast Guard tarnished with an accusation that he violated the Uniform Code of Military Justice. Dkt. 122 at 4, 9. *Cf. Connell v. Shoemaker*, 555 F.2d 483, 487 (5th Cir. 1977) (plaintiff properly asserted a declaratory-judgment claim that military's wrongful accusation damaged his reputation and in turn his civilian businesses). Further, Jackson is a retired member of the armed forces. As such, the Coast Guard can still order him back to active duty and even promote him. 14 U.S.C. §§ 2308-2310. The Coast Guard's reliance on *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43 (1997), regarding a *civilian* employee who simply resigned, is therefore misplaced.

### III.   The Coast Guard has not ruled out ad hoc discrimination in other ways.

The Coast Guard also ignores the fact that denial or delay of promotion is not the only harm that a service member could suffer. For example, as Stone has attested, Plaintiffs are reasonably concerned that consideration of vaccination status can deprive them of other opportunities, such

4

as command and leadership positions which are not tied to a promotion in rank. Dkt. 73 at 8. And as the Fifth Circuit recognized, the Coast Guard has not ruled out the consideration of vaccination status in making deployment, training, and assignment decisions. *Jackson*, 132 F.4th at 793-794.

The Coast Guard points to policies adopted "up through March 10, 2023" that "cancel[ed]" mandatory discrimination. Dkt. 128 at 10. But the Fifth Circuit squarely rejected the same argument on appeal. *See Jackson*, 132 F.4th at 794 ("cancel[ing] *mandatory* discrimination" not sufficient) (original emphasis). The Coast Guard also cites policies allegedly adopted "since then." *Id.* at 11 (citing ALCGPSC 044/23; ALCGPSC 058/23; and ALCGOFF 042/23). But the Coast Guard cited the *same* above-cited policies, among others, on appeal. *See* Doc. 39, Resp. Br. at 4, No. 23-11038 (5th Cir.). When asked at oral argument if, under these policies, "any decision based on [COVID-19] vaccination status is unlawful," the Coast Guard's counsel admitted she "c[ould]n't make that representation"; when pressed further if "any Coast Guard official that does take such action will be disciplined," she responded, "No, Your Honor, I can't make that representation." Oral Argument, No. 23-11038 (April 30, 2024), at 22:40. In its published decision, the Fifth Circuit rightly distinguished *the Navy's* lawful orders *forbidding* commanders from engaging in such discrimination, which the Coast Guard has failed to do. *Jackson*, 132 F.4th at 793-94 (citing *Navy SEALs*, 72 F.4th at 673). This Court should reject the Coast Guard's attempt to relitigate this issue on remand.[1]

---

[1] The Coast Guard also cites policies assisting service members who *separated* from the Coast Guard as a result of the COVID-19 vaccine mandate. Dkt. 128 at 11. But it fails to recognize collateral harms to those who *remained* in the military notwithstanding their COVID-19 vaccine status. *Cf.* Hegseth Memo, April 23, 2025 (directing additional remedies for separated *and non-separated* service members in Department of Defense branches "who suffered a wide variety of other career setbacks resulting from their principled refusal to take the COVID-19 vaccine"). https://tinyurl.com/bdztffk6.

### IV. Supplemental evidence further shows that Plaintiffs require relief.

While not mentioned in the Fifth Circuit's decision, the supplemental evidence shows that the Coast Guard's mishandling of adverse records is prone to cause yet more harm.

#### A. Insertion of the Navarro memo in records is harmful and not necessary.

The Coast Guard *still* cannot identify any authority requiring it to maintain the scarlet letter Navarro memoranda *at all*, let alone in the personnel records of unvaccinated servicemembers where commanders and unit administrative personnel can view them. The most it can muster even now[2] is an oblique reference to federal record keeping statutes, 44 U.S.C. § 3101-07. Dkt. 128 at 7. Indeed, this is the first time the Coast Guard has ever cited those statutes, and it remains unable to construct any argument that the statute *requires* it to "document the authority for changing [a] federal record" in the challenged manner, particularly given Plaintiffs *supervening* RFRA and First Amendment rights. Dkt. 128 at 9.

Moreover, as the supplemental evidence shows, the Coast Guard "chang[ed] [a] federal record" when it removed one of Marcenelle's performance evaluations from the same personnel file where it stored a copy of the Navarro memorandum. But it did not file anything "document[ing] the authority" for changing *that* record. Dkt. 108-1 at 2-3. The Coast Guard offers no explanation for why it *must* document removal of Plaintiffs' adverse records, but has no obligation to document removal of Marcenelle's performance evaluation.

With no statutory requirement to maintain these records and the inconsistent application of this supposed rule, the Coast Guard's decision here is wrongful. As a result, the Court has the power to order the destruction of these records. *See*, *e.g.*, *Abdelfattah v. U.S. Dept. of Homeland*

---

[2] Plaintiffs first demanded removal of these scarlet letter memoranda in March 2023 (Dkt. 72 at 10) and have consistently demanded their removal since. *See, e.g.*, Dkt. 122 at 5.

*Sec.*, 787 F.3d 524 (D.C. Cir. 2015) (a case remained "a live controversy" where plaintiff requested DHS expunge certain records, the retention of which would "lead to future deprivation of [plaintiff's] rights."); *Chastain v. Kelley*, 510 F.2d 1232, 1235-1236 (D.C. Cir. 1975) ("[F]ederal courts are empowered to order the expungement of Government records where necessary to vindicate rights secured by the Constitution or statute . . . Such a right may exist if the information . . . was acquired by fatally flawed procedures, or . . . is prejudicial without serving any proper purpose . . .").

The Coast Guard asserts the Navarro memoranda are not part of the "official" records members of selection or promotion boards review and cannot be the basis of any harm. Dkt 128 at 8, 9. To the contrary, Plaintiffs have established that boards consider much more than the records they are "officially" provided. Unrebutted testimony from Admiral Lee explained that commanders' "personal knowledge" of servicemembers "often has a direct effect on the selection or nonselection of a candidate" for promotion. Dkt. 73 at 253 (¶¶ 7-9). The Fifth Circuit cited this same evidence in concluding that this case is not moot. *Jackson,* 132 F.4th at 794. Admiral Lee also explained that commanders "provide[] frank insights to [their] peers when . . . a candidate was not qualified" and proactively offer other leaders their insights into service members' "weaknesses and any disciplinary issues." *Id.* at 252 (¶7). Plaintiffs also presented evidence that files unavailable to a selection or promotion board are nonetheless accessible by their commanders (Dkt. 109-2 at ¶2, Dkt. 109-3 at ¶4, 9). The Coast Guard asserts that the Navarro memoranda are not viewable by "members of promotion boards and assignment panels" (Dkt. 128-2 at ¶8),[3] but critically makes

---

[3] In support of these assertions, the Coast Guard relies on a civilian employee's declaration that is based on "my personal knowledge and upon information that has been provided to me…." Dkt. 128-2 at ¶1. Given this qualifying language, there is no reason to take such declarations at

no mention of *commanders*.

This omission is telling. Commanders can view adverse records indicating noncompliance with the mandate. Commanders relay their knowledge to others, including during selection or promotion boards. And absent a directive not to, board members can base their selection or nonselection for promotion on that knowledge. The Coast Guard does not and cannot refute any of this promotion-related harm.

### B. Adverse remarks continue to cause harm.

The Coast Guard says its failure to eliminate adverse CG-3307 forms from a putative class member's official record was "inadverten[t]" (Dkt. 128-2 at ¶9) and "human error" (Dkt. 128 at 9). But this defense shows that the Coast Guard's remediation was anything but "diligent" and comprehensive. *Id.* at 10. It also proves the Coast Guard cannot meet its "formidable burden" to "demonstrat[e] that it cannot reasonably be expected to do again in the future what it is alleged to have done in the past." *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 242 (2024).

Indeed, the Coast Guard has not shown it has taken sufficient action to "rule out" yet more "human errors."[4] The best it can offer is that it has no more "official" copies of these adverse records. Dkt 128 at 8. This is misdirection. Plaintiffs know that even "unofficial" copies can become "official" given what happened to Coast Guard Lieutenant, whose "unofficial" records nonetheless became "official" when they were reinserted into his digital records. Doc. 113 at ¶4; , No. 23-11038, Dkt. 88 (5th Cir. June 18, 2024) (Appellants' Third Motion to Supplement the Record on Appeal). The Coast Guard now explains that reinsertions happened during a transition

---

face value. Plaintiffs intend to seek discovery related to these assertions and the supposed basis for them, among the various other matters on which Plaintiffs are entitled to seek discovery.

[4] The nature and scope of the Coast Guard's admitted "errors" and its attempts to identify and remedy them are additional proper subjects of discovery.

from *yet another* electronic database where the adverse records were held. Dkt. 128-2 at ¶9. Plaintiffs therefore reasonably suspect that copies of their adverse paperwork still reside in places unknown to them, such as emails, shared drives, file systems, etc. Lemorie's precise recitation of the details of the adverse documents, when they were recorded, and when they were removed (Dkt. 128-2 at ¶9) confirms this suspicion. It also documents another instance of reinsertion previously unknown to Plaintiffs. *Id.* (documenting that Stone's CG-3307 was reinserted in March 2023).

To be clear, removal of these documents is a necessary, but not sufficient, remedy, because as the Court observed, it cannot order commanders to "forget their 'personal knowledge.'" Dkt. 119 at 2. Removal of these records, alongside an order "affirmatively protecting Plaintiffs [and putative class members] from discrimination on account of their vaccination status," *Jackson*, 132 F.4th at 793, and a declaratory judgment that mandate was unlawful as implemented, would eliminate or minimize the harm.[5]

### V.   Conclusion

The Coast Guard's attempt to relitigate issues decided against it on appeal should be rejected. The test for mootness is not whether a defendant has remedied some harms, but whether "it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Jackson*, 132 F.4th at 793 (citing *DeOtte v. Nevada*, 20 F.4th 1055, 1064 (5th Cir. 2021)). This case is not moot. *Id.* Here, the Court can order significant effectual relief, and the Coast Guard has not shown otherwise.

---

[5] The Coast Guard protests that interests of putative class members cannot sustain a moot lawsuit. Dkt. 128 at 9. But Plaintiffs' individual claims, and in turn the claims on behalf of similarly situated service members, are not moot. An order prohibiting consideration of vaccination status in personnel decisions benefits putative class members and Plaintiffs alike.

Dated: June 23, 2025

Respectfully submitted,

/s/ Nathan Loyd

| | |
|---|---|
| Stephen Crampton, *pro hac vice*<br>THOMAS MORE SOCIETY – Senior Counsel<br>PO Box 4506<br>Tupelo, MS 38803<br>(662)255-9439<br>scrampton@thomasmoresociety.org | Charles W. Fillmore<br>State Bar # 00785861<br>H. Dustin Fillmore III<br>State Bar # 06996010<br>THE FILLMORE LAW FIRM, L.L.P.<br>201 Main Street, Suite 700<br>Fort Worth, TX 76102<br>(817)332-2351<br>chad@fillmorefirm.com<br>dusty@fillmorefirm.com |
| Michael G. McHale, *pro hac vice*<br>THOMAS MORE SOCIETY – Counsel<br>10506 Burt Circle, Ste. 110<br>Omaha, NE 68114<br>(402)501-8586<br>mmchale@thomasmoresociety.org | Nathan Loyd, *pro hac vice*<br>THOMAS MORE SOCIETY – Special Counsel<br>5101 Old Highway 5, Box 442<br>Lebanon, GA 30146<br>(559)744-3664<br>nloyd@thomasmoresociety.org |

Adam S. Hochschild, *pro hac vice*
Hochschild Law Firm
THOMAS MORE SOCIETY – Special Counsel
PO Box 401
Plainfield, VT 05667
(314)503-0326
adam@hochschildlaw.com

Mary Catherine Martin, *pro hac vice*
THOMAS MORE SOCIETY – Special Counsel
112 S. Hanley Rd., Second Floor
Clayton, MO 63105
(314)825-5725
mcmartin@thomasmoresociety.org

Paul M. Jonna, *pro hac vice*
LiMandri & Jonna LLP
THOMAS MORE SOCIETY – Special Counsel
P.O. Box 9120
Rancho Santa Fe, CA 92067
(858)759-9930
pjonna@limandri.com

*Counsel for Plaintiffs*